David J. Millstein (CSB #87878)
MILLSTEIN & ASSOCIATES
100 The Embarcadero Suite 200
San Francisco, California 94105
Telephone:    (415) 348-0348
Facsimile:    (415) 348-0336
E-mail:dmillstein@millstein-law.com

Scott D. Gilbert (Admitted *pro hac vice*)
August J. Matteis Jr. (Admitted *pro hac vice*)
Stephen A. Weisbrod (Admitted *pro hac vice*)
Kathleen Hale (Admitted *pro hac vice*)
GILBERT LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone:    (202) 772-2200
Facsimile:    (202) 772-3333
Email: gilberts@gotofirm.com
Email: matteisa@gotofirm.com
Email: weisbrods@gotofirm.com
Email: halek@gotofirm.com

Other Plaintiffs' Counsel Appear on Signature Page

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| IN RE CONSECO LIFE INSURANCE CO. LIFE TREND INSURANCE MARKETING AND SALES PRACTICE LITIGATION | ) Case No. M:10-cv-02124-SI <br> ) <br> ) [REDACTED] <br> ) <br> ) PLAINTIFFS' JOINT MOTION <br> ) FOR CLASS CERTIFICATION <br> ) <br> ) Date: June 4, 2010 <br> ) Time: 9:00 a.m. <br> ) Judge: Hon. Susan Illston <br> ) |

1

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

2

**TO CONSECO LIFE INSURANCE COMPANY AND ITS COUNSEL OF**

3

**RECORD:**

4

**PLEASE TAKE NOTICE THAT,** the Plaintiffs[1] respectfully submit this Joint Motion

5

for Class Certification ("the Motion") and the accompanying proposed order. The Court has

6

scheduled oral argument for this Motion on June 4, 2010, at 9:00 a.m. in Courtroom 10 of the

7

United States District Court for the Northern District of California. In the Motion, Plaintiffs ask

8

the Court to certify: (1) a national class for breach of contract and declaratory judgment; and (2)

9

a California state class for promissory estoppel, breach of the duty of good faith and fair dealing,

10

fraud, and negligent misrepresentation. This Motion is based on the memorandum set forth

11

below and the accompanying declaration of August J. Matteis, and such other written or oral

12

argument as may be presented before the Motion is under submission with the Court.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1] Plaintiffs filing this motion are Cedric Brady, Charles Hovden, Marion Hovden, Eugene Kreps, John McNamara, and Hisaji Sakai each of whom is a plaintiff in *Brady v. Conseco Inc.*, No. 3:08-cv-5746 (N.D. Cal.), and Bill W. McFarland, who is the plaintiff in *McFarland v. Conseco Life Ins. Co.*, No. 3:09-cv-598 (M.D. Fla.). Jean Sakai is a plaintiff in *Brady* but is not seeking to serve as a class representative.

# **TABLE OF CONTENTS**

Page

Table of Authorities .............................................................................................................. iii

I.    Preliminary Statement.......................................................................................................1

II.    Background .........................................................................................................................6

      A.    The Relevant Provisions of the LifeTrend Policies Are Materially
            Identical............................................................................................................6

            1.    All of the Policies Provide the Same Types of Benefits...........................6

            2.    All of the Policies Contain the Optional Premium Payment
                  Provision. ...............................................................................................7

            3.    All of the Policies Restrict Conseco's Right to Deduct "Expense
                  Charges" and "Cost of Insurance." ..........................................................9

            4.    All of the Policies Require Conseco to Provide Policyholders with
                  Detailed Annual Statements and Timely Notices of Any Defaults
                  with Respect to Premium Payments. ........................................................9

            5.    Policyholders Do Not Share in Conseco's Profits and Conseco
                  Cannot Seek to Recover Its Losses from Policyholders. ........................10

      B.    Conseco Administered the Policies in the Same Manner for All
            Policyholders....................................................................................................10

      C.    Conseco Announced Uniform Changes in the Administration of All
            Policies.............................................................................................................11

      D.    Plaintiffs Allege Conseco Is Breaching Several Policy Provisions in the
            Same Manner for All Policyholders Across the Nation.....................................13

      E.    Plaintiffs Contend that Conseco Violated California Law and the Rights of
            California Policyholders When it Fraudulently and/or Negligently Omitted
            Material Information from the Annual Statements.............................................15

      F.    Counsel for Plaintiffs Are Highly Experienced. ................................................15

III.    Argument .........................................................................................................................15

      A.    Plaintiffs' Class Definitions Include Only Individuals Who Purchased
            Materially Identical Policies and Who Face Conseco's Identical Conduct........16

      B.    The Class Satisfies the Requirements of Rule 23(a)..........................................17

            1.    The Class Satisfies the Numerosity Requirement Because it
                  Contains 9,550 Similarly Situated Members. .........................................17

2. The Class Satisfies the Commonality Requirement Because All Class Members Share Common Facts and Legal Issues..........................17

3. The Class Satisfies the Typicality Requirement Because the Plaintiffs' Interests Are Aligned With Those of the Class. ....................19

4. The Class Satisfies the Adequacy Requirement Because the Named Plaintiffs Have No Conflicts Of Interest With the Other Class Members and Will Prosecute Their Suits Vigorously. ............................20

C. Plaintiffs Satisfy the Requirements for a Damages and an Injunctive Class Under Rule 23(b). ...................................................................................................20

1. This Court Should Certify a Class Under Rule 23(b)(3) Because The Commonly Shared Factual and Legal Issues Predominate Over Individual Issues. ...................................................................................21

a. Common Questions of Fact and Law Predominate For the National Breach of Contract Claim.............................................21

b. Common Questions of Fact and Law Predominate as to the Proposed State Class. .................................................................24

c. A Class Action is a Superior Method for Adjudicating the Claims of Nearly 10,000 Policyholders of the Same Contract...............................................................................................25

2. An Injunctive Class Under Rule 23(b)(2) Also Is Appropriate. .............25

3. Trial Plan: the Case Should Be Tried in a Single Phase with All Legal and Factual Issues Addressed Simultaneously. .............................26

IV. Conclusion ...............................................................................................................27

1

## TABLE OF AUTHORITIES

2

**Cases** **Page**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)............................................................22

*American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995)........................................................22, 23

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994).......................19

*Bracamonte v. Eskanos & Adler*, 2004 WL 1146624 (N.D. Cal. May 7, 2004) .........................26

*County of Los Angeles v. Jordan*, 459 U.S. 810 (1982)..............................................................17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................*Passim*

*Hanon v. DataProducts Corp.*, 976 F.2d 497 (9th Cir. 1992).......................................................19

*Immigrant Assistance Project of the Los Angeles County Fed'n of Labor (AFL-CIO) v.*
*Immigration and Naturalization Serv.*, 306 F.3d 842 (9th Cir. 2002).....................................17

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*,
2005 WL 5678842 (C.D. Cal. April 26, 2005) ...............................................................*Passim*

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*,
2005 WL 5678790 (C.D. Cal. April 27, 2005) ...................................................................5, 24

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) .........................................17, 19

*Jordan v. Paul Financial, LLC*, 2009 WL 192888 (N.D. Cal. Jan. 27, 2009).............................16

*Kelly v. City & County of San Francisco*, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005)..........17

*Kleiner v. First National Bank of Atlanta*, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005).........22

*Mass. Mutual Life Ins. Co. v. Super. Ct. of San Diego County*,
97 Cal. App. 4th 1282 (2002) ................................................................................................25

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .........................................................................21

*Mortimore v. FDIC*, 197 F.R.D. 432 (W.D. Wash. 2000).....................................................22-23

