# EXHIBIT 25

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 2792417 (N.D.Cal.)
**(Cite as: 2006 WL 2792417 (N.D.Cal.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Susan STRIGLIABOTTI, et al., Plaintiffs.
v.
FRANKLIN RESOURCES, INC., et al., Defendants.
**No. C 04-00883 SI.**

Sept. 27, 2006.

Ronald Lovitt, Lovitt & Hannan, Inc., San Francisco, CA, Gary A. Gotto, Ron Kilgard, Keller Rohrback, P.L.C., Phoenix, AZ, Gretchen Freeman Cappio, Lynn Lincoln Sarko, Michael Dean Woerner, Tana Lin, Keller Rohrback, LLP, Laura R. Gerber, Seattle, WA, Henry I. Bornstein, J. Thomas Hannan, Lovitt & Hannan, Inc., San Francisco, CA, James C. Bradley, Michael Joseph Brickman, Nina H. Fields, Richardson Patrick Westbrook & Brickman, Charleston, SC, for Plaintiffs.

Anthony Zaccaria, Daniel A. Pollack, Edward T. McDermott, Pollack & Kaminsky, Lori A. Martin, Tori T. Kim, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, Boris Feldman, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Dale M. Edmondson, Meredith N. Landy, O'Melveny & Myers, Menlo Park, CA, Jessica Anne Hoogs, O'Melveny & Myers LLP, for Defendants.

**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

SUSAN ILLSTON, District Judge.

*1 Plaintiffs' motion for class certification is presently pending before the Court. Having carefully considered the parties' papers and the arguments of counsel, the Court hereby DENIES plaintiff's motion.

**BACKGROUND**

**A. Factual Background**

This action is brought by shareholders of several mutual funds ("Funds") created, sold, advised, and managed as part of the Franklin Templeton fund family ("the Fund Complex"). Specifically, the Funds are Templeton Growth Fund, Franklin Balance Sheet Investment Fund, Franklin Flex Cap Growth Fund, Franklin Income Fund, Franklin Small-Mid Cap Growth Fund, Franklin Biotechnology Discovery Fund, Mutual Shares Fund, and Franklin Utilities Fund. Third Am. Compl. ("Compl.") at ¶ 1.[FN1] Plaintiffs are nine individuals who bring suit both in their own rights and for the use and benefit of the aforementioned funds. *Id.* Plaintiff Susan Strigliabotti also brings this case on behalf of a class consisting of all residents of the State of California who were shareholders of the Templeton Growth Fund, the Franklin Balance Sheet Investment Fund, and/or the Franklin Flex Cap Growth Funds at any time from March 4, 2000 to the present. *Id.* at ¶ 45.

> FN1. On March 4, 2004, plaintiffs filed this action on behalf of five funds; they amended the complaint on June 3, 2004, adding Franklin Income Fund, Franklin Small-Mid Cap Growth Fund, Franklin Biotechnology Discovery Fund, Mutual Shares Fund, and Franklin Utilities Fund as plaintiffs, and adding as defendants Franklin Mutual Advisers, LLC, and Franklin Templeton Services, LLC.

The "Class Defendants" are Templeton Global Advisors, Ltd., the advisor to the Templeton Growth Fund; Franklin Advisory Services, LLC, the advisor to the Franklin Balance Sheet Investment Fund; and Franklin Advisers, Inc., the advisor to the Franklin Flex Cap Growth Fund. *Id.* at ¶¶ 1, 38, 39. The Class Defendants also include Franklin Templeton

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2792417 (N.D.Cal.)
**(Cite as: 2006 WL 2792417 (N.D.Cal.))**

Distributors, Inc., a corporation formed by Franklin Resources and the distributor and principal underwriter of the Funds; Franklin Templeton Services, LLC, an indirect, wholly-owned subsidiary of Franklin Resources that provides administrative services to the Funds; and Franklin Resources, Inc., the parent company which formulates and implements the policies and practices for entire Fund Complex. *Id.* at ¶¶ 1-2, 38, 39.

Plaintiffs allege that defendants receive advisory fees from the Funds for investment advisory services and administrative services, and these fees are based on a percentage of the net assets of each of the Funds. *Id.* at ¶ 6. Defendants also charge distribution fees for marketing, selling, and distributing mutual fund shares to new shareholders under "Distribution Plans" adopted pursuant to Rule 12b-1, 17 C.F.R. § 270.12b-1. *Id.* at ¶ 9. These distribution fees are based on a percentage of the net assets of each of the funds in the Fund Complex and amount to more than $7 million annually. *Id.* Plaintiffs allege that the advisory fees charged by defendants are higher than those for other funds for which defendants perform equivalent services, and that the distribution fees are excessive, in violation of Rule 12b-1 and § 36(b) of the Investment Company Act ("ICA"). Plaintiffs specifically claim that, despite significant growth in the Funds since 1983, they have not benefitted from the economies of scale and instead have been charged advisory and distribution fees that are disproportionately large in relation to the services provided. *Id.* at ¶¶ 13-15.

**\*2** Plaintiffs seek to either rescind the investment advisory agreements and Distribution Plans and recover the total fees charged by defendants, or, in the alternative, to recover the excess profits resulting from economies of scale wrongfully retained by defendants, and any other excessive compensation or improper payments received and retained by defendants in breach of their fiduciary duty under § 36(b), 15 U.S.C. § 80a-35(b), and state law. *Id.* at ¶ 28. The Third Amended Complaint alleges individual and derivative claims for: (Count I) breach

of fiduciary duty under § 36(b) for excessive investment advisory fees; (Count II) breach of fiduciary duty under § 36(b) for excess profits from economies of scale; and (Count III) breach of fiduciary duty under § 36(b) for excessive Rule 12b-1 distribution fees and extraction of additional compensation for advisory services. The Complaint also alleges individual, derivative, and class claims for: (Count IV) breach of fiduciary duty under California law; (Count V) civil conspiracy to breach fiduciary duty under California law; (Count VI) common law aiding and abetting breaches of fiduciary duty by Franklin Resources; (Count VII) "acting in concert" under § 876(b) of the Restatement (Second) of Torts; (Count VIII) breach of Cal. Business & Professions Code § 17200; and (Count IX) common law unjust enrichment.

**B. Procedural Background**

Plaintiffs filed this action on March 4, 2004, and have amended the complaint three times. The original complaint, first amended complaint, and second amended complaint included individual and derivative claims, and did not contain class allegations. The third amended complaint, filed on August 17, 2005, is identical to the second amended complaint except for the addition of class action allegations based on California law (Counts IV through IX), and the deletion of claims related to two funds.

Now before the Court is plaintiff's motion to certify the California claims on behalf of a class of California residents who invested in three of the Funds.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 governs class actions. The party seeking class certification "bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accuflex Research Institute, Inc.,* 253 F.3d 1180, 1186, *amended upon denial of rehearing,* 273 F.3d

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2792417 (N.D.Cal.)
**(Cite as: 2006 WL 2792417 (N.D.Cal.))**

1266 (9th Cir.2001).

The decision to certify a class is committed to the discretion of the district court. *See Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1309 (9th Cir.1977). A court may certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied. *See* Fed.R.Civ.P. 23; *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996). Rule 23(a) requires that the following four factors must be met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

**\*3** In addition to demonstrating that the Rule 23(a) requirements are met, plaintiff must establish one or more of the following grounds for maintaining the suit as a class action pursuant to Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed.R.Civ.P. 23(b). Here, plaintiffs assert that this case falls within Rule 23(b)(3).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court must conduct a rigorous analysis to determine whether the Rule 23 requirements have been met. *See Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d

740 (1982). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 691 F.2d 1335, 1342 (9th Cir.1982); *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975). However, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may ... consider the legal and factual issues presented by plaintiff's complaints." 2 Herbert Newberg & Alba Conte, Newberg on Class Actions 7.26 (3d ed.1992).

## DISCUSSION

Plaintiff Susan Strigliabotti seeks certification of this action pursuant to Federal Rule of Civil Procedure 23(b)(3), only with respect to the California law claims [FN2] against the Class defendants, and only with respect to the three funds in which she has invested. Thus, the proposed class action involves some-but not all-of the funds in the case; some-but not all-of the claims in the case; some-but not all-of the defendants in the case; and some-but not all-of the shareholders in the case. Further, the proposed class has been defined to include only California residents who have invested in these funds, although there are presumably similarly-situated shareholders living in other states. Plaintiff has defined the proposed class as "all residents of the State of California who were shareholders in the Templeton Growth Fund, the Franklin Balance Sheet Investment Fund, and/or the Franklin Flex Cap Growth Fund (the "Class Action Funds") at any time from March 4, 2000, to the present (the "Class Period"). Complaint ¶ 45. In response to the Court's order directing supplemental briefing, plaintiff proposed a modified class definition limiting the class period to March 4, 2000 to March 4, 2003, which eliminates any overlap between the time periods covered by the proposed class claims and the § 36(b) claims.

> FN2. The California claims, Counts IV through IX of the Third Amended Complaint, are: (1) breach of fiduciary duty

(Count IV); (2) civil conspiracy to breach fiduciary duty (Count V); (3) common law aiding and abetting breaches of fiduciary duty (Count VI); (4) acting in concert under § 876(b) of the Restatement (Second) of Torts (Count VII); (5) California Business & Professions Code § 17200 (Count VIII); and (6) common law unjust enrichment (Count IX).

The Court concludes that based upon the record here, as well as the unique facts and circumstances of this case, a class action is not a superior method of litigation because of the structural conflicts that would be created between a California class asserting direct claims, and the shareholders asserting derivative claims. An initial matter, the Court notes that during an early hearing in this case-prior to the inclusion of class claims-plaintiffs' counsel explicitly disavowed any intention of pursuing class claims. The parties and the Court proceeded based on this understanding of the case through several amendments to the complaint. It is unclear from the record what compelled plaintiff to now seek certification of certain claims, but it is abundantly clear that the late addition of these scattered, California-based class claims to the national, derivative Investment Company Act-based claims, would substantially complicate and confuse the litigation.

**\*4** More importantly, the Court remains concerned that the interests of the proposed class differ from the interests of the shareholders seeking a derivative recovery. *See Kamerman v. Steinberg,* 113 F.R.D. 511, 515 (S.D.N.Y.1986) (denying class certification because assertion that defendant third parties had assets to compensate both the class and derivative claims was "insufficient to dispel the doubt that recovery in the class action may reduce potential recovery in the derivative action.").[FN3] With respect to the original class definition, which contained overlapping periods of time for both the class claims and the § 36 claims, the class and the derivative actions would be competing for the same pool of money, thus creating a structural incentive

to favor one group over the other.[FN4] The Court does not believe that these competing claims should be combined in a single lawsuit, litigated by the same attorneys.

> FN3. To the extent that *Kamerman* adopted or extended a per se rule holding that a plaintiff could never represent a class against a corporation and also bring derivative claims, the Court finds it unnecessary to reach that question. The Court finds *Kamerman* instructive because the facts of that case are similar to those of the instant case.

> FN4. The Court notes that plaintiff's supplemental brief proposed the modified class definition to "avoid even the appearance of a conflict of interest," which suggests that plaintiffs recognized at least the potential for conflict between class claims and derivative claims directed at the same time period.

Even if the Court adopted the modified class definition, conflicts will still remain because it is likely that a majority of class members will be former shareholders who may not share in a derivative recovery. Defendants have submitted an affidavit showing that approximately 60% of the class will have no current fund ownership as of the date of trial. *See* Greene Aff. at ¶ 9. Plaintiffs assert that any alleged conflicts relating to potential remedies are speculative, and that former shareholders could receive their pro rata portions of any derivative recovery. However, plaintiff has not provided any on point authority for this proposition.[FN5] Accordingly, because class certification would lead to structural incentives to trade off potential recoveries for the Funds in favor of the direct claims, the Court concludes that a class action is not superior, and DENIES plaintiff's motion.

> FN5. For the proposition that derivative recovery could be passed on to former shareholders, plaintiff has submitted the declar-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2792417 (N.D.Cal.)
**(Cite as: 2006 WL 2792417 (N.D.Cal.))**

ation of an ethics professor and the declaration of a lawyer who describes the remedy obtained in an ERISA case. Plaintiff has not cited any statute or case in which derivative recovery in a securities action was passed on to former shareholders.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' motion for class certification. (Docket No. 144).

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Strigliabotti v. Franklin Resources, Inc.
Not Reported in F.Supp.2d, 2006 WL 2792417 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 26

Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)
**(Cite as: 2009 WL 192888 (N.D.Cal.))**

# H

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Gregory M. JORDAN, on behalf of a putative class,
Plaintiff,
v.
PAUL FINANCIAL, LLC, et al., Defendants.
**No. C 07-04496 SI.**

Jan. 27, 2009.

David M. Arbogast, Jeffrey K. Berns, Arbogast &
Berns LLP, Tarzana, CA, Jonathan Shub, Seeger
Weiss LLP, Philadelphia, PA, Michael C. Eyerly,
Patrick Deblase, Paul R. Kiesel, Kiesel Boucher &
Larson, Beverly Hills, CA, Christopher A. Seeger,
Lee A. Weiss, Seeger Weiss LLP, Rebecca Tingey,
Dreier LLP, New York, NY, Gerson Harry Smoger,
Smoger & Associates, P.C., Oakland, CA, Steven
Michael Bronson, Smoger & Associates PC, Oak-
land, CA, for Plaintiff.

Irene C. Freidel, Phoebe S. Winder, Brian M. For-
bes, David D. Christensen, Kirkpatrick & Lockhart
Preston Gates Ellis LLP, Boston, MA, Matthew
Gordon Ball, K&L Gates, Paul S. Rosenlund, Ter-
rance James Evans, Duane Morris LLP, San Fran-
cisco, CA, for Defendants.

**ORDER DENYING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION and DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION**

SUSAN ILLSTON, District Judge.

**\*1** On January 16, 2009, the Court heard oral argu-
ment on the plaintiff's motions for class certifica-
tion and for a preliminary injunction. Having con-
sidered the arguments of the parties and the papers
submitted, and for good cause shown, the motions

are DENIED.

## BACKGROUND

The subject of this litigation is a dispute over so-
called payment-option adjustable rate mortgages
("Option ARM" loans).[FN1] On August 30, 2007,
plaintiff Gregory Jordan filed a putative class ac-
tion complaint against defendant Paul Financial,
LLC ("Paul Financial"). The complaint was
amended twice in order to add named defendants
Luminent Capital Mortgage, Inc., Luminent Mort-
gage Trust 2006-2, and HSBC National Association
("HSBC"), such that the operative complaint is now
the Second Amended Complaint ("SAC"), which
was filed on May 14, 2008.

> FN1. Option ARM loans are also referred
> to as pay-option loans. They typically have
> an adjustable interest rate and allow the
> borrower to make one of several payment
> amounts each month. Decl. of Dennis Tus-
> sey ("Tussey Decl.") in Supp. of Def. Opp.
> to Pl. Mot. for Class Cert., ¶ 7.

Plaintiff has brought suit on behalf two putative
classes. The California class consists of all indi-
viduals who received an option ARM loan through
Paul Financial on their primary residence in Cali-
fornia from August 30, 2003 to the present. SAC ¶
50.[FN2] The national class consists of all individu-
als who received an option ARM loan through Paul
Financial on their primary residence in the United
States from August 30, 2003 to the present. Id.[FN3]

> FN2. In his opening brief, plaintiff defines
> a second California class, consisting of in-
> dividuals whose loans were secured by real
> property within the U.S. (excluding Cali-
> fornia) and approved by defendants inside
> California.

> FN3. In his opening brief, plaintiff limits
> the national class to those borrowers whose

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)
**(Cite as: 2009 WL 192888 (N.D.Cal.))**

loans were consummated on or after August 29, 2006.

Plaintiff refinanced his existing home loan and entered into an option ARM loan agreement with Paul Financial on or about December 30, 2005. *Id.* ¶ 2. Plaintiff alleges that the loan he bought is a "deceptively devised" financial product. *Id.* ¶ 23. According to plaintiff, Paul Financial promised that the loan would have a low, fixed interest rate, but plaintiff was subsequently charged a much higher interest rate. *Id.* Paul Financial also disguised from plaintiff that his option ARM loan was designed to cause negative amortization. [FN4] *Id.* In addition, defendants breached their agreement to apply plaintiff's monthly payments to both the principal and interest owed on the loans. *Id.* ¶ 169. Plaintiff brought claims under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.;* and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code §§ 17200 *et seq.;* as well as common law claims for fraud, breach of contract, and breach of the covenant of good faith and fair dealing.

> FN4. Negative amortization occurs when a borrower's monthly payment does not cover the interest due on the loan. The unpaid interest is then capitalized into principal of the loan.

