David J. Millstein (CSB #87878)
MILLSTEIN & ASSOCIATES
100 The Embarcadero Suite 200
San Francisco, California 94105
Telephone:    (415) 348-0348
Facsimile:    (415) 348-0336
E-mail:  dmillstein@millstein-law.com

Scott D. Gilbert (Admitted *pro hac vice*)
August J. Matteis Jr. (Admitted *pro hac vice*)
Stephen A. Weisbrod (Admitted *pro hac vice*)
Kathleen Hale (Admitted *pro hac vice*)
GILBERT LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone:    (202) 772-2200
Facsimile:    (202) 772-3333
Email: gilberts@gotofirm.com
Email: matteisa@gotofirm.com
Email: weisbrods@gotofirm.com
Email: halek@gotofirm.com

Other Plaintiffs' Counsel Appear on Signature Page

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

|  |  |
|---|---|
| IN RE CONSECO LIFE INSURANCE CO. LIFE TREND INSURANCE MARKETING AND SALES PRACTICE LITIGATION | ) Case No. M:10-cv-02124-SI<br>)<br>) [REDACTED]<br>)<br>) **PLAINTIFFS' JOINT REPLY**<br>) **BRIEF IN SUPPORT OF THEIR**<br>) **MOTION FOR CLASS**<br>) **CERTIFICATION**<br>)<br>) **Date:  June 4, 2010**<br>) **Time:  9:00 a.m.**<br>) **Judge: Hon. Susan Illston** |

## **TABLE OF CONTENTS**

                                                                                        Page

Table of Authorities ......................................................................................................... iii

I.   Preliminary Statement ...................................................................................................1

II.  Argument ......................................................................................................................2

    A.    Plaintiffs Seek a National Class on Claims Alleging Breach of Contract, Not Claims Alleging Fraudulent Sales Practices. ...................................................2

    B.    Individual Analysis is Not Necessary to Determine Whether Conseco Breached the Contract. ............................................................................................5

        1.    Conseco's lack of candor is the reason why Plaintiffs have multiple theories of breach. .................................................................................5

        2.    Conseco was improperly calculating the shortfall amounts in precisely the same manner for all policyholders. .......................................6

        3.    Conseco's failure to notify policyholders of the alleged underfunding breached the Policy in the same manner for all policyholders. ...........................................................................................10

        4.    All policyholders are potentially subject to the same impermissible increase in fees and charges. ...............................................................11

    C.    This Case Is Not Premature Because Conseco Already Has Injured the LifeTrend Policyholders and Conseco Still May Attempt to Implement the Measures Announced in the October 2008 Letter. ...............................................12

    D.    Class Certification Is Appropriate Under Both Rules 23(b)(2) and 23(b)(3). ...............................................................................................................13

        1.    Neither form of requested relief predominates over the other. ...............14

        2.    Any potential individual monetary damages arising from Conseco's breach do not defeat class certification. .................................15

        3.    The fact that thousands of class members have surrendered their policies does not justify denial of class certification. ..............................15

    E.    Trial of This Matter Would be Workable and Manageable ................................16

        1.    The elements of contract law do not vary among states. ........................16

        2.    Because neither side contends that the contracts are ambiguous, the Court should not consider variations in the case law concerning the admissibility of extrinsic evidence to establish a contract's ambiguity. .................................................................................................18

3.   Variations in statutes of limitation have no bearing on the predominance analysis. .......................................................................18

4.   The Court can instruct the jury on variations of state law to the extent necessary. ..............................................................................19

F.   Unsophisticated Lay People Can Serve as Class Representatives In Cases Involving Complex Contract Breaches or Fraud. ................................................19

1.   Plaintiffs' lack of insurance expertise does not prevent them from being adequate class representatives.......................................................20

2.   Plaintiffs' understanding of the OPP does not defeat typicality............21

3.   Adequacy is satisfied as long as one individual is found to meet the criteria. ...................................................................................22

G.   Certification of a California Class is Appropriate. ..............................................23

H.   The Court Should Disregard the Expert Report of Dr. Michael Keeley.............23

III.   Conclusion ..........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

<u>Page</u>

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998), *overruled on other grounds, Dukes*, 2010 WL
1644259 (9th Cir. Ap. 26, 2010)..................................................................................14

*Baghdasarian v. Amazon.com, Inc.*,
258 F.R.D. 383 (C.D. Cal. 2009)....................................................................................12

*Ballard v. Equifax Check Services, Inc.*,
186 F.R.D. 589 (E.D. Cal. 1999) ...................................................................................12

*Bibo v. Federal Exp., Inc., No. C 07-2505 TEH*,
2009 WL 1068880 (N.D. Cal. April 21, 2009)...............................................................16

*Campo v. American Corrective Counseling Services*,
254 F.R.D. 585 (N.D. Cal. 2008)...................................................................................21

*Castano v. America Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ...........................................................................................13

*Dilts v. Penske Logistics, LLC*, No. 08-cv-318,
2010 WL 1709807 (S.D. Cal. April 26, 2010)................................................................16

*Dukes v. Wal-Mart Stores, Inc.*,
___ F.3d ___, 2010 WL 1644259 (9th Cir. April 26, 2010)............................................5, 8,
14, 24

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)........................................................................................................24

*Ellis v. Costco Wholesale Corp.*,
240 F.R.D. 627 (N.D. Cal. 2007).................................................................................8, 19

*In re Energy Systems Equipment Leasing Securities Litigation*,
642 F. Supp. 718 (E.D.N.Y. 1986) ................................................................................19

*Flintkote Co. v. General Accident Assurance Co. of Canada*,
410 F. Supp. 2d 875 (N.D. Cal. 2006)...........................................................................24

*Friedman v. Cal. State Employees Association, No. CIV S-000101WBS GGH*,
2000 WL 288468 (E.D. Cal. Mar. 15, 2000) .................................................................12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1997) ..................................................................................12, 22

*Home Insurance Co. v. Gates McDonald & Co.*, No.: CV-01-07365,
2004 WL 548661 (C.D. Feb. 9, 2004)...........................................................................24

*Howard v. Gap, Inc.*, No. 06-06773-WHA,
    2009 WL 3571984 (N.D. Cal. Oct. 29, 2009)..................................................................15

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ....................................................................................16

*Kleiner v. First National Bank of Atlanta*,
    97 F.R.D. 683..........................................................................................................4, 18

*Lee Cycle Center, Inc. v. Wilson Cycle Center, Inc.*,
    545 S.E.2d 745 (N.C.)................................................................................................17

*Lessard v. Metropolitan Life Insurance Co.*,
    103 F.R.D. 608 (D. Me. 1984).....................................................................................19

*Littledove v. JBC & Associates, Inc.*, No. CIV S-00-0586WBS GGH,
    2001 WL 42199 (E.D. Cal. Jan. 11, 2001) ...................................................................12

*Local Joint Executive Board of Culinary/Bartender  Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ....................................................................................23

*Magic Valley Potato Shippers v. Continental Insurance*,
    739 P.2d 372 (Idaho 1987)..........................................................................................18

*Molski v. Gleich*,
    318 F.3d 937 ..............................................................................................................14

*Occidental Land, Inc. v. Superior Court of Orange County*,
    18 Cal. 3d 355 (1976) ................................................................................................23

*In re Potash Antitrust Litigation*,
    159 F.R.D. 682 (D. Minn. 1995)..................................................................................17

*Rodriquez v. Gates*,
    2002 WL 1162675 (C.D. Cal. May 30, 2002) ...............................................................22

*Rodriquez v. West Publishing Co.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................................23

*S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*,
    320 F.3d 838 (8th Cir. 2003) ......................................................................................24

*Seckinger-Lee Co. v. Allstate Insurance Co.*,
    32 F. Supp. 2d 1348 (N.D. Ga. 1998)..........................................................................17

