RAOUL D. KENNEDY (STATE BAR NO. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: Raoul.Kennedy@skadden.com

JAMES R. CARROLL (*PRO HAC VICE*)
DAVID S. CLANCY (*PRO HAC VICE*)
CHRISTOPHER A. LISY (*PRO HAC VICE*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Email: James.Carroll@skadden.com
Email: David.Clancy@skadden.com
Email: Christopher.Lisy@skadden.com

Attorneys for Defendant
Conseco Life Insurance Company

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CONSECO LIFE INSURANCE COMPANY LIFETREND INSURANCE SALES AND MARKETING LITIGATION | CASE NO.: 3:10-MD-2124-SI <br><br> ALL CASES <br><br> **CONSECO LIFE'S SUPPLEMENTAL SUBMISSION CONCERNING AGENT DEPOSITIONS AND PLAINTIFFS' "VANISH" THEORY** <br><br> Date: July 2, 2010 <br> Time: 9:00 a.m. <br> Place: Courtroom 10 <br> Judge: The Honorable Susan Illston |

# INTRODUCTION AND BACKGROUND

A significant complaint advanced by the Plaintiffs is that each was orally promised during the sales process or otherwise believed that premium payments on their Lifetrend policies would be due for only five years -- that is, they expected their premium-payment obligation to "vanish" after that milestone. As each of the Plaintiffs explained in their depositions, their complaint against Conseco is Conseco's purported demand, now, for additional premium.

No Conseco document makes any such promise and the Lifetrend policies themselves are to the contrary. Instead, the promise of a five-pay insurance policy was conveyed (if at all) by Plaintiffs' independent sales agents in their presentations to sell life insurance.

This "vanish" theory is inherently unsustainable on a class basis, primarily for the straightforward reason that person-by-person adjudication would be necessary to resolve what each policyholder saw, was told and claimed to believe concerning premium duration. For example:

(i) Representations about the number of premium payments that were required (and the selling process in particular) would and did vary from agent to agent and from policyholder to policyholder, precluding a uniform presentation to proposed class members that would be necessary to demonstrate common facts. (See Conseco's Opposition to Plaintiffs' Motion for Class Certification (Docket No. 25) ("Opposition") at 17-19.)

(ii) Sales agents did not use common documents provided by Conseco -- like, for example, sales scripts -- during the largely-oral selling process. (Id. at 17, 21.)

(iii) Sales agents were affiliated with independent agencies and were not employed by Conseco, which further demonstrates that no single uniform presentation could have been given. (Id. at 17.)

As a result of these and other factors, Plaintiffs' understanding about whether additional premium payments would be required -- and the basis for that understanding -- in fact vary widely. (Id. at 18-21.)

Conseco sought to take the depositions of the Plaintiffs' selling agents (Larry Winsten, David Neubauer and Lonnie Poole) to develop the factual record of how the sales process actually occurred. Plaintiffs moved to halt those depositions, arguing among other things that the testimony

1

"has little if any bearing on the issues to be addressed at the class certification hearing." (Docket No. 36.)

The Court ruled, however, that the depositions could proceed, noting that the testimony to be elicited from the agents would be highly relevant to the issue of whether a class should be certified. (Docket No. 47.)

The depositions, taken and completed just last week, prove exactly that point. The agents' testimony is indeed highly relevant, and underscores the inherently individualized issues that came to light in Plaintiffs' depositions (e.g., the agent testimony demonstrates the absence of any uniform presentation, much less a uniform "5-year vanish" presentation). The testimony confirms that Plaintiffs' proposed nationwide class would be inappropriate because of the widely varying nature of the sales presentations that informed each plaintiff's understanding about premium duration.

## RELEVANT TESTIMONY ELICITED FROM THE AGENTS

### I. REPRESENTATIONS BETWEEN AGENTS (AND POLICYHOLDERS) WERE NOT UNIFORM OR STANDARD, AND VARIED CONSIDERABLY

**Mr. Winsten**: Larry Winsten, the agent for plaintiffs Dr. Eugene Kreps, Dr. Marion Hovden and Dr. Charles Hovden, was an insurance agent affiliated with the independent (i.e., not owned by Conseco) insurance agency Xelan. In making insurance recommendations to clients that included Lifetrend policies, Mr. Winsten testified that he did not make the same presentation to each client; indeed, he testified that the presentations varied depending on the needs and goals of any particular client, and he told his clients different things depending on the policy and their individual circumstances. (Deposition of Larry Winsten ("Winsten Depo."), attached as Exhibit A to the accompanying declaration of Christopher A. Lisy ("Lisy Decl.") at 72:1-9; 22-25; 94:1-8.) Mr. Winsten considered himself familiar with the Massachusetts General products he was recommending, and testified that he was "not likely" to make a recommendation of a product he was not familiar with. (Id. at 61:8-19.)

