David J. Millstein (CSB #87878)
MILLSTEIN & ASSOCIATES
100 The Embarcadero Suite 200
San Francisco, California 94105
Telephone:     (415) 348-0348
Facsimile:      (415) 348-0336
E-mail:dmillstein@millstein-law.com

Scott D. Gilbert (ADMITTED PRO HAC VICE)
Stephen A. Weisbrod (ADMITTED PRO HAC VICE)
August J. Matteis Jr. (ADMITTED PRO HAC VICE)
Kathleen Hale  (ADMITTED PRO HAC VICE)
GILBERT LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone:     (202) 772-2200
Facsimile:      (202) 772-3333
Email: gilberts@gotofirm.com
Email: weisbrods@gotofirm.com
Email: matteisa@gotofirm.com
Email: halek@gotofirm.com

Other Plaintiffs' Counsel Appear on Signature Page

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
NORTHERN DIVISION

|  |  |
|---|---|
| IN RE CONSECO LIFE INSURANCE CO. LIFE TREND INSURANCE MARKETING AND SALES PRACTICE LITIGATION | Case No. M:10-cv-02124-SI<br><br>REPLY IN SUPPORT OF PLAINTIFFS' AMENDED JOINT MOTION FOR CLASS CERTIFICATION<br><br>Date:  August 6, 2010<br>Time:  9:00 a.m.<br>Judge: Hon. Susan Illston |

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................ iii

I.     Argument ........................................................................................................ 1

     A.    Despite the Regulatory Settlement, Conseco Is Continuing Its Systematic Effort to Induce Policy Lapses by Charging Premiums that Are Not Due and by Imposing Expense Charges and Cost-of-Insurance Deductions that the Policies Do Not Authorize. .............................................................. 1

          1.    Conseco Will Shortly Commence Sending Annual Premium Notices to Nearly All LifeTrend 3 and 4 Policyholders Based on Incorrect Calculations Applicable to All of Them, in Violation of Contract Provisions Applicable to All of Them. ......................................... 2

          2.    Conseco Will Shortly Commence Imposing Substantial New Expense Charges and Cost-of-Insurance Deductions on All LifeTrend 3 and 4 Policyholders, In Violation of Contract Provisions Applicable to All Policyholders. ................................. 2

          3.    Damages to the Proposed Class Could Be Very Substantial. .................... 3

          4.    Conseco's New Premium Bills, Charges, and Deductions Will Put Policyholders' Insurance Coverage in Jeopardy. ........................................ 3

          5.    Many Policyholders May Conclude that Certain Regulatory Settlement Benefits Would Benefit Conseco More than the Policyholders. ....................................................................................... 3

     B.    The Regulatory Settlement Is Irrelevant to the Certification Analysis under Rule 23(b)(2). ....................................................................................... 5

          1.    The "Superior Method" Analysis Does Not Apply in the Rule 23(b)(2) Context. ................................................................................... 5

          2.    The Regulatory Settlement Can and Will Remain in Effect If a Class Is Certified. .................................................................................. 6

          3.    In the Unlikely Event that Conseco Attempts to Withhold Regulatory Settlement Benefits from Absent Class Members, the Court Has the Authority to Give Absent Class Members the Opportunity to Opt Out of the Class. .......................................................... 8

     C.    A Class Action Is a Superior Method for Resolving Policyholders' Disputes as Required under Rule 23(b)(3). .......................................................... 8

          1.    Policyholders Should Not Be Forced to Choose Between Suing Conseco Individually or Capitulating to Conseco's Premiums, Charges, and Deductions. ............................................................................ 9

          2.    The Holdings of *Kamm* and Similar Cases Apply Only in Exceptional Situations Not Present Here. ............................................. 10

i

D.    Conseco's Analysis of the Merits Is Both Irrelevant and Incorrect. ..................... 12

    1.    When Evaluating Class Certification Motions, Courts Should Give No Weight to Defendants' Views of the Merits of the Plaintiffs' Claims, Except Where Necessary to Determine Whether the Rule 23 Prerequisites Are Met. ........................................................... 12

    2.    Plaintiffs' Contract Interpretations Are Correct. ....................... 12

E.    Conseco's Selective Use of Extrinsic Evidence is Unpersuasive. ....................... 14

F.    Plaintiffs' Proposed Class Definition Is Appropriate. ........................................... 16

G.    Plaintiffs' Complaints Provide Adequate Notice to Conseco. ............................. 17

H.    Plaintiffs' Trial Plan is Adequate. ....................................................................... 18

I.    Plaintiffs Are Entitled to Rely on the Expertise of Counsel When Framing Legal Arguments and Making Strategic Decisions. ............................................... 19

    1.    Plaintiffs Are Not Required to Seek Class Certification on Every Possible Claim. ........................................................................... 19

    2.    Plaintiffs Should Not Be Penalized for Using the Phrase "Vanishing Premium." ................................................................... 21

J.    The Court Should Disregard the Keeley Reports. ................................................. 21

II.    Conclusion ...................................................................................................................... 22

# **TABLE OF AUTHORITIES**

**<u>Cases</u>**                                                                                              **<u>Page</u>**

*Beaulieu v. EQ Indus. Servs., Inc.*,
  No. 5:06-CV-00400-BR, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ............................ 16, 17

*Brown v. Blue Cross & Blue Shield of Mich.*,
  167 F.R.D. 40 (E.D. Mich. 1996) ...................................................................................... 6, 12

*Campo v. Am. Corrective Counseling Servs*,
  254 F.R.D. 585 (N.D. Cal. 2008)...................................................................................... 21, 22

*Cartwright v. Viking Indus., Inc.*,
  No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009)....................... 6

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996)....................................................................................................... 6

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
  43 Cal. 4th 375, 181 P.3d 142 (2008) ................................................................................... 19

*Consol. Eng'g Co., Inc. v. S. Steel Co.*,
  699 S.W.2d 188 (Tex. 1985)................................................................................................... 19

*Cooper v. Fed. Reserve Bank of Richmond*,
  467 U.S. 867 (1984)................................................................................................................ 21

*Detroit Greyhound Emps. Fed. Credit Union v. Aetna Life Ins. Co.*,
  167 N.W.2d 274 (Mich. 1969) ............................................................................................... 19

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010)...................................................................................... 8, 12, 14

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F. Supp. 595 (S.D.N.Y. 1982)......................................................................................... 20

*Gilbrech v. Kloberdanz*,
  107 N.W.2d 574 (Iowa 1961) ................................................................................................ 19

*Greenwood v. Compucredit Corp.*,
  No. C 08-04878 CW, 2010 WL 291842 (N.D. Cal. Jan. 19, 2010)......................................... 17

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003).................................................................................................. 10

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*,
  No. ML 04-1610 AHM (Mcx), 2005 WL 5678842 (C.D. Cal. 2005) ..................................... 16

*In re Ocean Blue Leasehold Prop. LLC*,
  393 B.R. 792 (S.D. Fl. 2008) ................................................................................................. 19

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   219 F.R.D. 661 (D. Kan. 2004) ............................................................................. 20

*Kamm v. Calif. City Dev. Co.,*
   509 F.2d 205 (9th Cir. 1975) ............................................................................. 5, 11

