**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CONSECO LIFE INSURANCE COMPANY LIFETREND INSURANCE SALES AND MARKETING LITIGATION | No. M 10-02124 SI<br><br>No. C 08-05746 SI; No. C 10-00652 SI |
| ———————————————————/ | |
| This Order Relates To: | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| CEDRIC BRADY, et al., | |
| Plaintiffs, | |
| v. | |
| CONSECO, INC., et al., | |
| Defendants. | |
| ———————————————————/ | |
| BILL W. MCFARLAND, et al., | |
| Plaintiffs, | |
| v. | |
| CONSECO LIFE INSURANCE CO., et al., | |
| Defendants. | |
| ———————————————————/ | |

On July 2 and August 6, 2010, the Court heard oral argument on plaintiffs' motion for class certification. Having carefully considered the arguments of counsel and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiffs' motion for certification of a nationwide class and DENIES the motion for certification of a California subclass.

# BACKGROUND

This multidistrict action involves a challenge by holders of certain life insurance policies administered by defendant Conseco Life Insurance Company ("Conseco") to Conseco's implementation of a set of changes to the policy documents.[1]  In the present motion, plaintiffs in the *Brady* and *McFarland* actions seek certification of a nationwide class and a California subclass of policyholders who contend that Conseco's policy changes amounted to breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation.

## I.   The Policies

Plaintiffs are holders of life insurance policies known as the "LifeTrend 3" and "Life Trend 4" policies.  The policies were issued in the 1980s and 1990s by Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company, and are now administered by Conseco.  The policies provided for a stated annual premium to be paid by the policyholder.  *See* Brady Policy, Weisbrod Decl. Ex. 5, at 3.  These premiums were paid into an "accumulation account" which would accrue a minimum guaranteed interest rate.  *Id.* at 8.  Policyholders were permitted to take out loans against the balance of their accumulation accounts.  *Id.* at 7.  A policyholder could choose at any time to surrender his policy and receive the balance of the accumulation account, minus a set "surrender charge."  *Id.* at 9.  Additionally, monthly "cost of insurance" charges and "expense charges" were deducted from the accumulation accounts.  *Id.* at 8, 9.  The expense charge was a constant that could never exceed $5 per month.  *Id.* at 5.  The cost of insurance charge was based on a maximum monthly cost of insurance rate that is calculated according to an undisclosed equation which rests on Conseco's expectations as to its future mortality experience (in other words, the number of death claims it expects to have to have to pay out).  *Id.* at 10; *Brady* FAC ¶¶ 55-57.  The combined effect of the above provisions is that the balance of a policyholder's accumulation account would change over time as a result of any loans taken out,

---

[1] By order dated February 3, 2010, the Judicial Panel on Multidistrict Litigation consolidated and transferred three separate actions against Conseco to this district and to the undersigned judge: *Brady v. Conseco Inc.*, No. 08-5746 (N.D. Cal.), *McFarland v. Conseco Life Ins. Co.*, No. 09-598 (M.D. Fla.), and *Muldrow v. Conseco Life Ins. Co.*, No. 08-552 (N.D. Fla.).

1 monthly deductions, and the accumulation of interest.

2 Each policy contained a term known as the Optional Premium Payment Provision ("OPP Provision"), which provided that the policyholder could choose to reduce or stop paying annual premiums after five years as long as the amount of money in his accumulation account met or exceeded the guaranteed cash value of the policy plus the applicable surrender charge and any indebtedness. *Id.* at 9. If the policy became "underfunded," meaning that the account balance failed to meet this threshold, the policyholder would need to resume making premium payments in order to retain his benefits. A policyholder could, of course, choose to continue paying premiums regularly even after the fifth year in order to benefit from the interest that would accrue on his increased accumulation account balance.

## II. The October 2008 Letter

Plaintiffs allege that, from the time they purchased their policies until 2008, Conseco sent yearly notices stating that the policies were adequately funded and that no additional monthly fees were owed. *Brady* FAC ¶¶ 71, 76-77. In October 2008, however, Conseco sent a letter ("October 2008 Letter") to each member of the proposed class, announcing that their policies had become underfunded. *See* October 2008 Letter to Hovden, Weisbrod Decl. Ex. 1, at 3. The letter informed policyholders that Conseco planned to begin collecting increased cost of insurance and expense charges, and stated that the charges had risen because Conseco's "experience factors" had changed since the policies were originally sold. *Id.* at 1. The letter further informed the affected policyholders that they had three options for making up the shortfalls in their accumulation accounts. First, a policyholder could make an up-front payment to make up the shortfall, then resume paying premiums to ensure that his policy remained in full force. *Id.* at 3. Alternatively, a policyholder could refrain from paying off the shortfall, in which case his policy would go into "Continuation of Insurance." *Id.* at 2-3. After entering Continuation of Insurance, the policyholder could either choose to do nothing and let his policy terminate when its balance became insufficient to cover monthly deductions, or could make flexible premium payments until the balance exceeded the cash value of the policy, in which case the policy would go back into full force and could be maintained

