RAOUL D. KENNEDY (STATE BAR NO. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: Raoul.Kennedy@skadden.com

JAMES R. CARROLL (*PRO HAC VICE*)
DAVID S. CLANCY (*PRO HAC VICE*)
CHRISTOPHER A. LISY (*PRO HAC VICE*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Email: James.Carroll@skadden.com
Email: David.Clancy@skadden.com
Email: Christopher.Lisy@skadden.com

Attorneys for Defendant
Conseco Life Insurance Company

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CONSECO LIFE INSURANCE COMPANY LIFETREND INSURANCE SALES AND MARKETING LITIGATION | CASE NO.: 3:10-MD-2124-SI<br><br>ALL CASES<br><br>**CONSECO LIFE'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF THE PROPOSED NOTICE OF CLASS CERTIFICATION AND APPOINTMENT OF THE GARDEN CITY GROUP, INC. TO ADMINISTER THE CLASS NOTICE**<br><br>Date:  December 9, 2010<br>Time:  9:00 a.m.<br>Place:  Courtroom 10<br>Judge: The Honorable Susan Illston |

**STATEMENT OF ISSUES TO BE CONSIDERED**

The issues to be decided on Plaintiffs' motion are (i) whether Plaintiffs' proposed form of notice ("Proposed Class Notice") is appropriate in light of the parties' dispute about the applicability of the regulatory release on Lifetrend policyholders who signed it, and (ii) whether Plaintiffs' three-page description of the nature of this lawsuit is appropriate.

Conseco Life does not oppose the appointment of the Garden City Group, Inc. to administer whatever class notice is ultimately approved, and therefore, with respect to only that portion of Plaintiffs' motion, there is no disputed issue to be resolved.

**PRELIMINARY STATEMENT**

In its order certifying a nationwide class in this action, the Court provided absent class members the opportunity to opt out of the class "to alleviate any concern [they] may have regarding their ability to benefit from the regulatory settlement." Unfortunately, Plaintiffs' Proposed Class Notice is so unclear that it does little to alleviate such concerns, and in fact compounds them.

The Proposed Class Notice is flawed in two major respects.

First, it proposes a convoluted structure that tells policyholders that they "are" members of the class, but, nevertheless, it constantly warns them that they may not be members of the class if the Court decides that the regulatory release precludes them from participating. As such, readers of the Proposed Class Notice are left to wonder about their status and how they will be affected by future developments, and will likely be confused by the notice's competing scenarios of future events.

The solution to this problem is, however, straightforward. Conseco Life has filed a motion concerning the status of policyholders who signed a release. The Court should rule on

Conseco Life's motion in advance of the class notice being sent, which would permit the class notice to address clearly and accurately the status of policyholders who signed the regulatory release. That would eliminate the major source of disagreement between the parties about the form of the class notice.

Second, the Proposed Class Notice adopts a long, confusing and one-sided presentation of Plaintiffs' allegations. It relies too much on legalese and insurance industry terminology. Although Conseco Life agrees that a description of the allegations (and Conseco Life's defenses) is necessary to enable class members to decide whether to opt out, it does little good to draft that section so that class members cannot understand it. The class notice should be clear and concise, and provide class members the opportunity to learn more if they so choose.

Here too, the solution is readily apparent. Conseco Life has proposed for the Court's review an alternate version of this important part of the class notice. (The Proposed Class Notice already provides directions to readers on how to obtain more information about the action.) Conseco Life respectfully suggests that a side-by-side comparison will enable the Court to choose the version that is most appropriate for class members, most of whom are undoubtedly laypersons with little knowledge of industry jargon.

## ARGUMENT

I.  THE CLASS NOTICE SHOULD ACCURATELY CONVEY WHO IS ELIGIBLE TO PARTICIPATE AS A CLASS MEMBER, BUT PLAINTIFFS' PROPOSED CLASS NOTICE IS PATENTLY UNCLEAR IN THIS BASIC REGARD

Plaintiffs' Proposed Class Notice does not adequately address a topic of uncertainty in the composition of the class, namely, whether policyholders who signed the regulatory release are entitled to participate in the class. On the one hand, the Proposed Class Notice states to policyholders in no uncertain terms that they "are" class members. On the other

hand, the Proposed Class Notice is littered with cautionary language about the status of policyholders who signed the regulatory release. (See Proposed Class Notice at pp. 4, 6, 10, 12, 13 and 14.)  For example, the Proposed Class Notice warns that:

