UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CONSECO LIFE INSURANCE CO. LIFE TREND INSURANCE MARKETING AND SALES PRACTICE LITigation<br><br>_____/ | No. C-10-2124 SI (EMC)<br><br>**ORDER RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO THE REGULATORY SETTLEMENT**<br><br>**(Docket No. 140)** |

A.  Background

Plaintiffs allege claims for breach of contract and declaratory judgment.  According to Plaintiffs, Conseco recently changed the manner in which it administers its LifeTrend 3 and 4 policies (the "Policies") in ways that violate several Policy provisions to the detriment of policyholders.

Specifically, Plaintiffs allege that:  (1) Conseco is charging annual premiums that should not be charged to most policyholders because the premiums are improper under the Policies' Optional Premium Payment Provision (the "OPP Provision," which is sometimes referred to informally as the "vanishing premium provision"); (2) Conseco is imposing monthly expense charges that do not correspond to Conseco's actual expenses, in violation of several Policy provisions; (3) Conseco has increased cost-of-insurance deductions even though the factor that governs cost of insurance – mortality – has actually gone down; (4) Conseco's various administrative changes are improperly diluting the 4.5% interest rate guaranteed under the Policies; and (5) Conseco is passing on to its policyholders financial losses that Conseco has incurred, even though the Policies'

"Non-Participating" provisions preclude Conseco from seeking to recover its losses from policyholders.

Plaintiffs sued Conseco in 2008, shortly after Conseco announced policy administration changes. According to Plaintiffs, in October 2008, Conseco sent a letter to policyholders (the "October 2008 Letter"). The October 2008 Letter stated the company was going to start demanding "shortfall payments" because annual premiums should have been paid by policyholders in prior years but had not been charged previously due to an alleged "administrative error." Conseco disclosed other changes, including a new method for calculating premium payment obligations, increased "expense charges," and increased deductions for "cost of insurance."

In December 2008, in response to demands from various state regulators, Conseco issued another letter to policyholders that "suspended" its request for shortfall payments, its plans to recalculate premium obligations, and its plans to increase expense charges and cost-of-insurance deductions. Negotiating with the state regulators ensued. In June 2010, Conseco negotiated the Regulatory Settlement with the five lead regulators. Under the Regulatory Settlement, some of the administrative changes announced in Conseco's October 2008 Letter were permitted to go into effect.

According to Plaintiffs, Conseco disputes Plaintiffs' breach-of-contract allegations, partly because the regulators permitted the conduct at issue.

B.  <u>The Parties' Dispute Over Documents Relating to the Regulatory Settlement</u>

Plaintiffs seek documents relating to the regulatory proceedings. For instance, Document Request No. 10 requests:

> All Documents Relating to investigations, negotiations, and/or regulatory proceedings with any governmental entity, including state insurance agencies, commissions or departments, Relating to the Administrative Error including without limitation: (a) Correspondence with any governmental entity Relating to the Administrative Error; (b) Documents provided to any governmental entity Relating to the Administrative Error; (c) Notes or Minutes from meetings with any governmental entity Relating to the Administrative Error.

Conseco argues that documents produced and generated in connection with the regulatory investigation and correspondence with the insurance commissioner are exempt from discovery under Indiana Code § 27-1-3.1-15, which states, in relevant part:

> All working papers, recorded information, documents, and copies thereof produced by, obtained by, or disclosed to the commissioner or any other person in the course of an examination under this chapter are confidential for purposes of Ind. Code § 5-14-3-4, are not subject to subpoena, and may not be made public by the commissioner or any other person, except to the extent provided in section 14 of this chapter.

The parties dispute whether this statute bars production of documents sought pursuant to Plaintiffs' request.

C.  <u>Legal Analysis</u>

Neither party has submitted any cases interpreting § 27-1-3.1-15. They conceded at the hearing before this Court that there appear to be none. Nor did the parties present any information on the legislative history of this statute. Nor has there been any published administrative regulation interpreting or implementing it. Accordingly, the Court, in interpreting the statute, must start with a clean slate.

The starting point of any statutory interpretation is the plain wording of the statute. *See Carcieri v. Salazar*, 129 S.Ct. 1058, 1063-1064 (2009); *Caminetti v. U.S.*, 242 U.S. 470, 485-486 (1917). In this case, the documents requested by Plaintiffs, if produced in response to a Fed. Rule of Civ. P. 34 under a protective order as Plaintiffs have offered, do not fall within the literal wording of the statute. The first sentence of the statute states that the documents of the nature sought here are "confidential for purposes of Ind. Code § 5-14-3-4." As the parties explained at the hearing herein, that referenced section is the state version of the Freedom of Information Act. That provision has no bearing on whether documents can be produced in discovery. *Cf. Kerr v. U.S. Dist. Court for Northern Dist. of California*, 511 F.2d 192, 197 (9th Cir. 1975) (holding that the exceptions to disclosure under FOIA was "not intended to create evidentiary privileges for civil discovery), *aff'd on other grounds*, 426 U.S. 394 (1976). The second sentence provides such documents are "not subject to subpoena." Here, no subpoena is involved, only inter-party discovery requests in the context of on-going litigation. The third sentence states that the documents "may not be made

