RAOUL D. KENNEDY (STATE BAR NO. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: Raoul.Kennedy@skadden.com

JAMES R. CARROLL (*PRO HAC VICE*)
DAVID S. CLANCY (*PRO HAC VICE*)
CHRISTOPHER A. LISY (*PRO HAC VICE*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Email: James.Carroll@skadden.com
Email: David.Clancy@skadden.com
Email: Christopher.Lisy@skadden.com

Attorneys for Defendant
CONSECO LIFE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CONSECO LIFE INSURANCE COMPANY LIFETREND INSURANCE SALES AND MARKETING LITIGATION | CASE NO.: 3:10-MD-02124-SI <br><br> ALL CASES <br><br> **1) CONSECO LIFE'S MOTION TO DECERTIFY THE CLASS; and** <br><br> **2) [PROPOSED] ORDER (lodged under separate cover).** <br><br> Date: August 5, 2011 <br> Time: 9:00 a.m. <br> Place: Courtroom 10 <br> Judge: The Honorable Susan Illston |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

NOTICE OF MOTION ................................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

THE APPLICABLE STANDARD ............................................................................................... 5

ARGUMENT ............................................................................................................................... 6

I. THE COURT CERTIFIED A NATIONWIDE
CLASS UNDER FED. R. CIV. P. 23(b)(2) AND
PERMITTED CLAIMS FOR INDIVIDUAL MONETARY RELIEF ................................ 6

    A. The Court's October 6, 2010 Order
Certified A Nationwide Class Under Rule 23(b)(2) .................................................. 6

    B. The Certification Order Expressly
Allows Plaintiffs To Pursue Monetary Damages ...................................................... 7

II. UNDER THE SUPREME COURT'S RECENT DUKES
DECISION, CLASSES CERTIFIED UNDER RULE 23(b)(2) MAY
NOT INCLUDE CLAIMS FOR INDIVIDUALIZED MONETARY DAMAGES ............. 8

    A. The Court Rejected The Ninth Circuit's Test, Upon
Which This Court Relied, That Monetary Claims May
Be Certified Under Rule 23(b)(2) So Long As They Do Not Predominate" ............. 8

    B. This Rule 23(b)(2) Class Includes Claims For
Individualized Monetary Damages, And Therefore Cannot Continue .................... 10

        (1) Plaintiffs Claim They Are Entitled To Potentially
"Hundreds Of Millions Of Dollars" In Damages ............................ 10

        (2) A Rule 23(b)(2) Class Is Inappropriate
For Class Members Who Surrendered Their Policies,
Because Their Only Relief Is The Individualized Monetary
Damages That The Supreme Court Held Are Unavailable .............. 12

III. DECERTIFICATION OF THE CLASS
WOULD NOT BE DISRUPTIVE, AND FORMER CLASS
MEMBERS COULD CONTINUE TO PURSUE INDIVIDUAL CLAIMS ...................... 13

CONCLUSION ........................................................................................................................... 14

i

MOTION TO DECERTIFY              CASE NO.: 3:10-MD-02124-SI

## TABLE OF AUTHORITIES

**Cases**                                                                                                                     **Page(s)**

Am. Pipe & Constr. Co. v. Utah,
    414 U.S. 538 (1974) .......................................................................................................... 14

Birmingham Steel Corp. v. Tenn. Valley Auth.,
    353 F.3d 1331 (11th Cir. 2003) ........................................................................................ 13

Dukes v. Wal-Mart Stores, Inc.,
    603 F.3d 571 (9th Cir. 2010) ............................................................................................. 7

General Tel. Co. of S.W. v. Falcon,
    457 U.S. 157 (1982) ........................................................................................................... 5

Grayson v. 7-Eleven, Inc.,
    No. 09–CV–1353-MMA, 2011 WL 2414378 (S.D. Cal. June 10, 2011) ........................... 5

Lanzarone v. Guardsmark Holdings, Inc.,
    No. 06-1136-RP (LAX), 2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) ........................... 13

O'Connor v. Boeing N. Am., Inc.,
    197 F.R.D. 404 (C.D. Cal. 2000) ....................................................................................... 5

Officers for Justice v. Civil Service Comm'n of City and County of San Francisco,
    688 F.2d 615 (9th Cir. 1982) ............................................................................................. 5

Rodriguez v. Gates,
    No. 99-13190-GAF (AJWX), 2002 WL 1162675 (C.D. Cal. May 30, 2002) .................. 7

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. ___, ___ S.Ct. ___ (2011) ......................................................................... passim

Zinser v. Accufix Research Inst., Inc.,
    253 F.3d 1180 (9th Cir. 2001) ........................................................................................... 7

**Statutes**

Fed. R. Civ. P. 23 ........................................................................................................... passim

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on August 5, 2011, or as soon thereafter as the Court may schedule the matter to be heard, Defendant Conseco Life Insurance Company ("Conseco Life") will move this Court pursuant to Fed. R. Civ. P. 23 for an order decertifying the Rule 23(b)(2) nationwide class certified by the Court on October 6, 2010.  This motion is based on this Notice of Motion, the attached Memorandum Of Points And Authorities, the accompanying Declaration Of Christopher A. Lisy ("Lisy Decl.") and all exhibits thereto.

## STATEMENT OF ISSUES TO BE DECIDED

The issue to be decided is whether the U.S. Supreme Court's recent decision in <u>Wal-Mart Stores, Inc. v. Dukes</u> permits the continued certification of the Rule 23(b)(2) nationwide class in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

The Supreme Court's June 20, 2011 reversal of the Ninth Circuit in <u>Wal-Mart Stores, Inc. v. Dukes</u> changed the landscape of large class actions like this one.  The implications of <u>Dukes</u>, potentially the most significant class action decision in years, mean that courts should revisit the propriety of certification decisions not yet finally adjudged, especially where, as here, a court's decision to certify a class was based on now-overruled precedent.

In October 2010, this Court certified this matter as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  The Court relied on the Ninth Circuit's "predominance" test in permitting certification under this rule for injunctive relief, even though Plaintiffs have asserted claims for individualized monetary damages for potentially "hundreds of millions of dollars."  Notwithstanding that demand and citing the Ninth Circuit's own <u>Dukes</u> decision in its analysis, the Court found that Plaintiffs' claims for money did not predominate over their claims for injunctive relief.  Therefore, the Court concluded, this action could proceed on a class basis despite Plaintiffs' mixed claims for injunctive and monetary relief.

The Supreme Court's decision in Dukes, however, expressly overruled the Ninth Circuit's predominance test.  A unanimous Court held that claims for individualized money damages like those at issue here may not be certified under Rule 23(b)(2).  In addition to that conclusion, the Court criticized the Ninth Circuit for allowing the Dukes case to proceed where, as is true here, certain class members lacked standing to pursue injunctive relief and may have seen their class representatives exchange potentially valid individual claims for money for certification under Rule 23(b)(2).

The Supreme Court's reasoning and holding in Dukes has a direct effect on the certified class here.  Because a certified class must continue to meet the requirements of Rule 23 up to final judgment, the Court has discretion to, and indeed should, decertify a class that does not continue to meet those requirements.  In light of the Supreme Court's Dukes decision explaining the contours of Rule 23(b)(2), this action cannot continue in its current form.

While Plaintiffs will resist decertification, the class has already been defined and identified, and it is a simple mechanical process to send notice of the decertification to each class member.  Former class members will be free, if they desire, to bring individual claims against Conseco Life -- including for individual money damages, which they cannot now assert in this action -- in an appropriate forum of their choosing.

**STATEMENT OF FACTS**

This multidistrict, nationwide class action involves a challenge by holders of "Lifetrend 3" and "Lifetrend 4" life insurance policies administered by Conseco Life.  (Class Certification Order dated October 6, 2010, Docket No. 111 ("Order") at 2.)  The policies were originally issued by Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company and were offered for sale in the 1980s and into the 1990s.  (Id.)

The Lifetrend policies provided for a stated annual premium to be paid by the policyholder into an "accumulation account," which would accrue a minimum guaranteed interest rate.  (Id.)  Monthly "cost of insurance" fees and "expense" charges were deducted from

the accumulation accounts. (Id.) Policyholders were also permitted to take out loans against the balance of their accumulation accounts. (Id.) The combined effect of these provisions is that the balance of a policyholder's accumulation account would change over time as a result of any loans taken out, monthly deductions, the accumulation of interest and the payment of premiums. (Id. at 2-3.)

Each Lifetrend policy contained a term known as the Optional Premium Payment Provision ("OPP"), which provided that a policyholder could choose to reduce or stop paying annual premiums after five years so long as the amount of money in his or her accumulation account met a specified threshold. (Order at 3.) If the policy became "underfunded," meaning that the account balance failed to meet this threshold, the policyholder would need to resume making premium payments to retain his or her benefits. (Id.) A policyholder could, of course, choose to continue paying premiums regularly even after the fifth year to benefit from the interest that would accrue on the accumulation account balance. (Id.)

Many policyholders chose the OPP option, and, over time, many policyholders' accumulation account values dropped below the policy-specified benchmark. Due to an administrative error, Conseco Life did not contemporaneously send a special notice of this underfunding. (Id. at 3-4.) In late 2008, Conseco Life notified policyholders of the situation and informed them that it was engaged in communication with state insurance regulators, who had commenced an investigation as a result of these late 2008 notifications with policyholders. (Id.) That investigation ultimately led to a settlement with over 45 state insurance regulators in 2010. (Id. at 4; see generally Regulatory Settlement Agreement (Docket No. 50).)

Against this background, Plaintiffs constructed their case to include two material parts: (1) a challenge concerning premiums and (2) a challenge concerning fees.

1.   *The Premium Challenge*

Plaintiffs contend that Conseco Life is improperly administering the policies with respect to collection of premiums. Specifically, they contend that Conseco Life is wrong in its method of determining whether a policyholder is "underfunded" because Conseco Life purportedly

3

deems some policyholders underfunded before they are actually underfunded.  (See, e.g., Plaintiffs' Consolidated Reply In Support of Plaintiffs' Motions To Compel (Docket No. 163) ("Motion to Compel Reply") at 3-4; Plaintiffs' Motion for Approval of Class Notice (Docket No. 121) ("Class Notice Brief") at 4.)  While it is true that Conseco Life mistakenly failed to collect premiums for many years -- Conseco Life's systems failed to recognize when a policy dropped below the threshold for premium-payment obligations, i.e., when the policy became "underfunded" -- a crucial term of Conseco Life's settlement with the state insurance regulators was "Enhanced Continuation of Insurance," a policy endorsement under which an underfunded policyholder need not pay the amount of any underfunding.  (See Declaration Of Frank Scuglik (Docket No. 97) ("First Scuglik Decl.") at ¶ 16, filed with Conseco Life's Opposition To Plaintiffs' Amended Motion For Class Certification (Docket No. 95) ("Class Cert. Opp."); Class Cert. Opp. at 14.)  Thus, under the Regulatory Settlement, Conseco Life waived those uncollected premiums and is no longer seeking to collect them.  (See First Scuglik Decl. at ¶ 13; Class Cert. Opp. at 9-10.)

    2. *The Fee Challenge*

    Plaintiffs also assert that Conseco Life's going-forward collection of fees (the "cost-of-insurance" fee and the "expense charge") are improper.  (See, e.g., Motion to Compel Reply at 1-4; Class Notice Brief at 4.)

    There is little dispute that the fees are contractually permitted by the policies and that, though it could have, Conseco Life did not charge these fees for many years -- a massive discretionary benefit conferred on policyholders.  (Class Cert. Opp. at 15-16.)  Now, with the approval of over 45 state insurance regulators and consistent with the Lifetrend policies, Conseco Life has resumed charging these fees at certain approved levels on a going-forward basis.  (Regulatory Settlement Agreement at ¶¶ 56-61.)  The policies allow for them, and always did.

    Plaintiffs counter by arguing that the fees are contractually barred because there had been no decline in mortality experience (which purportedly would have affected the cost of insurance fee), and because the fees are imposed for the improper purpose of "recouping" prior investment

4

MOTION TO DECERTIFY      CASE NO.: 3:10-MD-02124-SI

losses (in other words, that Conseco made a poor business decision in either relieving policyholders of those fees for many years, or in other investments).  (See, e.g., Docket No. 76 at 16. )  In other words, Plaintiffs say that the main disagreements between the parties "are about the size and basis for various fees, not Conseco's abstract right to charge some fees in some amounts."  (Motion to Compel Reply at 4.)  Conseco Life of course disagrees that its fees calculation, which was approved by the state insurance regulators, is somehow improper.  In any event, the assessment of those fees has only commenced very recently (since the implementation of the June 2010 Regulatory Settlement Agreement), and there is no large sum of historically-collected fees that Plaintiffs can seek to disgorge.  This has not, however, prevented Plaintiffs from asserting that "hundreds of millions of dollars" of damages are in dispute.

## THE APPLICABLE STANDARD

An order granting class certification is provisional, and may be altered or amended at any time up to final judgment.  See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); General Tel. Co. of S.W. v. Falcon, 457 U.S. 157, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); Officers for Justice v. Civil Service Comm'n of City and County of San Francisco, 688 F.2d 615, 633 (9th Cir. 1982) ("before entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative").

The standards used to determine whether to decertify a class are the same as the requirements to certify a class; namely, whether the requirements of Rule 23 are met.  See, e.g., Grayson v. 7-Eleven, Inc., No. 09–CV–1353 MMA, 2011 WL 2414378, *2 (S.D. Cal. June 10, 2011); O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D. Cal. 2000).

# ARGUMENT

## I. THE COURT CERTIFIED A NATIONWIDE CLASS UNDER FED. R. CIV. P. 23(b)(2) AND PERMITTED CLAIMS FOR INDIVIDUAL MONETARY RELIEF

### A. The Court's October 6, 2010 Order Certified A Nationwide Class Under Rule 23(b)(2)

The Court's Order of October 6, 2010 granted in part and denied in part plaintiffs' motion for class certification. (Order at 1.)  The class was defined, in essence, as current or former Lifetrend policyholders who received (or may in the future receive) notification of premium or fee increases on their policies. (Id. at 20.)[1]

The Order is clear that the Court granted certification under Rule 23(b)(2), not Rule 23(b)(1) nor Rule 23(b)(3):

> Plaintiffs seek certification of the nationwide class under Rule 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

(Order at 15.)

> Because the Court finds that certification is appropriate in this case under Rule 23(b)(2), the superiority requirement [of Rule 23(b)(3)] does not apply.

(Id. at 17.)

> In sum, the Court concludes that plaintiffs satisfy each of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) . . . .

(Id.)

Conseco Life, of course, disputed that certification under Rule 23(b)(2) (or any other rule) was appropriate. (See Order at 15-16; see generally Class Cert. Opp.)

---

[1] By order on December 22, 2010, the Court created a sub-class consisting of policyholders who signed a release in connection with Conseco Life's Regulatory Settlement Agreement. (See Docket No. 138.)

B. **The Certification Order Expressly Allows Plaintiffs To Pursue Monetary Damages**

In certifying the Rule 23(b)(2) class, the Court also considered -- at Conseco Life's urging -- the propriety of Plaintiffs' claims for monetary damages. Conseco Life's opposition papers detailed how a major thrust of Plaintiffs' lawsuit was individualized money damages, including for perhaps "hundreds of millions of dollars." (Order at 16; see generally Class Cert. Opp.) Conseco argued that the nature of plaintiffs' monetary requests sharply undermined their request for class treatment, especially under Rule 23(b)(2), and cited Ninth Circuit case law including Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1191 n.7 (9th Cir. 2001) (denying class certification and noting that the fact that each class member individually claimed $50,000 in damages, exclusive of punitive damages, suggesting that individual claims might "economically and reasonably" be pursued individually) and Rodriguez v. Gates, No. 99-13190-GAF (AJWX), 2002 WL 1162675 (C.D. Cal. May 30, 2002) (settlement of lawsuits for "substantial sums" suggests sufficient incentive for putative class members to file their own lawsuits).

However, the Court rejected Conseco's argument and permitted certification of a Rule 23(b)(2) class notwithstanding Plaintiffs' claims for monetary damages. In reaching this conclusion, the Court relied on the Ninth Circuit's now-reversed decision in Dukes, 603 F.3d 571 (9th Cir. 2010), to aid in its analysis:

> Put a different way, certification of a Rule 23(b)(2) class "is not appropriate where monetary relief is 'predominant' over injunctive relief or declaratory relief." Dukes, 603 F.3d at 617. In assessing the primary form of a relief sought in a putative class action, the court must look to the 'size and nature' of the monetary relief and weigh it against the equitable relief sought. Id. . . . Although plaintiffs also pray for contract damages, the Court finds that this request is minor in comparison to their demand for equitable relief, particularly in light of the prospective nature of the policies announced by the regulatory settlement.

(Order at 16.)

That reasoning, and the Ninth Circuit's "predominance test," has now been expressly overruled by the Supreme Court.

7

MOTION TO DECERTIFY                                                              CASE NO.: 3:10-MD-02124-SI

## II. UNDER THE SUPREME COURT'S RECENT <u>DUKES</u> DECISION, CLASSES CERTIFIED UNDER RULE 23(b)(2) MAY NOT INCLUDE CLAIMS FOR INDIVIDUALIZED MONETARY DAMAGES

### A. The Court Rejected The Ninth Circuit's Test, Upon Which This Court Relied, That Monetary Claims May Be Certified Under Rule 23(b)(2) So Long As They Do Not "Predominate"

On June 20, 2011, in <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. ___, ___ S.Ct. ___ (2011) (slip opinion ("slip op.") attached as Exhibit 1 to the Lisy Decl.), the United States Supreme Court issued its decision holding that discrimination claims on behalf of up to 1.5 million female Wal-Mart employees at 3,400 stores across the United States could not properly be pursued as a class action. The <u>Dukes</u> plaintiffs asserted claims against Wal-Mart for sex discrimination under Title VII of the Civil Rights Act of 1964, alleging that Wal-Mart's corporate culture, which purportedly fosters gender stereotyping and discrimination -- when combined with its policy of leaving decisions regarding pay and promotions to the discretion of local managers -- caused women employed in Wal-Mart stores to be paid less, and receive fewer promotions, than their male counterparts. Plaintiffs sought not only injunctive and declaratory relief, but also punitive damages and backpay.

The United States District Court for the Northern District of California certified an injunctive class under Rule 23(b)(2). The U.S. Court of Appeals for the Ninth Circuit subsequently affirmed, concluding that plaintiffs satisfied Rule 23(a)(2)'s requirement that the class raise "common questions of law or fact," and further holding that backpay claims could be certified as part of a 23(b)(2) class because they did not predominate over the requests for injunctive relief.

The Supreme Court reversed the Ninth Circuit's decision and held that class treatment was not appropriate for two independent reasons. <u>First</u>, a majority of the Court ruled that the plaintiffs failed to meet the minimum requirement of "commonality" for class certification under Rule 23(a). (<u>Dukes</u>, slip op. at 19.) <u>Second</u>, and of critical import here, a <u>unanimous</u> Court held that plaintiffs' claims for monetary damages -- such as backpay -- could not be certified under

Rule 23(b)(2), because claims for individualized relief are not incidental to injunctive relief:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a <u>different</u> injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

(<u>Dukes</u>, slip op. at 20 (emphasis original).)

The Court therefore rejected the Ninth Circuit's holding that the plaintiffs' backpay claims were appropriately certified because they did not "predominate" over the requested injunction:

> [R]espondents argue that their claims for backpay were appropriately certified as part of a class under Rule 23(b)(2) because those claims do not "predominate" over their requests for injunctive and declaratory relief. They rely upon the Advisory Committee's statement that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates <u>exclusively or predominantly</u> to money damages." 39 F.R.D. at 102 (emphasis added). The negative implication, they argue, is that it <u>does</u> extend to cases in which the appropriate final relief relates only partially and nonpredominantly to money damages. Of course it is the Rule itself, not the Advisory Committee's description of it, that governs. And a mere negative inference does not in our view suffice to establish a disposition that has no basis in the Rule's text, and that does obvious violence to the Rule's structural features.

(<u>Dukes</u>, slip op. at 23-24.)

In sum, according to the unanimous Court, it is "clear that individualized monetary claims belong in Rule 23(b)(3)." (<u>Dukes</u>, slip op. at 22.)

**B.     This Rule 23(b)(2) Class Includes Claims For
Individualized Monetary Damages, And Therefore Cannot Continue**

**(1)     Plaintiffs Claim They Are Entitled To Potentially
"Hundreds Of Millions Of Dollars" In Damages**

In light of Dukes, the class in this action cannot remain certified under Rule 23(b)(2) because there are claims for individualized monetary damages.

As the Court acknowledged in its Order, Plaintiffs are seeking "contract damages" (among other things), which the Court viewed at the time as distinct from and "minor in comparison to their demand for equitable relief." (Order at 16.) Yet, Plaintiffs have repeatedly asserted their demand for large money damages, including their claim to potentially "hundreds of millions of dollars in damages." (See, e.g., Docket 143 at 1.) For example, in reply briefing on a recent discovery dispute filed after the Court's Order, Plaintiffs claimed that "the dollars at issue in this case dwarf the cost of discovery" -- which Conseco had estimated in its opposition at millions of dollars. (Motion to Compel Reply at 6.)

This could not be a more obvious signal that Plaintiffs consider monetary damages to be a significant portion of their case, and one that is subject to individualized evidence and proof: by way of further example, in the same reply brief, Plaintiffs spent more than a page explaining their damages calculation for just plaintiff Cedric Brady for just the cost of insurance fee increase -- citing to at least two documents specific only to him -- and concluding by extrapolation that the aggregate fee increase for all class members would be over $20,000,000 for just a single year. (Id. at 6-8.)

Similarly, the preamble of the Brady Amended Complaint demands that Conseco "restore the value of Plaintiffs' accumulation accounts to the levels at which they would be properly funded," and Plaintiffs allege the following underfunding amounts, which they characterize as "substantial" and which differ among each named plaintiff:

| | |
|---|---|
| Eugene Kreps | $346,133.77 |
| John McNamara | $187,262.23 |
| Marion Hovden | $101,160.55 |
| Charles Hovden | $80,243.64 |
| Cedric Brady | $93,619.56 |
| Hisaji Sakai | $23,339.66 |
| Jean Sakai | $66,044.47 |

(Brady Am. Compl. ¶ 87.)

    Leaving no doubt about Plaintiffs' intent to seek monetary damages, the Brady Amended Complaint's "Prayer for Relief" then requests the following categories of damages: "compensatory damages," "actual damages," "a refund of all moneys Conseco acquired by means of its unlawful conduct," "treble damages," "punitive damages," "attorneys' fees," "interest" and "the costs of this suit." In fact, of the sixteen paragraphs in the Prayer for Relief, fully nine of them request money damages (and of the remaining seven, many are boilerplate requests to "[c]ertify the Class," "[e]nter a judgment" for plaintiffs and award "other relief"). (Brady Am. Compl. at pp. 49-50.) Similarly, plaintiff Bill McFarland's complaint contains a "Prayer For Relief" seeking "compensatory damages," "punitive damages," "interest," "attorneys' fees," "litigation expenses" and "costs." (McFarland Compl. at pp. 12-13.)

    These examples illustrate that each class member pays or paid Conseco Life different <u>amounts</u> for his or her life insurance policy, such as different premiums, different cost of insurance fees and different expense charges, and that Plaintiffs intend to recoup that. But it is also true that each class member pays or paid Conseco Life these different amounts for different <u>reasons</u>. Plaintiffs certainly will attempt to prove, as the named plaintiffs have testified at deposition, that class members paid Conseco Life money for "unauthorized" premiums or fees. Yet it is just as possible that any class member who paid Conseco Life money did so because, as the Court recognized in the Order, he wished to avail himself of the generous interest rate paid on contributions to his policy.[2] It is similarly possible that a class member paid Conseco Life premiums that were required outside of the OPP context. These are but two examples; there are

---

[2]  "A policyholder could, of course, choose to continue paying premiums regularly even after the fifth year in order to benefit from the interest that would accrue on his increased accumulation account balance." (Order at 3.)

MOTION TO DECERTIFY      CASE NO.: 3:10-MD-02124-SI

many other reasons why any individual class member would have paid money to Conseco Life that have nothing to do with any alleged breach of contract.

Individualized inquiry (and calculation) would be required to sort through all of these issues, making them inappropriate for class certification. As the <u>Dukes</u> court held, "contrary to the Ninth Circuit's view," a defendant "is entitled to individualized determinations" of each class member's eligibility for money damages.[3] (<u>Dukes</u>, slip op. at 26.)

**(2) A Rule 23(b)(2) Class Is Inappropriate For Class Members Who Surrendered Their Policies, Because Their Only Relief Is The Individualized Monetary Damages That The Supreme Court Held Are Unavailable**

As of the time of the briefing on class certification in 2010, more than one out of every five class members -- or 21% -- was no longer a Lifetrend policyholder, having since surrendered their policies.[4] (<u>See</u> First Scuglik Decl. at ¶ 13.) These class members lack standing to seek or benefit from injunctive relief and they are therefore inherently limited to individualized monetary damages, which are not available to them as class members in a Rule 23(b)(2) class. (<u>Dukes</u>, slip op. at 22.)

The Supreme Court was quite clear about this limitation of a 23(b)(2) class: over time, many class members left Wal-Mart's employ, and thus "lack[ed] standing to seek injunctive or

---

[3]   This problem is particularly stark where, as the Supreme Court recognized, class representatives (or their lawyers) may have exchanged potentially valid individual claims for money for the hope of a certification order for Rule 23(b)(2) injunctive relief. "Respondents' predominance test, moreover, creates perverse incentives for class representatives to place at risk potentially valid claims for monetary relief." (<u>Dukes</u>, slip op. at 24.)

This Court may recall that Conseco Life identified the existence of this "perverse incentive" during the class certification briefing. There, Conseco Life explained at length how the class representatives testified at deposition that their complaint against Conseco Life was that it breached a purported promise to policyholders that only five premium payments would be due on their Lifetrend policies. (<u>See</u> Class Cert. Opp. at 18-22.) At the class certification stage, however, Plaintiffs' counsel abandoned their clients' "vanish" theory because it made an unpersuasive case for certification. (<u>Id.</u>) This type of claim-splitting is precisely the type of situation that the Supreme Court foresaw and decided to restrain in <u>Dukes</u>.

[4]   This number likely has increased since the briefing on class certification, because additional policyholders may have surrendered their policies or died in the last year.

declaratory relief against its employment practices." (<u>Id.</u> at 25.) The Court criticized the Ninth Circuit for permitting the class to proceed with this inherent problem, because, among other issues, it would violate the text of the rule:

> As a consequence, even though the validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class <u>as a whole</u>," Rule 23(b)(2) (emphasis added), about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all.

<u>Id.</u> Therefore, in both <u>Dukes</u> and here, a Rule 23(b)(2) class was certified that could result in monetary damages to class members who are not entitled to injunctive relief. That is not permissible. By contrast, in <u>Lanzarone v. Guardsmark Holdings, Inc.</u>, No. 06-1136-RPLAX, 2006 WL 4393465, at *3 (C.D. Cal. Sept. 7, 2006), a case involving alleged wage-and-hour violations, the court correctly denied Rule 23(b)(2) certification because the plaintiff was a former employee, and therefore could not show a "credible threat that he [would] suffer the alleged harm again" in order to seek an injunction.

### III. DECERTIFICATION OF THE CLASS WOULD NOT BE DISRUPTIVE, AND FORMER CLASS MEMBERS COULD CONTINUE TO PURSUE INDIVIDUAL CLAIMS

Decertification of the class could be accomplished with a minimum of disruption to this proceeding. Once a court determines to decertify a class, it need only require that a notice be sent to all former class members informing them of their rights and of their option to pursue their own claims in independent proceedings. <u>See</u> <u>Birmingham Steel Corp. v. Tenn. Valley Auth.</u>, 353 F.3d 1331, 1339 (11th Cir. 2003) ("[O]nce a district court has decertified a class, it must ensure that notification of this action be sent to the class members, in order that the latter can be alerted that the statute of limitations has begun to run again on their individual claims"). Here, the class members have already been identified, and providing them with notice of decertification would be a simple mechanical exercise.

Moreover, former class members would continue to have the ability to seek relief by way of individual actions, because the statute of limitations on class members' claims has been tolled from the time the Plaintiffs commenced this class action on their behalf.  See Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974) (commencement of a class action suspends the statute of limitations as to all class members, regardless of whether members were active participants in the litigation or even aware of it).  Upon decertification, class members would be in the same procedural posture as they were on the date this action was commenced.  A notice of decertification could advise class members that if they have individual claims, they can bring them in any appropriate forum.

## CONCLUSION

For the foregoing reasons, Conseco Life respectfully requests that the Court decertify the Rule 23(b)(2) class and sub-class that it previously certified.

Dated:  July 1, 2011

Respectfully submitted,

/s/ James R. Carroll
RAOUL D. KENNEDY (State Bar No. 40892)
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: Raoul.Kennedy@skadden.com

JAMES R. CARROLL (*Pro Hac Vice*)
DAVID S. CLANCY (*Pro Hac Vice*)
CHRISTOPHER A. LISY (*Pro Hac Vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Email:  James.Carroll@skadden.com
Email:  David.Clancy@skadden.com
Email:  Christopher.Lisy@skadden.com

Attorneys for Defendant
Conseco Life Insurance Company