United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE CONSECO LIFE INSURANCE CO.
LIFE TREND INSURANCE MARKETING
AND SALES PRACTICE LITIGATION

_____/

No. C 10-02124 SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DECERTIFICATION**

On July 1, 2011, defendant filed a motion for decertification of the plaintiff class. Doc. 185. Plaintiffs filed an opposition on August 19, 2011, and defendant replied on September 16, 2011. A hearing was held October 28, 2011. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendant's motion for decertification.

**BACKGROUND**

This class action involves a challenge by current and former holders of certain life insurance policies administered by defendant Conseco Life Insurance Company ("Conseco"). The class challenges Conseco's implementation of a set of changes to the policies. The Court certified this class on October 6, 2010 pursuant to Federal Rule of Civil Procedure 23(b)(2). Doc. 111. On June 20, 2011, the Supreme Court of the United States decided *Wal-Mart v. Dukes*, overruling a Ninth Circuit opinion that this Court partially relied upon in its certification order. 131 S.Ct. 2541 (2011), *overruling Dukes v. Wal-Mart*, 603 F.3d 571 (9th Cir. 2010) (en banc). Shortly thereafter, defendant filed the instant motion to decertify the class pursuant to the Supreme Court's holding in *Dukes*.

## I. FACTUAL BACKGROUND

### A. The Policies

Plaintiffs are holders of life insurance policies known as the "LifeTrend 3" and "LifeTrend 4" policies. The policies were issued in the 1980s and 1990s by Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company, and are now administered by Conseco. The policies provided for a stated annual premium to be paid by the policyholder. See Brady Policy, Weisbrod Decl. Ex. 5, at 3. Policyholders paid into an "accumulation account" which would accrue a minimum guaranteed interest rate. Policyholders were permitted to take out loans against the balance of their accumulation accounts. A policyholder could choose at any time to surrender his policy and receive the balance of the accumulation account, minus a set "surrender charge." Additionally, monthly "cost of insurance" charges and "expense charges" were deducted from the accumulation accounts. The expense charge was a constant that could never exceed $5 per month. The cost of insurance charge was based on Conseco's expectations as to its future mortality experience (in other words, the number of death claims it expects to have to have to pay out). *Id.* at 10; Brady FAC ¶¶ 55-57. The combined effect of the above provisions was that the balance of a policyholder's accumulation account would change over time as a result of any loans taken out, monthly deductions, and the accumulation of interest.

In addition, each policy contained an Optional Premium Payment Provision ("OPP Provision"), which provided that the policyholder could choose to reduce or stop paying annual premiums after five years, so long as the amount of money in his accumulation account met or exceeded the guaranteed cash value (the "GCV") of the policy plus the applicable surrender charge and any indebtedness. *Id.* at 9. If the policy became "underfunded," meaning that the account balance failed to meet the GCV threshold, the policyholder would need to resume making premium payments in order to retain his benefits. A policyholder could also choose to continue paying premiums regularly even after the fifth year in order to benefit from the interest that would accrue on his increased accumulation account balance.

### B. The October 2008 Letter

Plaintiffs allege that, from the time they purchased their policies until 2008, Conseco sent yearly

2

notices stating that the policies were adequately funded and that no additional monthly fees were owed. Brady FAC ¶¶ 71, 76-77. In October 2008, however, Conseco sent a letter ("October 2008 Letter") to each member of the proposed class, announcing that their policies had become underfunded. *See* October 2008 Letter to Hovden, Weisbrod Decl. Ex. 1, at 3. The letter informed policyholders that Conseco planned to begin collecting increased cost of insurance and expense charges, and stated that the charges had risen because Conseco's "experience factors" had changed since the policies were originally sold. *Id.* at 1. The letter further informed the affected policyholders that they had three options for making up the shortfalls in their accumulation accounts. First, a policyholder could make an up-front payment to make up the shortfall, then resume paying premiums to ensure that his policy remained in full force. *Id.* at 3. Alternatively, a policyholder could refrain from paying off the shortfall, in which case his policy would go into "Continuation of Insurance." *Id.* at 2-3. After entering Continuation of Insurance, the policyholder could either choose to do nothing and let his policy terminate when its balance became insufficient to cover monthly deductions, or could make flexible premium payments until the balance exceeded the cash value of the policy, in which case the policy would go back into full force and could be maintained with additional premiums in the future. *Id.*

### C. The Regulatory Settlement

Several months after sending the October 2008 Letter, Conseco sent its policyholders a follow-up letter ("December 2008 Letter") stating that they should disregard the October 2008 Letter because Conseco had begun working with state insurance regulators to review Conseco's actions. See December 2008 Letter to Brady, Scuglik Decl. Ex. 20. On May 28, 2010, Conseco reached a settlement with the state regulators. Pursuant to the settlement, Conseco is required to follow a specific set of procedures in administering the policies. Furthermore, Conseco Life agreed not to demand that policyholders pay one-time shortfall payments. Ex. 4, Regulatory Settlement Agreement ("RSA") at CLIC 07604-88.

Plaintiffs allege that notwithstanding the Regulatory Settlement, "Conseco Life continues to apply the OPP Provision in the manner announced in the October 2008 Letter, resulting in most policyholders receiving annual premium notices." Pl.'s Opp. to Def.'s Mot. to Decertify Class ("Pl.'s

3

Opp.") at 6. They also contend that Conseco has increased monthly cost-of-insurance deductions and expense charges in breach of the policy terms. *Id.* As a result, plaintiffs sought certification to pursue a class action suit against Conseco. Plaintiffs contend that Conseco's policy changes amount to breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation.

## II.     Procedural History

### A.     Class Certification

On October 6, 2010, the Court certified the class pursuant to Rule 23(b)(2). The nationwide class was defined as:

> all persons in the United States who (1) own or owned a Conseco LifeTrend 3 or LifeTrend 4 Policy, and (2) have received since October 2008, or in the future may receive, pursuant to a settlement with state insurance regulators or otherwise, any of the following: (a) notice that an annual premium is due, notwithstanding such person's prior invocation of the Policy's Optional Premium Payment Provision ("OPP Provision"); (b) notice of increased expense charges under the Policy; or (c) notice of increased cost-of-insurance deductions under the Policy.

Class Certification Order at 20. The Court found that plaintiffs satisfied the four prerequisites set forth in Rule 23(a) for certification: numerosity, commonality, typicality, and adequacy. Class Cert. Order at 9-15. The Court then engaged in an analysis under 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Conseco challenged certification under 23(b)(2) on grounds that the class was insufficiently cohesive. However, as the Court noted, to meet the cohesiveness requirement, "[i]t is sufficient if defendant has adopted a pattern of activity that is likely to be the same as to all members of the class." Class Cert. Order at 15 (*citing* William W. Schwarzer, *Federal Civil Procedure Before Trial,* § 10:399 (2010)). The Court rejected Conseco's cohesiveness argument, finding that:

> There is no dispute that every member of the potential class held a LifeTrend policy with identical language, or that the regulatory settlement sets forth certain directives which will uniformly affect all class members. Conseco's proposed actions either amount to a breach of contract or they do not. Plaintiffs' breach

4

> of contract claim is amenable to uniform, classwide adjudication, and involves future actions which can be enjoined on a classwide basis.

Class Cert. Order at 15.

Conseco also contended that certification under Rule 23(b)(2) was inappropriate because plaintiffs' suit, they argued, primarily seeks money damages. Class Cert. Order at 15. At that time, prior to the Supreme Court's decision in *Dukes*, the Ninth Circuit used a predominance test in class certification analyses involving both declaratory or injunctive relief *and* monetary relief. Certification of 23(b)(2) classes seeking mixed remedies was appropriate unless the "monetary relief sought [was] 'predominant' over injunctive or declaratory relief." *Dukes v. Wal-Mart*, 603 F.3d 571, 617 (9th Cir. 2010). This Court found that was not the case with the instant class:

> In the First Amended Complaint filed in [these actions], plaintiffs specifically seek injunctive and declaratory relief. Although plaintiffs also pray for contract damages, the Court finds that this request is minor in comparison to their demand for equitable relief, particularly in light of the prospective nature of the policies announced by the regulatory settlement.

Class Cert. Order at 16 (citations omitted). The Court cited the Ninth Circuit's *Dukes* decision in rejecting Conseco's argument that the monetary damages sought predominated over the potential injunctive or declaratory relief. *Id.*

Despite the fact that the class was certified under 23(b)(2), because of the ambiguous nature of the effect of the regulatory settlement on the class litigation, the Court required (and the plaintiffs have since provided) notice and opt-out rights.

### B. *Wal-Mart v. Dukes*

On June 20, 2011, during the discovery period for this case, the Supreme Court decided *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011), overruling the Ninth Circuit. The case involved a Title VII action brought by a class of one and a half million current and former female Wal-Mart employees. *Id.* at 2547. The plaintiffs therein alleged that local Wal-Mart supervisors discriminated against women when exercising discretion over pay and promotion decisions. *Id.* The plaintiffs sought injunctive and declaratory relief, as well as monetary damages in the form of backpay. *Id.* The Supreme Court ruled that the district court erred in certifying the class under Ruler 23(b)(2) on two grounds. First, in a 5-4

5

decision, the Supreme Court ruled that the class failed to meet the commonality requirement of Rule 23(a)(2), finding that there was not "even a single common question." *Id.* at 2556. Second, in a holding in which all nine Justices joined, the Court held that claims for monetary relief cannot be certified under Rule 23(b)(2), "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief." *Id.* at 2557. The Court stressed that "claims for *individual* relief (like the backpay at issue) do not satisfy the Rule." *Id.* (emphasis in original).

The Court expressly rejected the Ninth Circuit's predominance test upon which this Court relied in its certification order. *Id.* The Supreme Court held that "mere 'predominance' of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections," e.g., the requirements that the plaintiffs establish the superiority of class adjudication, the predominance of common questions, and that they provide notice and opt-out opportunities. *Id.* Additionally, the Court expressed concern that the predominance test may create perverse incentives for class representatives to place at risk potentially valid claims for monetary relief in order to qualify for certification under (b)(2). *Id.* Finally, the Court noted that the predominance test would require the District Court to continually reevaluate the roster of class members, as former employees would no longer have standing to pursue injunctive or declaratory claims. *Id.*

While stripping claims for *individualized* monetary relief from the aegis of 23(b)(2) classes, *Wal-Mart* left open the possibility that some claims for monetary relief may still be permitted. *Id.* at 2557. The Court recognized, without approval or disapproval, the Fifth Circuit's test set forth in *Allison v. Citgo Petroleum*, 151 F.3d 402, 415 (5th. 1998). That test permits monetary relief that is "incidental to requested injunctive or declaratory relief," which it defined as "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* The *Wal-Mart* Court held that it need not decide whether the "incidental test" was consistent with Rule 23(b)(2), because the *Dukes* plaintiffs failed to meet that standard as well.

**C.      The Motion to Decertify**

Shortly after the Supreme Court decided *Dukes*, Conseco filed a motion to decertify the plaintiff class. Doc. 185; Def.'s Mot. to Decertify Class. Conseco argues that "a major thrust of Plaintiffs'

6

1 lawsuit [is] individualized money damages, including for perhaps 'hundreds of millions of dollars,'" and
2 that *Dukes* proscribes such claims from 23(b)(2) classes. *Id.* at 7. In their opposition, plaintiffs contend
3 that their monetary claims do not require "individualized determination" as that term was used by the
4 *Dukes* court; instead, their claims are sufficiently incidental to the declaratory and injunctive relief
5 sought to permit certification under Rule 23(b)(2). Doc. 212; Pl.'s Opp. at 3-4.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23(c)(1), an order certifying a class "may be altered or amended before final judgment." The party seeking decertification must show that the class no longer meets Rule 23's certification requirements. *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007). The standards used to determine whether to decertify a class are the same as the requirements to certify a class; namely, whether the requirements of Rule 23 are met. *See, e.g., Grayson v. 7-Eleven, Inc.*, 2011 WL 2414278, *2 (S.D.Ca. June 10, 2011). Doubts should be resolved in favor of certification. *Gonzales*, 489 F. Supp. at 1154.

## DISCUSSION

Conseco disputes the certification of the current class on two grounds. First, it argues that members of the class who are former policyholders, or "surrenderees," do not have standing to seek declaratory or injunctive relief. Second, Conseco argues that even current policyholders are improperly certified under (b)(2), as their claims for monetary damages would require individualized inquiry. The Court addresses these arguments in turn.

### I. Former Policyholders

In its October 6, 2010 class certification order, the Court included former policyholders, or "surrenderees," as members of the class. Doc. 111 (defining the class as "all persons in the United States who (1) own *or owned* a Conseco LifeTrend 3 or LifeTrend 4 Policy . . .") According to Conseco, as of the time of briefing on class certification in 2010, 21% of the classmembers were no

7

longer Lifetrend policyholders, having since surrendered their policies.[1] Def.'s Mot. at 12 (*citing* First Skuglik Decl. at ¶ 13.) This number likely has increased, Conseco argues, because additional policyholders may have surrendered their policies or died in the intervening year. *Id.*

In *Dukes*, the Supreme Court found that "those plaintiffs no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices." *Dukes*, 131 S.Ct. at 2559. One of the problems the Court found with the Ninth Circuit's predominance test was that the District Court would have to constantly reevaluate the roster of class members no longer employed. *Id.* As a former employee would have no need for prospective relief, monetary claims would *by definition* predominate over claims for injunctive or declaratory relief. "As a consequence, even though the validity of a (b)(2) class depends on whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*,' about half of the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all." *Id.* at 2560 (citing Fed. R. Civ. P. 23(b)(2)).

Conseco argues that the same problem presents itself here: classmembers who no longer own policies with Conseco lack standing to pursue declaratory or injunctive relief. Def.'s Mot. at 12. Plaintiffs contend that former policyholders do have standing, because "those former policyholders plainly have an interest in having [the improper] premiums, deductions, and charges declared invalid." Pl.'s Opp. at 29. The argument is that a declaration that Conseco improperly deducted fees and expenses would allow former policyholders to recoup losses from any surrender amounts improperly reduced by invalid fees. *See* Oct. 28, 2011 Hearing, 19:19-22. ("For the people that surrendered, it's the exact same declaration, how the policy should have operated. It does impact what was the surrender value they should have been paid as opposed to what they were paid.") Plaintiffs also argue that some former policyholders may be entitled to reinstatement if plaintiffs are successful on their declaratory and injunctive claims, because they will no longer "hav[e] to accept the costly administrative changes at issue." Pl.'s Opp. at 30.

While plaintiffs may be correct that former policyholders are owed damages due to deficient

---

[1] At oral argument, plaintiffs contended that the number of former policyholders in the class was still unknown. Whatever the number, the arguments pertaining to the surrenderees remain valid.

surrender values, such relief is inappropriate under Rule 23(b)(2). *Current* policyholders would directly benefit from declaratory and injunctive relief in that their policies would increase in value and future fees and expenses would be reduced; they might *also* receive monetary damages for past charges. Former policyholders, on the other hand, would only indirectly benefit in that they would recoup greater surrender values that may flow from the declaratory relief. Monetary claims for past behavior cannot be the sole justification for membership in a 23(b)(2) class post-*Dukes*. Were that allowed, all monetary claims could be wrapped in a demand for a declaration that the opposing party committed a wrong. *See Allison,* 151 F.3d at 415 ("[T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief.") The Supreme Court, in the unanimous portion of the *Dukes* holding, rejected such an expansive use of the (b)(2) class.

The Court also finds plaintiff's claim that some former policyholders still have standing because they may be entitled to reinstatement unpersuasive for two reasons. First, plaintiffs provide no evidence nor description as to how such reinstatements would occur. Second, such reinstatements would seemingly require the type of individualized inquiries prohibited by *Dukes* (and discussed in Section II *infra*).

In sum, the Court finds that the monetary relief sought by former policyholders is not incidental to declaratory or injunctive relief, and thus is barred by *Dukes*. The Court therefore GRANTS defendant's motion to decertify the class with respect to the former policyholders.

## II.  Current Policyholders

Conseco also seeks to decertify the remaining class of policyholders because, it argues, the damages they seek require individualized determinations of the type prohibited by *Dukes*. It argues that "a major thrust of Plaintiffs' lawsuit was individualized money damages, including for perhaps 'hundreds of millions of dollars.'" Conseco correctly points out that this Court relied upon the now defunct predominance test in its certification order. It argues that after *Dukes*, classes seeking monetary damages are no longer appropriately certified under Rule 23(b)(2). The Court will first analyze the "incidental test" described but not ruled upon in *Dukes*. The Court then turns to Conseco's claim

9

1 regarding the monetary damages sought.

### A. The "Incidental Test"

In *Dukes*, the Supreme Court discussed but did not explicitly adopt the Fifth Circuit's "incidental test." *Dukes*, 131 S.Ct. at 2560. In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998), the Fifth Circuit held that a (b)(2) class would permit the certification of monetary relief that is "incidental to requested injunctive or declaratory relief," which it defined as "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." According to the *Allison* court, such "incidental damage should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantial legal or factual issues, nor entail complex individualized determinations." *Id.* Numerous courts within the Ninth Circuit have since adopted the incidental test to determine proper certification under (b)(2). *See Delarosa v. Boiron*, 2011 WL 4389919 (C.D.Ca. Aug. 24, 2011) (Tucker, J.); *Aho v. AmericCredit Financial Services, Inc.*, 2011 WL 3047677 (S.D.Ca. Jul. 25, 2011) (Sabraw, J.) This Court also adopts the incidental test as the appropriate test for Conseco's motion for decertification of the current policyholders.

### B. Damages Sought by Current Policyholders

Conseco argues that "the question relevant to decertification is whether, if plaintiffs are able to establish liability, their theories of damages would require individualized inquiry, or whether damages could be calculated 'formulaically.' If it is the former, then the class should be decertified." Def.'s Reply at 2. By implication, if damages could be calculated formulaically, the class should remain certified under 23(b)(2). The Court agrees with this construction. *See Allison,* 151 F.3d at 415. ("[D]amages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.")

Therefore, whether plaintiffs satisfy 23(b)(2) depends on their theory of damages. Specifically, one question is whether plaintiffs seek recoupment of the premium payments made by classmembers

10

following the October 2008 letter. Plaintiffs argue that many classmembers were required to make premium payments in violation of their policies' OPP Provisions. Conseco convincingly argues that such repayment would require individualized inquiry:

> It is true some policyholders could have paid as a result of [the October 2008] correspondence. But it is equally possible that a policy holder paid premium to 'pay down' a loan on the policy – many policyholders have them – or to take advantage of the guaranteed 4.5% interest rate in an economy where such generous rates are hard to come by. Or the policyholder could have paid premium for more than one reason: perhaps some amount due to Conseco Life's correspondence, and some amount to pay down an outstanding loan. It would be impossible to know without adjudicating the policyholder's claimed *reason* for doing so (which Conseco life would be entitled to evaluate and contest).

Def.'s Reply at 4. At oral argument, defense counsel added that 1,500 class members have paid premium for the entire life of their policy; it would therefore be unreasonable to assume they are owed recoupment of their premium payments due to the policy changes. Oct. 28, 2011 Hearing, 9:10-14. In sum, Conseco argues, determinations as to *why* a classmember paid premiums would necessarily require individualized hearings.

The Court agrees with Conseco that if plaintiffs' theory of damages required return of premiums paid, there would necessarily be individualized inquiries of the type that fail the incidental test. However, at oral argument, the plaintiffs set forth a theory of damages that excluded the return of premium payments and clarified for the Court what the class is seeking. The primary inquiry post-*Dukes* for classes seeking monetary damages under 23(b)(2) is the theory of damages that the class seeks; the Court therefore cites plaintiffs' oral argument at length:

> Here's how the policies work: a person pays premium into an account. That account is the person's. It's the policyholder's. Conseco then starts extracting money out of the account in the form of cost of insurance and expense charges. So the damages to the person don't really hit when the person pays the premium. The damages to the person are hitting in full force when the person – when the company is extracting from whatever is in the account cost of insurance and expense charges out. It's analogous to a bank suddenly massively increasing charges on your savings account.
>
> So when your honor asks, are the damages when you pay the premium or not, well, that money still belongs to you when you've paid the premium. It's in your account. But when Conseco suddenly massively hikes up costs of insurance and expense charges, that money is going into Conseco's pocket and

11

> we say improperly.
>
> The increased premiums were announced in 2008 and implemented somewhat differently in 2010. So what started to happen in 2010 is all kinds of people got new bills, and they've paid premiums in many instances, some haven't, but uniformly through a standard formula money is being extracted from their accounts in the form of increased costs of insurance and increased expense charges. So Conseco did this massive revenue-generating effort by sending out the new premium notices, and then it's taking the money out through these other charges.

Oct. 28, 2011 Hearing, 24:18-25:18.

The plaintiffs, therefore, are seeking recoupment of the allegedly inflated costs of insurance and expense charges improperly deducted from the classmembers' accounts. Plaintiffs contend that these quantities are calculable, and are contained in a database maintained by Conseco known as the CK 4. Pl.'s Opp. at 27. Plaintiffs describe the CK 4 as including (1) accumulation account values; (2) premium payments; (3) cost-of-insurance deductions; (4) monthly expense charges; and (5) per-unit expense charges. Plaintiffs argue that "[u]sing the values from the CK 4 database fields, one can calculate the values for any improper premiums, deductions or fees lost by any particular policyholder." *Id.*

The Court agrees with plaintiffs that costs of insurance and expense charges are calculable through analysis of data and the use of formulas. Seeking return of wrongfully charged costs and fees of this sort will not require additional hearings to resolve the disparate merits of each individual's case; nor will it introduce "substantial legal or factual issues, nor entail complex individualized determinations." *Allison*, 151 F.3d at 415. It will simply entail "computation by means of objective standards" based on data in Conseco's records. *Id.* As a result, the return of the improper deductions would flow directly from the claims forming the basis of the declaratory and injunctive relief. Damages arising from the costs of insurance and expense charges are therefore incidental to the declaratory and injunctive relief sought, and allowed under 23(b)(2).

Plaintiffs also argue an additional theory of damages. They contend that the foregoing expense and cost of insurance charges are improperly diluting the 4.5% interest rate guaranteed by Conseco. Pl.'s Opp. at 11. Defendants argue on the merits that no such dilution has occurred. Def.'s Reply at 5. It appears to the Court that the alleged "dilution" is simply another way of stating that inflated expenses are reducing the principal, and thus plaintiffs are not receiving the guaranteed interest rate. If proven,

12

such damages would be directly calculable from the expense charges, and therefore also incidental to the declaratory and injunctive relief sought and permissible under 23(b)(2).

Plaintiffs' theories of damages are not of the type proscribed by the Supreme Court in *Dukes*. There, Wal-Mart would have been entitled to present a "mixed motive" defense to each claim of discriminatory behavior. Individual hearings would be required. Here, Conseco acted uniformly with respect to the class. Indeed, in the October 2008 letter sparking this litigation, Conseco wrote to its customers:

> You are not being singled out. This change will be applied uniformly to all policies in the same age, gender and underwriting classification with like benefits and provisions as your policy.

Pl.'s Opp., Ex. 1 at BRD 0077-78. Plaintiffs are seeking declaratory and injunctive relief to prevent ongoing or future premium requirements notwithstanding a person's invocation of the OPP, and prevention of increases in costs of insurance and expense charges. Along with such relief, they seek return of allegedly improper deductions from their accounts and any dilution that proceeded therefrom. The deductions are formulaic and objectively calculable from Conseco's records, and are therefore incidental to the declaratory and incidental relief sought. The class of current policyholders is proper under Rule 23(b)(2).

///

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendant's motion to decertify the class of current policyholders. The Court hereby GRANTS defendant's motion to decertify the former policyholders from the class. The nationwide class now consists of:

> all persons in the United States who (1) own a Conseco LifeTrend 3 or LifeTrend 4 Policy, and (2) have received since October 2008, or in the future may receive, pursuant to a settlement with state insurance regulators or otherwise, any of the following: (a) notice that an annual premium is due, notwithstanding such person's prior invocation of the Policy's Optional Premium Payment Provision ("OPP Provision"); (b) notice of increased expense charges under the Policy; or (c) notice of increased cost-of-insurance deductions under the Policy.

**IT IS SO ORDERED.**

Dated December 20, 2011

SUSAN ILLSTON
United States District Judge