David J. Millstein (CSB #87878)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Suite 200
San Francisco, CA 94105
Telephone:  (415) 348-0348
Facsimile:  (415) 348-0336
Email:  dmillstein@millstein-law.com

Craig J. Litherland (admitted *Pro Hac Vice*)
Andrea K. Hopkins (admitted *Pro Hac Vice*)
Michelle A. Price (admitted *Pro Hac Vice*)
Emily P. Grim (admitted *Pro Hac Vice*)
Daniel I. Wolf (admitted *Pro Hac Vice*)
GILBERT LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
Email:  litherlandc@gotofirm.com
Email:  hopkinsa@gotofirm.com
Email:  pricem@gotofirm.com
Email:  grime@gotofirm.com
Email:  wolfd@gotofirm.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE CONSECO LIFE INSURANCE CO. LIFETREND INSURANCE MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Case No. 3:10-md-02124-SI**

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Date:  December 7, 2012**
**Time:  9:00 a.m.**
**Judge: United States District Judge**
**            Susan Illston**
**            Courtroom 10, 19th Floor**

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3    TABLE OF AUTHORITIES ................................................................................................. iii

4    NOTICE OF MOTION ...................................................................................................... 1

5    STATEMENT OF ISSUE ................................................................................................... 1

6    MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

7    I.      INTRODUCTION ................................................................................................ 1

8    II.      STATEMENT OF FACTS ..................................................................................... 3

9        A.      The Lifetrend Policies .............................................................................. 3

10        B.      Conseco First Announces New Charges .................................................... 5

11        C.      The Current Cost-Of-Insurance Charges ................................................... 6

12    III.      ARGUMENT ...................................................................................................... 10

13        A.      Legal Standards ....................................................................................... 10

14              1.      Summary Judgment........................................................................ 10

15              2.      Contract Interpretation ................................................................... 11

16        B.      Conseco Is Violating The Plain Language Of The Policies ....................... 12

17              1.      The Cost-Of-Insurance Rates Are Not Tied To Mortality As

18                     Required ....................................................................................... 12

19              2.      Conseco Improperly Considers Duration When Setting Cost-Of-

20                     Insurance Rates ............................................................................. 14

21              3.      Conseco Is Improperly Using Cost-Of-Insurance Charges To

22                     Recoup Expenses .......................................................................... 16

23              4.      Conseco Is Explicitly And Improperly Recouping Losses It

24                     Sustained Between September 2008 And October 2010 ......................... 18

25              5.      Conseco Is Recouping Its Losses On Lower-Than-Expected Interest

26                     Earnings In The Years Prior To 2007 ...................................................... 19

27

28

– i –

6.    Conseco Is Improperly Using The Cost-Of-Insurance Charges To Offset Interest Losses And Is Improperly Diluting the Guaranteed Interest Rates ........................................................................................ 22

IV.    CONCLUSION .......................................................................................... 23

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

3:10-md-02124-SI

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Adler v. W. Home Ins. Co.*
  878 F. Supp. 1329 (C.D. Cal. 1995)..................................................................... 11, 12

5

6

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ......................................................................................... 11

7

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) ......................................................................................... 10

8

9

*Dean v. United of Omaha Life Ins. Co.*
  2007 WL 7079558 (C.D. Cal. Aug. 27, 2007)................................................. passim

10

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*
  No. C 10-02124-SI, 2012 WL 2917227 (N.D. Cal. July 17, 2012) ................ passim

11

12

*Keegan v. Kivitz*
  No. C 04-04470-SI, 2005 WL 2036919 (N.D. Cal. Aug. 22, 2005)..................... 10

13

14

*Marks v. Chicoine*
  No. C 06-06806-SI, 2007 WL 2408885 (N.D. Cal. Aug. 21, 2007)..................... 10

15

*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*
  475 U.S. 574 (1986) ......................................................................................... 11

16

17

*Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*
  594 F.2d 730 (9th Cir. 1979)............................................................................ 11

18

19

*Tower Ins. Co. of New York v. Capurro Enters. Inc.*
  No. C 11-03806-SI, 2012 WL 1109998 (N.D. Cal. Apr. 2, 2012) .................. 10, 11

20

*U.S. ex rel. Bhatnagar v. Kiewit Pac. Co.*
  24 F. App'x 837 (9th Cir. 2002) ....................................................................... 10

21

**CALIFORNIA CASES**

22

23

*AIU Ins. Co. v. Superior Court*
  51 Cal. 3d 807 (1990) ............................................................................ 11, 12, 13

24

25

*London Mkt. Insurers v. Superior Court*
  146 Cal. App. 4th 648 (2007) ........................................................................... 11

26

*MacKinnon v. Truck Ins. Exch.*
  31 Cal. 4th 635 (2003) ..................................................................................... 11

27

28

– iii –

*Waller v. Truck Ins. Exch., Inc.*
   11 Cal. 4th 1 (1995) ................................................................................................ passim

**CALIFORNIA STATUTES**

Cal. Civ. Code § 1636 ................................................................................................... 11, 12

Cal. Civ. Code § 1638 ......................................................................................................... 11

Cal. Civ. Code § 1641 ......................................................................................................... 11

Cal. Civ. Code § 1649 ......................................................................................................... 12

Cal. Civ. Code § 1654 ......................................................................................................... 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ...................................................................................................... 1, 10

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                                                3:10-md-02124-SI

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 7, 2012, at 9:00 a.m., before the United States District Judge Susan Illston, United States District Court, Northern District of California, 450 Golden Gate Avenue, Courtroom 10, 19th Floor, San Francisco, California 94102, or on such other date as the Court may set, Plaintiffs will move pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, for partial summary judgment against Conseco Life Insurance Company ("Conseco").[1]  This Motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Andrea K. Hopkins, the pleadings and papers on file in this action, and any other submissions of counsel or arguments of counsel as may be presented to the Court.

**STATEMENT OF ISSUE**

Plaintiffs move for partial summary judgment requesting that the Court determine as a matter of law that Conseco is breaching the Lifetrend 3 and 4 insurance policies because the undisputed evidence indicates that Conseco has breached the policies in no fewer than six ways and there is no genuine dispute as to any material fact with respect to these issues.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiffs brought this class action individually and on behalf of a certified nationwide class of owners of certain life insurance policies administered by Conseco (the "Policies").  *See* Am. Compl., *Brady v. Conseco, Inc.*, No. 3:08-cv-05746-SI at 2, ECF No. 51.  In their complaint, Plaintiffs seek injunctive and declaratory relief requiring Conseco to reverse the improper charges it unlawfully imposed on policyholders, to refrain from improper charges in the future, and to restore the value of Plaintiffs' Policies.  *Id.*  By the present motion, Plaintiffs seek a ruling that the cost-of-insurance charges that Conseco began charging in 2010 and continues to charge policyholders breach the Policies.

---

[1] Pursuant to the Stipulation Extending the Close of Discovery by Two Weeks, Conseco's opposition to this Motion will be due October 26, 2012.  *See* Stipulation Extending the Close of Disc. by Two Weeks at 2, ECF No. 371. Plaintiffs will file their reply no later than November 16, 2012, and Plaintiffs therefore request a hearing date of December 7, 2012.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

3:10-md-02124-SI

Conseco began deducting cost-of-insurance charges from the accumulation accounts of Plaintiffs' Policies in October 2010.  Plaintiffs allege that the current charges breach the Policies in numerous ways, six of which are addressed in this motion:[2]

*First*, the cost-of-insurance charges are improper because they are not tied to mortality. The Policies expressly tie the cost-of-insurance to mortality, but mortality experience has been better for Conseco than expected, and yet Conseco has increased cost-of-insurance charges.  The charges, thus, violate the Policies.

*Second*, Conseco improperly considers duration when setting cost-of-insurance charges. The Policies state that the cost-of-insurance rates must be uniform for insureds of the same age, sex, and rate classification.  But the current rates also take into account duration.  Now, policyholders of the same age, sex, and classification face different cost-of-insurance rates depending on how long they have owned their policies.  This violates the cost-of-insurance provisions of the Policies.

*Third*, Conseco is improperly using the cost-of-insurance charge to recoup its expenses. The Policies allow Conseco to impose expense charges, which are subject to caps.  Because Conseco's expenses exceed the caps, Conseco is setting the cost-of-insurance rates in part to collect the expenses it cannot recover with expense charges.  This breaches both the expense charge and cost-of-insurance provision.

*Fourth*, Conseco is recouping the losses it incurred between September 2008 and October 2010.  The Non-Participating provision prohibits Conseco from using policy charges to recoup past losses.  But Conseco is explicitly using the current cost-of-insurance charges, implemented and set in 2010, to recoup the losses the company sustained between September 2008 and October 2010.  This breaches the Non-Participating provision.

*Fifth*, Conseco is recouping the losses it sustained from past lower-than-anticipated interest earnings.  These lower-than-expected interest rates resulted in lower-than-expected

---

[2] Plaintiffs contend that Conseco has breached, and continues to breach, the Lifetrend policies in several respects. This motion only addresses Conseco's breaches which are most appropriate for resolution by summary judgment. Plaintiffs intend to pursue additional grounds for relief at trial.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

3:10-md-02124-SI

accumulation account amounts, which increased Conseco's financial burden for policy death benefits.  Recovery of the additional money Conseco must pay for death benefits through cost-of-insurance charges breaches the Non-Participating provision.

*Sixth*, Conseco is using cost-of-insurance charges to offset its costs of complying with the Policies' guaranteed interest provision.  The Policies require that Conseco credit a set amount of interest to policyholders' accumulation accounts.  Conseco is imposing cost-of-insurance charges for a purpose unrelated to the cost of insurance and it is using the charges to offset the interest it is contractually obligated to credit to the policyholders' accumulation accounts.  This breaches the guaranteed interest provision and cost-of-insurance provision of the Policies.

## II.     STATEMENT OF FACTS

### A.     The Lifetrend Policies

Plaintiffs own life insurance policies called Lifetrend 3 or 4 Policies.  *See* Order Granting in Part and Den. in Part Pls.' Mot. for Class Certification ("Certification Order") at 2, ECF No. 111; *see also* Conseco's Mot. to Decertify the Class at 2, ECF No. 185; Brady Policy, attached as Ex. 1 to Declaration of Andrea Hopkins in Supp. of Pls.' Mot. for Partial Summ. J. ("Hopkins Decl.").  When a policyholder purchases a Lifetrend policy, he begins paying premiums.  *See* Brady Policy at BRD000009, attached as Ex. 1 to Hopkins Decl.; Conseco's Mot. to Decertify the Class at 2, ECF No. 185.  These premium payments are placed into an accumulation account.   *See* Brady Policy at BRD000011, attached as Ex. 1 to Hopkins Decl.; Conseco's Mot. to Decertify the Class at 2, ECF No. 185.

Every month, Conseco may make two basic adjustments to that account.  *See* Brady Policy at BRD000011-12, attached as Ex. 1 to Hopkins Decl.; Conseco's Mot. to Decertify the Class at 2-3, ECF No. 185.  The first is a monthly deduction, which may include an "expense charge" and a "cost of insurance" charge.  *See* Brady Policy at BRD000012, attached as Ex. 1 to Hopkins Decl.; Conseco's Mot. to Decertify the Class at 2-3, ECF No. 185.  Second, Conseco is required to add interest to the accumulation account every month.  *See* Brady Policy at BRD000011, attached as Ex. 1 to Hopkins Decl.; Conseco's Mot. to Decertify the Class at 2, ECF No. 185.  The Policies require Conseco to credit a minimum of 3.5% to 4.5% in interest,

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                                                3:10-md-02124-SI

depending on the policy form.  *See, e.g.*, Lifetrend 3 Rate Card and Specifications at

CLIC0003509, attached as Ex. 2 to Hopkins Decl.; Lifetrend 4 Rate Card Specifications at

CLIC0003517, attached as Ex. 3 to Hopkins Decl.

      The initial expense charge is delineated in the Policies and cannot exceed $5.00 per month

per policy.  *See, e.g.*, Brady Policy at BRD000008, attached as Ex. 1 to Hopkins Decl.; *see also*

Lifetrend 3 Rate Card and Specifications at CLIC0003509, attached as Ex. 2 to Hopkins Decl.;

Lifetrend 4 Rate Card and Specifications at CLIC0003517, attached as Ex. 3 to Hopkins Decl.[3]

The initial cost-of-insurance charge is also set in the Policies.  *See* Brady Policy, attached as Ex. 1

to Hopkins Decl.; *see also* Lifetrend 3 Rate Card and Specifications at CLIC0003509, attached as

Ex. 2 to Hopkins Decl. ("[T]he cost of insurance is deducted based upon the current cost of

insurance rate and amount at risk."); Lifetrend 4 Rate Card and Specifications at CLIC0003517,

attached as Ex. 3 to Hopkins Decl. (same). Although the Policies provide that the cost-of-

insurance charge can be adjusted, they do not disclose a formula or method for that adjustment.

*See* Brady Policy, attached as Ex. 1 to Hopkins Decl.  Rather, the Policies' "Monthly Costs of

Insurance" sections set certain parameters for setting and adjusting cost-of-insurance rates, stating

that:

> [t]he monthly cost of insurance rates, and any change in the
> monthly cost of insurance as provided herein, are and will
> be determined on a uniform basis for insureds of the same
> age, sex and classification for all polices issued with like
> benefits and provisions.

*See id.* at BRD000012-13; Def. Conseco Life Ins. Co.'s Resps. and Obj. to Pls.' Fourth Set of

Req. for Admis. No. 168, attached as Ex. 4 to Hopkins Decl.  The Policies expressly link the cost-

of-insurance charges to mortality.  The cost-of-insurance table included in the Policies is titled

"Guaranteed Maximum Monthly Mortality Charges:  Table of (Monthly) Cost of Insurance

Rates."  Brady Policy at BRD000013, attached as Ex. 1 to Hopkins Decl.  And the table states

that the rates are "based upon the Commissioner's 1980 Standard Ordinary Mortality Table."  *Id.*

---

[3] Certain policy forms also permit Conseco to deduct a per-unit expense charge.  *See, e.g.*, Lifetrend 3 Rate Card and
Policy Specifications at CLIC0003509, attached as Ex. 2 to Hopkins Decl. (describing the per-unit expense charge
for Lifetrend 3 policies).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

3:10-md-02124-SI

1   The original rates were, as required, uniform for policyholders of the same age, sex, and

2   classification.  *See, e.g.*, Product Specifications for Lifetrend 3 at CLIC0003780-81, attached as

3   Ex. 5 to Hopkins Decl. (showing that initial cost-of-insurance rates were based only on age, sex,

4   and rate classification); ████████████████████████████████████████

5   ███████████████████

6       Until 2008, Conseco maintained a policy of eliminating cost-of-insurance charges after

7   the eighth policy year. ██████████████████████████████

8   ████████████████████████████████████████████

9   ██████████████████████████████████████

10  ████████████████████████████████████████████

11  ████████████████████████████████████████████

12  ██████████████████████████ Conseco did, in fact, reduce the cost-of-

13  insurance charge to $0 after the eighth policy year. ██████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ██████████████

17      The Lifetrend Policies also contain a Non-Participating provision, which states:

18          This is a non-participating policy.  This policy will not share in any
            of the Company's profits or surplus earnings.  Any premium or
19          factor changes are determined and redetermined prospectively.  The
            Company will not recoup prior losses, if any, by means of premium
20          or factor changes.

21  *See* Brady Policy at BRD000016, attached as Ex. 1 to Hopkins Decl.  Under this provision,

22  Conseco may not change cost-of-insurance charges to recover for its own past financial losses.

23      **B.      Conseco First Announces New Charges**

24      In October 2008, Conseco sent Plaintiffs a form letter to notify them that their Policies

25  purportedly were substantially underfunded.  Certification Order at 3; Conseco Life's Mot. to

26  Decertify the Class at 3, ECF No. 185; *see also, e.g.*, October 2008 Letter to Kenneth Hovden,

27  attached as Ex. 9 to Hopkins Decl.  The letter also announced that Conseco would deduct

28  increased expense charges and increased cost-of-insurance charges from the policyholders'

PLAINTIFFS' MOTION FOR PARTIAL                      3:10-md-02124-SI
SUMMARY JUDGMENT

accumulation accounts.  *See, e.g.*, October 2008 Letter to Kenneth Hovden, attached as Ex. 9 to Hopkins Decl.; Def. Conseco Life Ins. Co.'s Resps. and Obj. to Pls.' Fourth Set of Req. for Admis. No. 182, attached as Ex. 4 to Hopkins Decl.  The letter explained that Conseco was imposing new charges because "experience factors have differed from those assumed when your policy was originally sold."  October 2008 Letter to Kenneth Hovden at BRD000077, attached as Ex. 9 to Hopkins Decl.; ████████████████████████████████████████████████████ ████████████████████████████████████████████████ Conseco decided to impose cost-of-insurance charges because the interest rates Conseco earned on the accumulation accounts were substantially lower than Conseco had predicted.  ████████████████████ ██████████████████████████████████████

   Upon receiving the October 2008 Letter, policyholders began contacting state insurance regulators to protest the proposed increased charges.  *See* In re Conseco Life Ins. Co. Regulatory Settlement Agreement ("Regulatory Settlement") ¶ 21, attached as Ex. 12 to Hopkins Decl.  In response to consumer complaints, state insurance regulators began investigating Conseco's announced charges.  *See id.* ¶¶ 21-22.  As a result, in December 2008, Conseco suspended the charges it previously announced.  *See id.*; Certification Order at 4; December 2008 Letter to Cedric Brady, attached as Ex. 13 to Hopkins Decl.  Conseco eventually reached a settlement agreement with 45 state insurance regulators regarding certain aspects of the administration of the Lifetrend Policies.  *See* Regulatory Settlement, attached as Ex. 12 to Hopkins Decl.

  **C.**  **The Current Cost-Of-Insurance Charges**

   Conseco began imposing cost-of-insurance and expense charges again in October 2010. *See, e.g.*, Conseco's Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. at 6, ECF No. 298.  The schedule for the cost-of-insurance rates Conseco is now using to set cost-of-insurance charges was incorporated into the Regulatory Settlement.  *See* Regulatory Settlement, Ex. G., attached as Ex. 12 to Hopkins Decl.; ███████████████████████████████████████████████ ████ ; *see also* Conseco's Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. at 6, ECF No. 298.  Unlike the original rates Conseco used when it issued the Policies, and unlike the rates Conseco intended to use in 2008, the new rates are not uniform for policyholders of the same age, sex, and rate

– 6 –

1   classification.  *Compare* ███████████████████████████████████

2   ████ *with* Cost of Insurance rates per $1,000 dated Aug. 28, 2008, attached as Ex. 15 to Hopkins

3   Decl. *and* ██████████████████████████████████████████████████

4   Instead, the new rates are also based on duration, which means the number of years the

5   policyholder has held his or her policy. ███████████████████████████████

6   ████████████████████████████████████████████████████████████████████████

7   ████████████████████ Conseco currently applies different cost-of-insurance rates to two

8   policyholders who are the same age, sex, and classification based on their policy duration. ████

9   ███████████████████████████████████████████

10      Conseco derived the rates it is currently using to determine the cost-of-insurance charges

11  by analyzing data provided by its consultant, Milliman, Inc. ██████████████████████

12  █████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████ Sources of Earning Statement

15  at CLIC0774617, attached as Ex. 19 to Hopkins Decl.  The Milliman Model was designed to

16  project Conseco's various revenues and expenses related to the Lifetrend Policies so that Conseco

17  could adjust cost-of-insurance rates in a manner sufficient to "break even." ███████████████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████.[4]  *Id.*

22      For each scenario and set of assumptions, the Milliman Model projected Conseco's

23  revenues and expenses from several sources for each year out to 2037. ██████████████████

24  The sources of revenues and expenses are:  (1) "Interest Earned" – the interest income Conseco

25  will earn on policyholders' accumulation accounts, ████████████████████████████████

26  _____

27  [4] Conseco also made different assumptions about the "shock lapse" it expected to experience.  Shock lapse refers to the number of policyholders who will surrender their policies from the "shock" of receiving new cost-of-insurance deductions on their policies. ████████████████████████████████████████

28

– 7 –

PLAINTIFFS' MOTION FOR PARTIAL                                   3:10-md-02124-SI
SUMMARY JUDGMENT

██████████████; (2) "Interest Credited" – the interest Conseco credits to policyholders'

accumulation accounts, ████████████; (3) "Interest Gain" – the difference between Interest

Earned and Interest Credited; (4) "Mortality Charge" – the cost-of-insurance charges Conseco

will deduct from policyholders' accumulation accounts,[5] ████████; (5) "Mortality Cost" – the

amount of death benefits Conseco will pay to policyholders, ██████████; (6) "Mortality

Gain" – the difference between Mortality Charge and Mortality Cost; (7) "Expense Charge" –

charges Conseco will deduct to cover expenses, █████████; (8) "Expenses" – costs

Conseco will incur in maintaining the Policies, ██████████; (9) "Expense Gain" – the

difference between Expense Charge and Expenses; (10) "Surrender Gain"; (11) "Other Increases

in Revenue"; and (12) "Taxes." ██████████████████

████████

       The Milliman Model shows the sum of all the projected revenues and expenses and the

total projected profit after tax for each year. █████████████████████

████████████████████████████. To produce a

result where all expenses are covered by future revenues, the Milliman Model shows what

Conseco must charge the policyholders so that the present value of Conseco's future profits is at

or near zero, which Conseco calls the "break even" result. ████████████████

████████████████████████████

██████ Regulatory Settlement Ex. G, attached as Ex. 12 to Hopkins Decl. ██████████

██████████ Conseco began imposing cost-of-insurance charges in October 2010, but

calculated the charges it needs to break even using a present value date of September 30, 2008.

█████████████████████████████

█████████████████████. In other words, when Conseco set the charges

in 2010, it considered the company's losses between September 30, 2008 and October 2010. ████

█████████████████████████████

---

[5] The cost-of-insurance rates used in all the scenarios in the Milliman Model are derived from the same base cost-of-insurance table attached as Ex. G to the Regulatory Settlement. *See* Sources of Earning Statement at CLIC0774617, attached as Ex. 19 to Hopkins Decl.; ████████████████████████

██████

1 █████████████████████████████████████████████████████████

2 █████████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████████

4 ████████████

5        Conseco calculated the charges it needs to break even using, as a starting point, the

6 accumulation account values as they existed as of March 31, 2007. █████████████████

7 ████████████████████████████ By that time, Conseco had been losing money on the

8 accumulation accounts for decades. ███████████████████████

9 ███████████████████████████████████████

10        The main sources of revenue Conseco earns on the Lifetrend Policies, ████████████

11 ████████████, are Interest Earned, the Mortality Charge, and the Expense Charge.  But the

12 Interest Gain and the Expense Gain are negative in most years. ██████████████████

13 █████████████████████████████████████████████████████████

14 █████████████████████████████████████████████████████████

15 ███████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████████

18 Gain).  Thus, Conseco is losing money on interest and expenses. ███ The factor that Conseco

19 manipulated in the model to obtain more revenue is the cost-of-insurance charge (called the

20 Mortality Charge in the model).

21        ████████████████████████████████████████████████

22 █████████████████████████████████████████████████████████

23 █████████████████████████████████████████████████████████

24 █████████████████████████████████████████████████████████

25 █████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 █████████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████

4 ████████████████████████████████

### III.    ARGUMENT

This Court may grant summary judgment when the parties do not dispute genuine factual issues and the Court can resolve the matter on the law.   That power should be exercised here because Conseco breached the plain language of the contracts.

#### A.    Legal Standards

##### 1.    Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 2408885, at *1 (N.D. Cal. Aug. 21, 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  However, the moving party "has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial." *Keegan v. Kivitz*, No. C 04-04470 SI, 2005 WL 2036919, at *2 (N.D. Cal. Aug. 22, 2005).  Instead, "[t]he moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case." *Tower Ins. Co. of New York v. Capurro Enters. Inc.*, No. C 11-03806 SI, 2012 WL 1109998, at *6 (N.D. Cal. Apr. 2, 2012) (citing *Celotex*, 477 U.S. at 325).

"Once the moving party has met its burden, the burden shifts to the non-moving party to 'set out 'specific facts showing a genuine issue for trial.''" *Id.* (quoting *Celotex,* 477 U.S. at 324 (quoting then Fed. R. Civ. P. 56(e))).  "In order to raise a genuine issue of fact the evidence must be such that a reasonable jury could return a verdict for the nonmoving party" while "viewing the evidence in the light most favorable to the nonmoving party." *U.S. ex rel. Bhatnagar v. Kiewit Pac. Co.*, 24 F. App'x 837, 837 (9th Cir. 2002).  To meet this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."

1   *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere

2   existence of a scintilla of evidence in support of the [non-moving party's] position will be

3   insufficient"; instead, "there must be evidence on which the jury could reasonably find for the

4   [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Tower*

5   *Ins. Co.*, 2012 WL 1109998, at *6 (citing *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*,

6   594 F.2d 730, 738 (9th Cir. 1979)) ("[C]onclusory, speculative testimony in affidavits and

7   moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

8                                **2.        Contract Interpretation**

9          Where, as here, "a district court sit[s] in diversity," that court "applies the forum state's

10  contractual interpretation rules."  *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales*

11  *Practice Litig.*, No. C 10-02124 SI, 2012 WL 2917227, at *6 n.10 (N.D. Cal. July 17, 2012)

12  ("Preliminary Injunction Order") (citing *Dean v. United of Omaha Life Ins. Co.*, 2007 WL

13  7079558, at *3 (C.D. Cal. Aug. 27, 2007)).  "Interpretation of an insurance policy is a question of

14  law and follows the general rules of contract interpretation."  *MacKinnon v. Truck Ins. Exch.*, 31

15  Cal. 4th 635, 647 (2003) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  Courts

16  interpreting an insurance policy must "consider the contract as a whole and interpret the language

17  in context, rather than interpret a provision in isolation."  *London Mkt. Insurers v. Superior Court*,

18  146 Cal. App. 4th 648, 656 (2007); *see also* Cal. Civ. Code § 1641.

19         "A contract must be so interpreted as to give effect to the mutual intention of the parties as

20  it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal. Civ.

21  Code § 1636.  "Such intent is to be inferred, if possible, solely from the 'written provisions of the

22  contract.'"  *Adler v. W. Home Ins. Co.*, 878 F. Supp. 1329, 1332 (C.D. Cal. 1995) (quoting *AIU*

23  *Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)).  Thus, courts will "look first to the

24  language of the contract in order to ascertain its plain meaning or the meaning a layperson would

25  ordinarily attach to it."  *Waller*, 11 Cal. 4th at 18.  "[I]f the language is clear and explicit, and

26  does not involve an absurdity," then "[t]he language of a contract is to govern its interpretation."

27  Cal. Civ. Code § 1638.  However, "[i]f the terms of a promise are in any respect ambiguous or

28  uncertain, it must be interpreted in the sense in which the promisor believed, at the time of

– 11 –

1   making it, that the promisee understood it."  Cal. Civ. Code § 1649.  "If application of this rule

2   does not eliminate the ambiguity, the ambiguous language is construed against the party who

3   caused the uncertainty to exist–in the insurance context, generally the insurer."  *Dean*, 2007 WL

4   7079558, at *3 (citing *AIU*, 51 Cal. 3d at 822).

5       **B.      Conseco Is Violating The Plain Language Of The Policies**

6       The current cost-of-insurance charges Conseco is imposing violate the cost-of-insurance

7   provision, the expense charge provision, the Non-Participating provision, and the guaranteed

8   interest rate provision of the Policies.

9           **1.      The Cost-Of-Insurance Rates Are Not Tied To Mortality As Required**

10      Under the Policies, cost-of-insurance charges must be tied to mortality rates.  Conseco has

11  imposed cost-of-insurance charges, however, that are not tied to changes in mortality rates.

12  Therefore, Conseco is breaching the Policies.

13      When interpreting policy provisions, as a starting point, the mutual intent of the

14  contracting parties at the time of contract formation governs interpretation.  Preliminary

15  Injunction Order, 2012 WL 2917227, at *6 (citing Cal. Civ. Code. § 1636).  Courts start with the

16  provisions of the contract, *id.* (citing *Adler*, 878 F. Supp. at 1332), and will give the language its

17  "plain meaning or the meaning a layperson would ordinarily attach to it," *id.* (citing *Waller*, 11

18  Cal. 4th at 18).

19      Looking at the plain language of the Policies makes clear that cost-of-insurance charges

20  are tied to mortality rates, even though the contracts do not explicitly define the basis for

21  determining the monthly cost-of-insurance rates.  Mortality rates are the only reference the

22  Policies provide for calculation of cost-of-insurance rates.  *See, e.g.*, Brady Policy, attached as Ex.

23  1 to Hopkins Decl.  The cost-of-insurance table included in the Policies is titled "Guaranteed

24  Maximum Monthly Mortality Charge:  Table of (Monthly) Cost of Insurance Rates."  *Id.* at

25  BRD000013.  And the table states that the rates are "based upon the Commissioner's 1980

26  Standard Ordinary Mortality Table."  *Id.*  Furthermore, the cost-of-insurance charge is determined

27  in part by multiplying a cost-of-insurance *rate* by the death benefit amount minus the

28  accumulation account value.  *Id.* at BRD000012; *see also* Behan Report (March 23, 2012) ¶ 16,

– 12 –

1    ECF No. 302.  Because the maximum *rates* are "based upon the Commissioner's 1980 Standard

2    Ordinary Mortality Table," the cost-of-insurance *charges*, too, are directly tied to mortality rates.

3    The cost-of-insurance provisions also state that the charges "will be determined on a uniform

4    basis for insureds of the same age, sex and classification for all policies issued with like benefits

5    and provisions."  *See* Brady Policy at BRD000013, attached as Ex. 1 to Hopkins Decl.  "Because

6    age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach

7    the rates to mortality."  Preliminary Injunction Order, 2012 WL 2917227, at *8.

8           If the plain policy language does not conclusively establish that the cost-of-insurance

9    charges must be tied to mortality rates, the next step in the analysis looks to what the promisor

10   (Conseco) believed the promisee (a policyholder) understood the provisions to mean at the time

11   of contract formation.  *Id.* (citing *AIU*, 51 Cal. 3d at 822).  This step reflects an objective, not a

12   subjective standard.  *Dean*, 2007 WL 7079558, at *6.  Conseco's own witness has testified that

13   "in some circles the idea of mortality rates and cost of insurance rates are one and the same."  ██

14   ████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████  Conseco's expert agrees that

17   cost-of-insurance charges are tied to mortality.  He stated in his report that "[b]ecause the rate of

18   mortality doubles approximately every 10 years for adults, the cost of insurance is higher for

19   older people."  *See* Behan Report ¶ 23, ECF No. 302.  In other words, the cost of insurance

20   increases as mortality rates increase.

21          The notion that the likelihood of death increases with age is hardly surprising or

22   controversial.  And any policyholder who looked at her policy would see that the cost-of-

23   insurance rates set out in the table of "Monthly Mortality Charges" increase with age over time.

24   Further, certainly "a reasonable insured would not read the terms and believe that Conseco could

25   amend the COI charges at its discretion, regardless of changes to mortality rates."  Preliminary

26   Injunction Order, 2012 WL 2917227, at *8.  Thus, Conseco should have expected that

27   policyholders understood that cost-of-insurance rates were tied to mortality rates when it issued

28   policies that so clearly link the cost of insurance to mortality rates.

– 13 –

1    Finally, if the above does not sufficiently demonstrate that cost-of-insurance charges must

2  be tied to mortality rates, the "language of [the Policies] should be interpreted most strongly

3  against the party who caused the uncertainty to exist."  Preliminary Injunction Order, 2012 WL

4  2917227, at *8 (citing Cal. Civ. Code § 1654; *Dean*, 2007 WL 7079558, at *7).  "Resolving the

5  ambiguity against the insurer in this case means finding that changes to the COI rates are tied to

6  changes in mortality rates.  The contract, taken as a whole, supports this interpretation."  *Id.*

7    Conseco has stated that mortality rates have improved for Conseco.  ██████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████  the decision to impose cost-of-insurance

15 charges again in 2010 had nothing to do with changes in mortality rates.  ████████████

16 ██████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ██████████████████████████████████████  The purpose of

19 the new cost-of-insurance charges is to break even financially on the Lifetrend policies.  ███

20 ███████  Thus, the cost-of-insurance charges Conseco is currently imposing are not tied to

21 mortality rates.  The cost-of-insurance charges, therefore, breach the Policies.

22    **2.    Conseco Improperly Considers Duration When Setting Cost-Of-
            Insurance Rates**

23

24    Conseco breached its policies by determining monthly cost-of-insurance charges based on

     the contractually-prohibited factor of duration.  The Policies' "Monthly Cost of Insurance"

25 sections state that "[t]he monthly cost of insurance rates, and any change in the monthly cost of

26 insurance as provided herein, are and will be determined on a uniform basis for insureds of the

27 same age, sex and classification for all polices issued with like benefits and provisions."  *See* Def.

28

PLAINTIFFS' MOTION FOR PARTIAL                           3:10-md-02124-SI
SUMMARY JUDGMENT

Conseco Life Ins. Co.'s Resps. and Obj. to Pls.' Fourth Set of Req. for Admis. No. 168, attached as Ex. 4 to Hopkins Decl.  Consistent with these provisions, when Conseco's predecessors initially issued the policies, the cost-of-insurance rates were uniform for policyholders of the same age, sex, and rate classification (nonsmoker, select, standard, and guaranteed) for all policies issued with like benefits and provisions, as the policies allowed.  *See*, *e.g.*, Product Specifications for LifeTrend 3 at CLIC003780-81, attached as Ex. 5 to Hopkins Decl.; ████

████████████████████████████████████████████████████████

████████████████████████████████

In 2010, however, Conseco implemented new cost-of-insurance charges based on rates determined by factors other than age, sex, and rate classification.  The Regulatory Settlement's Ex. G Details contains the base cost-of-insurance rate table that Conseco used to set the current cost-of-insurance charges. ████████████████████████████████

████████████ The chart shows that, for each sex and classification, the cost-of-insurance rates that Conseco set depend not on the policyholders' age, as specified in the policy, but rather the age of a policyholder when she bought her policy (issue age) and how long a policyholder has owned a policy (duration). ████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████ For example, the cost-of-insurance rate for a 65 year old male in the non-smoker select class who had owned his policy for one year is different from the cost-of-insurance rate for a 65 year old male in the non-smoker select class who had owned his policy for three years, even though the two policyholders are the same age, sex and classification. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ This means that, starting in 2010, Conseco has not determined monthly cost-of-insurance rates on the uniform basis required by the policies.

When interpreting policy language, courts will examine the "plain meaning or the

– 15 –

meaning a layperson would ordinarily attach to" the policy language. *Waller*, 11 Cal. 4th at 18. The Policies state that the monthly cost-of-insurance rates should be set "on a uniform basis for insureds of the same *age*, sex, and classification." *See* Def. Conseco Life Ins. Co.'s Resps. and Obj. to Pls.' Fourth Set of Req. for Admis. No. 168, attached as Ex. 4 to Hopkins Decl (emphasis added). The word "age" has a clear, "plain meaning" that a layperson would use. *See Waller*, 11 Cal. 4th at 18. A person's "age" refers to the length of time from when a person was born until the present day. The "plain meaning" of "age" has nothing to do with when a person bought a life insurance policy or how long the person's life insurance policy has been in effect. Thus, Conseco's use of duration in calculating the cost-of-insurance charges breaches the plain language of the Policies.

### 3. Conseco Is Improperly Using Cost-Of-Insurance Charges To Recoup Expenses

████████████████████████████ Conseco is using cost-of-insurance charges to improperly recoup its expenses. The Policies permit Conseco to deduct expense charges from policyholders' accumulation accounts. *See* Brady Policy at BRD000012, attached as Ex. 1 to Hopkins Decl. Each policy caps these expense charges at $5 per month, thus limiting the amount Conseco can deduct every month to cover its expenses.[6] *See id.* at BRD000008. If Conseco could deduct funds to cover its expenses using some other method, this would defeat the purpose of the cap on expense charges.

████████████████████████████ Conseco was unquestionably deducting funds to cover its expenses through the cost-of-insurance charges. ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ The Expense Charge is the amount Conseco is deducting for the per-policy expense charge (which is capped at $5 for every policy) and the per-unit expense charge that Conseco may deduct from certain policyholders' accounts depending on the policy

---

[6] Certain policy forms also permit Conseco to deduct a per-unit expense charge from the policyholders' accounts each year. *See, e.g.*, Lifetrend 3 Rate Card and Policy Specifications at CLIC0003509, attached as Ex. 2 to Hopkins Decl. (describing the per-unit expense charge for Lifetrend 3 policies).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                                    3:10-md-02124-SI

form. ████████████████████████████████ Brady Policy at

BRD00008, attached as Ex. 1 to Hopkins Decl. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ the per-unit and

per-policy expense charges do not recover all of Conseco's expenses, so the Expense Gain is

negative for every year. ████████████████████████████████████

████████████████████████████ In other words, Conseco is losing money on its

expenses.  Because the Milliman Model was designed to reach "break-even," the cost-of-

insurance charge must increase to cover the expense-related losses. ████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████ In other words, Conseco is using cost-of-

insurance charges to recover its expenses.  Doing so breaches the expense charge provision by

circumventing the expense charge cap.

Conseco's use of the cost-of-insurance charge to collect expenses also breaches the cost-

of-insurance provision.  The Policies authorize Conseco to impose two separate charges on

policyholders' accumulation accounts:  a cost-of-insurance charge and an expense charge.  *See*

Brady Policy at BRD000011-12, attached as Ex. 1 to Hopkins Decl.  The existence of the two

separate charges with different names denotes that the charges are intended to achieve different

purposes.  The *Waller* court explained that, when interpreting policies, courts will examine the

"plain meaning or the meaning a layperson would ordinarily attach to" the policy language.  11

Cal. 4th at 18.  The plain meaning of an expense charge, not the cost-of-insurance charge, permits

recovery of expenses.  A charge called a "cost-of-insurance" charge unambiguously must actually

relate to the cost of insurance, and not expenses.  The Central District of California, interpreting

policies with similar language, agreed.  *See Dean*, 2007 WL 7079558, at *4 (cited with approval

in the Preliminary Injunction Order, 2012 WL 2917227, at *6-8).  In *Dean*, the policyholders

argued that the cost-of-insurance charge could only be calculated using the factors expressly

stated in the policy, and not profits or expenses, whereas the insurer argued that it could take into

account expenses.  *Id.* at *3.  The court held, looking at the policy as a whole, that "[c]learly, the 'cost of insurance charge' is not the amount charged for the insurance product, because the Policy also states that the insured will pay separate expense charges.  Also, the express delineation of 'expense charges' suggests that [the policyholders'] reading is correct; a reasonable insured would expect the 'expense charges' to include all the expense charges, and not that some expenses would be included in the 'cost of insurance charge.'"  *Id.* at *4.  Here, Conseco's use of the cost-of-insurance charge to recover expenses, thus, violates the cost-of-insurance provision, as well as the expense charge provision.

### 4.  Conseco Is Explicitly And Improperly Recouping Losses It Sustained Between September 2008 And October 2010

Conseco is recouping financial losses it incurred from September 2008 to October 2010 in violation of the Policies' Non-Participating clause.  This provision states:

> This is a non-participating policy.  This policy will not share in any of the Company's profits or surplus earnings.  Any premium or factor changes are determined and redetermined prospectively.  The Company will not recoup prior losses, if any, by means of premium or factor changes.

*See, e.g.*, Brady Policy at BRD000016, attached as Ex. 1 to Hopkins Decl.  Conseco began imposing cost-of-insurance charges in October 2010.  *See, e.g.*, Conseco's Mem. in Opp'n to Pls.' Mot. for a Prelim. Inj. at 5-6, ECF No. 298.  As discussed above, the Milliman Model considered what cost-of-insurance charges Conseco could impose to allow the company to "break even."  *See* Regulatory Settlement Ex. G, attached as Ex. 12 to Hopkins Decl.; Sources of Earning Statement at CLIC0774617, attached as Ex. 19 to Hopkins Decl.  To determine the charges it needs to impose to break even, Conseco estimated the present value of future profits as of three possible dates, March 31, 2007, September 30, 2008, and March 31, 2010.  ██████████████ ████████████████████████████████████████████  Conseco ultimately chose to calculate the charges to "break even" as of September 30, 2008.  ██████████████████████████████████ ████████████████████  In other words, Conseco set the rates in 2010 to recover all costs Conseco was projected to incur on or after September 30, 2008.  This means that the cost-of-insurance charges Conseco imposed in October 2010 were explicitly intended to recoup at least two full

years of Conseco's past losses (*i.e.*, losses sustained between September 30, 2008, and October 2010). ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████    This explicitly violates the Non-Participating provision.

### 5. Conseco Is Recouping Its Losses On Lower-Than-Expected Interest Earnings In The Years Prior To 2007

Conseco is violating the Non-Participating clause by recouping losses from lower-than-expected interest earnings on policyholders' accumulation accounts in the years prior to 2007.[7] As explained above, each policy contains an accumulation account. "The value in this account is the policyholder's, not Conseco Life's. A policyholder can surrender the policy at any time and receive this value." Conseco's Mem. in Opp'n to Pls.' Mot. for Prelim. Injunction at 3, ECF No. 298. But accumulation accounts also benefit Conseco. Among other benefits, Conseco earns interest on the accumulation accounts (the Policies also require Conseco to credit a minimum interest amount to each accumulation account each month). *See, e.g.*, Brady Policy at BRD000011, attached as Ex. 1 to Hopkins Decl.

When Conseco's predecessors priced the Policies, they expected that the accumulation accounts would grow over time based upon the accumulation accounts' interest earnings. ████ ████████████████████████████████    Accumulation accounts, however, did not grow at the rate required for Conseco to meet its pricing projections. ██████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████

---

[7] The Milliman Model used as a starting point the accumulation account values as of March 31, 2007. ████████ ████████████████████████████████

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1       Lower accumulation account values increased the amount Conseco will have to pay out of

2 its own pocket for death benefits. ███████████████████████████

3 ████████████████████████████████ When a policyholder dies,

4 Conseco pays from its own pocket the difference between the policy death benefit (set in each

5 policy) and the amount in the policyholder's accumulation account; this difference is known as

6 the "net amount at risk" for Conseco. ██████████████████████████

7 ████████████████████████████████████████████

8 ██████████████████████ The financial deficit caused by the lower-than-

9 anticipated accumulation account values and the higher-than-expected net amount at risk was a

10 material issue for Conseco. █████████████████████████

11 ████████████████████████████████████████████

12 █████████████████████████████████████████

13 ██████████████████

14       By March 2007, Conseco already had suffered a significant cumulative financial deficit

15 because of lower-than-expected earnings on the accumulation accounts. ████████████

16 ████████████████████████████████████████

17 █████████████████████████████████████████

18 ██████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████████████████████

21 ███████████████████████████████████████████████

22 ███████

23       Conseco imposed cost-of-insurance charges in 2010 specifically to remedy its financial

24 deficit. ████████████████████████████████████

25 ██████████████████████████████████████████

26 ██████████████████████████████████████████

27 ████████████████████████████████████████████ In

28 fact, Conseco expected the cost-of-insurance charges to improve Conseco's financial position

PLAINTIFFS' MOTION FOR PARTIAL                 3:10-md-02124-SI
SUMMARY JUDGMENT

1    drastically. ███████████████████████████████████

2    ████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████████████

4    ██████████

5        As explained above, Conseco set the cost-of-insurance charge to "break even." ████████

6    █████████████████████████████  The fact that Conseco is trying to "break

7    even" demonstrates that Conseco is recouping past losses.  The starting point for Conseco's

8    "break even" scenario is the accumulation account values as they existed as of March 31, 2007.

9    ███████████████  But, Conseco had already suffered a significant financial loss by that point.

10   So to "break even" going forward, Conseco needed to have a gain in future years to offset its loss.

11   Milliman's representative explained in his deposition:



21   ██████████████████  The premise of "breaking even" going forward, with March 2007 as a starting

22   point, explicitly takes into account Conseco's situation as of a time when Conseco had already

23   suffered a deficit.  In other words, Conseco is using cost-of-insurance charges to climb out of a

24   hole that had been growing for decades.

25        As explained above, the Non-Participating provision states that Conseco "will not recoup

26   prior losses, if any, by means of premium or factor changes."  *See* Brady policy at BRD000016,

27   attached as Ex. 1 to Hopkins Decl.  When interpreting policy language, courts will examine the

– 21 –

PLAINTIFFS' MOTION FOR PARTIAL                                    3:10-md-02124-SI
SUMMARY JUDGMENT

"plain meaning or the meaning a layperson would ordinarily attach to" the policy language. *Waller*, 11 Cal. 4th at 18.  The plain language of the Non-Participating provision forbids Conseco from changing the cost-of-insurance rates to recover losses it incurred in the past.  Conseco's attempt to "break even," however, explicitly changes cost-of-insurance rates to make up for a prior deficit and recoup its losses from before March 2007.  Conseco therefore is violating the Non-Participating provision.

> **6.      Conseco Is Improperly Using The Cost-Of-Insurance Charges To Offset Interest Losses And Is Improperly Diluting the Guaranteed Interest Rates**

Conseco also breached the Policies' cost-of-insurance provision by adjusting cost-of-insurance charges to recoup the difference between the minimum interest rate Conseco has guaranteed to policyholders and Conseco's actual interest earnings.  The Lifetrend Policies guarantee policyholders a minimum credited interest rate of 3.5% to 4.5% (depending on the policy form) on their accumulation account values.  *See*, *e.g.,* Lifetrend 3 Rate Card and Specifications at CLIC0003509, attached as Ex. 2 to Hopkins Decl.; Lifetrend 4 Rate Card and Specifications at CLIC0003517, attached as Ex. 3 to Hopkins Decl.; ███████████████████ ██████████████████████  The Policies also include retroactive interest credits and prospective interest rate increases at the end of policy years 10, 15, and 17 through 20, resulting in a 1% cumulative increase to the interest rate credited to policyholders.  *See, e.g.*, Lifetrend 3 Rate Card and Specifications at CLIC0003509, attached as Ex. 2 to Hopkins Decl.; Lifetrend 4 Rate Card and Specifications at CLIC0003517, attached as Ex. 3 to Hopkins Decl.

The Milliman Model demonstrates that the actual amount of interest that Conseco will earn on its investments (Interest Earned) is less than the interest Conseco guaranteed to credit to policyholders' accounts (Interest Credited), resulting in a net loss for Conseco (or negative Interest Gain).  ████████████████████████████ ████████████████████████████████

█████████   As explained above, the Milliman Model's projected yearly profits took into account any negative interest gain.  Conseco offset the negative interest gain by increasing the cost-of-insurance charges to "break even." ████████████████████████████████████████ ████████████████████████   By doing so, Conseco is using cost-of-insurance charges for a purpose completely unrelated to the actual cost of insurance.  When interpreting policy language, a court will examine the plain meaning or the "meaning a lay person would attach to it."  *See Waller*, 11 Cal. 4th at 18.  The plain meaning of a cost-of-insurance charge is a charge related to the cost of insurance.  Thus, by offsetting the negative interest gain through cost-of-insurance charges, Conseco is violating the cost-of-insurance provision.

Further, by using cost-of-insurance charges to recover the gap between the Policies' guaranteed credited interest rates and the actual interest Conseco earned on the accumulation accounts, Conseco is improperly diluting those guaranteed rates.  In other words, Conseco is forcing *policyholders* to pay, as cost of insurance, for a portion of the interest that Conseco is contractually obligated to credit to policyholders' accumulation accounts.  This constitutes a clear breach of the Policies' interest credit guarantees.

## IV.     CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Partial Summary Judgment declaring that the current cost-of-insurance rates violate the Policies because the rates are inconsistent with one or more provisions of the Policies, including the cost-of-insurance, expense charge, Non-Participating, and interest guarantee provisions.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT                                3:10-md-02124-SI

1   Dated:  September 27, 2012                    Respectfully submitted,

2

3                                                        _____/s/_____

4                                                    Craig J. Litherland (*Pro Hac Vice*)
                                                     litherlandc@gotofirm.com
5                                                    Andrea K. Hopkins (*Pro Hac Vice*)
                                                     hopkinsa@gotofirm.com
6                                                    Michelle A. Price (*Pro Hac Vice*)
                                                     pricem@gotofirm.com
7                                                    Emily P. Grim (*Pro Hac Vice*)
                                                     grime@gotofirm.com
8                                                    Daniel I. Wolf (*Pro Hac Vice*)
                                                     wolfd@gotofirm.com
9                                                    GILBERT LLP
                                                     1100 New York Avenue, NW, Suite 700
10                                                   Washington, DC 20005
                                                     Telephone:  (202) 772-2200
11                                                   Facsimile:  (202) 772-3333

12

13                                                   David J. Millstein (CSB #87878)
                                                     dmillstein@millstein-law.com
14                                                   MILLSTEIN & ASSOCIATES
                                                     100 The Embarcadero, Suite 200
15                                                   San Francisco, CA 94105
                                                     Telephone:  (415) 348-0348
16                                                   Facsimile:  (415) 348-0336

17

18                                                   Joseph J. Tabacco, Jr. (CSB #75484)
                                                     Christopher T. Heffelfinger (CSB #118058)
19                                                   Bing W. Ryan (CSB #228641)
                                                     BERMAN DEVALERIO
20                                                   Once California Street, Suite 900
                                                     San Francisco, CA 94111
21                                                   Telephone:  (415) 433-3200
                                                     Facsimile:  (415) 433-6382

22

23                                                   *Attorneys for Plaintiffs*

24

25

26

27

28
                                             – 24 –

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on September 27, 2012 a true and correct copy of the foregoing was

3   delivered on the following counsel via electronic filing:

4                                    Raoul D. Kennedy
                                     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
5                                    525 University Avenue, Suite 1100
                                     Palo Alto, California 94301
6                                    Email:  Raoul.Kennedy@skadden.com

7                                    James R. Carroll
                                     David S. Clancy
8                                    Christopher A. Lisy
                                     Abra C. Bron
9                                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                     One Beacon Street, 31st Floor
10                                   Boston, Massachusetts 02108
                                     Email:  James.Carroll@skadden.com
11                                   Email:  David.Clancy@skadden.com
                                     Email:  Christopher.Lisy@skadden.com
12                                   Email:  Abra.Bron@skadden.com

13

14                                   _____/s/_____
                                              Andrea K. Hopkins

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PARTIAL                                3:10-md-02124-SI
SUMMARY JUDGMENT