# Exhibit 12

## to Declaration of Andrea Hopkins in Support of Motion for Partial Summary Judgment

## IN THE MATTER OF

## CONSECO LIFE INSURANCE COMPANY, ET AL

## REGULATORY SETTLEMENT AGREEMENT

WHEREAS, the Insurance Commissioner of the State of California, the Insurance Commissioner of the State of Florida, the Insurance Commissioner of the State of Iowa, the Insurance Commissioner of the State of Indiana, and the Insurance Commissioner of the State of Texas (collectively the "Lead Regulators") have conducted a multi-state examination regarding allegations related to the sale, administration and management of Conseco Life Insurance Company's Lifetrend life insurance policies; and

WHEREAS, the Lead Regulators have also conducted a multi-state examination of the processes Conseco Life Insurance Company, Conseco Insurance Company, Conseco Health Insurance Company, Bankers Life and Casualty Company, and Washington National Insurance Company (collectively with Conseco Life the "Conseco Companies") use to identify, manage, and correct policy administration issues; and

WHEREAS, the Lead Regulators and the insurance regulators of each of the remaining states and the District of Columbia that agree to approve this Agreement (the "Participating Regulators") (collectively the Lead Regulators and Participating Regulators are referred to as "Signatory Regulators") desire to enter into an Agreement with Conseco Life to resolve the allegations related to the Lifetrend life insurance policies; and

WHEREAS, the Signatory Regulators desire to enter into an Agreement with the Conseco Companies to address the manner in which the Conseco Companies identify, manage and correct policy administration issues.

CLIC 0007604

NOW, THEREFORE, in consideration of the payments and the respective representations, agreements and conditions hereinafter set forth, and intending to be legally bound hereby, the Lead Regulators and the Conseco Companies on this 28th day of May, 2010 ("Execution Date") hereto agree as follows.

CLIC 0007605

**Index**

**Part I.** **Definitions**

**Part II.** **Lifetrend Policies**

A. Recitals

B. Corrective Action Plan

1. Additional Policy Benefits

   a. Required Additional Policy Benefits

      i. Enhanced Continuation of Insurance

      ii. Extended Protection from Policy Termination

   b. Optional Additional Policy Benefits

      i. Face Amount Reduction

      ii. Reduced Paid-Up Policy

2. Settlement Pool

3. Election Notices

4. Nonguaranteed Element Changes

5. Reinstatement of Surrendered Policies

6. Refunds of Shortfall Payments

C. Reporting

D. Monetary Assessment

E. Monitoring

**Part III.** **Process and Information Quality Process**

A. Recitals

B. Plan

C. Reporting

D. Monitoring

**Part IV.** **Other Provisions**

**Part V.** **Signature Pages**

CLIC 0007606

**Exhibits**

- A. Lifetrend Policy Count
- B. Enhanced Continuation of Insurance Endorsement
- C. Additional Policy Option Confirmation and Policy Endorsement
- D. Settlement Pool Distribution Plan
- E. Election Notice
- F. Election Form and Release
- G. NGE Change Description
- H. NGE Review Process
- I. Monetary Assessment Allocation Methodology

CLIC 0007607

**Part I.     Definitions**

For purposes of this Agreement the following terms shall have the following meanings:

"Agreement" means this Regulatory Settlement Agreement.

"Day" means calendar day.

"Death Benefit" means the definition used in the Lifetrend Policy for the death benefit.

"Effective Date" means the date this Agreement is executed by insurance regulators of

35 jurisdictions with a combined Lifetrend policy count that exceeds 75% of the total

policy count of all Lifetrend policies as set out by Exhibit A.

"Election Form and Release" means the forms on which each Lifetrend Policyowner

may elect one of the optional additional policy benefits (i) a Face Amount Reduction, (ii)

a Reduced Paid-Up Policy, and if eligible, (iii) to participate in the Settlement Pool.

"Eligible Lifetrend Policyowner" means a Lifetrend Policyowner who has not either (i)

missed no more than one Scheduled Premium payment as of September 1, 2008,

provided the number of annual premiums paid exceeds the number of years set by the

policy form's illustration software to show the limited pay or vanish option; or (ii)  been

sent a letter by Conseco Life or a predecessor company specifically stating the Lifetrend

Policyowner had been placed on the Continuation of Insurance Provision of his/her

policy prior to September 1, 2008.   An Eligible Lifetrend Policyowner is eligible to

participate in the Settlement Pool.

"Enhanced Continuation of Insurance Provision" (ECOI) means an extra-contractual

benefit unilaterally conferred on Lifetrend Policyowners by Conseco Life which allows

Lifetrend Policyowners to make flexible premium payments at any time.  The ECOI will

CLIC 0007608

also provide Lifetrend Policyowners with the option to maintain supplemental benefits provided by riders.

"Execution Date" means the date the Agreement is executed by the Conseco Companies and the Lead Regulators.

"Face Amount Reduction" means a reduction in the Sum Insured under the policy pursuant to the election of an Optional Additional Policy Benefit by a Lifetrend Policyowner as described in Paragraph 37.

"Guaranteed Cash Values" also known as "Guaranteed Policy Values" means the policy values shown on the Policy Data Pages of the Lifetrend policies.

"Lead Regulators" means the California, Florida, Indiana, Iowa and Texas Departments of Insurance and their respective Commissioners of Insurance.

"Lifetrend Policyowner" means an individual person who as of September 30, 2008 owned one or more Lifetrend policies from the Lifetrend Policy series I, II, III, IV, V and VII, except for those policyholders who have either (i) claimed or received a death benefit or (ii) have surrendered their policy and does not reinstate the policy under the provisions of Paragraph 62.

"Monthly Anniversary Date" means the monthly recurring date of the policy date set forth on the Policy Data Page of the individual Lifetrend policies.

"Net Cash Value" means the cash value of the accumulation account of the Lifetrend policy, less the surrender charge, if any, less any indebtedness.

"Non-Guaranteed Elements" means Cost of Insurance rates and monthly expense charges.

"NGE Changes" is defined in Paragraph 15.

CLIC 0007609

"Optional Additional Policy Benefits" means the Face Amount Reduction and Reduced Paid-Up Policy provided for in this Agreement.

"Optional Premium Payment Provision" or "OPPP" is defined in Paragraphs 5 and 8. "Overloan" means when the total indebtedness of a policy equals or exceeds the cash value of the policy.

"Participating Regulator" means the state insurance regulators (including the insurance regulator of the District of Columbia), other than the Lead Regulators, that approve and execute this agreement.

"Reduced Paid-Up Policy" means the act of reducing the sum insured of a Lifetrend policy to an amount chosen by the Lifetrend Policyowner pursuant to the election of an Optional Additional Policy Benefit as described in Paragraph 37.

"Reinstatement Letter" is defined in Paragraph 62.

"Required Additional Policy Benefits" means the Enhanced Continuation of Insurance Benefit and the Extended Protection from Policy Termination benefits provided by this Agreement.

"Scheduled Premium" means the annual premium as listed on a Lifetrend Policyowner's policy data page. If the premium is paid other than annually, the Scheduled Premium is the annual total of the premium as listed on the Lifetrend Policyowner's policy data page.

"Settlement Pool" means the amount of funds set aside by Conseco Life for apportionment among Eligible Lifetrend Policyowners who elect to participate in the Settlement Pool.

CLIC 0007610

"Shortfall Amount" is a term used by Conseco Life to indicate the amount needed to increase the accumulation account value to exceed the sum of the guaranteed cash value plus surrender chargers and any indebtedness to continue to qualify for the Optional Premium Payment provision of certain Lifetrend Policies.

"Shortfall Notice" is defined in Paragraph 19.

"Signatory Regulators" collectively means the Lead States and Participating Regulators.

"Surrendered Policy" means any Lifetrend III, IV-87, IV-93, and IV-95 policy that was surrendered after October 7th 2008, except for (i) those policies that were surrendered after the policyowner provided Conseco Life with written documentation independently confirming his or her awareness of the Moratorium and his or her desire to proceed with the requested surrender or (ii) those policies that were surrendered after the policyowner was provided written notification of the Moratorium but did not withdraw his or her surrender request after being informed of the option to do so.

"Termination Date" means the date on which the later of the conclusion of the forty-eight month period following the implementation of the NGE changes authorized by Paragraphs 56 and 57 respectively or the completion of the independent assessment provided for in Paragraph 60 occurs.

"Under Funded" is the term used by Conseco Life to refer to the situation wherein a policy no longer meets the requirements of the Optional Premium Payment Provision of certain Lifetrend Policies.

CLIC 0007611

**Part II.    Lifetrend Policies**

**A.    Recitals**

1.    Conseco Life is an Indiana corporation and at all relevant times was a licensed insurance company in 49 states and the District of Columbia.

2.    Conseco Life is a direct subsidiary of Washington National Insurance Company, an Illinois insurance company. Washington National Insurance Company is a direct subsidiary of CDOC, Inc., a Delaware corporation, with its principal place of business in Carmel, Indiana. CDOC, Inc. is a subsidiary of Conseco, Inc., a Delaware corporation, with its principal place of business in Carmel, Indiana.

3.    Between 1978 and 1996, Massachusetts General Life Insurance Company ("MGL") and Philadelphia Life Insurance Company ("PLI"), both subsidiaries of the Life Partners Group, designed, sold, and administered a group of interest sensitive whole life insurance policies collectively referred to as "Lifetrend" policies. Conseco, Inc. acquired control of Life Partners Group, MGL and PLI in 1996. Following that acquisition, MGL and PLI continued to market the Lifetrend products through 1997 and to administer them using the administrative system developed by Life Partners Group. The administrative system is commonly referred to as the CK4 Administrative System. In 1997, MGL was renamed Conseco Life, and in 1998, PLI was merged into Conseco Life. Most Lifetrend policies were sold prior to Conseco Inc.'s acquisition of control of MGL and PLI.

4.    At the time the Lifetrend policies were sold between 1978 and 1997, certain marketing materials, presentations, and policy illustrations for Lifetrend policy forms within the I, II, III, IV, V and VII series that were prepared by MGL and PLI for

CLIC 0007612

agent use only, contained references to "vanishing premiums" and "paid-up policies." For example, agent marketing material issued by PLI stated that for Lifetrend III, IV and V policies "[b]ased on the 'minimum' guaranteed interest rate of 4 1/2% and 'current' expenses charges and mortality, all products will illustrate favorably under a Vanish Pay assumption." [Interest-Sensitive Lifetrend Series Product Specifications Brochure – Form 83221A]. A "Product Hotline" brochure - Form 53227B – for agents issued by PLI regarding the sale of Lifetrend III, IV and V was captioned "Interest Sensitive Whole Life with a 5 Year Vanish." (emphasis in original). Likewise, Lifetrend III and IV were individually marketed to agents with brochures using the caption "A Fixed Premium Interest-Sensitive Whole Life Policy With Vanish Option." (emphasis added). The Lifetrend III and IV marketing brochures (Form NP-WL- 86), also stated:

> Premiums: Premiums are fixed and may be paid continuously, however, the insured has the option after the payment of 5 year's premiums of "vanishing" or limiting premium payments, thereby creating a "paid-up" policy based on current interest, mortality and expenses assumptions.

(emphasis in original).

5.    Agents were provided disks containing software for use in preparing policy illustrations to be shown to prospects for the purpose of selling Lifetrend policies. For most of the Lifetrend policy forms within the I, II, III, IV, V and VII series, the software defaults were commonly set to show the limited pay and vanish payment options at five years using the Optional Premium Payment Provision ("OPPP") contained in the policies. For Lifetrend policy forms III, IV-87, IV-93, IV-95, and V, current assumptions used in policy illustrations shown by agents to prospects demonstrated a five annual payment contract with cost of insurance and expense charges that ceased after a

CLIC 0007613

certain number of years, typically after eight years. In some cases, for Lifetrend IV-97, the illustration vanish pay option default was set to show ten or more years.

6.      Conseco Life did not charge policyowners cost of insurance for Lifetrend III, IV (except Lifetrend IV-97), V and VII policies or charge policyowners monthly expense charges for Lifetrend IV, V and VII policies, after the policies had been in effect for eight (8) years. For Lifetrend III policies, Conseco Life did not charge the monthly per unit expense charge or COI charge in years nine (9) and thereafter, but did charge monthly per policy expense charges in all policy years. The Lifetrend I, II, and IV-97 policies have had the cost of insurance charges and monthly per policy expense charges in effect for all policy years.

7.      All Lifetrend policies contain language indicating that the premium payments are payable either for life or until a maturity date as set forth in the policy. The Lifetrend Policyowner may elect to exercise rights under the OPPP.

8.      The OPPP language found in most Lifetrend policies allows Lifetrend Policyowners, under conditions as defined in the policy, to make premium payments in amounts less than the premium due or to forego premium payments altogether. In pertinent part, the OPPP states:

On any premium due date on or after the fifth policy anniversary the owner may elect in writing, prior to the end of the grace period to pay: an amount which is less than the premium then due on the policy. After such payment the amount remaining in the accumulation account must exceed the sum of: the then guaranteed cash value; plus the then applicable surrender charge; and any debt.

9.      When the policy no longer meets the OPPP requirements premium payments are again required to keep the policy in force pursuant to the policy language.

*Page 11 of 56*

CLIC 0007614

10. Lifetrend policy terms indicate that if a policyowner fails to remit a premium in an amount sufficient to continue to meet the OPPP requirements, the policy becomes subject to the Non-Forfeiture Provision. The automatic nonforfeiture option is the Continuation of Insurance provision. Under the Continuation of Insurance provision, all riders terminate, no further premium payments are allowed, and the policy terminates when the remaining cash value is insufficient to cover the monthly deductions.

11. In many instances, Lifetrend III, IV and V policyowners submitted letters to Conseco Life electing the option to exercise the OPPP on or after the fifth policy anniversary. Lifetrend Policyowners who stopped paying premiums after the fifth policy year but who met the OPPP requirements were also placed on OPPP by Conseco Life or its predecessors.

12. Conseco Life, or its predecessors, sent letters to Lifetrend Policyowners confirming their placement into the OPPP. The letters included language identical to or similar to the following:

> We have placed your policy on the optional premium payment provision.
>
> Under this option, regular scheduled billings will not generate. However, at any time within a 12-month period, you may contribute additional payments up to the scheduled annual premium.
>
> Should at any time the policy's net cash value (accumulation account less surrender charge, less indebtedness) become insufficient to cover the monthly deductions, a premium notice will be sent.
>
> The actual length of time the coverage remains in force under the optional payment depends upon future interest rates and the insured's age and sex.
>
> If you need assistance or have any questions, please contact us.

CLIC 0007615

13.     The CK4 Administrative System that Life Partners Group developed and Conseco Life continued to use to administer the Lifetrend policies did not fully support the analysis or calculations required to automatically generate premium notices to Lifetrend Policyowners when the amount remaining in the accumulation account no longer exceeded the sum of the then guaranteed cash value plus the then applicable surrender charge and any indebtedness as required to maintain the policy under OPPP.

14.     During the course of the examination, Conseco Life informed the Lead Regulators that it became generally aware of the limitations of the CK4 Administrative System several years prior to bringing the issue to the attention of state regulators. Conseco Life represented to the Lead Regulators that it was researching the limitations of the CK4 Administrative System and developing a plan to address those limitations during the time period when it became aware of the limitations of the CK4 Administrative System. Conseco Life notified certain Lifetrend Policyowners and certain state insurance regulators of the administrative issues related to the CK4 Administrative System in the third and fourth quarters of 2008. During this period, the Company continued to pay death claims for all Lifetrend policies.

15.     In October 2008, Conseco Life mailed letters to Lifetrend III, IV-87, IV-93, and IV-95 policyowners informing them that there would be an increase in their monthly Cost of Insurance and expense charges. The changes to the Cost of Insurance rates and monthly expense charges are collectively referred to herein as Non-Guaranteed Elements ("NGE") changes. The letters included the following language:

> We are writing to notify you of an increase in your monthly Cost of Insurance ("COI") rates and Expense Charges for the life insurance policy you purchased from Conseco Life Insurance Company . . . . Under the

CLIC 0007616

terms of your policy, we may adjust your COI rates and Expense Charges subject to the guaranteed maximum amounts shown in your policy. The Company is taking this action because experience factors have differed from those assumed when your policy was originally sold . . . . The increase in the monthly deductions from your policy will begin on your next policy anniversary date on or following February 1, 2009.

16.     In addition to advising Lifetrend III, IV-87, IV-93, and IV-95 policyowners of

the NGE changes, Conseco Life also advised these Lifetrend policyowners in October

2008 of an enhancement to the Non-Forfeiture Provision's Continuation of Insurance

section of their policies. Specifically, these Lifetrend policyowners were advised of the

following:

To provide you with additional flexibility to manage your coverage, the Company is enhancing the Non-Forfeiture provision of your policy as follows: (1) the Company will allow you to make flexible premium payments to keep your policy in-force under the Continuation of Insurance provision described above; (2) the Company will keep all policy riders and benefits in force while the policy is administered under Continuation of Insurance; (3) the Company will allow you to establish premium billings for your policy when it is on Continuation of Insurance so you can extend the time that your policy will remain in force.

17.  For purposes of this Agreement, this enhancement shall be referred to as

Enhanced Continuation of Insurance ("ECOI"). Under the ECOI, Lifetrend Policyowners

may: (i) make flexible premium payments to keep their policies in force; (ii) keep all

policy riders and benefits in force while the policies are subject to the Continuation of

Insurance section; and (iii) re-establish premium billings while the policy is subject to the

Continuation of Insurance section to extend the time that the policies remain in force.

18.     Some of the Lifetrend III, IV-87, IV-93 and IV-95 policyowners who

received the October 2008 letters were also informed that their Lifetrend policies were

Under-Funded. Specifically, Conseco Life advised these Lifetrend Policyowners:

CLIC 0007617

Due to administration issues related to your policy, you may not have previously been informed that your policy is Under Funded and additional premiums were required. Despite this administrative issue, your policy has remained in effect and would have provided a death benefit if the insured had passed away. We have addressed this administrative issue and in the future you will receive a shortfall notification at any point in time when your policy is Under Funded. Upon receiving this shortfall notification, you will have 60 days to remit a payment so your policy meets the OPPP requirements.

19. In November 2008, Conseco Life distributed the short-fall notifications

referenced in Paragraph 18 ("Shortfall Notices"). The Shortfall Notices informed certain

Lifetrend Policyowners of the need to remit payment to Conseco Life no later than

January 2009. The Shortfall Notices stated, in part:

This policy has reached a point where it can no longer be maintained under the Optional Premium Payment provision. The current accumulation account value no longer exceeds the sum of the guaranteed cash value plus the surrender charge and any debt. The payment amount requested represents the shortfall payment required to maintain the policy's guaranteed values.

The requested payment must be received in the Home Office no later than (January 2009). If the payment requested is not received by the due date, the policy will be placed on its Nonforfeiture Provision of Continuation of Insurance.

Upon receipt of this payment, your policy will resume regular premium billings on a quarterly basis. You may contact our office if you would like to request a mode other than quarterly billings.

20. From the time of purchase of a Lifetrend III, IV-87, IV-93, IV-95 and V,

Lifetrend policyowners received annual statements from Conseco Life or its

predecessor companies. These annual statements demonstrated positive growth in the

cash value of the policy over many years and failed to specifically state that policies

were Under-Funded.

CLIC 0007618

21.    After receiving consumer complaints regarding the Shortfall Notices, the Iowa Insurance Division issued a Cease and Desist Order on December 9, 2008 announcing a review of all advertisements and illustrations used in connection with the sale of the Lifetrend Policies and other products known as Conseco Indexed Universal Life 3+ (CIUL 3+), Guaranteed Universal Life 2000/3000 (GUL 2000/3000). Conseco Life was ordered to cease and desist (1) attempting to collect any premiums for alleged under-funding of policies; and (2) to place in a segregated account all payments collected from policyowners for the alleged Under-Funded payments and increases in cost of insurance and expense charges.

22.    On December 12, 2008, Conseco Life and the Indiana Department of Insurance, as the domestic regulator, agreed to place a "moratorium" on the implementation of the NGE Changes and Conseco Life's attempts to collect amounts by which certain Lifetrend policies were underfunded.    The Indiana Commissioner sent a notification to all Departments of Insurance notifying them of the moratorium and Conseco Life sent a letter to all Lifetrend III and IV Policyowners informing them of the same action.

23.    Prior to receiving the letter notifying them of the moratorium, some Lifetrend III and IV Policyowners paid the amounts requested in the Shortfall Noticies. Conseco Life applied the payments to policyowner account values where those payments have earned interest at the rate(s) set forth in the policies.

24.    After receiving consumer complaints regarding the Shortfall Notices, the Florida Office of Insurance Regulation issued an Order to Show Cause on December 22, 2008, which directed Conseco Life to show cause why its Lifetrend activities should

CLIC 0007619

not result in revocation or suspension of its Florida certificate of authority. On January 9, 2009, the Florida Office of Insurance Regulation called a market conduct examination of Conseco Life regarding consumer complaints and other related data.

25. In January 2009, the Insurance Commissioner of the State of Florida and the Insurance Commissioner of the State of Iowa joined with the Insurance Commissioner of Indiana and the Insurance Commissioner of the State of Texas to call a multistate market conduct examination of Conseco Life to review the NGE adjustments announced in the October and November of 2008 letters as well as the sales, administration and management of the Lifetrend policies ("Multistate Examination"). The Insurance Commissioner of the State of California joined the Multistate Examination in August 2009.

26. The Lead Regulators' review of the Lifetrend policies included the following issues:

a. Whether any marketing or advertising materials used by Conseco Life or its predecessors for the Lifetrend policies contained any false or misleading information;

b. Whether Conseco Life or its predecessors engaged in sales practices that misrepresented the benefits, advantages, or terms of the Lifetrend policies;

c. Whether any communication by Conseco Life or its predecessors was misleading to Lifetrend Policyowners;

d. Whether the Company had failed to properly manage or administer the Lifetrend policies; and

Page 17 of 56

CLIC 0007620

e.     Whether Conseco Life and its predecessors properly determined NGE changes made to the Lifetrend policies.

27.     For Lifetrend policy forms I, II, III, IV, V and VII, the Lead Regulators allege that violations have occurred related to the issues under review identified in Paragraph 25. Conseco Life and or its predecessors also marketed series VI and VIII Lifetrend Policies. The Lead Regulators also reviewed these policies as part of the Multistate Examination, but make no allegations regarding the sales, marketing, or administration of the Lifetrend VI and Lifetrend VIII policies except as to matters that may arise from the issues covered by Part III of this Agreement.

28.     Conseco Life does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it.

29.     The Lead Regulators and Conseco Life consider it desirable to resolve allegations set forth in Paragraph 27 pursuant to this Agreement as it will provide benefits to Conseco Life's policyowners and insureds.

30.     As a result of the ongoing Multistate Examination, the Lead Regulators engaged in discussions with Conseco Life with respect to concerns regarding the proposed NGE Changes; the Company's attempt to collect additional premiums for under-funded policies; the sales, administration and management of the Lifetrend policies; the application of the OPPP; the development of a Corrective Action Plan ("CAP") to address those concerns for the benefit of the Company's policyowners; and a means of providing for the enforcement of the CAP. After extensive discussion and

CLIC 0007621

exchange of information, Conseco Life and the Lead Regulators agreed to a CAP as set forth in this Agreement to resolve these issues.

**B. Corrective Action Plan**

31. Conseco Life will implement a CAP that includes the following provisions and as further detailed below:

- a. Provision of Required and Optional Additional Policy Benefits;

- b. Establishment of a Settlement Pool in which certain Eligible Lifetrend Policyowners may elect to participate;

- c. Election Notices;

- d. Institution of NGE changes as provided for by this Agreement;

- e. Reinstatement of Surrendered Policies;

- f. Refunds of Shortfall Payments;

- g. Reporting; and

- h. Monitoring.

32. During the pendency of the CAP, Conseco Life will not make any changes to the administration of the Lifetrend policies, except those changes explicitly set forth in or contemplated by this Agreement, without the prior approval of the Lead Regulators.

**1. Additional Policy Benefits**

**a. Required Additional Policy Benefits**

**i. Enhanced Continuation of Insurance**

33. Conseco Life shall amend all Lifetrend policies to make permanent the ECOI benefit. The amendment shall be in the form of an endorsement which will allow Lifetrend Policyowners to make flexible premium payments at any time. Flexible premium payments must be pre-approved by Conseco Life where those payments

*Page 19 of 56*

CLIC 0007622

would exceed the originally scheduled policy premium and may trigger corridor factor adjustments to the death benefit.

34.     The ECOI benefit shall provide Lifetrend Policyowners with the option to maintain supplemental benefits provided by riders.

35.     Conseco Life shall deliver an endorsement in the form attached hereto as Exhibit B, to all Lifetrend Policyowners in a jurisdiction represented by a Signatory Regulator. Until the endorsements are delivered, Conseco Life will continue to provide the ECOI benefit.     The Lead Regulators have reviewed and approved the form attached hereto as Exhibit B. By signing this Agreement, each Signatory Regulator agrees that it has reviewed and will approve a form filing as stated in Exhibit B.

## ii.     Extended Protection from Policy Termination

36.     Prior to the expiration of the time for Lifetrend Policyowners to elect the Optional Additional Policy Benefits, Conseco Life shall not terminate the policy of any Lifetrend Policyowner who received the communications described in Paragraphs 15 and 19 of this Agreement for failure to make a premium payment. This Paragraph 36 is not intended to prevent Lifetrend Policyowners from exercising their right to surrender a policy pursuant to the policy's surrender provisions, nor does it preclude termination following the payment of a death benefit. In the event Conseco Life receives a request to surrender a policy prior to the expiration of the time for Lifetrend Policyowners to elect the Optional Additional Policy Benefits, Conseco Life shall advise the Lifetrend Policyowner of the benefits available under this Agreement prior to acting upon the surrender request. Conseco Life shall prepare a form response to a surrender request

*Page 20 of 56*

CLIC 0007623

and shall submit such response to the Lead Regulators for approval within 30 days of the Effective Date of this Agreement.

### b. Optional Additional Policy Benefits

37.     In addition to providing the required additional policy benefits, Conseco Life shall make the following two options available to all Lifetrend Policyowners. Conseco Life shall not offer an Optional Additional Policy Benefit to a policyowners whose policy provides the equivalent of the Optional Additional Policy Benefit.

#### i.     Face-Amount Reduction.

Conseco Life shall allow all Lifetrend Policyowners as of September 30, 2008, a one-time opportunity to reduce the face amount of their policies to an agreed-upon amount as requested by the Lifetrend Policyowners. Further premium payments may be due from Lifetrend Policyowners electing this option. Conseco Life will not deduct any surrender charge from the accumulation account in determining the amount available to purchase a reduced face amount policy. Unless their policy already contains a face amount reduction provision, Conseco Life may require any Lifetrend Policyowner that elects this option to execute and return a release before this optional benefit is provided.

#### ii.     Reduced Paid-Up Policy

Conseco Life shall allow all Lifetrend Policyowners as of September 30, 2008, a one-time opportunity to elect a reduced paid-up policy without any further premiums due.     Conseco Life will compute the amount of death benefit that the accumulation account minus any indebtedness would purchase based on a single premium calculated by using the respective policy's guaranteed cost of insurance rate and guaranteed

*Page 21 of 56*

CLIC 0007624

interest rate. Unless their policy already contains a reduced paid-up provision, Conseco Life may require any Lifetrend Policyowner that elects this option to execute and return a release before this optional benefit is provided. If a Lifetrend Policyowner elects either a face amount reduction or a reduced paid-up policy pursuant to paragraph 37(i) or 37(ii), the Lifetrend Policyowner shall be provided a confirmation of his or her election in the Form of Exhibit C. The Lead Regulators have reviewed and approved the form attached hereto as Exhibit C. By signing this Agreement, each Signatory Regulator agrees that it has reviewed and will approve a form filing as stated in Exhibit C.

## 2. Settlement Pool

38.     Within 30 days of the Effective Date of this Agreement, Conseco Life shall establish a settlement pool in the amount of $10,000,000 for the benefit of Eligible Lifetrend Policyowners ("Settlement Pool"). The funds will be deposited in a segregated account.     Accrued interest will be allocated to participating Eligible Lifetrend Policyowners at the time of distribution.

39.     Conseco Life shall distribute funds from the Settlement Pool to Eligible Lifetrend Policyowners who elect to participate in the Settlement Pool pursuant to the provisions of the Settlement Pool Distribution Plan attached hereto as Exhibit D. Conseco Life may require any Lifetrend Policyowner that elects this option to execute and return a release before this optional benefit is provided.

## 3. Election Notices

40.     All Lifetrend Policyowners, as of September 30, 2008, will be notified via first class mail of the opportunity to elect one of the Optional Additional Policy Benefits. The mailing will include an election form and a postage-prepaid envelope addressed to

*Page 22 of 56*

CLIC 0007625

Conseco Life. The Lifetrend Policyowner Notice shall be in form attached hereto as Exhibit E. The Lifetrend Policyowner Election Form and Release shall be in the form attached hereto as Exhibit F.

41. In addition to being notified of the opportunity to elect one of the Optional Additional Policy Benefits, Eligible Lifetrend Policyowners will also be notified via first class mail of the opportunity to participate in and receive a share of the Settlement Pool. The mailing will include an election form and a postage-prepaid envelope addressed to Conseco Life. The Eligible Lifetrend Policyowner Notice shall be in a form attached hereto as Exhibit E. The Eligible Lifetrend Policyowner Election Form and Release shall be in the form attached hereto as Exhibit F.

42. Conseco Life may use electronic means to communicate with Lifetrend Policyowners in a manner as approved by the Lead Regulators.

43. For any mailing to a Lifetrend Policyowner which is returned as undeliverable by the U.S. Postal Service, Conseco Life shall make reasonable efforts to locate the Lifetrend Policyowner using procedures typically used for locating missing policyowners and as mutually agreed to by Conseco Life and the Lead Regulators.

44. Conseco Life shall send a Follow-up Notice and Election Form and Release by certified mail to Lifetrend Policyowners who were sent an Election Notice, but who did not respond by returning an Election Form and Release within thirty (30) days of its mailing. If a Lifetrend Policyowner does not respond to the Follow-up Notice by letter, electronic email or facsimile to the Company within thirty (30) days of the date of its mailing, Conseco Life shall consider that the Lifetrend Policyowner has refused the

CLIC 0007626

offer to receive a distribution and/or elect one of the Optional Additional Policy Benefits. Conseco Life will proceed to provide the Required Additional Policy Benefits.

45. The Company may refuse to honor an election to receive an Optional Additional Policy Benefit or participate in the Settlement Pool for one or more of the following reasons:

    i.    the Election Form and Release has not been submitted in a timely manner;

    ii.    the Election Form and Release is incomplete;

    iii.    the Election Form and Release has not been signed by each owner of the Policy;

    iv.    the representations and agreement in the Election Form and Release have been deleted or modified;

    v.    the Lifetrend Policyowner has previously signed an agreement, while represented by counsel, pursuant to a settlement of a claim, action, lawsuit or proceeding, pending or threatened, that released the Company from any further claims concerning the Lifetrend policy.

46. If the Company refuses to honor an Election Form and Release for one or more of the reasons set forth in Paragraph 45 or because the Lifetrend Policyowner is not entitled to the option elected, the Company will make reasonable efforts to:

    (i)    contact the Lifetrend Policyowner in order to resolve any defects in the Election Form and Release; or

    (ii)    return the Election Form and Release to the Lifetrend Policyowner with a letter explaining the reasons for the refusal.

*Page 24 of 56*

The Company shall retain a copy of all refused Election Forms and Releases for a period of three (3) years following the Termination Date.

47.    If the Lifetrend Policyowner does not correct the Election Form and Release within thirty (30) days of the notification under Paragraph 46, the policy will continue until the net cash value is insufficient to cover charges.

48.    In the event that a Lifetrend Policyowner objects to the Company's refusal to honor an Election Form and Release by Conseco Life based on Paragraph 45, the objection will be referred to the Lead Regulators to review the objection and decide if the Election Form and Release should be accepted or rejected for the purpose of the Settlement Pool or the Optional Additional Policy Benefits.

49.    The Lifetrend policies of Lifetrend Policyowners who do not reply to inquiries from Conseco Life or who otherwise fail to make an acceptable selection for the Optional Additional Policy Benefits under the CAP will continue until the net cash value is insufficient to cover the monthly deduction of the agreed Cost of Insurance and Expense Charges.

50.    The Lead Regulators and their designees shall monitor from time to time the Company's training and telephone calls.  The Company will establish a toll-free telephone number for consumer inquiries regarding the terms of this Settlement Agreement.

51.    Throughout the CAP, Conseco Life shall make all relevant records available to the Lead Regulators, and shall provide progress reports as may be requested by the Lead Regulators.

CLIC 0007628

52. All communications sent to Lifetrend Policyowners and all training materials and scripts used by Conseco Life staff or its vendors to implement the terms of this Agreement shall be in a form approved by the Lead Regulators. Each mailed Notice must include a toll-free number for contacting the company, a form to be used in making necessary elections and a postage-prepaid envelope addressed to the company. Only materials approved by the Lead Regulators may be included with the Notices.

53. Conseco Life may elect to exclude a Lifetrend Policyowner from the CAP if

(i) the Lifetrend Policyowner has had his or her claim resolved through litigation or settlement, or

(ii) the Lifetrend Policyowner has a pending litigation against the Company.

54. If Conseco Life elects to exclude a policyowner from the CAP on the basis of Paragraph 53(ii) the Company shall provide a Notice informing the Policy Owner of the benefits available under the terms of this Agreement, the reason(s) for the policyowner's exclusion, and the policyowner's opportunity to elect benefits under the terms of the Agreement if the policyowner dismisses with prejudice the pending litigation. No Lifetrend Policyowner shall be excluded from the CAP on the basis of membership in a purported class in any class action lawsuit pending against the Company. This Agreement neither imposes any obligations upon, nor takes away any rights of any Lifetrend Policyowner who chooses not to participate in the CAP.

55. Conseco Life shall maintain proof of mailing for each Notice and financial records of the benefits awarded in the CAP for a period of 3 years after the date of last notice or the date of the Award of Relief, whichever is later.

*Page 26 of 56*

CLIC 0007629

### 4. NGE Changes

56. Conseco Life may increase the monthly expense charges and the monthly Cost of Insurance rates for Lifetrend III, IV-87, IV-93 and IV-95 policies as follows:

> a) Conseco Life may increase the monthly Cost of Insurance rates to those described in Exhibit G, multiplied by the following factors:

> i) 0.50 on or after September 1, 2010

> ii) 0.75 no fewer than nine months after the increase permitted in Paragraph 56(a)(i).

> iii) 1.00 no fewer than twelve months after the increase permitted in Paragraph 56(a)(ii).

> iv) 1.15 no fewer than twelve months after the increase permitted in Paragraph 56(a)(iii).

> b) Beginning in September, 2010, Conseco Life may increase the monthly per policy expense charge to $5.00 per month.

> c) Beginning in September, 2010, Conseco Life may increase the monthly per unit expense charges to those charges described in Exhibit G. The per unit expense charge shall be subject to a maximum of the lesser of $.09 per thousand of face amount or $20.00 per policy per month until August 31, 2014.

Conseco Life may implement the changes permitted by this Paragraph 56 on the first policy monthly anniversary date on or after each time period set forth in this Paragraph. In no event shall the monthly cost of insurance rates exceed a Lifetrend

*Page 27 of 56*

policyowner's contract maximum. Notice of the NGE increases utilizing a per thousand rate analysis will be included as part of the Election Notice.

57.    After August 31, 2014, Conseco Life may reduce or increase the monthly per policy or per unit expense charge on any Lifetrend Policy to a level other than the levels provided by Paragraph 56 only if the reduction or increase is consistent with expected expense levels. All future NGE changes, except those explicitly permitted by this Regulatory Settlement Agreement, must follow the process set forth in Exhibit H.

58.    Conseco Life may increase the monthly expense charges and the monthly Cost of Insurance rates for Lifetrend V and VII policies as follows:

> a) Beginning on or after September, 2010, Conseco Life may increase the monthly Cost of Insurance rates to those described in Exhibit G.
>
> b) Beginning on or after September 2010, Conseco Life may increase the monthly per policy expense charge to $5.00 per month.
>
> c) Beginning on or after September 2010, Conseco Life may increase the monthly per unit expense charges to those described in Exhibit G. The per unit expense charge shall be subject to a maximum of the lesser of $ .09 per thousand of face amount or $20.00 per policy per month until August 31, 2014.

Conseco Life may implement the changes permitted by this Paragraph 58 on the first policy annual anniversary date on or after September 1, 2010, provided that the 90 day notification required by the policy has been met. In no event shall the expense charges exceed a Lifetrend policyowner's contract maximum. Notice of the NGE increases will be included as part of the Election Notice.

CLIC 0007631

59.     After August 31, 2014, Conseco Life may reduce or increase the monthly per policy or per unit expense charge on any Lifetrend Policy to a level other than the levels provided by Paragraph 58 only if the reduction or increase is consistent with expected expense levels.

60.     Within sixty (60) days of the conclusion of the twelve (12) month period following the complete implementation of the NGE changes authorized by Paragraphs 56(a)(iv), Conseco Life shall notify the Lead Regulators of the opportunity to request an independent assessment to determine whether observed mortality experience differs by more than 10% from the assumed mortality experience used to determine the NGE charges. Observed mortality experience will be considered to differ by more than 10% from the assumed mortality experience if credible additional experience has developed that would support a finding that there is 95% confidence that assumed experience differs from observed mortality. If the Lead Regulators request an independent assessment, the Lead Regulators shall choose from among the three independent actuarial firms submitted by Conseco Life to conduct the independent assessment. The cost of an independent assessment conducted pursuant to this paragraph shall be solely borne by Company.

61.     Lifetrend policy NGE changes except those authorized by Paragraphs 56 and 58 of this Agreement shall only reflect anticipated changes in actual experience or changes in expected expense levels. For Lifetrend I, II, or IV-97 Policies, any NGE change must reflect anticipated changes in actual experience or anticipated changes in expected expense levels and may only target a present value of $0.00, or a break-even

CLIC 0007632

result. The Lead Regulators shall monitor Conseco Life's adherence to the NGE change process set forth in Exhibit H.

### 5. Reinstatement of Surrendered Policies

62. Conseco Life shall prepare a Reinstatement Letter informing Lifetrend Policyowners who were sent the October 2008 Notification and who initiated a surrender of their policies or surrendered their policies prior to December 17, 2008 of the option to reinstate their Surrendered Policy with no evidence of insurability. The Reinstatement Letter shall be in a form approved by the Lead Regulators. To reinstate their Surrendered Policy, the policyowner will be required to repay the surrendered amount to Conseco Life and Conseco Life will credit back any surrender charges assessed. The right to reinstatement shall not be available for policies (i) where the insured is not living at the time of the reinstatement request; or (ii) where Conseco Life provided the policyowner with written notice of the Moratorium and the policyowner confirmed his or her surrender request or the policyowner did not withdraw his or her surrender request after receiving written notification of the Moratorium.

63. Lifetrend Policyowners that choose to reinstate their Surrendered Policy pursuant to Paragraph 62 shall receive the Required Additional Policy Benefits, may elect one of the Optional Additional Policy Benefits and participate in the Settlement Pool. Further, Lifetrend Policyowners that choose to reinstate their Surrendered Policy shall be subject to the NGE changes.

64. Lifetrend Policyowners that choose not to reinstate their Surrendered Policy pursuant to Paragraph 62 may elect to participate in the Settlement Pool only.

CLIC 0007633

65.     If a Lifetrend Policyowner does not respond to the Reinstatement Letter or does not return the surrendered amount within thirty (30) days of the date of the letter, Conseco Life shall consider the Lifetrend Policyowner to have refused the offer to reinstate the Surrendered Policy.

## 6.     Refund of Shortfall Payments

66.     In addition to the other benefits provided by this Agreement, Lifetrend Policyowners who have paid the Shortfall Amount requested by Conseco Life will also be offered the one-time opportunity to receive a refund of the shortfall payment plus interest equal to the interest accrued on the payment while in Conseco Life's possession.

## C.     Reporting

67.     For a period of five (5) years following the Effective Date of this Agreement, Conseco Life shall file with the Lead Regulators semi-annual reports of the financial performance of the Lifetrend policies beginning no earlier than the 2nd fiscal quarter following the Effective Date of this Agreement. In addition to the usual financial information, the report will include: the total amount collected for cost of insurance and a list of policies by policy number that have terminated due to death of the insured with the net amount of the death benefit paid (face amount less account balance). Any report required by this Paragraph 67, shall be filed with the Lead Regulators on or before ninety (90) days following the conclusion of the semi-annual period to which the report refers.

CLIC 0007634

68.     On a quarterly basis, beginning no earlier than the first complete fiscal quarter following the Effective Date of this Agreement, Conseco Life shall submit reports to the Lead Regulators that shall include the following information on an aggregated and jurisdiction-specific basis:

a.      The identity of each person to whom it has delivered a Lifetrend Policyowner Notice, including their last known mailing address and policy number;

b.      The identity of each person that responded, either in writing or telephonically, to a Lifetrend Policyowner Notice, including each person's mailing address, policy number, and telephone number, if available;

c.      The identity of each person for whom it received no response to a Lifetrend Policyowner Notice; and

d.      The identity of each person who requested to participate in the Settlement Pool and the amount of benefits received.

Any report required by this Paragraph 68, shall be filed with the Lead Regulators within forty-five (45) days following the conclusion of the fiscal quarter to which the report refers.

## D.     Monetary Assessment

69.     In settlement of the allegations referred to in Paragraph 26, Conseco Life agrees to pay a monetary assessment to the Signatory Regulators in the amount of $1,000,000.00 under the allocation methodology developed by the Lead Regulators and attached as Exhibit I.

70.     The amount payable under Paragraph 69 shall be tendered within twenty (20) business days of the Effective Date of this Agreement.

CLIC 0007635

71.     Conseco Life shall remit payment to each jurisdiction represented by a Signatory Regulatory in the amount due to that jurisdiction under the allocation methodology developed by the Lead Regulators. Conseco Life shall have no obligation hereunder to make payments to any jurisdiction represented by a regulator that does not adopt this Agreement within thirty (30) days of the Execution Date.

72.     With respect to any jurisdiction represented by a Signatory Regulator that has adopted this Agreement at or before the Effective Date of this Agreement Conseco Life shall remit payment to that jurisdiction within twenty (20) business days of the Effective Date.

73.     With respect to any jurisdiction represented by a Signatory Regulator that adopts this Settlement Agreement after the Effective Date, but within thirty days (30) days of the Execution Date, Conseco Life shall remit payment to that jurisdiction within twenty (20) business days of that jurisdictions adoption of the Agreement.

**E.    Monitoring**

74.     The Lead Regulators, on behalf of and for the benefit of the Participating Signatory Regulators, shall monitor Conseco Life's compliance with Part II Lifetrend policies provisions of this Agreement. Compliance with Part II Lifetrend policies provisions of this Agreement will be measured according to Conseco Life's full and timely implementation and completion of the CAP.

75.     Nothwithstanding Paragraph 82, the Indiana Department of Insurance shall conduct a targeted market conduct examination pursuant to Indiana Code § 27-1-3.1 of Conseco Life's compliance with the provisions of the CAP set out in this Agreement within five (5) years from the Effective Date. The Indiana Department of

CLIC 0007636

Insurances shall provide a report summarizing the results of that examination to the Lead Regulators, under the confidentiality provisions of Ind. Code § 27-1-3.1.

76. The monitoring of Conseco Life for compliance with the terms of this Part II of this Agreement constitutes an ongoing examination by the Indiana Department of Insurance, as a Lead Regulator, pursuant to Ind. Code § 27-1-3.1 et seq. To the extent permitted by law, the work papers, recorded information, documents, copies of work papers, and documents produced by, obtained by, or disclosed by Conseco Life to the Signatory Regulators, shall be given confidential treatment pursuant to relevant Indiana law.

77. Following the receipt of any report required by Paragraph 67 or 68 of this Agreement, if the Lead Regulators, in consultation with other Participating Regulators, determine that Conseco Life has materially, substantially and consistently failed to comply with the requirements of the CAP, a penalty of up to $50,000 may be assessed for the material non-compliance.

78. The total of the penalties levied against Conseco Life pursuant to Paragraphs 77 and 98 shall not exceed $1,000,000.

79. Conseco Life shall retain all legal rights to challenge any finding, assessment, or penalty made during or as a result of the Monitoring of Part II of this Agreement.

80. The reasonable costs of the Lead Regulators in the negotiation, implementation and monitoring of Conseco Life's compliance with Part II of this Agreement, including the cost of conducting any reviews or examinations provided by the Agreement, shall be paid by Conseco Life. Such expenses shall be payable to the

*Page 34 of 56*

CLIC 0007637

Lead Regulators within thirty (30) days of the presentation of valid receipts. Moreover, reasonable expenses of the Lead Regulators incurred in monitoring Conseco Life's compliance with Part II of this Agreement, including the expenses of conducting or attending any meetings, presentations, or discussions with Conseco Life shall be the responsibility of Conseco Life.

81.    Time is of the essence in implementing the provisions of Part II of this Agreement, and the times specified may only be extended for good cause and with the advanced written consent of the Lead Regulators, but such consent of the Lead Regulators shall not be unreasonably withheld.

82.    For the period covered by the Term of Part II of this Agreement, each of the Signatory Regulators agrees that such Signatory Regulator and the Signatory Regulator's insurance department will not:

(i) conduct a market conduct examination or engage in any of the continuum of regulatory activities detailed in the NAIC Market Regulation Handbook with regard to Conseco Life relating to the Lifetrend policy issues that are the subject matter of Part II of this Agreement; or

(ii) impose a fine, injunction or any other remedy on Conseco Life for any of the matters that are the subject matter of Part II of this Agreement and may only participate on terms set forth in Part II of this Agreement in any fine or remedy that may be imposed under Part II of this Agreement.

83.    Notwithstanding the foregoing, upon notice from any Participating Regulator to the Lead Regulators, the Participating Regulators and the Lead Regulators shall proceed to take any and all appropriate action should Conseco Life violate any

*Page 35 of 56*

provision of the insurance laws and regulations of the states not subject to Part II of this

Regulatory Settlement Agreement.

CLIC 0007639

## Part III.    Process and Information Quality Process

### A.    Recitals

84.    Conseco Life shares administrative platforms used by certain affiliates. The Lead Regulators expanded the scope of the Multistate Examination to include a review of the process that Conseco Life and its affiliates, Conseco Insurance Company, Conseco Health Insurance Company, Bankers Life and Casualty Company, and Washington National Insurance Company (collectively with Conseco Life the "Conseco Companies") use to identify, manage, correct and, when required, remediate policy administration issues.

85.    In 2008, the Conseco Companies began an initiative to improve its process to identify and resolve policy administration issues. The process is called the Process and Information Quality (PIQ) Process.

86.    Examiners for the Lead Regulators documented the PIQ Process and items identified within the process and tested its operational effectiveness. The Examiners found the PIQ Process has reasonable and appropriate oversight and governance but identified several concerns regarding timeliness and documentation and made recommendations for improving the functionality of the PIQ Process. A copy of the Examiners' report regarding the PIQ process is available to Participating Regulators for regulatory review upon a request to the Lead Regulators.

### B.    PIQ Process Reporting

87.    For a period of twenty-four (24) months from the Effective Date of this Regulatory Settlement Agreement, the Conseco Companies shall provide to the Indiana

CLIC 0007640

Insurance Department quarterly reports ("Quarterly Reports") on the implementation of the PIQ Process, including target dates for completion and the status of each item identified as part of the PIQ Process as of December 31, 2009. Each Quarterly Report shall be due and deliverable to the Indiana Insurance Department within forty-five (45) days following the end of the calendar quarter.

88.        The Quarterly Reports shall include an update of the status of the Conseco Companies' efforts to manage the PIQ process and to address the items identified as part of the PIQ Process as of December 31, 2009.

90.        The Conseco Companies further agree to provide supporting documentation to the Indiana Insurance Department within fifteen (15) days of a request therefore, including but not limited to specific policy samples, as defined in the PIQ process. The Indiana Insurance Department shall exercise its discretion on whether to impose a fine for a failure to provide requested documentation between the sixteen (16) and twenty-ninth (29) days. Failure to provide the requested documentation by the thirtieth (30) day will result in a fine of $500 per day for each day past the 30 day requirement payable to the Indiana Department of Insurance.        Should the Conseco Companies have reason to believe that the requested documentation cannot be supplied within the timeframe set forth in this paragraph, they shall submit a written request for an extension of time to the Indiana Insurance Department. The written request shall include an explanation of the basis for the request. The Indiana Insurance Department, in its sole discretion, shall determine whether an extension of time to respond is warranted. Determination of whether the monetary penalty is assessed will be at the sole discretion of the Indiana Insurance Department.

CLIC 0007641

91.        Should a Signatory Regulator request an identification of the items that have been identified as part of the PIQ process as of December 31, 2009 and subject to monitoring pursuant to Part III of this Agreement, such request will be communicated by the Conseco Companies to the Indiana Insurance Department. Any documentation provided in response to such a request, shall be given confidential treatment pursuant to relevant Indiana law.

## C.    Monitoring

92.        The Lead Regulators, through the Indiana Department of Insurance, on behalf of and for the benefit of the Signatory Regulators, shall monitor the Conseco Companies' compliance with Part III provisions of this Agreement. Compliance with Part III of this Agreement will be measured according to the Conseco Companies' proper administration of the PIQ process as follows:

> i.     Compliance with key elements of the PIQ process as defined in the Examiner's report;
>
> ii.    By the end of the 24th month from the Effective Date of this Agreement, the Company will, as a minimum, have completed all items – having a significant policyholder impact as identified in the PIQ Process as of December 31, 2009. The Indiana Department of Insurance shall determine, in cooperation with the Conseco Companies, those items having a significant policyholder impact and rank the appropriate priority and time for completion of each item.

CLIC 0007642

iii.     The Conseco Companies provision of documentation and reporting
in a timely manner as provided for in this Agreement;

iv.     Policyholder remediation has been completed as represented by
the Conseco Companies.

Failure to meet any of these requirements may result in an administrative fine levied
against the individual Conseco Company(ies) involved, pursuant to agreement of the
Lead States, including but not limited to: Failure to make administrative system
corrections timely or to compensate consumers timely, pursuant to the target
completion date and corrective action plan developed by the PIQ management team for
a particular PIQ list item. An administrative fine shall be in an amount up to $50,000,
depending on the material failure involved. The fine will be distributed on a pro rata
basis to the states in which the affected policyowners reside.

93.     The Indiana Department of Insurance's monitoring shall include testing
and verifying the Conseco Companies':

(i) compliance with established procedures and initiatives related to the PIQ
Process outlined in this Agreement,

(ii) retention and accessibility of records and information,

(iii) meeting of established timelines and benchmarks, and

(iv) proper remediation to policyowners, if required.

94.     The Indiana Department of Insurance's monitoring of Part III shall not
preclude Signatory Regulators from investigating or examining market conduct  issues
related to items identified as part of the PIQ Process as of December 31, 2009, such as
consumer complaints, claims handling issues, sales and marketing materials, or alleged

CLIC 0007643

misrepresentations of the Conseco Companies or from seeking remediation due policyholders in their respective states. It is the intent of this Agreement that Signatory Regulators may pursue market conduct regulatory action on matters other than the administrative issues encompassed by the Indiana Department of Insurance's monitoring pursuant to this Part III, except as set out in paragraphs 82 and 83 above.

95. Nothing in Part III of this Agreement affects any investigation, examination or inquiry already initiated or subject to follow-up examination on items identified as part of the PIQ Process prior to the Effective Date of this Agreement.

96. Notwithstanding Paragraph 103, the Indiana Department of Insurance shall conduct a targeted market conduct examination of the Conseco Companies' administration of the PIQ Process set out in this Agreement, including but not limited to whether sufficient progress has been made in that administration, pursuant to Ind. Code § 27-1-3.1, after 2 years from the Effective Date of this Agreement. The Indiana Department of Insurance shall provide a report summarizing the results of that examination to the Lead Regulators, under the confidentiality provisions of Indiana Code § 27-1-3.1.

97. The monitoring of the Conseco Companies for compliance with the terms of Part III of this Agreement constitutes an ongoing examination by the Indiana Department of Insurance, as a Lead Regulator, pursuant to Ind. Code § 27-1-3.1 et seq. To the extent permitted by law, the work papers, recorded information, documents, copies of work papers, and documents produced by, obtained by, or disclosed by the Conseco Companies to the Signatory Regulators, shall be given confidential treatment pursuant to relevant Indiana law.

*Page 41 of 56*

CLIC 0007644

98. Following the receipt of any report required by Part III of this Agreement, if the Lead Regulators, in consultation with other Participating Regulators, determine the Conseco Companies have failed to comply with any provision of this Agreement, the Lead Regulators may assess a penalty for the material non-compliance. The total aggregate penalty levied against any one of the Conseco Companies pursuant to this Paragraph 98 and Paragraph 92 shall not exceed $1,000,000.

99.    The total of the penalties levied against the Conseco Companies pursuant to Paragraph 98 shall not exceed $5,000,000.

100.    The Conseco Companies shall retain all legal rights to challenge any finding, assessment, or penalty made during or as a result of the Monitoring of this Agreement.

101. The reasonable costs of the Lead Regulators in the negotiation, implementation and monitoring of the Conseco Companies' compliance with Part III of this Agreement, including the cost of conducting any reviews or examinations provided by Part III of the Agreement, shall be paid by the Conseco Companies. Such expenses shall be payable to the Lead Regulators within thirty (30) days of the presentation of valid receipts. Moreover, reasonable expenses of the Lead Regulators incurred in monitoring the Conseco Companies' compliance with this Agreement, including the expenses of conducting or attending any meetings, presentations, or discussions with the Conseco Companies shall be the responsibility of the Conseco Companies.

102. Time is of the essence in implementing the provisions of Part III of this Agreement, and the times specified may only be extended for good cause and with the

CLIC 0007645

advanced written consent of the Lead Regulators, but such consent of the Lead Regulators shall not be unreasonably withheld.

103.    During and for the two-year period during which the Conseco Companies are obligated to provide Quarterly Reports on the implementation of the PIQ Process pursuant to Paragraph 88 ("Reporting Period"),  each of the Signatory Regulators agrees that such Signatory Regulator and the Signatory Regulator's insurance department will not:

(i) conduct a market conduct examination or engage in any of the continuum of regulatory activities detailed in the NAIC Market Regulation Handbook with regard to the Conseco Companies relating to the PIQ Process and the items identified as part of the PIQ Process as of December 31, 2009 except as provided by paragraph 94; or

(ii) impose a fine, injunction or any other remedy on the Conseco Companies for matters that are the subject the PIQ Process or the items identified as part of the PIQ Process as of December 31, 2009 except as provided by paragraphs 94 and 95, and may only participate on terms set forth in this Agreement in any fine or remedy that may be imposed under this Agreement.  However, this Paragraph 103 shall not be read to preclude a Signatory Regulator from reviewing and proposing changes to the Conseco Companies' remediation efforts with regard to policyowners in their state.

104.    Notwithstanding the foregoing, upon notice from any Signatory Regulator to the Lead Regulators, the Signatory Regulators and the Lead Regulators shall proceed to take any and all appropriate action should the Conseco Companies violate any provision of the insurance laws and regulations of the states not subject to this Regulatory Settlement Agreement.

CLIC 0007646

*Page 44 of 56*

CLIC 0007647

**Part IV.      Other Provisions**

105.  The Terms of this Agreement shall commence on the Effective Date of the Agreement and shall terminate upon the later of the submission of the final report required by this Agreement ("Termination Date") or the payment of the final penalty imposed pursuant to Paragraphs 77 or 98.

106.  Paragraphs 57, 59, 61, 122 and 123 shall survive the termination of this Agreement.

107.  By entering into this Agreement, the Signatory Regulators and Conseco Life intend to resolve issues related to the NGE Changes, the OPPP, the sales, administration and management of the Lifetrend policy forms, and the Signatory Regulators and the Conseco Companies intend to resolve issues related to the process by which the Conseco Companies identify, manage, and correct policy administration issues. This Agreement shall be deemed a full and final resolution and release of all such alleged violations of any laws, regulations or administrative orders issued, or which could have been issued by the respective states including the Iowa Cease and Desist Order and the Florida Order to Show Cause. This Release will not be final unless and until the Conseco Companies have fully implemented and complied with this Agreement.

108.  This Agreement shall be binding on and inure to the benefit of the Signatory Regulators, the Conseco Companies and their respective legal representatives, successors and assigns.

*Page 45 of 56*

109. Each of the Signatory Regulators has full and unqualified legal authority to enter into this Agreement and, where such Signatory Regulator is signing on behalf of a party, to bind that party now and in the future.

110. The failure of the Signatory Regulators at any time to require the strict performance by the Conseco Companies of any of the terms, provisions or conditions hereof shall in no way affect the right thereafter to enforce the same, nor shall the waiver by the Signatory Regulators of any breach of any terms, provisions and conditions hereof be construed or deemed a waiver of any succeeding breach of any term, provision or condition thereof.

111. When an issue pertaining to this Agreement applies to multiple jurisdictions, the Signatory Regulators and the Conseco Companies agree that Indiana law shall apply. When an issue pertaining to this Agreement is specific to an individual jurisdiction, the Signatory Regulators and - the Conseco Companies agree that the particular substantive law of that jurisdiction shall be utilized for the purpose of interpreting, applying and enforcing any provision of this Agreement in that jurisdiction, as appropriate. In such case(s), the appropriate forum shall be the courts or regulatory agency of that particular jurisdiction, as appropriate. Nothing in this Agreement enlarges, supersedes or preempts the insurance laws and regulations of any of the Signatory Regulators' jurisdictions.

112. If the Conseco Companies default with respect to any obligation under this Agreement and such default is not remedied within thirty (30) business days following personal delivery or delivery by facsimile of a written notice to the Conseco Companies or any one of the Conseco Companies pursuant to Paragraph 128 specifying such

*Page 46 of 56*

CLIC 0007649

default (during which period the several states and the Conseco Companies or the subject Conseco Company shall make reasonable efforts to amicably resolve any disputes regarding the default), the Signatory Regulator(s) may seek judicial enforcement of this Agreement.

113. Nothing herein shall confer any rights upon any persons or entities other than the Signatory Regulators and the Conseco Companies.

114. The effectiveness of this Agreement is conditioned upon the following: (i) approval and execution of this Agreement by the Conseco Companies and the Lead Regulators; and (ii) approval and execution of this Agreement by at least thirty-five (35) states of the United States and any other jurisdiction, and a combined policy count that exceeds seventy-five percent (75%) of Conseco Life's total policy count for all Lifetrend policies. The date on which the last of these approvals is secured shall be the Effective Date of this Agreement.

115. Any state or jurisdiction that wishes to become a party to this Agreement shall execute a Participating Regulator Agreement within thirty (30) days from the Execution Date. If a Signatory Regulator finds that, under applicable state law, regulation or procedure, the preparation and execution of a consent order is necessary to carry out the terms of this Agreement; such a consent order shall be prepared by such Participating Regulator within thirty (30) days following the Execution Date and shall not exceed the Terms of this Agreement. The Lead Regulators may waive the 30-day period for Participating Regulators to execute this Agreement.

CLIC 0007650

116. Each Signatory Regulator hereby agrees that any approval obtained from the Lead Regulators pursuant to the Terms of this Agreement constitutes an approval of the Signatory Regulator.

117. Each Signatory Regulator hereby gives express assurance that, under the applicable laws, regulations and judicial rulings, the Signatory Regulator has the authority to enter into this Agreement and bind that jurisdiction now and in the future. By execution of this Agreement with the Conseco Companies, each Signatory Regulator acknowledges the terms and conditions as set forth herein.

118. The Signatory Regulators and the Conseco Companies may mutually agree, in writing, to any reasonable extensions of time that might become necessary to carry out the provisions of this Agreement.

119. This Agreement sets forth the entire Agreement among the parties with respect to its subject matter and supersedes all prior agreements, arrangements or understandings (whether in written or oral form) between the Conseco Companies and the Signatory Regulators.

120. This Agreement shall remain in effect until the Termination Date.

121. This Agreement (or its Exhibits and their Attachments) may be amended by the Lead Regulators and the Conseco Companies without the consent of any Participating Regulator, provided that such amendment does not materially alter this Agreement. Any amendment to the terms of this Agreement (or its Exhibits or Appendices), which would affect the regulatory authority of any Signatory Regulator, shall not become effective without the written consent of such Signatory Regulator. All such amendments to this Agreement shall be in writing.

*Page 48 of 56*

122. Except in a proceeding to enforce the terms hereof, neither this Agreement nor any related negotiations, statements or court proceedings shall be offered by the Conseco Companies or the Signatory Regulators as evidence in any regulatory or judicial proceeding.

123. Neither this Agreement nor any related negotiations, statements or court proceedings shall be offered by the Conseco Companies or the Signatory Regulators as evidence of or an admission, denial or concession of any liability or wrongdoing whatsoever on the part of any person or entity including, but not limited to, the Conseco Companies or any affiliates thereof, or as a waiver by the Conseco Companies or any affiliates thereof of any applicable defense including, without limitation, any applicable statute of limitations or statute of fraud.

124. The Conseco Companies do not admit, deny or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them.

125. The Lead Regulators and the Conseco Companies consider it desirable for this matter to be resolved pursuant to this Agreement because this Agreement will provide substantial benefits to the Conseco Companies' policyowners and insureds.

126. This Agreement may be signed in multiple counterparts, each of which shall constitute a duplicate original, but which taken together shall constitute but one and the same instrument.

127. Nothing herein shall prevent or otherwise restrict a Signatory Regulator from pursuing regulatory action against the Conseco Companies for regulatory issues other than issues as described herein.

CLIC 0007652

128. Except as otherwise provided herein, any notice required to be given hereunder shall be sufficient if in writing and sent by facsimile transmission (which is confirmed) or by courier service (with proof of service), hand delivery or certified or registered mail (return receipt requested and first-class postage prepaid), addressed as follows:

If to the Conseco Companies or to any one of the Conseco Companies:

Matthew J. Zimpfer
General Counsel
11825 N. Pennsylvania Street
Carmel, Indiana 46032

Copy to:

T. Ark Monroe, III
Mitchell, Williams, Selig, Gates & Woodyard, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

If to the Lead Regulators notice shall be sent to the Commissioner and General Counsel for each Lead Regulator.

129. The Conseco Companies shall be excused from performance for any period and to the extent that the Conseco Companies are prevented from performing any services, in whole or in part, as a result of delays caused by an act of God, civil disturbance, court order, or other cause beyond the Conseco Companies' reasonable control, including failures or fluctuations in electrical power, light, or telecommunications equipment and such nonperformance shall not be considered for determining the Conseco Companies' compliance with this Agreement.

CLIC 0007653

130.    In the event that any portion of this Agreement is held invalid under any particular state's law as it is relevant to a Signatory Regulator, such invalid portion shall be deemed to be severed only in that state and all remaining provisions of this Agreement shall be given full force and effect and shall not in any way be affected thereby.

131.    The Conseco Companies understand and agree that by entering into this Agreement, the Conseco Companies waive any and all rights to notice, hearing and appeal regarding the items examined and resolved pursuant to this Agreement under the applicable laws of the jurisdictions represented by the Signatory Regulators.

132.    Except as explicitly provided herein, nothing in this Agreement or any of its terms and conditions shall be interpreted to alter in any way the contractual terms of any insurance policy issued or acquired by Conseco Life or by the parties to such contract.

CLIC 0007654

**Part V. Signature Pages**

**Executed by**

Conseco Life Insurance Company

Signature

Printed Name: Christopher J. Nickele

Title: President

Date _5/25/10_

Conseco Health Insurance Company

Signature

Printed Name: Steven M. Stecher

Title: President

Date _5-25-2010_

Conseco Insurance Company

Signature

Printed Name: Steven M. Stecher

Title: President

Date _5-25-2010_

Washington National Insurance Company

Signature

Printed Name: Steven M. Stecher

Title: President

Date _5-25-2010_

I, Steven M. Stecher, hereby affirm that I am the President of Conseco Insurance Company, Conseco Health Insurance Company and Washington National Insurance Company and have the authority to execute this Agreement on their behalf.

I, Christopher J. Nickele, hereby affirm that I am the President of Conseco Life Insurance Company and have the authority to execute this Agreement on their behalf.

CLIC 0007655

Bankers Life and Casualty Company

Signature_____

Printed Name: Scott R. Perry

Title: President

Date __May 25, 2010__

I, Scott R. Perry, hereby affirm that I am the President of Bankers Life and Casualty Company and have the authority to execute this Agreement on its behalf.

CLIC 0007656

**California Department of Insurance**

Signature_____

      Printed Name_____

      Title_____

      Date_____

**Florida Office of Insurance Regulation**

Signature_____

      Printed Name_____

      Title_____

      Date_____

**Indiana Department of Insurance**

Signature_____

      Printed Name_____

      Title_____

      Date_____

**Iowa Insurance Division**

Signature _Susan E. Voss_

      Printed Name_ Susan E. Voss

      Title_ Iowa Insurance Commissioner

      Date_ MAY 6, 2010

CLIC 0007657

**California Department of Insurance**

Signature_____

Printed Name_____

Title_____

Date_____

**Florida Office of Insurance Regulation**

Signature_____

Printed Name_____

Title_____

Date_____

**Indiana Department of Insurance**

Signature_____

Printed Name___Doug Webber_____

Title___Acting Commissioner, IN Dept. of Insurance

Date___5/17/10_____

**Iowa Insurance Division**

Signature_____

Printed Name_____

Title_____

Date_____

*Page 54 of 56*

**California Department of Insurance**

Signature

Printed Name ___JERRY L. WHITFIELD___

Title ·  Assistant Chief Counsel

Date_____ 5/21/2010

**Florida Office of Insurance Regulation**

Signature

Printed Name____Kevin M. McCarty

Title____Commissioner

Date____May 26, 2010

**Indiana Department of Insurance**

Signature_____

Printed Name_____

Title_____

Date_____

**Iowa Insurance Division**

Signature_____

Printed Name_____

Title_____

Date_____

CLIC 0007659

**Texas Department of Insurance**

Signature_____

Printed Name_ Mike Geeslin _

Title_ Commissioner _

Date_ 5.28.2010 _

*Page 55 of 56*

CLIC 0007660

## PARTICIPATING REGULATOR ADOPTION

On behalf of [Insert the Jurisdiction and Insurance Regulatory Agency], I, [Insert name of insurance regulatory official executing the Agreement], hereby adopt, agree, and approve this Agreement.

[NAME OF INSURANCE REGULATORY AGENCY]

By:_____

[Name of Regulatory Official], [Title],

Printed Name: _____

Date_____

CLIC 0007661

EXHIBIT A

## Lifetrend Policies by Issue State - Sorted by Number of Policies
### As of 4/28/2010

| Issue State | Lifetrend 1 & 2 | Lifetrend 3 & 4 | Lifetrend 4 (97) | Lifetrend 5 & 7 | Grand Total |
|---|---|---|---|---|---|
| FL | 36 | 4,163 | 101 | 21 | 4,321 |
| CA | 310 | 2,360 | 133 | 131 | 2,934 |
| TX | 55 | 556 | 24 | 18 | 653 |
| IL | 207 | 196 | 2 | 34 | 439 |
| GA | 11 | 396 | 8 | 0 | 415 |
| HI | 50 | 271 | 4 | 4 | 329 |
| PA | 177 | 88 | 6 | 3 | 274 |
| OH | 111 | 79 | 5 | 2 | 197 |
| MO | 132 | 48 | 3 | 9 | 192 |
| IA | 35 | 136 | 1 | 0 | 172 |
| NC | 65 | 80 | 8 | 2 | 155 |
| MA | 42 | 101 | 3 | 8 | 154 |
| MI | 10 | 142 | 0 | 2 | 154 |
| CO | 112 | 38 | 0 | 2 | 152 |
| CT | 63 | 63 | 2 | 0 | 128 |
| OK | 61 | 58 | 0 | 8 | 127 |
| KY | 122 | 1 | 1 | 0 | 124 |
| IN | 91 | 31 | 1 | 0 | 123 |
| MT | 3 | 71 | 0 | 42 | 116 |
| NJ | 41 | 55 | 4 | 0 | 100 |
| WI | 72 | 19 | 3 | 5 | 99 |
| MD | 11 | 76 | 9 | 0 | 96 |
| DE | 78 | 14 | 1 | 1 | 94 |
| NE | 51 | 42 | 0 | 0 | 93 |
| MN | 50 | 31 | 0 | 11 | 92 |
| AR | 85 | 3 | 1 | 0 | 89 |
| NM | 1 | 50 | 23 | 1 | 75 |
| WA | 19 | 45 | 1 | 3 | 68 |
| UT | 1 | 20 | 0 | 36 | 57 |
| VA | 14 | 37 | 4 | 2 | 57 |
| AZ | 18 | 31 | 0 | 1 | 50 |
| TN | 42 | 3 | 0 | 0 | 45 |
| WV | 34 | 3 | 0 | 0 | 37 |
| NV | 10 | 24 | 0 | 0 | 34 |
| KS | 12 | 17 | 0 | 1 | 30 |
| OR | 11 | 12 | 1 | 3 | 27 |
| ID | 0 | 25 | 0 | 0 | 25 |
| SC | 15 | 6 | 0 | 0 | 21 |
| LA | 11 | 6 | 1 | 1 | 19 |
| MS | 15 | 1 | 0 | 0 | 16 |
| DC | 11 | 0 | 0 | 0 | 11 |
| ME | 0 | 7 | 0 | 0 | 7 |
| NH | 1 | 4 | 0 | 0 | 5 |
| WY | 5 | 0 | 0 | 0 | 5 |
| AK | 4 | 0 | 0 | 0 | 4 |
| RI | 4 | 0 | 0 | 0 | 4 |
| AL | 3 | 0 | 0 | 0 | 3 |
| SD | 3 | 0 | 0 | 0 | 3 |
| NY | 0 | 1 | 0 | 0 | 1 |
| VT | 0 | 1 | 0 | 0 | 1 |
| ND | 0 | 0 | 0 | 0 | 0 |
| Grand Total | 2,315 | 9,411 | 350 | 351 | 12,427 |

CLIC 0007662

Exhibit B

## CONSECO LIFE INSURANCE COMPANY

Administrative Office: 11825 N. Pennsylvania Street Carmel, Indiana 46032-4555

### POLICY ENDORSEMENT

This Endorsement is subject to all of the terms, provisions, definitions and exclusions of the policy, except as stated in this Endorsement. This Endorsement is a part of the policy to which it is attached. The policy is changed as follows:

1. The "Continuation of Insurance" section of the NONFORFEITURE PROVISION, is hereby deleted and replaced with the following:

(B) Continuation of Insurance

In the event any premiums, other than premiums for supplemental benefits provided by any attached riders, are not paid before the end of the grace period, insurance coverage under this policy will be continued in an amount equal to the proceeds of this policy, including any attached riders. When this happens, your policy will be in a "period of continued insurance". Insurance shall continue until the net cash value is insufficient to cover the monthly deduction. In no event will the insurance be continued for a term less than that which the net cash value on the due date of the unpaid premium would purchase when applied as a net single premium.

During a period of continued insurance, you can pay premiums to extend insurance coverage under this policy. Such premium amounts can not exceed the original scheduled premium, unless approved by the Company.

The period of continued insurance cannot extend beyond an insured's age 100. If the insured is living at age 100, the net cash value remaining will be refunded at that time to the owner.

When you first enter a period of continued insurance, the TABLE OF GUARANTEED POLICY VALUES shown on the Policy Data Page or Policy Schedule will no longer be applicable.

The insurance provided under Option B may be surrendered at any time for its net cash value as of the surrender date.

2. Any language in the policy or attached riders which states that the rider(s) end when insurance is being provided under Option B is deleted.

The provisions of this endorsement supersede any conflicting provisions in the policy or any riders attached to the policy. In all other respects, the policy shall remain the same.

In witness whereof, we have caused this Endorsement to be signed by our Secretary.

Karl W Kirby

Secretary

CLIC-ECOI-END

## Exhibit C.1.1
### Face Reduction Premium Paying and OPPP Version Letter

%%C1
%%C2
%%C3
%%C4
%%C5


(Date)


(Owner Name)
(Owner Address)
(Owner Address)
(City, State, Zip Code)


Insured: (Insured Name)
Policy Number: (Policy Number)

Dear (Policy Owner Name):

Thank you for the opportunity to serve your insurance needs. We have processed your reduced face amount election. The new face amount of your policy is ($New Face Amount). Attached is a revised Policy Data Page outlining your new face amount and premium schedule. Future billings will reflect your new premium amount. Your endorsement is enclosed and should be attached to your policy for safekeeping.

If you wish to change your current billing method or the frequency of your payments, please submit your request in writing. Please contact our Customer Service Department if you have questions on the available billing options.

We want to assure you of our continued commitment to provide you with the best possible service. If you have further questions, you may contact our Customer Service Department by dialing 1-800-(XXX-XXXX).

Sincerely,

Policyholder Services

Attachment

## Exhibit C.1.2
### Face Reduction Premium Paying and OPPP Version Endorsement

### CONSECO LIFE INSURANCE COMPANY
Administrative Office: 11825 N. Pennsylvania Street Carmel, Indiana 46032-4555

### POLICY ENDORSEMENT

**Company: (Company Name)**
**Insured: (Insured Name)**

**Policy Number:  (XXXXXX)**
**Effective Date: (Effective Date)**

### Policy Data Page

| | Annual | Years |
|---|---|---|
| **Sum Insured** | **Premium** | **Payable** |
| **($New Face Amount)** | **($Amount)** | **Life** |

| **Premium Frequency** | **Premium Payable** |
|---|---|
| Annual | **($Amount)** |
| Semi Annual | **($Amount)** |
| Quarterly | **($Amount)** |
| Monthly Bank Collection | **($Amount)** |

### Table of Guaranteed Policy Values

This table presumes that the full annual premium shown above is paid each year from this point forward.  The following values illustrate the Guaranteed Values provided by this policy.

| End of Policy Year | Which Occurs in | Cash Value |
|---|---|---|
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |

CLIC-FAR1_END                    *Page 1 of 2*

| (Policy Duration) | (Year) | ($Amount) |
|---|---|---|
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |

## Policy Data Page
(Continued)

Values for years not shown will be furnished upon request.

This table above provides values without any adjustment for indebtedness (loans plus interest) secured by this policy.

In witness whereof, we have caused this Endorsement to be signed by our Secretary.

(Secretary Signature)

Secretary

CLIC-FAR1_END                    *Page 2 of 2*

CLIC 0007666

## Exhibit C.2.1

%%C1
%%C2
%%C3  **RPU Policyholder Letter**
%%C4
%%C5


(Date)


(Owner Name)
(Owner Address)
(Owner Address)
(City, State, Zip Code)


Insured: (Insured Name)
Policy Number: (Policy Number)

Dear (Policy Owner Name):

Thank you for the opportunity to serve your insurance needs. We have processed your
Reduced Paid Up Nonforfeiture election. Your insurance policy will continue to provide
you with (RPU Face Amount) of insurance protection.

Although premium payments are no longer required, your cash value will continue to
increase, and may provide you with additional financial security. We have attached a
table of guaranteed policy values outlining the cash values of your policy while on its
Reduced Paid Up Nonforfeiture option. You will no longer receive annual statements
now that your policy is on a Reduced Paid Up status. Your endorsement is enclosed and
should be attached to your policy for safekeeping.

We want to assure you of our continued commitment to provide you with the best
possible service. If we may be of assistance, please contact our Customer Service
Department by dialing 1-800-(XXX-XXXX).

Sincerely,

Policyholder Services

Attachment

## Exhibit C.2.2
### RPU Endorsement

## CONSECO LIFE INSURANCE COMPANY
Administrative Office: 11825 N. Pennsylvania Street Carmel, Indiana 46032-4555

### POLICY ENDORSEMENT

**Company: (Company Name)**          **Policy Number: (XXXXXX)**
**Insured: (Insured Name)**          **Policy Status: Reduced Paid Up**

### Policy Data Page

### Table of Guaranteed Policy Values

This table illustrates the Guaranteed Values provided by this policy while on the Reduced Paid Up Nonforfeiture Option.

| End of Policy Year | Which Occurs in | Cash Value |
|---|---|---|
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |
| (Policy Duration) | (Year) | ($Amount) |

Values for years not shown will be furnished upon request.

In witness whereof, we have caused this Endorsement to be signed by our Secretary.

(Secretary Signature)

Secretary

CLIC-RPU-END

## Exhibit C.3.1
### Face Reduction COI Version Letter

%%C1
%%C2
%%C3
%%C4
%%C5

(Date)

(Owner Name)
(Owner Address)
(Owner Address)
(City, State, Zip Code)

Insured: (Insured Name)
Policy Number: (Policy Number)

Dear (Policy Owner Name):

Thank you for the opportunity to serve your insurance needs. We have processed your reduced face amount election. The new face amount for your policy is ($ New Face Amount). Your policy is currently on Continuation of Insurance which allows you to pay flexible premiums. You as the policy owner select the amount and frequency you wish to remit payments. Your policy will remain in-force as long as it has sufficient net cash value to cover the monthly deductions for cost of insurance charges and expense fees. Your current billing method, billing amount and billing frequency will remain unchanged unless you request a change. Your endorsement is enclosed and should be attached to your policy for safekeeping.

If you wish to change your current billing method, the amount billed or the frequency of your payments, please submit your request in writing. Please contact our Customer Service Department if you have questions on the available billing options.

We want to assure you of our continued commitment to provide you with the best possible service. If you have further questions, you may contact our Customer Service Department by dialing 1-800-(XXX-XXXX).

Sincerely,

Policyholder Services

Attachment

CLIC 0007669

## Exhibit C.3.2
### Face Reduction COI Version Endorsement

### CONSECO LIFE INSURANCE COMPANY
Administrative Office: 11825 N. Pennsylvania Street Carmel, Indiana 46032-4555

### POLICY ENDORSEMENT

**Company: (Company Name)**                    **Policy Number: (XXXXXX)**
**Insured: (Insured Name)**

**Policy Data Page**

**Sum Insure: (SNew Face Amount)**
**Effective Date: (Effective Date)**
**Policy Status: Nonforfeiture – Continuation of Insurance**
**Premium: Flexible**

In witness whereof, we have caused this Endorsement to be signed by our Secretary.

(Secretary Signature)

Secretary

CLIC-FAR2-END

## EXHIBIT D

### Settlement Pool Distribution

A.   Definitions – For the purposes of this Exhibit, the following definitions shall apply.

1.   Settlement Pool shall mean a pool of $10,000,000 set aside by Conseco Life with accrued interest as referenced in paragraph 38 of this Agreement for the benefit of Eligible Lifetrend Policyowners.

2   Pool Participants shall mean Eligible Lifetrend Policyowners who elect to participate in the Settlement Pool by the due date indicated on the Election and Release Form.

3.   Per Policy Distribution shall be determined by dividing 30% of the Settlement Pool balance by the total number of Pool Participants.

4.   Premium Based Distribution shall be determined by dividing 70% of the Settlement Pool balance by the total Scheduled Annual Premium for all Pool Participants.

B.   Settlement Pool Distribution.

1.   The Settlement Pool Distribution to each Pool Participant for each eligible policy, as shown in Paragraph C, Column 7, is the sum of the Per Policy Distribution as shown in Paragraph C, Column 3 and the product of the Premium Based Distribution, as shown in Paragraph C, Column 4, and the Scheduled Annual Premium for the policy, as shown in Paragraph C, Column (5).

2.   The Settlement Pool Distribution to each Pool Participant shall be determined by Conseco Life and submitted to the Lead Regulators no later than 30 days after the date on which all Election and Release Forms are due to Conseco Life. This submission shall list all Eligible Policyholders and indicate if the Eligible Policyowner elected to participate, the Settlement Pool Distribution allocated to each Pool Participant by policy and supporting information including policyowner name, policy number, and Scheduled Annual Premium.

C.   Table of Eligible Lifetrend Policyowner Calculation of Benefit under the Settlement Pool.

| (1)<br>Lifetrend Policyowner Name / Policy Number | (2)<br>Agreed To Participate In Pool? (y/n) | (3)<br>Per Policy Distribution For LT Policyowner | (4)<br>Premium Based Distribution | (5)<br>Scheduled Annual Premium For LT Policyowner | (6)<br>Scheduled Annual Premium Times Prem Based Distribution | (7)<br>Total Distribution Due LT Policyowner |
|---|---|---|---|---|---|---|
| | | | | | | |

CLIC 0007671

**EXHIBIT E.1**

ELECTION NOTICE TO III, IV-87, IV-93 and IV-95 ELIGIBLE FOR SETTLEMENT POOL

[Date]

[Policyholder Name]
[Address 1]
[Address 2]
[City, State, Zip]

        Re:    Policy Number _____

URGENT NOTICE REGARDING YOUR LIFE INSURANCE POLICY

Dear Policyholder:

In October of 2008, you received a letter from Conseco Life Insurance Company ("Company") advising you of changes to your Lifetrend insurance policy. During 2009, you received additional communications from the Company explaining that changes to your Lifetrend insurance policy were put on hold pending the outcome of the examination being conducted by the Insurance Commissioners of the States of California, Florida, Indiana, Iowa, and Texas ("Lead Regulators").

The examination is done. We are communicating important news to you regarding:

1) **A Settlement Pool** you are eligible to participate in as a Lifetrend policyholder;

2) **Cost of Insurance and Expense Charges** that will be applied to your life insurance policy going forward;

3) **Additional Policy Options** that are available to you; and

4) **Mandatory Policy Benefits** that are automatically provided to you at no cost.

These benefits and changes are a result of a Regulatory Settlement Agreement (Agreement) between the Company and the states that signed onto the Agreement.

**Important Notice:** It is important for you to be aware that if you agree to accept the options available to you under the Agreement, you will be required to waive your rights to individual legal action against the Company regarding your Lifetrend policy or be part of any class action remedies that may exist in the future. At this time, there is a lawsuit pending entitled In Re Conseco Life Insurance Company Lifetrend Insurance Sales and Marketing Litigation, Case No. M:10-CV-02124-SI, in the United States District Court for the Northern District of California, San Francisco Division. The Court has not approved or certified a class action as of the date of this Notice. However, if this proposed class action is **approved and successful**, you may be offered other remedies than what is available through this Regulatory Settlement Agreement.

If you have already started legal action related to your policy, please provide a copy of this letter to your attorney as soon as possible so that he or she might advise you concerning your options. If you have not started legal action related to your policy, but feel you require legal advice on the consequences of this process, you should retain private counsel.

**Please read:** Before making your decision concerning your options, please read ALL of the information in this letter and the enclosed Frequently Asked Questions. If you have questions related to any item in this

CLIC 0007672

letter, please contact the Company at 1-888-xxx-xxxx. Representatives will be available to assist you with any question you may have concerning these options.

## SETTLEMENT POOL OF MONEY

**If you wish to participate in the Settlement Pool distribution, you must complete, sign and return the enclosed Election and Release Form to the Company using the pre-paid business reply envelope by &lt;DATE (which will be 60 days from the mail date)&gt;.**

1. The Agreement requires the Company to establish a Settlement Pool of money. You may elect to participate in the Settlement Pool and receive an amount of money that will be deposited into your Lifetrend Accumulation Account.

2. If you choose to participate in the Settlement Pool, you·are entitled to a minimum payment of $_____$.

3. The amount you receive <u>may</u> be higher than shown above. It will ultimately depend on the number of policyowners who decide to participate in the Settlement Pool.

4. You should make your decision to participate based on the minimum payment shown above because there is no guarantee your payment will be higher.

5. Within 7 business days of receipt of your election to participate in the Settlement Pool, the Company will credit the amount shown in item #2 above to your policy's Accumulation Account. Within 45 days of the Company's receipt of all Election and Release Forms from all eligible policyowners, the Company will credit your Accumulation Account any additional amount due based upon the allocation of any undistributed Settlement Pool amounts.

6. The formula for distribution has been approved by the Lead Regulators. It considers the total number of policyowners who are eligible for the Settlement Pool and the amount of your scheduled annual premium.

## INCREASE OF POLICY EXPENSES AND COST OF INSURANCE

1. The Agreement allows the Company to begin deducting Cost of Insurance and policy expense charges from your policy's Account Value beginning on a policy monthly anniversary date that falls on or after September 1, 2010. These charges are permitted under the terms of your insurance policy.

2. The gradual implementation of your Cost of Insurance Charges and the implementation of your Expense Charges are displayed in the table below. These charges are being presented as estimates of your future costs and will be phased in as follows:

CLIC 0007673

| Monthly Charge Type | Current Deductions | First 9 Months Deductions (estimated) | Next 12 Months Deductions (estimated) | Next 12 Months Deductions (estimated) | Next 12 months and ongoing Deductions (estimated) |
|---|---|---|---|---|---|
| Expense Charges | $0.00 | | | | |
| Cost of Insurance Charges | $0.00 | | | | |

3. The monthly charge estimates illustrated in item #2 above are based upon your policy's face amount and account value as of [Date] and reflect the charge for the first month of each period shown. Changes in your account value due to future premium payments, interest credits and cost of insurance charges will impact these estimates. If you policy passes an anniversary date during the period shown, your cost of insurance charge may increase to reflect the increase in your attained age.

4. After the gradual implementation is complete, subsequent Cost of Insurance increases under the current scale will be based only on changes in attained age. Expense Charges will only increase if the actual cost to administer your policy increases.

5. If you do not wish to pay premiums, your Accumulation Account will be used to pay for these deductions and your coverage will remain in force until your Accumulation Account less indebtedness has been exhausted. Please review the enclosed illustration that shows how long your coverage will stay in force based on the projected monthly deductions and your current account value. You also have the contractual right to surrender your policy, or you can choose one of the Additional Policy Options described below.

# ADDITIONAL POLICY OPTIONS

**(If you wish to elect one of these options in addition to the Settlement Pool, you must complete and sign the enclosed Election Form and Release to the Company using the pre-paid business reply envelope by <DATE (which will be 60 days from the mail date)>.**

The Agreement requires the Company to provide you options to convert your policy. These options are in addition to the Settlement Pool.

### Option 1. Reduced Paid-Up Policy Without Any Further Premiums

You have a one-time opportunity to convert your policy to a reduced face amount, paid up policy. Your new death benefit will be calculated using your policy's Account Value less any indebtedness. If you choose this option, you will not have to pay any additional premiums. Your reduced paid up death benefit will be at least $_____. This amount is based on your current Account Value less any indebtedness plus the minimum payment you will receive from the Settlement Pool.

**Option 2. Face Amount Reduction With Further Premium Payments**

You have a one-time opportunity to reduce the death benefit of your policy. This will mean you will pay premiums, but the premium payment will be one you select. The Company will calculate the death benefit your premium will support when you contact Us at 1-800-xxx-xxx. You will receive an illustration that will show you your new death benefit. You will also receive along with your illustration, information concerning the steps you must take to accept the new death benefit.

## AUTOMATIC ENHANCED POLICY BENEFIT

**It is not necessary for you to elect this benefit, it is provided automatically.**

**Enclosed you will find a Policy Endorsement that provides you the benefits described in the paragraph below. You should attach this endorsement to your policy.**

The enhanced policy benefit provides the following: (1) you will be able to make flexible premium payments to keep your policy in-force as long as your coverage has not lapsed; (2) all policy riders and benefits will remain in force while the policy is administered using your cash value to maintain coverage as provided under Continuation of Insurance; (3) you may establish premium billings for your policy when it is on Continuation of Insurance so you can extend the time that your policy will remain in-force.

## FREQUENTLY ASKED QUESTIONS

Please read the enclosed "Frequently Asked Questions" and review the enclosed Election Form and Release before making your decision.

Enclosed with this Notice are two Illustrations for your review. Both Illustrations assume you do not elect an optional policy benefit. One Illustration reflects no additional premium being paid. The second Illustration reflects the premium required to keep your policy in force until maturity based on current credited interest rates and the new scale of current cost of insurance rates and expense charges. Upon request, we will prepare additional illustrations for you.

**You must return your completed Election Form and Release by (DATE) to participate in the Settlement Pool. Your signature must be notarized. Please keep a copy for your records If you do not submit an Election Form and Release, we will assume you do not wish to elect any of the options available to you.**

If you have specific questions about the Regulatory Settlement Agreement, the Election Notice, your policy, or your options, please call us at XXXXX.

Sincerely,

Conseco Life Insurance Company

CLIC 0007675

## EXHIBIT E.2

ELECTION NOTICE TO III, IV-87, IV-93 and IV-95 NOT ELIGIBLE FOR SETTLEMENT POOL

[Date]

[Policyholder Name]
[Address 1]
[Address 2]
[City, State, Zip]

Re:    Policy Number _____

### URGENT NOTICE REGARDING YOUR LIFE INSURANCE POLICY

Dear Policyholder:

In October of 2008, you received a letter from Conseco Life Insurance Company ("Company") advising you of changes to your Lifetrend insurance policy. During 2009, you received additional communications from the Company explaining that changes to your Lifetrend insurance policy were put on hold pending the outcome of the examination being conducted by the Insurance Commissioners of the States of California, Florida, Indiana, Iowa, and Texas ("Lead Regulators").

The examination is done. We are communicating important news to you regarding:

5) **Cost of Insurance and Expense Charges** that will be applied to your life insurance policy going forward;

6) **Additional Policy Options** that are available to you; and

7) **Mandatory Policy Benefits** that are automatically provided to you at no cost.

These benefits and changes are a result of a Regulatory Settlement Agreement (Agreement) between the Company and the states that signed onto the Agreement.

**Important Notice:** It is important for you to be aware that if you agree to accept the options available to you under the Agreement, you will be required to waive your rights to individual legal action against the Company regarding your Lifetrend policy or be part of any class action remedies that may exist in the future. At this time, there is a lawsuit pending entitled In Re Conseco Life Insurance Company Lifetrend Insurance Sales and Marketing Litigation, Case No. M:10-CV-02124-SI, in the United States District Court for the Northern District of California, San Francisco Division. The Court has not approved or certified a class action as of the date of this Notice. However, if this proposed class action is **approved and successful**, you may be offered other remedies than what is available through this Regulatory Settlement Agreement.

If you have already started legal action related to your policy, please provide a copy of this letter to your attorney as soon as possible so that he or she might advise you concerning your options. If you have not started legal action related to your policy, but feel you require legal advice on the consequences of this process, you should retain private counsel.

**Please read:** Before making your decision concerning your options, please read ALL of the information in this letter and the enclosed Frequently Asked Questions. If you have questions related to any item in this letter, please contact the Company at 1-888-xxx-xxxx. Representatives will be available to assist you with any question you may have concerning these options.

CLIC 0007676

# **INCREASE OF POLICY EXPENSES AND COST OF INSURANCE**

3.  The Agreement allows the Company to begin deducting Cost of Insurance and policy expense charges from your policy's Account Value beginning on a policy monthly anniversary date that falls on or after September 1, 2010. These charges are permitted under the terms of your insurance policy.

4.  The gradual implementation of your Cost of Insurance Charges and the implementation of your Expense Charges are displayed in the table below. These charges are being presented as estimates of your future costs and will be phased in as follows:

| Monthly Charge Type | Current Deductions | First 9 Months Deductions (estimated) | Next 12 Months Deductions (estimated) | Next 12 Months Deductions (estimated) | Next 12 months and ongoing Deductions (estimated) |
|---|---|---|---|---|---|
| Expense Charges | $0.00 | | | | |
| Cost of Insurance Charges | $0.00 | | | | |

6.  The monthly charge estimates illustrated in item #2 above are based upon your policy's face amount and account value as of [Date] and reflect the charge for the first month of each period shown. Changes in your account value due to future premium payments, interest credits and cost of insurance charges will impact these estimates. If you policy passes an anniversary date during the period shown, cost of insurance charge may increase to reflect the increase in your attained age.

7.  After gradual implementation is complete, subsequent Cost of Insurance increases under the current scale will be based only on changes in attained age. Expense Charges will only increase if the actual cost to administer your policy increases.

8.  If you do not wish to pay premiums, your Accumulation Account will be used to pay for these deductions and your coverage will remain in force until your Accumulation Account less Indebtedness has been exhausted. Please review the enclosed illustration that shows how long your coverage will stay in force based on the projected monthly deductions and your current account value. You also have the contractual right to surrender your policy, or you can choose one of the Additional Policy Options described below.

# ADDITIONAL POLICY OPTIONS

The Agreement requires the Company to provide you options to convert your policy.

### Option 1. Reduced Paid-Up Policy Without Any Further Premiums

You have a one-time opportunity to convert your policy to a reduced face amount, paid up policy. Your new death benefit will be calculated using your policy's Account Value less any indebtedness. If you choose this option, you will not have to pay any additional premiums. Your reduced paid up death benefit will be at least $_____. This amount is based on your current account value less any indebtedness. If you wish to elect the Reduced Paid-Up Policy, you must complete, sign and return the enclosed Election Form and Release to the Company using the pre-paid business reply envelope by <DATE (which will be 60 days from the mail date)>. Your signature must be notarized to accept this option.

### Option 2. Face Amount Reduction With Further Premium Payments

You have a one-time opportunity to reduce the death benefit of your policy. This will mean you will pay premiums, but the premium payment will be one you select. The Company will calculate the death benefit your premium will support when you contact the Company at 1-800-xxx-xxx. You will receive an illustration that will show you your new death benefit. You will also receive along with your illustration, information concerning the steps you must take to accept the new death benefit. If you are interested in the Face Amount Reduction, you can either call the Company or indicate your interest on the enclosed Election Form and Release and return it to the Company using the pre-paid business reply envelope by <DATE (which will be 60 days from the mail date)>. You do not need to sign the Election Form and Release to indicate your interest in the Face Amount Reduction.

# AUTOMATIC ENHANCED POLICY BENEFIT

**It is not necessary for you to elect this benefit, it is provided automatically.**

**Enclosed you will find a Policy Endorsement that provides you the benefits described in the paragraph below. You should attach this endorsement to your policy.**

The enhanced policy benefit provides the following: (1) you will be able to make flexible premium payments to keep your policy in-force as long as your coverage has not lapsed; (2) all policy riders and benefits will remain in force while the policy is administered using your cash value to maintain coverage as provided under Continuation of Insurance; (3) you may establish premium billings for your policy when it is on Continuation of Insurance so you can extend the time that your policy will remain in-force.

# FREQUENTLY ASKED QUESTIONS

Please read the enclosed "Frequently Asked Questions" and review the enclosed Election and Release Form before making your decision.

Enclosed with this Notice are two Illustrations for your review. Both Illustrations assume you do not elect an optional policy benefit. One Illustration reflects no additional premium being paid. The second Illustration reflects the premium required to keep your policy in force until maturity based on current credited interest

rates and the new scale of current cost of insurance rates and expense charges. Upon request, we will prepare additional illustrations for you.

**You must return your completed and signed Election and Release Form by (DATE) to elect Option 1, a Reduced Paid-Up Policy Without Any Further Premiums. Your signature must be notarized. Please keep a copy for your records  If you do not submit an Election Form and Release, we will assume you do not wish to elect any of the options available to you.**

If you have specific questions about the Regulatory Settlement Agreement, the Election Notice, your policy, or your options, please call us at XXXXX.

Sincerely,

Conseco Life Insurance Company

## EXHIBIT F.1

Election Form and Release (III, IV-87, IV-93 and IV-95 ELIGIBLE FOR SETTLEMENT POOL)

**Mail to:** Conseco Life Insurance Company
_____ Unit
PO Box xxx
Carmel, IN XXXXX-XXX
**Claim Questions: 1-866-**
**Fax to: 1-800-xxx-xxxx**

Policy: [Policy Number]

## SETTLEMENT POOL

As an Eligible Lifetrend Policyowner you are entitled to have a minimum amount of $_____ deposited into your Lifetrend Accumulation Account. The amount deposited into your Accumulation Account may be more than the amount shown above. The amount deposited into your Accumulation Account will ultimately depend on the number of policyowners who decide to participate in the Settlement Pool. You may elect to participate in the Settlement Pool by inserting an "X" in the box below to indicate you want to participate in the Settlement Pool. You must sign and date the last page of this form and mail this form to the Company no later than DATE (which is 60 days from the date of the mailing) using the envelope that is provided. Your signature must be notarized.

☐ I want to participate in the Settlement Pool and have at least $_____ deposited into my Lifetrend Accumulation Account.

## ADDITIONAL POLICY OPTIONS

As a Lifetrend Policyowner you are also entitled to elect ONE of the following Additional Policy Options.

### OPTION 1 REDUCED PAID UP POLICY WITHOUT ANY FURTHER PREMIUMS

As a Lifetrend Policyowner you are being given a one-time opportunity to have your life insurance policy converted to a fully paid up policy with no additional premiums due. You may select this option by inserting an "X" in the box below to indicate you want a reduced paid up policy. You must sign and date the last page of this form and return it to Us no later than DATE (which is 60 days from the date of the mailing) using the envelope that is provided. Your signature must be notarized.

☐ I want to convert my current policy to a fully paid up policy. I understand that the death benefit of my new policy will be at least $_____. This amount was calculated

using the current value of my Accumulation Account less any indebtedness plus the minimum payment from the Settlement Pool. I understand that I will not have to make any future premiums payments to maintain the policy.

## OPTION 2  FACE AMOUNT REDUCTION WITH FURTHER PREMIUM PAYMENTS

As a Lifetrend Policyowner you are also being given a one-time opportunity to reduce the face amount of your policy with a corresponding reduction in premium. If you would like to learn more about this opportunity please insert an "X" in the box below to indicate you are interested in a reduced face amount and call us at _____. You must sign and date the last page of this form and return it to Us no later than DATE (which is 60 days from the date of the mailing) using the envelope that is provided. Your signature must be notarized.

☐  I am interested in reducing the face amount of my policy and receiving a corresponding reduction in premium. I understand that I will work with the Company to determine the death benefit and premium and that I will have until DATE to make my decision.

**If you are not interested in either option, please check the box below.**

☐  I do not want either of the two policy options.

## RETURN THIS FORM BY: [DATE]

In consideration of the relief ("Relief") provided to **(Name),** (hereinafter "Claimant"), as described herein, Claimant, on behalf of himself or herself, and on behalf of his or her heirs, personal representatives, successors and assigns, does hereby release, acquit and forever discharge Conseco Life Insurance Company (hereinafter referred to as "Company") and its affiliates, subsidiaries, parents, agents, officers, directors, employees, insurers, successors and assigns (hereinafter referred to as "Released Parties"), from any and all claims of any kind whatsoever, whether known or unknown, which Claimant now has or which may hereafter accrue, arising out of or in any way related to any current and/or future litigation that Claimant could bring regarding the allegations in the Agreement, for **Policy Number XXXX** issued to Claimant by the Company (hereinafter the "Policy"), for the period covering the solicitation and eventual issue date of the Policy to the date hereof (hereinafter the "Released Claims").

In exchange for the Released Claims by the Claimant, the Company shall provide to the Claimant confirmation and acknowledgement by the Company that the:

Company will deposit at least $_xxxx_ into Claimant's Accumulation Account; and

If Option 1 is elected above, Policy is completely and forever "paid-up" with a death benefit of at least $_xxxx_ and that no further premiums payments or consideration are due from the Claimant to keep the Policy in force; or

If Option 2 is elected above, Claimant has expressed interest in a reduced face policy, which will require future premium payments to keep the Policy in force. The Company will work with the claimant to determine the death benefit. The Claimant will have until [DATE] to exercise this option.

Claimant is acting solely upon his or her own judgment, belief and knowledge of the nature of all claims or potential claims against the Company and Released Parties.

Claimant has carefully read this Election Form and Release and fully understands the terms herein, and signs the same as his or her own free act. Claimant is signing this release only after having the opportunity to secure the advice and consultation of legal counsel. It is further understood and agreed that Claimant intends to waive and hereby expressly waives all rights under California Civil Code Section 1542 and any similar law of any state or territory of the United States. Section 1542 reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Claimant agrees that the Released Parties shall have no responsibility whatsoever to any federal, state or local taxing authority for the tax liability, or consequences, if any, arising from the relief afforded under this settlement, and that all such responsibility is exclusively that of the Claimant. It is further understood and agreed that this Election Form and Release is not to be construed as and does not constitute an admission of liability or wrongdoing on the part of the Released Parties.

(Claimant's Signature)

(Claimant's Printed Name)

(Date)

STATE OF:

) SS

COUNTY OF:

Subscribed and sworn to before me, a Notary Public in and for said county and state, this

day of ,20

My commission expires:

My county of residence:                    Printed Name:

Signature _____          Date _____

**EXHIBIT F.2**

Election Form and Release (III, IV-87, IV-93 and IV-95 NOT ELIGIBLE FOR SETTLEMENT POOL)

**Mail to:** Conseco Life Insurance Company
_____ Unit
PO Box xxx
Carmel, IN XXXXX-XXX
**Claim Questions: 1-866-**
**Fax to: 1-800-xxx-xxxx**

Policy: [Policy Number]

## ADDITIONAL POLICY OPTIONS

As a Lifetrend Policyowner you are also entitled to elect ONE of the following Additional Policy Options.

### OPTION 1  REDUCED PAID UP POLICY WITHOUT ANY FURTHER PREMIUMS

As a Lifetrend Policyowner you are being given a one-time opportunity to have your life insurance policy converted to a fully paid up policy with no additional premiums due. You may select this option by inserting an "X" in the box below to indicate you want a reduced paid up policy. You must sign and date the last page of this form and return it to Us no later than DATE (which is 60 days from the date of the mailing) using the envelope which is provided. Your signature must be notarized.

☐ I want to convert my current policy to a fully paid up policy. I understand that the death benefit of my new policy will be $_____. This amount was calculated using the current value of my Accumulation Account less any indebtedness. I understand that I will not have to make any future premiums payments to maintain the policy.

### OPTION 2  FACE AMOUNT REDUCTION WITH FURTHER PREMIUM PAYMENTS

As a Lifetrend Policyowner you are also being given a one-time opportunity to reduce the face amount of your policy with a corresponding reduction in premium. If you would like to learn more about this opportunity please insert an "X" in the box below to indicate your interest in reducing the face amount or you can call us at _____. The Company will work with you to determine a death benefit acceptable to you. You should return this form to Us by DATE, but you are not required to sign it.

> I am interested in reducing the face amount of my policy and receiving a corresponding reduction in premium.

**If you are not interested in either option, please check the box below and return the form to the Company. You do not need to sign the form.**

> I do not want either of the two policy options.

## RETURN THIS FORM BY: [DATE]

In consideration of the relief ("Relief") provided to **(Name),** (hereinafter "Claimant"), as described herein, Claimant, on behalf of himself or herself, and on behalf of his or her heirs, personal representatives, successors and assigns, does hereby release, acquit and forever discharge Conseco Life Insurance Company (hereinafter referred to as "Company") and its affiliates, subsidiaries, parents, agents, officers, directors, employees, insurers, successors and assigns (hereinafter referred to as "Released Parties"), from any and all claims of any kind whatsoever, whether known or unknown, which Claimant now has or which may hereafter accrue, arising out of or in any way related to any current and/or future litigation that Claimant could bring regarding the allegations in the Agreement, for **Policy Number XXXX** issued to Claimant by the Company (hereinafter the "Policy"), for the period covering the solicitation and eventual issue date of the Policy to the date hereof (hereinafter the "Released Claims").

In exchange for the Released Claims by the Claimant, the Company shall provide to the Claimant confirmation and acknowledgement by the Company that, if Option 1 is elected above, the Policy is completely and forever "paid-up" with a death benefit of at least $_xxxx_ and that no further premiums payments or consideration are due from the Claimant to keep the Policy in force.

Claimant is acting solely upon his or her own judgment, belief and knowledge of the nature of all claims or potential claims against the Company and Released Parties.

Claimant has carefully read this Election Form and Release and fully understands the terms herein, and signs the same as his or her own free act. Claimant is signing this release only after having the opportunity to secure the advice and consultation of legal counsel. It is further understood and agreed that Claimant intends to waive and hereby expressly waives all rights under California Civil Code Section 1542 and any similar law of any state or territory of the United States. Section 1542 reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Claimant agrees that the Released Parties shall have no responsibility whatsoever to any federal, state or local taxing authority for the tax liability, or consequences, if any, arising from the relief afforded under this settlement, and that all such responsibility is exclusively that of the

Claimant. It is further understood and agreed that this Election Form and Release is not to be construed as and does not constitute an admission of liability or wrongdoing on the part of the Released Parties.

(Claimant's Signature)

(Claimant's Printed Name)

(Date)

STATE OF:

) SS

COUNTY OF:

Subscribed and sworn to before me, a Notary Public in and for said county and state, this

day of ,20

My commission expires:

My county of residence:                                    Printed Name:

Signature _____                Date _____

CLIC 0007685

## EXHIBIT G
## NGE Change Description

The Company and Regulators, after an extended period of review, examination and discussion, arrived at an agreed upon set of non-guaranteed elements (NGE) that may be implemented by the Company. A number of key regulatory requests, which were addressed by the Company, shaped the final NGE result. These requests included:

1) That expense charges assessed in the aggregate not exceed aggregate company anticipated expenses to support the policies.
2) That the form and structure of expense charges assessed be tempered so as to avoid exceptionally large expense charges on any policy.
3) That the total of the Cost of Insurance (COI) charges and expense charges to be included in the policyholder communication following the end of the moratorium not exceed those included in any related communications to policyholders in October of 2008.
4) That the agreed upon set of NGE, when reflected in the Milliman financial model along with all other agreed upon assumptions, produced a break-even result.

In order to meet the above regulatory requests, the company took the following steps:

1) Contractually guaranteed per policy expense charges of $5 per month would be implemented.
2) Contractually guaranteed per unit expense charges would be implemented, but with two adjustments.
   a. The per unit expense charge would be capped at $0.09 per unit per month.
   b. The total per unit expense charge would further be capped at $20 per policy per month.
3) The agreed upon set of COI would be implemented, but for Lifetrend III, IV-87, IV-93 and IV-95, a grade-in factor would apply. The increase in each policyholder's attained age since the original October, 2008 communication to those policyholders, coupled with the requested expense charge limitations detailed above, and changes in actuarial assumptions, required an initial grade-in factor of 50% in year 1. Subsequent grading factors were developed so that the resulting NGE charges are financially equivalent to those of the ungraded scale. No grading factors are required for Lifetrend V and VII policies.
4) The agreed upon COI schedule to be implemented would be equal to the product of "A" times "B" times "C", where:
   a. "A" equals the Base COI Table used by Milliman in its financial analysis of the block.
   b. "B" equals the adjustment factor that produces a break-even result. For the Lifetrend III, IV-87, IV-93 and IV-95 policies, the factor is 125.5%. For the Lifetrend V and VII policies, the factor is 95.1%.
   c. "C" equals the grading factors documented in the RSA for Lifetrend III, IV-87, IV-93 and IV-95 policies and 100% for Lifetrend V and VII policies.
   d. At all times, the COI resulting from "A" times "B" times "C" is capped at the contractually guaranteed maximum COI charge.

NOTE: "Exhibit G - Details," which contains the Base COI Table described in section 4a. and monthly per unit expense charges, is available to regulators upon written request to the Indiana Department of Insurance.

## EXHIBIT H
## Conseco NGE Review Process

A detailed review of any potential adjustment to a non-guaranteed element (NGE) conducted by the Company shall occur in the following manner:

(i) Product Management conducts a review of the product ("Review"), seeking input from the following areas:

- Actuarial, to secure updated experience analysis reports
- Valuation, to review or discuss cash flow testing results for signs of NGE issues
- Product Development, to secure and review original pricing assumptions
- The Illustration Actuary, for input on any related findings from illustration testing
- Product Approval and Compliance, to secure and review contract language
- Sales and Marketing, to review sales and/or product training materials.
- Legal, to review any potential legal or compliance issues

(ii) Following the Review, Product Management makes a recommendation to the Valuation Actuary responsible for the business and includes the Review and an actuarial report that documents the Review as justification for the recommendation.

(iii) After analyzing the Review, and obtaining any additional information necessary to complete the analysis, the Valuation Actuary responsible for the business makes a final determination regarding the recommended NGE change.

(iv) Any required regulatory filings, if applicable, are done within required state timelines.

(v) Policyholder support teams are fully briefed on the NGE change so that they are prepared to answer any policyholder questions and provide the necessary support related to any NGE change.

(vi) The NGE change is communicated to the operational areas for implementation.

CLIC 0007687

## EXHIBIT I

### Monetary Assessment and Schedule of Payments

A. Definitions – For the purpose of this Exhibit, the following definitions shall apply.

1. The total Monetary Assessment shall be $1,000,000, as referenced in paragraph 69 of this Agreement.

2. Participation Payment shall mean the amount paid to each Signatory Jurisdiction determined by the following formula:

   a. Participating Jurisdictions will be paid $5,000 if they have less than 100 Lifetrend Policyowners;

   b. Participating Jurisdictions will be paid $10,000 if they have 100 or more Lifetrend Policyowners; and

   c. Lead Jurisdictions will be paid $50,000.

3. Per Capita Assessment shall mean an amount determined by subtracting the total Participation Payments for all Signatory Jurisdictions from $1,000,000 and dividing that result by the total number of Lifetrend Policyowners for Conseco Life as of April 28, 2010 for Signatory Jurisdictions.

B. Monetary Assessment paid to each Signatory Jurisdiction

1. The Monetary Assessment due to a Signatory Jurisdiction, as shown in Paragraph C, Column (5) below, will be the sum of the Participation Payment, as shown in Paragraph C, Column (3) below and the product of the Per Capita Assessment, shown in Paragraph C, Column (4) and the Signatory Regulator's policy count as of April 28, 2010, as shown in Paragraph C, Column (2) below.

C. Table of Signatory Regulators:

| (1) Jurisdiction | (2) Policy Count | (3) Participation Payment | (4) Per Capita Assessment | (5) Monetary Assessment per Signatory Jurisdiction |
|---|---|---|---|---|
| | | | | |

CLIC 0007688