1

2   RAOUL D. KENNEDY (STATE BAR NO. 40892)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
3   525 University Avenue, Suite 1100
    Palo Alto, California 94301
4   Telephone: (650) 470-4500
    Facsimile: (650) 470-4570
5   Email: Raoul.Kennedy@skadden.com

6   JAMES R. CARROLL (*PRO HAC VICE*)
    DAVID S. CLANCY (*PRO HAC VICE*)
7   CHRISTOPHER A. LISY (*PRO HAC VICE*)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8   One Beacon Street
    Boston, Massachusetts 02108
9   Telephone: (617) 573-4800
    Facsimile: (617) 573-4822
10  Email: James.Carroll@skadden.com
    Email: David.Clancy@skadden.com
11  Email: Christopher.Lisy@skadden.com

12  Attorneys for Defendant
    Conseco Life Insurance Company

13              UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16                                    )  CASE NO.: 3:10-md-02124-SI
                                      )
17                                    )
                                      )
18                                    )  **(1)  CONSECO LIFE'S MOTION FOR
                                      )  SUMMARY JUDGMENT;**
19  IN RE CONSECO LIFE INSURANCE      )
    COMPANY LIFETREND INSURANCE       )  **(2)  MEMORANDUM OF POINTS
20  SALES AND MARKETING LITIGATION    )  AND AUTHORITIES IN
                                      )  OPPOSITION TO PLAINTIFFS'
21                                    )  MOTION FOR PARTIAL SUMMARY
                                      )  JUDGMENT;**
22                                    )
                                      )  **(3)  DECLARATION OF DAVID S.
23                                    )  CLANCY [filed under separate cover];
                                      )  and**
24                                    )
                                      )  **(4)  [PROPOSED] ORDER [lodged
25                                    )  under separate cover].**
                                      )
26                                    )  Date:   December 7, 2012
                                      )  Time:   9:00 a.m.
27                                    )  Place:  Courtroom 10
                                      )  Judge:  The Honorable Susan Illston
28

---
MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 9:00 a.m. on December 7, 2012, or as soon thereafter as the Court may schedule the matter to be heard, Defendant Conseco Life Insurance Company ("Conseco Life") will move this Court pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56 for summary judgment on Plaintiffs' complaint.  This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of David S. Clancy and all other accompanying exhibits and materials.

Dated:  October 30, 2012                         Respectfully submitted,


                                                 /s/ David S. Clancy
                                                 RAOUL D. KENNEDY (State Bar No. 40892)
                                                 Skadden, Arps, Slate, Meagher & Flom LLP
                                                 525 University Avenue, Suite 1100
                                                 Palo Alto, California 94301
                                                 Telephone: (650) 470-4500
                                                 Facsimile: (650) 470-4570
                                                 Email: Raoul.Kennedy@skadden.com

                                                 JAMES R. CARROLL (*Pro Hac Vice*)
                                                 DAVID S. CLANCY (*Pro Hac Vice*)
                                                 CHRISTOPHER A. LISY (*Pro Hac Vice*)
                                                 Skadden, Arps, Slate, Meagher & Flom LLP
                                                 One Beacon Street
                                                 Boston, Massachusetts 02108
                                                 Telephone: (617) 573-4800
                                                 Facsimile: (617) 573-4822
                                                 Email: James.Carroll@skadden.com
                                                 Email: David.Clancy@skadden.com
                                                 Email: Christopher.Lisy@skadden.com

                                                 Attorneys for Defendant
                                                 Conseco Life Insurance Company

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

ARGUMENT ....................................................................................................................... 13

I.    CONSECO LIFE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
      BOTH THE COI CHARGE AND THE EXPENSE CHARGE COMPLY WITH
      THE TERMS OF THE LIFETREND POLICY ......................................................... 13

      A.    The COI Charge Complies With The Policy Terms ......................................... 13

            1.    The Policy Provision Concerning COI Is Unambiguous  And The
                  Increase At Issue Here Complies With That Provision ......................... 13

            2.    If The Policy Is Deemed Ambiguous With Respect To The
                  Circumstances In Which Conseco  Life Can Increase The COI
                  Charge, Decertification Is Required ..................................................... 16

      B.    The Expense Charge Complies With The Policy Terms ................................... 17

II.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE
      THEIR FACTUAL CONTENTIONS ARE WRONG; AT THE VERY LEAST,
      THERE ARE  DISPUTED ISSUES OF FACT THAT PRECLUDE SUMMARY
      JUDGMENT .............................................................................................................. 18

      A.    The Policies Do Not Provide That The COI Charge Can Be  Increased
            Only If There Is A Deterioration In Mortality Rates ....................................... 18

            1.    Plaintiffs' Argument Is Defeated By The Plain Terms Of The
                  Policy .................................................................................................. 18

            2.    If The Policy Is Deemed Ambiguous On  This Issue, The Class
                  Must Be Decertified ............................................................................ 21

      B.    "Duration" Is Appropriately Considered In The COI Analysis ....................... 21

      C.    The COI Charges Are Not Being Used to Recoup Expenses ........................... 23

            1.    There Is No Contractual Requirement That COI Charges Cover
                  Death Benefits Only ........................................................................... 23

            2.    In Any Event, Plaintiffs Are Factually Wrong:  The COI Charges
                  At Issue Are Not Designed To Cover Losses Unrelated To Death
                  Benefits .............................................................................................. 24

i

D.   Post-September 2008 COI Charges Are Consistent With The Policy ...................... 26

E.   The COI Charges Do Not Constitute A Recoupment Of "Losses" On Lower-Than-Expected Interest Earnings ................................................................ 27

F.   Conseco Life Is Neither Improperly Using The Cost Of Insurance Charges To Offset Interest  Losses Nor Improperly "Diluting" The Guaranteed Interest Rates .............................................................................................................. 29

    1.   As Established By Dr. Behan, The COI Charges Are Not Offsetting Interest Losses .............................................................. 29

    2.   Plaintiffs' "Dilution" Argument Is Baseless .................................................. 30

III.   THE FILED RATE DOCTRINE PROVIDES AN ADDITIONAL GROUND ON WHICH TO GRANT CONSECO LIFE'S MOTION FOR SUMMARY JUDGMENT, AND DENY PLAINTIFFS' MOTION ........................................................ 31

CONCLUSION ........................................................................................................................ 33

ii

1

## <u>TABLE OF AUTHORITIES</u>

2 <u>Cases</u>                                                                                    <u>Page(s)</u>

3  <u>California ex rel. Lockyer v. Dynegy, Inc.</u>,
      375 F.3d 831 (9th Cir. 2004) ...................................................................31, 32
4

   <u>Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.</u>,
5      139 F.3d 1396 (11th Cir. 1998) ...................................................................14

6  <u>Coffman v. Pruco Life Ins. Co.</u>,
      No. 10 CV 03663, 2011 WL 4550152 (D.N.J. Sept. 29, 2011)....................................... <u>passim</u>
7

   <u>County of Suffolk v. Long Island Power Auth.</u>,
8      154 F. Supp. 2d 380 (E.D.N.Y. 2000), <u>aff'd sub nom.</u> <u>Town of Huntington v. Long</u>
      <u>Island Power Auth.</u>, 11 F. App'x 24 (2d Cir. 2001) ................................................32
9

   <u>Gallivan v. AT&T Corp.</u>,
10     124 Cal. App. 4th 1377 (2004) ...................................................................31, 32

11 <u>Georgine v. Amchem Prods., Inc.</u>,
      83 F.3d 610 (3d Cir. 1996)........................................................................22
12

   <u>MacKay v. Superior Court</u>,
13     188 Cal. App. 4th 1427 (2010) ...................................................................31

14 <u>Marcus v. AT&T Corp.</u>,
      138 F.3d 46 (2d Cir. 1998)........................................................................31, 32
15

   <u>Nantahala Power & Light Co. v. Thornburg</u>,
16     476 U.S. 953 (1986)..............................................................................31, 32

17 <u>Norem v. Lincoln Benefit Life Co.</u>,
      No. 10 C 2233, 2012 WL 1034495 (N.D. Ill. Mar. 20, 2012) ...............................15, 16, 18, 24
18

   <u>Old Line Life Ins. Co. of Am. v. Garcia</u>,
19     411 F.3d 605 (6th Cir. 2005), <u>adhered to and amended by</u> 418 F.3d 546 (2005)..............13, 14

20 <u>Verizon Del., Inc. v. Covad Commc'ns Co.</u>,
      377 F.3d 1081 (9th Cir. 2004) ...................................................................31
21

   <u>Walker v. Allstate Indem. Co.</u>,
22     77 Cal. App. 4th 750 (2000) .....................................................................31

23 <u>Wal-Mart Stores, Inc. v. Dukes</u>,
      131 S. Ct. 2541 (2011)...........................................................................22
24

   <u>Wegoland Ltd. v. NYNEX Corp.</u>,
25     27 F.3d 17 (2d Cir. 1994)........................................................................31

26 <u>Yue v. Conseco Life Ins. Co.</u>,
      No. CV 08-1506, 2011 WL 210943 (C.D. Cal. Jan. 19, 2011) ............................16

27

iii
_____

28  MOTION FOR SUMMARY JUDGMENT AND
    OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

The issue to be decided is whether Conseco Life's recently-instituted regulator-approved cost of insurance and expense charges breach the Lifetrend life insurance policy contracts between Conseco Life and policyholders.  Conseco Life submits that summary judgment in its favor is appropriate and that Plaintiffs' motion for partial summary judgment (Docket No. 387) should be denied.

## PRELIMINARY STATEMENT

Plaintiffs challenge recently-instituted cost of insurance ("COI") and expense charges on the Lifetrend policies.  These charges comply with the plain terms of the policies, and Plaintiffs' criticisms -- e.g., that the charges recoup historical losses -- are comprehensively analyzed and rebutted by two independent experts:  Donald Behan, Ph.D., a former Chief Actuary at Deloitte, and Michael Keeley, Ph.D., an economist.  These experts' opening reports are filed herewith as Exhibits A and B ("Behan Report" and "Keeley Report"), and their rebuttal reports are Exhibits C and D ("Behan Rebuttal Report" and "Keeley Rebuttal Report").  Conseco Life relies upon and incorporates their contents herein, which form a substantial and compelling basis for denial of Plaintiffs' motion.  As stated by Dr. Behan in his opening report:

> . . . I find that Conseco adhered to appropriate actuarial and industry standards in determining the new cost-of-insurance rates.  I further find that the Present Value of Future Profits Analysis on which Conseco's new cost-of-insurance charges is based is a prospective analysis.  Conseco's expected profit from the proposed re-imposition of cost-of-insurance charges is approximately zero, and in expectation therefore Conseco will not recoup any prior losses by assessing these charges.

The Court should grant summary judgment in favor of Conseco Life because the COI and expense charges that are challenged by Plaintiffs have been enacted in strict compliance

with policy terms.  The charges have been approved by more than 45 state insurance regulators, including the Insurance Commissioner of the State of California.  There has been no breach.

The Court should also deny Plaintiffs' motion for partial summary judgment for (at least) the following reasons:

**First**, with respect to the COI charge that is at the heart of the parties' disagreement, Plaintiffs contend that it cannot be increased (even, as here, from $0) unless there has been a deterioration in mortality rates.  But the policy specifies the circumstances in which this charge can be adjusted.  There is no requirement that it can be adjusted only if there is a deterioration in mortality rates.  Further, this non-existent requirement would make no sense.  As explained by Dr. Behan, when a company establishes a plan for going-forward COI charges, it is estimating what it will need to charge to cover expected future death benefit payouts by forecasting future mortality rates <u>and</u> future interest rates.  Deterioration in <u>either</u> of these factors increases mortality costs, and also the return-on-premium which the company can utilize to pay for mortality costs.  Consequently, as set forth in detail in the expert reports of Dr. Behan and Dr. Keeley, it is neither logical, nor actuarially sound, nor consistent with industry practice to posit that an increase in COI charges can occur only in the event of deterioration in mortality rates.

**Second**, Plaintiffs contend that the COI charges are improper because the underlying rate schedule takes into account "duration" -- i.e., how long a policyholder has held his or her policy.  (All other factors remaining equal, the longer the insured has held the policy, the higher the rate, and vice versa.  This is because the longer the insured has held the policy, the higher the likelihood that he or she is unhealthy.)  The policy does not prohibit consideration of duration in this manner, and -- as explained by Dr. Behan, and not disputed by Plaintiffs'

2

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT        CASE NO.: 3:10-md-02124-SI

proposed expert -- consideration of duration in this manner is an accepted industry practice which results in a more precise determination of the fair charge for each insured.

**Third**, Plaintiffs contend that the COI charges are designed to recoup future expenses distinct from the core expense on a life insurance policy:  death benefits.  Plaintiffs present no expert analysis supporting this claim with their motion, and it is simply wrong.  Dr. Behan analyzed the relevant data, and shows in his report that -- consistent with the testimony of Conseco Life personnel -- the future COI charges are not subsidizing future expenses distinct from death benefits.

**Fourth**, Plaintiffs contend that the 2010-instituted COI charges are improperly recouping 2008-2010 expenses.  The COI charges are designed to cover projected mortality costs from September 30, 2008 forward, and they were instituted in 2010 only because Conseco Life agreed to the regulators' request to delay their institution pending review.  There is nothing to suggest there is an improper recoupment of "prior losses" by delaying the institution of a fee at the request of a regulator, and Plaintiffs cite no authority -- expert opinion, case, statute or otherwise -- supporting their theory, which, if accepted, would operate as a substantial disincentive to cooperation between insurance companies and regulators.

**Fifth**, Plaintiffs contend that Conseco Life decided to re-institute COI charges (i.e., to depart from the original, non-guaranteed practice of charging those fees for 8 years) in part because interest rates were much lower than originally expected by the predecessor companies, and that Conseco is thereby recouping a prior loss.  This is a non-sequitur.  Interest rates have in fact been lower than expected, but as confirmed by Dr. Behan and by Dr. Keeley, the recently-instituted COI charges are designed to cover future death benefits only -- and therefore there is no recoupment of any prior loss.

**Sixth**, Plaintiffs contend that the COI charges breach the contract because they "dilute" the guaranteed minimum interest rate. <u>Any</u> upward adjustment in the COI charge will have the impact of reducing a policyholder's net return on his or her accumulation account (i.e., the return he or she receives after considering gain from application of interest, and loss from application of charges), but the fact remains that the policy permits upward adjustments in the COI charge. Where, as here, the adjustment complies with the plain policy terms, there is no breach, notwithstanding the obvious fact that the policyholder's net return is affected.

On the factual record before the Court, summary judgment in Conseco Life's favor is appropriate, and Plaintiffs' motion for partial summary judgment should be denied. At the very minimum, the Court should hold a trial for presentation of expert testimony and resolution of disputed fact.

## STATEMENT OF FACTS

### The Lifetrend Policies, And Related Charges, At Issue

As the Court is aware, this lawsuit relates to certain "Lifetrend 3 and 4" life insurance policies originally issued by Massachusetts General Life Insurance Company ("Massachusetts General") and Philadelphia Life Insurance Company ("Philadelphia Life"), and now administered by Conseco Life. The policies were offered for sale in the 1980s and the 1990s by independent agents, not by employees of Conseco Life or its predecessors. (<u>See</u> Declaration of Frank S. Scuglik, previously filed as Docket No. 27 ("Scuglik Decl."), ¶¶ 2-3.[1])

---

[1] Lifetrend 3 and Lifetrend 4 policies were issued in "series": the 1987 series, the 1993 series, and the 1995 series. There were different policy forms for Massachusetts General and Philadelphia Life, and for each of the three series. All of the <u>Brady</u> plaintiffs had Lifetrend 4 1987 series policies issued by Massachusetts General. (Scuglik Decl., ¶ 4.) Additionally, named Plaintiff Bill McFarland had two Lifetrend 4 policies: a 1987 series policy and a 1993 series policy issued by Philadelphia Life. (<u>Id.</u>)

The operation of the Lifetrend 3 and 4 policies is straightforward.  Each policy provides for payment of a specified annual premium.  Plaintiff Cedric Brady's "Annual Premium," for example, is $10,000.02.  (See Lifetrend Policy of Cedric Brady ("Brady Policy") (BRD000001-21) at page 3, attached as Exhibit 1 to the Declaration of David S. Clancy (the "Clancy Decl."), filed contemporaneously herewith.)  That annual premium is paid into an accumulation account, which, after charges are deducted, grows based on the credited interest rate which is at least as high as the guaranteed minimum rate (4.5% per year in Mr. Brady's case). (Brady Policy, at page 4.)  The value in this account is the policyholder's, not Conseco Life's.  A policyholder can surrender the policy at any time and receive this value (less any applicable surrender charge).  If the policyholder retains the policy until his or her death, Conseco Life pays to the beneficiary the greater of this value, or the policy's stated death benefit.  (Brady Policy, at page 7.)

In return for agreeing to undertake these obligations, Conseco Life is contractually entitled to deduct two monthly charges:  (i) the expense charge and (ii) the COI charge.  The Lifetrend policy form explicitly provides for and permits both charges:

> Monthly Deduction.  The monthly deduction for a policy month will be calculated as (a) plus (b) where:  (a) is the cost of insurance plus the cost of additional benefits provided by rider for the policy month; and (b) is the monthly expense charges as shown on a Policy Data Page.

(Brady Policy, at page 9.)

As to the expense charge, the maximum that Conseco Life can charge is $5.00 per month.  Mr. Brady's Policy Data Page, which is representative, states:

> EXPENSE CHARGES.  THERE IS A CHARGE OF $2.50 PER MONTH PER POLICY.  THIS CHARGE MAY BE INCREASED BY THE COMPANY AT A POLICY ANNIVERSARY BUT NOT TO EXCEED $5.00 PER MONTH PER POLICY AND ONLY UPON THE GIVING OF PRIOR NOTICE OF AN INCREASE TO THE OWNER.  DURING THE FIRST TWO

5

POLICY YEARS ONLY THERE IS AN ADDITIONAL
MONTHLY EXPENSE CHARGE OF $1.19 PER $1,000 OF
INITIAL SUM INSURED.

(Brady Policy, at page 5.)

As to the COI charge, it too is subject to a maximum.  The COI charge is addressed on pages 9 and 10 of the Brady policy, which explain, among other things, that:

- the COI charge will be deducted monthly;

- the COI charge can be increased "by giving written notice to all insureds not less than ninety days prior to the date of such change";

- "Any such change shall be subject to approval by the insurance regulatory authority of the state of residence of the owner, if required"; and

- In each year it is subject to a specified maximum.

There are no other stated prerequisites for adjusting the COI charge.  (Id. at pages 9-10.)

**Initially, Charges Were To Be Deducted For The First Eight Policy Years;
This Was Based On Then-Existing Assumptions, Including For Interest Rates**

At the time the Lifetrend policies were sold, it was the practice of the predecessor companies of Conseco Life to deduct COI and expense charges only for the policy's first eight years.  (Clancy Decl., Ex. 2 (CLIC 0003786).)

The record evidence is undisputed that this practice was based on the then-current assumptions about multiple factors including future interest rates (which were, in retrospect, at historic highs).  (Clancy Decl., Ex. 3 (CLIC 0009215); Deposition of Keith Turner, Nov. 18, 2009 ("K. Turner Dep."), 117:17-120:7, (Clancy Decl., Ex. 4).)

COI charges are affected by interest rates for fundamental reasons.  First, the lower the interest rates, the slower the growth of the accumulation accounts.  And the slower those accounts grow, the greater the amount of "Net Amount at Risk" -- the portion of the death

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

benefit for which Conseco Life is responsible (i.e., the difference between the total death benefit and the amount attributable to the policyholder's own premium contributions).  (Behan Report, ¶ 17 (Ex. A).)  <u>Second</u>, the lower the interest rates, the less the company earns on contributed premium, and the less accumulated cash the company has to pay death benefits.  (Behan Report, ¶ 18 (Ex. A).)  For both reasons, where interest rates are expected to be high in the future, a company may tentatively conclude that it can afford to charge less in COI (here, 8 years of charges only) -- but where interest rates decline, that plan must of course be adjusted.  (<u>Id.</u> at ¶¶ 18-19.)

**Record Evidence Reflects That Costs Were Based On Then-Existing <u>Assumptions And Were Subject To Change Based On, For Example, Interest Rates</u>**

As noted, the policy itself clearly provides that charges may be adjusted over time. In addition, contemporaneous documents including marketing materials and policyholder illustrations referred conspicuously to the fact that future costs would depend on interest rates. For example:

(1)     The Lifetrend policy -- an "ISWL" or "interest sensitive whole life" insurance policy -- itself contains an "IMPORTANT NOTICE" stating that "[T]he projected results of your insurance program may change drastically with variations in the interest rate, mortality rates (risk charges), expense factors, and the frequency, timing and amount of your premium payments.  You should read and study your policy and policy summary very carefully." (Brady Policy, at page 4.)

(2)     Illustrations distributed to many class members during sales presentations reinforced the fact that changes in the interest rate environment could affect the Lifetrend policy by displaying two columns, one for "guaranteed" values and one for "projected" values using

7

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

assumptions, including interest rate, from the time of the illustration.  The illustration plainly

states that:

> PROJECTED VALUES for both continuous pay and limited pay values are based on current interest expense and cost of insurance rates.

(Clancy Decl., Ex. 5 (CLIC 0807321).)

(3)     Correspondence from Conseco and its predecessors stated unambiguously

that interest rates affected policy performance and the amount of money that a policyholder

would need to pay.  For example:

> "In your letter, you asked for a guarantee that no additional monies would ever be needed.  I cannot give you that guarantee, because I cannot guarantee interest rate levels for the Country as a whole or our company in particular.  As you have read in the newspapers, home mortgage loan rates are at a 20-year low, car loans are down from prior years, and the bond rates are lower as well.  The result of lower investment rates to your policy created the need for additional monies."

(Letter dated Oct. 25, 1993 from Massachusetts General Life (Clancy Decl., Ex. 6 (CLIC

0028159)).)

> "The sales illustration does show that premiums only need to be paid for five years, however this is at 8.5%.  Due to the interest sensitivity of the policy, this cannot be guaranteed."

(Letter dated Feb. 19, 1996 from Life Partners Group (Clancy Decl., Ex. 7 (CLIC 0792958)).)

> "Actual performance is influenced by factors such as fluctuating interest rates and premium options chosen[.]"

(Letter dated Mar. 4, 2003 from Conseco Services LLC (Clancy Decl., Ex. 8 (CLIC 0026325)).)

(4)     Unscripted agent representations to policyholders communicated that

changes in the interest rate environment could affect the cost of the Lifetrend policy.  For

example, named Plaintiff Bill McFarland's agent testified at deposition as follows:

> Q:     There was a difference between what might happen with the policy if the interest rate changed, as if it stayed the same?
>
> A:     Yes.

8

Q:      Did you explain that to people when you were --

A:      Yes.  Because we had both, the current and guaranteed,
        because you'd also say, you know, Hey, -- just to use a
        number, say, if the current was 8 percent, and, say, this
        based on if it stayed 8 percent from now to forever and ever,
        amen.  And, conversely, if the interest rate went to 10 percent,
        these values could change . . . .

                        *        *        *

Q:      Now, what happens if the interest rate changes over time?

A:      Then, if I recall, it defined it that you may have to start paying
        premiums in later years.

(Deposition of Lonnie E. Poole, June 11, 2010 ("Poole Dep."), 45:13-46:1; 47:10-14 (Clancy

Decl., Ex. 9.))  Similarly, Larry Winsten, a selling agent for some named Plaintiffs, testified that

he never told his clients that the COI charge could never go up or would be permanently

discontinued.  (Deposition of Larry Winsten, June 7, 2010 ("Winsten Dep."), 116:20-22; 117:17-

20 (Clancy Decl., Ex. 10.))  And David Neubauer, a selling agent for some other named

Plaintiffs, testified that he could not recall telling any client or potential client that their fees

would never go up or that the COI charge would ever be permanently discontinued.  (Deposition

of David Neubauer, June 8, 2010 ("Neubauer Dep."), 55:11-20 (Clancy Decl., Ex. 11.))

        The record also reflects correspondence from other agents recounting the same

explanation:

        I explained to each participant in face to face meetings at the
        employer's office what 'vanishing premiums' really meant.   I
        provided them with copies of the original illustrations based upon
        the interest rate credited at that time as well as current 'in-force'
        illustrations with required future premiums predicted on current
        (March 1990) interest rates.   The goal was to make sure each
        participant understood the effect of changing interest rates on the
        requirement for future premium payments.

(Letter dated Feb. 25, 1997 from Alliance Benefit Group to Life Partners Group (Clancy Decl.,

Ex. 12 (CLIC 0049795)).)

9

(5)     Marketing materials for the "interest sensitive" Lifetrend policies confirmed these messages.

> The ability to participate in the "optional premium payment" or OPP provision was "based on <u>current</u> interest, mortality and expense assumptions."

(Clancy Decl., Ex. 13 (CLIC 0003510) (emphasis added).)

> Eligibility to participate in the OPP provision "extends your coverage and policy values based purely on <u>current</u>, <u>non-guaranteed</u> assumptions."

(Clancy Decl., Ex. 14 (CLIC 0003549) (emphasis added).)

In sum, the predecessor companies originally expected that future interest rates would be high enough to permit a waiver of COI and expense charges after eight years. However, the Lifetrend policies do <u>not</u> promise or guarantee that COI and expense charges would be deducted for eight years only; this was a company practice, but it was not guaranteed as were some other elements of the Lifetrend policy.[2]  Plaintiffs' proposed expert, Mark Browne, does not offer a contrary opinion.  (Deposition of Mark Browne ("Browne Dep."), 46:16-20 (Clancy Decl., Ex. 15).)

**Over Time, Interest Rates Declined Substantially,**
**<u>Necessitating The Re-Imposition Of COI And Expense Charges</u>**

Here, the predecessor companies premised their plan to cease COI charges after 8 years on an assumed future interest rate of 12.5% -- a rate which would very favorably impact the growth of accumulation accounts, and accumulation of company earnings on contributed premium.  (Clancy Decl., Ex. 3 (CLIC 0009215).)  Over time, however, interest rates declined substantially, from historic highs to historic lows.  Therefore, as Mr. Turner testified, actual investment return rates were "significantly" less than expected, frustrating the hope that charges

---

[2]     Indeed, in a 2002 letter, policyholder Robert Haley expressed surprise that COI charges had not been deducted every year.  (Clancy Decl., Ex. 16 (CLIC 0227302).)

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

1  would only have to be deducted for eight years.  (K. Turner Dep. at 120:8-10; see also id. at

2  159:25-160:16 (Clancy Decl., Ex. 4).)

3            Consequently, Conseco Life decided to make an adjustment to its COI and

4  expense charges, consistent with policy requirements.  The COI and expense charges would be

5  instituted from the then-present $0, but assessed on a prospective, "break-even" basis (i.e., so

6  that future revenues would not exceed future expenses).  (Id. at 163:25-173:6.)  Mr. Turner has

7  flatly denied Plaintiffs' contention that the newly-instituted charges were meant to recoup

8  historical losses (id. at 241:13-242:9) and as discussed further below, expert analysis supports

9  this testimony.  The changes were announced in an October 2008 letter to policyholders.

10  (Clancy Decl., Ex. 17 (CLIC 0002503).)  Shortly thereafter, Conseco Life agreed to suspend the

11  assessment of the charges pending review by state insurance regulators.  (Clancy Decl., Ex. 18

12  (CLIC 0003826).)

13

14

15  **State Insurance Regulators Approved The Charges At Issue In 2010**

16            The regulatory examination lasted approximately eighteen months.  The review

17  resulted in certain alterations to the charges, which were eventually approved at the specified

18  levels set forth in the 2010 Regulatory Settlement Agreement (the "RSA" or "Agreement") with

19  Conseco Life:

20            The Lead Regulators' review of the Lifetrend policies included the
21            following issues:  . . . [w]hether Conseco Life and its predecessors
              properly determined NGE changes made to the Lifetrend policies.
22
23  (Clancy Decl., Ex. 19 (CLIC 0007604), ¶ 26.)  ("NGE" is defined in the Regulatory Settlement

24  Agreement as "Cost of Insurance rates and monthly expense charges." (Id. at 6.))

25            Absent re-imposition of the charges, Conseco Life would have experienced, for

26  the period September 30, 2008 forward, a loss of approximately $71 million in present value

27  terms.  (Declaration Of Andrea Hopkins In Support Of Plaintiffs' Motion For Partial Summary

28
                                              11

Judgment, Docket No. 387 ("Hopkins Decl."), Ex. 17; see also Behan Report, ¶ 30 (Ex. A); Keeley Report, ¶ 42 (Ex. B).)  Plaintiffs do not contend that as of 2008 Conseco Life had experienced an overall profit; Plaintiffs' proposed expert Mark Browne testified that as of that year, the policies had already, on the whole, yielded negative profitability for Conseco Life. (Clancy Decl., Ex. 15; Browne Dep., 107:24-108:8.)  Similarly, as demonstrated by analysis provided to the regulators, the cumulative profitability of the Lifetrend policies at the present time -- i.e., overall profitability to date -- is at best negligible.  (Clancy Decl., Ex. 20 (CLIC 0707770); Clancy Decl., Ex. 21 (CLIC 0707776).)

Further, the COI charges now in place are not designed to assure Conseco Life some level of overall profit with respect to the Lifetrend policies.  Instead, they are designed to have an ameliorating effect:  they are designed to solely address future estimated costs (i.e., from October 2008 forward) without regard to historical (i.e., pre-October 2008) financial results, and they are designed merely to match those future estimated costs, not to exceed them.  (Declaration of Keith Turner, previously submitted as Docket No. 300 ("K. Turner Decl."), ¶ 13.)  This fact is underscored by paragraph 60 of the Regulatory Settlement Agreement, which authorizes the regulators to conduct, in the future, an "independent assessment to determine whether observed mortality experience differs by more than 10% from the assumed mortality experience used to determine the NGE [non-guaranteed element] charges."  (K. Turner Decl., ¶ 14.)  Again, as discussed further below, the prospective break-even nature of the charges at issue is supported by independent expert analysis.

Finally, there is no dispute in this case that the actual individual monthly expense charge and COI deductions were at or below the maximum permitted levels specified in the policies.  (K. Turner Decl., ¶¶ 7, 11.)  Nor is there any dispute that, now and in the future,

individual monthly expense charge and COI deductions will be at or below the maximum levels

specified in the policies.  (Id. ¶¶ 9, 12.)

## ARGUMENT

I.    **CONSECO LIFE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE BOTH THE COI CHARGE AND THE EXPENSE CHARGE COMPLY WITH THE TERMS OF THE LIFETREND POLICY**

    A.    **The COI Charge Complies With The Policy Terms**

        1.    **The Policy Provision Concerning COI Is Unambiguous And The Increase At Issue Here Complies With That Provision**

The Lifetrend policies unambiguously state the circumstances under which

Conseco Life is contractually permitted to change the monthly COI charge.  Conseco may do so

as long as:

    1.    It sets the monthly COI charge at or below a contractually defined maximum calculated according to a table disclosed and included in the Lifetrend policies.  (Brady Policy, at pages 9-10 (Clancy Decl., Ex. 1).)

    2.    It provides "written notice to all insureds not less than ninety days prior to the date of such change."  (Id.)

    3.    It obtains "approval by the insurance regulatory authority of the state of residence of the owner, if required."  (Id.)

Those three specific contractual terms set forth the parties' agreement as to what

Conseco Life has to do to change the monthly COI charges.  Plaintiffs' motion does not dispute

that Conseco Life complied with each of those requirements.

This Court should apply the policy provisions concerning COI as written; it does

not have the power to add new, unwritten terms.  In Old Line Life Ins. Co. of Am. v. Garcia, 411

F.3d 605, 614 (6th Cir. 2005), adhered to and amended by 418 F.3d 546 (2005), for example, the

Sixth Circuit reversed and remanded a life insurance breach of contract suit where the district

court incorrectly "read into the policy an obligation that does not exist."  In that case, a life

insurance applicant was asked to disclose whether the new policy would replace existing

13

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

insurance policies.  <u>Id.</u> at 607.  The applicant identified three other term life insurance policies that were scheduled to expire.  <u>Id.</u>  An insurance policy was issued that did not expressly require the applicant to replace or cancel the existing policies.  <u>Id.</u>  The insured passed away before the other term insurance policies expired, and the new insurer sought rescission based on the applicant's alleged misrepresentation.  <u>Id.</u>  The district court granted summary judgment in favor of the insurance company, but the Sixth Circuit reversed, reasoning that the policy "is silent with regard to replacement.  It is not ambiguous; it simply does not address replacement at all. Because the policy is unambiguous, it is not necessary to supplement it or review extraneous sources."  <u>Id.</u> at 613.  The Sixth Circuit further reasoned that it could not "read into the policy an obligation that does not exist" and concluded that the "District Court should not have done so either."  <u>Id.</u> at 614.[3]

This fundamental principle -- i.e., that unwritten obligations cannot be written into an insurance policy -- has been applied in cases involving COI in particular.  For example, in <u>Coffman v. Pruco Life Ins. Co.</u>, No. 10-CV-03663, 2011 WL 4550152 (D.N.J. Sept. 29, 2011), the plaintiff ("Coffman") filed a putative class action alleging that the insurer ("Pruco") breached the insurance contract by impermissibly including in the "monthly charge for the expected cost of mortality" amounts for expenses, taxes and/or profits, instead of considering <u>only</u> the expected cost of mortality.  <u>Id.</u> at *1.  On Pruco's motion to dismiss, the court examined the language of the policy, which defined the term "expected cost of mortality" as a formula consisting of the rate set out in the policy's "Table of Maximum Monthly Mortality Rates per $1000" multiplied by the

---

[3]     <u>See also</u> <u>Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.</u>, 139 F.3d 1396, 1404 (11th Cir. 1998) ("[T]he fact remains that the fully integrated License Agreement is not ambiguous; it is simply silent on the issue of whether or where Sheraton and its affiliates can establish properties that compete against the Inn. . . .  Nor will we accept either party's invitation to imply such language into the contract to decide the issue.").

"coverage amount" (the insurance amount minus the amount of money in the policyholder's

investment account). Id.  The "expected cost of mortality" was also subject to a policy maximum.

Pruco argued, and the Court agreed, that Coffman could not allege that Pruco's charges ever

exceeded that amount.  Coffman instead argued that the word "mortality" within the term

"expected cost of mortality" meant that only mortality could be considered, and that non-

mortality costs could not be included. Id. at *2.  The Court rejected this argument, stating:  "no

such language is included in the policy." Id. at *3  "[U]nder the terms of the Policy, Pruco Life

was required to follow the formula and prohibited from exceeding the maximum rate in

calculating the expected cost of mortality[;] nothing more, nothing less." Id.  Therefore, "[b]ased

on the plain language of the Policy, Pruco Life has not breached the contract." Id. at *4.

   Coffman is instructive for multiple reasons.  First, the policy in Coffman and the

Lifetrend policy operate in fundamentally the same way (i.e., premium is paid into an account,

and costs are deducted).  Second, the policy in Coffman and the Lifetrend policy both deducted

charges for a number of different items, including both COI/mortality and expenses.  In fact, the

policy in Coffman included not only the "expected cost of mortality," but also a "sales expense,"

"administrative expenses," a charge "to guarantee that the insurance amount will not fall below

the face amount," a charge for "extra rating class" or "extra benefits," and "any applicable taxes."

Id. at *1.  Despite these various, specifically-named charges, the court had no trouble concluding

that the "expected cost of mortality" was not specifically limited to mortality.  Third, the court

appropriately declined to "rewrite" the policy to include requirements that were not plainly

evident, despite Coffman's urging (as Plaintiffs similarly urge here).

   Likewise, in Norem v. Lincoln Benefit Life Co., No. 10 C 2233, 2012 WL

1034495 (N.D. Ill. Mar. 20, 2012), the plaintiff ("Norem") alleged that the defendant insurer

("Lincoln") breached the terms of an insurance policy by including impermissible costs in its

determination of COI rates.  Id. at *1.  Lincoln moved for summary judgment.  The policy

language at issue provided that COI would be "based on the insured's sex, issue age, policy year,

and payment class" and that COI rates could not exceed guaranteed rates listed in the policy.  Id.

It was undisputed that in setting COI rates Lincoln considered numerous factors beyond the four

enumerated in the "based on" clause; it was also undisputed that the COI rates never exceeded

the maximum rates set forth in the policy.  Id.  The court concluded that the "based on" clause

meant that the enumerated factors were the "principal components" or "fundamental ingredients"

of COI rates but were not "the exclusive factors" – instead, they were only "the starting point."

Id.  Consequently, the court held that Lincoln did not breach the contract by considering factors

other than those enumerated in that clause, and subsequently granted summary judgment in

Lincoln's favor.[4]  Id. at *3-4.  (Further, as explained herein, the going-forward COI charges do

not cover costs other than death benefits; these cases are cited here for the fundamental point that

it is not appropriate to read COI-related requirements into a contract where none exist.)

**2.      If The Policy Is Deemed Ambiguous
          With Respect To The Circumstances In Which Conseco
          Life Can Increase The COI Charge, Decertification Is Required**

Even if the Court deems the COI provision to be ambiguous with respect to when

COI may be increased, the class should be decertified because then it would be necessary to

determine, for each separate policyholder, whether he or she understood (as should have been the

---

[4]      The court in Norem also declined to adopt the rationale in Yue v. Conseco Life Ins. Co., No. CV 08-1506, 2011 WL 210943 (C.D. Cal. Jan. 19, 2011), a case on which Plaintiffs rely for the proposition that COI must be "tied to" mortality.  The Court may recall that, in Yue, the policy at issue stated that "current monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience." 2011 WL 210943 at *3(language that is not present here, but which the Plaintiffs have argued is similar).  The court in Norem did not agree that "based on" should mean "solely based on"; similarly, the court in Coffman concluded that similar phrasing does not preclude an insurance company from considering factors other than mortality.

case) that the cost of his or her policy would depend on fluctuations in interest rates.  For further discussion on this point, Conseco Life respectfully refers the Court to its pending Motion For Decertification Of The Entire Class, Or, In The Alternative, Decertification Of The Certified Subclass Of Releasors, filed on October 19, 2012 (Docket No. 393).

      **B.**    **The Expense Charge Complies With The Policy Terms**

Conseco Life is entitled to summary judgment on Plaintiffs' breach of contract claim with respect to the expense charge because there is no material dispute that that charge complies with the terms of Lifetrend policy.  The analysis for the expense charge mirrors that of the COI charge discussed above.

The expense charge provision states that:

> EXPENSE CHARGES.  THERE IS A CHARGE OF $2.50 PER MONTH PER POLICY.  THIS CHARGE MAY BE INCREASED BY THE COMPANY AT A POLICY ANNIVERSARY BUT NOT TO EXCEED $5.00 PER MONTH PER POLICY AND ONLY UPON THE GIVING OF PRIOR NOTICE OF AN INCREASE TO THE OWNER.  DURING THE FIRST TWO POLICY YEARS ONLY THERE IS AN ADDITIONAL MONTHLY EXPENSE CHARGE OF $1.19 PER $1,000 OF INITIAL SUM INSURED.

(Brady Policy, at page 5 (Clancy Decl., Ex. 1).)

The expense charges currently being assessed by Conseco Life do not exceed $5.00 per month.  (Id.)  The increased expense charge was effected by Conseco Life at a policy anniversary (id.) and upon prior notice (id.).  There is no evidence to the contrary.  Indeed, Plaintiffs do not even allege that Conseco Life is charging more than $5.  Accordingly, summary judgment is appropriate.  (Tellingly, Plaintiffs have not even moved for summary judgment with respect to expense charges.)

**II.   PLAINTIFFS ARE NOT ENTITLED
TO SUMMARY JUDGMENT BECAUSE THEIR FACTUAL
CONTENTIONS ARE WRONG; AT THE VERY LEAST, THERE ARE
<u>DISPUTED ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT</u>**

    **A.   The Policies Do Not Provide That The COI Charge Can Be
<u>Increased Only If There Is A Deterioration In Mortality Rates</u>**

        **1.   <u>Plaintiffs' Argument Is Defeated By The Plain Terms Of The Policy</u>**

Plaintiffs argue that there can be no increase to COI charges -- even, as here, when the increase was made from a discretionary charge of $0 -- absent a deterioration in mortality rates.  (Plaintiffs' Motion For Partial Summary Judgment ("Motion" at 12-14.)[5]

The Lifetrend policy sets forth when Conseco Life can raise COI charges, and there is no provision stating that COI can be raised <u>only</u> when there is a deterioration in mortality rates.  (Brady Policy, at page 5 (Clancy Decl., Ex. 1); <u>see also</u> Browne Dep., 63:19-64:7 (Clancy Decl., Ex. 15) ("there's nowhere it says [COI] only [may be increased in the event of adverse mortality experience]".)  The <u>Coffman</u> case, discussed <u>supra</u>, is directly on point:  a court cannot "rewrite" a policy to include prohibitions or requirements to which the parties did not agree in writing.  <u>See</u> <u>Coffman</u>, 2011 WL 4550152 at *3; <u>see also</u> <u>Norem</u>, 2012 WL 1034495 at *3.

On this ground alone, Plaintiffs' motion for partial summary judgment should be denied, and summary judgment should be granted in favor of Conseco Life.  Conseco Life raises two additional points with the Court solely for context (all that matters legally is that the policy does not contain the restriction Plaintiffs advocate):

---

[5]   In their brief, Plaintiffs intermingle the concepts of COI charges and COI rates.  COI <u>charges</u> refer to the dollar amount the insurer charges to policyholders, e.g., here, $0 for many years.  (Behan Report, ¶ 6 (Ex. A).)  COI <u>rates</u> refer to an input the insurer uses in calculating the cost of insurance charge.  (<u>Id.</u>)  Conseco Life calculates the COI charge by multiplying the COI rate by the difference between a policyholder's death benefit and his or her accumulated policy value.  (<u>Id.</u>)

Here, the issue is whether Conseco Life was permitted to increase its COI <u>charge</u> (from $0) without deterioration in mortality rates.  <u>If</u> Plaintiffs challenge the particular <u>rate</u> utilized in determining the new charge, they have not substantiated that challenge in their motion.

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT    CASE NO.: 3:10-md-02124-SI

**First**, the unwritten policy provision that plaintiffs ask this Court to read into the policy makes no sense.  When an insurance company sets a non-guaranteed plan for going-forward COI charges on whole life policies, as Conseco Life's predecessors did here, it bases that plan upon a projection of not only future mortality rates (mortality), but also on future interest rates:

> When an insurance company sets cost-of-insurance charges for a whole life policy, it does so prospectively based on assumptions about future mortality and future investment returns.

(Behan Report, ¶ 8 (Ex. A).)

Why?  Because the company is projecting the amount needed to cover future costs, and anticipated future interest rates (including corresponding investment returns) are integral to that determination.  (Id.)  If future interest rates were not considered, i.e., the company were to assume a zero rate of return, the planned payment schedule would need to be greater.  (Id. ¶ 12; Keeley Report, ¶¶ 28-29 (Ex. B).)  Stated differently, the lower mortality rates are expected to be and the higher interest rates are expected to be, the less the company can plan to charge on a non-guaranteed basis.  (Behan Report, ¶ 8 (Ex. A).)

These two factors -- mortality rates and interest rates -- are therefore tightly linked, and a decline in either of them justifies an increase.  (Behan Report, ¶¶ 14-15 (Ex. A); Keeley Report, ¶¶ 28-29 (Ex. B).)  There is no simply no contractual, logical or actuarial basis to posit that only a deterioration in mortality rates justifies a COI increase.  As Dr. Behan explains based on decades of actuarial experience, Conseco Life "adhered to the appropriate actuarial and industry standards" in its COI analysis (Behan Report, ¶ 33 (Ex. A)), and:

> Plaintiffs' assertion that Conseco should not be permitted to resume assessing cost-of-insurance charges because mortality rates have improved over time is erroneous, especially because it does not account for the critical impact that changes in interest rates can have on the actual costs of insurance.

19

(Behan Report, ¶ 11 (Ex. A).)  Indeed, Plaintiffs' proposed expert agrees that a decline in interest rates affects future mortality costs because the company "won't be bringing in enough money to cover the expected death benefits in the future."  (Browne Dep., 64:17-24 (Clancy Decl., Ex. 15).)

**Second**, Plaintiffs assert that "Conseco should have expected that policyholders understood that cost-of-insurance rates were tied to mortality rates when it issued policies that so clearly link the cost of insurance to mortality rates."  (Motion at 13.)  The question here is not whether companies consider mortality rates when they evaluate their plans for COI charges (they unquestionably do, and it is undisputed that Conseco Life did so (Behan Report, ¶¶ 23-33) (Ex. A)).  Rather, the question is whether a company is bound to follow its then-existing plan or practice for COI charges (here, a monthly charge of $0) absent deterioration in mortality rates even in the face of a significant interest-rate decline.  As explained, a "yes" answer to that question -- Plaintiffs' answer -- has no support in logic, in actuarial science, or in industry practice.  Moreover, as discussed above, both policyholders and agents were told that actual experience in various assumptions -- including, for example, interest rates -- might lead to additional monies owed by policyholders.  Policyholders received illustrations, statements, correspondence and marketing materials cautioning them of this potential circumstance.  (See supra at pages 7-10.)  By contrast, Plaintiffs point to no communication supporting their proffered reading of the contract; i.e., that an increase in the COI charge will occur only if there is deterioration in mortality experience, nor have they presented the testimony of any class member averring that he or she understood the contract in that manner.  Plaintiffs' proposed expert himself acknowledges that documents in the record demonstrate that policyholders were informed that they (not Conseco Life) would bear the risk of changes to the assumptions used to price the policies.  (Browne Dep., 41:17-43:25 (Clancy Decl., Ex. 15).)

## 2.     If The Policy Is Deemed Ambiguous On This Issue, The Class Must Be Decertified

Conseco Life recognizes that in the Court's order on Plaintiffs' motion for a preliminary injunction, the Court, without the benefit of expert testimony, preliminarily found the Lifetrend policy ambiguous concerning the circumstances in which Conseco Life can increase the COI charge.  (Docket No. 369.)  Conseco Life disagrees that the policy is ambiguous -- and as reflected in a recent filing, Plaintiffs continue to agree that the policy terms are "unambiguous" (Docket No. 390, at 10) --  but if the Court maintains its view concerning ambiguity, the class must be decertified for the reasons set forth in Conseco Life's recent motion for decertification.  (Docket No. 393.)

## B.     "Duration" Is Appropriately Considered In The COI Analysis

Plaintiffs' "duration" argument (Motion at 14-16) rests on a misinterpretation of the Lifetrend policy language.  Plaintiffs mischaracterize the policy language, stating that "[t]he Policies state that cost-of-insurance rates must be uniform for insureds of the same age, sex, and rate classification."  (Motion at 2 (emphasis added).)  In fact, the policy states that a rate increase "will be determined on a uniform basis . . . . "  for people of like gender, age and classification. (Brady Policy, at page 9 (emphasis added).)   Plaintiffs offer no evidence that the rate increases were not determined on a uniform basis for people of like gender, age and classification. Moreover, their expert has no specific experience applying duration to a COI increase and was unaware of industry practice in this regard.  (Browne Dep., 153:2-21 (Clancy Decl., Ex. 15).)

On the other hand,  Conseco Life's actuarial expert has submitted a detailed report which (i) explains in detail the process by which Conseco established the rate schedule for the new charges (that schedule is submitted herewith at Exhibit A) (Behan Report, ¶¶ 20-33); and (ii) opines (inter alia) that, upon his review of that process, "Conseco adhered to appropriate

---

21

actuarial and industry standards in determining the new cost of insurance rates." (Behan Report, ¶ 33 (Ex. A).)

Further, it is both actuarially sound and consistent with industry practice to consider duration (the number of years an insured has owned a policy) in establishing a set of COI rates.  (See Behan Rebuttal Report, ¶ 42 (Ex. C); Mr. Nickele similarly confirmed at deposition that accounting for duration is "standard within the industry."  (Deposition of Christopher J. Nickele, July 12, 2012 ("Nickele Dep."), 107:24-108:25 (Clancy Decl., Ex. 22).)  As Dr. Behan explains, COI rates should be based on the probability of death in a particular year.  When a policy issues, the applicant's health status is reviewed, and the policy is issued only if the person is healthy.  After the policy is issued, some insured individuals may experience a deterioration in health, but the policies cannot then be cancelled.  (Id.)  "This fact leads to a higher average rate of mortality for insured individuals of the same age, the longer the duration of the policy."  (Behan Report, ¶ 42 (Ex. A).)  Consequently, consideration of duration in establishing a COI schedule results in a more precise COI rate for each individual:  if a single COI rate were applied to all individuals of the same age, the rate would be too low for people who had held their policies for longer than average durations, and too high for people who had held their policies for shorter than average durations.  (Id. ¶ 43.)[6]

---

[6]     Further, as explained by Dr. Keeley, consideration of duration does not harm the class on net:  if duration were not considered, some policyholders' rates would be lower, but others would be higher.  (Keeley Report, ¶ 42 (Ex. B).)  As a result, if Plaintiffs pursue this theory, their claim does not stand to benefit the entire certified class; instead it will benefit some class members while damaging others.  In these circumstances a class action is inappropriate.  See, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011) (Rule 23(b)(2) certification is only appropriate when a single injunction or declaratory judgment would provide relief to each member of the class); Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996) (certification was not appropriate where intra-class conflicts about allocation of recovery would advantage some class members over others; "the settlement makes numerous decisions on which the interests of different types of class members are at odds").

### C.   The COI Charges Are Not Being Used to Recoup Expenses

Plaintiffs' argument that Conseco Life is "circumventing" the $5.00 expense charge maximum through its COI charge is based on a misunderstanding of the so-called "Milliman Model," which is an actuarial analysis performed by Milliman, Inc., an actuarial consulting firm that assisted in the process of determining COI fees in 2008 and 2010.  (Hopkins Decl., Ex. 17.)  Plaintiffs contend that the Milliman Model demonstrates that Conseco Life is "losing money" on expenses and interest[7] going forward but that, since the Milliman Model is designed to produce a "break-even" result going forward, Conseco Life must be recovering those losses from another source -- i.e., the COI charge.  (Motion at 17 [expenses], 22 [interest].)

Plaintiffs' argument fails for at least two separate and distinct reasons:

### 1.   There Is No Contractual Requirement That COI Charges Cover Death Benefits Only

The policy at issue permits Conseco Life to impose a monthly "cost of insurance" charge as long as it is beneath the stated maximums (which is undisputed here).  The policy does not define what particular expenses of Conseco Life the "cost of insurance" charge is permitted to cover, much less state that death benefits in particular are the only type of expense the charge is permitted to cover.  At deposition, Plaintiffs' proposed expert specifically declined to opine that COI revenue is properly applied to death benefits only and acknowledged that it could be appropriate for Conseco Life to use the COI charge to cover death benefits only in part.  (Browne Dep., 79:9-18; 80:19-23 (Clancy Decl., Ex. 15).)

Plaintiffs note the fact that the policy also permits a modest "expense charge" (now $5.00 a month), but this is irrelevant.  The policy neither states nor implies that this charge covers all expenses of Conseco other than death benefits -- and only if it did could a policyholder

---

[7]   I.e., interest on dollars contributed to the policies' accumulation accounts.

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT         CASE NO.: 3:10-md-02124-SI

reasonably conclude that, by process of elimination, the COI charge must therefore cover only death benefits.

The <u>Coffman</u> case (addressed above in Section I) addressed a nearly identical argument. The <u>Coffman</u> court rejected plaintiffs' invitation to limit the COI charges to just death benefits, stating "[n]o such language is included in the Policy." <u>Coffman</u>, 2011 WL 4550152 at *3; <u>see also</u> <u>Norem</u>; 2012 WL 1034495 at *3; Kenneth Black, Jr. and Harold D. Skipper, Jr., <u>Life & Health Insurance</u> 122 (13th ed. 1999) (Clancy Decl., Ex. 23) (comparing "mortality charges" for various insurance companies and remarking, without criticism, that one "obviously" "include[s a] provision for expense recovery").

### 2.   In Any Event, Plaintiffs Are Factually Wrong:  The COI Charges At Issue Are Not <u>Designed To Cover Losses Unrelated To Death Benefits</u>

Even if the Court were to construe the contract as urged by Plaintiffs (to forbid the COI charge from covering anything other than death benefits), that would not matter in this case because in fact the COI charge is <u>not</u> being used to do so.

Not only did Conseco Life's witnesses so testify,[8] Dr. Behan analyzed this very issue, and concludes -- after explaining his reasoning -- that the going-forward COI charges are not covering future anticipated expenses other than death benefits.  (Behan Report, ¶ 28 (Ex. A).)

---

[8]     Conseco Life's Rule 30(b)(6) witness testified that the company "set the expense loads similar to . . . actual expenses being experienced." (Deposition of Gregory Turner, Aug. 23, 2012, 40:14-41:15 (Clancy Decl., Ex. 24).)  Conseco Life's president Mr. Nickele also testified that during the regulatory examination, the company "explained to [the regulators] that the charges we would be collecting would be approximately the same as the costs.  And they were satisfied, they were happy with that." (Nickele Dep., 153:10-24 (Clancy Decl., Ex. 22).)  When pressed by Plaintiffs' counsel to agree that "actual expenses are greater than the cap on expense charges," Mr. Nickele rejected that characterization, stating that "using your language . . . if we put the per policy expense and the per unit expense at their maximum, it would exceed the incurred expenses.  So we didn't put them at the maximum.  We put them at a lesser level." (<u>Id.</u> at 153:25-154:17.)

Dr. Behan's explanation exposes a fundamental flaw in Plaintiffs' superficial analysis (Motion at 16-17 [regarding expense losses], 22 [regarding interest losses]).  Plaintiffs rely on the Milliman Model, which, separately for each of multiple sets of assumptions, breaks future estimated revenue and associated expenses into five categories:  (a) interest earned, interest credited, interest gain; (b) mortality charge, mortality cost, mortality gain; (c) expense charge, expenses, expense gain; (d) surrender gain and (e) other increases in reserves.  (Hopkins Decl., Ex. 17.)  For each scenario, the Model projects future gain or loss in each category, and ultimately the COI and expense charges were set to generate an overall break-even result; that is, a break-even result considering the results in all categories together.

Without citation to expert analysis, Plaintiffs assert that because the Milliman Model suggests an overall loss with respect to categories (a) (concerning interest on accumulation accounts) and (c) (concerning the expense charge and associated expenses), that loss "must" (Motion at 17, 22) be subsidized by larger-than-appropriate charges in category (b) (which concerns the COI charge, and death benefits).

In fact, as Dr. Behan explains, if one considers <u>all</u> categories other than category (b) -- not just two of them, as Plaintiffs illogically do -- there is a net overall <u>gain</u> with respect to those other categories.  This means that category (b) (again, concerning the COI charge and death benefits) is not subsidizing losses elsewhere; it is covering future anticipated death benefits alone.  (Behan Rebuttal Report, ¶ 28 (Ex. C) and Exhibit 10).  More specifically, categories (a) and (c) do involve a net loss -- but categories (d) and (e) involve a larger net gain, such that, on net, category (b) (mortality charges) cannot be and is not "inflated" to cover extraneous losses.[9]

---

[9]      At deposition, plaintiffs' proposed expert Dr. Browne admitted that categories (d) and (e) may well involve a net gain (he had not studied that question); that their total net gain may exceed the total net loss in categories (a) and (c); and that, if so, it is "certainly a possibility" that

*(cont'd)*

1

### D.   <u>Post-September 2008 COI Charges Are Consistent With The Policy</u>

2

Plaintiffs contend that the challenged COI charges violate the non-participating

3

clause in the Lifetrend policies because they operate to "recoup at least two full years of

4

Conseco's past losses (<u>i.e.</u>, losses sustained between September 30, 2008, and October 2010)."

5

(Motion at 18-19.)  This argument is without merit.  The policy clause in question states:

6

7

> This is a nonparticipating policy.  This policy will not share in any of the
> company's profits or surplus earnings.  Any premium or factor changes are
> determined and redetermined prospectively.  <u>The company will not recoup</u>
> <u>prior losses, if any, by means of premium or factor changes.</u>

8

9

(Hopkins Decl., Ex. 21 (CLIC 0056022)) (emphasis added.)

10

There is no dispute that Conseco Life announced in <u>October 2008</u> that it was

11

assessing COI charges and expense fees on certain Lifetrend policies despite the company's

12

practice, up until that time, of voluntarily waiving such charges after the eighth policy year.

13

(Clancy Decl., Ex. 17 (CLIC 0002503).)  Those charges were designed to address future costs

14

only; i.e., costs incurred after October 2008.  (K. Turner Dep., 44:3-8, 67:23-70:6, 153:12-154:17,

15

163:8-165:4, 167:16-172:19.)  Plaintiffs filed suit and obtained a certified class based, in part, on

16

the October 2008 correspondence to policyholders.  (Docket No. 111.)

17

18

Conseco Life then agreed to suspend the imposition of the charges at the request

19

of the state insurance regulators, who had commenced a multi-state examination.  (Clancy Decl.,

20

Ex. 19 (CLIC 0007604).)  Pursuant to that process, Conseco Life made negotiated, policyholder-

21

favorable adjustments to the charges, and -- with the regulators' approval and at their direction --

22

instituted the charges on a delayed basis in late 2010.  (<u>Id.</u>)  There was no change to the basic

23

24

_____

25

*(cont'd from previous page)*
the alleged "inflating" effect on the COI charges of the net loss in categories (a) and (c) is fully
offset (i.e., neutralized) by a deflating effect on the COI charges of the net gain in categories (d)

26

and (e).  (Browne Dep., 164:12-20 (Clancy Decl., Ex. 15).)  This amounts to an abandonment of
this entire issue.

27

28

26

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

principle underlying the charges -- that they would address only costs incurred after October

2008. Plaintiffs concede this fact in their brief: "Conseco ultimately chose to calculate the

charges to 'break even' as of September 30, 2008." (Motion at 18.[10]) And over the course of this

litigation and until very recently -- perhaps knowing their argument on this motion would be

undercut -- Plaintiffs took the position that Conseco Life's 2010 charges were increased "in a

manner similar to that announced in 2008." (Docket Nos. 279, 350 and 366 at page 3.)

The delay in implementation due to the regulatory examination is just that -- a

delay in the assessment of the charges. Under any fair reading of the policy provision at issue,

the challenged charges do not constitute an impermissible "recoupment" of "prior losses."

Plaintiffs offer no support for their contention otherwise -- no court decision, no regulation, and

no citation to industry practice (i.e., evidence that when companies suspend a fee adjustment

pending regulatory review, they forego recovery of all costs accumulated during the review).

Moreover, if Plaintiffs' strained and self-serving construction of this provision were accepted, it

would create a substantial disincentive to cooperation between insurance companies and

regulators, because it would mean that any regulatory review of a fee adjustment would entail an

<u>automatic</u> substantial monetary penalty.

**E.    The COI Charges Do Not Constitute A Recoupment
Of "Losses" On Lower-Than-Expected Interest Earnings**

Plaintiffs argue that Conseco Life's actual interest earnings over time were less

than its projected interest earnings, and that the difference is a "loss" that the challenged fees are

"recouping." (Motion at 19-22.) That argument is meritless for (at least) three reasons.

---

[10]    Dr. Browne himself states that "[t]he final charges were set so that all costs incurred after September 30, 2008, would be recovered with future revenues." (Browne Report, ¶ 41.)

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

**First**, failing to attain a hoped-for gain is not a "loss."  The Lifetrend policy states that Conseco Life will not recoup "prior losses, if any, by means of premium or factor changes." (Clancy Decl., Ex. 1, Brady Policy, at page 13.)  It is not in dispute that projected interest earnings on the Lifetrend policies were lower than expected.  Yet, unmet expectations of Conseco Life or predecessor companies do not constitute a "loss."  Nor does the difference between an underlined projection of possible future interest earnings and lower actual realized interest earnings constitute a "loss."[11]  Plaintiffs offer no support for their theory and their proposed expert could point to no statute, regulation, treatise, article, fact pattern, practice or actuarial or accounting standard supporting this interpretation.  (Browne Dep., 70:21-73:10 (Clancy Decl., Ex. 15).)

**Second**, even if not achieving a hoped-for gain could be characterized as a "loss" -- which it cannot -- it would not be a "prior" loss for which recoupment is prohibited, but an anticipated future one for which there is no such prohibition.  Plaintiffs posit that a reduction in interest rates has caused (i) lower policy accumulation account values, with (ii) a correspondingly higher "net amount at risk" ("NAR") and (iii) higher COI charges, which they say are prohibited by the Lifetrend policy.  But the COI charges at issue are forward-looking, and Conseco Life is assessing them only to cover future costs (e.g., Behan Report, ¶¶ 22, 33 (Ex. A); Keeley Report, ¶ 43 (Ex. B)).  Any such death benefit payout would be made only in the future as well.  As Dr. Keeley explains:

> The Milliman analysis shows that Conseco is not recouping past losses because the present value of future profits is approximately zero and because the calculations are based on future values.  Milliman has not considered any losses accrued to Conseco prior to 2008 in setting cost-of-insurance or expense charges going forward.  The Milliman analysis is prospective, and from an economic point

---

[11]      Stated differently, Conseco Life would not have earned a "profit" if actual interest rates had exceeded projections.

of view, the resumption of charging cost-of-insurance and expenses does not constitute recoupment.

(Keeley Report, ¶ 43 (Ex. B); <u>see also</u> Keeley Rebuttal Report, ¶ 40 n. 50 (Ex. D) ("what Plaintiffs characterize as a financial deficit is in fact future losses that would occur were Conseco not allowed to reinstate cost-of-insurance charges"); Browne Dep. 89:9-19 (net amount at risk and death benefit is payable in the future) (Clancy Decl., Ex. 15).)  The COI charges therefore cannot be considered a recoupment of "prior" losses, to the extent that they can even be considered a recoupment of loss at all (and they cannot).

        **Third**, if Plaintiffs' argument is accepted as true, Conseco Life would never be able to make a COI increase, even though the policy plainly permits it and even though Plaintiffs purport to acknowledge that an increase would be permitted if mortality deteriorated.  According to Plaintiffs, interest experience that is lower than expectations constitutes a "loss" that can never be recouped.  But there is no principled difference in the treatment of worse-than-expected interest rates and worse-than-expected mortality experience:  under Plaintiffs' theory, if mortality experience differed unfavorably from expectations, that too logically should be considered a "loss" -- meaning that Conseco Life could not increase COI under <u>any</u> circumstances.  That absurd result contravenes the plain policy terms and underscores the fallacy of Plaintiffs' argument.

      **F.**    **Conseco Life Is Neither Improperly Using**
              **The Cost Of Insurance Charges To Offset Interest**
              **Losses Nor Improperly "Diluting" The Guaranteed Interest Rates**

            **1.**    **As Established By Dr. Behan, The**
                    **COI Charges Are Not Offsetting Interest Losses**

        Here, Plaintiffs first argue that the Milliman Model "shows" the COI charges cover negative interest margins (i.e., years where expected interest returns are anticipated to be

1   lower than Conseco Life's interest obligations to policyholders).  (Motion at 22-23.)  This

2   argument is factually incorrect for the reasons explained in Section II.C, supra.

### 2.   Plaintiffs' "Dilution" Argument Is Baseless

3

4   Plaintiffs next argue that the COI charges are improperly "diluting" the

5   guaranteed rate of interest on their accumulation accounts.[12]  A policyholder's return on his or

6   her accumulation account for any period is the net of the interest credited to that account (at

7   equal to or greater than the minimum guaranteed rate), minus the amount of the relevant charges.

8   (Keeley Report, ¶¶ 17-19 (Ex. B).)  Consequently, any increase in the COI charge will have the

9   effect of reducing the net return.  This fact is a consequence of any increase in COI, not a basis

10  for proscribing an increase in COI -- unless Plaintiffs mean to argue that COI increases are

11  categorically inappropriate, which would be frivolous.

12

13  The Court recognized the circularity of this final argument in its December 20,

14  2011 partial decertification Order:  "It appears to the Court that the alleged 'dilution' is simply

15  another way of stating that inflated expenses are reducing the principal, and thus plaintiffs are

16  not receiving the guaranteed interest rate."  (Docket No. 253 at 12.)

17

18  Ultimately, the question here is whether the challenged charges are contractually

19  permissible.  Clearly they are.  Consequently, any "diluting" effect is also permissible.

20

21

22

23

---

24  [12]   For avoidance of any doubt, Conseco Life notes that the class members have in fact
received the contractually-required interest crediting on their policies.  (Behan Report, ¶ 18 (Ex.
25  A); Keeley Report, ¶ 35 (Ex. B).)  Conseco Life further notes that this crediting has in fact
benefited the class members.  It has fueled the growth of their accumulation accounts, and the
26  larger an accumulation account, the lower the COI charge.  (Behan Rebuttal Report, ¶ 31 (Ex. C);
Keeley Rebuttal Report, ¶ 37 (Ex. D).)

27

28

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          CASE NO.: 3:10-md-02124-SI

1  **III.    THE FILED RATE DOCTRINE PROVIDES AN ADDITIONAL
       GROUND ON WHICH TO GRANT CONSECO LIFE'S MOTION
2      FOR SUMMARY JUDGMENT, AND DENY PLAINTIFFS' MOTION**

3              Summary judgment is appropriate for the independent reason that Plaintiffs' COI

4  and expense charge challenges are barred by the filed rate doctrine.  The filed rate doctrine

5  provides that rates duly adopted by a regulatory agency are not subject to collateral attack in

6  court.  See MacKay v. Superior Court, 188 Cal. App. 4th 1427, 1448 (2010).  The doctrine

7  advances two policies: (1) preventing price discrimination as between ratepayers, and (2)

8  keeping courts out of the rate-making process which is more appropriately reserved for agencies

9  having special or technical expertise.  See Marcus v. AT&T Corp., 138 F.3d 46, 58 (2d Cir.

10  1998); Gallivan v. AT&T Corp., 124 Cal. App. 4th 1377, 1382 (2004).  The doctrine applies to

11  insurance rates approved by state as well as federal agencies.  MacKay, 188 Cal. App. 4th at

12  1448-49; Walker v. Allstate Indem. Co., 77 Cal. App. 4th 750, 757 n.4 (2000); see also Verizon

13  Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081 (9th Cir. 2004) (applying doctrine to state-

14  approved interconnection agreements); Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17 (2d Cir.

15  1994) (affirming dismissal of federal RICO claims and various state claims in connection with

16  local telephone rates regulated by New York state agency).

17              The filed rate doctrine applies equally where, as here, the suit lies in contract

18  rather than a direct challenge to the filed rate.  A suit need not challenge the rate per se in order

19  for the doctrine to apply.[13]  California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 853 (9th

20  Cir. 2004); see, e.g., Gallivan, 124 Cal. App. 4th 1377 (barring contract, unjust enrichment and

---

[13]      In this regard, to the extent that Plaintiffs contend that the COI and expense charges are not "approved rates" within the contours of the filed rate doctrine, the U.S. Supreme Court has concluded that the doctrine need not be construed so narrowly.  See Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 966 (1986) ("the filed rate doctrine is not limited to 'rates' per se") (emphasis in original).

31

fraud claims under filed rate doctrine).  "[T]he doctrine is applied strictly to prevent a plaintiff from bringing a cause of action . . . whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue."  <u>Marcus</u>, 138 F.3d at 59.  Nor does it matter that the applicable rates were approved in a settlement agreement rather than as part of a statutory approval process.  <u>Cf. County of Suffolk v. Long Island Power Auth.</u>, 154 F. Supp. 2d 380, 383, 386 (E.D.N.Y. 2000), <u>aff'd sub nom. Town of Huntington v. Long Island Power Auth.</u>, 11 F. App'x 24 (2d Cir. 2001) (finding filed rate doctrine applicable to power rates set forth as part of a settlement agreement entered into by defendant and governor and approved by state regulatory authority).

Here, it is undisputed that the COI and expense charges now at issue were "duly adopted" by more than 45 insurance regulators as part of their examination of the Lifetrend policies.  That examination process involved rigorous vetting by the regulators of the appropriate charges under the policies; for example, the Milliman Model contained dozens of detailed alternative scenarios for the COI and expense charges.  (Hopkins Decl., Ex. 17.)  Plaintiffs' challenge to the COI charges would inappropriately require the Court to examine the propriety of the regulators' settlement with Conseco Life.  <u>See</u> <u>Gallivan</u>, 124 Cal. App. 4th 1377 (2004) ("[T]he underlying conduct [of the defendant] does not control whether the filed rate doctrine applies.  Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations") (citations omitted). Therefore, the Court need not, and should not, second-guess the technical rate-specific expertise of these state departments of insurance.

MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT       CASE NO.: 3:10-md-02124-SI

1

## CONCLUSION

2        For the foregoing reasons, Conseco Life respectfully requests that the Court grant

3   its motion for summary judgment and deny Plaintiffs' motion for partial summary judgment.

4   Dated:  October 30, 2012                    Respectfully submitted,

5

6                                              /s/ David S. Clancy
                                               RAOUL D. KENNEDY (State Bar No. 40892)
7                                              Skadden, Arps, Slate, Meagher & Flom LLP
                                               525 University Avenue, Suite 1100
8                                              Palo Alto, California 94301
                                               Telephone: (650) 470-4500
9                                              Facsimile: (650) 470-4570
                                               Email: Raoul.Kennedy@skadden.com
10

11                                             JAMES R. CARROLL (*Pro Hac Vice*)
                                               DAVID S. CLANCY (*Pro Hac Vice*)
12                                             CHRISTOPHER A. LISY (*Pro Hac Vice*)
                                               Skadden, Arps, Slate, Meagher & Flom LLP
13                                             One Beacon Street
                                               Boston, Massachusetts 02108
14                                             Telephone: (617) 573-4800
                                               Facsimile: (617) 573-4822
15                                             Email: James.Carroll@skadden.com
                                               Email: David.Clancy@skadden.com
16
                                               Email: Christopher.Lisy@skadden.com
17

18                                             Attorneys for Defendant
                                               Conseco Life Insurance Company
19

20

21

22

23

24

25

26

27

28
                                        33