*O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998)............................16

*Rodriguez v. Hayes*, 578 F.3d 1032 (9th Cir. 2009) ...................................................................26

*Singer v. AT&T Corp.*, 185 F.R.D. 681 (S.D. Fla. 2006) ...........................................................23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................................16

*Strigliabotti v. Franklin Resources, Inc.*, 2006 WL 2792417 (N.D. Cal. Sept. 27, 2006) ..........15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)................................................25

*Vasquez v. The Super. Ct. of San Joaquin County*, 4 Cal. 3d 800 (1971)....................................25

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ...........................................................................26

*Wiegele v. FedEx Ground Package System, Inc.,*
2008 WL 410691 (S.D. Cal. Feb. 12, 2008)................................................................................25

*Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal. 2003) .........................25

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001) ..................................22

*Yue v. Conseco Life Ins. Co.*, No. 2:08-cv-1506 (C.D. Cal. 2009) ....................................5, 16, 26

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................*Passim*

## I. PRELIMINARY STATEMENT

This is the quintessential case for class certification under Rule 23 of the Federal Rules of Civil Procedure. All of the 9,550 potential class members are owners of nearly identical "LifeTrend 3" and "LifeTrend 4" insurance policies (the "Policies") issued by Conseco Life Insurance Company ("Conseco").[2] Conseco marketed the Policies as conservative investment vehicles that contain a death benefit and an investment account that accumulates value over time. In 2008, years after all potential class members purchased the Policies, Conseco announced that it planned to implement uniform and systematic changes in the way it administers the Policies. As set forth below, these proposed uniform changes are inconsistent with the Policies' express and unambiguous language and could eliminate the Policies' benefits. Plaintiffs bring this case as a proposed class action against Conseco for damages and declaratory and injunctive relief because Conseco has breached and/or will breach precisely the same contract terms in precisely the same way with respect to every single Policy.

In the 1980's and 1990's, Plaintiffs paid substantial initial premiums to purchase the Policies. Conseco promised its policyholders that the premiums would become "optional' or "vanish" if the policyholder so desired and that no additional contributions would be necessary to maintain the death benefit. Every Policy contains the same "Optional Premium Payment Provision" (the "OPP Provision"), which allows any policyholder to stop paying premiums after five years as long as the amount of money in the Policy's accumulation account exceeds the amount of money Conseco would have to pay upon surrender of the Policy (the "Cash-Out Amount"). If the value of the accumulation account falls below the Cash-Out Amount, then Conseco considers the policy to be underfunded. All members of the proposed class used the OPP Provision so that their premiums would vanish. For many years, Conseco sent annual statements to each member of the proposed class indicating that his or her premiums had in fact vanished, that his or her policy was fully funded, and that no monthly cost of insurance charges were owed.

---

[2] The Policies were in fact written and sold by two of Conseco's corporate predecessors, Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company. For simplicity, we refer to them herein as "Conseco," which is how they are now known.

In October 2008, however, Conseco sent a form letter (the "October 2008 Letter") to every member of the proposed class announcing changes that could eliminate the benefits of all 9,550 Policies.  Declaration of August J. Matteis, Jr., Ex. 1, Oct. Form Letter to Charles Hovden at BRD 0077.[3]  Conseco expressly assured all of the policyholders that they were being treated fairly, in precisely the same manner:

> **You are not being singled out.  This change will be applied uniformly to all policies in the same age, gender and underwriting classification with like benefits and provisions as your policy.**

Ex. 1, Oct. 2008 Letter at BRD 0077.

But these uniform changes were devastating.  For example, the form letter made the vanished premiums reappear.  Pointing to unspecified "administrative issues," Conseco made blanket statements to all of its policyholders that their policies were hugely underfunded and that they therefore would have to make enormous "shortfall" payments (in effect, retroactive premiums), as much as $345,000 in one Plaintiff's case.  *Brady v. Conseco Inc.*, No. 3:08-cv-5746 (N.D. Cal.), Amended Complaint ¶ 87.[4]  The October 2008 Letter also announced that, going forward, Conseco would deduct from the policyholders' accounts certain additional "Monthly Expense Charges" and "Cost of Insurance Charges." Ex. 1, Oct. 2008 Letter at BRD 0077-78.  The additional charges were needed, the letter said, because Conseco's "experience factors have differed from those assumed when" the Policies were "originally sold." *Id.* at BRD 0077.  In one Plaintiff's case, the additional charges would total as much as $29,000 per year.  Amended Complaint ¶ 98.  Conseco's letter did not disclose precisely how it had calculated the so-called shortfall amounts or the new monthly charges, but the company in fact calculated them in a uniform manner that violates the express and unambiguous language of the Policies.

---

[3] Plaintiffs have separately filed a Declaration of August J. Matteis, Jr. in support of their motion for class certification.  All exhibits cited herein are to the exhibits attached to the Declaration.

[4] Unless otherwise stated, all references to the "Amended Complaint" are to the amended complaint filed in *Brady v. Conseco*, in the Northern District of California.

According to the October 2008 Letter, if policyholders did not make the retroactive premium payments or the requested monthly payments, they would risk losing the benefits of the Policies.[5]

Conseco has asserted in communications to policyholders, regulators, and even this Court that the drastic changes announced in October 2008 were necessitated by the company's discovery of "an administrative error" and unanticipated "experience factors." (Ex. 1, Oct. 2008 Letter at BRD 0077; Mot. to Dismiss at 2; Amended Complaint, Ex. A ¶ 7). Using those innocuous phrases to describe what happened at Conseco is, at best, extraordinarily misleading. The so-called administrative error, according to Conseco, was Conseco's failure to detect that all of the Policies had been underfunded for years. But that was no error. A Conseco employee admitted at his 2009 deposition that ███████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████ Yet Conseco did not alert a single LifeTrend 3 or 4 policyholder that a Policy account was underfunded (or allegedly underfunded) until October 2008. Prior to the October 2008 Letter, the company continued to send all of the potential class members annual statements indicating that their Policies remained eligible for optional non-payment of premium under the OPP Provision. Invoking vaguely described "experience factors," Conseco informed policyholders in the October 2008 Letter that Conseco would begin to take new monthly deductions for what it inaccurately and deceptively described as "Expense Charges" and "Cost of Insurance," but the expenses incurred by Conseco in administering the Policies did not materially rise, nor did the cost of providing the death benefit under the Policies.

What really happened is this: ███████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ Conseco decided to do this even though the Policies guarantee 4.5 percent interest to policyholders, the Expense Charges are capped at $5.00 per month, and the Cost of Insurance Charge is tied to a factor –

---

[5] The October 2008 Letter also demanded that policyholders resume paying new, future premiums, in some cases exceeding $10,000 per year.

1  mortality rates – that actually declined. In addition to breaching a number of other provisions in
2  the Policies, Conseco's conduct breaches the Non-Participating Provision contained in each
3  Policy, which expressly prohibits the company from attempting to recoup prior losses from
4  policyholders.

5      Plaintiff Cedric Brady's experiences are typical of those of all members of the proposed
6  class. Mr. Brady purchased his Policy in 1987. He paid the annual premium of approximately
7  $10,000; he elected to cease paying premium under the OPP Provision (i.e., the vanishing
8  option) after the fifth policy year; and for over two decades he watched his account grow.
9  Conseco sent Mr. Brady annual statements that included, among other things, the accumulation
10 account value, the loan balance, the charge to surrender the policy, and the guaranteed cash
11 value. Based on the unambiguous terms of his Policy and the values listed on his annual
12 statements, Mr. Brady's policy was not under funded. When Mr. Brady received the October
13 2008 Letter, he learned for the first time that, in Conseco's view, he was not entitled to avail
14 himself of the OPP Provision, he owed over $93,000, and would have to pay over $15,000 in
15 annual Cost of Insurance, as well as additional premiums.

16 ██████████████████████████████████████████████████
17 ████████████████████████████████████████████████
18 ███████████████████████████████████████ Despite Conseco's
19 delay in implementation, the central disputed question in this case remains: are Conseco's
20 proposed changes permissible under the Policies? This question of contract interpretation should
21 be resolved the same way for all policyholders because all of the LifeTrend 3 and 4 Policies sold
22 across the country contain the same relevant terms; Conseco has administered the Policies in the
23 same manner for all policyholders in the past; Conseco's announced changes in Policy
24 administration would apply in the same manner to all policyholders; Conseco announced the
25 changes in the same way and at the same time to all policyholders; and Conseco's announced
26 changes would violate the same Policy provisions for all policyholders.

27      Owners of LifeTrend 3 and 4 policies are not the first Conseco policyholders to seek
28 nationwide class relief as a result of Conseco's improper conduct. In the case of *In re Conseco*

*Life Insurance Company Cost of Insurance Litigation*, 2005 WL 5678842 at 1 (C.D. Cal. April 26, 2005) ("Conseco I") (attached as Ex. 2), Conseco had increased cost-of-insurance charges (under a different insurance policy form) by changing the formula by which such charges were calculated, and the plaintiffs alleged that Conseco breached their insurance contracts in doing so. The Central District of California certified a national class as to the breach of contract and declaratory judgment causes of action and a California class as to breach of duty of good faith and fair dealing. *Id.* at 9 (certifying a national class); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 2005 WL 5678790 at 1 (C.D. Cal. April 27, 2005) ("Conseco II") (certifying a California class) (attached as Ex. 3). More recently, in *Yue v. Conseco Life Ins. Co.*, No. 2:08-cv-1506 (C.D. Cal.), the Central District of California considered a motion for class certification arising out of Conseco's decision to substantially raise cost of insurance charges on certain life insurance policies. *Id.* Dkt. #96. The *Yue* plaintiffs allege that the increases were not justified by Conseco's mortality experience and thus a violation of the policy. The court certified a national class for breach of contract and declaratory judgment and a California class on a state law claim. *Id.* at 11-12.

Plaintiffs here respectfully request that this Court follow *In re Conseco* and *Yue* and (1) certify a national class on breach of contract and declaratory judgment; (2) certify a California class on the breach of good faith and fair dealing, fraud and negligent misrepresentation claims. For the breach of contract and declaratory judgment counts, Plaintiffs seek to represent all persons in the United States who (1) own or owned a Conseco LifeTrend 3 or 4 policy; (2) designated their policies to operate under the OPP Provision of those policies; and (3) received or were sent an October 2008 Letter from Conseco concerning the under-funding of accounts, shortfall payments, premium payments, insurance expense charges, and/or cost of insurance charges. Plaintiffs Cedric Brady, Charles Hovden, Marion Hovden, Eugene Kreps,

John McNamara, and Hisaji Sakai (collectively, "the *Brady* Plaintiffs") also seek to represent a class of California residents who satisfy those three enumerated conditions.[6]

This case satisfies the requirements for class certification under Rule 23(a) because: (1) there are nearly 10,000 potential class members, approximately 2,392 of whom are current California residents; (2) Conseco's actions and the question of whether those actions breached the Policy terms are common to all potential class members; (3) Plaintiffs' contractual interpretations and alleged injuries are typical of the prospective class; and (4) Plaintiffs and their counsel will fairly and adequately represent the class. Certification of both a damages class and an injunctive class is appropriate under Rule 23(b)(3) and (2), respectively, because common questions of law and fact predominate over individual questions and declaratory and injunctive relief would benefit the class as a whole.

## II.     BACKGROUND

### A.     The Relevant Provisions of the LifeTrend Policies Are Materially Identical.

Plaintiffs purchased the LifeTrend 3 and 4 Policies from Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company, which, as a result of various corporate acquisitions and mergers, are now known as Conseco Life Insurance Company. Amended Complaint ¶ 2; *McFarland*, No. 3:09-cv-598, Dkt. # 7, Complaint. The Policy forms vary slightly, but Conseco treats all LifeTrend 3 and 4 Policies as a single product line, ███████ ████████████████████████████████, and the relevant provisions are materially the same. *See, e.g.*, Ex. 5, Brady Policy NP-END-86; Ex. 6, Policy Form NP-WL-92; Ex. 7, Policy Form NP-WL-94; Ex. 8, Policy Form NP-WL-86; Ex. 9, Policy Form A0078; Ex. 10, Policy Form A0080.

#### 1.     All of the Policies Provide the Same Types of Benefits.

The Policies were marketed as low-risk investments that would also provide a large additional payment to a policyholder's survivors if the policyholder dies. *See* Ex. 11, LifeTrend Brochure at CLIC 3520-24. For any individual policyholder, the value of the investment and potential death benefit depend on how much money is in the policyholder's "accumulation

---

[6] If a national class is not certified, then, with respect to claims for breach of contract and declaratory judgment, the *Brady* plaintiffs would request certification of a class of California residents and Mr. McFarland would request certification of a class of Florida residents.

JOINT MOTION FOR CLASS CERTIFICATION                                    M:10-cv-02124-SI

account." Ex. 12, LifeTrend Policy of Eugene Kreps ("Policy") at BRD 0114.[7] Each account is funded initially with premium payments made by the policyholder and then, over time, with interest payments paid by Conseco. *Id.* The interest rate varies, but the Policies guarantee that the interest rate will never fall below 4.5 percent *Id.*

The Policies also provide that the policyholder "may obtain a loan at any time" while the Policy is in force. *Id.* at BRD 0115. If the policyholder borrows money from the account, then the policyholder is charged interest. *Id.*

A policyholder may surrender the Policy for cash at any time and receive the value of the accumulation account, less a "Surrender Charge" specified in the Policy and less the amount of any indebtedness. *Id.* at BRD 0117. The Policy's "Death Benefit Provision" provides that, if the insured dies, Conseco will pay the greater of the sum insured (as shown on each policyholder's Policy schedule) or the value of the accumulation account multiplied by a factor corresponding to the insured's age at death (as shown on the same schedule). *Id.* at BRD 0111 & 0113.

Each Policy contains a table of "Guaranteed Policy Values." *Id.* at BRD 0110. For example, in 1991, Mr. Brady's Policy had a guaranteed value of $11,359, and in 1992, it had a guaranteed value of $18,090. Ex. 5, Brady Policy at BRD 0007. By each Policy's express and unambiguous terms, however, the guaranteed values apply only if the policyholder "pays the full annual premium . . . each year." Ex. 12, Policy at BRD 0110. If the Policyholder stops paying annual premiums, then the policyholder still is entitled to receive the cash value of the accumulation account (less the Surrender Charge and any indebtedness), but Conseco no longer guarantees what that amount will be. ████████████████████████████

████████████████████████████

### 2.    All of the Policies Contain the Optional Premium Payment Provision.

Under the Policies' OPP Provision, policyholders can stop paying premiums after five years without losing Policy benefits. Ex. 12, Policy at BRD 0115. As of October 2008, over 9,550 LifeTrend 3 and 4 policyholders (approximately 85% percent of the total) had exercised

---

[7] As noted, all of the policy forms contain essentially the same relevant provisions. Unless otherwise stated, Plaintiffs will cite only to the policy of Eugene Kreps, which is policy form NP-END-86, when referencing the policy provisions.

1  this option, which was described to policyholders – and is still referred to internally by Conseco

2  – as the "vanish premium" option. *See* Ex. 15, LifeTrend Consumer Guide at CLIC 3532; ▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To this day, Conseco's internal computer

4  databases refer to all policyholders that have elected not to pay premiums pursuant to the OPP

5  Provision as having "vanishing" or "vanished" premiums. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  The OPP Provision allows policyholders to stop paying premiums after five years as long as they

7  satisfy the OPP eligibility formula specified in the Policies. Ex. 12, Policy at BRD 0115. The

8  OPP Provision provides that the value of the accumulation account must exceed the sum of "the

9  then guaranteed cash value; plus the then applicable surrender charge; and any indebtedness."

10  *Id.*

11  The meanings of the terms in the OPP eligibility formula are found in the Policies. For

12  example, the "then guaranteed cash value" is the amount described in the Policy's Guaranteed

13  Policy Values section. *Id.* at BRD 0110. As noted above, that section unambiguously

14  establishes guaranteed values for each policy year if the policyholder has paid annual premiums

15  through that year, and the section further provides, again unambiguously, that there is no

16  guaranteed value if the policyholder ceased paying premiums. ▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The values set forth in the Guaranteed Policy Values

18  table are relevant to the OPP eligibility calculation only for the first year in which the

19  policyholder seeks OPP status because that year is the only one in which the policyholder has

20  paid the full annual premium. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ After the first year of OPP

21  status, the guaranteed value is zero. ▮▮▮▮▮▮▮▮ Conseco's own documents confirm that for

22  many years Conseco adhered to the policy's plain meaning in regard to guaranteed cash value.

23  Prior to October 2008, all of the Plaintiffs received annual statements stating that their

24  guaranteed cash value was zero. *See, e.g.*, Ex. 16, Annual Statement of Cedric Brady at BRD

25  0063, Ex. 17, Annual Statement of Eugene Kreps at BRD 0106; Ex. 18, Annual Statement of

26  John McNamara, BRD 0172; Ex. 19, Annual Statement of Hisaji Sakai at BRD 0215.

27  Another term in the OPP formula is the "then applicable surrender charge" and it means

28  the amount specified in the Policies' Surrender Charges tables. Ex. 12, Policy at BRD 0111. For

Mr. Brady, the Surrender Charge started at $12,463 and slowly declined, dropping all the way to zero in the twentieth year and thereafter. Ex. 5, Brady Policy at BRD 0008. Finally, indebtedness is defined to include the amounts borrowed plus interest incurred on the loans. Ex. 12, Policy at BRD 0113.

### 3. All of the Policies Restrict Conseco's Right to Deduct "Expense Charges" and "Cost of Insurance."

Conseco is permitted under the Policies to make only two types of "Monthly Deduction[s]" from the policyholders' accounts: "Expense Charges" and "Cost of Insurance." Ex. 12, Policy at BRD 0115. After the second Policy year, the Policies cap Expense Charges at $5.00 per month. Ex. 12, Policy at BRD 0111. The Cost of Insurance charge also is limited, with maximum deductions varying depending on the age and sex of the insured, as set forth more fully in a table entitled "Guaranteed Maximum Monthly Mortality Charge: Table of (Monthly) Cost of Insurance Rates" (the "Mortality Charge/Cost of Insurance Table"). *Id.* at BRD 0116. The Mortality Charge/Cost of Insurance Table is printed in the Policy and includes the following legend: "The above rates are based upon the Commissioner's 1980 Standard Mortality Table." *Id.*

### 4. All of the Policies Require Conseco to Provide Policyholders with Detailed Annual Statements and Timely Notices of Any Defaults with Respect to Premium Payments.

The policy provides that "[a]t least once a year, the Company will send the owner a report which shows the death benefit, premiums paid, expense charges, interest credited, mortality charges, outstanding loans, current cash value, net cash value and all charges since the last report." *Id.* at BRD 0119. The policy also provides for a sixty-one day "Grace Period" if a policyholder fails to timely pay a required premium. *Id.* at BRD 0112. Thirty days before the end of the grace period, Conseco must "send a written notice" to the policyholder stating that a premium payment is required. *Id.* If the premium is not paid before the end of the grace period, the policy will be in default and the Policy's rules for winding down the coverage (described in a section entitled "Non-Forfeiture Provision") will be triggered. *Id.*

5.   **Policyholders Do Not Share in Conseco's Profits and Conseco Cannot Seek to Recover Its Losses from Policyholders.**

Conseco is a stock insurance company, not a mutual insurance company. ███████████

████████████ As such, Conseco is entitled to keep any profits it generates instead of distributing them to policyholders, and, as such, Conseco must absorb any losses it incurs as a result of poor business decisions or unsuccessful investment strategies. ████████████████

These principles are reflected in the Policies' Non-Participating Provision, which states that the Policy "will not share in any of the Company's profits or surplus." Ex. 12, Policy at BRD 0119. All but one of the Policy forms, Ex. 7, Policy Form NP-WL-94 at CLIC 3664, also state that "[a]ny premium or factor changes are determined and redetermined prospectively," and that the insurer "will not recoup prior losses, if any, by means of premium or factor changes," *see, e.g.,* Ex. 8, Policy Form NP-WL-86 at CLIC 3679. ██████████████████████████ the Non-Participating Provision means that Policyholders share neither in Conseco's profits nor its losses. ██████████████████

B.   **Conseco Administered the Policies in the Same Manner for All Policyholders.**

Since the 1980s, Conseco has administered the Policies in the same manner for all potential class members. Conseco credited policyholders with interest earnings and issued loans to policyholders who wished to take them out. ██████████████████

██████████████████████████████████

██████████████

Conseco permitted all policyholders to stop paying premiums after the fifth policy year in accordance with the OPP Provision. *See, e.g.,* Ex. 21, Ltr. to Hisaji Sakai at CLIC 2238.

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████

████████████████████████████

███████████████████████

████████████████████████████

Accordingly, Conseco continued to send annual statements to policyholders, as the Policies required, and nothing in the annual statements indicated a problem with the accounts' OPP status. *See, e.g.*, Ex. 16, Brady Annual Statement. For example, Mr. Brady's 2007 annual statement listed his applicable account values as follows:

| | |
|---|---|
| Accumulation account: | $85,203.79 |
| Indebtedness: | $38,168.20 |
| Surrender charge: | $0 |
| Guaranteed cash value: | $0 |

Ex. 22, Brady 2007 Annual Statement at BRD 0066-67. All policyholders who availed themselves of the OPP Provision for more than one year received similar annual statements stating, correctly, that the then-guaranteed cash value for their accounts was zero dollars. *See, e.g.*, Ex. 17, Annual Statement of Eugene Kreps at BRD 0106; Ex. 18, Annual Statement of John McNamara, BRD 0172; Ex. 19, Annual Statement of Hisaji Sakai at BRD 0215.

**C.      Conseco Announced Uniform Changes in the Administration of All Policies.**

In October 2008, all of the potential class members learned that Conseco was making major changes. Conseco sent the October 2008 Letter to 9,550 policyholders, including 2,392 persons in California. Ex. 1, Oct. 2008 Letter; *see also* Conseco Notice to Transfer Case Pursuant to 28 U.S.C. § 1407, Ex. A at 5.

According to the October 2008 Letter, policyholders had not been informed previously that, "[d]ue to administrative issues," their Policies were "Under Funded" and additional premiums were required. Ex. 1, Oct. 2008 Letter at BRD 0078. The letter explained that, to rectify the alleged under funding caused by policyholders' not paying premiums when they allegedly should have been paid, each policyholder would have to pay a "shortfall" amount. *Id.* In some cases, these amounts totaled hundreds of thousands of dollars. Ex. 24, Nov. 3, 2008, Letter to Eugene Kreps. In effect, Conseco was assessing massive retroactive premiums, even though such premiums are not authorized by the Policies, and even though Conseco made no attempt to comply with the thirty-day notice provision. Significant premiums also would be due in the future. Ex. 1, Oct. 2008 Letter at BRD 0078.

Conseco concealed its method for calculating the alleged shortfall amounts. As noted above, one of the items to be added together in the OPP eligibility formula is the account's "then guaranteed cash value." Ex. 12, Policy at BRD 0115. For policyholders who previously had ceased making premium payments, the then Guaranteed Cash Value is zero. ████████████

██████████ This is so under the express and unambiguous terms of the Policies and, as one would expect, the policyholders' annual statements said this for many years. *See, e.g.*, Ex. 17, Annual Statement of Eugene Kreps at BRD 0106; Ex. 18, Annual Statement of John McNamara, BRD 0172; Ex. 19, Annual Statement of Hisaji Sakai at BRD 0215. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ An additional consequence of Conseco's misapplication of the OPP eligibility formula is that policyholders now must pay additional, future premiums, or risk losing their benefits.

Conseco also informed policyholders that the company was going to take the maximum monthly Expense Charge deduction and substantially increase the monthly Cost of Insurance deduction. Ex. 1, Oct. 2008 Letter at BRD 0077-78. For one plaintiff, this would bring the annual deductions to $29,000. Amd. Compl. ¶ 98(a). In the October Letter Conseco stated that "[t]his rate change is being applied uniformly to all policies." Ex. 1, Oct. 2008 Letter at BRD 0077. Once again, however, Conseco concealed its methods for calculating the rate changes.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

JOINT MOTION FOR CLASS CERTIFICATION                    M:10-cv-02124-SI



On December 19, 2008, Conseco sent another letter suspending the requested retroactive premiums and the increased charges while Conseco worked with state insurance regulators. Ex. 24. Dec. 19, 2009 Letter at CLIC 3946. As of the date of this Motion, however, Conseco has not given up on any of the administrative changes announced in the October 2008 Letter.

**D. Plaintiffs Allege Conseco Is Breaching Several Policy Provisions in the Same Manner for All Policyholders Across the Nation.**

Plaintiffs contend that the changes announced in the October 2008 Letter are contrary to numerous Policy provisions found in all of the proposed class members' Policies.

To begin, in the Plaintiffs' view, nothing in the Policies authorizes Conseco to demand a massive "shortfall payment," let alone a massive retroactive premium. On the contrary, the Policies require accurate annual statements, and they include a thirty-day notice requirement to demand premiums, with which Conseco did not comply.

Even if a retroactive premium could be assessed, the retroactive premium Conseco announced in October 2008 still would be a blatant contractual violation. The OPP eligibility formula references the "then guaranteed cash value." Under the plain Policy terms, that value was zero for every policyholder who previously had chosen not to pay a year's premium payment. The OPP eligibility formula appears designed to give Conseco a measure of protection against the possibility that a policyholder will ask the company to release account funds even though the policyholder owes more to Conseco than Conseco owes to the policyholder. The OPP formula is not designed to give Conseco the right to declare arbitrarily that approximately 85 percent of its policyholders are in default.

Moreover, under the Policies' plain terms, Plaintiffs are entitled to a guaranteed 4.5 percent interest rate and are protected against any effort by Conseco to adjust premiums to make up for prior losses. ███████████████████████████████████████████ ███████████████████████████████ Attempting to recover losses incurred as a result of that business decision would reduce the policyholders' interest earnings to a level below the guaranteed 4.5 percent interest rate and violate the Policies' Non-Participating clause. The guaranteed interest rate and the Non-Participating clause go hand in hand: there would be no point in imposing a minimum interest rate if Conseco could simply take back the interest it pays to policyholders whenever it loses money on its own investments.

In Plaintiffs' view, Conseco's intentions with respect to future charges are equally problematic. To the extent that they are based on the same type of OPP calculations that underlie the proposed retroactive premiums, the prospective premiums that Conseco would assess in the future would breach terms found in all of the Policies. The proposed Expense Charges and Cost of Insurance charges also would violate the Policies because Conseco is seeking to recover prior losses and is not seeking to offset administrative expenses or increasing mortality rates.

1   Furthermore, even if the proposed Expense Charges were permissible, they still must be limited

2   under the Policy terms to $5.00 per month. The $5.00 cap on Expense Charges necessarily

3   means that the company cannot re-characterize general administrative expenses as Cost of

4   Insurance. For that reason, Cost of Insurance increases are permitted under the Policy only if

5   mortality rises, whereas in this case mortality has declined.

6          In light of Conseco's ongoing effort to breach numerous provisions in its contracts,

7   Plaintiffs seek damages as well as declaratory and injunctive relief.

8          **E.     Plaintiffs Contend that Conseco Violated California Law and the Rights of
             California Policyholders When it Fraudulently and/or Negligently Omitted
9            Material Information from the Annual Statements**

10         If Conseco's various contractual interpretations bearing on the OPP eligibility formula

11  were actually correct, then Conseco's annual statements were wrong or, at a minimum,

12  extremely misleading. The annual statements for all potential class members specifically said

13  the "Guaranteed Cash Value" was "$0.00" and made no reference to any other interpretation or

14  figures for the then guaranteed cash value. Moreover, if the policies were underfunded, Conseco

15  made no reference to any underfunding in any annual statements. As a result of these alleged

16  misrepresentations, omissions, and breaches of the policy, Plaintiffs allege they have been

17  damaged such that monetary, injunctive and declaratory relief is necessary under California law.

18         **F.     Counsel for Plaintiffs Are Highly Experienced.**

19         As described in the accompanying declaration of August J. Matteis, Jr., counsel for

20  Plaintiffs who are involved in this litigation are experienced and qualified to handle class actions

21  and complex insurance disputes.

22  **III.   ARGUMENT**

23         Under Rule 23(a) of the Federal Rules of Civil Procedure, Plaintiffs must show that:

24  (1) the class is so numerous that joinder of all members is impractical ("numerosity"), (2) there

25  are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of

26  the representative parties are typical of the claims or defenses of the class ("typicality"), and

27  (4) the representative parties will fairly and adequately protect the interests of the class

28  ("adequacy"). *See Strigliabotti v. Franklin Resources, Inc.*, 2006 WL 2792417, at * 2 (N.D. Cal.

JOINT MOTION FOR CLASS CERTIFICATION                          M:10-cv-02124-SI

Sept. 27, 2006). In addition, under Rule 23(b), Plaintiffs must establish at least one of three grounds for maintaining a class action. Rule 23(b)(2) allows a class action where declaratory or injunctive relief benefitting the class as a whole would be appropriate. Rule 23(b)(3) allows a class action where common questions of law or fact predominate and the class action is superior to other available methods of adjudication (Rule 23(b)(3)). This Court has explained that, "[i]n determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Jordan v. Paul Financial, LLC*, 2009 WL 192888, at * 2 (N.D. Cal. Jan. 27, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

Here, the Rule 23 requirements are easily met, as they were in *In re Conseco I* and *Yue*. Because all of the contract interpretation issues and the relevant facts apply to all 9,550 proposed class members, a national class should be certified under Rule 23 for breach of contract and declaratory judgment. In addition, a California class should be certified with respect to the 2,392 proposed class members who reside in California and have virtually identical legal and factual claims for promissory estoppel, breach of the duty of good faith and fair dealing, fraud, and negligent misrepresentation.

### A. Plaintiffs' Class Definitions Include Only Individuals Who Purchased Materially Identical Policies and Who Face Conseco's Identical Conduct.

Plaintiffs seek to bring a nationwide class action for the claims that Conseco breached or intends to breach its insurance contracts by asserting that the class-members' policies are underfunded, by seeking to impose premiums retroactively, by improperly reinstating monthly premium payments and monthly deductions, and improperly increasing monthly deductions. Plaintiffs also seek certification of a California-resident class for claims of promissory estoppel, breach of the duty of good faith and fair dealing, fraud and negligent misrepresentation.

Based on Plaintiffs' proposed class definitions, "it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). The class is ascertainable because it consists of a definable class of individuals who owned the LifeTrend 3 and 4 policies, invoked the OPP

Provision, and received or were sent the October 2008 Letter. Their identities and addresses can be ascertained readily from business records that Conseco maintains.

Moreover, because these class definitions are limited to holders of LifeTrend 3 and LifeTrend 4 policies, all of the contractual provisions relevant to this case are uniform. And, because these class definitions are limited to those policyholders who were operating under the OPP Provision and received the October 2008 Letter, all of the class members were, and potentially will be, harmed by Conseco's uniform conduct.

### B. The Class Satisfies the Requirements of Rule 23(a).

#### 1. The Class Satisfies the Numerosity Requirement Because it Contains 9,550 Similarly Situated Members.

Rule 23(a)(1) requires "the class be so large that joinder of all members is impracticable." As this Court has explained, "[t]he requirement depends on the practicality of joinder in light of the facts and circumstances of each case, and does not provide a required minimum number of class members." *Kelly v. City & County of San Francisco*, 2005 WL 3113065, at * 4 (N.D. Cal. Nov. 21, 2005). Here, Plaintiffs satisfy the numerosity requirement because there are at least 9,550 policyholders in the proposed national class and at least 2,392 in the proposed California class. Joinder of individual cases involving such large groups would be impracticable, difficult and inconvenient. *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982) vacated on other grounds, *County of Los Angeles v. Jordan*, 459 U.S. 810 (1982). Indeed, classes with approximately the same number of members (and far fewer) have satisfied the numerosity requirement. *See Immigrant Assistance Project of the Los Angeles County Fed'n of Labor (AFL-CIO) v. Immigration and Naturalization Serv.*, 306 F.3d 842, 869 (9th Cir. 2002) (finding that district court did not abuse its discretion in certifying class of approximately 11,000 and stating that "[c]ourts have certified classes with far fewer members.").

#### 2. The Class Satisfies the Commonality Requirement Because All Class Members Share Common Facts and Legal Issues.

Rule 23(a)(2)'s commonality requirement is met "if there are questions of fact and law which are common to the class." The Ninth Circuit construes the commonality requirement "permissively" such that not all questions raised in the case have to be common. *Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Cases that either "share[] legal issues [and] divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfy the commonality requirement. *Id.* Here, Plaintiffs and the potential class both share "a common core of salient facts" and share common legal issues.

All proposed class members own or owned Conseco LifeTrend 3 or 4 life Policies with identical material provisions. Every class member elected to operate under the same OPP Provision. For decades, Conseco then acted in a uniform manner toward the policyholders, only to behave in a radically different manner, which was still uniform toward the policyholders, starting in 2008.

Legal questions common to all nationwide class members include:

- Are the premiums Conseco seeks from all class members precluded by the Policies' OPP Provision, the grace-period notice provision, minimum interest rate provision, and Non-Participating clause?

- Are the Expense Charges Conseco seeks from all class members precluded by the Policies' Expense Charge provision, minimum interest rate provision, and Non-Participating clause?

- Are the Cost of Insurance Charges Conseco seeks from all class members precluded by the Policies' Cost of Insurance Provision, Expense Charge provision, minimum interest rate provision, and Non-Participating clause?

Questions common to all California class members include the following, which combine fact and law:

- Did Conseco's annual statement sent to all class members include false or misleading information about the adequacy of funding in the accounts?

- Did Conseco knowingly or negligently include such information?

Because Conseco acted identically with respect to each class member, and because each class member's LifeTrend policy contains identical relevant language, the major issues in the case are identical. *See In re Conseco I*, 2005 WL 5678842, at *4 (finding commonality where issue was whether Conseco breached 90,000 policyholders' insurance policies by changing the way that it calculated cost-of-insurance charges).

### 3. The Class Satisfies the Typicality Requirement Because the Plaintiffs' Interests Are Aligned With Those of the Class.

Rule 23(a)(3) states that the representative parties' claims must be "typical" of the claims of the entire class. The purpose of this requirement is "to assure that the named representative's interests are aligned with those of the class." *Jordan*, 669 F.2d at 1321.

The Ninth Circuit interprets the typicality requirement permissively. *Hanlon*, 150 F.3d at 1020. The Court must determine "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. DataProducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). However, "[n]amed plaintiffs' claims need not be identical to the claims of the class; rather, their claims are typical if they are 'reasonably co-extensive with those of absent class members.'" *In re Conseco I*, 2005 WL 5678842, at *4 (quoting *Hanlon*, 150 F.3d at 1020). It is sufficient for plaintiffs' claims to "arise from the same remedial and legal theories." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994). The typicality requirement is met "[a]s long as the named representative's claim arises from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory". *Jordan*, 669 F.3d at 1321. As such, the typicality inquiry is closely related to the commonality inquiry. *Id.*

Just as Plaintiffs' action satisfies the commonality requirement, it also satisfies the typicality requirement. Plaintiffs' action is based on Conseco's common course of conduct toward all class members with respect to contracts that are identical in all relevant respects.

Plaintiffs and the proposed class members also have suffered from the same or similar injuries. Conseco may argue that the injuries among policyholders differ because some policyholders, including Plaintiff Eugene Kreps, have surrendered their policies. The Central District of California faced a similar situation in ruling on the class certification motion for *In re Conseco I*, 2005 WL 5678842, at *4-5. In that case, one of the named plaintiffs had surrendered his policy while the other named plaintiff retained his. *Id.*, at *7. The court found that the plaintiffs' different postures did not defeat typicality because each plaintiff was typical of policyholders in that particular situation. *Id.* Similarly, in this case, Dr. Kreps is typical of

potential class members who cashed out their Policies but still were injured by Conseco's

actions. The other Plaintiffs are typical of policyholders who have not cashed out their Policies.

### 4. The Class Satisfies the Adequacy Requirement Because the Named Plaintiffs Have No Conflicts Of Interest With the Other Class Members and Will Prosecute Their Suits Vigorously.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." To satisfy this requirement, Plaintiffs must show that they and their

counsel have no conflicts of interests with other class members and that their counsel is qualified

to prosecute the action. *Hanlon*, 150 F.3d at 1020.

Plaintiffs have no interests that are antagonistic to the proposed class. All policyholders

share a common interest in determining whether Conseco breached the policy and what changes,

if any, Conseco can make in administering the Policies going forward. The alignment of

Plaintiffs' interests with those of the Class also is demonstrated through the commonality and

typicality analyses set forth in the preceding subsections 2 and 3.

The *Brady* Plaintiffs' co-counsel, Gilbert LLP and Millstein & Associates, are highly

qualified to prosecute the litigation as a class action. They have experience representing

insurance policyholders, class action plaintiffs, and other types of litigants in this jurisdiction.

*See* Declaration of August J. Matteis, Jr. To the extent that additional expertise is needed,

counsel for Mr. McFarland also will participate in prosecuting the claims. Berman DeValerio

has significant experience prosecuting hundreds of nationwide class actions. Accordingly,

Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

### C. Plaintiffs Satisfy the Requirements for a Damages and an Injunctive Class Under Rule 23(b).

In addition to satisfying the four prerequisites required under Rule 23(a), this class action

also satisfies the requirements under both Rule 23(b)(3) and 23(b)(2).

Rule 23(b)(3) permits a class action when common questions "predominate over any

questions affecting only individual members" and class resolution is "superior to other available

methods." Fed. Rule Civ. P. 23(b)(3). Although a court may award injunctive or declaratory

relief to classes certified pursuant to Rule 23(b)(3), courts generally certify classes under Rule

23(b)(3) when class members seek predominately damages. In contrast, Rule 23(b)(2) permits

class actions where defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. Rule Civ. P. 23(b)(2). Although plaintiffs also may receive money damages in class actions certified under Rule 23(b)(2), injunctive classes under Rule 23(b)(2) are designed for actions seeking primarily injunctive relief. *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003). Significantly, classes may be certified concurrently under Rules 23(b)(2) and 23(b)(3). *See Molski*, 318 F.3d at 951 n.16 (noting that a district court "could have bifurcated the claims and certified the class under Rule 23(b)(2) and (b)(3)").

In this case, Plaintiffs seek on behalf of themselves and the putative class to recover monetary damages and to prevent Conseco from putting into place significant changes to the administration of the LifeTrend 3 and 4 policies. This case, therefore, is ripe for certification under both Rules 23(b)(3) and (b)(2).

### 1. This Court Should Certify a Class Under Rule 23(b)(3) Because The Commonly Shared Factual and Legal Issues Predominate Over Individual Issues.

This Court should certify a nationwide and California classes under Rule 23(b)(3). Rule 23(b)(3) states that a court may certify a class where: "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) instructs that "matters pertinent to these findings" include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### a. Common Questions of Fact and Law Predominate For the National Breach of Contract Claim

In this case, a Rule 23(b)(3) class is appropriate because common questions predominate over individual questions and a class action is superior to other available methods of adjudication. *See Hanlon*, 150 F.3d at 1022. The predominance requirement of Rule 23(b)(3)

tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Here, common questions of law and fact predominate over any individual questions because all of Plaintiffs' claims address Conseco's announced changes in policy administration that would apply in the same manner to all policyholders and that Conseco announced in the same way and at the same time to all of them. In addition, Conseco's announced changes would violate the same policy provisions for all policyholders.

Because contract law is essentially the same in all fifty states on the issues that are relevant here, the judicial efficiency achieved by the adjudication of common issues is in no way hindered by Plaintiffs' request for a national class on a state law claim. As the Supreme Court has recognized, "contract law is not at its core diverse, nonuniform and confusing." *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995) (internal quotation omitted). A national class therefore would be quite manageable. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (requiring plaintiffs seeking certification to demonstrate a manageable trial plan for nationwide classes that implicate the laws of multiple states). Plaintiffs are submitting as Exhibit 30 to this Motion a survey of the elements of breach of contract for all fifty states and the District of Columbia. The survey confirms that the fundamental elements of a breach of contract claim do not vary materially among the states.

Because the relevant law differs little from state to state, national breach of contract class actions are routinely certified based on a finding that state contract law is not so varied as to defeat Rule 23(b)(3)'s predominance requirement. For example, in *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 685 (N.D. Ga. 1983), the court certified a national class on a breach of contract claim to determine whether a bank charged the class members an interest rate higher than their contract allowed. The court noted that the parties "have entered standard written contracts containing terms that have an objective meaning," and even if the contracts were to be interpreted under varying state laws, the "application of various state laws would not be a bar, where, as here the general policies underlying common law rules of contract interpretation tend to be uniform." *Id.* at 693-94; *see also Mortimore v. FDIC*, 197 F.R.D. 432,

438 (W.D. Wash. 2000) (certifying a national breach of contract class action and noting that because "this case involves the use of form contracts, it is particularly appropriate to use the class procedure"); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 2006) ("breach of contract [claims] are universally recognized causes of action that are materially the same throughout the United States") (citing *American Airlines*, 513 U.S. at 233).

In essence, what Conseco wants from this consolidated proceeding is an order from this Court that effectively would tell nearly ten thousand policyholders that they have two choices: they can prosecute nearly ten thousand individual cases and trials, or, if that is not feasible, they can capitulate to the measures outlined in the October 2008 Letter. Of course, that would not be a fair outcome, nor is it justified under Rule 23.

Ironically, when Conseco was trying to block all activity on the *Brady* litigation in this Court and have the cases consolidated in the Middle District of Florida, Conseco took a very different approach, emphasizing the twin goals of judicial efficiency and consistent rulings for all policyholders across the country. For example, Conseco argued to the Judicial Panel on Multidistrict Litigation that "three federal suits regarding the same issues have been filed against Conseco Life" and that all three "have overlapping operative factual allegations." Conseco's Memorandum of Law in Support of Motion for Transfer Pursuant to 28 U.S.C. § 1407, Dkt. # 75-1, at 1-2. Conseco further stated that, absent consolidation, the parties and courts will face the burden and expense of:

- Inconsistent pretrial rulings, including on class certification;

- Needlessly duplicative discovery and discovery disputes; and

- Requiring defendant to litigate the same issues in three judicial districts.

*Id.* at 6, 8-9.

Conseco argued that "the factual allegations underpinning the claims" in the three lawsuits "lead to common questions of fact and law," and that coordination of the cases was therefore "appropriate to conserve the resources of the parties, counsel, and the judiciary, to

eliminate duplicative discovery, and to avoid inconsistent pretrial rulings." *Id.* at 2. Conseco

also has conceded that "[c]ommon questions of fact and law are present in each" case, that the

"core allegation" in each case is the same, and that "[c]ommonlaties also exist in the relief

plaintiffs seek," including compensatory and punitive damages as well as equitable relief. *Id.* at

4.

Conseco made similar arguments in this Court when it sought to stop the *Brady* litigation

from going forward. *See* Conseco's Motion to Temporarily Stay All Proceedings Pending

Determination of the Judicial Panel on Multidistrict Litigation, Dkt. #94, at 6. Conseco stated

that the *Brady* case should be stayed because Conseco "'would suffer a considerable hardship

and inequity if forced to simultaneously litigate multiple suits in multiple courts'" and

"'potentially suffer conflicting rulings by different judges.'" *Id.* at 6.

Those concerns are just as valid in the context of a class certification motion as they were

in the context of a request for consolidation and transfer under 28 U.S.C. § 1407.

**b. Common Questions of Fact and Law Predominate as to the Proposed State Class.**

Common issues of fact predominate with the policyholders in the California class as well.

The Court can determine whether Conseco breached its obligation of good faith and fair dealing

to all California policyholders in the same manner it can determine whether Conseco breached

the terms of the policy. The Central District of California established a California class in *In re*

*Conseco II,* 2005 WL 5678790, at *1, for the good faith and fair dealing claim.

As for Plaintiffs' claims for fraudulent and negligent misrepresentations and omission,

common issues of fact also predominate. Plaintiffs claim Conseco misrepresented the

guaranteed cash value of the policy when it sent annual statements to policyholders that listed the

guaranteed cash value as $0. All policyholders utilizing the OPP Provision received these annual

statements, and the language in the statements in regard to the guaranteed cash value was

identical. To the extent that Conseco now claims that the guaranteed cash values of all policies

were significantly higher than $0, Conseco omitted the same information from every potential

class members' annual statement. Because the misrepresentations and omissions were uniform,

the Court can draw "an inference of common reliance." *Mass. Mutual Life Ins. Co. v. Super. Ct. of San Diego County*, 97 Cal. App. 4th 1282, 1293 (2002).

This case is similar to *Vasquez v. The Super. Ct. of San Joaquin County*, 4 Cal. 3d 800, 811-12 (1971), where salespersons recited to consumers a standard statement about a product that contained misrepresentations. The California Court of Appeals certified a class action in part because the salespersons made uniform misrepresentations from which common reliance could be inferred. *Id.* In this case, to the extent that Conseco prevails in its contract interpretation, it necessarily will be liable for making identical misrepresentations and omissions when communicating with all of the potential California class members: Conseco informed every one of them that the guaranteed cash value was $0 and failed to inform every one of them that their accounts allegedly were underfunded.

### c. A Class Action is a Superior Method for Adjudicating the Claims of Nearly 10,000 Policyholders of the Same Contract

Lastly, a class action is the "superior" method of adjudication because class-wide litigation "will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). If nearly ten thousand policyholders attempted to receive injunctive and monetary relief from Conseco for claims arising out of Conseco's common actions, the cases "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs," most of whom are elderly. *Hanlon*, 150 F.3d at 1023. As the court stated in *Wiegele v. FedEx Ground Package System, Inc.*, "[h]ere, it would be far more costly and time consuming for each individual putative class member to seek and compel discovery of [Conseco's] policies and procedures, take multiple depositions, retain experts, and litigate damages issues." 2008 WL 410691, at *11 (S.D. Cal. Feb. 12, 2008).

### 2. An Injunctive Class Under Rule 23(b)(2) Also Is Appropriate.

A Rule 23(b)(2) class also is appropriate here because Conseco "has acted in a consistent manner towards members of the class so that [its] actions may be viewed as part of a pattern of activity." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003). Conseco acted consistently toward all policyholders when it sent the October 2008 Letter announcing that the policies were under funded, and it would be charging retroactive premiums,

the maximum expense charges, and increased cost of insurance. Conseco is familiar with the certification of injunctive classes, as two have been certified against it in recent years. An national injunctive class was certified in *In re Conseco I* where Conseco sent a form letter to policyholders announcing changes to the cost of insurance. 2005 WL 5678842, at *8-9. Several months ago, the Central District of California also certified a national class under Rule 23(b)(2) against Conseco in *Yue* where the plaintiffs allege that Conseco breached life insurance contracts by raising costs of insurance. No. 2:08-cv-1506, Dkt. # 96 at 2-3. Similarly, the Northern District of California also certified an injunctive class in *Bracamonte v. Eskanos & Adler*, 2004 WL 1146624, at *5 (N.D. Cal. May 7, 2004), where a form collection letter was sent to debtors.

Unlike Rule 23(b)(3), an injunctive class under Rule 23(b)(2) does not require a showing of predominance. *Rodriguez v. Hayes*, 578 F.3d 1032, 1051 (9th Cir. 2009). Accordingly, the question of whether state law contains variations that would make the case unmanageable is irrelevant to the Court's analysis under Rule 23(b)(2). *Yue*, No. 2:08-cv-1506, Dkt. # 96 at 10. For certification under this subdivision "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Plaintiffs request an injunction prohibiting Conseco from retroactively charging premiums; claiming the policies are under funded; and prospectively charging higher expenses and cost of insurance. This relief is appropriate to all class members who have not surrendered their policies already. Those class members who have surrendered their policies should be entitled to equitable relief in the form of reinstatement, at their option.

### 3. Trial Plan: the Case Should Be Tried in a Single Phase with All Legal and Factual Issues Addressed Simultaneously.

Because the same witnesses and documents are relevant to all facets of the case, and because there are no material variations in applicable state law, Plaintiffs propose that trial on this matter occur in a single phase with a single set of jury instructions. There should be a single set of jury instructions on contract issues and a single set on the California claims. To the extent that evidence is admissible as to some purposes but not others, the Court can so instruct the jury. Such a trial would be manageable and far more efficient than having individual policyholders

1  adjudicate breach of contract claims in thousands of separate trials in fifty states. Plaintiffs
2  anticipate that trial of a national class action would take approximately four weeks.

3       Trial of a national class would not be significantly more time consuming or complicated
4  than trial of the Brady plaintiffs' claims by themselves. In evaluating Plaintiffs' proposal for a
5  single-phased trial for a national class, it is worth considering what a trial would look like for
6  individual plaintiffs, such as the *Brady* plaintiffs. A trial of the *Brady* claims by themselves
7  would include testimony from the policyholders, the brokers, Conseco personnel, and expert
8  witnesses. A trial of the *Brady* claims by themselves would focus on the contract terms,
9  Conseco's administration of the policies from the 1980s through the present time, and Conseco's
10 improper efforts to allocate to its policyholders losses incurred as a result of Conseco's business
11 and investment decisions. Such a trial would look just like a trial of a national class, except that
12 Mr. McFarland (and perhaps a handful of Florida-based witnesses) would not testify at a trial
13 focused solely on the *Brady* claims. Most of the documents and witness testimony would be the
14 same under either scenario, as would the jury instructions. Under the circumstances, there is no
15 good reason not to try a national class action.[8]

16 **IV.    CONCLUSION**

17      For the foregoing reasons, Plaintiffs respectfully request the Court certify a national class
18 and a California class.

---

28 [8] If the court were to deny Plaintiffs' request for a national class but instead certified a California
class and a Florida class, Mr. McFarland would reserve his right to try his case in the Middle
District of Florida.

Dated: March 11, 2009

Respectfully submitted,

David J. Millstein (CSB #87878)
dmillstein@millstein-law.com

MILLSTEIN & ASSOCIATES
100 The Embarcadero Suite 200
San Francisco, California 94105
Telephone:    (415) 348-0348
Facsimile:    (415) 348-0336

Scott D. Gilbert (Admitted *pro hac vice*)
    gilberts@gotofirm.com
August J. Matteis, Jr. (Admitted *pro hac vice*)
    matteisa@gotofirm.com
Jonathan M. Cohen (Admitted *pro hac vice*)
    cohenj@gotofirm.com
Kathleen Hale (Admitted *pro hac vice*)
    halek@gotofirm.com

GILBERT LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Telephone:    (202) 772-2200
Facsimile:    (202) 772-1924

*Counsel for the Brady Plaintiffs*

Joseph J. Tabacco, Jr. (CSB #75484)
Christopher T. Heffelfinger (CSB #118058)
Bing W. Ryan (CSB #228641)

BERMAN DEVALERIO
Once California Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-3200
Facsimile:    (415) 433-6382

*Counsel for McFarland*

---

JOINT MOTION FOR CLASS CERTIFICATION                    M:10-cv-02124-SI

1

2 **CERTIFICATE OF SERVICE**

3 I hereby certify that a true and correct copy of the foregoing document was mailed via

4 United States mail, first class postage prepaid, on March 11, 2009, to the following:

5

6 James R. Carroll
David S. Clancy
Cale P. Keable
7 Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street, 31st Floor
8 Boston, Massachusetts 02108

9 Raoul S. Kennedy
10 Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
11 San Francisco, California 94111

12

13 By: _____
Kathleen Hale
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF AUGUST J. MATTEIS, JR.                    3:08-CV-05746-SI