As of December 22, 2008, Paul Financial's assets amounted to less than $1,000 and the company was scheduled to cease business operations on December 31, 2008. Decl. of Dennis Tussey ("Tussey Decl.") in Supp. of Def. Opp. to Pl. Mot. for Class Cert., ¶ 3. Paul Financial was in the business of originating, underwriting and funding first and second lien residential mortgage loans, and servicing those loans. *Id.* ¶ 4. Its practice was to sell approximately 75% of its loans to third-party investors, *id.* ¶ 5, and to sell the servicing rights to another investor, *id.* ¶ 26. During the period that it originated option ARM loans, Paul Financial sold the loans to about ten investors. *Id.* ¶ 27. It maintained records of the names of individuals who obtained loans from Paul Financial and the investors to whom Paul Financial sold

those loans. *Id.* Paul Financial did not, however, keep records of subsequent sales of those loans. *Id.*

\*2 Paul Financial sold plaintiff's loan to Luminent Capital Mortgage, Inc. on January 24, 2006. *Id.* ¶ 57. The loan was pooled with other adjustable rate loans and is currently held by defendant Luminent Trust 2006-2, which is a mortgage-backed security pool. SAC ¶¶ 4-5. The trustee of the pool is defendant HSBC. *Id.* Paul Financial sold the servicing rights for plaintiff's loan to Greenwich Capital. Tussey Decl., ¶ 58. Paul Financial serviced plaintiff's loan under contract with Greenwich until December 1, 2008. *Id.*

## LEGAL STANDARD

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed.R.Civ.P. 23; *see also Cummings v. Connell,* 316 F.3d 886, 895 (9th Cir.2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed.R.Civ.P. 23; *see also Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a).

A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)
**(Cite as: 2009 WL 192888 (N.D.Cal.))**

a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed.R.Civ.P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Staton v. Boeing Co.,* 327 F.3d 938, 954 (9th Cir.2003); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Petroleum Prods. Antitrust Litig.,* 691 F.2d 1335, 1342 (9th Cir.1982); *see also Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie,* 524 F.2d at 901 n. 17. However, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions,* 7.26 (4th ed.2005). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed.R.Civ.P. 23. *See Blackie,* 524 F.2d at 901 n. 17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 961 (9th Cir.2005); *see also Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

## DISCUSSION

### 1. Motion to Certify Class

### A. Standing to represent TILA class

*3 Defendants argue that plaintiff does not have standing to represent the nationwide TILA class because plaintiff's TILA claim is barred by the statute of limitations. To have standing to sue as a class representative a plaintiff "must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *See Epstein v. MCA, Inc.,* 179 F.3d 641, 652 (9th Cir.1999) (citing *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974)).

TILA provides that "[a]ny action under this section may be brought ... within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but ... the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. California,* 784 F.2d 910, 915 (9th Cir.1986).

Plaintiff's loan transaction was consummated in January, 2006. He brought this action on August 30, 2007. Plaintiff's claim is therefore time barred unless he can establish that he did not discover or have a reasonable opportunity to discover the purported TILA violations until August 30, 2006. Plaintiff stated at deposition that he discovered that his loan was negatively amortizing at most four months after closing, when he received his first billing statement. Decl. of David M. Arbogast ("Arbogast Decl."), ex. 4 (Jordan Depo.), Tr. 51:1-10; Decl. of Irene Freidel in Supp. of Defs. Opp. to Pl. Mot. to Certify Class, at ex. 8 (Jordan Depo.), Tr. 56:25-57:10. Plaintiff therefore concedes that he had actual knowledge of his negative amortization claim by May, 2007.

Plaintiff nonetheless argues that his claim is not time barred because he could not have discovered *other* purported TILA violations (relating to disclosure of the true interest rate of the loan and the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)
**(Cite as: 2009 WL 192888 (N.D.Cal.))**

interest rate underlying the payment schedule, and to the discounted initial interest rate) until November 17, 2006, the date of a hearing on plaintiff's small claims suit over a broker rebate. The fact that plaintiff may have other claims arising under TILA, however, does not remedy the statute of limitations bar on his negative amortization claim.[FN5] In addition, plaintiff does not explain why he could not have discovered the other TILA violations until the small claims action, which addressed only nondisclosure of a broker rebate. Arbogast Decl., ex. 4, 106:24-107:4. The portions of the deposition cited by plaintiff contain no information about TILA violations and do not establish that the statute of limitations should be tolled until November, 2006.

> FN5. Plaintiff cites *Santa Maria v. Pacific Bell,* 202 F.3d 1170, 1178 (9th Cir.2000), for the proposition that if equitable tolling applies to certain claims arising under TILA, no TILA claim can be time barred. In fact, *Santa Maria* held that plaintiff's claims for disability discrimination claim were time barred because plaintiff should have known about the possible existence of such a claim on the day he was fired. 202 F.3d at 1178.

Accordingly, the Court finds that plaintiff does not have standing to represent the national class for TILA violations.

**B. Standing to represent California classes**

**\*4** Defendants argue that plaintiff is not suitable to represent the class members in the two California classes.[FN6] The first California class consists of individuals who, since August 29, 2003, have obtained an ARM loan that was sold or owned by defendants and secured by property in California; the second California class consists of those individuals who, since August 29, 2003, have obtained an ARM loan that was sold or owned by defendants and secured by property *outside* California, and approved by defendants inside California. According

to defendants, plaintiff does not have standing to represent the members of these classes because he cannot satisfy the traceability requirement for standing.

> FN6. Defendants raise this issue in their discussion of the typicality requirement. The Court finds that it is more appropriately addressed as a challenge to plaintiff's standing to represent the California classes.

Standing requires, at a minium, three elements: (1) injury-in-fact; (2) traceability; and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Traceability requires that there be "a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant". *Id.* (internal citation and ellipses omitted). A borrower cannot establish traceability-and therefore lacks standing-if a defendant lender has *never* held the borrower's loan. *Easter v. Am. W. Fin.,* 381 F.3d 948, 961 (9th Cir.2004); *see also Dash v. FirstPlus Home Loan Owner Trust 1996-2,* 248 F.Supp.2d 489, 503 (M.D.N.C.2003) ("As to those trusts which have never held a named plaintiff's loan, Borrowers cannot allege a traceable injury and lack standing.").

Defendants argue that plaintiff cannot establish traceability because members of the putative class own loans that are held and serviced by entities other than the companies that hold and service plaintiff's loan. The Court agrees. Under *Easter,* plaintiff lacks standing to join defendants that have never held or serviced his loans. Plaintiff appears to propose conducting class discovery to identify all possible defendants, and to then join named plaintiffs who would have standing against those defendants. This unorthodox procedure reverses the traditional approach of seeking class certification on behalf of a class that is represented by named plaintiffs who have standing to represent the putative class.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)
**(Cite as: 2009 WL 192888 (N.D.Cal.))**

## C. Rule 23(a)(3): Typicality

In light of the Court's conclusion that defendant does not have standing to represent the nationwide and California classes, the Court need not reach the requirements of Federal Rule of Civil Procedure 23. Nonetheless, in the interest of completeness, the Court will also consider whether plaintiff can satisfy the typicality requirement of Rule 23(a)(3).

Under Rule 23(a)(3), the Court must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed.R.Civ.P. 23(a)(3). The named plaintiff need not have claims that are identical to those of the class members he seeks to represent, but he "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal citation omitted). A court must determine "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992).

*5 Defendants argue that plaintiff's fraud claims are not typical because they are subject to unique defenses. The gravamen of plaintiff's complaint is that defendants failed to disclose material information about the nature of plaintiff's loan, including the true interest rate, the fact that the interest rate was variable, and the risk of negative amortization. Defendants argue that plaintiff cannot satisfy the typicality requirement because at deposition, he was equivocal as to whether he read the loan documents. *See* Decl. of Irene Freidel in Supp. of Defs. Opp. to Pl. Mot. to Certify Class, at ex. 8 (Jordan Depo.), 62:9-12, 65:4-8. In addition, plaintiff's mortgage broker (who was plaintiff's former colleague) attests that he explained to plaintiff that the minimum payments might not cover the interest due and that as a result, the principal balance on plaintiff's loan could increase. Decl. of Russell Ng

in Supp. of Defs. Opp. to Pl. Mot. to Certify Class ("Ng Decl."), ¶ 15, 20. Plaintiff's mortgage broker also describes plaintiff as a "savvy consumer" who had purchased several properties previously and asked "a lot of questions about various mortgage products and terms." *Id.* ¶ 21. According to defendants, this evidence establishes that plaintiff is subject to the unique defense that he will not be able to prove that he relied on defendants' purportedly false representations or material omissions in the loan documents. Plaintiff responds that he will prove fraud on the basis of material omissions in the loan documents provided to plaintiff, and that he therefore need not establish reliance. To the extent plaintiff must prove reliance, he also argues that reliance can be inferred.

Plaintiff's complaint reveals that his fraud claims are based on allegations that defendants made affirmative misrepresentations, not just material omissions. In his claim for fraudulent omission, plaintiff alleges that defendants had a duty to disclose material facts about the true interest rate of the loans and the likelihood that negative amortization would occur "based upon Defendants' partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur." *See* SAC ¶ 129. Plaintiff's UCL claim for unfair and fraudulent business practices alleges that defendants "marketed and advertised to the general public through brochures, flyers and other substantively identical marketing material" deceptive information about loan rates and the risk of negative amortization. *See id.* ¶ 147.

The Court agrees with defendants that plaintiff will have to prove that he relied on defendants' representations. *See Fox v. Pollack,* 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 (Cal.Ct.App.1986) (citing Cal. Civ.Code § 1710). [FN7] "[T]he defense of non-reliance is not a basis for denial of class certification." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992). If, however, "it is predictable that a major focus of the litigation will be on a de-

fense unique" to the named plaintiff, that plaintiff will not satisfy the typicality requirement of Rule 23(a). *Id.* Here, the evidence cited by defendants regarding plaintiff's working relationship with his mortgage broker, his prior experience with mortgage products, and the possibility that he did not read the loan documents establishes that the litigation will focus on a defense unique to plaintiff. For these reasons, the Court finds that plaintiff's fraud claims are not typical of the putative class.

> FN7. The Court cannot, as plaintiff urges, infer reliance in this case. Plaintiff argues that the Court can infer plaintiff relied on false statements about the true nature of the loan because it is highly improbable that plaintiff would have otherwise entered into a loan that would cause him to lose equity in his home and would require prohibitively high payments in the future. This case, however, is unlike *Peterson v. H & R Block Tax Services, Inc.,* 174 F.R.D. 78, 85 (N.D.Ill.1997), cited by plaintiff, in which the "only logical" explanation for the class members' choice to pay a fee for a service they could not receive was that they relied on a representation by the defendant. Here, it is plausible that plaintiff signed the mortgage note because he believed it would benefit him. According to his mortgage broker, plaintiff sought a mortgage product that would reduce his monthly payments and let him "buy time" until the value of his home increased, allowing him to refinance in the future. *See* Ng Decl. ¶ 17.

**\*6** Defendants also argue that plaintiff's contract claims are not typical. The central allegation of plaintiff's contract claims is that defendants promised to apply his monthly payments to both the principal and interest owed on the loans, but failed to do so. Defendants contend this claim is not typical because it depends on language in his loan documents, but the members of the putative class did not

sign contracts with uniform language. Plaintiff responds that class members signed "form contracts," that are "standardized loan documents," and "substantively identical." *See* Pl. Reply in Supp. of Mot. for Class Cert., at 9.

Paul Financial offered approximately forty-four types of option ARM loans. *See* Tussey Decl. ¶ 8. The promissory note that plaintiff signed provided, "I will pay principal and interest by making a payment every month." *See* SAC, ex. 1 ¶ 3(A). This language, according to defendants, is not common to all forty-four option ARM loans offered by Paul Financial. For example, one adjustable rate note stated that if the monthly payment "includes both Principal and interest, it will be applied to interest before Principal." *See* Freidel Decl., ex. 4, p. 2953. Another note provides, "Payment of the Minimum Payment amount will result in accrued but unpaid interest being added to Principal. The unpaid Principal and any accrued but unpaid interest will then accrue additional interest at the rate then in effect." *See id,* ex. 5, p. 2715.

The Court finds plaintiff's characterization of putative class members' loan documents as uniform does not accord with the evidence cited by defendants. Plaintiff argues in his reply brief that the putative class is limited to those borrowers whose option ARM loans have the following three characteristics:

1) the payment schedule listed on the [Truth in Lending Act disclosure statement ("TILDS") ] for the first one to three years is based on an initial interest rate that is lower than the one listed on that same TILDS

2) making payments according to the payment schedule in the TILDS provided by Paul Financial will result in negative amortization in the first one to three years of the note

3) the initial interest rate exists for only the first month of the loan

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)
**(Cite as: 2009 WL 192888 (N.D.Cal.))**

Pl. Reply in Supp. of Mot. for Class Cert., at 3. At oral argument, plaintiff confirmed that he seeks to amend his complaint to limit the scope of the putative classes.[FN8] After oral argument, plaintiff filed a motion to withdraw the instant motion for class certification in order to redefine the class (the most recent proposed class definition is different from that described in his reply brief) and to conduct discovery on "other issues" raised in defendants' opposition. [Docket No. 150] Plaintiff's request to withdraw this motion is DENIED. Should plaintiff wish to redefine the putative class, he may seek leave to file an amended complaint. Plaintiff is directed to meet and confer with opposing counsel over any discovery disputes and to file a letter brief with the Court if that process does not resolve the dispute.

> FN8. The Court notes that plaintiff's description of the putative class in his opening brief did not include these limitations. *See* Pl. Mot. for Class Certification, at 6.

**\*7** For these reasons, plaintiff cannot satisfy the typicality requirement of Rule 23(a)(3). Plaintiff's motion for class certification is DENIED.

**2. Motion for Preliminary Injunction**[FN9]

> FN9. Plaintiff objects to defendants' inclusion of a three-page "addendum" to their forty-page opposition to plaintiff's motion for a preliminary injunction. Plaintiff contends that this addition violates Local Rule 7-4(b), which requires parties to seek court approval for filings exceeding the twenty-five-page limit. While the parties stipulated to filing motions of forty pages, plaintiff's objection is well taken as defendants did not seek court approval before filing this three-page addition. The Court GRANTS plaintiff's motion to strike Addendum A to defendants' opposition and did not consider plaintiff's fifteen-page response to Addendum A in deciding this

motion.

Plaintiff seeks a preliminary injunction enjoining defendants from (1) offering option ARM loans with certain characteristics and (2) recasting ARM loans without first reallocating plaintiff's past payments. Requests for preliminary injunctive relief require the movant to demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor. *See Bernhardt v. Los Angeles County,* 339 F.3d 920, 925 (9th Cir.2003). In light of its denial of plaintiff's motion for class certification, the Court can apply an injunction only as to the named plaintiff. *See Zepeda v. I.N.S.,* 753 F.2d 719, 727 (9th Cir.1984) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

The foregoing discussion demonstrates that plaintiff's TILA claim related to negative amortization is barred by the statute of limitations and that defendants' evidence suggests that plaintiff's fraud claim may not be viable because it subject to the defense of non-reliance. Defendants have also raised serious questions about the viability of plaintiff's contract claims. Plaintiff's claim for breach of contract appears to be based on the statement "I will pay principal and interest by making a payment every month" in plaintiff's mortgage note. *See* Tussey Decl., ex. 18, ¶ 3(A). The same section of the note, however, also provides, "Each monthly payment ... will be applied to interest before Principal ." *Id.* It is therefore uncertain that plaintiff will be able to establish that defendants breached the terms of the note when they applied plaintiff's payments only to the interest due. Accordingly, the Court finds that plaintiff has not established that a preliminary injunction is warranted in this case. After oral argument, plaintiff submitted a motion for leave to withdraw his motion for a preliminary injunction. [Docket No. 151] Plaintiff's motion is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)
**(Cite as: 2009 WL 192888 (N.D.Cal.))**

DENIED in light of the Court's ruling on class certification.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for class certification, DENIES plaintiff's motion for a preliminary injunction, and DENIES plaintiff's motions to withdraw these motions. [Dockets Nos. 150, 151]

**IT IS SO ORDERED.**

N.D.Cal.,2009.
Jordan v. Paul Financial, LLC
Not Reported in F.Supp.2d, 2009 WL 192888 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 27

Westlaw.

Not Reported in F.Supp.2d, 2005 WL 3113065 (N.D.Cal.)
**(Cite as: 2005 WL 3113065 (N.D.Cal.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Francis KELLY, et al., individually and on behalf
of others similarly situated, Plaintiffs,
v.
CITY AND COUNTY OF SAN FRANCISCO, et
al., Defendants.
**No. C 05-1287 SI.**

Nov. 21, 2005.

Diane Sidd-Champion, Daniela I. Kraiem, Mc-
Carthy Johnson & Miller Law Corporation, San
Francisco, CA, for Plaintiffs.

Ruth Marian Bond, Esq., Anthony Havemeyer
Grumbach, San Francisco City Attorney's Office,
San Francisco, CA, for Defendants.

ORDER GRANTING MOTION TO CERTIFY
CLASS

ILLSTON, J.

**\*1** Plaintiffs' motion for class certification came on
regularly for hearing on November 18, 2005. Hav-
ing carefully considered the pleadings and papers
on file, and the arguments of counsel, the Court
GRANTS the motion in the respects and for the
reasons set out below.

BACKGROUND

Plaintiffs are former uniformed employees of the
San Francisco Fire Department ("SFFD") who filed
this action concurrently as a class action and a col-
lective action to recover wages in the form of
premiums above their standard rate of pay.
Plaintiffs claim the premiums should have been in-
cluded in the final paycheck at the time of separa-
tion from employment.

A uniformed employee of the SFFD who meets cer-
tain qualifications may receive wage premiums that
increase the rate of pay. Upon separation from em-
ployment with the SFFD, the employee receives a
final paycheck that covers wages for normal hours
worked, overtime work, and a lump sum payout for
unused vested sick leave and unused vacation
leave. The parties agree that qualified employees
who received one to three of the premiums in ques-
tion (Training and Education Achievement Pay, Re-
tention Pay, and Terrorism Response Training Pay)
received the premiums in their overtime, vested
sick leave and unused vacation leave during the
span of their employment but not in the final
paycheck. *See* Compl. ¶ 27-29, 31-33; *see also* Ans.
¶ 27-29, 31-33. The parties dispute whether the
three premiums should have been included in these
three types of pay in the final paycheck.

On April 4, 2005, plaintiffs filed their first amended
complaint. In the first cause of action plaintiffs al-
lege that defendants failed to compensate them for
the premiums in the lump sum payout for overtime
hours in violation of the Federal Labor Standards
Act. In the second cause of action plaintiffs allege
that defendants failed to compensate them for the
premiums in the lump sum payout for unused vaca-
tion leave in violation of California Labor Code
section 227.3. In the third cause of action plaintiffs
allege that defendants failed to compensate them
for the premiums in the lump sum payout for un-
used vested sick leave in violation of San Francisco
Civil Service Rule 320.16. Plaintiffs bring the latter
two claims as petitions, seeking writs of mandate
under California Civil Procedure section 1085.[FN1]

> FN1. Plaintiffs request several types forms
> of relief but monetary damages are a signi-
> ficant form of relief sought under all
> claims. Similar to the other claims,
> plaintiffs seek the following relief under
> the third cause of action: (1) A declaratory

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3113065 (N.D.Cal.)
**(Cite as: 2005 WL 3113065 (N.D.Cal.))**

judgment that defendants have violated San Francisco Civil Service Commission Rule 320.16 as to the Plaintiffs and the Class by failing to include Training and Education Achievement Pay, Retention Pay and Terrorism Response Training Pay in payments for accrued vested sick leave; (2) an order requiring defendants to provide a complete and accurate accounting of all the accrued vested sick leave to which each plaintiff is entitled; (3) a peremptory writ of mandate ordering defendants to comply with Civil Service Commission Rule 320.16 and to pay each eligible plaintiff for accrued vested sick leave at the rate that includes Training and Education Achievement Pay, Retention Pay and Terrorism Response Training Pay, plus interest; (4) an order that Defendants include Training and Education Achievement Pay, Retention Pay and Terrorism Response Training Pay, as appropriate, in all future lump sum payments for accrued compensatory time in lieu of overtime, vacation time and vested sick leave; and (5) an award to Plaintiffs of reasonable attorneys' fees and the costs.

As to the first cause of action, plaintiffs do not request class certification. Potential plaintiffs are being provided notice and the opportunity to opt in to the suit under the first claim because the parties stipulated to a Notice to Potential Opt-In Plaintiffs Right to Participate in the Fair Labor Standards Act Lawsuit, filed on October 13, 2005. The stipulation was entered by the Court in an order dated October 17, 2005. *See* Order, Docket 37. Plaintiffs filed a Sixth Notice of Filing Consent to Join Forms on November 14, 2005, indicating that as of that date 157 of an estimated 300 potential plaintiffs have chosen to opt in. *See* Pls. Notice, Docket 56.

**\*2** On October 17, 2005, plaintiffs filed the motion for certification of the class action for the second and third claims pursuant to Federal Rule of Civil Procedure 23. As to the second cause of action, the issue of certification is moot. The Court will be granting judgment on the pleadings as to the second claim without prejudice. As to the third cause of action, the claim is based on undisputed facts concerning the exact same conduct by defendants toward all proposed class representatives and potential class members. According to defendant City, this conduct is based on its policy to exclude premiums from the lump sum payment of unused vested sick leave upon separation from employment. Plaintiffs claim that class certification is appropriate under Federal Rule of Civil Procedure 23. Defendants claim that class certification is barred under the third claim because of defendants' plan to invoke the equitable defense of laches against most class representatives and some class members.

### LEGAL STANDARD

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed.R.Civ.P. 23; *see also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir.2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed.R.Civ.P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a).

A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3113065 (N.D.Cal.)
**(Cite as: 2005 WL 3113065 (N.D.Cal.))**

Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed.R.Civ.P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Staton v. Boeing Co.,* 327 F.3d 938, 954 (9th Cir.2003); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 691 F.2d 1335, 1342 (9th Cir.1982); *see also Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975); *Burton v. Mountain West Farm Bureau Mut. Ins. Co.,* 214 F.R.D. 598, 608 (D.Mont.2003). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie,* 524 F.2d at 901 n. 17. However, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions,* 7.26 (4th ed.2005). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed.R.Civ.P. 23. *See Blackie,* 524 F.2d at 901 n. 17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan,* 402 F.3d 952, 961 (9th Cir.2005); *see also Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

DISCUSSION

*3 The Court may certify a proposed class if plaintiffs demonstrate that all prerequisites under Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met. *See* Fed.R.Civ.P. 23; *see also Valentino,* 97 F.3d at 1234. Plaintiffs claim that the proposed class meets all certification requirements under both Rule 23(a) and Rule 23(b). Defendants do not dispute that the numerosity requirement of Rule 23(a) has been met, but claim that the latter three Rule 23(a) requirements of commonality, typicality and adequate representation have not been met. Defendants also contend that class certification is inappropriate under Rule 23(b)(3).

1. Laches defense

Defendants' sole argument against certification under each of these provisions is that defendants plan to assert the equitable affirmative defense of laches FN2 against many plaintiffs based on a delay in filing the third claim, which was filed as a writ of mandate under California Civil Code section 1085. Defendants claim that proof of laches will raise individual questions which will undermine commonality and typicality, will adversely impact the representative plaintiffs' ability to represent the class, and will predominate over common class questions.

> FN2. Laches is an affirmative defense that can bar relief when a plaintiff delays prosecuting a claim challenging an administrative decision, if the delay is shown to be unwarranted and shown to have caused prejudice to the defendant. *See Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 951 (9th Cir.2001); *see also Johnson v. City of Loma Linda,* 24 Cal.4th 61, 68, 99 Cal.Rptr.2d 316, 5 P.3d 874 (2000); *Barndt v. County of Los Angeles,* 211 Cal.App.3d 397, 403, 259 Cal.Rptr. 372 (2nd Dist.1989). Defendants plan to utilize the laches defense, claiming some plaintiffs separated from employment years prior to filing this action. Defendants

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

claim that therefore class certification is barred because at trial the fact-finder will be required to make laches determinations in a case-by-case analysis.

To the extent that the parties in their papers raise substantive issues concerning the laches defense, such issues go to the merits of the case and will not be resolved at this point. *McCune v. F. Alioto Fish Co.,* 597 F.2d 1244, 1249 (9th Cir.1979); *see Staton,* 327 F.3d at 954; *see also Eisen,* 417 U.S. at 177-78. For present purposes, the Court addresses defendants' laches defenses only to determine whether proof of such defenses would skew the focus away from the issues concerning the class action. *See State of Alaska.,* 123 F.3d at 1321.

The Court finds that no authority for defendants' claim that each element of the laches analysis will require a fully individualized inquiry. The cases cited by defendants merely involved a laches analysis concerning an individual plaintiff. *See Hopson v. Nat'l Union of Marine Cooks and Stewards,* 116 Cal.App.2d 320, 325, 326, 253 P.2d 733 (1st Dist.1953); *see also Lewis v. Superior Court of Los Angeles County,* 261 Cal.App.2d 736, 740, 68 Cal.Rptr. 631 (1968). Here, common evidence will be almost certainly be involved in the laches analysis. For example, determinations regarding undue delay in filing the claim, and whether the City was prejudiced by any such delay, can be presented categorically. At most, determinations concerning undue delay will involve both common and individualized inquiry concerning both the length of the delay and the reasons for it. *See Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 951 (9th Cir.2001); *see also Barndt v. County of Los Angeles,* 211 Cal.App.3d 397, 403, 259 Cal.Rptr. 372 (2nd Dist.1989). Unique affirmative defenses that require some individualized inquiry do not present a per se bar to certification. *See Cavanaugh,* 306 F.3d 726, 741 (9th Cir.2002); *see also Hanlon,* 150 F.3d 1011, 1019 (9th Cir.1998); *Local Joint Executive Bd.,* 244 F.3d 1152, 1163 (9th Cir.2001). Instead, courts consider each of the criteria under Rule 23 in

light of whether the common facts and issues that unite the class are overshadowed by the use of unique affirmative defenses. *See State of Alaska,* 123 F.3d at 1321; *see also Cavanaugh,* 306 F.3d at 741; *Hanlon,* 150 F.3d at 1019; *Local Joint Executive Bd.,* 244 F.3d at 1163.

2. Requirements under Federal Rule of Civil Procedure 23(a)

**\*4** All proposed classes must satisfy the four requirements of Rule 23(a).

a. Numerosity-Rule 23(a)(1)

The first requirement for class certification under Rule 23(a) is that the class must be so numerous that joinder of all members is impracticable. *See* Fed.R.Civ.P. 23(a)(1). The requirement depends on the practicality of joinder in light of the facts and circumstances of each case, and does not provide a required minimum number of class members. *See id.; see also Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir.1964).

Defendants do not dispute that the numerosity requirement has been met. It is also undisputed that the size of the proposed class is approximately 300 former uniformed employees of the SFFD. *See* Pls. Mot. at 4. The Court finds that joinder of up to 300 plaintiffs would impose practical difficulties and that therefore the proposed class meets the numerosity requirement under Fed.R.Civ.P. 23(a)(1).

b. Commonality-Rule 23(a)(2)

Class certification requires that questions of law or fact exist that are common to all class members and representatives. *See* Fed.R.Civ.P. 23(a)(2); *see also Hanlon,* 150 F.3d at 1019 (9th Cir.1998). The parties agree that as a result of defendant City's policy defendants excluded premiums in the lump sum payout for unused vested sick leave. Plaintiffs claim that therefore defendants violated the San

Not Reported in F.Supp.2d, 2005 WL 3113065 (N.D.Cal.)
**(Cite as: 2005 WL 3113065 (N.D.Cal.))**

Francisco Civil Service Rules.

Defendants do not dispute common legal and factual issues exist as to the claim, relying instead on the claimed need to try laches individually. The Court finds that the third claim is based on allegedly uniform conduct originating from defendant City's policy as a violation of the Civil Service Rules, thereby uniting the class in issues of both law and fact. For the reasons previously discussed, the Court finds the laches inquiry involves common issues of law and will necessarily involve some common evidence as well. The Court finds that the laches inquiry does not negate commonality and that the requirements under Rule 23(a)(2) have been met.

c. Typicality-Rule 23(a)(3)

Under Rule 23(a)(3), the Court must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed.R.Civ.P. 23(a)(3) (emphasis added). The requirements of typicality and commonality tend to overlap. *See Gen. Tel. Co.,* 457 U.S. at 158 n. 13. ("Both serve as guideposts ... as to whether under the particular circumstances the maintenance of the class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.").

Defendants do not dispute the typicality of the claims, but rather the typicality of the defenses, raising again the laches argument and claiming that the laches analysis would "usurp a significant portion of the litigants' time and energy." *See McNichols' v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 334 (N.D.Ill.1982). The issue is not whether there are individual issues of fact or law, but whether the proposed representatives have interests typical to those of the class members so that they will sufficiently pursue the class members' interests at trial. *See Gen. Tel. Co.,* 457 U.S. at 158 n. 13. Defendants cite cases where the proposed representatives'

interests differed significantly from the class members. *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (typicality requirement not met in securities fraud action due to the proposed representative plaintiff's sophistication concerning securities market as compared to all class members); *see also Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1163-65 (typicality requirement not met because two named plaintiffs, but no class members, were subject to a unique defense); *McNichols,* 97 F.R.D. at 334 (claims and defenses of the named plaintiffs were atypical of claims and defenses of class members). Here, the proposed representatives' interests in litigating liability are typical of all class members. As to laches, defendants plan to assert the defense against many plaintiffs, including most representatives and some class members. Thus the Court finds that it will be in the representatives' interests to litigate strongly against the defense and that therefore the requirements under Rule 23(a)(3) have been met.

d. Adequate representation-Rule 23(a)(4)

*5 The representation requirement is meant to assure that the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a)(4). Constitutional due process concerns require that absent class members be afforded adequate representation. *See Hanlon,* 150 F.3d at 1020. Such representation is determined by an absence of conflict of interests, and the indication that the named plaintiffs and their counsel will prosecute the action fully on behalf of the interests of the class. *See id.*

Defendants do not dispute the competency of class counsel under Rule 23(a)(4) and do not challenge plaintiffs' claim that class counsel will fairly and adequately protect the interests of the class. Defendants do contend that representative plaintiffs cannot adequately represent the proposed class because they, more than the unnamed plaintiffs, will be subject to the unique defense of laches. However, defendants again rely on cases that differ

Not Reported in F.Supp.2d, 2005 WL 3113065 (N.D.Cal.)
**(Cite as: 2005 WL 3113065 (N.D.Cal.))**

materially from the present case. *See Hanon,* 976 F.2d 508 (9th Cir.1992) (named plaintiff sophisticated concerning securities market as compared to all class members); *see also Koos,* 1163-65 (representative plaintiffs subject to unique defense no class members were subject to such a defense). The Court finds that the adequacy of representation requirement has been met under Rule 23(a)(4).

3. Requirements under Rule 23(b)

In addition to the requirements under Rule 23(a), a plaintiff must also establish that under Rule 23(b) one or more of the grounds for maintaining the suit are met, including that (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed.R.Civ.P. 23(b).

Plaintiffs claim that certification is appropriate under all of the provisions of Rule 23(b). Defendants in their papers do not reply concerning Rule 23(b)(1) or Rule 23(b)(2), but argue that class certification is barred under Rule 23(b)(3). For the following reasons, the Court finds that certification is appropriate under Rule 23(b)(3).

Class certification under Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *See* Fed. R. of Civ. P. 23(b)(3). The provision provides a non-exhaustive list of factors to be considered concerning the predominance inquiry:

The matters pertinent to the finding include: (A) the interest of members of the class in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*6 Fed.R.Civ.P. 23(b)(3).

The Court finds that none of these factors under Rule 23(b)(3) weigh against class certification. The class members' interests do not appear to be better served by litigating separate actions. No class member has expressed a desire to proceed individually and no individual actions are now pending. To date, 157 of the estimated 300 potential plaintiffs have opted in to the collective action under the first claim. *See* Notice, Docket 56. In addition, if plaintiffs do not proceed as a class, they may be unable to litigate their claims individually because of the disparity between litigation costs and what plaintiffs hope to recover.[FN3] *See Local Joint Executive Bd.,* 244 F.3d at 1163; *see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Thus it appears to be in the interest of the plaintiffs to concentrate the claims in the class action.

> FN3. For example, plaintiffs allege that if relief were granted plaintiff Francis Kelly would receive $2,795.3. *See* Kelly Dec. ¶ 7 Plaintiff Dennis Kruger would receive $3,751.35. *See* Kruger Dec. ¶ 7. Plaintiff Philip Kelber would receive $3,515,96. *See* Kelber Dec. ¶ 8. Plaintiff Joseph Moriarty would receive $2,036.70. *See* Moriarty Dec. ¶ 8.

The Court finds that no unusual obstacles would make managing the class particularly difficult. Thus the Court finds that based on the factors that guide the inquiry under Rule 23b(3), class certification is appropriate.

Defendants contend that certification under Rule 23(b)(3) is inappropriate because of their intent to assert a laches defense. However, the predominant inquiry at trial will be whether defendant City's policy violated its own Civil Service Rules, and for

Not Reported in F.Supp.2d, 2005 WL 3113065 (N.D.Cal.)
**(Cite as: 2005 WL 3113065 (N.D.Cal.))**

the foregoing reasons stated above, any laches inquiry will likely involve both common evidence and individual evidence. Thus the Court finds that any inquiry concerning individual plaintiffs will be secondary to the inquiry involving common issues of fact and law, and that certification of the proposed class is appropriate under Rule 23(b)(3).

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' motion for class certification as to the second cause of action as moot and GRANTS plaintiffs' motion for class certification as to the third cause of action, pursuant to Rule 23(b)(3). [Docket No. 25]. The parties are ordered to meet and confer concerning a form of class notice, and a plan for providing same to the class members, and present their suggestions to the Court in a joint statement to be filed no later than *December 5, 2005.*

IT IS SO ORDERED.

N.D.Cal.,2005.
Kelly v. City and County of San Francisco
Not Reported in F.Supp.2d, 2005 WL 3113065 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 28

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

☛

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
Michael WIEGELE, on behalf of himself and all
others similarly situated, Plaintiff,
v.
FEDEX GROUND PACKAGE SYSTEM, INC., a
Delaware Corporation; and Does 1 through 500, In-
clusive, Defendant.
**No. 06cv1330.**

Feb. 12, 2008.

Michael D. Singer, Cohelan and Khoury, Peggy J.
Reali, The Reali Law Firm, San Diego, CA, Gregg
Lander, Law Offices of Kevin T. Barnes, Los
Angeles, CA, for Plaintiff.

Allan W. Brown, Fedex Ground Package System,
Coraopolis, PA, Anne Marie Estevez, Morgan
Lewis and Bockius, Miami, FL, Barbara J. Miller,
Jennifer Lea Bradford, Morgan Lewis and Bockius,
Irvine, CA, for Defendant.

### ORDER: GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

JANIS L. SAMMARTINO, District Judge.

**\*1** Presently before the Court are Plaintiffs' motion
for class certification [Doc. No. 51]; Defendants'
opposition [Doc. No. 67]; Plaintiffs' reply [Doc.
No. 96]; Defendants' surreply [Doc. No. 97]; and
Plaintiffs' response to Defendants' surreply [Doc.
No. 108.] For the following reasons, this Court
**GRANTS** Plaintiffs' motion for class certification.

### BACKGROUND

Defendant FedEx ("FedEx") operates a ground
package delivery system throughout the United

States. [Pls.' Motion at 1-2.] Plaintiffs, former Fed-
Ex managers, allege that Defendants improperly
classified them as exempt from overtime pay be-
cause they spent the majority of their time conduct-
ing non-managerial (non-exempt) tasks, including
package handling. [*Id.*] Plaintiffs also argue that
since they were in fact non-exempt employees, they
were improperly denied meal and rest breaks during
their tenure. [*Id.*]

FedEx's operations involve unloading inbound
packages, sorting, moving to outbound docks and
ports, and loading onto vans and trailers for deliv-
ery. [*Id.* at 2-3.] There are two divisions at FedEx:
the Ground Division, consisting of Satellite and
Hub facilities, and the Home Delivery division,
which are either stand-alone facilities, or are co-
located with Ground Division Satellites. [*Id.*]

At both Ground Satellite and Ground Hub facilities
there are Senior Managers who are in charge of the
entire operation. [*Id.*] There are also Sort Managers
that serve as assistant managers for the Senior Man-
ager. [*Id.*] Next, there are Dock Service Managers,
that serve essentially as assistants to the Sort
Mangers, and work directly with hourly-paid Pack-
age Handler employees. [*Id.*] At the Home Delivery
facilities, there are no Sort Managers, but there are
Dock Service Managers that report directly to the
Senior Managers. [*Id.*]

As of March 2005, FedEx handled 2.66 million
packages per day and had grown 16% year over
year. [*Id.*] Given this large volume, Defendants
have created standardized policies, procedures,
standards, manuals, task lists, work flow processes
and engineering for many of the elements of their
operation. [*Id.* at 3-7.] For example, Defendants
have created training manuals on handling pack-
ages, loading vans, increasing production and hand-
ling time cards. [*Id.*] Defendants have conducted
studies on their operations that have concluded
"Too much of our management's time is spent load-
ing" and "Focus is to free up Managers from load-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

ing." *[Id.]* Defendants have also uniformly classified management positions, including Sort Managers and Dock Service Managers, as exempt from overtime compensation.

Plaintiffs allege that due to corporate's productivity goals, understaffing, tight hourly budgets allocated towards package handlers, high turnover of hourly employees, absenteeism, and equipment failures, their primary duty was package handling-a non-exempt activity. *[Id.]* Plaintiffs also allege that they were forced to miss meal and rest breaks in violation of California law. *[Id.]* Therefore, in seeking damages and injunctive relief, they now move to certify five classes: (1) Sort Managers classified as salaried exempt employees; (2) Dock Service Managers classified as salaried exempt employees; (3) Sort Managers and Dock Service Managers that were not provided a 30-minute uninterrupted meal period; (4) Sort Managers and Dock Service Managers that were not provided two 10-minute rest breaks; and (5) Sort Managers and Dock Service Managers that have not received their overdue overtime compensation in violation of California Labor Code Section 203. *[Id.* at 2.]

## APPLICABLE CALIFORNIA LABOR LAWS

### A. Overtime

**\*2** The California Labor Code provides that employees are presumptively entitled to be paid overtime for all hours worked in excess of eight hours during a day or forty hours a week, and are entitled to recover unpaid amounts at a rate of at least 1.5 times the employee's regular rate of pay. Cal. Lab.Code § 510(a).

### B Meal & Rest Periods

Under California law, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee." Cal.Code Regs. tit. 8, § 11070(11)(A). With respect to rest periods, employers are required to provide rest periods for a period of ten minutes for every four hours worked. *Id.* § 11070(12)(A).

### C. Waiting Time Penalties

Section 203 of the California Labor Code provides in pertinent part: "If an employer willfully fails to pay ... in accordance with Sections 201, 201.5, 202, and 202.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203.

### D. Exemption Classification

An employee qualifies for an "executive exemption" from California's overtime and meal and rest period laws if: (1) his duties and responsibilities involve the management of the enterprise in which he or she is employed; (2) he customarily and regularly directs the work of two or more employees; (3) he has the authority to hire or fire other employees; (4) he customarily and regularly exercises discretion and independent judgment; (5) he is primarily engaged in duties that meet the test for exemption; and (6) he earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. *Id.* § 11070(1)(A)(1). An employee classified as "exempt" based on all these elements is not covered by California's overtime and meal and rest period laws. If a classification is challenged, the employer must demonstrate that its "exempt" classification is proper. *Ramirez v. Yosemite Water Co.,* 20 Cal.4th 785, 794-95, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

### LEGAL STANDARD

Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). A proposed class must also satisfy one of the subdivisions of Rule 23(b).

**\*3** "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*quoting Miller v. Mackey Int'l.,* 452 F.2d 424 (5th Cir.1971)) (internal quotation marks omitted). As the party seeking to certify a class, plaintiffs bear the burden of demonstrating that they satisfy the elements of Rule 23. *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1308 (9th Cir.1977); *W. States Wholesale, Inc. v. Synthetic Indus., Inc.,* 206 F.R.D. 271, 274 (C.D.Cal.2002). The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992). However, a weighing of competing evidence is inappropriate at this stage of the litigation. *Staton v. Boeing Co.,* 327 F.3d 938, 954 (9th Cir.2003); *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602, 605 (C.D.Cal.2005); *Chun-Hoon v. McKee Foods Corp.,* 2006 U.S. Dist. LEX-IS 82029, \*14-16, 2006 WL 3093764 (N.D.Cal.2006). Finally, on a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975).

### ANALYSIS

**A. Class Certification is Appropriate Under Rule 23(a)**

**1. Numerosity: The Class is Sufficiently Numerous that Joinder is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed.R.Civ.P. 23(a)(1). Defendants do not rebut Plaintiffs' estimate that the proposed class consists of 83 Sort Managers and 485 Dock Service Managers. This number is sufficient to make joinder impracticable. *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 482 (2d Cir.1995) (stating that numerosity is "presumed at a level of 40 members"); *Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258, 262 (S.D.Cal.1988) ("As a general rule, [however,] classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."); Herbert Newberg, 1 Newberg on Class Actions, § 3.05 at 3-25 (3d ed. 1995) ("[C]ertainly, when the class is very large-for example, numbering in the hundreds-joinder will be impracticable").

**2. Commonality: Common Questions of Law and Fact are Shared Among the Class**

Rule 23(a) also requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The necessary showing to satisfy commonality is "minimal." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998); *Whiteway v. FedEx Kinko's Office & Print Servs.,* 2006 U.S. Dist. LEXIS 69193, \*13, 2006 WL 2642528 (N .D. Cal.2006). Commonality "is not defeated by slight differences in class members' positions." *Blackie,* 524 F.2d at 902. Individual variation among plaintiffs does not defeat underlying legal commonality because the "existence of shared legal issues with divergent factual predicates is sufficient" to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

satisfy Rule 23. *Hanlon,* 150 F.3d at 1019.

**\*4** Here, questions of law and fact common to all class members include: (1) whether Defendants' policies mischaracterized managers as exempt employees under California law; (2) whether Defendants' policies and practices unlawfully deprived managers of overtime compensation; (3) whether Defendants employed policies and practices to avoid providing meal and rest periods (or compensation thereof) for employees; and (4) whether Defendants' policies and practices constituted a violation of California Business & Professions Code § 17200. [Pls.' Motion at 12.]

Even though there are some variations among the putative class members' daily tasks, duties, and responsibilities, as Defendants allege, the similarities are sufficient enough to create common questions. *Whiteway,* 2006 U.S. Dist. LEXIS 69193, at \*12-17, 2006 WL 2642528 (acknowledging variations but finding commonality on similar grounds); *Alba v. Papa John's USA, Inc.,* 2007 U.S. Dist. LEXIS 28079, \*19-20, 2007 WL 953849 (C.D.Cal.2007) (same); *Krzesniak v. Cendant Corp.,* 2007 U.S. Dist. LEXIS 47518, \*21, 2007 WL 640594 (N.D.Cal.2007) (same); *Wang,* 231 F.R.D. 602, at 605, 613 (same).

In arguing, against commonality, Defendants' particularly rely on a state trial court opinion, *Dunbar v. Albertson's Inc.,* Alameda County Superior Court Case No. RG04-146326 (2005) and *Ramirez v. Yosemite Water Co., Inc.,* 20 Cal.4th 785, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999), which ruled that the necessity of individualized determinations weighs heavily against certification. [Defs.' Opp. At 14-18] However, in *Dunbar v. Albertson's, Inc.,* 141 Cal.App.4th 1422, 1432, 47 Cal.Rptr.3d 83 (2006), the appellate court approved the trial court decision with reluctance, noting that "case law since the trial court issued its ruling, particularly *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th 319, 17 Cal.Rptr.3d 906, 96 P.3d 194, have called into question the key premises of the trial court's legal analysis."

Further, the California Supreme Court in *Sav-On* stated that "*Ramirez* was not a class action and, to the extent, is not apposite. In *Ramirez,* [the court] did not even discuss certification standards, let alone change them." *Sav-On Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 336, 17 Cal.Rptr.3d 906, 96 P.3d 194 (2004). The *Sav-On* court further noted that "*Ramirez* is no authority for constraining trial courts' great discretion in granting or denying certification," and concluded, "[i]n sum, defendant's reliance on *Ramirez* [to defeat class certification] is misplaced." *Id.* at 336-38, 17 Cal.Rptr.3d 906, 96 P.3d 194. *See also Chun-Hoon,* 2006 U.S. Dist. LEXIS 82029, at \*14-16, 2006 WL 3093764 (distinguishing *Dunbar* and *Ramirez* and finding plaintiffs satisfied the commonality requirement); *Wang,* 231 F.R.D. at 602 (distinguishing *Ramirez* on similar grounds).

Thus, the Court finds Plaintiffs have satisfied the commonality requirement.[FN1]

> FN1. The commonality requirement overlaps with the predominance requirement. Therefore, the existence of "common issues" will be discussed in greater detail under the predominance analysis in section (D)(1) of this order.

### 3. Typicality: The Claims of the Proposed Class Representative Are Typical of the Claims of the Other Members

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The commonality and typicality requirements ... tend to merge" because both focus on the similarities in claims across the class. *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The test for typicality is: (1) whether other members have the same or similar injury as the representative; (2) whether the action is based on conduct not unique to the representative; and (3) whether other class

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

members have been injured by the same course of conduct. *Hanon,* 976 F.2d at 508 ("We agree that a named plaintiff's motion for class cert should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.") (internal quotations and citations omitted).

**\*5** Claims are deemed typical if "they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020; *see also California Rural Legal Assistance v. Legal Services Corp.,* 917 F.2d 1171, 1175 (9th Cir.1990) (class representatives and members of the class need only "share a common issue of law or fact."); *Arnold v. United States Theatre Circuit, Inc.,* 158 F.R.D. 439, 440 (N.D.Cal.1994) ("[C]laims of the named plaintiffs need not be identical to the claims of the class; they need only arise from the same remedial and legal theories."). Further, Rule 23 does not require a class representative for each job category that may be included in the class. *Staton,* 327 F.3d at 957; *Dukes v. Wal-Mart,* 509 F.3d 1168, 1184-85 (9th Cir.2007); *Alba,* 2007 U.S. Dist. LEXIS 28079, at \*24-25, 2007 WL 953849; *Taylor v. Union Carbide Corp.,* 93 F.R.D. 1, 6 (S.D.W.Va.1980).

Plaintiff Michael Weigele alleges a similar injury, similar violations, and possesses the same interests as the putative class members. Mr. Weigele was a Satellite Sort Manager and a Satellite Dock Service Manager during the class period. [Weigele Decl.] He worked pursuant to similar policies and procedures as the other class members and was classified exempt from overtime pursuant to his job title. *[Id.]* He states that he worked overtime without pay, was not provided 30-minute uninterrupted meal periods, was not permitted to take 10-minute rest breaks, and was not paid all wages due pursuant to California Labor Code § 203 upon his separation from the company. *[Id.]* Therefore, even though his specific duties might have somewhat differed from a manager at an HD terminal or a Hub, his claims arise from the "same remedial and legal theories" and

share multiple issues of law and fact. Thus, the typicality requirement is met.[FN2]

> FN2. Defendants' arguments refuting typicality overlap with their arguments refuting predominance. Therefore, these arguments will also be addressed in the predominance analysis of this order.

**4. Adequacy: The Proposed Class Representatives Can Fairly and Adequately Protect the Interests of the Class**

Rule 23(a)(4) provides that class representatives must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy requirement is met if the class representatives meet two conditions: (1) the named representatives must appear able to prosecute the action vigorously through qualified counsel, and (2) the representatives must not have antagonistic or conflicting interests with the unnamed members of the class. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

Here, Plaintiffs' attorneys are experienced class action litigators and a substantial part of their practice is dedicated to the prosecution of class actions such as this. [Pls.' Motion at 14.] Second, the Court finds no evidence of antagonism between the proposed class representative, or his attorneys, and the putative class members. Class members who wish to "opt-out" will be afforded the opportunity to do so. Therefore, the adequacy requirement is satisfied.

**B. Class Certification is Not Appropriate Under Rule 23(b)(1)**

**\*6** Under Rule 23(b)(1), a class may be certified if either subsection (A) or (B) is satisfied. Subsection (A) permits certification if "the prosecution of separate actions by ... individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

of conduct for the party opposing the class."
Fed.R.Civ.P. 23(b)(1)(A).

The Ninth Circuit has held that certification under
Rule 23(b) (1)(A) is not appropriate in an action for
damages. *Zinser v. Accufix Research Inst., Inc.,* 253
F.3d 1180 (9th Cir.2001). As discussed below, although
Plaintiffs also seek injunctive relief, this
case is best characterized as primarily a suit for
money damages. Thus, the Court declines to certify
the class pursuant to 23(b)(1)(A).

To bring a Rule 23(b)(1)(B) class action, the rep-
resentative plaintiffs must demonstrate "that the
totals of the aggregated liquidated claims and the
fund available for satisfying them, set definitely at
their maximums, demonstrate the inadequacy of the
fund to pay all the claims." *Ortiz v. Fibreboard
Corp.,* 527 U.S. 815, 838, 119 S.Ct. 2295, 144
L.Ed.2d 715 (1999); *see also, e.g., Amchem
Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117
S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting that
Rule 23(b)(1)(B) "includes ... 'limited fund' cases,
[i.e.,] instances in which numerous persons make
claims against a fund insufficient to satisfy all
claims"). In *Ortiz,* the Supreme Court held that in
order to satisfy Rule 23(b)(1)(B), a plaintiff must
demonstrate that the case involves a " 'fund' with a
definitively ascertained limit, all of which would be
distributed to satisfy all those with liquidated
claims based on a common theory of liability, by an
equitable, pro rata distribution." *Ortiz,* 527 U.S. at
841. Plaintiffs have not shown that such a limited
fund exists, and the evidence before the court in no
way suggests that Defendants' ability to pay mem-
bers of the putative class is limited.

This Court is not aware of any courts certifying
similar wage and hour cases under Rule
23(b)(1)(A) or (B) and Plaintiffs have not men-
tioned any in their moving papers. The Court is
aware, however, of several courts that have found
certification of such disputes inappropriate under
Rule 23(b)(1). *See Whiteway,* 2006 U.S. Dist. LEX-
IS 69193, at *23-24, 2006 WL 2642528; *Jimenez v.
Domino's Pizza, Inc.,* 238 F.R.D. 241, 250

(C.D.Cal.2006); *Sepulveda v. Wal-Mart Stores,
Inc.,* 237 F.R.D. 229, 245 (C.D.Cal.2006); *Mad-
dock v. KB Homes, Inc.,* 2007 U.S. Dist. LEXIS
58743, *16-17, 2007 WL 2221030 (C.D.Cal.2007);
*Heffelfinger v. Elec. Data Sys. Corp.,* 2008 U.S.
Dist. LEXIS 5296, *65-72, 2008 WL 892989
(C.D.Cal.2008).

Therefore, the Court rejects Plaintiffs' argument
that the class should be certified under rule 23(b)(1)
.

## C. Class Certification is Not Appropriate under Rule 23(b) (2)

Rule 23(b)(2) allows a class action to be certified
where Rule 23(a) is met and "the party opposing
the class has acted or refused to act on grounds gen-
erally applicable to the class," making it appropri-
ate to grant relief sought to the class as a whole.
Fed.R.Civ.P. 23(b)(2). This subsection primarily
applies to suits for injunctive relief, but the Court
can certify a class seeking money damages if "the
claim for monetary damages [is] secondary to the
primary claim for injunctive or declaratory relief."
*Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir.2003);
*Zinser,* 253 F.3d at 1195 (stating monetary relief
must be "incidental to the primary claim for in-
junctive relief").

*7 When former employees seek prospective in-
junctive relief, courts often decline to certify the
class under Rule 23(b)(2), finding that the
plaintiffs' primary interest is monetary relief. For
example, in *Jimenez v. Domino's Pizza, Inc.,* 238
F.R.D. 241, 250 (C.D.Cal.2006), the court stated:
"Plaintiffs are former employees and thus an in-
junction as to the [the employer's] behavior to cur-
rent employees cannot be Plaintiffs' primary con-
cern. Rather a damages award is their main in-
terest."). *See also Maddock,* 2007 U.S. Dist. LEXIS
58743, at *17-18, 2007 WL 2221030; (finding cer-
tification under Rule 23(b)(2) was inappropriate in
part because more than half of the putative class
members were former employees); *Kurihara v. Best*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

*Buy Co., Inc.,* 2007 U.S. Dist. LEXIS 64224, *22, 2007 WL 2501698 (N.D.Cal.2007) ("In the employment context, courts routinely deny class certification under Rule 23(b)(2) where the named plaintiff is a former employee and therefore will not benefit from the requested injunctive relief" (collecting cases); *Richardson v. Restaurant Mktg. Assoc.,* 83 F.R.D. 268, 271 (N.D.Cal.1978) (finding former employees could not seek injunctive relief on behalf of current employees).

In the present action, Mr. Wiegele and each of Plaintiffs' declarants are former employees that cannot benefit from prospective injunctive relief. Therefore, the Court finds certification under Rule 23(b)(2) is inappropriate.

## D. Class Certification is Appropriate under Rule 23(b)(3)

To certify a class under Rule 23(b)(3), plaintiffs must demonstrate that: "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Here, both criteria are met: (1) common questions predominate and (2) a class action is superior to other methods to adjudicate the claims.

### 1. The Predominance Requirement is Satisfied

In short, Defendants argue Plaintiffs fail to satisfy the predominance requirement because: (1) Plaintiffs' evidence fails to demonstrate the predominance of common issues, and (2) that individual issues predominate due to the significant differences among the class members' job duties and actual work activities. For the following reasons, this Court disagrees.

"Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 489 (E.D.Cal.2006). Under analogous facts, many courts in this circuit have found that similar common questions of law and fact have predominated and have certified cases under Rule 23(b)(3). For example, in *Wang v. Chinese Daily News,* the court stated:

[C]ommon questions of law and fact predominate in this case. These questions include: whether Defendant has a uniform policy of unlawfully treating certain classifications of employees as "exempt;" whether Defendant conducted an appropriate investigation to support a good faith defense of this policy; whether Defendant failed to pay overtime compensation to non-exempt employees; whether Defendant deprived employees of meal and rest breaks and failed to pay appropriate penalties for missed breaks; whether Defendant failed to keep accurate records of hours worked; whether Defendant failed to provide accurate itemized wage statements to employees; whether Defendant failed to pay all wages due to employees at the time that their employment was terminated. Additional questions of fact include: whether class members receive their pay through a common compensation program or payroll system; whether Defendant performed studies to determine the amount of hours its employees actually spent on exempt versus non-exempt work; and whether Defendant has centralized oversight and supervision of its employees. A common inquiry is the most efficient and appropriate way to answer these questions. Most differences among putative class members, such as the amount of overtime premium pay owed or the number of breaks that have been missed, affect damages, not Defendant's liability. The Ninth Circuit has found that "the amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie,* 524 F.2d at 905.

**\*8** *Wang,* 231 F.R.D. at 613-14.

In a related case *Krzesniak v. Cendant Corp.,* the court stated:

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
(Cite as: 2008 WL 410691 (S.D.Cal.))

Plaintiff contends that common questions will predominate in this case because (1) Budget [Rent-A-Car] operates its facilities using standardized practices and procedures set forth in common written manuals that delineate the work SMs [shift managers] perform, (2) SMs perform the same range of duties at Budget's California locations, (3) SMs receive uniform training and do not need to be retrained on managerial duties if they transferred to another location, and (4) Budget uniformly classifies its managers as exempt without regard to actual duties performed. Thus, Plaintiff argues that the compendium of actual manager job duties, the classification of those duties as exempt or nonexempt, and Budget's realistic expectations of the managers are the key factual issues in the case and are all susceptible to common proof. The Court agrees with Plaintiff that these questions predominate.

*Krzesniak,* 2007 U.S. Dist. LEXIS 47518, at *37-38, 2007 WL 640594. *See also Whiteway,* 2006 U.S. Dist. LEXIS 69193, at *12-15, 27-31, 2006 WL 2642528 (finding predominance requirement satisfied when plaintiffs challenged FedEx Kinko's company-wide policy of categorizing all managers as exempt and raised similar common questions of law and fact); *Tierno v. Rite Aid Corp.,* 2006 U.S. Dist. LEXIS 71794, at *31, 2006 WL 2535056 (finding predominance requirement satisfied when plaintiffs raised similar common questions of law and fact); *Sav-On,* 34 Cal.4th at 335, 17 Cal.Rptr.3d 906, 96 P.3d 194 (same).

In the present action, Plaintiffs have raised many of the same common questions that were raised in the foregoing cases, and have similarly shown, through substantial evidence, that common questions predominate. The evidence consists of Defendants' own policies and procedures, training materials and best practice guides, declarations and deposition testimony of putative class members from both Plaintiffs and Defendants, as well as deposition testimony of Defendants' own "Persons Most Knowledgeable" and key corporate personnel.[FN3]

Taken together, this evidence suggests: (1) Defendants treat Managers as a class by uniformly classifying them as exempt, regardless of whether they work in a Hub, Satellite, or Home Delivery facility, or on an outbound or inbound sort; (2) Defendants' duties and responsibilities are similar regardless of location and assignment; (3) Defendants have engaged in studies to insure that the standards and processes are in place and are followed; (4) Defendants' uniform policies can result in minimal managerial discretion; (5) Defendants have no written or oral policy regarding meal or rest breaks and the managers miss these breaks; (6) the managers perform a finite list of tasks;[FN4] (7) because of high turn over and absenteeism managers are required to perform manual package handling responsibilities; and (8) Defendants have not paid any overtime wages to Plaintiffs based upon the uniform classification of the employees as exempt. The Court has carefully reviewed Defendants' evidence to the contrary. However, the Court recognizes that at this early stage of the litigation, it must "only determine if the plaintiffs have proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence." [Defs.' Opp. at 2-13; Defs.' Surreply at 1-7]; *Staton,* 327 F.3d at 954; *Wang,* 231 F.R.D. at 605; *Chun-Hoon,* 2006 U.S. Dist. LEXIS 82029, at *11-13, 2006 WL 3093764. The Court finds Plaintiffs have met that burden.

> FN3. *See* Pls.' Motion at 3-9; Pls.' Reply at 2, 6-8, 11-12.

> FN4. In *Sav-On,* the California Supreme Court stated that: in cases where "the duties and responsibilities of the putative class members are similar in critical respects from region to region, area to area, and store to store," and a "reasonably definite and finite list" of tasks can be ascertained, then the issue of whether these tasks should be classified as exempt or non exempt "can easily be resolved on a classwide basis." *Sav-On,* 34 Cal.4th at 331,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
(Cite as: 2008 WL 410691 (S.D.Cal.))

17 Cal.Rptr.3d 906, 96 P.3d 194. This is true here. [*See* Pls.' Reply at 7.]

**\*9** Defendants stress that individual questions predominate because the job duties and time spent on various tasks widely vary depending on whether the managers are working in outbound or inbound facilities or are in Satellites, Hubs, or Home Delivery. [Defs.' Opp. At 19-24.] They argue that these differences create the need for individual determinations regarding the percentage of time that individuals devoted to non-managerial duties during each work week. [*Id.* at 24.]

In *Wang,* the court responded to this precise argument:

The Court rejects Defendant's argument that the "overriding" issue in this case is whether reporters and account executives are exempt or nonexempt from overtime requirements and that the Court must engage in an individualized inquiry into each reporter's and account executive's job duties, hours, and/or income in order to determine whether or not that individual should be classified as "exempt" ... Defendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order to determine whether that individual is "exempt." Moreover, Defendant's argument ignores the fact that Plaintiffs are challenging Defendant's *policy* of classifying all reporters and account executives as "exempt."

*Wang,* 231 F.R.D. at 613.

In *In Re Wells Fargo,* 2007 U.S. Dist. LEXIS 77525, *17-19 (N.D.Cal.2007), the court tracked the *Wang* analysis and stated: "In the context of overtime pay litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individual variations." The court certified the class and concluded: "It is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation." *Id.* at *32-33.

In another related case, *Tierno v. Rite-Aid,* the court followed *Wang* and granted class certification despite some variation in the amount of time managers spent on various tasks. *Tierno,* 2006 U.S. Dist. LEXIS 71795, at *6-10. The court explained that predominant issues existed because the managers essentially performed the same tasks at each store, were training through a roughly uniform training program, and because the company maintained a policy of treating all managers as exempt. *Id.* The court noted that Rite-Aid had always categorized store managers as exempt without making individual assessments, and that "[g]iven this, Rite-Aid's contention that each store manager must now be individually assessed to determine whether the position can be categorized as exempt or non-exempt rings hollow." *Id.; see also Heffelfinger,* 2008 U.S. Dist. LEXIS 5296, at *104-05, 2008 WL 892989 ("The court will not allow [Defendants] to treat information technology workers uniformly [as exempt], and simultaneously contend that individualized inquiries preclude certification."); *Krzesniak,* 2007 U.S. Dist. LEXIS 47518, at *46-48, 2007 WL 640594 (citing *Wang* and certifying a class of shift managers who challenged their exempt classification); *Kurihara,* 2007 U.S. Dist. LEXIS 64224, at *28-31, 2007 WL 2501698 (following *Wang* analysis and granting class certification); *Whiteway,* 2006 U.S. Dist. LEXIS 69193, at *4, 2006 WL 2642528 (granting class certification and finding that mangers shared similar job duties and responsibilities, even though there was some variation in job duties depending on the type and size of the managers' particular FedEx Kinko store); *Alba,* 2007 U.S. Dist. LEXIS 28079, at *39-41, 2007 WL 953849 (citing *Wang,* granting class certification, and stating "[T]he question of whether store man-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

agers are 'exempt' is a common defense for Defendants in this case, which supports class adjudication."); *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir.2001) ("some variation among the individual employees as well as some proof-including as to damages-do not defeat predominance"); *Sav-On,* 34 Cal.4th at 335, 17 Cal.Rptr.3d 906, 96 P.3d 194 ("[N]either variation in the mix of actual work activities undertaken [by the assistant or operating managers] nor differences in the total unpaid overtime compensation owed each class member bar certification as a matter of law.").[FN5]

> FN5. In addition to citing *Dunbar* and *Ramirez,* Defendants also rely on three related wage and hour cases where class certification was denied in part because the court found individual issues predominated. [Defs.' Opp. at 24, *citing Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 250 (C.D.Cal.2006), *Sepulveda v. Wal-Mart Stores, Inc.,* 237 F.R.D. 229, 245 (C.D.Cal.2006), and *Perry v. U.S. Bank,* 2001 U.S. Dist. LEXIS 25050, *20, 2001 WL 34934249 (N.D.Cal.2001).] However, these cases appear to stand for a minority position in their analysis of the predominance requirement in misclassification cases.
>
> Additionally, in these cases, the courts did not find standardized policies and procedures. *See Jimenez,* 238 F.R.D. at 251-53; *Perry,* 2001 U.S. Dist. LEXIS 25050, at *7, 2001 WL 34934249; *Alba,* 2007 U.S. Dist. LEXIS 28079, at *37-40, 2007 WL 953849 (distinguishing *Jiminez* on similar grounds and upholding class certification); *Krzesniak,* 2007 U.S. Dist. LEXIS 47518, at *44-46, 2007 WL 640594. (distinguishing *Perry* on similar grounds and upholding class certification). In

*Sepulveda,* the court noted that cases warranting certification "may involve far more standardized work policies, more clearly non-exempt duties, and a smaller number of variable factors." *Sepulveda,* 237 F.R.D. at 249. Here, as discussed, there is evidence of standardized work policies and there is no debate as to whether the duties (i.e. handling packages) are non-exempt duties.

**\*10** Similarly, here, there are variations among the managers' duties, but as in *Wang,* Plaintiffs are challenging Defendants' *policy* of classifying all managers as exempt. Therefore, the Court finds that common issues predominate.

Finally, the Court has various procedural tools available to it to resolve any individual issues. For example, in *Sav-On,* the California Supreme Court recognized:

> [T]hat each class member might be required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action." Predominance is a comparative concept, and "the necessity for class members to individually establish *eligibility and damages* does not mean individual fact questions predominate." Individual issues do not render class certification inappropriate so long as such issues may effectively be managed.

*Sav-On,* 34 Cal.4th at 334, 17 Cal.Rptr.3d 906, 96 P.3d 194 (internal citations omitted) (emphasis added).

In *Tierno,* the court echoed *Sav-On* and noted:

> [C]ourts in overtime cases such as this may properly couple uniform findings on common issues regarding the proper classification of the position at issue with innovative procedural tools that can efficiently resolve individual questions regarding *eligibility and damages.* Such tools include administrative mini-proceedings, special master

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

hearings, and specially fashioned formulas or surveys. In short, the California Supreme Court has rejected the notion that an employer is necessarily entitled, under California law generally or *Ramirez* in particular, to an individualized trial with respect to each class member in an overtime case. Rather, where, as here, there is sufficient similarity among Store · Manager positions to render class treatment appropriate, any remaining individual issues regarding *eligibility for relief or damages* can be addressed through other measures.

If a class was not certified in this case, the alternative would be either numerous individual suits or the abandonment of individual claims. The former would undoubtedly result in a great duplication of effort given the predominance of common questions of law and fact, while the latter would result in lost access to the courts.

*Tierno,* 2006 U.S. Dist. LEXIS 71794, at *35-37, 2006 WL 2535056 (emphasis added), *see also Whiteway,* 2006 U.S. Dist. LEXIS 69193, at *29-30, 2006 WL 2642528 (stating same and citing *Tierno* ); *Krzesniak,* 2007 U.S. Dist. LEXIS 47518, *54-55, 2007 WL 640594 (stating same and citing *Tierno* ); *Bell v. Farmers Ins. Exchange,* 115 Cal.App.4th 715, 739-56, 9 Cal.Rptr.3d 544 (2004) (affirming class certification and upholding the use of statistical sampling to calculate the damages owed to the class). If necessary, this Court will entertain arguments for the use of particular procedural tools at a later stage in this litigation.

Thus, the Court finds that Plaintiffs have satisfied the predominance requirement.[FN6]

> FN6. Defendants also added that common issues do not predominate because the Court will be forced to make other individual determinations including: (1) "whether any of the asserted non-managerial work was directly and closely related to exempt work," and (2) "whether and why the manager performed the non-

managerial work in defiance of Defendants' training and instruction." [Defs.' Opp. at 24.] However, these issues are in fact susceptible to common proof.

> For example, in some misclassification cases, there is a question as to whether a particular task is inherently an exempt activity. In those cases, courts find that the presence of this question is one factor weighing in favor of predominance because it is a legal question common to the class. *Tierno,* 2006 U.S. Dist. LEXIS 71795, at *10, 2006 WL 2535056 (granting certification under Rule 23(b)(3) and holding that "significant aspects" of the case could be resolved on a class basis, including the "actual requirements of the job, the realistic expectations of the employers, *the proper classification of store manager tasks as exempt or non-exempt,* and Rite-Aid's state of mind, knowledge, historical actions, and policies with respect to its classification and treatment of Store Managers.") (emphasis added); *Sav-On,* 34 Cal.4th at 331, 17 Cal.Rptr.3d 906, 96 P.3d 194 (agreeing with the trial court that determining the exempt nature of tasks "is an issue that can easily be resolved on a class-wide basis by assigning each task to one side of the 'ledger' and [concluding that] the manageability of the case [was] not the daunting task Defendant has sought to portray"). Therefore, determining whether some of the asserted non-managerial work is directly related to exempt work will be more properly resolved on a class-wide basis.

> Second, analyzing Defendants' training and instruction of their managers is another issue that is easily susceptible to common proof. Last, as discussed, sever-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

al courts confronted with similar mis-classification cases have explicitly recognized the presence of individual issues, but found they did not bar class certification. *Whiteway,* 2006 U.S. Dist. LEXIS 69193, at *18-19, 2006 WL 2642528 (finding Defendants' allegation that plaintiff failed to follow company policy did not bar class certification); *Wang,* 231 F.R.D. at 613; *Chun-Hoon,* 2006 U.S. Dist. LEXIS 82029, at *14, 2006 WL 3093764; *Krzesniak,* 2007 U.S. Dist. LEXIS 47518, at *40-41, 2007 WL 640594.

**2. The Superiority Requirement is Satisfied**

The Court finds that a class action is the superior method for fair and efficient adjudication of this controversy. If the class members-estimated in the hundreds-each pursued their claims individually, they would "clog[ ] the federal courts with innumerable individual suits litigating the same issues repeatedly." *Dukes,* 474 F.3d at 1244. As the *Sav-On* court observed:

*11 Absent class treatment, each individual plaintiff would present in separate, duplicative proceedings the same or essentially the same arguments and evidence, including expert testimony. The result would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. It would be neither efficient nor fair to anyone, including defendants, to force multiple trials to hear the same evidence and decide the same issues.

*Sav-On,* 34 Cal.4th at 340, 17 Cal.Rptr.3d 906, 96 P.3d 194 (internal quotations and citations omitted).

Here, it would be far more costly and time consuming for each individual putative class member to seek and compel discovery of Defendants' policies and procedures, take multiple depositions, retain experts, and litigate damages issues. For these reasons, Courts often certify class actions when em-ployer wage and hour practices similarly impact a large number of workers. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978) (in certifying a class of technicians seeking overtime pay and holding that "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated"); *see also Krzesniak,* 2007 U.S. Dist. LEXIS 47518, at *50, 2007 WL 640594 (finding overtime class action superior to multiple individual lawsuits because the expenditure of additional time, effort and money attendant to numerous individual suits is greatly reduced, potential for differing outcomes is avoided, and individual managers may lack resources to pursue individual litigation against large corporate entity); *Tierno,* 2006 U.S. Dist. LEXIS 71794, at *33-37, 2006 WL 2535056 (alternative to certified managers' class would be either numerous individual suits or the abandonment of individual claims, which would result in great duplication of effort or lost access to the courts). Therefore, the superiority requirement is satisfied.[FN7]

FN7. Two other factors support a finding of superiority and predominance. First, California courts have acknowledged that the "assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." *Ramirez,* 20 Cal.4th at 794-95, 85 Cal.Rptr.2d 844, 978 P.2d 2; *Sav-On,* 34 Cal.4th at 338, 17 Cal.Rptr.3d 906, 96 P.3d 194; *Nordquist v. McGraw-Hill Broadcasting Co.,* 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221 (1995). In *Sav-On,* the California Supreme Court noted that requiring a plaintiff to show that all of the members of a putative class are not exempt would impermissibly reverse the burden of proof. *Sav-On,* 34 Cal.4th at 338, 17 Cal.Rptr.3d 906, 96 P.3d 194 ("Were we to require as a prerequisite to certification that plaintiffs demonstrate de-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)
**(Cite as: 2008 WL 410691 (S.D.Cal.))**

fendant's classification policy was, as the Court of Appeal put it, either 'right as to all members of the class or wrong as to all members of the class,' we effectively would reverse that burden.").

Second, the *Sav-On* court also stated that its decision to allow certification of exemption classes was "buttressed" by "sound public policy." *Id.* at 340, 17 Cal.Rptr.3d 906, 96 P.3d 194. It noted that "California's overtime laws [were] remedial and [were] to be construed so as to promote employee protection.... [A]s we have recognized, 'this state has a public policy which encourages the use of the class action device.' " *Id.* Although the *Sav-On* Court did not analyze the question of class certification under the Federal Rules of Civil Procedure, it sheds light on the underlying purpose of California's labor laws.

### CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs have satisfied the Rule 23(a) requirements and **GRANTS** Plaintiffs' motion for class certification under Rule 23(b)(3).[FN8][FN9]

FN8. The Court has reviewed Defendants' numerous evidentiary objections. However, the Court notes that "[u]nlike evidence presented at the summary judgment stage, evidence presented in support of class certification need not be admissible at trial." *Heffelfinger,* 2008 U.S. Dist. LEXIS 5296, at *8-11, 2008 WL 892989. Also, to the extent Defendants object on grounds suitable for review at this stage, these objections are either denied as moot because they did not affect this Court's ultimate determination or are overruled.

FN9. The Court recognizes that Rule 23 provides district courts with broad discre-

tion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court. *See Armstrong v. Davis,* 275 F.3d 849, 872 n. 28 (9th Cir.2001). If later evidence disproves Plaintiffs' contentions, this Court could modify the class, decertify the class, or use a variety of management devices. *Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."); *In re Visa Check/ Mastermoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir.2001); I Newberg on Class Actions § 4.26 at 4-91 to 4-97.

IT IS SO ORDERED.

S.D.Cal.,2008.
Wiegele v. Fedex Ground Package System, Inc.
Not Reported in F.Supp.2d, 2008 WL 410691 (S.D.Cal.)

END OF DOCUMENT

# EXHIBIT 29

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 1146624 (N.D.Cal.)
**(Cite as: 2004 WL 1146624 (N.D.Cal.))**

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Francisco R. BRACAMONTE, Plaintiff,
v.
ESKANOS & ADLER, et al., Defendants.
**No. C 03-01821 SI.**

May 7, 2004.

Irving L. Berg, The Berg Law Group, Corte
Madera, CA, O. Randolph Bragg, Horwitz Horwitz
& Associates, Chicago, IL, for Plaintiff.

June D. Coleman, Mark Ellis, Murphy Pearson
Bradley & Feeney, Sacramento, CA, for Defendants.

ORDER GRANTING CLASS CERTIFICATION

ILLSTON, J.

*1 On May 7, 2004, the Court heard argument on
plaintiff's motion for class certification. Having
carefully considered the arguments of the parties
and the papers submitted, the Court hereby
GRANTS plaintiff's motion for the reasons set forth
below.

BACKGROUND

Plaintiff Francisco R. Bracamonte brings this action
individually and on behalf of others similarly situ-
ated to challenge a collection letter under the Fair
Debt Collection Practices Act, 15 U.S.C. §§ 1692-
1692o (FDCPA). Second Amended Complaint
(SAC) ¶ 1.[FN1] Bracamonte seeks a declaration that
defendants' collection letter violates the FDCPA
and to recover damages, attorneys' fees, and costs.
*Id.* Bracamonte is an individual and is a consumer
as defined by 15 U.S.C. § 1692a(3). SAC ¶ 3. De-

fendant Eskanos & Adler (E & A) is a California
attorney-collection firm engaged in debt collection
using the mail and telephone. SAC ¶ 4. E & A em-
ploys defendants Irwin J. Eskanos, Donald R.
Stebbins, Jeff Dandle and Jerome M. Yalon (the in-
dividual defendants) as attorneys. SAC ¶ 5. Both E
& A and the individual defendants are "debt col-
lectors" as defined by 15 U.S.C. § 1692 a(6). SAC
¶¶ 4, 5.

> FN1. In his First Amended complaint,
> Bracamonte also alleged violation of the
> California Unfair Buiness Practices Act,
> Cal. Bus. & Prof.Code §§ 17200-17209.
> On October 27, 2003, this Court denied de-
> fendants' motion to dismiss with respect to
> plaintiff's federal claim and granted de-
> fendants' motion to dismiss the state claim
> with leave granted to amend. Plaintiff filed
> his Second Amended Complain on Novem-
> ber 7, 2003, alleging only a federal claim.

Bracamonte alleges that E & A sent him an initial
collection letter on its attorneys' letterhead dated
December 18, 2002 seeking to collect a debt al-
legedly owed by Bracamonte to the Household Fin-
ance Corporation. SAC ¶ 6.[FN2] The letter in-
formed Bracamonte that E & A had "been instruc-
ted to file suit at the conclusion of ten days after
[he] receive[d] this letter" and that "the lawsuit will
claim attorneys' fees and court costs." SAC ¶ 7, Ex.
A. The signature line of the letter contained the in-
dividual defendants' names underneath "a scrawled,
indecipherable signature, or a facsimile signature."
SAC ¶ 8. Bracamonte alleges that defendants sent
the letter without signing the letter or reviewing a
loan file to determine if Bracamonte was liable for
the alleged debt or attorneys' fees. SAC ¶ 9. Thus
Bracamonte alleges that "the attorneys had no dir-
ect personal involvement in the decision to send the
collection letter to" him. *Id.*

> FN2. Bracamonte attached a copy of the
> letter as Exhibit A to the original com-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1146624 (N.D.Cal.)
**(Cite as: 2004 WL 1146624 (N.D.Cal.))**

plaint filed in this action. Defendants have attached the December 18, 2002 letter as Ex. 2 to their Request for Judicial Notice. The Court takes judicial notice of the letter, but refers to the letter as Ex. A, since the class definition refers to the letter as "Exhibit A."

On December 31, 2002, defendant E & A sent Bracamonte another letter on its attorneys' letterhead stating that its "process server has been asked to deliver a copy of this letter to [him] along with the summons and complaint." SAC ¶ 10, Ex. B.[FN3] On January 7, 2003, defendants filed a complaint against Bracamonte in the Superior Court for the County of San Mateo. SAC ¶ 11. On January 16, 2003, Bracamonte, through his attorney, advised E & A that he disputed the debt and requested validation of the debt. SAC ¶ 12. On February 1, 2003, "before providing validation of the debt," defendants had Bracamonte served with the summons and complaint. SAC ¶ 13. The obligor on the debt was Francisco Bracamonte, instead of Francisco Bracamonte, Sr. SAC ¶ 14. "The original creditor was shown as Beneficial California, Inc., and the loan documents did not require the obligor on the loan to pay attorneys' fees." *Id.* E & A dismissed the state court suit against Bracamonte. SAC ¶ 17.

> FN3. As with the original letter, plaintiff failed to submit a copy of the second letter with his Second Amended Complaint. Defendants have attached the December 31, 2002 letter as Ex. 3 to their Request for Judicial Notice. The Court takes judicial notice of the letter, and refers to it as Ex. B, since that is how the complaint refers to it.

**\*2** According to Bracamonte, "Beneficial California, Inc. is a licensed California consumer finance lender and is not allowed attorneys' fees on a common count claim [under] Cal. Civ.Code § 1717.5." SAC ¶ 18. Bracamonte cites Cal. Civ.Code § 1717(a) to explain that "[a]ttorneys' fees may be awarded by a court, 'In an action on a contract, where the contract specifically provides for attor-

neys' fees and costs incurred in enforcing the contract." ' SAC ¶ 19. Bracamonte alleges that the contract produced by E & A in support of their claim for attorneys' fees lacks a provision allowing payment of attorneys' fees in enforcing the contract." *Id.*[FN4]

> FN4. Bracamonte filed a copy of the loan documents as "Exhibits F, 1-3" to the original complaint. As with the collection letters, he failed to include copies as exhibits to his Second Amended Complaint, which needlessly complicates the Court's work.

Thus plaintiff alleges that defendants' collection letter "violated 15 U.S.C. § 1692e2(A) by making false, deceptive and misleading representations as to the character, amount or legal status of the debt i.e. their entitlement to attorneys' fees ... violated 15 U.S.C. § 1692e(3) by falsely representing that the collection letter is from an attorney, as no attorney was directly and personally involved in reviewing Mr. Bracamonte's file and sending the collection letter to Mr. Bracamonte ... violated 15 U.S.C. § 1692e(5) by threatening to claim attorneys' fees as the threat was of an action that can not be legally taken or that was not intended to be taken ... violated 15 U.S.C. § 1692e(1) by the use of false and deceptive means to collect a debt ... violated 15 U.S.C. § 1962f by the use of an unfair and unconscionable means to attempt to collect a debt of an amount not expressly authorized by the agreement or permitted by law, i.e., attorneys' fees." SAC ¶¶ 29-33.

Now before the Court is plaintiff's motion for class certification Fed. R. Civ. Pro. 23. Plaintiff defines the class as

(i) all persons with addressees in the State of California (ii) to whom collection letters in the form of *Exhibit A* (attached to the Complaint), (iii) were sent by Eskanos & Adler, P.C.; Irwin J. Eskanos; Donald R. Stebbins; Jeff Daniel; and Jerome M. Yalon, Jr. in an attempt to collect a debt incurred for personal, family, or household purposes (iv)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1146624 (N.D.Cal.)
(Cite as: 2004 WL 1146624 (N.D.Cal.))

sent during the one year period prior to the filing of the complaint in this action (v) which letters were not returned undelivered by the United States Postal Service.

Bracamonte requests that the Court certify the class and appoint him as the class representative and appoint his counsel as class counsel.

## DISCUSSION

A court may certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied. *See* Fed.R.Civ.P. 23; *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir.1996). Rule 23(a) provides that a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

**\*3** In addition to demonstrating that the Rule 23(a) requirements are met, the plaintiffs must establish one or more of the following grounds for maintaining the suit as a class action pursuant to Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed.R.Civ.P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (citing *Miller v. Mackey Int'l, Inc.,* 452 F.2d 424,

427 (5th Cir.1971)). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 691 F.2d 1335, 1342 (9th Cir.1982); *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975). However, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may ... consider the legal and factual issues presented by plaintiff's complaints." 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.26 (3d ed.1992). The Court will consider the allegations of the complaint, but going beyond the pleadings to analyze the claims, defenses, relevant facts, and applicable substantive law may be necessary in order to evaluate whether certification is appropriate. *Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996). The decision to certify a class is committed to the discretion of the district court. *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1309 (9th Cir.1977).

### 1. Rule 23(a)(1)-Numerosity

Under Fed. R. Civ. Pro. 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." To support his claim that the instant proposed class would satisfy the numerosity requirement, Bracamonte attaches as Appendix A to his motion Defendants' Response to Plaintiff's Interrogatory # 3. Interrogatory # 3 required Defendants to "[s]tate the number of persons with addresses within California who were sent letters in the form of *Exhibit A* since April 3, 2002." (emphasis in the original). Defendants responded that "[t]he number of persons with addresses within California who were sent letters in the form of *Exhibit A* since April 23, 2002, is approximately 4,673." (emphasis in the original). This number makes joinder of all members impracticable and that the numerosity requirement is therefore satisfied.

### 2. Rule 23(a)(2)-Commonality

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1146624 (N.D.Cal.)
**(Cite as: 2004 WL 1146624 (N.D.Cal.))**

Under Fed.R.Civ.P. 23(a)(2), there must be "questions of law or fact common to the class." Courts look for a common nucleus of operative facts. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). Bracamonte contends that defendants engaged in standardized conduct toward proposed class members by sending them an attorney form letter when the attorneys had not actually reviewed the letter in advance, and cites *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998) ("Common nuclei of fact are typically manifest where, like in the case sub judice, the defendants have engaged in standardized conduct toward members of the proposed class by mailing them allegedly illegal form letters or documents."). The existence of some factual variation among the class grievances will not defeat a class action. *See Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir.1992).

*\*4 The Court finds that these contentions satisfy the commonality requirement.

3. Rule 23(a)(3)-Typicality

The "claims or defenses of the class representative must be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). In the Ninth Circuit, "under the rule's permissive standards, representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998) *. See also California Rural Legal Assistance v. Legal Services Co.,* 917 F.2d 1171, 1175 (9th Cir.1990) (Rule 23 "does not require the named plaintiffs to be identically situated with all other class members. It is enough to share a 'common issue of law or fact.' " (internal citations omitted)). The class representative must be able to prove actual injury, but all class members need not have suffered the same injury as the class representatives. *See Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992).

The plaintiff whose claim is typical will ordinarily establish the defendants' liability to the entire class

by proving his or her individual claim. *See* 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 18.08 (3d Ed.1992). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D.Cal.1985).

Under the circumstances of this case, the Court finds that Bracamonte has asserted claims which are typical of the other class members' claims, in that each of the class members was sent the same letter, was subjected to the same alleged violation and was injured, if at all, in the same way.

4. Rule 23(a)(4)-Representativeness

Under Fed.R.Civ.P. 23(a)(4), plaintiffs seeking to represent a class must be able to "fairly and adequately protect the interests" of all class members. Representation is considered adequate if (1) the attorney representing the class is qualified and competent; and (2) the class representatives are not disqualified by interests antagonistic to the remainder of the class." *See Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

Plaintiff has submitted a declaration stating that he understands his responsibilities as a class representative and is willing to undertake them. Would-be class counsel have submitted unopposed declarations outlining their considerable experience in cases of this nature. Counsel further argue that the "identical nature of the claims" obviates any potential for conflicting interests in this action.

The Court agrees, and finds that Bracamonte and his counsel will be able to fairly and adequately represent the class.

5. Rule 23(b)(2) and (3)

In addition to demonstrating that the Rule 23(a) re-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1146624 (N.D.Cal.)
**(Cite as: 2004 WL 1146624 (N.D.Cal.))**

quirements are met, plaintiffs must establish one or more of the following grounds for maintaining the suit as a class action pursuant to Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed.R.Civ.P. 23(b). Bracamonte contends that the requirements of both Rule 23(b)(2) and Rule 23(b)(3) are satisfied, and therefore asks the Court to certify the class pursuant to both subparts.

**\*5** As to Rule 23(b)(2), Bracamonte seeks declaratory relief against defendants, thus meeting its requirements.[FN5] With regard to Rule 23(b)(3), Bracamonte argues that he must only show an essential common factual link between all class members and the defendant for which the law provides a remedy. *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227 (9th Cir.1996). He contends that the legal issues for all potential class members are the same, since they all received the same letter, namely Exhibit A. Arguing that the standardized "document is the focalpoint of the analysis," Bracamonte concludes that common questions predominate and that a class action will most efficiently and consistently resolve his claim concerning a standardized collection letter. Furthermore, since the individual claims are small, the class action will protect the rights of individual class embers who are unable or unwilling to protect themselves. This Court agrees.

> FN5. At oral argument, plaintiff's counsel suggested that defendants have already agreed that they will no longer use this particular form letter, and thus that declaratory relief may no longer be needed. If and when this is determined, the Court will enter an appropriate order.

### CONCLUSION

For the foregoing reasons, the Court GRANTS

plaintiff's motion for class certification [docket # 45] and certifies the following class under provisions (b)(2) and (b)(3) of Rule 23:

(i) all persons with addressees in the State of California (ii) to whom collection letters in the form of *Exhibit A* (attached to the Complaint), (iii) were sent by Eskanos & Adler, P.C.; Irwin J. Eskanos; Donald R. Stebbins; Jeff Daniel; and Jerome M. Yalon, Jr. in an attempt to collect a debt incurred for personal, family, or household purposes (iv) sent during the one year period prior to the filing of the complaint in this action (v) which letters were not returned undelivered by the United States Postal Service.

In accordance with discussions at oral argument, counsel are directed to meet and confer to formulate a proposed form of notice, notification plan and opt-out procedure and timetable. Counsel shall submit same to the Court for its review on or before May 21, 2004 and shall attend a further case management conference on May 28, 2004 to discuss implementation of the notice plan.

IT IS SO ORDERED.

N.D.Cal.,2004.
Bracamonte v. Eskanos & Adler
Not Reported in F.Supp.2d, 2004 WL 1146624 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 30

## IN RE CONSECO LIFE INSURANCE CO.
## LIFE TREND INSURANCE MARKETING
## AND SALES PRACTICE LITIGATION

| State | Supporting Authority | Elements for Breach of Contract |
|-------|---------------------|--------------------------------|
| Alabama | *HealthSouth Rehabilitation Corp. v. Falcon Management Co.*, 799 So. 2d 177, 182 (Ala. 2001) | Establishing a breach of contract requires proving; (1) a valid contract existed; (2) the plaintiff's performance; (3) the defendant's nonperformance; and (4) damage. |
| Alaska | *Glover v. Sager*, 667 P.2d 1198, 1201 (Alaska 1983) | The elements of a breach of contract claim include the existence of a contract, that was breached, entitling the plaintiff to relief. |
| Arizona | *Watson Construction Co. v. Amfac Mortgage Corp.*, 606 P.2d 421, 432 (Ariz. Ct. App. 1979) | "As to this [breach of contract] claim, the plaintiff has the burden of proving each of the following elements: (1) That there was a contract between plaintiff and [defendant]; (2) That the plaintiff did, or was willing to perform its part of said contract; (3) That [defendant] did not perform its part of said contract; and (4) That plaintiff was damaged by defendant's failure to perform." |
| Arkansas | *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 33 S.W.3d 128, 133 (Ark. 2000) | "A person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages." |
| California | *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332 (Cal. App. 4th Dist. 2009) | Reciting elements for breach of contract claim as "the existence of a contract that they performed or were excused from performing, that the contract was breached and that damages resulted from the breach." |
| Colorado | *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) | "It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff" |

| Connecticut | *Bouchard v. Sundberg*, 834 A.2d 744, 751 (Conn. App. Ct. 2003) | "[T]he key elements of a breach of contract action considered by the court are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." |
|---|---|---|
| Delaware | *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. Super. Ct. 2003) | "In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." |
| District of Columbia | *Tsintolas Realty Co v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) | "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." |
| Florida | *J.J. Gumberg Co. v. Janis Services, Inc.*, 847 So. 2d 1048, 1049 (Fla. Dist. Ct. App. 2003) | "The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." |
| Georgia | *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996) | "The elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken." |
| Hawaii | *TSA International Ltd v. Shimizu Corp.*, 990 P.2d 713, 734 (Haw. 1999) | A "breach of contract" claim "involve[s] monetary damages based upon the non-performance of a contractual or quasi-contracutal obligation." |
| Idaho | *State ex rel Robins v. Clinger*, 238 P.2d 1145, 1148 (Idaho 1951) | "A complaint based on contract is generally held to be sufficient if it states the making of the contract, the obligations thereby assumed and the breach." |
| Illinois | *Van Der Molen v. Washington Mutual Finance, Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) | "To recover the breach of a contract, a party must establish the following elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." |

| Indiana | *Breeding v. Kye's Inc.*, 831 N.E.2d 188, 190-91 (Ind. Ct. App. 2005) | "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." |
| Iowa | *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) | "In a breach-of-contract claim, the complaining party must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." |
| Kansas | *Commercial Credit Corp. v. Harris*, 510 P.2d 1322, 1325 (Kan. 1973) | "In an action based on a contract, the burden of proof is on the plaintiff to show: (1) execution and existence of the contract alleged in the petition; (2) sufficient consideration to support the contract; (3) performance or willingness to perform in compliance with the contract alleged; and (4) the defendant's breach insofar as such matters are in issue." |
| Kentucky | *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x. 535, 538 (6th Cir. 2008) | "Kentucky law has long been clear that such pleadings must state the contract, the breach and the facts which show the loss or damage by reason of the breach." |
| Louisiana | *Sevarg Co., Inc. v. Energy Drilling Co.*, 591 So. 2d 1278, 1281 (La. Ct. App. 1991) | Elements of a breach of contract claim are the existence of a contract, that was breached causing damage. |
| Maine | *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 724 A.2d 1248, 1250 (Me. 1999) | "[I]n order for [plaintiff] to prevail on its contract claim, the jury must find: (1) breach of a material contract term; (2) causation; and (3) damages." |
| Maryland | *Taylor v. NationsBank, N.A.* 776 A.2d 645, 651 (Md. 2001) | "[A] plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." |

| Massachusetts | *Michelson v. Digital Financial Services*, 167 F.3d 715, 720 (1st Cir. 1999) | Breach of contract claim requires alleging: (1) a valid and binding agreement; (2) that was breached; (3) causing damages. |
|---|---|---|
| Michigan | *Webster v. Edwards D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999) | "To recover for breach of contract under Michigan law, [plaintiff] had to prove: 1) the existence of a contract. . . 2) the terms of the contract, 3) that [defendant] breached the contract, and 4) that the breach caused his injury. |
| Minnesota | *Thomas B. Olson & Associates, P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) | "A claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." |
| Mississippi | *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992) | "In any suit for a breach of contract, the plaintiff has the burden of proving by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it; and 3. that he has been thereby damaged monetarily." |
| Missouri | *Shirley's Realty, Inc v. Hunt*, 160 S.W.3d 804, 807 (Mo. Ct. App. 2005) | "To make a claim for breach of contract, the plaintiff must show the existence of a contract or agreement and the terms of that agreement, that the plaintiff performed or tendered performance, that the defendant did not perform, and that the plaintiff was thereby damaged." |
| Montana | *Tin Cup County Water and/or Sewer District v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 68 (Mont. 2008) | "A party may not recover damages for breach of contract unless the party proves that the breach of contract proximately caused the damages." |
| Nebraska | *Henriksen v. Gleason*, 643 N.W.2d 652, 654 (Neb. 2002) | "In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." |
| | | |

| Nevada | *Brown v. Kinross Gold USA, Inc.*, 531 F.Supp. 2d 1234, 1240 (D. Nev. 2008) | A plaintiff in a breach of contract action must "show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." |
|---|---|---|
| New Hampshire | *In re Tyco International, Ltd.*, 2004 WL 524429, at *3 (D.N.H. Mar. 16, 2004) | A plaintiff "must allege (1) the existence of a valid and binding contract; (2) that plaintiff has complied with the contract and performed his own obligations under it; and (3) breach of the contract causing damages." |
| New Jersey | *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985) | "[A] *prima facie* case of the essential elements of a cause of action for a breach of contract [consists of]: a valid contract, defective performance by the defendant, and resulting damages." |
| New Mexico | *Camino Real Mobile Home Park Partnership v. Wolfe*, 891 P.2d 1190, 1196 (N.M. 1995) | "The plaintiff's burden of proof in an action for breach of warranty thus is identical to the burden of proof in any action for breach of contract. The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages." |
| New York | *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) | "Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." |
| North Carolina | *Poor v. Hill*, 530 S.E. 2d 838, 843 (N.C. Ct. App. 2000) | "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." |
| North Dakota | *U.S. v. Basin Electric Power Cooperative*, 248 F.3d 781, 810 (8th Cir. 2001) | "The elements of a prima facie case for breach of contract are (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." |
| Ohio | *Powell v. Grant Medical Center*, 771 N.E.2d 874, 881 (Ohio Ct. App. 2002) | "To prove a breach of contract claim, a plaintiff must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." |
|  |  |  |

| Oklahoma | *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001) | "In order to recover on its breach of contract theory, [plaintiff] needed to prove: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." |
|---|---|---|
| Oregon | *Acrymed, Inc. v. Convatec*, 317 F.Supp. 2d 1204, 1215 (D. Or. 2004) | "To state a viable claim for breach of contract, a plaintiff must allege: 1) the existence of a specific contract and the relevant terms; 2) the plaintiff's full performance of the contract; 3) defendant's breach of the contract; and 4) damages to plaintiff resulting from the breach." |
| Pennsylvania | *Lackner v. Glosser*, 892 A.2d 21, 30  (Pa. Super. Ct. 2006) | "To maintain a cause of action in breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." |
| Rhode Island | *Petrarca v. Fidelity Casualty and Insurance Co.*, 884 A.2d 406, 410 (R.I. 2005) | Breach of contract claim requires proving "both the existence and breach of a contract" and "that the defendant's breach thereof caused him damages." |
| South Carolina | *Branche Builders, Inc v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) | "The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." |
| South Dakota | *McKie v. Huntley*, 620 N.W.2d 599, 603 (S.D. 2000) | "An action for breach of contract requires proof of an enforceable promise, its breach, and damages." |
| Tennessee | *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) | "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." |
| Texas | *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 326 (Tex. App. 1995) | "The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." |

| Utah | *Bair v. Axio Design, LLC*, 20 P.3d 388, 392 (Utah 2001) | "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." |
|------|------|------|
| Vermont | *Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.*, 921 F.Supp. 1206, 1212 (D.Vt. 1996) | "In defining the elements of a breach of contract claim, the Vermont Supreme Court has stated, '[i]n the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach.'" |
| Virginia | *Brown v. Harms*, 467 S.E.2d 805, 807 (Va. 1996) | "[T]he essential elements of a cause of action for breach of contract are: (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff." |
| Washington | *Lehrer v. State Department of Social and Health Services*, 5 P.3d 722, 727 (Wash. Ct. App. 2000) | "Generally, a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage." |
| West Virginia | *Wince v. Easterbrooke Cellular Corp.*, --- F.Supp. 2d ----, 2010 WL 392391, at *5 (N.D.W.Va. Feb. 2, 2010) | "Under West Virginia law, to state a claim for breach of contract under Rule 8, a plaintiff must allege the following elements: the existence of a valid, enforceable contract, that the plaintiff has performed under the contract, that the defendant has breached or violated its duties or obligations under the contract, and that the plaintiff has been injured as a result." |
| Wisconsin | *Riegleman v. Krieg*, 679 N.W.2d 857, 862-63 (Wis. Ct. App. 2004) | "In evaluating a breach of contract claim, we must first determine whether a valid contract exists. If a valid contract exists, we then must determine whether a party has violated its terms, and whether any such violation is material such that it has resulted in damages." |
| Wyoming | *Cathcart v. State Farm Mutual Automobile Insurance Co.*, 123 P.3d 579, 589 (Wyo. 2005) | "To establish a breach of an insurance contract, the insured must show the existence of a contract, a breach and damages." |

# EXHIBIT 31

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|---|---|

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |
|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

On March 4, 2008, Plaintiff Celedonia X. Yue filed her Complaint in this putative class action, alleging that Defendant Conseco Life Insurance Company ("Conseco") has wrongfully decided to increase the cost of insurance charges for its "Valulife" and "Valuterm" life insurance policies (collectively "Policies"). The Complaint alleges breach of contract and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and seeks injunctive and declaratory relief.[1]  On December 8, 2008, the Court denied Conseco's motion to dismiss on the grounds that the controversy is not ripe for review.  On June 10, 2009, Plaintiff filed her motion to certify a National class and a California class.  For the following reasons, the Court GRANTS the motion.[2]

## II.   FACTUAL BACKGROUND

In 1995, Plaintiff Yue purchased a "Valulife" universal life insurance policy issued by Defendant,[3] with a face amount of $400,000.  Compl. ¶ 7.  The insured is Plaintiff's

---

[1] The Complaint also seeks monetary damages, but Plaintiff now asserts that she seeks only declaratory and injunctive relief.

[2] Docket No. 67.

[3] The policy was actually issued by Massachusetts General Life Insurance Company, which became Conseco Life in 1996.  Compl. ¶ 8.  Philadelphia Life Insurance

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|---|---|

mother, Ruth S. Yue, and Plaintiff Yue is the beneficiary. *Id.* at Ex. A, pp. A-28, A-44.
At the time of purchase, Ruth S. Yue was 70 years old. *Id.* at A-28.

The Complaint alleges that Plaintiff's life insurance policy and the policies of the
putative class members are "universal life" policies. *Id.* Owners of universal life policies
pay premiums into an account that earns interest. The account represents (1) the total
premiums the policyholder has paid, plus any credited interest, minus (2) expense charges
and a monthly "cost of insurance" charge. A universal life insurance policy will remain
in force as long as there are enough funds in the account to pay the expense charges and
the monthly cost of insurance charge. Compl. ¶ 29.

The cost of insurance charge covers the cost of paying out death benefits, and it is
designed to increase as the insured ages. Compl. ¶¶ 23-26, 31. It is calculated based on a
formula that takes into consideration the amount of funds in the account and a factor
called the "cost of insurance rate." Compl. ¶¶ 30-31. Under the terms of all of the
universal life policies at issue in this action, the language determining the cost of
insurance rate is identical, and the cost of insurance rate is dependent solely on the
insurer's expectation as to its future mortality experience. Compl. ¶¶ 32-34. In other
words, "once the actual cost of insurance rates are set by the insurance company, they can
only be increased because of anticipated future worsening mortality experience of
insurance company [sic] (*i.e.*, more death claims anticipated in the future than were
previously expected)."[4] Compl. ¶ 35. Conseco does not disclose its actual cost of
insurance rates. It discloses only the monthly cost of insurance charge deducted from the
insured's account. Compl. ¶ 36.

Plaintiff alleges that Conseco has decided to raise the cost of insurance charges

---

Company also issued policies at issue in this action, and in or about 1998 it merged into
Conseco. *Id.*

[4] Plaintiff's policy states, "ACTUAL MONTHLY COST OF INSURANCE
RATES WILL BE DETERMINED BY THE COMPANY BASED ON ITS
EXPECTATIONS AS TO FUTURE MORTALITY EXPERIENCE," and "Current
monthly cost of insurance rates will be determined by the Company based on its
expectation as to future mortality experience." Compl. Ex. A at A-29, A-34.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

beginning in the twenty-first year of the Valulife and Valuterm policies (specifically, in the year 2016 for Plaintiff's policy). Compl. ¶ 54. Plaintiff further alleges that there is no way that the substantial increase could be due to the insurer's anticipated mortality experience because "it is well known that the population in this country is living significantly longer than was anticipated in the past . . . ." *Id.* Plaintiff offers evidence that the true reason for Conseco's 2003 increase was due to a strategy presented by an outside consulting firm to create a new "mortality ratio" technique that "justifies a [cost of insurance] increase to maintain the ratio, even though the expected mortality rates have not changed. Only the expected mortality payments have increased, and this was due to lower than anticipated lapses." Dillon Decl., Ex. A at 1. This strategy was outlined in a memorandum written by Conseco's appointed actuary, James Hawke, addressing the impending 2003 cost of insurance rate increase. *Id.*

Plaintiff alleges that at no point did Conseco disclose its intent to impose massive cost of insurance increases beginning in policy year 21, and policyholders thus "relied on the lower cost of insurance rates in purchasing the Policies, continuing to pay premiums respecting the Policies, and not seeking insurance coverage elsewhere." Compl. ¶ 56. Plaintiff also alleges that the increases

> are so dramatic, sudden, and unexpectedly large that many members of the Class are now, or will be, unable to afford to pay these huge and unexpected increases in premium [sic] required to keep their insurance policies in force. Many policyholders will, or have been, forced to surrender their life insurance policies. In addition, upon information and belief, many of these policyholders are elderly and uninsurable and, after surrender of their policies, they will thereby be left without insurance protection and/or adequate insurance protection.

Compl. ¶ 57.

Plaintiff's Complaint alleges that the increase is consistent with a history of wrongful increases by Defendant, beginning in 1992 with "an artificial increase in the cost of insurance rate unrelated to [Conseco's] expectations as to future mortality increase," and continuing in 2003 or 2004 with Conseco's allegedly unlawful increase in

Case3:10-md-02124-SI Document15-5 Filed03/11/10 Page56 of 64
Case 2:08-cv-01506-AHM-SH Document 96 Filed 12/07/2009 Page 4 of 12

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|---|---|

the cost of insurance charge for certain policies.[5] Compl. ¶¶ 39, 50.

## III.  LEGAL STANDARD FOR CLASS CERTIFICATION[6]

The party seeking class certification bears the burden of establishing that each of
the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been
met. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) (citing *Zinser v.
Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended*, 273 F.3d
1266 (9th Cir. 2001)), *reh'g en banc granted*, 556 F.3d 919 (9th Cir. 2009) . A district
court may certify a class only if, after "rigorous analysis," it determines that the party
seeking certification has met its burden. *General Telephone Co. of the Southwest v.
Falcon*, 457 U.S. 147, 158-161 (1982). In reviewing a motion for class certification, the
Court generally is bound to take the substantive allegations of the complaint as true. *In
re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 691 F.2d
1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).
Nevertheless, the Court may look beyond the pleadings to determine whether the
requirements of Rule 23 have been met. *Hanon v. Dataproducts Corp.*, 976 F.2d 497,
509 (9th Cir. 1992) (citation omitted). In fact, "courts are not only at liberty to but *must*
consider evidence which goes to the requirements of Rule 23 [at the class certification
stage] even [if] the evidence may also relate to the underlying merits of the case." *Dukes*,
509 F.3d at 1178 n.2 (internal quotations and citation omitted). Ultimately, it is within
the district court's broad discretion to determine whether a class should be certified. *Id.*
at 1176.

## IV.  DISCUSSION

In MDL No. 1610, this Court addressed similar class certification motions

---

[5]  The Complaint states that the former allegations were adjudicated in the
plaintiffs' favor in *Rosenbaum, et al. v. Philadelphia Life Insurance Co., et al.,* Case No.
93-0834 MRP (Eex). The latter allegations were brought before this Court in a
Multidistrict Litigation proceeding and the parties eventually settled the claims. *See In re
Conseco Life Insurance Company Cost of Insurance Litigation*, MDL No. 1610 AHM.

[6]JUDGE: This language is from the orders index.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|---|---|

regarding Conseco's invalid cost of insurance rate increases under the terms of other life insurance policies. *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 2005 WL 5678842 (C.D. Cal. April 26, 2005); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 2005 WL 5678790 (C.D. Cal. April 27, 2005). In that case, this Court decided to certify a national class and California classes on some of the causes of action (including a UCL claim), conducting its analysis under Fed. R. Civ. P. 23(b)(2). The Court's reasoning in those orders is instructive here.

**A.    Definitions of the National Class and the California Class**

Plaintiff seeks certification of the following National class of policyholders:

> All owners of Valulife and Valuterm universal life insurance policies issued by either Massachusetts General Life Insurance Company or Philadelphia Life Insurance Company and that were later acquired and serviced by Conseco Life whose policies are in force as of the date class notice in this action is disseminated. This class does not include officers or actuaries (or their immediate families) of Massachusetts General, Philadelphia Life, Conseco Life, or any of their parent companies, including Conseco, Inc.

Plaintiff further seeks certification of the following California class of policyholders:

> All owners of Valulife and Valuterm universal life insurance policies issued by either Massachusetts General Life Insurance Company or Philadelphia Life Insurance Company and that were later acquired and serviced by Conseco Life whose policies are in force as of the date class notice in this action is disseminated and either reside [sic] in the State of California when the policy was issued or now reside in the State of California. This class does not include officers or actuaries (or their immediate families) of Massachusetts General, Philadelphia Life, Conseco Life, or any of their parent companies, including Conseco, Inc.

Defendant does not challenge the adequacy of these proposed definitions. With the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|----------|----------------------|------|------------------|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|-------|----------------------------------------------------|

exception of changing the California class definition to incorporate the proper tense ("...and <u>who</u> either <u>resided</u> in the State of California when the policy was issued or now reside in the State of California. . ."), the Court finds these definitions to be satisfactory.

**B.     Rule 23(a)**

Plaintiff must show that the class meets the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed R. Civ. P. 23(a)(1)-(4). Defendant does not contest that Plaintiff has met requirements (1)-(3), and, indeed, Plaintiff has shown that she has.

The numerosity requirement is satisfied. Defendant does not dispute Plaintiff's contention that there are many thousands of policyholders nationwide who may fall within the class. *See* Dillon Decl. ¶ 9 (stating that approximately 48,000 Valulife and Valuterm insurance policies are outstanding and in force).

Commonality is also satisfied, as "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Defendants do not dispute that Conseco Life approached the policies as a group. *See* Dillon Decl., Ex. A at 1; Complaint, Ex. A at A-34. Nor does Defendant dispute that the key legal question of whether the cost of insurance rate increases would be permitted under the uniform language of the policy is common to all members of the class. *See* Complaint ¶ 21 (a).

Plaintiff's claim also satisfies the typicality requirement. Plaintiff alleges—and Defendant does not dispute—that she purchased one of the policies at issue and that she was subjected to the 2003 cost of insurance rate increase no differently than the other members of the proposed class. Complaint ¶ 7, 54-57.

Defendant does dispute whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This depends on two questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1998). Defendant does not challenge the adequacy of Plaintiff's counsel, but it does argue that Plaintiff is an inadequate class representative

Case3:10-md-02124-SI Document15-5 Filed03/11/10 Page59 of 64
Case 2:08-cv-01506-AHM-SH Document 96 Filed 12/07/2009 Page 7 of 12

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

because her claims are time-barred by California's four-year statute of limitations on actions for breach of contract, presumably, Cal. Code Civ. Proc. § 337. Opp'n at 22-23. Conseco argues that Plaintiff's claim accrued in October 2002, when Conseco adopted a Board resolution with respect to the cost of insurance increase at issue. However, even if the cause of action did accrue at that point for statute of limitations purposes—a question the Court will not resolve at this time—Plaintiff's claims would not be time barred because this is an appropriate case in which to apply the discovery rule.

In *April Enterprises*, the California Court of Appeal extended the discovery rule into certain breach of contract cases, even where there is no allegation of fraud, professional negligence, or breach of fiduciary duty. *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 830-32 (Ct. App. 1983). Specifically, the court found that "a common thread seems to run through all the types of actions where courts have applied the discovery rule," namely that the "injury or the act causing the injury, or both, have been difficult for the plaintiff to detect." *Id.* at 831. In most cases, as well, "the defendant has been in a far superior position to comprehend the act and the injury," and "the defendant had reason to believe the plaintiff remained ignorant he had been wronged." *Id.* There is also "an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed," which is often "accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's [sic] ignorance." *Id. See also Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5-6 (Ct. App. 2003) (reaffirming the principles in *April Enterprises*).[7]

Here, the injury and the act causing the injury were both nigh to impossible for Plaintiff to detect in October 2002. Conseco does not disclose the actual cost of insurance rates to policyholders but only advises as to the monthly cost of insurance charge deducted from the account value. Complaint ¶ 36. In addition, Defendant did not

---

[7]Defendant's citation to *Perez-Encinas v. Amerus Life Ins. Co.*, 486 F. Supp. 2d 1127, 1135 (N.D. Cal. 2006), is inapposite because in that case, the alleged breach of contract was not difficult to detect, and the defendant was not in a far superior position to comprehend the alleged breach. Indeed, the defendant there believed that it was faithfully executing the contract, and the plaintiffs were actually in a better position than the defendant to detect the breach. *Id.* at 1135-36.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|---|---|

at any point notify policyholders of the upcoming change of rates in their policies.[8] Complaint ¶ 56. Further, the actual increases would not be visible in a policyholder's annual report until Year 21 when the rates increase. *See* Complaint ¶ 38. Defendant was clearly in a far better position to comprehend the act and injury, since it raised the rates, and so the statute of limitations for Plaintiff's breach of contract claim should not have begun to run until Plaintiff knew or had reason to know of her claim. To hold otherwise "would amount to an expectation that a contracting party in such situations has a duty to continually monitor whether the other party is performing some act inconsistent with one of the many possible terms in a contract." *April Enterprises*, 147 Cal. App. 3d at 832. "Imposing such a duty to monitor is especially onerous when the breaching party can commit the offending act secretly, within the privacy of its own offices," *Id.*, as Defendant allegedly did here. Plaintiff's claims are not time-barred, and she is an adequate representative for the class.

**C. Rule 23(b)(2)**

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001). "A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Id.* (quoting *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir. 1986).

Defendant does not dispute that it is proper to analyze whether certification is appropriate under Rule 23(b)(2) because the primary form of relief requested is injunctive. Indeed, although Plaintiff does ask for damages in the form of repayment of any unlawful overcharges, Complaint ¶¶ 5, 6, the primary form of relief requested is

---

[8]Defendant asserts that "every policyholder began receiving illustrations, just like Yue did, showing that their premiums would increase in year 21 of the policy." Opp'n at 22 n.25. However, Defendant does not state when these alleged notices were sent out, nor does it cite to any facts to support this assertion.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

injunctive relief preventing Defendant from increasing the cost of the policies, Complaint Prayer for Relief ¶ 1, an event which is not scheduled to occur until Year 21 of the Policies, which corresponds to 2016 for Plaintiff. Complaint ¶¶ 4, 7.

Moreover, class certification is appropriate because Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *See* Fed. R. Civ. P. 23(b)(2). Conseco treated all of the Policies alike in deciding to implement the Year 21 cost of insurance increase. All of the Valulife and Valuterm Policies contain identical cost of insurance language that requires the company to determine monthly cost of insurance rates "based upon its expectation as to future mortality experience." Complaint, Ex. A at A-34; Dillon Decl, Ex. A at 1. Conseco allegedly decided to uniformly increase the cost of insurance rates for all of the Policies in Year 21 based on a new "mortality ratio" concept developed by outside consultants. Complaint ¶¶ 54-55; Dillon Decl., Ex. A at 1. It is therefore appropriate for the Court to evaluate the claims on behalf of the entire class as a whole, to determine whether these increases are permissible under the Policies and, if the increases are not justified, to order injunctive or declaratory relief applicable to the entire class of Policyholders.

In its Opposition, Defendant argues that a variety of differences in contract law in different states prevent certification of the class. It asserts that because state law may vary on a number of issues—including when the policyholder's claim accrues, whether to treat the breach of contract claim as a present or an anticipatory breach, and whether specific performance is available—a national class may not be certified.[9] Opp'n at 6-7.

---

[9]One particular ground on which Defendant objects to class treatment is that individualized discovery will be necessary for each plaintiff to determine when she acquired knowledge of her claims for statute of limitations purposes. However, even in the context of certification of 23(b)(3) classes, which require a more exacting predominance analysis, "[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)." *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). In fact, "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named

O

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

However, Rule 23(b)(2) does not require a showing of predominance or manageability as required under Rule 23(b)(3). *Rodriguez v. Hayes*, 578 F.3d 1032, 1051 (9th Cir. 2009) ("[U]nlike actions brought under one of the other 23(b) prongs, 'questions of manageability and judicial economy are . . . irrelevant to 23(b)(2) class actions.'" (quoting *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993)); *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)."). Nor does the Ninth Circuit require a "cohesiveness" analysis under Rule 23(b)(2), as argued by Defendant. *See Walters*, 145 F.3d at 1047 ("[W]ith respect to 23(b)(2) in particular, the government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule. Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.") Defendant cites not a single case holding that a choice-of-law analysis or a broader predominance analysis is required to certify a class under Rule 23(b)(2).[10] *See* Opp'n at 4-5. Thus, the question of whether state law may differ on such questions is not relevant to the Court's analysis.

Furthermore, Defendant has not identified any variation in state law that bears on the fundamental question in this case—whether Conseco had contractual authority under the Policies to impose the cost of insurance rate increases at issue. *See* Opp'n at 6-7. All of Defendant's purported variations in state law are wholly tangential to the fundamental, common question of law in this case. These variations, therefore, do not preclude class

---

plaintiffs, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *In re Energy Systems Equipment Leasing Securities Litigation*, 642 F. Supp. 718, 752-53 (E.D.N.Y. 1986) (compiling authorities addressing the issue); *see also Massachusetts Mutual Life Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (Ct. App. 2002) (quoting *Energy Systems* on this point).

[10]Nor does Defendant cite to any cases holding that a plaintiff is required to submit a trial plan, as it argues, in the case of a class certification under Rule 23(b)(2). Opp'n at 16-17.

Case3:10-md-02124-SI   Document15-5   Filed03/11/10   Page63 of 64
Case 2:08-cv-01506-AHM-SH      Document 96      Filed 12/07/2009      Page 11 of 12

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|---|---|---|---|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|---|---|

certification under Rule 23(b)(2).[11]

### D.    The California Class for the UCL Claim

Defendant's only challenge to the certification of the California class covering the claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, is that individualized inquiries would be required to determine if particular plaintiffs satisfied the statute of limitations.  For the same reasons as discussed in footnote 9, *supra*, this argument does not preclude class certification.  Conseco cites no California case declining to certify a class seeking injunctive relief under the UCL on the theory that each member of the class must individually prove timeliness of her claim.  In fact, in *Massachusetts Mutual*, the court rejected the contention that individual discovery determinations precluded class certification for a UCL claim. *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (Ct. App. 2002).  The court reasoned, "Given the fact that plaintiff's claim is based on a nondisclosure, the objective determination of when the nondisclosure should have been discovered seems readily amenable to class treatment." *Id.*  Here, too, an objective determination of when the class members should have discovered the increase in cost of insurance rates—based on a disclosure or the lack thereof by Defendant—seems readily amenable to class treatement.  Thus, this argument does not preclude certification of the California class based on the UCL claim.

### V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for class certification.  The Court certifies the following classes:

---

[11]Defendant also asserts that class certification is precluded because many of the putative class members may lack standing.  Opp'n at 21.  This argument is a non-starter.  In a class action, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  The Court has already determined that Ms. Yue's claims are ripe, present a case or controversy, and that Ms. Yue has standing to assert a claim under California's Unfair Competition law.  December 8, 2008 Order at 6-13.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1506 AHM (JTLx) | Date | December 7, 2009 |
|----------|------------------------|------|------------------|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|-------|-----------------------------------------------------|

1) As to the breach of contract and declaratory relief claims (the national class):

All owners of Valulife and Valuterm universal life insurance policies issued by either Massachusetts General Life Insurance Company or Philadelphia Life Insurance Company and that were later acquired and serviced by Conseco Life whose policies are in force as of the date class notice in this action is disseminated. This class does not include officers or actuaries (or their immediate families) of Massachusetts General, Philadelphia Life, Conseco Life, or any of their parent companies, including Conseco, Inc.

and

2) As to the UCL claim:

All owners of Valulife and Valuterm universal life insurance policies issued by either Massachusetts General Life Insurance Company or Philadelphia Life Insurance Company and that were later acquired and serviced by Conseco Life whose policies are in force as of the date class notice in this action is disseminated and who either resided in the State of California when the policy was issued or now reside in the State of California. This class does not include officers or actuaries (or their immediate families) of Massachusetts General, Philadelphia Life, Conseco Life, or any of their parent companies, including Conseco, Inc.

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

|  | : |
|--|---|
| Initials of Preparer | SMO |