*Sheet Metal Workers, International Association, Local Union No. 24 v. Architectural Metal Works, Inc.*,
    259 F.3d 418 (6th Cir. 2001) ......................................................................................24

*Smith v. County Village International*,
    944 A.2d 240 (Vt. 2007)..............................................................................................17

JOINT REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION       M:10-cv-02124-SI

*Southern States Police Benevolent Association, Inc. v. Choice Armor & Equip., Inc.,*
 241 F.R.D. 85 (D. Mass. 2007).................................................................................18, 19

*Thomas v. Capital Medical Management Associates, LLC,*
 985 A.2d 51 (2009)...............................................................................................18

*Vasquez v. Superior Court of San Joaquin County,*
 4 Cal. 3d 800 (1971) .........................................................................................23

*Waste Management Holdings, Inc. v. Mowbray,*
 208 F.3d 288 (1st Cir. 2000)..............................................................................19

*Westways World Travel, Inc. v. AMR Corp.,*
 218 F.R.D. 223 (C.D. Cal 2003)..........................................................................16

*Yamner v. Boich,* No. 92-20597 RPA,
 1994 WL 514035 (N.D. Cal Sept. 1994) .............................................................21

*Yokoyama v. Midland National Life Insurance Co.,*
 594 F.3d 1087 (9th Cir. 2010) ...........................................................................15

*Zinser v. Accufix Research Institute, Inc.,*
 253 F.3d 1180 (9th Cir. 2001) ...........................................................................15

### STATUTES

Fed. R. Civ. P. 23(c)(1)(A) .....................................................................................14

# I.   PRELIMINARY STATEMENT

Conseco's 44-page Opposition to Plaintiff's Motion for Class Certification (the "Opposition") nowhere refutes the foundations of Plaintiffs' request for a nationwide class for breach of contract, which are that (1) all of the potential 9,550 class members owned Conseco LifeTrend 3 and 4 life insurance policies (the "Policies"); (2) all of the Policies contain identical relevant provisions; (3) Conseco administered all of the Policies in the same way for decades; and (4) in October 2008, Conseco announced in a form letter (the "October 2008 Letter") to all potential class members that the same changes would be implemented for all Policies.

Conseco's form letter expressly assured each and every policyholder:

> **You are not being singled out.  This change will be applied uniformly to all policies in the same age, gender and underwriting classification with like benefits and provisions as your policy.**

Ex. 1 to Joint Motion, Oct. 2008 Letter at BRD 0077 (emphasis added).  In this reply memorandum, Plaintiffs will show that:

1. Plaintiffs seek certification of a national class on claims alleging breach of contract, not claims alleging fraudulent sales practices.

2. Because analysis of individual Plaintiffs' circumstances is not necessary to determine whether Conseco breached the standard-form contracts at issue, the variations in individuals' circumstances cited by Conseco are not grounds to deny class certification.

3. This case is not premature because Conseco's announcement in October 2008 already has harmed policyholders and because Conseco still may attempt to implement some or all of the illegal measures announced in its October 2008 Letter.

4. This is an ideal and timely case for certification of a class under both Rule 23(b)(2) and Rule 23(b)(3) because Conseco still may attempt to implement the changes Conseco announced in October 2008 – a prospect that necessitates injunctive relief on a class-wide basis – and because Conseco's conduct already has damaged and may further damage all class members – a situation that warrants an award of damages on a class-wide basis.

5. Trial of this matter would be workable and manageable, notwithstanding the minor variations in state law cited by Conseco.

6. Plaintiffs are suitable class representatives even though they are elderly lay people and may not describe the complex breach-of-contract and fraud concepts raised by Conseco's conduct with the precision expected of trained legal professionals.

7. In addition to a nationwide breach-of-contract class, this Court also should certify a California class because, under applicable California law, a fraud claim can be established without delving into the individual reliance issues cited by Conseco.

8. Finally, Conseco's attempt to offer the unqualified "expert" opinions of Dr. Michael Keeley concerning these issues is improper and, in any event, unpersuasive.

Thus, Plaintiffs wholly satisfy the requirements for class certification under Rule 23(a), and this Court should certify both a damages and injunctive class under Rules 23(b)(2) and (b)(3).

## II. ARGUMENT

Conseco goes to herculean efforts to manufacture differences among potential class members where no material variations exist. As Conseco itself stated in the October 2008 letter it sent to all of the policyholders, the changes announced in the Letter were to be "applied uniformly to all policies in the same age, gender and underwriting classification with like benefits and provisions as your policy." With almost ten thousand people being threatened and damaged in precisely the same way, the proposed classes of plaintiffs here are precisely the types of classes for which class action procedures were created.

### A. Plaintiffs Seek a National Class on Claims Alleging Breach of Contract, Not Claims Alleging Fraudulent Sales Practices.

Conseco wrongly frames this case as one involving allegedly fraudulent sales practices. Conseco's Opposition to Plaintiffs' Joint Motion for Class Certification ("Opposition Br.") at 4, 13, 17, & Appx. B. Conseco's purpose in mischaracterizing Plaintiffs' claims is obvious: Conseco hopes the Court will focus on the fact that different policyholders purchased Conseco's product through different brokers instead of the fact that all of the policyholders purchased the same product. Conseco's self-serving effort ignores Plaintiffs' Joint Motion, which does not seek national class certification on any claims arising out of the marketing of the Policies.

Rather, Plaintiffs seek a national class solely on their breach-of-contract claim, which is based on uniform breaches of standard life insurance policies that contain materially identical provisions.

Conseco does not dispute the core common facts that form the basis of the request for class certification. As Conseco's statement of facts in the Opposition confirms, the relevant provisions of the LifeTrend Policies are materially identical. Opposition Br. at 1-2 (listing the materially identical provisions). For example, all of the Policies contain an Optional Premium Payment Provision ("OPP") that allows policyholders to stop paying premiums after five years as long as they satisfy the OPP eligibility formula. Ex. 5 to Joint Motion, Brady Policy at BRD 0115; Ex. 1 to Opposition Br., Declaration of Frank Scuglik ¶ 7. The OPP eligibility formula is the same in every single Policy; it requires the value of the accumulation account to exceed the then guaranteed cash value plus the then applicable surrender charge and any indebtedness. *Id.* All of the Policies also permit Conseco to make two types of monthly deductions: Expense Charges, which are capped at $5 per month after the second policy year, and Cost of Insurance, which varies depending on the age and sex of the insured and is based in part on insurance mortality tables. Ex. 5 to Joint Motion, Brady Policy at BRD 0111; Opposition Br. at 40.

The Policies also require Conseco to issue annual statements detailing, among other things, death benefits, premiums paid, expense charges, interest credited, outstanding loans, current cash value, and charges since the last statement. Ex. 5 to Joint Motion, Brady Policy at BRD 0119. The Policies also state that Conseco shall "send a written notice" for required premium payments. *Id.* at BRD 0112. The Policies also contain a Non-Participating Provision that prohibits Conseco from recovering investment losses from policyholders. *Id.* at BRD 0119 (Policy "will not share in any of the Company's profits or surplus").

Conseco does not deny that it always has administered all of the Policies in the same manner. Conseco always allowed policyholders to elect the OPP after the fifth policy year. And then years after the proposed class members had elected the OPP, in October 2008, Conseco sent the October 2008 Letter to all of the approximately 10,000 LifeTrend policyholders who are putative class members, announcing administrative changes affecting all of the Policies. Ex. 1 to Joint Motion, Oct. 2008 Letter at BRD 0078. Touting the fact that every policyholder was being

1   treated the same way, *id.*, Conseco asserted that all Policies were underfunded and that all

2   policyholders owed shortfall payments. *Id.* at BRD 0078. Conseco also announced in October

3   2008 that new fees and charges would be imposed on all policyholders. *Id.* at BRD 0077-78.

4          Plaintiffs contend that the Policy is unambiguous, as does Conseco. Conseco states that

5   the Policies could be deemed ambiguous only "over Conseco's objection." Opposition Br. at 22.

6   Conseco further states that "the policy is unambiguous" on "the use of guaranteed cash value to

7   determine underfunding." *Id.* Given the lack of dispute as to ambiguity, the court should

8   assume that neither party will rely on extrinsic evidence at trial for the purpose of establishing

9   ambiguity of the guaranteed cash value provisions. *See Kleiner v. First Nat. Bank of Atlanta*, 97

10  F.R.D. 683, 693 (explaining that because neither side asserted that the contracts were ambiguous,

11  inquiry into individual extrinsic evidence was unnecessary).

12         Conseco points out small differences among marketing and account maintenance

13  documents provided to different policyholders. *See* Opposition Br., Appx. B (discussing

14  marketing documents); Opposition Br. at 23 (discussing correspondence to and from

15  policyholders about their invocation of the OPP and proposals made to certain policyholders).

16  But this information – which did not materially vary in any event – does not trump the

17  unambiguous terms actually contained in the Policies, nor does this information bear on the

18  question of whether the changes announced by Conseco in October 2008 breached the plain

19  language of the contracts. Indeed, Conseco would never rely on such extrinsic evidence at trial

20  because Conseco's unequivocal position is that the Policy can be deemed ambiguous only "over

21  [its] objection." Proffering such evidence would constitute an admission either that the Policy is

22  ambiguous or that a policyholder's interpretation may trump the Policy itself, which are

23  admissions that Conseco plainly has no intention of making. *Cf.* Opposition Br. at 22.

24         Conseco emphasizes that the proposed class members did not receive identical sales

25  communications regarding the OPP, but Conseco concedes that, prior to October 2008, the

26  company never informed any proposed class member about the alleged underfunding described

27  in the October 2008 Letter. This extrinsic evidence likely will have little bearing on Plaintiffs'

28  request to certify a national class on the breach-of-contract claim, but, as discussed below, the

---

JOINT REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION                    M:10-cv-02124-SI

4

latter fact bears directly on the issue of whether a class of California policyholders should be certified on Plaintiffs' fraud claim.

Thus, the facts that bear on the interpretation of the Policies are common among the policyholders and give rise to identical legal questions, as is necessary to satisfy the commonality element of Federal Rule of Civil Procedure 23(a)(2). Regardless of whether Plaintiffs are correct on the merits, Plaintiffs plainly have established that the class members' claims present "common questions of law and fact" as required under Rule 23(a)(2). *See Dukes v. Wal-Mart Stores, Inc.* ___ F.3d ___, 2010 WL 1644259, at \*16 (9th Cir. April 26, 2010) (discussing distinction between class certification disputes and merits disputes). Moreover, the facts delineated above establish that Conseco "acted . . . on grounds that apply generally to the class," as is required for an injunctive class under Rule 23(b). *Id.* at \*34.

### B. Individual Analysis is Not Necessary to Determine Whether Conseco Breached the Contract.

Plaintiffs' breach-of-contract claims can be established and resolved without reference to individual policyholders' circumstances.

#### 1. Conseco's lack of candor is the reason why Plaintiffs have multiple theories of breach.

Plaintiffs have proffered more than one theory in support of their breach-of-contract claims because Conseco has proffered more than one explanation for its conduct. All policyholders who received an October 2008 Letter were told that their Policies were underfunded and that "additional premiums were required." Ex. 1 to Joint Motion, Oct. 2008 Letter at BRD 0078. The Letter did not explain how Conseco determined that the Policies, after years of apparently being fully funded, now were drastically underfunded. Nor did it explain how Conseco calculated the "additional premiums." *Id.* Plaintiffs filed their Complaints based of the representation made in the October 2008 Letter.

Conseco was not forthright in the October 2008 Letter or subsequent communications. Through discovery in this litigation, Plaintiffs learned that the alleged underfunding was premised on a miscalculation that contravened the Policies' plain language. Naturally, Plaintiffs have updated their arguments to reflect the new information obtained through discovery.

---

JOINT REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION        M:10-cv-02124-SI

2. **Conseco was improperly calculating the shortfall amounts in precisely the same manner for all policyholders.**

   a. **For all Policies, the then guaranteed cash value is zero after a policyholder elects the OPP.**

Conseco claims to have applied the OPP formula to arrive at the shortfall amounts, but discovery in this matter has revealed that the shortfall amounts demanded by Conseco were improperly calculated in precisely the same way for all policyholders. The OPP formula provides that a Policy is underfunded if the Policy's accumulation account is less than the then guaranteed cash value plus the surrender charge and any indebtedness. To determine these values, one initially must turn to the Policy. Every Policy contains a table entitled "Table of Guaranteed Policy Values" ("the Table"). The Table contains important qualifying language: "This table presumes that the insured pays the full annual premium shown on the preceding page each year." Ex. 5 to Joint Motion, Brady Policy at BRD 0007. Under this clear and express language, if the policyholder does not pay the premium in any year, then the guaranteed cash values set forth in the Table no longer apply and thus are zero. (The annual statements that Plaintiffs received confirmed that, after they stopped paying premiums, the guaranteed cash value was zero; as noted, these annual statements are central to Plaintiffs' request for certification of a California class.[1] *See, e.g.,* Ex. 17 to Joint Motion, Annual Statement of Eugene Kreps at BRD 0106; Ex. 18 to Joint Motion, Annual Statement of John McNamara, BRD 0172; Ex. 19 to Joint Motion, Annual Statement of Hisaji Sakai at BRD 0215.)

To be clear, after a nonpayment of premium, the *actual* cash-out value does not become zero. Rather, Conseco is required to calculate the cash-out value based on a formula that incorporates the actual content of the account, without regard to the "guaranteed" values listed in the Table. In other words, Plaintiffs are not suggesting that Conseco has the right to simply walk away with policyholders' money once they invoke the OPP. Policyholders who stop paying

---

[1] Conseco claims the language in the Table and the annual statements means "that if an insured on OPP were to *surrender* his or her coverage, he or she would not be entitled to receive the guaranteed cash value shown in the policy's table of guaranteed cash values – *not* that the figure shown there is irrelevant to the periodic determination of underfunding." Opposition Br. at 5 n.8. Conseco, however, cannot pick when the Table applies to serve its own interests in clear contravention to the Policy language. The Table contains no qualifying language in regard to surrendering policies. *See* Ex. 5 to Joint Motion, Brady Policy at BRD 0007.

JOINT REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION                     M:10-cv-02124-SI

premiums under the OPP and who then cash out their accounts are entitled to receive an amount that corresponds to the actual value of their accounts, and while such policyholders are still guaranteed a minimum interest rate of 4.5 percent, they take the risk that the cash-out amount may be less than the minimum guaranteed value listed in the Table.

> **b.   For all policyholders, the values listed in the Table of Guaranteed Policy Values are used in the OPP formula only to determine initial eligibility for OPP status.**

Contrary to Conseco's assertions, the reference to the guaranteed cash value in the OPP formula is not rendered meaningless by the fact that the guaranteed cash value becomes zero if no premium has been paid. The guaranteed cash value in the Table is used when determining whether a policyholder can enter the OPP in the first instance. To illustrate this point, consider the values for Plaintiff Marion Hovden over seven years of her policy and how using the guaranteed cash value in the table impacted her ability to elect OPP status:

| Policy Year[2] | Annual Premium Paid | **Item A** Accumulation Account Value[3] | **Item B** Guaranteed Cash Value | **Item C** Surrender Charge | **Item D** Debt | OPP Eligibility |
|---|---|---|---|---|---|---|
| 1. (1989-90) | $19,895 | $5,360.58 | $0 | $24,831 | $0 | Too Early |
| 2. (1990-91) | $19,895 | $13,574.79 | $0 | $24,831 | $0 | Too Early |
| 3. (1991-92) | $19,895 | $53,703.22 | $12,000 | $24,831 | $0 | Too Early |
| 4. (1992-93) | $19,895 | $74,460.48 | $24,500 | $24,831 | $0 | Too Early |
| 5. (1993-94) | $19,895 | $75,896.58 | **$37,500** | $24,831 | $0 | **A > B + C + D = Eligible for OPP at end of policy year** |
| 6. (1994-95) | $0 | $76,655.13 | $0 -Table listed value of $50,500 inapplicable | $24,831 | $0 | A > B + C + D = Still eligible for OPP at end of policy year |

---

[2] Marion Hovden's policy incepted on February 15, 1989. M. Hovden Policy at CLIC 4105, attached as Exhibit 1 to the Declaration of Kathleen Hale. All references to exhibits in this Reply brief are to exhibits attached to the Declaration of Kathleen Hale.
[3] The accumulation account values are derived from the Values History Tables produced by Conseco. Ex. 2, M. Hovden Values at CLIC 4133-4148. The accumulation account value is for February for each policy year. The premium values, guaranteed cash value, and surrender charge are derived from Marion Hovden's policy. Ex. 1, M. Hovden Policy at CLIC 4105-4107.

For Mrs. Hovden to enter the OPP for the first time in early 1994, Conseco had to determine whether the value of her accumulation account exceeded the then guaranteed cash value plus the surrender charge and any indebtedness. When she elected the OPP, the guaranteed cash value of $37,500 that was listed in the Table applied because she had paid the annual premium every year up to that point. After 1994, the OPP formula still applied to determine whether she remained eligible for the OPP, but the guaranteed cash value used in the OPP formula was zero because she had ceased paying premiums.

    **c. Whether Plaintiffs' interpretation of the guaranteed cash value is right or wrong, the same rules will apply for all policyholders.**

Conseco complains about allegedly illogical implications of interpreting the guaranteed cash value as zero. Relatedly, Conseco contends that its delay in informing policyholders about its calculations benefited the policyholders by giving them the benefit of "free insurance" for years. Conseco misses the key points.

Most importantly, at the class certification stage, the Court does not decide the merits, it merely decides whether the merits analysis is likely to be the substantially the same for all potential class members such that the requirements of Rule 23 are met. The court should "not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements." *Dukes*, 2010 WL 1644259, at \*16. In other words, whether Plaintiffs are right or wrong in their contractual interpretation, the court should certify a class because the issue that eventually will be decided on the merits is the same for everyone. (In a recent case involving alleged disparities in the treatment of female employees, Judge Patel expressed this general concept very succinctly, explaining that, although the plaintiffs and defendants disagreed over "the interpretation of statistical data on promotional decisions and performance reviews," at the class certification stage, the court had no occasion to "make determinations on the merits of whether such disparities do exist and what any disparities mean." *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 651 (N.D. Cal. 2007)).

---

JOINT REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION      M:10-cv-02124-SI

Furthermore, Conseco is quarrelling with clear and express contract language that Conseco itself drafted. And, to the extent it matters, Conseco is the party proposing an illogical result. Logic might support an interpretation of the OPP that protects Conseco from the possibility that the guaranteed cash value and OPP provisions of the policies will cause Conseco to pay out to policyholders more than the net value of what they put in. *See* Chart *infra* at 7. But logic does not support Conseco's effort to use those provisions as a basis for suddenly imposing massive retroactive premiums for the purpose of compensating Conseco for its investment losses.

Conseco also suggests, somewhat tepidly, that the guaranteed cash value should be interpreted in a manner that is consistent with the way the concept was discussed in certain form letters signed by Mr. Brady and the Hovdens. But, as an initial matter, neither side contends that the contracts are ambiguous, and therefore neither side will seek to use extrinsic evidence such as these letters to prove that the contracts are ambiguous. Furthermore, the letters Conseco cites clearly were not written by Plaintiffs but by agents of Conseco, as they are standard forms containing identical language. *See* Ex. 3, Brady OPP Election Letter at CLIC 2478; M. Hovden OPP Election Letter at CLIC 1774; C. Hovden OPP Election Letter at CLIC 1456.[4] It is hard to place much stock in the letters, as they do not accurately reflect *any party's* understanding of the OPP formula, in that they make no reference to indebtedness or the surrender charge. *Id.* Plaintiffs also would note that, to the extent it is relevant, the majority of the extrinsic evidence will favor their interpretation. Conseco conveniently forgets not only its annual statements specifying the GCV is $0 but also the letters it authored that affirm Plaintiffs' argument regarding the guaranteed cash value. These letters explained that "[s]hould at any time the policy's net cash value (accumulation account less surrender charge, less indebtedness) become insufficient to cover the monthly deductions, a premium notice will be sent." Ex. 4, Conseco Letter to Brady (Dec. 22, 1993) at CLIC 2300; Conseco Letter to Hovden (Dec. 23, 1993) at

---

[4] The letters state: "I would like to elect the option of premium payment by the vanishing premium method for the above policy, effective with the premium due date above. I understand that if the actual cash value drops below the table of guaranteed value, a special premium due notice will generate to advise that additional premium is due."

CLIC 1435. This form letter does not even mention the guaranteed cash value or the Table in the Policy, which makes some sense given that the guaranteed value was zero for policyholders already on OPP status.

>    **3.    Conseco's failure to notify policyholders of the alleged underfunding breached the Policy in the same manner for all policyholders.**

To the extent that Conseco accurately calculated the alleged shortfall amounts, Conseco is plainly liable for breach of contract under a different theory because Conseco concealed from policyholders both the shortfall amounts it calculated and the consequences of the alleged underfunding of their accounts. The Policy provides for a sixty-one day "Grace Period" if a policyholder fails to timely pay a required premium. Ex. 5 to Joint Motion, Brady Policy at BRD 0112. Thirty days before the end of the grace period, Conseco is required to "send a written notice" to the policyholder stating that the premium payment is required. *Id.* Thus before demanding the shortfall amounts, Conseco was obligated to send notices to all policyholders.

Of course, ████████████████████████████████████████ This undisputed fact is common to all potential class members. Conseco suggests that no notice was required because the October and November 2008 letters did not actually demand payment of the shortfall amount, but Conseco again ignores the plain language of its own documents. The October 2008 Letter explained that in Conseco's view, the money allegedly was owed years ago. Ex. 1 to Joint Motion, Oct. 2008 Letter at BRD 0078 ("Due to administrative issues related to your policy, you may not have previously been informed that your policy is Under Funded and additional premiums were required."). If these alleged shortfall amounts were due years ago, then all plaintiffs would contend that notices also were due years ago – and that, having failed to provide the required notices Conseco now is prohibited from attempting to raise policyholders' premiums retroactively. This argument is based on the same facts and contract terms for all policyholders. Regardless of what was demanded in the form letters, ████████████████████████████ ████████████████████████████████████████, *see* Ex. 20 to Joint Motion, LifeTrend 3 & 4 Project at CLIC 0071.

Conseco's claim that policyholders benefited from the failure to send shortfall notices also is unpersuasive and already has been rejected by this Court. In *Brady*, Conseco has twice

1   argued that policyholders have benefited from Conseco's failures to meet its obligations under

2   the Policy, but the Court has not found this bizarre argument to be compelling, and we need not

3   review it in detail here. Mot. to Dismiss Am. Compl., Dkt # 58 at 6; Mot. to Compel, Dkt. # 70

4   at 4; Order on Mot. to Compel, Dkt. # 93 at 3. For now, suffice it to say that Conseco's point –

5   that the policyholders supposedly profited from Conseco's delay – applies equally to all

6   policyholders, such that, regardless of how the Court may someday evaluate the merits, even

7   Conseco's defense to liability supports Plaintiffs' request for class certification.

8                    **4.    All policyholders are potentially subject to the same impermissible**
                            **increase in fees and charges.**
9

10          Another contract breach affecting all policyholders is Conseco's attempt to raise the

11  Expense Charges and Cost of Insurance charges. In October 2008, Conseco announced that it

12  was going to deduct the maximum Expense Charge of $5 per month and substantially increase

13  the monthly Cost of Insurance deduction. Ex. 1 to Joint Motion, Oct. 2008 Letter at BRD 077-

14  78. Conseco stated that "[t]his rate change is being applied uniformly to all policies." *Id.* at

15  BRD 0077. ████████████████████████████████████████████████████

16  ███████████████████████████████████████████████ *See* Ex. 13 to

17  Joint Motion, Deposition of Keith Turner (Nov. 18, 2009) at 163:8-22. Conseco Senior Actuary

18  Keith Turner's testimony ████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████

21  ████ Ex. 13 to Joint Motion, Turner Depo. at 37:4-20. ██████████████████

22  ███████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████

24  ███████████████████████████████████████ Opposition Br. at 41███

25  ███████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████████

27  ████████████████████ Ex. 13 to Joint Motion, Turner Depo. 164:19-22. At the very least,

28  there is a question about whether the increased fees and expenses violate the Non-Participating

    Provision for all policyholders.

Conseco's argument that certifying a class for claims involving improper fees is not feasible because it "would lead the Court and the parties into a host of individualized issues" is belied by its own statement that the fees will be applied uniformly and by the many cases in which improper fees serve as a basis for class certification. Opposition Br. at 43. *See, e.g, Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383 (C.D. Cal. 2009) (certifying a state class of consumers who were charged shipping and handling fees of which Amazon.com allegedly retained an improper portion); *Littledove v. JBC & Assocs., Inc.*, No. CIV S-00-0586WBS GGH, 2001 WL 42199, at *5 (E.D. Cal. Jan. 11, 2001) (certifying a class of action based in part on a debt collection agency charging fees to consumers); *Friedman v. Cal. State Employees Ass'n*, No. CIV S-000101WBS GGH, 2000 WL 288468, at *7 (E.D. Cal. Mar. 15, 2000) (certifying a class action of members of the California State Employees Association that alleged the union planned to automatically deduct union dues from paychecks); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999) (certifying a class action based on allegations of charging consumers improper service fees for bounced checks).

*       *       *       *

In sum, no individual analysis is needed to determine whether Conseco breached the Policies by improperly calculating the guaranteed cash value, failing to send shortfall notification, and attempting to charge new fees and expenses to recoup corporate losses. The answer to these questions will be reached by a careful review of the Policies and Conseco's uniform actions toward all LifeTrend members. These questions are common among the class members and they predominate over any others that may arise and thus satisfy the requirement for a class under Rule 23(b)(a)(2) and (b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1997)

**C.    This Case Is Not Premature Because Conseco Already Has Injured the LifeTrend Policyholders and Conseco Still May Attempt to Implement the Measures Announced in the October 2008 Letter.**

Conseco argues that Plaintiffs' case is premature because Conseco is in negotiations with state regulators about the changes announced in the October 2008 Letter, which are suspended at least for now. Conseco continues to try to hide behind regulatory negotiations even though it has

1  refused to produce documents given to the regulators or to allow Plaintiffs to share confidential

2  discovery from this litigation with the regulators. But the bottom line is this: Conseco already

3  has harmed its policyholders by putting them in a position where they do not know how much

4  insurance they will have, how much it will cost, and whether they will reap the benefit of the

5  4.5% percent interest rate that the LifeTrend policies are supposed to confer. *See* Ex. 1 to Joint

6  Motion for Class Cert. at BRD 00114. And because Conseco still may implement some or all of

7  the changes announced in October 2008, the harm to policyholders could get much worse.

8      Given the situation now faced by all LifeTrend policyholders, now is an "early

9  practicable time" for class certification. Fed. R. Civ. P. 23(c)(1)(A). *Cf. Castano v. Am.*

10  *Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). The Court can "understand the claims, defenses,

11  relevant facts, and applicable substantive law in order to make a meaningful determination of

12  certification issues." [5] *Id.* Maybe Conseco will consummate a settlement with regulators and

13  maybe it won't, but either way the policyholders will have the right to assert their own

14  contractual rights. Because a regulatory settlement potentially could purport to allow Conseco to

15  place policyholders in a position other than the one they were in before the October 2008 Letter,

16  the prospect for such a settlement is a non-issue in this case.

17      **D.  Class Certification Is Appropriate Under Both Rules 23(b)(2) and 23(b)(3).**

18

19      Plaintiffs seek injunctive relief to stop Conseco from implementing the changes

20  announced in the October 2008 Letter. Plaintiffs also seek compensation for damages that have

21  been incurred and may be incurred in the future as a consequence of Conseco's past and future

22  conduct. Because Plaintiffs want to stop the contractual violations from occurring and want

23  payment for injuries suffered, this case presents the ideal scenario for a so-called "hybrid"

24  certification in which a class is certified under both Rule 23(b)(2) and Rule 23(b)(3). The Ninth

25

26

27  [5] The *Castano* case on which Conseco relies is not persuasive. In *Castano*, the plaintiffs asserted
   mass tort claims on behalf of all persons addicted to nicotine. The court found that nicotine-as-

28  addiction was an untested legal theory and that personal injury claims based on that theory were
   "immature." *Id.* at 749. This case is completely different, and Conseco concedes here that
   "plaintiffs' cause of action is not immature." Opposition Br. at 9.

1 Circuit endorsed this approach only a few weeks ago in *Dukes v. Wal-Mart. See Dukes*, 2010

2 WL 1644259, at *40.

3               **1.    Neither form of requested relief predominates over the other.**

4       Both forms of relief sought by Plaintiffs are important, and it is not the case, as Conseco

5 suggests, that the monetary relief sought by Plaintiffs predominates over the injunctive relief

6 they seek. *See Dukes*, 2010 WL 1644259, at *36 (adopting for Rule 23(b)(2) classes the

7 standard that the "drafters straightforwardly indicated," which is that "Rule 23(b)(2) certification

8 is not appropriate where monetary relief is 'predominant' over injunctive relief or declaratory

9 relief"). Moreover, the monetary injuries from Conseco's breaches "flow directly from liability

10 to the class *as a whole*," which also forms the basis for injunctive relief. Thus, the potential class

11 is cohesive and the request for monetary relief does not bar Rule 23(b)(2) certification. *Cf.*

12 *Molski v. Gleich*, 318 F.3d 937, 949 (*quoting Allison v. Citgo Petroleum Corp.*, 151 F.3d 402,

13 413-415 (5th Cir. 1998) (emphasis in original), *overruled on other grounds, Dukes*, 2010 WL

14 1644259.

15       Injunctive relief that restores potential class members' Policies to their positions before

16 the October 2008 Letter likely would prevent most of the proposed class members from

17 sustaining future monetary injury. In fact, the reinstatement of policies or policy values

18 constitutes equitable relief that could be effectuated through a Rule 23(b)(2) class. *See id.*, at

19 *37 ("Rule 23(b)(2) does allow for some claims for monetary relief"). Monetary relief also will

20 not "introduce new and significant legal factual issues" or create the need for individualized

21 hearings. *See id.*, at *36. The key liability issue in this case -- whether Conseco's conduct has

22 breached or will breach its standardized contracts with LifeTrend policyholders -- is identical for

23 all proposed class members and all requested forms of relief. Finally, no significant due process

24 issues will be raised by certification of a Rule 23(b)(2) class. To the extent necessary, class

25 members who have sustained monetary injuries may be afforded notice and the opportunity to

26 opt out under Rules 23(b)(2) or 23(b)(3), or both. *See id.*, at *38 (recognizing court's discretion

27 to require notice and an opt out opportunity).

28

2.  **Any potential individual monetary damages arising from Conseco's breach do not defeat class certification.**

For the policyholders who have surrendered their Policies as well as those maintaining their policies, some individual damages assessment may be necessary. But, as Conseco concedes, the law in the Ninth Circuit is that the need for individualized damages determinations is not an independent basis for denial of class certification. Opposition Br. at 30 (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). In *Yokoyama*, the Ninth Circuit made clear that "[t]he potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification." 594 F.3d at 1089. Conseco cites only to cases decided prior to *Yokoyama* in attempting to glean some significance from the allegedly particularized analyses necessary for damages. Opposition Br. at 30 (*citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) and *Howard v. Gap, Inc.*, No. 06-06773-WHA, 2009 WL 3571984 (N.D. Cal. Oct. 29, 2009)). The holding in *Yokoyama* makes sense because the amount of damages differs among class members in virtually every case.

As for those who have surrendered their policies, a subclass could be created that would be manageable due to the uniform posture of all subclass members. Conseco also claims class certification cannot be reconciled with the group of potential class members whose Policies would be deemed underfunded even under Plaintiffs' definition of the guaranteed cash value because they have unpaid loans. But Conseco overlooks an obvious point: having an account underfunded by the amount of unpaid indebtedness is not nearly as bad as having it underfunded by that amount plus the amount listed in the Table of guaranteed cash values. Even when a policy is properly deemed to be underfunded due to indebtedness, Conseco's method of calculating underfundedness has the effect of dramatically reducing the value of the account, to the detriment of the policyholder.

3.  **The fact that thousands of class members have surrendered their policies does not justify denial of class certification.**

Conseco has now admitted that 21% of class members have surrendered their Policies. Opposition Br. at 7. These policyholders all are in the same position, albeit a different position

from those who have maintained their Policies. Conseco suggests that class certification should be denied because some policyholders have surrendered the Policies, but this argument fails for three reasons. First, as noted above, such policyholders may be entitled to undo their surrendering of the Policies depending on the nature of the injunctive relief obtained by Plaintiffs. Second, evaluating the monetary injuries of those class members who have already surrendered their policies will not involve any new, significant issues.[6] As previously discussed, the additional questions to be resolved as to this subgroup of affected policyholders, *e.g.*, the proper measure of damages, are themselves common and can be easily addressed on a class-wide basis. This is particularly true given that Plaintiffs have confined their request for nationwide certification to their claim for breach of contract, a claim that includes no reliance element or other component that would require looking at the substance of policyholders' individual transactions. Finally, if necessary, the court can address these issues through the creation of subclasses. *Bibo v. Federal Exp., Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at \*14, 07-cv-2505 (N.D. Cal. April 21, 2009) (certifying five separate subclasses); *Dilts v. Penske Logistics, LLC*, No. 08-cv-318 JLS, 2010 WL 1709807 (S.D. Cal. April 26, 2010) (certifying twelve separate subclasses).

### E.     Trial of This Matter Would be Workable and Manageable

A trial of this case would be workable and vastly less complicated than trying thousands of policyholder claims individually.

#### 1.     The elements of contract law do not vary among states.

As demonstrated, the Court will not have to grapple with individual factual issues. As for legal issues, Plaintiffs seek a national class on breach of contract, and there simply are no meaningful variations in the elements of contract law. *See Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) (reversed on other grounds). Conseco fails to identify any relevant differences in the definition of "breach" that would impact this case. *See* Opposition Br. at Appx. A.  To the

---

[6] Here, as in *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal 2003), "[t]he gravamen of Plaintiffs' complaint is that defendants had no contractual or other legal basis for [their actions]" and thus, "[s]hould this issue be decided in favor of Plaintiffs, Plaintiffs' damages will flow directly and such damages will not require inquiry into new, nor substantial, nor complex determinations regarding each Plaintiff's individual case." *See id.* at 241-42.

1 extent there is a breach at all, the breach clearly was "substantial" or "material" and thus satisfies

2 even the allegedly stricter definitions of breach used in some jurisdictions. *See, e.g.,*

3 Massachusetts Jury Instruction, Civil § 2.12(a); *Seckinger-Lee Co. v. Allstate Ins. Co.*, 32 F.

4 Supp. 2d 1348, 1357 (N.D. Ga. 1998). Conseco does not contend otherwise.

5 Nor is the element of causation a contested issue in this case. Conseco questions whether

6 there were any damages at all, but, if there were, Conseco's actions were the only potential

7 cause. This case is unlike other familiar types of breach of contract cases, such as investor

8 complaints in which the defendant might contend that the investor's losses resulted from

9 independent causes such as a general decline in the stock market rather than unauthorized

10 investment decisions by the defendant, or construction defect cases in which the defendant might

11 contend that the building owner's damages resulted from unusually bad weather rather than the

12 defendant's incorrect construction methods. If policyholders have less money in their accounts

13 due to Conseco's deducting improper premiums and expenses, the cause of such damages cannot

14 be disputed: the cause is Conseco's taking the money.

15 In any event, possible variation in causation is not a basis for denying class certification.

16 Such arguments are typically rejected by courts because they go "to the right of a class member

17 to recover, in contrast to the underlying issues of the defendant's liability." *In re Potash*

18 *Antitrust Litig.*, 159 F.R.D. 682, 699 (D. Minn. 1995) (*citing* 1 Newberg, Newberg on Class

19 Actions, §4.26 at 4-104). This point is especially important with respect to the proposed class

20 under Rule 23(b)(2): to the extent that such damages have not been suffered yet, the

21 policyholders should be permitted to prevent Conseco from causing such damages in the future,

22 as it is threatening to do. Finally, contrary to Conseco's assertion, damages is an element of a

23 breach of contract claim in all states.[7] Regardless, Plaintiffs obviously are claiming damage as a

24 result of Conseco's breaches and they clearly are entitled to seek damages in any state.

25

26 [7] Conseco claims that the authority Plaintiffs provided in Table of Contract Elements (Exhibit 30
   to the Joint Motion) shows Idaho, Maryland, North Carolina, and Vermont do not include
27 damages as an element of breach of contract. Conseco is wrong. These states do include a
   damages element. *Lee Cycle Center, Inc. v. Wilson Cycle Center, Inc.*, 545 S.E.2d 745, 751
28 (N.C.) ("In order to prevail on a claim for breach of contract, a plaintiff's evidence must show . .
   . damages resulted from the breach."); *Smith v. County Village Int'l.*, 944 A.2d 240, 243 (Vt.

**2.    Because neither side contends that the contracts are ambiguous, the Court should not consider variations in the case law concerning the admissibility of extrinsic evidence to establish a contract's ambiguity.**

As noted above, no party in this litigation contends that the LifeTrend policies are ambiguous. All parties contend just the opposite. *See infra* 4. Thus, no party is going to seek to introduce evidence to show that the contracts are ambiguous, which means that any variations among the fifty states with respect to the admissibility of such evidence for that purpose are irrelevant. *See Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. at 693.

Perhaps the Court will conclude, *sua sponte*, that the contracts are ambiguous. But if that happens, then extrinsic evidence plainly would be admissible. Plaintiffs attach as Exhibit 5 to this Reply a survey demonstrating that all fifty states and the District of Columbia allow for the admission and consideration of extrinsic evidence to resolve ambiguities if a contract is found to be ambiguous. *See* Ex. 5, 50 State Survey on Extrinsic Evidence. Evidence of the parties' conduct also may be admissible with respect to the California fraud claim, even if it has no bearing on the breach-of-contract claim, and the jury can be instructed on how to consider such evidence. *See Southern States Police Benevolent Ass'n, Inc. v. Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 91 (D. Mass. 2007) (applying the principal that "as long as common questions of fact and law predominate, variations among the several jurisdictions can be managed by the Court by use of special jury instructions, verdict forms, sub-class certifications or other means").

**3.    Variations in statutes of limitation have no bearing on the predominance analysis.**

Although statutes of limitation may vary among the states, the *Brady* Plaintiffs filed their suit on December 24, 2008, which was less than three months after Conseco sent the October 2008 Letter. *Brady*, No. 3:08-cv-05746, Complaint, Dkt. #1. Thus this action is timely under even the most restrictive statute of limitation. After all, Plaintiffs were not damaged or even threatened with damage until October 2008. Conseco cannot seriously claim that any statute of limitations clock began running during the period when Conseco's official position was that the

2007) ("To prove breach of contract, plaintiff must show damages."); *Thomas v. Capital Med. Mgmt. Assocs., LLC*, 985 A.2d 51, 66 (2009) (describing plaintiffs burden to prove damages upon a showing of liability); *Magic Valley Potato Shippers v. Continental Ins.*, 739 P.2d 372, 375 (Idaho 1987) (citing a breach of contract claim that included consequential damages).

1  policies were *not* underfunded and Conseco was issuing annual statements that were consistent

2  with the Policies' plain language, the policyholders' understanding of that language, and the fact

3  that the Policies were properly funded.

4      Moreover, potential variations in state statutes of limitation do not preclude class

5  certification as long as the commonality and predominance elements of Rule 23 are satisfied. As

6  the Central District of California recently observed in *Yue*, "[c]ourts have been nearly unanimous

7  . . . in holding that possible differences in the application of a statute of limitations to individual

8  class members, including the named plaintiffs, does not preclude class certification so long as the

9  necessary commonality, and in a 23(b)(2) class action, predominance, are otherwise present").

10 No. 2:08-cv-1506 at 9, n.9 (*quoting In re Energy Systems Equipment Leasing Securities Litig.*,

11 642 F. Supp. 718, 752-53 (E.D.N.Y. 1986) (collecting cases)); *see also Waste Mgmt. Holdings,*

12 *Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (same); *Lessard v. Metro. Life Ins. Co.*, 103

13 F.R.D. 608, 612 (D. Me. 1984) (same).

14     As to punitive damages, Plaintiffs are not seeking such damages for the breach of

15 contract claim. Plaintiffs seek them only as to the California subclass, and thus there is no

16 variation in the applicable law.

17     **4.    The Court can instruct the jury on variations of state law to the extent**
18          **necessary.**

19     While Conseco has not identified any variations in state law that actually could matter in

20 this case, if there were such variations, the court could instruct the jury on them. *See Southern*

21 *States Police Benevolent Ass'n*, 241 F.R.D. at 91. None of the variations cited by Conseco is so

22 complicated that a properly instructed jury would be incapable of understanding and applying

23 them.

24     **F.    Unsophisticated Lay People Can Serve as Class Representatives In**
           **Cases Involving Complex Contract Breaches or Fraud.**

25     Most victims of Conseco's conduct are unsophisticated and elderly lay people. Now that

26 they have sued the company, Conseco is once again attempting to exploit their lack of

27 sophistication, arguing that because Plaintiffs cannot precisely articulate their legal theories, they

28 are not qualified to serve as class representative. *See* Opposition Br. at 18-19. It should come as

1  no surprise that the Plaintiffs cannot articulate their legal claims with the precision one would

2  expect in a legal complaint filed with a court. Plaintiffs' lack of insurance expertise is exactly

3  why they hired lawyers. With the benefit of legal counsel, Plaintiffs are more than adequate

4  class representatives.

**1. Plaintiffs' lack of insurance expertise does not prevent them from being adequate class representatives.**

7  Conseco's use of carefully selected quotes from Plaintiffs' depositions to challenge their

8  adequacy is unreliable and unpersuasive. As an initial matter, Conseco quotes Jean Sakai in an

9  attempt to prove she is an inadequate class representative, even though three months prior to

10  filing the opposition brief, Mrs. Sakai withdrew as a class representative. *Brady*, No. 3:08-cv-

11  05746, Pls. Withdrawal of Mrs. Sakai, Dkt. #96.

12  Conseco also ignores Plaintiffs' statements that demonstrate their basic understanding of

13  the lawsuit and Conseco's actions. For example, Hisaji Sakai stated that the class will claim

14  Conseco "demanded more money from us, more premium. They reduced the accumulation

15  account, at least I think they did, and made the insurance policy much less worthy -- less

16  valuable." Ex. 6, Deposition of Hisaji Sakai (Dec. 22, 2009) at 17:12-22. Mr. Sakai further

17  understood that the Plaintiffs were seeking "declaratory, monetary and injunctive relief from the

18  defendants imposing unlawful payments . . . and to cease claiming that the accumulation account

19  was underfunded and that the accumulation account should be fully restored to its rightful

20  value." *Id.* at 18:8-13. John McNamara testified that he has "received a lot of documents" from

21  his attorney including the complaint, and that he had looked at all of them and read some of

22  them. Ex. 7, Deposition of John McNamara (Jan. 13, 2010) at 113:25, 114:1-2. Similarly, Bill

23  McFarland testified that he had read the complaint that was filed on his behalf in Florida and that

24  he had discussions with his attorneys about the case. Ex. 8, Deposition of Bill McFarland (Dec.

25  18, 2009) at 54:19-25, 55:1-3 & 18-19.

26  Conseco also ignores Plaintiffs' understanding that they were acting on behalf of an

27  entire class of injured people. Mrs. Hovden stated that she is "seeking to represent a class in this

28  action," and that that the class is "going after the same company for the same problem." Ex. 9,

Deposition of Marion Hovden (Jan. 11, 2010) at 19:15-19, 21:1-3. Cedric Brady also explained

1   that he is seeking to represent a "class of people who have been put in the same position that I've

2   been put in . . ." Ex. 10, Deposition of Cedric Brady (Dec. 21, 2009) at 56:2-9. As to his

3   obligations to the class Mr. McNamara said: "I think I'm supposed to represent the class, work

4   with the attorneys, have a clear understanding of the process, and also try to represent the interest

5   of the people in the class rather than just my own interest." Ex. 7, McNamara Depo. at 116:5-9.

6   Mr. McFarland stated (prior to the California and Florida cases being consolidated): "I'm

7   basically representing approximately 4,000 people and that I'm going to meet with my attorneys

8   to try to make sure that my attorneys are up and running . . . [and] we should get together so

9   we're all on the same page." Ex. 8, McFarland Depo. at 46:16-21. Finally, Dr. Sakai explained:

10  "[M]y responsibilities are to be totally committed to my co-plaintiffs, to my attorneys, and to the

11  class people who join the class." Ex. 6, Sakai Depo. at 18:16-18.

12          The level of understanding and commitment demonstrated by Plaintiffs is wholly

13  adequate. Courts "have consistently refused to deny class certification on the basis of

14  defendants' contention that a plaintiff is uninformed." *Yamner v. Boich*, No. 92-20597 RPA

15  1994 WL 514035, at *7 (N.D. Cal. Sept. 15, 1994). In *Campo v. American Corrective

16  Counseling Servs.*, 254 F.R.D. 585, 594 (N.D. Cal. 2008), the court found that defendant's

17  contention that the named plaintiffs were "ignorant of the legal matters at issue" and "fed

18  information by their lawyers" to be "perplexing since Plaintiffs are lay people who are not

19  authorized to practice law and thus would not be required to know the 'legal matters' at issue."

20  This lack of knowledge is, according to *Campo*, "precisely why Plaintiffs have engaged

21  professional legal counsel in the first instance." *Id.*

22          **2.      Plaintiffs' understanding of the OPP does not defeat typicality.**

23          Conseco makes much of Plaintiffs' understanding of the OPP and the guaranteed cash

24  value. When Plaintiffs said they thought they had to pay premiums for only five years before

25  those premiums would vanish, they simply were explaining the OPP rule in accurate lay person's

26  terms. Plaintiffs' are not, as Conseco says, "wholly different" from the theories of breach set

27  forth in the complaints. Ultimately, Plaintiffs' biggest grievance – and that of the whole class –

28

is that Conseco is claiming the accounts are not fully funded and demanding a belated premium.

Mrs. Hovden appropriately summed up policyholders' grievances as such:

> [W]e purchased [the policy] for peace of mind and for security and for the well being of our family. And we thought that when we purchased it, we were told that once we paid and paid up everything, it was paid in full. We didn't hear anything from Conseco for over 18 years and with that much in mind all that time having never heard anything that was going wrong, and then suddenly getting a letter saying that you owed so much money was unbelievable. I couldn't believe it because that was our life insurance.

Ex. 9, M. Hovden Depo. at 12:20-25; 13:1-5. Similarly, Mr. McFarland explained his concerns as follows:

> When I received the – first received the information from the insurance company, I was shocked. I had no earthly idea that I had been under funding the policy . . . All of my annual statements that I receive are all saying to me I'm in good shape. So whenever they sent me the letter of under funding, I just about fell out of my chair. At that point I – I was very distraught about it.

Ex. 8, McFarland Depo. at 47:8-16.

Conseco's argument that Plaintiffs' claims are not typical of the class because they accuse Conseco of fraudulent sales practices is flawed because Plaintiffs are not asserting sales-practice claims, and, as described above, their breach of contract claim arises out of the same course of conduct that Conseco directed against all class members. This claim is "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (noting also that the claims "need not be substantially identical"). In this sense, *Rodriquez v. Gates*, 2002 WL 1162675 (C.D. Cal. May 30, 2002) is distinguishable. In *Rodriguez*, the plaintiff was able to bring only one claim under the Fourth Amendment whereas the class members could have asserted various constitutional claims. *Id.*, at *7-8. Here, however, Plaintiffs' claims are no more or less inclusive than those of the other policyholders.

### 3. Adequacy is satisfied as long as one individual is found to meet the criteria.

Although all Plaintiffs are capable of adequately representing the class of LifeTrend policyholders, the adequacy requirement under Rule 23(a)(4) is satisfied as long as one named individual is found to meet that criteria. *See Local Joint Executive Board of Culinary/Bartender*

1    *Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001). For example, in

2    *Rodriquez v. West Publishing Co.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit held that the

3    district court erred in rejecting a settlement on adequacy grounds where only two of the five

4    named plaintiffs were subject to disqualification.

5              **G.       Certification of a California Class is Appropriate.**

6              Plaintiffs seek certification of a California subclass on a fraud claim. Of course, this

7    fraud claim is a conditional claim in that it assumes Conseco prevails on issues of contract

8    interpretation over which the parties strongly disagree. The claim is based primarily on one

9    simple fact that is common to all LifeTrend policyholders: for years, Conseco sent annual

10   statements to the policyholders that made no mention of the alleged underfunding of their

11   accounts. The fact that the annual statements all contained the same material omissions is

12   critical. The question of whether individual Plaintiffs actually relied on the annual statements is

13   irrelevant to the certification of a California class because, under California law, reliance can be

14   inferred on a class-wide basis when the claim involves a standard form contract, and proof of

15   individual reliance is not required. See *Vasquez v. Superior Court of San Joaquin County*, 4 Cal.

16   3d 800, 814-15 (1971); *Occidental Land, Inc. v. Superior Court of Orange County*, 18 Cal. 3d

17   355, 363 (1976).

18             **H.       The Court Should Disregard the Expert Report of Dr. Michael Keeley**

19             In its Opposition, Conseco relies in part on the expert opinions of Dr. Michael Keeley.

20   Ex. 1 to Decl. of David S. Clancy (April 22, 2010) Declaration of Michael C. Keeley Pertaining

21   to Class Certification ("Keeley Decl.") and Supplemental Declaration of Michael C. Keeley

22   Pertaining to Class Certification ("Keeley Supp. Decl.") Plaintiffs separately have filed a motion

23   to exclude Dr. Keeley's purported expert opinions because they fail under any applicable legal

24   standard. As an initial matter, Dr. Keeley's opinions will not "assist the trier of fact to

25   understand the evidence or to determine a fact in issue," as required by Federal Rule of Evidence

26   702 for the admissibility of expert testimony.

27             Second, to the extent that Dr. Keeley disagrees with Plaintiffs' damages theories, his

28   opinions should be disregarded because they are not based on any scientifically valid reasoning

---

or methodology but rather on speculation and subjective characterizations of the policy. *See* Plaintiffs' Motion to Strike at 4-5. (And, of course, to the extent he disagrees with damages theories that Plaintiffs are not even offering, the Court should disregard his opinions on those points as well.) Third, as Judge Patel has observed, debates over statistical analyses or the validity of plaintiffs' theories go to the merits, not to questions of class certification. *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 651 (N.D. Cal. 2007); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, (1974) (stating that the court does not make merits determinations on disparities in statistical data at the class certification stage). At this stage of the proceedings, Plaintiffs need to show that they are asserting the same theory based on the same facts, not that the theory that they all are asserting is correct. *See Dukes*, 2010 WL 1644259, at *16.

Fourth, Dr. Keeley's opinions also consist largely of improper contract interpretation or other legal conclusion. For example, in his first declaration, Dr. Keeley describes and interprets the provisions on expense deductions, the OPP, and the Guaranteed the definition of "guaranteed cash value," and he opines on whether Plaintiffs' situation resulted in cognizable damages. Keeley Decl. § IV, § VI ¶¶ 20-21, § VIII ¶¶ 30-38; Keeley Supp. Decl. § III ¶¶ 14-21. Such contract interpretation involves questions of law that courts, not experts, are charged with conducting. Therefore, Dr. Keeley's legal arguments based on and concerning his interpretation of Conseco's policies should be disregarded. *See Flintkote Co. v. Gen. Accident Assurance Co. of Canada*, 410 F. Supp. 2d 875, 886 (N.D. Cal. 2006) (contract interpretation is a question of law); *Home Ins. Co. v. Gates McDonald & Co.*, No.: CV-01-07365 CAS, 2004 WL 548661, at *20 (C.D. Cal. Feb. 9, 2004) (disallowing expert testimony which purports to interpret the contract); *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (holding that construction of an insurance policy is a matter of law for the court, and expert testimony on legal matters is not admissible); *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n.4 (6th Cir. 2001) (same).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court certify a national class on breach of contract and a California class on misrepresentation.

Dated: May 13, 2010

Respectfully submitted,

David J. Millstein (CSB #87878)
dmillstein@millstein-law.com

MILLSTEIN & ASSOCIATES
100 The Embarcadero Suite 200
San Francisco, California 94105
Telephone:     (415) 348-0348
Facsimile:     (415) 348-0336

Scott D. Gilbert (Admitted *pro hac vice*)
   gilberts@gotofirm.com
August J. Matteis, Jr. (Admitted *pro hac vice*)
   matteisa@gotofirm.com
Stephen A. Weisbrod (Admitted *pro hac vice*)
   weisbrods@gotofirm.com
Kathleen Hale (Admitted *pro hac vice*)
   halek@gotofirm.com

GILBERT LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Telephone:     (202) 772-2200
Facsimile:     (202) 772-1924

*Counsel for the Brady Plaintiffs*

Joseph J. Tabacco, Jr. (CSB #75484)
Christopher T. Heffelfinger (CSB #118058)
Bing W. Ryan (CSB #228641)

BERMAN DEVALERIO
Once California Street, Suite 900
San Francisco, CA 94111
Telephone:     (415) 433-3200
Facsimile:     (415) 433-6382

*Counsel for McFarland*

JOINT REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION                M:10-cv-02124-SI

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was mailed on May 13, 2010, to the following:

James R. Carroll
David S. Clancy
Christopher A. Lisy
Cale P. Keable
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108

Raoul S. Kennedy
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111

By: _____
Kathleen Hale