On the issue of a five-pay guarantee, Mr. Winsten recalled being told -- by, among others, the president of Massachusetts General and representatives of his insurance agency, Xelan -- that "if [policyholders] paid the premium for five years and we requested a vanish of the policy, that

1 unless there were some dramatic changes, that the policy would stay in force." (Id. at 81:4-82:13.)
2 Mr. Winsten conveyed that concept to clients when he discussed life insurance products with them
3 (id. at 83:17-21), but -- consistent with his understanding of potential "dramatic changes" -- he did
4 acknowledge informing his clients of the "possibility" that there could be some circumstances in
5 which future premium payments might be required:

6         Q:     [T]here could be some circumstances in which a [future]
                premium payment might be a -- might be required; right?
7
8         A:     It was a possibility.

        Q:     And that's something that you discussed with your clients;
9                 correct?

10         A:     Originally.

11 (Id. at 165:18-24.)

12      For instance, Mr. Winsten reviewed with his clients the possibility that assumptions on the
13 policy could change, and that that could affect future premium payments. (Id. at 172:9-15.) He
14 also explained that policy loans could affect future payments. (Id. at 93:1-8.)

15      Mr. Winsten did not, however, explain that future premium payments would be dependent
16 on the interest rate environment -- he understood that at the "guaranteed" interest rate, the policy
17 "stayed in force." (Id. at 129:9-19.) As explained below, this is a fundamental and material
18 difference between his presentation and Mr. Poole's.

19      **Mr. Neubauer:** Like Mr. Winsten, Mr. Neubauer (the selling agent for plaintiffs Dr. John
20 McNamara, Dr. Hisaji Sakai and Jean Sakai) was also affiliated with the Xelan insurance agency.
21 In stark contrast to Mr. Winsten, however (whose sales presentations varied depending on his
22 clients' circumstances), Mr. Neubauer viewed his sales presentations to clients as "pretty uniform
23 based on the broader Xelan program" -- a program that emphasized "not taking risks, guaranteed
24 principle [sic], guaranteed interest." (Deposition of David Neubauer, attached as Exhibit B to the
25 Lisy Decl. ("Neubauer Depo.") at 87:11-88:17.) As to Lifetrend policies in particular -- again in
26 contrast to Mr. Winsten -- Mr. Neubauer did not consider himself familiar with them and testified
27 that his level of comprehension was "limited." (Id. at 44:16-46:8.) He could not even recall, for
28 example, ever reading a Lifetrend policy while at Xelan. (Id. at 41:19-24.)

3

SUPPLEMENTAL SUBMISSION RE: AGENT DEPOSITIONS           CASE NO.: 3:10-MD-2124-SI

That limited comprehension colored Mr. Neubauer's unique and less-sophisticated presentations to his clients. He understood that Lifetrend policies "require[d]" only five premium payments, because the illustrations provided by Massachusetts General were titled "five pay contract." (Id. at 39:18-40:12.)

> Q: The basis for your understanding that no further premium payments would be due after five years are the videotapes that you references and the cassette tapes that you referenced, [intervening comment from counsel] is that correct?
>
> A: No. It was the title of the illustration was a five pay contract. [sic] On the illustration it showed five premiums.

(Id. at 58:5-13.) Unlike Mr. Winsten, therefore -- who hedged his presentation to his clients by explaining the "possibility" of premium payments beyond five years -- Mr. Neubauer did not even understand that future premium payments might be required:

> Q: And at the time you presented the Lifetrend policies to a client or potential client when you were at Xelan, you didn't have an understanding that five -- that more than five premium payments might be due?
>
> A: Correct.

(Id. at 59:5-12.)

And like Mr. Winsten but unlike Mr. Poole, Mr. Neubauer did not have a recollection of discussing the possible change of interest rates over time -- [j]ust the guarantees." (Id. at 68:19-23.)

**Mr. Poole**: Similarly to Mr. Winsten, but as opposed to Mr. Neubauer, Mr. Poole (the agent for plaintiff Bill McFarland) testified that during a sales presentation -- though he would "cover all the bases" and "features" of the policy -- "I'm not going to say the same thing that I would say to you as I would say to him." (Deposition of Lonnie Poole, attached as Exhibit C to the Lisy Decl. ("Poole Depo.") at 60:6-23.) He recognized that, for sales presentations between agents, "no two people do it alike." (Id. at 59:25-60:5.)

On the issue of the five pay guarantee, Mr. Poole (correctly) understood that future premium payments on Lifetrend policies might be required -- and he stated with certainty that this was something he explained to his clients. In that regard, his testimony stands in stark contrast to

both Mr. Neubauer (who had <u>no</u> such understanding at all) and Mr. Winsten (whose understanding, and explanation to clients, differed):

> Q: So, just so I understand it, if you had a client who was in your office and he indicated -- he or she indicated a desire to pay premiums for only a limited amount of time, let's say five years, as reflected by this [Lifetrend IV] illustration [marked as an exhibit], you would explain that that's an option, but you'd also say there may be a situation in the future, where future payments might be required.
>
> A: Correct.

(<u>Id.</u> at 58:20-59:4.)

\*   \*   \*

> Q: So, there are circumstances where you could have to make premium payments going forward, even if you don't have to make them right now.
>
> A: Correct. And that's why it was an optional premium payment. [. . .]
>
> Q: Did you discuss that with the people who were purchasing life insurance, that there might be a situation in the future where premium payments might again be required?
>
> A: Yeah. [. . .]

(<u>Id.</u> at 47:15-48:11.)

One potential reason for the change, Mr. Poole explained, was that a change in interest rates could change the "projected" illustrations for the five-pay option:

> Q: When you were explaining the illustration to clients who were interested in purchasing life insurance, did you explain to them the difference between the projected value and the guaranteed values?
>
> A: Yes. I did.
>
> Q: And did you explain to them that, if the interest rate changes, that might change the projections?
>
> A: Correct.

(<u>Id.</u> at 53:24-54:8.) This again stands in stark contrast to not only Mr. Neubauer, but also Mr. Winsten.

In short, Mr. Poole testified that he never told anyone buying a Lifetrend policy that they would only ever have to pay five premium payments.[1] (Id. at 65:16-25.) Mr. Poole's clients might therefore have had quite a different understanding of their future obligations than Mr. Winsten's or Mr. Neubauer's clients, especially because the purported "five pay guarantee" is not found in the Lifetrend contract itself. Their claims against Conseco would vary accordingly, making class certification inappropriate. See Vega v. T-Mobile USA, 564 F.3d 1256 (11th Cir. 2009) (reversing certification of class because resolving dispute about sales employees' entitlement to commissions in the absence of a written contract would "depend on such individualized facts and circumstances as when a given employee was hired, what the employee was told (and agreed to) with respect to compensation rules and procedures at the time of hiring . . . ").

## II.   SALES AGENTS DID NOT USE THE SAME DOCUMENTS IN THEIR PRESENTATIONS, NOR DID THEY USE SALES SCRIPTS

**Mr. Winsten**: Mr. Winsten did not claim to have used any selling script (whether or not provided by Conseco). Instead, his presentations to clients consisted of reviewing "mostly illustrations" and the Lifetrend policy itself. (Winsten Depo. at 64:2-65:12; 87:2-7.) He could not recall using other documents during the selling process, for example, any standardized product brochures for Lifetrend policies. (Id.)

**Mr. Neubauer**: During the selling process, Mr. Neubauer similarly acknowledged that he was not constrained to "reading from a set script." (Neubauer Depo. at 87:4-10.) It should not be surprising, therefore, that (unlike Mr. Winsten) Mr. Neubauer did not review Lifetrend policies with clients. (Id. at 41:19-24; 52:15-22.) He did, however, expect that his clients would have reviewed certain informational audio and video materials prior to the sales presentation. (Id. at 46:18-25.) This is again different from Mr. Winsten, who never mentioned using any such materials in his presentations.

---

[1] The fact that Mr. Poole's testimony diverges from Mr. McFarland's testimony is another compelling reason demonstrating that individual issues concerning the sales presentations cannot be resolved on a class basis. (Mr. McFarland was quite clear that Mr. Poole informed him that the policy would "be paid up in five years." In fact, according to Mr. McFarland, Mr. Poole recommended that Mr. McFarland purchase his life insurance policy because of the five-payment guarantee. (Docket No. 26-13 at 64:22-65:10; 70:13-19.))

**Mr. Poole**: Mr. Poole testified that, when selling life insurance, he was not working off a script, and he didn't receive anything from Philadelphia Life or his independent insurance agency directing him how to sell the insurance products. (Poole Depo. 59:15-60:5.)  Rather, when meeting with clients to sell insurance, Mr. Poole showed them only the illustrations for the policies. (Id. at 43:16-23.) He did not show any other materials, such as product brochures. (Id.) That differs from Mr. Winsten, who reviewed the Lifetrend policy with his customers. But like Mr. Winsten, Mr. Poole made no mention of the audio and video materials that Mr. Neubauer recalled.

### III. SALES AGENTS WERE NOT EMPLOYED BY CONSECO

Each of Mr. Winsten, Mr. Neubauer and Mr. Poole testified that they were never employed by Conseco or its predecessors. (Winsten Depo. at 38:25-39:5; Neubauer Depo. 85:9-14; Poole Depo. 24:18-20.)  In other words, each was affiliated with an independent insurance agency. This further underscores that each agent was flexible to present the Lifetrend products in an unencumbered manner (at least vis-à-vis Conseco).

**CONCLUSION**

For all the foregoing reasons, and for those set forth in Conseco's previously-filed submissions, Conseco respectfully requests that the Court deny Plaintiffs' joint motion for class certification.

Dated:  June 17, 2010                    Respectfully submitted,


/s/ James R. Carroll
RAOUL D. KENNEDY (State Bar No. 40892)
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: Raoul.Kennedy@skadden.com

JAMES R. CARROLL (*Pro Hac Vice*)
DAVID S. CLANCY (*Pro Hac Vice*)
CHRISTOPHER A. LISY (*Pro Hac Vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Email: James.Carroll@skadden.com
Email: David.Clancy@skadden.com
Email: Christopher.Lisy@skadden.com

Attorneys for Defendant
Conseco Life Insurance Company