*Kennedy v. Jackson Nat'l Life Ins. Co.,*
   No. C 07-0371 CW, 2010 WL 2524360 (N.D. Cal. June 23, 2010) .................. 19, 20

*MAS Corp. v. Thompson,*
   302 S.E.2d 271 (N.C. Ct. App. 1983) ......................................................................... 19

*Pearl v. Allied Corp.,*
   102 F.R.D. 921 (E.D. Pa. 1984) ............................................................................. 20

*Pocius v. Halvorsen,*
   195 N.E.2d 137 (Ill. 1963) ......................................................................................... 19

*Stewart v. Brennan,*
   748 P.2d 816 (Haw. Ct. App. 1988) .......................................................................... 19

*Thompson v. Am. Tobacco Co.,*
   189 F.R.D. 544 (D. Minn. 1999) ............................................................................. 20

*Tidwell v. Bassett,*
   611 S.E.2d 123 (Ga. Ct. App. 2005) .......................................................................... 19

*Wixon v. Wyndham Resort Dev. Corp.,*
   No. C 07-02361 JSW, 2009 WL 3353445 (N.D. Cal. Oct. 19, 2009) ...................... 18

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 8(a), (e) ............................................................................................. 17

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION          M:10-cv-02124-SI

Plaintiffs[1] respectfully submit this Reply (the "Reply") to Conseco Life Insurance Company's Opposition (the "Opposition") to Plaintiffs' Amended Joint Motion for Class Certification (the "Amended Motion").[2]

## I.    ARGUMENT

The Regulatory Settlement may prove to be satisfactory to some LifeTrend 3 and 4 policyholders, but Conseco has offered no good reason to deprive policyholders of the opportunity to obtain class-wide relief from Conseco's continuing, systematic efforts to breach its insurance Policies.

### A.    Despite the Regulatory Settlement, Conseco Is Continuing Its Systematic Effort to Induce Policy Lapses by Charging Premiums that Are Not Due and by Imposing Expense Charges and Cost-of-Insurance Deductions that the Policies Do Not Authorize.

Conseco will make more money off of its policyholders if it can charge more premiums and impose higher expense charges and cost-of-insurance deductions. Conseco will pay less money to policyholders (and their families) if more Policies lapse before the policyholders die and claims for death benefits are submitted to Conseco. In October 2008, Conseco announced a number of administrative changes that it planned to make to help it take in more while paying less. Although the Regulatory Settlement has eliminated one of the most significant features of the administrative changes announced in October 2008 – now Conseco is prohibited from demanding massive "shortfall" payments – Conseco is still going to violate its Policies by sending out improper annual premium bills to thousands of policyholders who previously had elected to avail themselves of the Policy's OPP (or the "vanishing premium") provision, and Conseco is still going to extract other forms of payment from policyholders that the Policies do not permit. This state of affairs may represent an acceptable compromise to 42 state regulators,

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plaintiffs' Amended Joint Motion for Class Certification.

[2] Plaintiffs submit this Reply in accordance with the Stipulation and Order Concerning Class Certification Briefing Schedule and Hearing, No. 08-CV-05746-SI (Feb. 17, 2010), ECF No. 114, which stipulates that Plaintiffs' Reply shall not exceed 25 pages, and the Court's Order Granting Plaintiffs' Unopposed Motion to Modify Deadline for Plaintiffs' Reply in Support of Amended Motion for Class Certification, ECF No. 103.

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION          M:10-cv-02124-SI

but policyholders are entitled to seek full compliance with the contract terms that Conseco agreed to follow when it wrote the Policies.

**1. Conseco Will Shortly Commence Sending Annual Premium Notices to Nearly All LifeTrend 3 and 4 Policyholders Based on Incorrect Calculations Applicable to All of Them, in Violation of Contract Provisions Applicable to All of Them.**

Conseco acknowledges that it is about to send out thousands of premium bills to policyholders who received no premium bills for many years following their election of OPP (or "vanish") status. Conseco purports to justify these new premium bills based on contract language common to all policyholders – as modified by a Regulatory Settlement applicable to all policyholders – and a formula that Conseco is applying in the same way for all policyholders. The parties disagree over how the premium-related provisions of the standard-form contracts should be interpreted, but no one reasonably can disagree with the notion that policyholders should not be sent bills for premiums if Plaintiffs' contract interpretation is correct and the premiums are not owed under the contracts. (In sections D. and E. below, we address Conseco's attacks on Plaintiffs' contract interpretations.)

**2. Conseco Will Shortly Commence Imposing Substantial New Expense Charges and Cost-of-Insurance Deductions on All LifeTrend 3 and 4 Policyholders, In Violation of Contract Provisions Applicable to All Policyholders.**

Conseco also acknowledges that it is about to impose new expense charges that are not tied to specific expenses and new cost-of-insurance deductions that are not tied to changes in mortality. Conseco purports to justify its taking of these amounts based on contract language common to all policyholders – as modified by a Regulatory Settlement applicable to all policyholders – and formulae that Conseco is applying the same way for all policyholders. Again, the parties disagree over how the expense-charge and cost-of-insurance provisions of the standard-form contracts should be interpreted, but no one reasonably can disagree with the notion that policyholders should not have to pay expense charges or cost-of-insurance deductions if Plaintiffs' contract interpretations are correct and Conseco is not permitted to seek those amounts under the contracts.

1

### 3.     Damages to the Proposed Class Could Be Very Substantial.

There are almost ten thousand potential class members.  *See* Ex. A to Regulatory Settlement (stating that there are 9,761 LifeTrend 3 and 4 Policies).  As noted in Plaintiffs' Amended Motion, the annual premiums that will be charged to the named Plaintiffs range from $1,015 to $39,760.  *See* Am. Mot. at 19.  The expense charges may rise from $2.50 per month to $5.00 per month, or $30.00 per year per policyholder.  Opp'n at 15.  The cost-of-insurance deductions that the named Plaintiffs will incur annually, assuming that Conseco intends to charge the amounts it indicated it would charge in the October 2008 Letters, range from $2,951 to $29,113.

### 4.     Conseco's New Premium Bills, Charges, and Deductions Will Put Policyholders' Insurance Coverage in Jeopardy.

Conseco makes much of the improved "Continuation of Insurance" endorsement required under the Regulatory Settlement, Opposition at 9-10, but that endorsement does not prevent Conseco from sending the new premium bills or from imposing the new charges and deductions, which will have the effect of depleting policyholders' accounts.  The new Continuation of Insurance endorsement merely changes some of the immediate consequences of failing to pay. Even with the new Continuation of Insurance endorsement, many policyholders will lose all of their coverage very quickly.  *See* Decl. of Frank S. Scuglik in Supp. of Conseco Life's Opp'n to Pls.' Am. Joint Mot. for Class Certification at 4-5, ¶ 14, ECF No. 97 (stating that three of the Policies issued to the named Plaintiffs will terminate in four years if the policyholder becomes subject to the amended Continuation of Insurance provision).

### 5.     Many Policyholders May Conclude that Certain Regulatory Settlement Benefits Would Benefit Conseco More than the Policyholders.

If one accepts Conseco's premise that the annual premiums to be charged by Conseco are not supposed to "vanish" because Conseco is now applying the OPP formula properly, and that Conseco's new charges and deductions are permissible under the Policy, then some of the Regulatory Settlement benefits may look fairly attractive.  But if one holds the view that Conseco is not permitted to demand new annual premiums, charges, and deductions at this time, then the

3

1   so-called "substantial" benefits cited by Conseco may actually provide substantial benefits to

2   Conseco at the expense of its policyholders.

3       As noted in the Amended Motion, the Regulatory Settlement provides certain

4   "mandatory" benefits, which are conferred on all policyholders, and certain "optional" benefits,

5   which policyholders may elect if they execute a release.  The optional benefits are particularly

6   troubling.  Conseco gives almost no attention in its Opposition to the specifics of the optional

7   benefits.  This omission was surely deliberate.  As noted in Plaintiffs' Amended Motion, two of

8   the optional benefits involve Policy modifications that would immediately and substantially

9   reduce the insurance coverage limits provided by the Policies.  Essentially, Conseco will agree to

10  stop sending out annual premium notices, or will send out premium notices indicating that

11  premiums are due in a reduced amount, if the policyholder agrees to (a) accept a significantly

12  lower death benefit and (b) sign a release form.  Conseco does not dispute that this is the way the

13  optional Policy modifications would work.

14      From a policyholder's perspective, the optional modifications would make economic

15  sense only if the premiums actually were due *and* – contrary to Conseco's repeated claims in its

16  Opposition – if adverse consequences would result from a failure to pay the premiums when due.

17  If the annual premiums are not supposed to be charged in the first place, then the optional Policy

18  modifications do nothing more than reduce the policyholders' death benefits – and allow Conseco

19  to retain substantial insurance proceeds that otherwise would go to policyholders' families.

20      Conseco also is setting up a $10 million settlement fund to pay policyholders.  Ten million

21  dollars may sound like a large fund, but if Plaintiffs' contract interpretations have merit, then the

22  damages to the proposed class will dwarf that amount.  If the proposed class members' annual

23  premiums average only $1,000 per year, which is lower than the lowest premium to be charged to

24  any of the named Plaintiffs, then Conseco will charge almost $10 million in new premiums in just

25  one year.  If the average cost-of-insurance increase is $2,000, which is substantially less than the

26  lowest increase to be imposed on any of the named Plaintiffs, then Conseco will impose almost

27  $20 million in new cost-of-insurance deductions in just one year.

28      The Regulatory Settlement fund could pay as little as $805 per policyholder, depending on

4

who attempts to collect and who is declared eligible.[3]  As many as 12,427 Conseco policyholders (including 2,666 who are not members of the proposed class) may make claims on the fund.  *See* Ex. A. to Regulatory Settlement.  A recovery of $805 would be less than the lowest single-year annual premium that any of the named Plaintiffs will be asked to pay.  A recovery of $805 would be less than one-third of the lowest annualized cost-of-insurance deduction that Conseco plans to deduct in one year from any of the named Plaintiffs' accounts.  Again, a policyholder would have to sign a release to take advantage of the Regulatory Settlement fund.

### B.  The Regulatory Settlement Is Irrelevant to the Certification Analysis under Rule 23(b)(2).

When applying Rule 23(b)(2), the Court must decide whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Plainly that test is satisfied here.  Pursuant to the Regulatory Settlement and for its own business purposes, Conseco is acting and refusing to act on grounds that apply generally to the entire proposed class, and Conseco concedes that the contract at issue has been interpreted the same way for the entire proposed class.  Conseco nevertheless argues that certification should be denied under Rule 23(b)(2) in supposed deference to the Regulatory Settlement.  Conseco cites no authority for this proposition.  No court precedents support it.  No provisions in the Regulatory Settlement support it.

### 1.  The "Superior Method" Analysis Does Not Apply in the Rule 23(b)(2) Context.

As the Ninth Circuit stated in *Kamm v. California City Development Co.*, 509 F.2d 205, 211 (9th Cir. 1975), a case on which Conseco relies heavily, "[t]he superiority requirement is unique to those class actions maintained under Rule 23(b)(3)."  To rebut this point, Conseco cites

---

[3] Conseco still has not explained the definition of "Eligible Lifetrend Policyowner," which states that an eligible policyholder is one "who has not either (i) missed no more than one Scheduled Premium payment as of September 1, 2008, provided the number of annual premiums paid exceeds the number of years set by the policy form's illustration software to show the limited pay or vanish option; or (ii) been sent a letter by Conseco Life or a predecessor company specifically stating the Lifetrend Policyowner had been placed on the Continuation of Insurance Provision of his/her policy prior to September 1, 2008."  Regulatory Settlement at 5.

5

*Cartwright v. Viking Industries, Inc.*, No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009). But the court in *Cartwright* actually addressed the superiority test and *Kamm* in the context of Rule 23(b)(3), not Rule 23(b)(2), as the plaintiffs in *Cartwright* apparently had moved for certification under both provisions. *Id.* at *13-14.[4] Conseco also cites the Fifth Circuit's decision in *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), but that case does not apply a superiority analysis under Rule 23(b)(2) either. (The trial court had granted the plaintiffs' motion to certify under Rule 23(b)(3) and had denied their motion to certify under Rule 23(b)(2), and the plaintiffs did not appeal the denial under Rule 23(b)(2). *Id.* at 738-39.)[5] Conseco also cites *Brown v. Blue Cross & Blue Shield of Michigan*, 167 F.R.D. 40 (E.D. Mich. 1996), but again, that case did not discuss Rule 23(b)(2).

As previously stated in Plaintiffs' Amended Motion, *Brown* is also readily distinguishable from the situation here. Am. Mot. at 34-36. The regulatory settlement in *Brown* was conditioned expressly on there being no class action. *Id.* at 44. The *Brown* court found that the private plaintiffs and government regulators were seeking the "same monies." *Id.* at 42 n.2. The *Brown* court concluded that the regulatory settlement in that case would provide "full co-pay relief on all but de minimis claims." *Id.* at 46. And the *Brown* court was concerned that the main (though not the only) beneficiaries of a class action would be plaintiffs' counsel. *Id.* at 45 n.18.

### 2.    The Regulatory Settlement Can and Will Remain in Effect If a Class Is Certified.

Certifying the class would not "threaten" the Regulatory Settlement. *Contra* Opp'n at 30. The Regulatory Settlement is in no way "conditional" on this Court's denying Plaintiffs' class certification request. *Contra* Opp'n at 31. On the contrary, the Regulatory Settlement clearly states that it is a binding contract between Conseco and the state insurance regulators who signed it. Regulatory Settlement at 2, 45. The Regulatory Settlement does not depend on any particular

---

[4] The *Cartwright* court distinguished *Kamm* on numerous grounds and certified a class on most of the claims. *Id.* at *13-16.

[5] The citation to *Castano* seems particularly inapt. In *Castano,* the plaintiffs asserted mass tort claims on behalf of all persons addicted to nicotine. *Id.* at 737-38. The court found that nicotine-as-addiction was an untested legal theory and that personal injury claims based on that theory were "immature." *Id.* at 749. These holdings have nothing to do with this case.

number of policyholders accepting its optional benefits.  It contains no "poison pill" or other term that would allow Conseco to back out of the deal if a class is certified.  Indeed, Conseco does not allege that it does.

Rather, Conseco argues that under the Regulatory Settlement, "if a class is certified, Conseco Life has the discretion to exclude absent class members from the Settlement's benefits."  Opp'n at 4.  Citing paragraphs 53 and 54 of the Regulatory Settlement, Conseco asserts that, although paragraph 53 provides that a policyholder's membership in a "purported class" would not give Conseco the right to take away Regulatory Settlement benefits from the policyholder, actual "certification of a class will give Conseco Life the discretion to exclude its members from the Regulatory Settlement's benefits – effectively making the Regulatory Settlement conditional on certification."  Opp'n at 31.  These statements are directly contrary to what counsel for Conseco stated to the Court at the class certification hearing held on July 2.  In that hearing, Counsel for Conseco confirmed that paragraph 54 would protect absent class members if a class were certified in this case.  *See* Tr. at 22:4-9 attached to Weisbrod Decl. in Supp. of Am. Mot. as Ex. 3, ECF No. 78.  (Rather euphemistically, Conseco states that its new position "clarifies the discussion on this issue at the July 2, 2010 hearing."  Opp'n at 31, n.18.)

The interpretation of the Regulatory Settlement offered by Conseco's counsel at the hearing is far more plausible than its new interpretation, which, it seems, was manufactured to create the false impression that certifying a class would somehow hurt policyholders.  It is hard to imagine that the Lead Regulators would go through all of the trouble of executing their settlement agreement and getting it approved by thirty-seven additional state regulators if Conseco could simply renege on its commitments upon certification of a class pursuant to a class certification motion that was pending, and only days away from being argued, when the agreement was finalized.  Moreover, Conseco's new interpretation of paragraphs 53 and 54 is in tension with all of the various provisions of the Regulatory Settlement that expressly preserve policyholders' rights, including the right to pursue a private class action.  *See* Am. Mot. at 22-23 (describing various provisions of the Regulatory Settlement).  Conseco's new position surely comes as a surprise to many of the regulators who settled with Conseco.

7

In any event, Conseco is parsing its words on this issue.  It has refrained from saying that it actually intends to revoke anybody's Regulatory Settlement benefits if a class is certified.  (The statements of Conseco's counsel on this subject in recent correspondence have been particularly unenlightening.  *See* Exs. A & B attached to Decl. of Stephen A. Weisbrod in Supp. of Reply.)[6] Accordingly, on the current record, there is no reason to assume that any policyholder will lose any Regulatory Settlement benefits if a class is certified.

> **3.      In the Unlikely Event that Conseco Attempts to Withhold Regulatory Settlement Benefits from Absent Class Members, the Court Has the Authority to Give Absent Class Members the Opportunity to Opt Out of the Class.**

If Conseco does attempt to renege on its promise to extend Regulatory Settlement benefits to absent class members, then the regulators almost certainly will step in.  But if they do not, and a determination is made that Conseco is within its rights under paragraphs 53 and 54, then the Court can allow absent class members to opt out of the class action.  The Ninth Circuit has recognized that a district court has "discretion to impose additional requirements for notice and the opportunity to opt-out of [a] Rule 23(b)(2) class."  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 620-21 (9th Cir. 2010).  Of course, such opt-out opportunities are standard for classes certified under Rule 23(b)(3).  Paragraph 53 of the Regulatory Settlement would not apply to a class member who opted out of the class because that person would not be in "pending litigation against" Conseco.

> **C.      A Class Action Is a Superior Method for Resolving Policyholders' Disputes as Required under Rule 23(b)(3).**

The Regulatory Settlement is not "superior" to a class action as a method for resolving policyholders' breach-of-contract claims.  Conseco suggests that the Court must choose between the Regulatory Settlement and Class Certification, and that the Court should choose the former because it reflects the considered efforts of persons with official authority.  But as explained above and in Plaintiffs' Amended Motion, that is a false choice.  The Regulatory Settlement was

---

[6] Plaintiffs have separately filed a Declaration of Stephen A. Weisbrod in support of this Reply. All new exhibits cited herein are the exhibits attached to the Declaration.

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION            M:10-cv-02124-SI

designed to coexist with a class action, *see* Am. Mot. at 25-27, and the precedents on which Conseco relies involved government settlements and private claims that are quite different from those at issue here.

The real choice in this case is between allowing a class action to go forward or forcing individual policyholders who want to pursue their private contractual rights to file separate lawsuits in courts across the country. Under the circumstances, a class action is a superior method for resolving the disputes.

> **1.      Policyholders Should Not Be Forced to Choose Between Suing Conseco Individually or Capitulating to Conseco's Premiums, Charges, and Deductions.**

Conseco notes that policyholders still may sue the company individually if a class is not certified. As a practical matter, however, many (and possibly most) policyholders will not be able to vindicate their rights if class certification is denied.

According to Conseco, individual class members have alleged damages claims that are sufficiently large to give the Court confidence that policyholders will be able to pursue their own claims if the claims have merit. Opp'n at 36 n.23. At this point, estimating damages with precision is not possible, but, presumably, damages will vary in amount depending on the policyholders' Policy limits. Conseco urges the Court to assume that individual policyholders will sue to vindicate their rights if, as seems likely, their damages exceed $20,000 per policyholder. Conseco's reasoning is flawed to say the least. The expert and electronic discovery costs alone could be in the hundreds of thousands of dollars (possibly more).

Few policyholders would have the ability or desire to pay qualified lawyers by the hour to take on Conseco, and few lawyers who accept cases on a contingent-fee basis would be willing to represent an individual policyholder, as the litigation effort required to successfully represent a single policyholder is almost as great as the effort required to successfully represent ten thousand policyholders. As the Court already has seen, this is a very labor-intensive case that will require counsel to delve into complex financial information and Policy underwriting materials simply to

determine whether the contract terms have been violated.[7]

Conseco also has the right under paragraph 53 of the Regulatory Settlement to withhold Settlement benefits from policyholders who litigate against Conseco. While the scope of this provision is debatable, no one disputes the fact that it may be invoked against policyholders who personally file suits against the company. This uncertainty may create yet another disincentive against filing individual suits.

> **2.     The Holdings of *Kamm* and Similar Cases Apply Only in Exceptional Situations Not Present Here.**

Conseco's argument that the Regulatory Settlement should preclude a private class action defies both common sense and common experience. Conseco offers no explanation for the fact that parallel class action and regulatory proceedings occur all the time. Indeed, as noted in Plaintiffs' Amended Motion, many courts recognize that such parallel proceedings can reinforce each other. Am. Mot. at 26. The cases cited in the Amended Motion were not isolated or aberrational instances of parallel proceedings. Rather, they reflect common practice. Judge Barbara Rothstein of the U.S. District Court for the Western District of Washington discussed this phenomenon in an article written with the Federal Judicial Center, in which she noted that private class actions can coexist with regulatory actions, and that class actions often provide additional benefits beyond those offered by a regulatory entity. *See* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, The Federal Judicial Center, 2005, at 25-26, attached as Ex. C. Plaintiffs' proposed class action against Conseco is the very type of beneficial case Judge Rothstein described.

Conseco reads the Ninth Circuit's thirty-five-year-old decision in *Kamm* to mean that a class action should not be certified in any case in which a regulatory settlement and proposed class action address similar topics, but the holding of *Kamm* is far narrower than the sweeping

---

[7] Because of the efficiencies offered by the class action process, a class action would be superior even for policyholders with individual claims worth hundreds of thousands of dollars. *Cf. Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (stating that when a class action "will provide the most fair and efficient adjudication of a case, such an action may be superior even though class members have sufficient means or incentive to proceed individually") (citing 5 Moore's Federal Practice § 23.48[2][a] (1997)).

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION          M:10-cv-02124-SI

rule Conseco proposes. *Kamm* is discussed in detail in Plaintiffs' Amended Motion, Amended Motion at 33-35, and Plaintiffs will address only a few points here. First, the record in *Kamm* included a 26 page affidavit and 100 pages of exhibits detailing the negotiations and settlement between the defendants and the government. 509 F.2d at 209. In this case, the regulators have so far been silent and Conseco has adamantly refused to divulge any information about the regulatory process or the negotiations that culminated in the Regulatory Settlement. Second, the *Kamm* court relied on some unusual circumstances bearing on the ability of individual claimants to prosecute and resolve their claims in other fora. *Id.* at 212. Those factors are not present here and, indeed, policyholders would find it very difficult to prosecute individual claims against Conseco for the reasons stated above. Third, an actual court of law retained jurisdiction over the *Kamm* settlement. *Id.* at 208. Fourth, *Kamm* did not involve standard-form contracts. *Id.* Fifth, in order to address the differences among the putative class members' transactions, the regulatory settlement in *Kamm* had established an alternative dispute resolution process of a type that simply does not exist here. *Id.* Indeed, the Regulatory Settlement here does not confer any direct rights on any policyholder. Regulatory Settlement at 47, ¶ 113.

Finally, Conseco has not demonstrated that the Regulatory Settlement here addressed the same issues raised by Plaintiffs. While the regulators do have authority to enjoin future conduct, they do not have authority to assert breach of contract claims. And the Regulatory Settlement includes no discussion of most of the key allegations in this case, which include Conseco's improper use of the Policy's Table of Guaranteed Cash Values when applying the OPP formula, Conseco's improper raising of expense charges to cover investment losses and other costs beyond the cost of administering the policies, and Conseco's improper increase of cost-of-insurance deductions to circumvent the Policy limits on expense charges and to cover such losses and costs when mortality rates have actually declined.[8]

---

[8] Given the ambiguities in the release form attached to the Regulatory Settlement, it is also far from clear that policyholders who sign the release will be precluded from asserting claims on those subjects, which are not addressed in the so-called "allegations" set forth in paragraph 25 of the Regulatory Settlement.

The other cases on which Conseco relies, such as *Brown*, also have been discussed in detail in this Reply and in the Amended Motion.  None offers a basis for denying certification.

### D.      Conseco's Analysis of the Merits Is Both Irrelevant and Incorrect.

In Plaintiffs' Amended Motion, Plaintiffs explained that (1) they will still have significant breach-of-contract and other claims despite the relief afforded by the Regulatory Settlement, and (2) their claims are still based on standard-form contracts – as modified by the Regulatory Settlement – that Conseco is administering the same way for all policyholders.  In response, Conseco goes to great lengths to attack Plaintiffs' contract interpretations.  Conseco's arguments are largely an irrelevant distraction.  They also are incorrect.

> **1.      When Evaluating Class Certification Motions, Courts Should Give No Weight to Defendants' Views of the Merits of the Plaintiffs' Claims, Except Where Necessary to Determine Whether the Rule 23 Prerequisites Are Met.**

The Ninth Circuit has made clear that a district court should not decide the merits of the parties' disputes at the class certification stage.  *See, e.g.*, *Dukes*, 603 F.3d at 581-90.  The merits should be addressed at the class certification stage only to the extent that they bear on whether the plaintiffs seeking certification have satisfied the prerequisites of Rule 23.  *Id.*

Conseco does not deny that all of the LifeTrend 3 and 4 policyholders purchased the same type of insurance policies, which are modified by the same Regulatory Settlement, and that the same OPP formula applies to all of them.  Conseco does not deny that all of the policyholders will be subject to the same expense charges and cost-of-insurance deductions, which, again, are governed by universally applicable contract language.  Beyond those facts, very little about the merits of the parties' contract dispute is relevant to the Rule 23 analysis.  Nevertheless, Conseco spends much of its brief arguing that (a) there are no adverse consequences to policyholders if they fail to pay the premium bills, (b) Conseco is entitled to send out the bills under the contract terms, and (c) the bills must be proper because the regulators are permitting Conseco to send them out.  Conseco is wrong on all counts.

> **2.      Plaintiffs' Contract Interpretations Are Correct.**

Plaintiffs' contract interpretations are based on a close and careful reading of the

contracts, including the OPP provision, the expense charge provision, the cost-of-insurance provision, the minimum interest rate, the Non-Participating clause, the continuation of insurance provisions, and other Policy provisions.  *See* Am. Mot. at 5-14.  Conseco repeatedly has argued, however, that Plaintiffs' contract interpretation would render certain Policy terms "meaningless" or "surplusage."  That simply is not so.

For some time, Conseco argued that Plaintiffs' interpretation means that the OPP formula never incorporated values from the Guaranteed Cash Value Table, and in effect would turn one of the three components of the OPP formula into a nullity.  *See* Opp'n at 21-22.  Plaintiffs explained why Conseco was incorrect on this point in the Amended Motion.  Am. Mot. at 6-10.  Now Conseco makes a different but similar argument, suggesting that Plaintiffs' interpretation would mean that no policyholder ever could qualify for "Continuation of Insurance" benefits.  Opp'n at 12.  Conseco states that, in some years, another component of the OPP formula – the surrender charge – is so high that policyholders would not be eligible for Continuation of Insurance if they failed the OPP test.  Plaintiffs do not concede the accuracy of Conseco's analysis on this point, but Plaintiffs would point out a simple fact that should have been obvious to Conseco:  the surrender charge gets smaller over time, eventually dropping all the way to zero.  Am. Mot. at 8.  Therefore, even if the surrender charge theoretically could have been large enough in *some* years to have an impact on a policyholder's eligibility for Continuation of Insurance, the surrender charge cannot possibly be large enough to have an impact in *all* years.  Indeed, in recent years, because the surrender charge is zero, it has had no impact at all on policyholders' eligibility for Continuation of Insurance.  Plaintiffs' interpretation of the Policy language therefore does not nullify the Continuation of Insurance provision.

Conseco also challenges Plaintiffs' interpretation of the expense charge provision and cost-of-insurance provision.  According to Conseco, Plaintiffs must be incorrect because the contracts expressly allow for expense charges and cost-of-insurance deductions up to specified maximums.  The fallacy in Conseco's reasoning is seen easily if one imagines that the Policies gave Conseco the right to charge up to $5.00 per month for "long distance telephone charges" instead of "expense charges."  Under that hypothetical scenario, if Conseco actually incurred

$5.50 per policyholder per month in long distance telephone costs, then it would be within its

rights to charge policyholders the maximum of $5.00. But if Conseco instead incurred only $2.00

per month per policyholder in long distance telephone costs and nevertheless sought payment for

$5.00, Conseco clearly would be violating the contract. The company also would be engaging in

a deceptive practice prohibited under a variety of state law theories. Here, Conseco is charging

the $5.00 maximum expense charge with no indication that its expenses actually total $5.00 per

policyholder. And Conseco is imposing very substantial cost-of-insurance increases with no

indication that mortality – the factor to which cost of insurance is linked – actually rose.

### E.   Conseco's Selective Use of Extrinsic Evidence is Unpersuasive.

There is no requirement that every member of a class have an identical case. *Dukes*, 603

F.3d at 613. It is sufficient if the class members' claims present common issues and if the named

plaintiffs are typical. *Id.* At the conclusion of the July 2 hearing, the Court apparently was

satisfied on these points. *See* Class Certification Hr'g Tr. (July 2, 2010), attached as Ex. 3 to

Weisbrod Decl. in Supp. of Am. Mot., at 33-34, ECF No. 78. Nevertheless, Conseco argues that

the guaranteed cash value should be interpreted in a manner that is consistent with the way the

concept was discussed in certain form letters signed by Mr. Brady and the Hovdens many years

ago. Opp'n at 22-23. Conseco further argues that the statute-of-limitations defenses will vary as

to each policyholder because of those letters. Conseco's arguments are unpersuasive.

As an initial matter, neither side contends that the contracts are ambiguous, and therefore

neither side will seek to use extrinsic evidence such as these letters to prove that the contracts are

ambiguous. Furthermore, the letters Conseco cites clearly were not written by Plaintiffs but by

agents of Conseco, as they are standard forms containing identical language. *See* Brady OPP

Election Letter at CLIC 2478, attached as Ex. 15 to Decl. of J. Carroll in Supp. of Conseco's

Opp'n ("Carroll Decl."), ECF No. 96; M. Hovden OPP Election Letter at CLIC 1774, attached as

Ex. 16 to Carroll Decl.; C. Hovden OPP Election Letter at CLIC 1456, attached as Ex. 17 to

Carroll Decl.[9]  It is hard to place much stock in the letters, as they do not accurately reflect *any party's* understanding of the OPP formula, in that they make no reference to indebtedness or the surrender charge.  *Id.*

Plaintiffs also would note that, to the extent it is relevant, the majority of the extrinsic evidence will favor their interpretation.  Conseco conveniently overlooks not only its annual statements stating that the guaranteed cash value is $0 but also the letters it authored affirming Plaintiffs' position regarding the guaranteed cash value.  These letters explained that "[s]hould at any time the policy's net cash value (accumulation account less surrender charge, less indebtedness) become insufficient to cover the monthly deductions, a premium notice will be sent."  Conseco Letter to Brady (Dec. 22, 1993) at CLIC 2300, attached as Ex. 4 to Decl. of K. Hale in Supp. of Pls.' Reply in Supp. of Mot. for Class Certification ("Hale Decl."), ECF No. 38; Conseco Letter to Hovden (Dec. 23, 1993) at CLIC 1435, attached as Ex. 4 to Hale Decl.  These form letters do not even mention the guaranteed cash value or the Table in the Policy, which makes sense given that the guaranteed cash value was zero for policyholders already on OPP status.

As for the statute of limitations point, Conseco cannot seriously claim that any statute of limitations clock began running during the period when Conseco's official position was that the policies were *not* underfunded and Conseco was issuing annual statements that were consistent with the Policies' plain language, the policyholders' understanding of that language, and the fact that the Policies were fully funded.  As of this writing, Conseco still has not resumed sending out annual premium notices, nor has it imposed the expense charges or cost-of-insurance deductions of which Plaintiffs complain.  On these timing points, Conseco's positions are simply bizarre.  On the one hand, they scold Plaintiffs for filing their complaint too early (because the changes announced in the October 2008 Letter were subject to revision when the suit was filed).  On the

---

[9] The letters state: "I would like to elect the option of premium payment by the vanishing premium method for the above policy, effective with the premium due date above.  I understand that if the actual cash value drops below the table of guaranteed value, a special premium due notice will generate to advise that additional premium is due."

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION          M:10-cv-02124-SI

1   other hand, they scold Plaintiffs for filing their complaint too late (because Plaintiffs could have

2   figured out from form letters written in the 1990s that Conseco was going to send out improper

3   premium notices in the 2010s).

4        The bottom line is that the differences among the Plaintiffs pale in comparison to the

5   similarities.  But if the court eventually determines, after full discovery, that there really are

6   relevant differences among different categories of class members, the Court can address such

7   differences by creating subclasses.  The U.S. District Court for the Central District of California

8   made this very point when certifying a similar class action against Conseco in *In re Conseco Life*

9   *Insurance Co. Cost of Insurance Litigation*, No. ML 04-1610 AHM (Mcx), 2005 WL 5678842, at

10  *5 (C.D. Cal. Apr. 26, 2005).

11       **F.      Plaintiffs' Proposed Class Definition Is Appropriate.**

12       Plaintiffs have revised their proposed class definition to reflect the fact that the October

13  2008 Letter was suspended and, eventually, superseded.  Conseco is not prejudiced by this

14  revision.  Indeed, Conseco has repeatedly complained that Plaintiffs were invoking the October

15  2008 Letter after it had been suspended.  *See*, *e.g.*, Conseco Life's Opp'n to Pls.' Joint Mot. for

16  Class Certification at 3-4, ECF No. 25.

17       The new class definition encompasses only individuals who are affected by Conseco's

18  currently operative documents and current standard practices.[10]  Courts routinely permit and even

19  require changes to class definitions if changed circumstances warrant changed definitions.  The

20  definition of a class is to be determined by the court, not the parties.  *Beaulieu v. EQ Indus.*

21  *Servs., Inc.*, No. 5:06-CV-00400-BR, 2009 WL 2208131, at *6 (E.D.N.C. July 22, 2009) (citing

22  Fed. R. Civ. P. 23(c)(1)(B) & (C)).  "Specifically, if the court finds that the proposed definition is

23  not sufficiently definite, it may modify the definition."  *Id.* (internal citations omitted).  In

24

25  _____

    [10] The revised class definition may apply to approximately 200 additional policyholders.
26  Approximately 9,550 policyholders received the October 2008 Letter.  *See* Pls.' Joint Mot. for
    Class Certification at 11; *see also* Conseco's Mem. of Law in Supp. of Mot. for Transfer &
27  Coordinated or Consolidated Pretrial Proceedings, Pursuant to 28 U.S.C. § 1407, at 5.  Upon
    information and belief, all of the 9,761 LifeTrend 3 and 4 policyholders fall within the current
28  class definition.

                                            16
    REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION          M:10-cv-02124-SI

*Beaulieu*, the court noted that the class definition was modified throughout the course of the litigation, and that the changes in the definition "reflect a sharpening of the issues based on discovery and other developments in the course of litigation and settlement negotiations." *Id.* at *7. *See also Greenwood v. Compucredit Corp.*, No. C 08-04878 CW, 2010 WL 291842, at *3 (N.D. Cal. Jan. 19, 2010) (allowing Plaintiffs to amend their class definition in their reply brief in support of class certification to demonstrate that the class was ascertainable).

### G. Plaintiffs' Complaints Provide Adequate Notice to Conseco.

Plaintiffs' complaints included claims for breach of contract. Conseco protests now that some of Plaintiffs' arguments were not stated in their complaints. Conseco forgets that Rule 8 of the Federal Rules of Civil Procedure requires only notice pleading on a breach-of-contract claim and that complaints "must be construed so as to do justice." *See* Fed. R. Civ. P. 8(a), (e).

Since filing their complaints, Plaintiffs have proffered more than one theory in support of their breach-of-contract claims because Conseco has proffered more than one explanation for its conduct. All policyholders who received an October 2008 Letter were told that their Policies were underfunded and that "additional premiums were required." Oct. 2008 Letter to Charles Hovden at BRD 0078, attached to Weisbrod Decl. in Supp. of Am. Mot. as Ex. 1, ECF No. 78. The October 2008 Letter did not explain how Conseco determined that the Policies, after years of apparently being fully funded, had become drastically underfunded. Nor did it explain how Conseco calculated the "additional premiums." *Id.* Plaintiffs filed their complaints based on the representation made in the October 2008 Letter.

Conseco was not forthright in the October 2008 Letter or subsequent communications. Through discovery in this litigation, Plaintiffs learned that the alleged underfunding was premised on a miscalculation that contravened the Policies' plain language. Naturally, Plaintiffs have updated their arguments to reflect the new information obtained through discovery. Such changes regularly occur in class action litigation. *See Beaulieu*, 2009 WL 2208131, at *7 (permitting amendment of the class definition in light of information obtained during discovery). At some point, if justice or due process requires, the Complaints can be amended to conform to the evidence. *See, e.g.*, *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2009 WL

1    3353445, at *8 (N.D. Cal. Oct. 19, 2009) (permitting plaintiffs to amend the complaint for

2    purposes of conforming the class definition to the definition set forth in the motion for class

3    certification).  At this time, however, such a step is unnecessary because Conseco has received

4    more than adequate notice of the claims against it.

5           **H.       Plaintiffs' Trial Plan is Adequate.**

6           The Regulatory Settlement does not affect Plaintiffs' trial plan, as set forth in Plaintiffs'

7    Original Joint Motion for Class Certification (the "Joint Motion"), ECF No. 15.  Joint Mot. at 26-

8    27.  Nevertheless, Conseco argues, once again, that the parties' potential use of extrinsic evidence

9    could make trial unmanageable.  *See* Opp'n at 23-24.  Conseco is still wrong on this point.

10          Conseco has not identified any important evidence that would be admissible in one

11   jurisdiction but not another, nor has it identified any problem that could not be solved with jury

12   instructions.  Moreover, Conseco is not actually arguing that any extrinsic evidence would be

13   admissible on breach-of-contract issues.  It is merely suggesting that extrinsic evidence may be

14   admissible if the court finds that the contract is ambiguous.  If that happens, then, as previously

15   noted, the law of all fifty states is consistent: extrinsic evidence is admissible to clarify an

16   otherwise ambiguous contract.  *See* Pls.' Joint Reply Br. in Supp. of Mot. for Class Certification

17   at 18 & Ex. 5 to Decl. of K. Hale in Support thereof, ECF Nos. 37 & 38.

18          Conseco further suggests that, in some jurisdictions, extrinsic evidence concerning post-

19   contracting conduct may not be admissible.  Plaintiffs' have not conducted a fifty-state survey to

20   address Conseco's speculative point, but Plaintiffs have verified the law in every state with more

21   than 100 LifeTrend 3 or 4 policyholders.  In those states, the law is identical in holding that the

22   parties' conduct after entering into a contract is admissible where the contract is ambiguous.[11]

23   _____

24   [11] *See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 393, 181 P.3d 142, 155

25   (2008) ("A party's conduct occurring between execution of the contract and a dispute about the
     meaning of the contract's terms may reveal what the parties understood and intended those terms

26   to mean.  For this reason, evidence of such conduct, including concealment of certain
     information, is admissible to resolve ambiguities in the contract's language."); *In re Ocean Blue*

27   *Leasehold Prop. LLC*, 393 B.R. 792, 804 (S.D. Fl. 2008) (finding the contract ambiguous and
     looking to the parties' conduct after the contract's inception to determine parties' intent and

28   understanding of the terms of the agreement); *Tidwell v. Bassett*, 611 S.E.2d 123, 125-26 (Ga. Ct.

This accounts for the states in which 8,256 (about 85% percent) of the policyholders reside.  In sum, variations in state law are not an impediment to trying this proposed class action.

## I.     Plaintiffs Are Entitled to Rely on the Expertise of Counsel When Framing Legal Arguments and Making Strategic Decisions.

Conseco once again accuses Plaintiffs and their counsel of selectively prosecuting some legal theories while abandoning others, to the supposed detriment of the proposed class. Conseco's supposed concerns for absent class members are not credible and Conseco's arguments have no merit.

### 1.     Plaintiffs Are Not Required to Seek Class Certification on Every Possible Claim.

This court has rejected the notion that a class representative must pursue all available theories.  *See Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 2524360, at *5 (N.D. Cal. June 23, 2010).  In *Kennedy*, the defendant argued that the plaintiff was inadequate because she did not seek recovery based on several potentially available theories.  The court concluded, however, that "after Plaintiff conducted discovery on these matters, she apparently concluded that the theories she now asserts afford the greatest likelihood of success on behalf of the class." *Id.*  Additionally, the court noted that, "as Defendant contends in its Opposition, a

---

App. 2005) ("The subsequent conduct of the parties to an agreement may be considered as evidence of their intent."); *Stewart v. Brennan*, 748 P.2d 816, 821 (Haw. Ct. App. 1988) ("Where the terms in a contract are ambiguous, in order to ascertain the parties' intent the trier of fact may consider evidence extrinsic to the written contract, including evidence of the surrounding circumstances and the parties' subsequent conduct in construing the contract."); *Pocius v. Halvorsen*, 195 N.E.2d 137, 141 (Ill. 1963) ("It is a familiar rule of construction that where the terms of an agreement are in any respect doubtful or uncertain, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts, in the event of litigation concerning it."); *Gilbrech v. Kloberdanz*, 107 N.W.2d 574, 576-77 (Iowa 1961) ("The practical construction placed upon a contract of doubtful meaning by the parties themselves will usually be adopted by the courts."); *Detroit Greyhound Emps. Fed. Credit Union v. Aetna Life Ins. Co.*, 167 N.W.2d 274, 275 (Mich. 1969) (where a contract is ambiguous, "the manner in which the parties themselves have treated it in carrying it into effect is entitled to great weight as affording a practical construction which the parties themselves have placed upon its intent and meaning") (citation omitted); *MAS Corp. v. Thompson*, 302 S.E.2d 271, 275 (N.C. Ct. App. 1983) (finding the contract ambiguous, and holding that "[s]ubsequent conduct of the parties, after executing a contract, is admissible to show their intent"); *Consol. Eng'g Co., Inc. v. S. Steel Co.*, 699 S.W.2d 188, 192-93 (Tex. 1985) ("Conduct of the parties which indicates the construction that the parties themselves placed on the contract may therefore be considered in determining the parties' true intent.").

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION          M:10-cv-02124-SI

claim based on the suitability of its annuities could require an individualized inquiry into each

class member's circumstances." *Id.* The court held, "Defendant cannot claim that Plaintiff is

inadequate because she declines to assert a theory that could unravel the putative class." *Id.*

The U.S. District Court for the District of Kansas has provided a useful discussion of this

point, distinguishing three of the cases on which Conseco relies. *See In re Universal Serv. Fund*

*Telephone Billing Practices Litig.*, 219 F.R.D. 661, 669 (D. Kan. 2004) (distinguishing *Thompson*

*v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999), *Pearl v. Allied Corp.*, 102 F.R.D. 921

(E.D. Pa. 1984), and *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606-07

(S.D.N.Y. 1982)). In *Universal Services*, the court noted that *Thompson*, *Pearl*, and *Feinstein*

"involved actions where the class representatives had left aside the far stronger claims for

monetary damages and sought to have the weaker claims certified, for dubious strategic

purposes." 219 F.R.D. at 669 (internal citations omitted). The *Universal Services* court held that

although the named plaintiffs had abandoned their common law fraud claim, they continued to

pursue all other claims for compensatory damages, treble damages, attorneys' fees and costs, and

an injunction. *Id.* The court concluded, "[t]his is not a case where the class representatives are

pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue

far more substantial, meaningful claims." *Id.* Rather, the court found, the "named plaintiffs

simply decided to pursue certain claims while abandoning a fraud claim that probably was not

certifiable." *Id.*

Furthermore, Conseco's supposed concerns about "claims-splitting" are entirely

misplaced in the context of a proposed class action. The doctrine of claim splitting generally does

not apply to class actions:

> Generally, the request for certification as a class action and the order
> approving such certification will determine the nature of the claims subject
> to class action treatment, and the resultant judgment will be limited to those
> claims . . . . Thus, a class action can be thought of as an action in a court of
> limited jurisdiction in which only certain claims and certain forms of relief
> are available. This type of action, of course, is one of the recognized
> exceptions to the rule against claim-splitting.

18 Moore's Federal Practice § 131.40[3][e][iii] (2002). *See also Cooper v. Federal Reserve Bank*

*of Richmond*, 467 U.S. 867, 880 (1984) (finding that a class action judgment binds the class

members as to matters actually litigated but does not resolve any claims based on individual

circumstances that were not addressed in the class action).

     **2.**     **Plaintiffs Should Not Be Penalized for Using the Phrase "Vanishing Premium."**

Conseco is deliberately missing the most fundamental point about Plaintiffs' own words

used to discuss their Policies.  When policyholders complain that their premiums are reappearing

even though they were supposed to "vanish," they are not asserting a "different" theory from the

breach-of-contract theory alleged here.  The OPP clause and the "vanish" clause are the same

clause.  Conseco knows this.  Conseco itself has used the terms interchangeably.  *See* Am. Mot. at

7-8.

Accordingly, when Plaintiffs said they thought they had to pay premiums for only five

years before those premiums would vanish, they simply were explaining the OPP rule in accurate

lay person's terms.  Plaintiffs' biggest grievance about the premiums – and the biggest grievance

of the whole class – is that Conseco is demanding premium payments where none are due.  That

grievance remains as valid today as it did before the Regulatory Settlement, even if the Plaintiffs

have not been able to explain it with perfect clarity.

Courts have long recognized that lay people can and should rely on the expertise of

counsel when prosecuting class actions.  In *Campo v. American Corrective Counseling Services*,

254 F.R.D. 585, 594 (N.D. Cal. 2008), for example, the court found that defendant's contention

that the named plaintiffs were "ignorant of the legal matters at issue" and "fed information by

their lawyers" to be "perplexing since Plaintiffs are lay people who are not authorized to practice

law and thus would not be required to know the 'legal matters' at issue."  This lack of knowledge

is, according to *Campo*, "precisely why Plaintiffs have engaged professional legal counsel in the

first instance."  *Id.*

**J.**     **The Court Should Disregard the Keeley Reports.**

Conseco again relies on reports submitted by Michael Keeley.  *See* Opp'n at 6-7, 13.

Those reports should be disregarded for the reasons previously stated, and because they do not

reflect the damages that the proposed class will incur now that changes are being implemented in

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION     M:10-cv-02124-SI

accordance with the Regulatory Settlement.  *See* Notice of Mot. and Mot. to Exclude Defs.'

Expert Ops. and Objections to Evidence; and Mem. in Supp. of Mot., ECF No. 33.  Plaintiffs

renew their previously filed motion to strike the Keeley reports.  *Id.*  Because the Keeley reports

dealt with issues falling outside the scope of the briefing requested by the Court, Plaintiffs do not

believe that the motion to strike should be briefed again.

**II.      CONCLUSION**

        For the foregoing reasons, and notwithstanding the Regulatory Settlement, Plaintiffs

respectfully request the Court certify a national class and a California class.

REPLY IN SUPP. OF JOINT MOT. FOR CLASS CERTIFICATION                    M:10-cv-02124-SI

1

2   Dated: July 28, 2010                     Respectfully submitted,

3

         /s/ Stephen A. Weisbrod_____
4        Scott D. Gilbert (Admitted *pro hac vice*)
            gilberts@gotofirm.com
5        Stephen A. Weisbrod (Admitted *pro hac vice*)
            weisbrods@gotofirm.com
6        August J. Matteis, Jr. (Admitted *pro hac vice*)
            matteisa@gotofirm.com
7        Kathleen Hale (Admitted *pro hac vice*)
            halek@gotofirm.com
8

9        GILBERT LLP
         1100 New York Avenue, NW
10       Suite 700
         Washington, DC 20005
11       Telephone:     (202) 772-2200
         Facsimile:     (202) 772-1924
12       David J. Millstein (CSB #87878)
            dmillstein@millstein-law.com
13

14       MILLSTEIN & ASSOCIATES
         100 The Embarcadero Suite 200
15       San Francisco, California 94105
         Telephone:     (415) 348-0348
         Facsimile:     (415) 348-0336
16

17       *Counsel for the Brady Plaintiffs*

18       Joseph J. Tabacco, Jr. (CSB #75484)
         Christopher T. Heffelfinger (CSB #118058)
19       Bing W. Ryan (CSB #228641)

20       BERMAN DEVALERIO
         Once California Street, Suite 900
21       San Francisco, CA 94111
         Telephone:     (415) 433-3200
22       Facsimile:     (415) 433-6382

23       *Counsel for McFarland*

24

25

26

27

28

                              23

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was delivered via electronic

filing to the following:

James R. Carroll
David S. Clancy
Cale P. Keable
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street, 31st Floor
Boston, MA  02108

Raoul S. Kennedy
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA  94111


By: _____/s/_____
Stephen A. Weisbrod