3

with additional premiums in the future. *Id.*

### III. The Regulatory Settlement

Several months after sending the October 2008 Letter, Conseco sent its policyholders a follow-up letter ("December 2008 Letter") stating that they should disregard the October 2008 Letter on the ground that Conseco had begun working with state insurance regulators to review Conseco's actions. *See* December 2008 Letter to Brady, Scuglik Decl. Ex. 20. On May 28, 2010, Conseco reached a settlement with the state regulators. Pursuant to the settlement, Conseco is required to follow a specific set of procedures in administering the policies, as set forth below.

First, the settlement requires Conseco to establish a fund in the amount of $10 million for the benefit of all policyholders who elect to participate in the settlement and release their claims against Conseco. Regulatory Settlement, Weisbrod Decl. Ex. 2, at 22. Policyholders who elect to release their claims and accept a settlement payment will have the option to halt payment of any future premiums and elect a "reduced paid-up policy" in the amount of the current accumulation account balance less any indebtedness, or to continue paying flexible premiums and reduce the cash value of their policies to an agreed-upon amount commensurate with those premiums. *Id.* at 21-22. All policyholders, even those who do not take part in the settlement, will not be required to make shortfall payments, and Conseco must refund any shortfall payments that have already been made. *Id.* at 19-20, 31. All policyholders will be permitted to make flexible premium payments in the future, and Conseco may not terminate any policyholder's benefits for failure to make premium payments. *Id.* at 19-20. Additionally, the settlement imposes caps on future increases to the cost of insurance and expense charges. *Id.* at 27-29.

The settlement contains specific provisions dealing with the effect of parallel litigation.[2] The settlement states first that Conseco may elect to exclude from the optional benefits described above any policyholder who "has had his or her claim resolved through litigation or settlement," or who

---

[2] At the hearing held on July 2, 2010, counsel for Conseco stated that the settlement "was constructed, of course, with the knowledge of pending litigation, some actual litigation and this proposed class action." July 2 Hrg. Transcript, Weisbrod Decl. Ex. 3, at 21.

4

"has a pending litigation against the Company." *Id.* at 26. The settlement also states, however, that "[n]o Lifetrend Policyowner shall be excluded from the [settlement] on the basis of membership in a purported class in any class action lawsuit pending against the Company." *Id.* According to defense counsel, the combined effect of these two provisions is that while any named plaintiff who sues Conseco may, at Conseco's option, be excluded from the optional benefits of the settlement, absent members of a class may not. July 2 Hrg. Transcript at 21-22.

## IV. Procedural History and Plaintiffs' Allegations

Plaintiffs bring claims for breach of contract, declaratory judgment, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. Plaintiffs initially filed their motion for class certification in March 2010, based on their allegations concerning the changes announced in the October 2008 Letter. After briefing was complete, but before the hearing on the motion, Conseco entered into the regulatory settlement. The Court called for supplemental briefing on the effect of the settlement upon the class certification inquiry. The hearing on the certification motion was held on July 2, 2010. Once it became clear to the Court that the settlement had altered the nature of plaintiffs' allegations and the scope of the proposed class, the Court ordered the parties to submit new briefing reflecting plaintiffs' revised claims and class definition, and further addressing the effect of the settlement. July 2 Hrg. Transcript at 34. The parties have now filed their amended briefs.

Plaintiffs now assert that, in spite of the settlement, "Conseco still intends to commit many of the most egregious contractual breaches announced by the company" in the October 2008 Letter, namely improperly calculating and charging annual premiums, expense charges, and cost-of-insurance deductions; reducing the value of policyholders' death benefits; and diluting guaranteed interest income. Plaintiffs' allegations are explained in further detail below.

### A. Guaranteed Cash Value

Each policy carried a "Guaranteed Cash Value" ("GCV") which depended on the premiums paid in and the number of years the policy had been in effect. The table showing each

policyholder's GCV stated, "This table presumes that the insured pays the full annual premium shown on the preceding page each year." Brady Policy at 4. According to plaintiffs, this language meant that once a policyholder availed himself of the OPP Provision, "then the guaranteed cash values set forth in the Table no longer apply and thus are zero."[3] The import of plaintiffs' interpretation is that, once a policyholder entered the OPP program and stopped or reduced his premiums, the GCV would no longer figure into the calculation of whether his policy had become underfunded and therefore required the payment of additional premium payments in order to remain in force. Plaintiffs assert that, prior to 2008, Conseco routinely sent notices to OPP participants correctly stating that the GCV of their policies was $0. *See, e.g.*, Oct. 1, 2008 Statement to Kreps, Weisbrod Decl. Ex. 6, at 2. Plaintiffs contend that Conseco now improperly intends to calculate underfunding and send out premium due notices based on the GCV table, rather than using a GCV of $0. Plaintiffs assert that this will result in many policyholders being forced to pay annual premiums to maintain their full insurance benefits when they are actually still eligible to take advantage of the OPP Provision.

Plaintiffs acknowledge that one of the benefits of the regulatory settlement is that Conseco may not terminate any policyholder's coverage for failure to make a premium payment. Plaintiffs assert nonetheless that a policyholder who receives a premium due notice will be harmed if he fails to pay because the value of his death benefit will be reduced and Conseco will discontinue providing interest income.[4]

### B. Expense and Cost of Insurance Charges

Plaintiffs also allege that, even in spite of the regulatory settlement, Conseco intends to impose increased expense and cost of insurance charges that exceed what is permitted under the insurance policies. First, with respect to expense charges, the policies provide that Conseco may

---

[3] Under plaintiffs' theory, the policy would still carry an actual cash value depending on the balance in the accumulation account, but that value was no longer determined according to the GCV table.

[4] Plaintiffs refer to the discontinuation of interest payments as an improper "dilution" of the policies' guaranteed 4.5% interest rate.

6

increase the charge at a policy anniversary to a maximum of $5 per month. Brady Policy at 5. The regulatory settlement confirms that Conseco may increase the monthly expense charge to $5 per month, but also states that Conseco may increase expense charges beyond this cap if the "increase is consistent with expected expense levels." Regulatory Settlement at 27-28. Plaintiffs assert that Conseco intends to increase expense charges "to levels that bear little or no relation to" its actual expenses incurred in administering the policies.

Second, with respect to cost of insurance charges, the policies contain a table stating the maximum monthly rate Conseco would charge per $1000 of insurance. Brady Policy at 10. As stated above, the October 2008 Letter informed policyholders that Conseco planned to increase the monthly cost of insurance rates "because experience factors have differed from those assumed when [a policyholder's] policy was originally sold." October 2008 Letter at 1. Thereafter, the regulatory settlement set forth specific limitations on the permissible increases to cost of insurance rates, and stated that "[i]n no event shall the monthly cost of insurance rates exceed a Lifetrend policyowner's contract maximum." Regulatory Settlement at 27-28. Despite the specific limitations on increases to the cost of insurance rate, plaintiffs claim that Conseco intends to increase cost of insurance rates "even though the factor that governs cost of insurance – mortality – has actually gone down."

Plaintiffs also allege that the increases in monthly expense and cost of insurance charges constitute a breach of the policies' "Non-Participating" provision, which provides: "This policy will not share in any of the Company's profits or surplus earnings. Any premium or factor changes are determined and redetermined prospectively. The Company will not recoup prior losses, if any, by means of premium or factor changes." Brady Policy at 13. According to plaintiffs, by increasing monthly deductions, Conseco is impermissibly attempting to shift the cost of its past investment losses onto its policyholders. *Brady* FAC ¶¶ 85, 101.

### C. Proposed Class Definition

Plaintiffs seek certification of a nationwide class comprised of

all persons in the United States who (1) own or owned a Conseco LifeTrend 3 or LifeTrend 4 Policy, and (2) have received since October 2008, or in the future may receive, pursuant to a settlement with state insurance regulators or otherwise, any of

7

> the following: (a) notice that an annual premium is due, notwithstanding such person's prior invocation of the Policy's Optional Premium Payment Provision ("OPP Provision"); (b) notice of increased expense charges under the Policy; or (c) notice of increased cost-of-insurance deductions under the Policy.

This class will assert claims for breach of contract and declaratory judgment.

Plaintiffs in the *Brady* action[5] also seek to represent a California subclass of policyholders asserting claims for breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation.

## LEGAL STANDARD

The decision whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23 ("Rule 23"). *Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). Rule 23(a) provides four prerequisites that must be satisfied for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A plaintiff must also demonstrate that at least one of the requirements of Rule 23(b) has been met. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). These include (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole is appropriate; or (3) that common questions of law or fact predominate and a class action is the superior method of adjudication. Fed. R. Civ. P. 23(b).

In determining the propriety of certifying an action as a class action, the Court must focus on whether the requirements of Rule 23 are met, not whether the plaintiff has stated a cause of action or will prevail on the merits. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). However, the Court's analysis "will often, though not always, require looking behind the pleadings . . . to issues overlapping with the merits of the underlying claims" where such issues are also relevant to the certification inquiry. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 581 (9th Cir. 2010). The Court

---

[5] *Brady* plaintiff Jean Sakai does not seek to serve as a class representative.

8

must undertake a "rigorous analysis . . . . to ensure that Rule 23 requirements are actually met, not simply presumed from the pleadings." *Id.* at 581-82.

## DISCUSSION

## I. Nationwide Class

### A. Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)'s first requirement is that a class be sufficiently numerous that it would be impracticable to join all members individually. Plaintiffs estimate that the class will include approximately 10,000 members. Conseco does not contest that the proposed class is large enough to justify certification.

#### 2. Commonality

Rule 23(a)(2) requires plaintiffs to demonstrate the existence of questions of law or fact that are common to all members of the class. The commonality requirement has been "construed permissively" and its requirements deemed "minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Conseco argues that individual questions of both law and fact defeat commonality.

##### a. Variations in state law

Conseco argued in the first round of briefing that certification should be denied because plaintiffs have failed to present an adequate analysis of the multiple state laws that will govern the claims in this action or to propose a workable trial plan in light of these variations.[6] Where the named plaintiffs in a class action seek to represent a nationwide class of persons whose claims will be subject to different states' laws, they must show, prior to certification, "that the differences in state laws . . . are

---

[6] The parties agree that the laws of forty-eight states are at issue.

9

nonmaterial." *In re Paxil Litig.*, 212 F.R.D. 539, 545 (C.D. Cal. 2003). Where significant differences in applicable law will arise, plaintiffs should also propose "a suitable and realistic plan for trial of the class claims." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quotation marks and citation omitted).

Conseco relies heavily on *Zinser* and *In re Paxil* in contending that the variations in state law defeat certification. Both of those cases, however, concerned nationwide product liability actions involving significant variations in the state tort laws governing the multiple claims asserted by the plaintiffs. *See Zinser*, 253 F.3d at 541-42; *In re Paxil*, 212 F.R.D. at 542-44. Here, by contrast, plaintiffs assert only two claims – breach of contract and declaratory judgment – on behalf of the national class. Conseco has not identified any state-to-state variations in the law governing declaratory judgment, and Conseco overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence.[7] First, contrary to Conseco's representations, several courts have recognized that the law relating to the element of breach does not vary greatly from state to state. *See, e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262-63 (11th Cir. 2004); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997). Second, plaintiffs have persuasively rebutted Conseco's assertions concerning variations in the causation and damages elements of the contract claim. Finally, the Court agrees with plaintiffs that, as neither party has asserted that the form policy contract contains ambiguous terms (rather, they offer competing interpretations based on the face of the documents), admission of extrinsic evidence should not be necessary to interpret the contractual provisions at issue. Plaintiffs' contractual interpretations may ultimately be rejected at the summary judgment stage or disproved at trial, but they are not patently untenable from the face of the documents, and do not demonstrate a lack of common issues of law.

At best, Conseco has pointed to isolated and relatively minor variations that may be handled at trial "by grouping similar state laws together and applying them as a unit." *In re Prudential Ins. Co.*

---

[7] Conseco also identifies a variation among the states as to whether punitive damages are permitted in breach of contract claims. Plaintiffs clarified in the reply brief submitted during the first round of briefing that they do not seek punitive damages for the breach of contract claim.

10

*Am. Sales Prac. Litig.*, 148 F.3d 283, 315 (3d Cir. 1998).

### b. Variations in factual issues

Conseco argues that plaintiffs' case depends largely on a number of individual factual questions. First, Conseco correctly points out that some of plaintiffs' prior filings and the deposition testimony of the named plaintiffs suggested that their breach of contract claim was based on oral point-of-sale representations which stated that the OPP Provision amounted to a "vanishing premium." Conseco argues that plaintiffs' "vanishing premiums" theory is not appropriate for certification because it rested on individualized oral representations made by the insurance agents – undisputedly not Conseco employees – who sold plaintiffs their policies, and argues that plaintiffs should not be permitted to change their theory at this juncture and attempt to disclaim reliance on these individualized representations. The Court disagrees with Conseco that plaintiffs cannot seek certification on a theory not expressly stated in their complaint. Plaintiffs are simply narrowing their breach of contract theory at this juncture based on factual developments that have occurred since the filing of the complaint. *See Beaulieu v. EQ Indus. Servs., Inc.*, No. 06-0400, 2009 WL 2208131, at *7 (E.D.N.C. July 22, 2009) (permitting "changes in the [class] definitions reflect[ing] a sharpening of the issues based on discovery and other developments in the course of litigation and settlement negotiations."). Conseco presents no authority stating that this is impermissible. Additionally, as long as plaintiffs are willing to attempt to prove their claims based solely on the policy documents, and not on any oral representations made by sales agents, the Court does not believe that a significant amount of individualized proof will be required. Even if plaintiffs' theory is ultimately unsuccessful, interpretation of the standard written policy language will present a question common to the class.

Second, Conseco contends that individual factual issues will be presented by plaintiffs' GCV theory. Conseco has submitted form letters signed by some of the lead plaintiffs at the time they elected to begin participating in the OPP program, each of which stated, "I understand that if the actual cash value drops below the table of guarantee value, a special premium due notice will generate to advise that additional premium is due." Dec. 2, 1992 Brady Letter, Clancy Decl. Ex. 15; Jan. 10, 1994 M. Hovden Letter, Clancy Decl. Ex. 17; Jan. 10, 1994 C. Hovden Letter, Clancy Decl. Ex. 18. According to

11

1 Conseco, these letters demonstrate (1) that plaintiffs' theory regarding the incorporation of the GCV
2 table into the underfunding calculation is incorrect, and (2) that resolution of this claim will require
3 individualized inquiry into whether each plaintiff understood that GCV table values would continue to
4 be relevant to the underfunding calculation. As stated above, however, plaintiffs' breach of contract
5 claim will not be proved based on each policyholder's understanding of the terms of the policies, but
6 based on the face of the policy documents themselves.

7 Finally, Conseco contends that individual issues will be presented due to the fact that some
8 policyholders have surrendered their policies since the institution of this action. Conseco contends that
9 putative class members who have surrendered their policies have no remaining claims against Conseco
10 and may not share in any relief the Court might ultimately award. It is undisputed, however, that the
11 regulatory settlement permits policyholders who have surrendered their policies to reinstate within a
12 specified period of time. Those policyholders who choose to reinstate their policies may well be entitled
13 to relief in this action. The surrender issue does not present a commonality problem at this time.[8]

### 3. Typicality

16 Rule 23(a)(3) requires the named plaintiffs to show that their claims are typical of those of the
17 class. To satisfy this requirement, the named plaintiffs must be members of the class and must "possess
18 the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457
19 U.S. 147, 156 (1982) (quotation marks and citation omitted). Rule 23(a)(3) is "permissive" and only
20 requires that the named plaintiffs' claims be "reasonably co-extensive with those of absent class
21 members." *Hanlon*, 150 F.3d at 1020.

22 Conseco argued in the first round of briefing that the named plaintiffs' claims are not typical of
23 those of the class because the named plaintiffs complain about oral point-of-sale promises regarding

---

[8] Conseco has also raised arguments concerning the statute of limitations and damages issues. Courts have held, however, that individual issues relating to the statute of limitations do not bar certification where there is otherwise a sufficient showing of commonality. *See Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 4778 (9th Cir. 1976); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). The Ninth Circuit has also held that "damage calculations alone cannot defeat certification," as damages are "invariably an individual question." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). Accordingly, these two arguments do not weigh against certification.

12

1 vanishing premiums, while the remainder of the class seeks to press a claim based on Conseco's
2 methods of determining underfunding and calculating monthly fees. As stated above, however,
3 assuming plaintiffs confine their presentation to claims susceptible of common proof rather than relying
4 on any idiosyncratic oral representations, no typicality problem will arise.

### 4. Adequacy

Rule 23(a)(4) requires the named plaintiffs to show that they will adequately represent the interests of the class. "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 603 F.3d at 614 (citing *Hanlon*, 150 F.3d at 1020). Conseco challenges the adequacy of the named plaintiffs on two grounds: (1) that they lack sufficient knowledge regarding this lawsuit; and (2) that they are engaging in impermissible "claim-splitting."

#### a. Knowledge about the lawsuit

Conseco argues that plaintiffs are inadequate class representatives because they are unfamiliar with the claims being asserted in this suit and have been "uninvolved" in its prosecution. Conseco emphasizes the inability of certain plaintiffs to define the class and the claims being asserted, and the minimal amount of time plaintiffs had spent on the case as of the time of their depositions.

Several of the named plaintiffs have testified to their willingness to represent the class and have stated an understanding of their duties as class representatives. Mr. Sakai testified at his deposition that he understands he must be "totally committed" to working with his co-plaintiffs to represent the class. Sakai Depo., Hale Reply Decl. Ex. 6, at 18:16-18. Similarly, Mr. McNamara testified that he is "supposed to represent the class, work with the attorneys, have a clear understanding of the process, and also try to represent the interest of the people in the class rather than just my own interest." McNamara Depo., Hale Reply Decl. Ex. 7, at 116:5-9; *see also* Marion Hovden Depo., Hale Reply Decl. Ex. 9, at 21:1-3; Brady Depo., Hale Reply Decl. Ex. 10, at 56:5-10.

Additionally, several plaintiffs have testified regarding their understanding of the reasons for this lawsuit, and have explained the class claims in reasonably accurate terms. *See, e.g.*, Sakai Depo. at

13

1 18:8-13; Brady Depo. at 55:6-9. Plaintiffs are laypersons and cannot be expected to define the scope
2 of the class or name all of the causes of action in more precise terms. The fact that they are familiar with
3 the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy.
4 *See Local Joint Exec.*, 244 F.3d at 1162 ("The record indicates clearly that [plaintiff] understands his
5 duties and is currently willing and able to perform them. [Rule 23(a)(4)] does not require more.").[9]

### b. Claim-splitting

8 Conseco also argues that plaintiffs are inadequate class representatives because they are
9 engaging in impermissible claim-splitting. "Claim splitting is generally prohibited by the doctrine of
10 res judicata . . . . [and] class certification should be denied on the basis that class representatives are
11 inadequate when they opt to pursue certain claims on a class-wide basis while jeopardizing the class
12 members' ability to subsequently pursue other claims." *In re Universal Serv. Fund Tel. Billing Prac.*
13 *Litig.*, 219 F.R.D. 661, 668 (D. Kan. 2004). Conseco contends that the named plaintiffs are now
14 asserting the GCV theory "at the expense of" the vanishing premiums theory which they previously
15 advanced.

16 The Court finds that Conseco's concerns about claim-splitting are misplaced. Plaintiffs are not
17 seeking to split their breach of contract claim and advance only a portion which best suits their
18 individual interests at the expense of the interests of the class. Rather, plaintiffs have necessarily refined
19 their theory of contract liability as a result of the changes occasioned by the issuance of the regulatory
20 settlement. Plaintiffs are permitted to press a theory of contract liability that affords them the best
21 chance of certification and of success on behalf of the class. *See In re Universal*, 219 F.R.D. at 669
22 ("This is not a case where the class representatives are pursuing relatively insignificant claims while
23 jeopardizing the ability of class members to pursue far more substantial, meaningful claims. Rather,
24 here the named plaintiffs simply decided to pursue certain claims while abandoning a fraud claim that

---

[9] The Court need not examine the adequacy of every named plaintiff. *See Local Joint Exec. Bd of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) ("[T]he adequacy- of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative."). At the very least, both Mr. Sakai and Mr. Brady are adequate class representatives.

14

probably was not certifiable."); *Kennedy v. Jackson Nat'l Life Ins. Co.*, No. 07-0371 CW, 2010 WL 2524360, at *5 (N.D. Cal. June 23, 2010) ("Defendant cannot claim that Plaintiff is inadequate because she declines to assert a theory that could unravel the putative class.").[10]

Having concluded that plaintiffs satisfy all the requirements of Rule 23(a), the Court will address whether certification is appropriate under any provision of Rule 23(b).

### B.  Rule 23(b)(2) – Injunctive Relief

#### 1.  Cohesiveness of the class

Plaintiffs seek certification of the nationwide class under Rule 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Conseco argues first that Rule 23(b)(2) certification is inappropriate because the class is insufficiently cohesive. *See Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005) ("[E]ven though Rule 23(b)(2), unlike Rule 23(b)(3), does not specifically contain predominance and superiority requirements, a class under Rule 23(b)(2) must not be overrun with individual issues."). To meet the cohesiveness requirement, "It is sufficient if defendant has adopted a pattern of activity that is likely to be the same as to all members of the class." William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial*, § 10:399 (2010). Plaintiffs have met their burden of showing that Conseco has acted in a manner generally applicable to the class. There is no dispute that every member of the potential class held a LifeTrend policy with identical language, or that the regulatory settlement sets forth certain directives which will uniformly affect all class members. Conseco's proposed actions either amount to a breach of contract or they do not. Plaintiffs' breach of contract claim is amenable to uniform, classwide adjudication, and involves future actions which can be enjoined on a classwide basis.

---

[10] At oral argument, defense counsel attempted to distinguish both of these cases on the ground that they did not involve abandonment of the very claims initially pressed by the class representatives. As stated above, however, the Court finds that plaintiffs have simply clarified their breach of contract claim as a result of the unusual factual developments in this case.

### 2. Money damages

Conseco also contends that certification under Rule 23(b)(2) is inappropriate because plaintiffs' suit primarily seeks money damages. Under Ninth Circuit law, "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195. Put a different way, certification of a Rule 23(b)(2) class "is not appropriate where monetary relief is 'predominant' over injunctive relief or declaratory relief." *Dukes*, 603 F.3d at 617. In assessing the primary form of relief sought in a putative class action, the court must look to the "size and nature" of the monetary relief and weigh it against the equitable relief sought. *Id.*

In the First Amended Complaints filed in both the *Brady* and *McFarland* actions, plaintiffs specifically seek injunctive and declaratory relief. *Brady* FAC ¶, Prayer for Relief ¶¶ III-V; *McFarland* Complaint, Prayer for Relief ¶¶ a-d. Although plaintiffs also pray for contract damages, the Court finds that this request is minor in comparison to their demand for equitable relief, particularly in light of the prospective nature of the policies announced by the regulatory settlement.

### 3. Propriety of certification in view of regulatory settlement

Finally, Conseco argues at length that the Court should exercise its discretion to deny certification because the regulatory settlement provides "substantial benefits" for policyholders, making certification of a parallel class action inappropriate and unnecessary. Conseco relies primarily on two cases in which courts declined to certify classes which would proceed alongside regulatory actions, *Kamm v. California City Development Co.*, 509 F.2d 205 (9th Cir. 1975) and *Brown v. Blue Cross & Blue Shield of Michigan, Inc.*, 167 F.R.D. 40 (E.D. Mich. 1996). For the reasons explained below, neither of these cases resolved the type of issues presented here.

The plaintiffs in *Kamm* were a group of investors who had purchased property through an allegedly fraudulent land promotion and sales scheme. Concurrently with the putative class action, the California Attorney General and Real Estate Commissioner had filed a representative action in state court, and reached a settlement with the defendants which provided for certain remedies to purchasers, including restitution of principal payments. 509 F.2d at 207-08. The district court granted defendants' motion to strike the class allegations and the Ninth Circuit affirmed, finding that a class action would

16

1 not have been a superior method of adjudicating the parties' dispute for a number of reasons, including
2 that a class action "would require a substantial expenditure of judicial time which would largely
3 duplicate and possibly to some extent negate the work on the state level" and that "[s]ignificant relief
4 had been realized in the state action." *Id.* at 212.

The ruling in *Kamm* does not suggest that certification should be denied in this case. First, the *Kamm* court was addressing the issue of superiority under Rule 23(b)(3). Because the Court finds that certification is appropriate in this case under Rule 23(b)(2), the superiority requirement does not apply. *Id.* at 211 ("The superiority requirement is unique to those class actions maintained under Rule 23(b)(3)."). Second, unlike in *Kamm*, this case will not involve the use of judicial resources on an action which will merely duplicate regulatory proceedings. Rather, plaintiffs have specifically refined their theory of liability in order to challenge only the alleged violations that remain in view of the regulatory settlement. Third, while the settlement in this case, as in *Kamm*, does provide some benefit to policyholders, plaintiffs' very contention is that the settlement benefits are not enough to prevent a breach of contract. Plaintiffs should not be forced to defer to a settlement they had no part in negotiating or drafting when they may be entitled to other relief through this class action.[11]

In sum, the Court concludes that plaintiffs satisfy each of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2), and finds that certification of a class is not inappropriate in view of the parallel regulatory settlement agreement. The Court therefore GRANTS plaintiffs' motion for certification of a nationwide injunctive class asserting breach of contract and declaratory relief claims.

### C. Absent Class Members

As stated earlier in this order, the regulatory settlement provides that Conseco "may elect" to exclude from the benefits of the regulatory settlement any policyholder who "has had his or her claim

---

[11] Similarly, in *Brown*, the Eastern District of Michigan declined to certify a class of insureds challenging their insurance provider's method of computing co-payments, on the ground that class members' interest would be adequately protected by a regulatory settlement entered into between the insurer and the Michigan Insurance Commissioner. 167 F.R.D. at 42, 46-47. The court specifically noted that the regulatory settlement would cover all members of the putative class and would provide relief consisting of the complete repayment of their claims. *Id.* at 47. As stated above, plaintiffs credibly allege here that the benefits provided under the regulatory settlement are insufficient to protect their contractual rights. Thus, this case is distinguishable from *Brown* as well.

17

resolved through litigation or settlement," or who "has a pending litigation against the Company." Regulatory Settlement at 26. Counsel for Conseco initially represented at the July 2 Hearing that, under this provision, Conseco would not exclude absent class members from receiving the optional benefits of the settlement. July 2 Hrg. Transcript at 21-22. Conseco has now changed its position, and contends that the settlement gives it the power to exclude absent class members. Plaintiffs maintain that the settlement does not provide for the exclusion of absent class members from the optional benefits.

The Court has not been asked by either party to construe the release provisions of the regulatory settlement. The Court expresses no opinion at this time regarding whether it has the authority to construe the settlement, or whether, should it have the occasion to do so, it may order Conseco not to exclude absent class members from the optional benefits of the settlement. In any event, Rule 23 vests the Court with the discretion to order that the putative members of a Rule 23(b)(2) class action be provided with notice of the action and an opportunity to opt out of the class. *Dukes*, 603 F.3d at 621. In order to alleviate any concern absent class members may have regarding their ability to benefit from the regulatory settlement, the Court will require plaintiffs to provide class members with notice of this action and an opportunity to opt out. The notice must clearly explain each party's position with respect to absent class members' right to benefit from the settlement.

## II.    California Subclass

Plaintiffs also seek certification of a California subclass that will assert claims for breach of implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. These claims arise from the allegation that Conseco sent out misleading annual benefit statements which wrongly stated that the GCV of the policies was $0, thereby concealing its method of determining the value of the policies and the fact that they had become underfunded. Brady FAC ¶¶ 196-197, 201. Plaintiffs alleged in the complaint that "[b]y concealing its mistakes, Conseco allowed the amount by which the accounts were allegedly under funded to escalate until they reached the point that Conseco knew Plaintiffs and Members of the Class would have no choice but to surrender their policies." *Id.* ¶ 198.

Plaintiffs' fraud theory is directly at odds with the breach of contract theory pressed on behalf of the nationwide class, which asserts that Conseco *should have, but did not,* make its calculations of

underfunding based on a GCV of $0. When asked at oral argument to explain this discrepancy, plaintiffs' counsel stated that the California theory is asserted only in the alternative. Counsel explained that if Conseco prevails in its interpretation of the GCV provision of the policies, then the $0 figure constituted fraud; if, by contrast, plaintiffs prevail on their GCV argument, then the California claim will be eliminated because policyholders admittedly suffered no damage by receiving accurate statements.

In the Court's view, the inconsistent and alternative nature of plaintiffs' California claims warrant exercising the Court's discretion to deny certification of the proposed subclass. As Conseco points out in its papers, moreover, individual issues regarding class members' reliance on the alleged misrepresentations will destroy Rule 23(a)'s typicality and commonality requirements and Rule 23(b)(3)'s predominance and superiority requirements.[12] If the California claims survive because Conseco prevails on the national claims, the Court will be forced to make individualized inquiries into whether each plaintiff read his or her annual statement, noticed the sentence containing the "$0" representation, and relied on this representation in continuing to withhold future premium payments.

Plaintiffs' alternative theory of liability on behalf of the California subclass is therefore inappropriate for class treatment, and the motion for certification of a California subclass is DENIED.

**III.     Plaintiffs' Motion to Strike Expert Opinions of Dr. Michael Keeley**

Plaintiffs have moved to strike the expert declarations of Dr. Keeley, which Conseco submitted during the first round of briefing. Plaintiffs challenge the reliability of Dr. Keeley's methodology and state that he impermissibly provides legal conclusions. Because Dr. Keeley's declarations were not material to the Court's consideration of plaintiffs' certification motion, the motion to strike is DENIED. Plaintiffs are not barred, however, from challenging Dr. Keeley's qualifications or other aspects of his expert opinion should the need arise at trial.

---

[12] Although it not entirely clear from the relatively brief discussions of the California subclass in both parties' briefs, it appears that plaintiffs are seeking certification under Rule 23(b)(3) only, and thus must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

19

## CONCLUSION

For the foregoing reasons, and for good cause shown, the Court hereby GRANTS plaintiffs' motion for certification of a nationwide class consisting of

> all persons in the United States who (1) own or owned a Conseco LifeTrend 3 or LifeTrend 4 Policy, and (2) have received since October 2008, or in the future may receive, pursuant to a settlement with state insurance regulators or otherwise, any of the following: (a) notice that an annual premium is due, notwithstanding such person's prior invocation of the Policy's Optional Premium Payment Provision ("OPP Provision"); (b) notice of increased expense charges under the Policy; or (c) notice of increased cost-of-insurance deductions under the Policy.

The Court DENIES the motion for certification of a California subclass. (Docket No. 17, 76). The Court also DENIES plaintiffs' motion to strike. (Docket No. 33).

**IT IS SO ORDERED.**

Dated: October 6, 2010

SUSAN ILLSTON
United States District Judge