> [T]here is an unresolved dispute about the effect of the Regulatory Settlement on certain policyholders, and if you have accepted certain options under the Regulatory Settlement and executed a release form sent to you by Conseco, this Class Action may affect your rights, as discussed below." (Proposed Notice at 2.)
>
> Conseco contends that you may not be eligible to remain in the Class if you have returned a release form to Conseco in connection with Conseco's Regulatory Settlement; Plaintiffs disagree, and the Court has not yet ruled on this issue. (Id.)
>
> Conseco asserts that policyholders who sign the release may not participate in the Class Action because, according to Conseco, the release language covers the claims asserted in the Conseco Class Action. Plaintiffs contend that the release language does not cover the claims in their lawsuit and, therefore, that a policyholder who signs the release still may participate in the Conseco Class Action. **If the Court agrees with Conseco's interpretation of the release language, then any policyholders who sign the release will lose their right to participate in the Conseco Class Action.** To date, the Court has not ruled on the effect of the release language. (Proposed Class Notice at 11 (emphasis original).)

In addition to these warnings that appear throughout the Proposed Class Notice, Plaintiffs' and Conseco Life's separate "position statements" about the impact of the Regulatory Settlement Agreement on the class -- which positions are, of course, diametrically opposed -- consume more than three pages at the back end of the notice. (Proposed Class Notice at 10-12.) That section is aptly introduced by a disclaimer that states that "Plaintiffs and Conseco disagree about many issues, including . . . the effect of signing the release on a policyholder's participation in the Class."  (Id. at 10.)

This is far from the optimal approach.  As presently drafted, the Proposed Class Notice gives the reader who signed the regulatory release no guidance about whether he or she is or will continue to be a class member.

There is a better approach. The Court should first decide whether policyholders who signed the regulatory release are eligible to participate in the class, and then require the class notice to accurately convey this information. Conseco Life has already filed a motion asking the Court to resolve this issue now. (See Docket No. 113.) For the reasons discussed therein, this will eliminate the parties' dispute about how the notice should address policyholders who signed the release: it will answer the question of who is eligible to participate and who is not, obviating the need for the cautionary language quoted above and simplifying the class notice as a result.[1]

Although Plaintiffs vaguely contend that consideration of the issue now would cause unacceptable delay, that is a red herring. Conseco Life's motion for a determination of who is eligible to participate in the class is on the same briefing and argument schedule as this motion for approval of the Proposed Class Notice. It would require little time to re-draft the notice in accordance with the Court's decision on Conseco Life's motion.

Plaintiffs also suggest that it is important to send the notice before the release issue is decided because "absent class members are entitled to be heard on these points." (Motion at 6.) This makes little sense. As Plaintiffs acknowledge, absent class members are already represented by counsel -- Plaintiffs' lawyers -- who are making arguments on their behalf. (See id. at 2.)

---

[1] Although Conseco Life submits that this issue can and should be resolved before any class notice is sent, if the Court should decline to do so, at a minimum the class notice should convey that such policyholders may be class members eligible to participate in the class. Even if the class definition is interpreted to mean that anyone who fits the class definition -- regardless of whether they signed a release -- is at present class member, they may soon be excluded from the class if the Court later grants Conseco Life's motion on this issue. Moreover, the Class Certification Order leaves open the possibility that policyholders who surrendered their policies (and who choose not to reinstate them) may be treated differently than current policyholders. (See Class Certification Order at 12.) It is, therefore, appropriate to tell policyholders that they "may" be class members instead of guaranteeing that they "are" class members.

## II. THE CLASS NOTICE SHOULD SUMMARIZE THE NATURE OF THE ACTION, BUT PLAINTIFFS' <u>CHARACTERIZATION IS CONFUSING AND CUMBERSOME</u>

Conseco Life agrees that the class notice should contain a description of the nature of this action and of Plaintiffs' allegations. Instead, the disagreement between Conseco Life and Plaintiffs centers on the content of that description (which is set forth in the section of the Proposed Class Notice titled "What Are Plaintiffs' Claims Against Conseco?" at pages 4 through 7).

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the class notice be stated "clearly and concisely" and "in plain, easily understood language."[2] Yet Plaintiffs' proposed description is anything but: it is simply too long and confusing to be of any value to class members. Among other things, it (i) requires an introductory "summary," (ii) contains <u>7</u> separate sub-headings and <u>21</u> separate paragraphs, (ii) rambles for over three pages -- the description is far too long even to reproduce in this body of brief -- and (iv) characterizes the action with unhelpful industry and financial jargon. It is hyper-technical and is more likely to confuse than inform. (<u>See</u> Appendix A, which sets forth Plaintiffs' proposed description in full.)

Courts may exercise their discretion to amend plaintiffs' proposed class notice where the notice contains a confusing amount of detail and is likely to mislead class members. The court in <u>In re Cypress Semiconductor Securities Litigation</u>, No. C-92-20048 RPA (PVT), 1995 WL 241434, at *1 (N.D. Cal. Apr. 20, 1995), for example, considered dueling notices submitted by the plaintiff and defendant to notify class members of their opportunity to opt-out of a recently certified class. The court found the plaintiff's proposed description of the litigation

---

[2]   When adding the so-called "plain language" requirement to Rule 23 in 2003, the Advisory Committee noted: "The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with class members."

and the claims asserted to be "far too lengthy and detailed."  Id. at 1.  The court stated instead that a "concise summary of the pending litigation and the claims asserted is sufficient for purposes of both due process and Rule 23(c)(2)."  Id. (emphasis added).  That was especially true given that -- as here -- the class in Cypress Semiconductor was not a settlement class, where such detail would "help each class member to make a rational judgment as to whether he should 'opt out' of the settlement agreement."  Id.  Unlike that situation, "a class member does not need such detail to make the decision to 'opt out' of a class action lawsuit."  Id.  The court ultimately drafted a one-paragraph description of the litigation for the class notice that summarized plaintiff's claims and defendant's denials.  Id. at 2.

Similarly, in the recent decision of Adoma v. University of Phoenix, Inc., 2010 WL 4054109, at *1 (E.D. Cal. Oct. 15, 2010), plaintiffs filed a class action against the University of Phoenix alleging violations of state and federal labor laws.  Following certification of a class, the plaintiffs filed a motion for approval of their proposed 17-page class notice.  Id. at *2.  The defendants opposed the motion, in part, because the plaintiffs' proposed class notice was confusing and misleading, and the court agreed that a proposed class notice may be rejected as "too lengthy and detailed."  Id.  Even though the defendants did not always provide alternate proposed language (unlike here; see below), the court did not hesitate to revise the notice "to meet the clear, concise, and neutral standards" required by Rule 23.  Id.  In particular, the court found that the plaintiffs' descriptions of the court's findings and the defendants' defenses required clarification.  Id. at *3.

The Court's intervention is also required here.  Conseco Life's proposal conveys the same basic points as Plaintiffs' notice, but is shorter and easier to understand.  It borrows

closely from what Plaintiffs have already drafted in their "summary," while adding Conseco Life's position to balance the (previously one-sided) presentation:

> **What are Plaintiffs' claims against Conseco?**
>
> Plaintiffs Cedric Brady, Charles Hovden, Marion Hovden, Eugene Kreps, John McNamara, Hisaji Sakai and Bill W. McFarland are LifeTrend policyholders who contend that Conseco has implemented changes to the administration of its LifeTrend 3 and LifeTrend 4 life insurance Policies that violate the Policies' terms and have caused and will continue to cause significant improper reductions in policyholders' insurance benefits and investment benefits. Conseco denies Plaintiffs' allegations, and there has been no determination by the Court concerning the merits of Plaintiffs' allegations.
>
> The Plaintiffs have made the following allegations. Each is disputed by Conseco, and Court has not ruled on the merit of any of them:
>
> - Plaintiffs allege that Conseco is charging annual premiums that should not be charged to most policyholders because the premiums are improper under the Policies' Optional Premium Payment Provision or "vanish" provision.
>
>   → Conseco disputes this claim. Conseco asserts that from now forward premium will be required only to the extent necessary and to cover the expense fee and the cost of insurance fee, both of which are expressly permitted by the contract, and also by the Regulatory Settlement.
>
> - Plaintiffs allege that Conseco is imposing monthly expense charges that do not correspond to Conseco's actual expenses, in violation of several policy provisions.
>
>   → Conseco disputes this claim. Conseco asserts that going-forward expense charges are expressly permitted by the policies, and also by the Regulatory Settlement.
>
> - Plaintiffs allege that Conseco has increased cost-of-insurance deductions even though the factor that governs cost of insurance – mortality – has actually gone down.
>
>   → Conseco disputes this claim. Conseco asserts that going-forward cost of insurance charges are expressly permitted by the policies, and by the Regulatory Settlement.
>
> - Plaintiffs allege that Conseco's various administrative changes are improperly diluting the 4.5 % interest rate guaranteed under the Policies.
>
>   → Conseco disputes this claim. Conseco asserts that the steps it is taking are expressly permitted by the policies, and by the Regulatory Settlement.
>
> - Plaintiffs allege that Conseco is passing on to its policyholders financial losses that Conseco has incurred, even though the Policies' "Non-Participating" provisions preclude Conseco from seeking to recover its losses from policyholders.

> → Conseco disputes this claim.  Conseco asserts that the steps it is taking are not a recoupment of prior financial losses, are expressly permitted by the policies, and are expressly permitted by the Regulatory Settlement.

(See Appendix B, which sets forth Conseco Life's proposed description in full.)

This one-page description accurately conveys in a succinct fashion both the issues in dispute and the parties' positions, and is even more detailed than the description the Court found acceptable in Cypress Semiconductor.  In any event, the class notice is only meant to be a "concise summary" of the action, and additional information about the case is readily available to any policyholder who wants it.  For example, the Proposed Class Notice makes clear that Plaintiffs' complaint, the parties' class certification briefs, the Class Certification Order and other "important documents" will be available on the administrator's publicly-accessible website. (Proposed Class Notice at 15.)  The Proposed Class Notice also provides a toll-free number for policyholder questions, and the phone numbers of Plaintiffs' lawyers.  The Court should not be concerned that policyholders who actually want detailed information about the lawsuit, Plaintiffs' claims or Conseco Life's defenses will not be able to obtain it.

Conseco Life respectfully suggests that the Court undertake a side-by-side review of Appendices A and B from the perspective of an uninformed class member to determine which description is most appropriate for a class-wide mailing.

## CONCLUSION

For all the foregoing reasons, Conseco Life respectfully requests that the Court (i) issue an Order on Conseco Life's motion concerning the regulatory release and require the class notice to conform thereto; and (ii) adopt Conseco Life's revisions to the Proposed Class Notice as set forth above and at Appendix B.

Dated:  November 18, 2010

Respectfully submitted,

    /s/ James R. Carroll
RAOUL D. KENNEDY (State Bar No. 40892)
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: Raoul.Kennedy@skadden.com

JAMES R. CARROLL (*Pro Hac Vice*)
DAVID S. CLANCY (*Pro Hac Vice*)
CHRISTOPHER A. LISY (*Pro Hac Vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Email: James.Carroll@skadden.com
Email: David.Clancy@skadden.com
Email: Christopher.Lisy@skadden.com

Attorneys for Defendant
Conseco Life Insurance Company

# APPENDIX A

## *Plaintiffs' Proposed Description (Docket No. 121-1)*

**What are Plaintiffs' claims against Conseco?**

Plaintiffs Cedric Brady, Charles Hovden, Marion Hovden, Eugene Kreps, John McNamara, Hisaji Sakai and Bill W. McFarland are LifeTrend policyholders who contend that Conseco has implemented changes to the administration of its LifeTrend 3 and LifeTrend 4 life insurance Policies that violate the Policies' terms and have caused and will continue to cause significant improper reductions in policyholders' insurance benefits and investment benefits. Conseco denies Plaintiffs' allegations, and there has been no determination by the Court concerning the merits of Plaintiffs' allegations.

The following description of Plaintiffs' allegations was written by Plaintiffs.

### a. Summary of Plaintiffs' allegations

Plaintiffs allege that:

- Conseco is charging annual premiums that should not be charged to most policyholders because the premiums are improper under the Policies' Optional Premium Payment Provision (the "OPP Provision," which is sometimes referred to informally as the "vanishing premium provision");

- Conseco is imposing monthly expense charges that do not correspond to Conseco's actual expenses, in violation of several Policy provisions.

- Conseco has increased cost-of-insurance deductions even though the factor that governs cost of insurance – mortality – has actually gone down.

- Conseco's various administrative changes are improperly diluting the 4.5% interest rate guaranteed under the Policies.

- Conseco is passing on to its policyholders financial losses that Conseco has incurred, even though the Policies' "Non-Participating" provisions preclude Conseco from seeking to recover its losses from policyholders.

Defendant disagrees with Plaintiffs' allegations and contends that the premium charges and expense and cost-of-insurance charges are authorized under the Policies. The Court has not yet determined which side is correct.

### b. Additional Information about Plaintiffs' Allegations

The Policies were issued in the 1980's and 1990's by Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company, which later became Conseco. Over 9,700 LifeTrend 3 and LifeTrend 4 Policies were issued.

According to Plaintiffs, the Policies provide that the policyholder must pay a stated annual premium, subject to an option to cease paying premiums after five years pursuant

to the Policy's OPP Provision (discussed below). The premiums are deposited into an "accumulation account," which is supposed to accrue interest at a minimum guaranteed rate of 4.5 %. Policyholders are permitted to take out loans against the balance of their accumulation accounts. A policyholder can choose at any time to surrender the policy and receive the balance of the accumulation account, minus a set "surrender charge" and any indebtedness. The Policies also give Conseco the right to deduct monthly expense and cost-of-insurance charges from the accumulation accounts, subject to certain limitations stated in the Policies. The Policies bar Conseco from imposing premiums or deducting expense or cost-of-insurance charges to make up for past losses.

### i. Allegedly Improper Annual Premiums

Plaintiffs allege that each Policy's OPP Provision allows the policyholder to stop paying annual premiums after five years as long as the amount of money in the policy's accumulation account exceeds the sum of the "Guaranteed Cash Value" of the policy plus the applicable surrender charge and any indebtedness. If the Policy becomes "underfunded," meaning that the account balance falls below that threshold, then Conseco can resume charging premiums.

Plaintiffs and Conseco disagree over the proper method for determining whether a new premium may be charged under the OPP Provision. According to Plaintiffs, if Conseco applied the formula properly, the company would seek premiums from very few policyholders. Plaintiffs note that for many years Conseco sent its policyholders annual statements confirming Plaintiffs' calculations under the OPP formula as well as the fact that no premiums were due. Conseco contends that it has applied the formula properly and that Plaintiffs misconstrue the annual statements.

Each Policy contains a "Guaranteed Cash Value" table (or "GCV" table) listing minimum amounts that Conseco promises to pay the policyholder if the Policy is surrendered. The amounts listed on the GCV table vary over time and depend on the total premiums paid, as well as the number of years that the policy has been in effect. The table showing the policyholder's GCV states, "[t]his table presumes that the insured pays the full annual premium shown on the preceding page each year." Plaintiffs contend this language means that once a policyholder has taken advantage of the OPP provision, the values set forth in the Table no longer apply, and the GCV is $0. Under Plaintiffs' interpretation of the contract, after a policyholder has entered the OPP program and stopped paying premiums, the GCV no longer figures into the calculation of whether the Policy has become underfunded such that premiums may be charged again. Plaintiffs contend that, prior to 2008, Conseco routinely sent notices to OPP participants correctly stating that the GCV of their policies was $0.

Conseco contends that it did not charge premiums for many years due to an "administrative error." According to Conseco, the company decided to correct its administrative error in 2008, by which time Conseco claimed that most LifeTrend 3 and LifeTrend 4 policyholders owed premiums because their accounts allegedly were underfunded.

In October 2008, nearly every member of the Class received a letter from Conseco stating that their accounts were underfunded and that additional premiums were owed (the "October 2008 Letter"). Plaintiffs contend that Conseco used the GCV set forth in the Table when preparing the October 2008 Letter, and that Conseco did not use a GCV of $0, even for policyholders who had been on OPP status for years and had received numerous annual statements listing their GCVs as $0.

Plaintiffs contend that Conseco is continuing to improperly calculate underfunding and is sending out premium-due notices based on the GCV table, rather than using a GCV of $0. Plaintiffs contend that Conseco's actions will result in many policyholders being asked to pay annual premiums when they are actually still eligible to take advantage of the OPP Provision. Conseco contends that it is complying with the contract terms because, according to Conseco, the GCV values set forth in the table still should apply for the purpose of calculating OPP eligibility.

### ii. Allegedly Improper Expense Charges

The Policies specified that expense charges could never exceed $5 per month. Prior to 2010, Conseco never charged above $2.50 in monthly expense charges. However, Conseco announced in the October 2008 Letter that it intended to raise monthly expense charges to $5 per month, and Conseco is now going forward with that increase. Plaintiffs allege that the increased expense charges are improper because they do not correspond to Conseco's actual expenses, while Conseco contends that the expense charges are permitted because they do not exceed the maximums specified in the Policies.

### iii. Allegedly Improper Cost-of-Insurance Deductions

Under the Policies, cost-of-insurance charges are calculated according to a formula that is based on mortality rates. Plaintiffs and Conseco disagree on how the calculations should be made. In Conseco's October 2008 Letter, the company announced substantial increases in cost-of-insurance deductions. Plaintiffs allege that the increased cost-of-insurance deductions are improper because, among other reasons, mortality has declined during the relevant time period. Conseco argues that Conseco is entitled to increase cost-of-insurance deductions under the relevant Policy language.

### iv. Alleged Dilution of the Guaranteed 4.5 % Interest Rate

Plaintiffs contend that the foregoing expense and cost-of-insurance charges are improperly diluting the 4.5% interest rate guaranteed under the Policies. Conseco disagrees with Plaintiffs' position, contending that the charges are authorized by the Policies.

### v. Allegedly Improper Passing-on of Financial Losses to Policyholders

Plaintiffs also allege that the increase in monthly expense and cost-of-insurance charges constitute a breach of the policies' "Non-Participating" provision, which provides that "[a]ny premium or factor changes are determined and redetermined prospectively," and that Conseco "will not recoup prior losses, if any, by means of premium or factor changes." Plaintiffs contend that by increasing monthly deductions, Conseco is impermissibly attempting to shift the cost of its past losses onto its policyholders. Conseco disagrees with Plaintiffs' position, contending that the increases are not intended to make up for past losses.

# APPENDIX B

## *Conseco Life's Proposed Revision*

**What are Plaintiffs' claims against Conseco?**

Plaintiffs Cedric Brady, Charles Hovden, Marion Hovden, Eugene Kreps, John McNamara, Hisaji Sakai and Bill W. McFarland are LifeTrend policyholders who contend that Conseco has implemented changes to the administration of its LifeTrend 3 and LifeTrend 4 life insurance Policies that violate the Policies' terms and have caused and will continue to cause significant improper reductions in policyholders' insurance benefits and investment benefits. Conseco denies Plaintiffs' allegations, and there has been no determination by the Court concerning the merits of Plaintiffs' allegations.

The Plaintiffs have made the following allegations. Each is disputed by Conseco, and Court has not ruled on the merit of any of them:

- Plaintiffs allege that Conseco is charging annual premiums that should not be charged to most policyholders because the premiums are improper under the Policies' Optional Premium Payment Provision or "vanish" provision.

    → Conseco disputes this claim. Conseco asserts that from now forward premium will be required only to the extent necessary and to cover the expense fee and the cost of insurance fee, both of which are expressly permitted by the contract, and also by the Regulatory Settlement.

- Plaintiffs allege that Conseco is imposing monthly expense charges that do not correspond to Conseco's actual expenses, in violation of several policy provisions.

    → Conseco disputes this claim. Conseco asserts that going-forward expense charges are expressly permitted by the policies, and also by the Regulatory Settlement.

- Plaintiffs allege that Conseco has increased cost-of-insurance deductions even though the factor that governs cost of insurance – mortality – has actually gone down.

    → Conseco disputes this claim. Conseco asserts that going-forward cost of insurance charges are expressly permitted by the policies, and by the Regulatory Settlement.

- Plaintiffs allege that Conseco's various administrative changes are improperly diluting the 4.5 % interest rate guaranteed under the Policies.

    → Conseco disputes this claim. Conseco asserts that the steps it is taking are expressly permitted by the policies, and by the Regulatory Settlement.

- Plaintiffs allege that Conseco is passing on to its policyholders financial losses that Conseco has incurred, even though the Policies' "Non-Participating" provisions preclude Conseco from seeking to recover its losses from policyholders.

    → Conseco disputes this claim. Conseco asserts that the steps it is taking are not a recoupment of prior financial losses, are expressly permitted by the policies, and are expressly permitted by the Regulatory Settlement.

**CERTIFICATE OF SERVICE**

I, James R. Carroll, hereby certify that the foregoing document has been filed on behalf of Conseco Life Insurance Company on November 18, 2010 through the ECF filing system.

I further certify that a copy of the foregoing document is being served by first class mail on November 18, 2010 upon those counsel listed below not registered on the ECF filing system:

> Michael J. Pucillo
> BERMAN DeVALERIO
> 4280 Professional Center Drive
> Suite 350
> Palm Beach Gardens, FL 33410

Dated:  November 18, 2010

Respectfully submitted,

      /s/ James R. Carroll
RAOUL D. KENNEDY
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, California 94111
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: Raoul.Kennedy@skadden.com

JAMES R. CARROLL (*Pro Hac Vice*)
DAVID S. CLANCY (*Pro Hac Vice*)
CHRISTOPHER A. LISY (*Pro Hac Vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Email:  James.Carroll@skadden.com
Email:  David.Clancy@skadden.com
Email: Christopher.Lisy@skadden.com

Attorneys for Defendant
Conseco Life Insurance Company