3

1 public by the commissioner or any other person" except to the extent provided in another section
2 which neither side contends applies. Even if "any other person" were construed to apply to
3 Conseco, production of the documents under seal pursuant to a Rule 34 request would not make the
4 documents "public." Thus, the literal wording of the statute would not bar production here.

5 Conseco's assertion that the statute should be construed against its plain wording is not
6 persuasive for several reasons. First, it is doubtful whether the statute was intended to apply to
7 parties other than the commissioner or his or her employees and agents engaged in an examination
8 process. Conseco asks the Court to construe the statute as applying to not only the commissioner
9 but to private insurance companies subject to examination as well. At the hearing, in response to the
10 Court's questions, Conseco asserted that under this interpretation even if an insurance company
11 chose voluntarily to disclose documents it generated for the examination (*e.g.* as part of a press
12 strategy), it would be barred by the statute from doing so. The Court disagrees. The statute appears
13 to be directly solely at the commissioner and his or her employees and agents for several reasons.
14 First, the first sentence making the records confidential for Freedom of Information Act purposes is
15 obviously directed only at the governmental agencies covered by the act, not private insurance
16 companies. Second, the fact that the statute references only subpoenas and not inter-party discovery
17 also suggests the focus was on the commissioner who is more likely to receive a third-party
18 subpoena than an inter-party discovery request. Third, the prohibition against making public the
19 broad swath of documents described in the statute suggests it was not intended to apply to insurance
20 companies. Read literally, if "any other person" is interpreted to apply to insurance companies,
21 Conseco could not produce (as it has agreed to do here) pre-existing business documents predating
22 the commissioner's examination because such document would constitute documents "obtained by,
23 or disclosed to the commissioner or any other person in the course of an examination." The statute
24 makes no exception for pre-existing documents. As Conseco implicitly concedes in agreeing to
25 produce pre-existing documents, pre-existing documents do not normally acquire a privilege simply
26 because they are given *e.g.* to an attorney. *Cf. Fisher v. U.S.*, 425 U.S. 391, 403 (1956) (pre-existing
27 documents transferred from the client to the attorney not privileged); *U.S. v. Judson*, 322 F.2d 460,
28 463 (1963) (transfer of negotiable instruments from client to attorney not privileged). Applying the

full scope of the statute to private insurance companies would radically transform conventional principles of privilege making even pre-existing documents non-discoverable simply because copies were given to the commissioner. While it may make sense to enjoin the commissioner from disclosing all documents he or she acquires, it makes little sense to enjoin a private insurance company from doing so.

Second, as mentioned above, it is difficult to discern why the legislature would, as Conseco contends, prohibit insurance companies from voluntarily disclosing every document it generated in the course of an examination, even if the insurance company perceived it to be in its best interest (*e.g.* for either legal purpose or as a matter of public relations) to do so. In contrast, it is far more obvious why the legislature would want to prohibit the commissioner (and his or her employees and agents) from disclosing documents obtained from insurance companies in the course of an examination – a pledge of confidentiality by the commissioner will encourage cooperation and provide assurance that disclosure of sensitive information will not be disclosed without the insurance companies' consent.

Third, Conseco's attempt to construe the statute's prohibition against a "subpoena" to include inter-party discovery in litigation strains credulity. The legislature could have used a broader term such as "discovery" rather than "subpoena," but did not do so. There is good reason to distinguish the two. Subpoenas can be sought by a wide range of third parties for a plethora of reasons. They can be issued by administrative agencies and legislative bodies. In contrast, discovery, such as that in the federal courts, are limited by *e.g.* rules of relevance and considerations of burden and by the fact that discovery can only be propounded by a party to the litigation. Moreover, the discovery process between the parties can be closely managed by the court, in requiring *e.g.* production under a protective order. Subpoenas may not be as closely managed. The Court thus presumes that when the Indiana legislature used the word "subpoena" it did so knowingly.

///
///
///

5

In sum, the plain wording of the statute controls.  Conseco has failed to present any substantial or compelling reason (as a matter of legislative intent, policy or logic) why the Court should disregard that plain wording.  Section 27-1-3.1-15 does not bar production of the documents requested by Plaintiffs herein provided they are produced under a protective order.

This order disposes of Docket No. 140.

IT IS SO ORDERED.

Dated: March 15, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge