David J. Millstein (CSB #87878)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Suite 200
San Francisco, CA 94105
Telephone:  (415) 348-0348
Facsimile:  (415) 348-0336
Email:  dmillstein@millstein-law.com

Craig J. Litherland (admitted *Pro Hac Vice*)
Andrea K. Hopkins (admitted *Pro Hac Vice*)
Michelle A. Price (admitted *Pro Hac Vice*)
Emily P. Grim (admitted *Pro Hac Vice*)
Daniel I. Wolf (admitted *Pro Hac Vice*)
GILBERT LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
Email:  litherlandc@gotofirm.com
Email:  hopkinsa@gotofirm.com
Email:  pricem@gotofirm.com
Email:  grime@gotofirm.com
Email:  wolfd@gotofirm.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE CONSECO LIFE INSURANCE CO. LIFETREND INSURANCE MARKETING AND SALES PRACTICES LITIGATION | Case No. 3:10-md-02124-SI <br><br> **PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION FOR DECERTIFICATION** <br><br> **Date:    December 7, 2012** <br> **Time:    9:00 a.m.** <br> **Judge:   United States District Judge Susan Illston** <br> **Courtroom 10, 19th Floor** |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     BACKGROUND ............................................................................................... 2

        A.      The Lifetrend Policies ........................................................................ 2

        B.      The Regulatory Settlement ................................................................. 2

        C.      The Release ....................................................................................... 4

        D.      Class Certification ............................................................................. 5

        E.      Conseco's Previous Efforts To Decertify Or Reduce Class Size ........................... 6

        F.      The Preliminary Injunction ............................................................... 7

III.    ARGUMENT .................................................................................................. 7

        A.      Legal Standard For Review Of Class Certification ................................. 7

        B.      Decertification Of The Entire Class Is Unwarranted ............................. 7

                1.      The Court Has Held That California Law Applies And Conseco Did
                        Not Properly Challenge That Ruling Under The Appropriate Local
                        Rule ................................................................................................ 8

                2.      Choice-Of-Law Analysis Favors Applying California Law ................. 8

                3.      The Law Of The Case Doctrine Precludes Decertification ............. 11

                4.      The Court's Potential Use Of Extrinsic Evidence Under California
                        Law Does Not Warrant Decertification Of The Class ...................... 13

                5.      Decertification Is An Inappropriate Remedy .............................. 16

        C.      Decertification Of The Subclass Of Releasors Is Unwarranted ............. 18

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                          3:10-md-02124-SI
FOR DECERTIFICATION

1. Breach Of Contract Claims Arising In October 2010 Cannot Be Claims Regarding The Allegations In The Regulatory Settlement Agreement ................................................. 18

2. The Release Only Applies To Claims Arising Before The "Date Hereof" ................................................................. 21

3. The Regulatory Settlement Preserves Plaintiffs' Contractual Rights ....... 22

4. The Court Need Not Consider Conseco's Extrinsic Evidence.................. 22

5. Policyholders Who Signed A Release Should Not Be Excluded Even If The Court Finds That The Release Is Ambiguous ...................... 23

6. The Members Of The Subclass Are Different From Surrenderees........... 24

IV.   CONCLUSION.............................................................. 25

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION FOR DECERTIFICATION

3:10-md-02124-SI

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<span style="font-variant: small-caps;">Cases</span>

4

*Aaron v. Yang*,
   No. C-08-05438 RMW, 2009 WL 1689707 (N.D. Cal. June 15, 2009). ......................... 20, 21

5

6

*AIU Insurance Co. v. Superior Court*,
   51 Cal. 3d 807 (1990) ......................................................................................................... 14

7

*Avritt v. Reliastar Life Insurance Co.*,
   615 F.3d 1023 (8th Cir. 2010)............................................................................................. 16

8

9

*Beck-Ellman v. Kaz USA, Inc.*,
   No. 3:10-CV-02134-H (DHB), 2012 WL 4788561 (S.D. Cal. Oct. 5, 2012)........................ 16

10

*Brooks v. Wachovia Bank, N.A.*,
   No. Civ.A. 06-00955, 2007 WL 2702949 (E.D. Pa. Sept. 14, 2007). .................................. 21

11

12

*Ewert v. eBay, Inc.*,
   No. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)................................. 15

13

14

*Fireman's Fund Insurance Co. v. Nationwide Mutual Fire Insurance Co.*,
   No. 11CV114-IEG(DHB), 2012 WL 1985316 (S.D. Cal. June 4, 2012) ...................... 8, 9, 11

15

*Flintkote Co. v. Gen. Accident Assurance Co. of Canada*,
   No. C 04-1827 MHP, 2009 WL 3568644 (N.D. Cal. Oct. 27, 2009) ............................. 12, 23

16

17

*Frontier Oil Corp. v. RLI Insurance Co.*,
   153 Cal. App. 4th 1436 (2007) ............................................................................................ 9

18

*Gitano Group, Inc. v. Kemper Group*,
   26 Cal. App. 4th 49 (1994) ................................................................................................. 11

19

20

*Gonzales v. Arrow Financial Services LLC*,
   489 F. Supp. 2d 1140 (S.D. Cal. 2007)................................................................................. 7

21

22

*Gorrell v. Sneath*,
   No. 1:12-CV-00554-AWI-JLT, 2012 WL 1498967 (E.D. Cal. Apr. 27, 2012) ...................... 9

23

*Gregurek v. United of Omaha Life Insurance Co.*,
   No. CV 05-6067-GHK, 2009 WL 4723137 (C.D. Cal. Nov. 10, 2009) ........................... 12, 16

24

25

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).............................................................................................. 16

26

*Hill v. Novartis Pharmaceutical Corp.*,
   No. 1:06-CV-00939-AWI-DLB, 2012 WL 967577 (E.D. Cal. Mar. 21, 2012) ................. 9, 10

27

28

– iii –

*In re Sigg Switzerland (USA), Inc. Aluminum Bottles Marketing & Sales Practices*
    *Litigation*, No. 10-MD-2137, 2011 WL 64289 (W.D. Ky. Jan. 7, 2011) ................................ 9

*Interinsurance Exchange of the Automobile Club v. Superior Court*,
    209 Cal. App. 3d 177 (1989)......................................................................................... 21

*Ishaia Trading Corp. v. Anter*,
    No. B205916, 2009 WL 1913184 (Cal. Ct. App. July 6, 2009) ............................................ 9

*Keegan v. Am. Honda Motor Co., Inc.*,
    No. CV 10-09508 MMM, 2012 WL 2250040 (C.D. Cal. June 12, 2012) ............................ 16

*Mojave Milling Properties, Inc. v. Corval Development, Inc.*,
    993 F.2d 883 (9th Cir. 1993)........................................................................................ 22

*Mortimore v. F.D.I.C.*,
    197 F.R.D. 432 (W.D. Wash. 2000) ............................................................................ 14

*National Seating & Mobility, Inc. v. Parry*,
    No. C10-02782 JSW, 2012 WL 2911923 (N.D. Cal. July 16, 2012) ...................................... 9

*R & R Sails, Inc. v. Insurance Co. of the State of Pa.*,
    610 F. Supp. 2d 1222 (S.D. Cal. 2009) ................................................................... 9, 10

*Rutherford v. FIA Card Services, N.A.*,
    No. CV 11-04433 DDP, 2012 WL 993885 (C.D. Cal. Mar. 23, 2012) .................................. 9

*Schulken v. Washington Mutual Bank*,
    No. 09-CV-02708-LHK, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012)...................................... 14

*Securies Investor Protection Corp. v. Vigman*,
    74 F.3d 932 (9th Cir. 1996).......................................................................................... 11

*Stonewall Surplus Lines Insurance Co. v. Johnson Controls, Inc.*,
    14 Cal. App. 4th 637 (1993) .......................................................................................... 9

*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997)......................................................................................... 12

*Vedachalam v. Tata Consultancy Services, Ltd.*,
    No. C 06-0963 CW, 2012 WL 1110004 (N.D. Cal. Apr. 2, 2012) ...................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................................... 6, 13

*Washington Mutual Bank, FA v. Superior Court*,
    24 Cal. 4th 906 (2001) ................................................................................................. 9

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION       3:10-md-02124-SI
FOR DECERTIFICATION

1

**STATUTES**

Cal. Civ. Code § 1638 ............................................................................................. 17, 22

Cal. Civil Code § 1646 ............................................................................................... 9, 11

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23(b)(2) ............................................................... *passim*

Hon. H. Walter Croskey et al., *California Practice Guide: Insurance Litigation* Ch. 4-C
    (Rutter Guide 2011) ............................................................................................. 14

Local Rule 7-9 ............................................................................................................... 8

Restatement (Second) of Contracts § 211(2) .............................................................. 15

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION          3:10-md-02124-SI
FOR DECERTIFICATION

## I.    PRELIMINARY STATEMENT

Conseco makes two arguments in its motion to decertify the class ("Conseco's Motion"), both of which it has made before.  First, Conseco argues that the Court's holding that the cost-of-insurance Policy language is ambiguous requires decertification of the entire nationwide class. Conseco claims that this holding requires the Court to examine extrinsic evidence, which Conseco argues necessitates individual inquiry that could implicate multiple states' laws, thereby defeating the commonality requirement.  Conseco's argument is procedurally barred and legally flawed.  This Court already has found that California law applies to Plaintiffs' claims, and Conseco did not timely challenge that holding.  *See* Order Granting in Part and Den. in Part Pls.' Mot. for Prelim. Inj. ("Injunction Order") at 10 n.10, ECF No. 369.  Further, Conseco made this exact argument concerning extrinsic evidence when it opposed class certification, and lost. There, the Court held that "the law relating to the element of breach does not vary greatly from state to state."  Order Granting in Part and Den. in Part Pls.' Mot. for Class Certification ("Certification Order") at 10, ECF No. 111 (citations omitted).  And, because extrinsic evidence does not resolve the ambiguity, the Policies are construed against Conseco.  Inj. Order at 11, ECF No. 369.  Furthermore, decertification is an inappropriate remedy because Plaintiffs make several breach of contract claims, and a declaratory judgment claim, that Conseco does not address. Decertification is not appropriate where Plaintiffs could prevail on other claims on common issues.

Second, Conseco asks the Court to decertify the subclass of policyholders who signed a Release and took an option the Regulatory Settlement made available.  Conseco argues that the Release the subclass members signed bars them from membership in this class.  Conseco previously made this argument in its motion for an order that the Regulatory Settlement Release precludes those who signed it from participating in this class action ("Motion to Preclude Releasors"), ECF No. 113.  This issue is common to all subclass members and is appropriate for class-wide resolution.  And the plain, unambiguous language of the Release makes clear that the Release does not apply to this class action.  Therefore Conseco's request to decertify the subclass also should be denied.

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION          3:10-md-02124-SI
FOR DECERTIFICATION

## II.     BACKGROUND

Plaintiffs brought this class action individually and on behalf of a certified nationwide class of owners of certain life insurance Policies called Lifetrend 3 and 4 Policies, which Conseco administers.  *See* Am. Compl. at 2, *Brady v. Conseco, Inc.*, No. 3:08-cv-05746-SI, ECF No. 51. Plaintiffs seek injunctive and declaratory relief requiring Conseco to reverse the improper charges it unlawfully imposed on policyholders, to refrain from improper charges in the future, and to restore the value of Plaintiffs' Policies.  *Id.*

### A.     The Lifetrend Policies

When they first purchased their Policies, policyholders paid premiums into accumulation accounts.  *See* Brady Policy at BRD000011, attached as Ex. 1 to Decl. of Michelle Price in Supp. of Pls.' Opp'n to Conseco's Mot. for Decertification of the Entire Class, or, in the Alternative, Decertification of the Certified Subclass of Releasors ("Price Decl.").  Conseco may make certain monthly modifications to the policyholders' accumulation accounts, including a cost-of-insurance deduction.  *Id.* at BRD000011-12.  Although the Policies provide that the cost-of-insurance charge can be adjusted, they do not disclose a formula for that adjustment.  The Policies provide a maximum monthly cost-of-insurance rate, which is located in a table entitled "Guaranteed Maximum Monthly Mortality Charge: Table of (Monthly) Cost of Insurance Rates" and is based upon the Commissioner's 1980 Standard Ordinary Mortality Table.  *Id.* at BRD000013. Conseco's actuary acknowledged that mortality rates and cost-of-insurance rates are often the same.  *See* Keith Turner Dep. at 36:18-21, Nov. 18, 2009, attached as Ex. 2 to Price Decl.

Conseco maintained a policy under which it only deducted cost-of-insurance charges from policyholders' accounts for the first eight policy years.  *See, e.g.*, Conseco's Mot. at 4.  Pursuant to this policy, Conseco made no cost-of-insurance deductions from the accounts for many years.

### B.     The Regulatory Settlement

In October 2008, Conseco announced to policyholders that it would reinstate cost-of-insurance charges.  Certification Order at 3.  Upon receiving the October 2008 Letter, policyholders began contacting state insurance regulators to protest the proposed charges.  *See* Regulatory Settlement ¶ 21, attached as Ex. 3 to Price Decl.  The regulators began investigating

– 2 –

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                    3:10-md-02124-SI
FOR DECERTIFICATION

1   Conseco's announced charges, and Conseco ultimately suspended the charges.  *See* December

2   2008 Letter to Brady, attached as Ex. 4 to Price Decl.

3         In May 2010, Conseco and 45 state insurance regulators finalized the Regulatory

4   Settlement.  Regulatory Settlement, attached as Ex. 3 to Price Decl.  The Regulatory Settlement

5   permitted Conseco to reinstate cost-of-insurance charges, which Conseco began imposing in

6   October 2010.  *See, e.g.*, Conseco's Opp'n to Pls.' Mot. for Prelim. Inj. at 6, ECF No. 298.

7         Paragraph 26 of the Regulatory Settlement provides a list of "issues" included in the

8   regulators' "review of the Lifetrend policies":

9           a.  Whether any marketing or advertising materials used by
   Conseco Life or its predecessors for the Lifetrend policies
10   contained any false or misleading information;

11           b.  Whether Conseco Life or its predecessors engaged in sales
   practices that misrepresented the benefits, advantages, or terms of
12   the Lifetrend policies;

13           c.  Whether any communication by Conseco Life or its predecessors
   was misleading to Lifetrend Policyowners;

14           d.  Whether the Company had failed to properly manage or
   administer the Lifetrend policies; and

15           e.  Whether Conseco Life and its predecessors properly determined
   NGE [Non-Guaranteed Elements] changes made to the Lifetrend
16   policies.

17   *See* Regulatory Settlement ¶ 26.

18         Paragraph 27 of the Regulatory Settlement states:  "[T]he Lead Regulators allege that

19   violations have occurred related to the issues under review identified in Paragraph 25."  *Id.* ¶ 27.

20   But paragraph 25 does not contain allegations, it merely provides background information

21   regarding the multistate review.  Conseco refers to paragraph 26 as providing the allegations, but

22   paragraph 26 only contains topics of "review."  The Regulatory Settlement also does not describe

23   the "violations" that allegedly "occurred related to the issues under review identified in Paragraph

24   25."  The Regulatory Settlement preserves policyholders' contractual rights, stating that "[e]xcept

25   as explicitly provided herein, nothing in this Agreement or any of its terms and conditions shall

26   be interpreted to alter in any way the contractual terms of any insurance policy issued or acquired

27   by Conseco Life or by the parties to such contract."  *Id.* ¶ 132.

28

                      – 3 –

C.     **The Release**

The Regulatory Settlement also included a "Corrective Action Plan" or "CAP," which provided for a number of changes to the Policies.  *See id.* ¶¶ 31-66.  Some of these CAP changes affected every Policy automatically.  *Id.* ¶¶ 33-36.  Other CAP changes were "optional," and were available only to policyholders who filled out an election form and signed a Release.  *Id.* ¶ 37.  These optional CAP changes allowed policyholders to make certain modifications to their Policies.  The Release form states:

> In consideration of the Relief ("Relief") provided to (Name), (hereinafter "Claimant"), as described herein, Claimant, on behalf of himself or herself, and on behalf of his or her heirs, personal representatives, successors and assigns, does hereby release, acquit and forever discharge Conseco Life Insurance Company (hereinafter referred to as "Company") and its affiliates, subsidiaries, parents, agents, officers, directors, employees, insurers, successors and assigns (hereinafter referred to as "Released Parties"), from any and all claims of any kind whatsoever, whether known or unknown, which Claimant now has or which may hereafter accrue, arising out of or in any way related to any current and/or future litigation that Claimant could bring *regarding the allegations in the Agreement*, for Policy Number XXXX issued to Claimant by the Company (hereinafter the "Policy"), *for the period covering the solicitation and eventual issue date of the Policy to the date hereof* (hereinafter the "Released Claims").

*Id.* at Ex. F.1 (emphasis added).

The Regulatory Settlement set a schedule for policyholders to elect the optional policy modifications.  *Id.* ¶¶ 40-41.  Policyholders were required to sign the election form and Release and return them to Conseco no later than sixty days from the date that Conseco mailed these materials to policyholders.  *See id.*; *id.* at Ex. F.1.  Conseco began sending the election form and Release to policyholders in June and July 2010 ("First Solicitation").  *See, e.g.*, First Solicitation to Brady at CLIC 0513882, attached as Ex. 5 to Price Decl.  And Conseco gave policyholders sixty days to respond.  *See* First Solicitation to Brady at CLIC 0513882-83, attached as Ex. 5 to Price Decl. (dated July 29, 2010, return deadline September 27, 2010); First Solicitation to Kemmerly at CLIC 0063465-66, attached as Ex. 6 to Price Decl. (dated July 16, 2010, return deadline September 14, 2010).  According to Conseco, approximately 3,000 policyholders signed the Release in response to Conseco's First Solicitation.  *See* Mot. to Preclude Releasors at 1, ECF

– 4 –

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION FOR DECERTIFICATION

3:10-md-02124-SI

No. 113.

The Regulatory Settlement permitted Conseco to send a "Follow-up Notice" to policyholders who did not return the Election Form and Release within thirty days of its mailing. *See* Regulatory Settlement ¶ 44.   Thus, Conseco was required to send the Follow-up Notice thirty days after sending the First Solicitation, which required Conseco to send the Follow-Up Notice beginning in July or August 2010.  The Regulatory Settlement also stated that if a policyholder did not respond to the Follow-up Notice within thirty days, "Conseco Life shall consider that the Lifetrend Policyowner has refused the offer to receive a distribution and/or elect one of the Optional Additional Policy Benefits."  *Id.*  Thus, any policyholder who did not make an election by August or September 2010 should have been deemed to have refused the offer.

### D.    Class Certification

Plaintiffs filed their Joint Motion for Class Certification on March 11, 2010.  *See* ECF No. 15.[1]  In that motion, Plaintiffs demonstrated that class members share common issues of law. Plaintiffs attached a fifty-state survey demonstrating that the elements of breach of contract do not vary among the states.  *Id.* at 22, Ex. 20.  In opposition, Conseco contended that Plaintiffs "seem to demand adjudication of whether the policy is ambiguous, and, if that determination were reached (over Conseco's objection), adjudication to resolve that ambiguity."  ECF No. 25 at 19. Conseco argued that analysis of ambiguity "would require plaintiff-specific adjudication," and that state law varies on whether and the extent to which extrinsic evidence is considered in determining whether a policy is ambiguous.  *Id.* at 19-21.  Conseco attached a survey attempting to show that law varies from state to state, including on the admission of extrinsic evidence.  *Id.* at Appendix A.  Plaintiffs demonstrated in their reply that the alleged variations were exaggerated and immaterial.  *See* ECF No. 37 at 16-18.  Plaintiffs argued that the Policies were not ambiguous, but added that the Court might "conclude, *sua sponte*, that the contracts are ambiguous," in which case "extrinsic evidence plainly would be admissible."  *Id.*  Plaintiffs further demonstrated that all fifty states admit extrinsic evidence to resolve ambiguities.  *Id.*; *see*

---

[1] That motion was still pending when Conseco finalized the Regulatory Settlement.  On July 7, 2010, Plaintiffs filed their Amended Joint Motion for Class Certification to address the impact of the Regulatory Settlement on class certification issues.  *See* ECF No. 76.

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                     3:10-md-02124-SI
FOR DECERTIFICATION

1   *also id.* at Ex. 5.

2        On October 6, 2010, the Court certified a nationwide class under Federal Rule of Civil

3   Procedure 23(b)(2) consisting of:

4           [A]ll persons in the United States who (1) own or owned a
        LifeTrend 3 or 4 Policy, and (2) have received since October 2008,

5           or in the future may receive, pursuant to a settlement with state
        insurance regulators or otherwise, any of the following:  (a) notice

6           that an annual premium is due, notwithstanding such person's prior
        invocation of the Policy's Optional Premium Payment Provision

7           ("OPP Provision"); (b) notice of increased expense charges under
        the Policy; or (c) notice of increased cost-of-insurance deductions

8           under the Policy.

9   *See* ECF No. 111 at 20.  In its Certification Order, the Court dismissed Conseco's argument that

10   variations in state law should defeat certification.  *Id.* at 9-11.  The Court noted that Plaintiffs

11   assert two claims, breach of contract and declaratory judgment, and held:

12           Conseco has not identified any state-to-state variations in the law
        governing declaratory judgment, and Conseco overstates the extent

13           of any variations in state contract law, including as to the definition
        of breach, the existence of causation and damages requirements,

14           and the admissibility of extrinsic evidence.

15   *Id.* at 10.  The Court added that several courts have recognized that the law relating to breach of

16   contract does not vary greatly from state to state.  *Id.*

17        **E.**     **Conseco's Previous Efforts To Decertify Or Reduce Class Size**

18        In addition to opposing Plaintiffs' class certification motion, Conseco has made two

19   previous attempts to decertify or reduce the size of the class.  On November 4, 2010, Conseco

20   moved to exclude policyholders who signed the Release from the class action.  *See* ECF No. 113.

21   In opposing Conseco's motion, Plaintiffs argued that, on its face, the Release does not waive

22   Plaintiffs' claims for breach of contract, or in the alternative, that the Release is ambiguous.  *See*

23   ECF No. 127 at 15-21.  The Court denied Conseco's motion, finding that portions of the Release

24   are "unclear."  Order Denying Motion to Preclude Releasors at 7, ECF No. 138.

25        On July 1, 2011, Conseco moved to decertify the entire class, ECF No. 185, contending

26   that *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), required decertification because

27   Plaintiffs sought damages in addition to injunctive relief.  On December 20, 2011, the Court

28   granted the motion in part by excluding from the class policyholders who had surrendered their

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION        3:10-md-02124-SI
FOR DECERTIFICATION

Policies, but denied Conseco's motion in part by affirming certification as to the remaining members of the class.  *See* Order Granting in Part and Den. in Part Def.'s Mot. for Decertification ("Partial Decertification Order"), ECF No. 253.

### F.    The Preliminary Injunction

On March 5, 2012, Plaintiffs moved for a preliminary injunction prohibiting Conseco from making monthly deductions from certain policyholders' accounts.  *See* ECF No. 281.  On July 17, 2012, the Court granted Plaintiffs' motion with respect to policyholders who are facing such high charges that their accounts will be depleted and they will lose their Policies by the end of next year.  Inj. Order, ECF No. 369.

## III.    ARGUMENT

Conseco's motion to decertify the class should be denied.  The Court already has ruled on the issues Conseco raises, and Conseco should be prevented from re-litigating the same issues. Conseco also misstates the applicable law, and even if the Court must look to the laws of many states, Conseco exaggerates the impact of such an analysis.  Conseco's motion to decertify the subclass also should be denied.  The plain language of the Release makes it clear that the Release does not apply to this class action.

### A.    Legal Standard For Review Of Class Certification

As this Court previously explained, Conseco bears the burden of proving that the Court should decertify the class.  Partial Decertification Order at 7, ECF No. 253.  This is an especially "heavy burden," because the Court will resolve any doubts in favor of certification.  *Gonzales v. Arrow Fin. Services LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007); *see also* Partial Decertification Order at 7, ECF No. 253 (citing *Gonzales*, 489 F. Supp. 2d at 1154).

### B.    Decertification Of The Entire Class Is Unwarranted

Conseco seeks decertification because the Court found that the cost-of-insurance language contains ambiguities, which, Conseco contends, requires analysis of the admissibility of extrinsic evidence under multiple states' laws.  Conseco's motion should be denied for multiple reasons. First, the Court already held that California law applies to the Policies' interpretation, and Conseco did not timely challenge that finding.  Second, Conseco misapplies the choice-of-law

| PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION FOR DECERTIFICATION | 3:10-md-02124-SI |
|---|---|

1   rules, leaving the Court free to apply California law.  Third, even if the Court looks to multiple

2   states' laws, the Court has already held that these laws do not differ materially on the elements of

3   breach of contract or the admission of extrinsic evidence, and Conseco should not be permitted to

4   re-litigate this issue.  Fourth, the Court's potential use of extrinsic evidence under California law

5   does not warrant decertification.  Fifth, decertification is an inappropriate remedy where Plaintiffs

6   have other claims that Conseco did not address.

7                   1.      **The Court Has Held That California Law Applies And Conseco Did
                            Not Properly Challenge That Ruling Under The Appropriate Local
8                           Rule**

9           The Court has held that California law applies to the interpretation of the Policies.  *See*

10  Inj. Order at 10 n.10, ECF No. 369.  Conseco appealed the Preliminary Injunction Order, but did

11  not appeal this holding.  Conseco also did not timely move for reconsideration, nor would

12  Conseco have grounds for such motion.  Pursuant to Local Rule 7-9, had Conseco wanted to

13  challenge the Court's holding, Conseco was required to seek leave of Court.  Conseco would have

14  been required to show (1) that a material difference in fact or law exists from that which was

15  presented to the Court before entry of the order and that Conseco exercised reasonable diligence

16  and did not know such fact or law at the time of the order; (2) the emergence of new material

17  facts or a change in the law; or (3) a manifest failure by the Court to consider material facts or

18  dispositive legal arguments which were presented to the Court before the order.  Local Rule 7-

19  9(b).  In short, Conseco has not challenged the Court's choice-of-law holding in a timely manner

20  by the appropriate means.  Instead, Conseco is ignoring the Local Rules and attempting to

21  circumvent the difficult burden it would face on a motion to reconsider.

22                  2.      **Choice-Of-Law Analysis Favors Applying California Law**

23          Even if Conseco could raise a choice-of-law argument now, the Court still should apply

24  California law.  The Parties agree that, because this is a nationwide class action, the Court applies

25  the choice-of law provisions of the forum state (California) to determine which law to apply.  *See*

26  Conseco's Mot. at 13; *see also Fireman's Fund Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, No.

27  11CV114-IEG(DHB), 2012 WL 1985316, at *5 (S.D. Cal. June 4, 2012) ("A federal court

28  exercising diversity jurisdiction must apply the choice-of-law rules of the forum state.") (citation

– 8 –

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                          3:10-md-02124-SI
FOR DECERTIFICATION

1   omitted).  Conseco wrongly assumes that in California, the applicable law is California Civil

2   Code § 1646.  Conseco's Mot. at 13.  In fact, California courts recognize two tests for

3   determining which state's law to apply.  Under both tests, Conseco must establish that the laws of

4   the different states materially differ, which Conseco has not done.  Thus, the Court may apply

5   California law.

6                        a.        The Governmental Interests Test

7            Although some cases hold that California Civil Code § 1646 applies to questions of

8   contract interpretation, *see, e.g.*, *Frontier Oil Corp. v. RLI Insurance Co.*, 153 Cal. App. 4th 1436,

9   1459-60 (2007), courts both before and after the *Frontier Oil* decision have applied the

10   governmental interest test in breach of contract cases.  *See, e.g.*, *Nat'l Seating & Mobility, Inc. v.*

11   *Parry*, No. C10-02782 JSW, 2012 WL 2911923, at *3 (N.D. Cal. July 16, 2012); *Gorrell v.*

12   *Sneath*, No. 1:12-CV-00554-AWI-JLT, 2012 WL 1498967, at *1-2 (E.D. Cal. Apr. 27, 2012).[2]

13   The *Frontier Oil* court even admits that "[s]ome courts and commentators . . . have inferred or

14   suggested that the judicially developed governmental interest analysis supplants the choice-of-law

15   rule stated in Civil Code section 1646."  153 Cal. App. 4th at 1454.

16            Under the governmental interest test, the court first assesses whether the foreign law

17   materially differs from California law.  *Rutherford*, 2012 WL 993885, at *2.  As the party seeking

18   to apply foreign law, Conseco has the burden to "show it materially differs from the law of

19   California."  *See Fireman's Fund Ins. Co.*, 2012 WL 1985316, at *5 (citing *Washington Mut.*

20   *Bank, FA*, 24 Cal. 4th at 919).  And "a state's law is materially different from California law if

21   application of the other state's law leads to a different result."  *R & R Sails, Inc. v. Ins. Co. of the*

22   *State of Pa.*, 610 F. Supp. 2d 1222, 1227 (S.D. Cal. 2009) (citing *Stonewall Surplus Lines Ins. Co.*

23   *v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 645 (1993)).  If the laws do not materially differ,

24   _____

25   [2] *See also Rutherford v. FIA Card Servs., N.A.*, No. CV 11-04433 DDP MANX, 2012 WL 993885, at *2 (C.D. Cal.
    Mar. 23, 2012) (noting that California courts sometimes apply § 1646 and sometimes use the governmental interests
    analysis); *Ishaia Trading Corp. v. Anter*, No. B205916, 2009 WL 1913184, at *7 (Cal. Ct. App. July 6, 2009) (The

26   governmental interest "analysis applies 'whether the dispute arises out of contract or tort, and a separate conflict of
    laws inquiry must be made with respect to each issue in the case.'") (quoting *Washington Mut. Bank, FA v. Superior*

27   *Court*, 24 Cal. 4th 906, 920 (2001)); *In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. & Sales Practices
    Litig.*, No. 10-MD-2137, 2011 WL 64289, at *7-8 (W.D. Ky. Jan. 7, 2011) (stating that "California courts do a

28   governmental interest analysis for both tort and contract claims" and finding California law applied to breach of
    contract claims under governmental interest analysis).

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                    3:10-md-02124-SI
FOR DECERTIFICATION

1   there is no choice-of-law problem and the court should apply California law.  *Hill v. Novartis*

2   *Pharm. Corp.*, No. 1:06-CV-00939-AWI-DLB, 2012 WL 967577, at *1 (E.D. Cal. Mar. 21,

3   2012).

4         Conseco has not attempted to identify all other laws that may apply, let alone shown that

5   the laws of these states materially differ from California law.  Conseco states that, as of April

6   2010, the class included policyholders from 44 states.  Conseco's Mot. at 14 n.5 (stating that the

7   source of the information is the Regulatory Settlement Exhibit A).  Conseco does not explain why

8   it is using two-and-a-half year old information when it possesses current data.  Conseco recently

9   informed Plaintiffs that 4,543 Lifetrend 3 and 4 policyholders have surrendered their Policies.[3]

10   Conseco's chart shows that eleven states were home to ten or fewer policyholders in April 2010.

11   Another fourteen states were home to fewer than fifty policyholders as of April 2010.  Conseco

12   has not produced recent data to Plaintiffs, and Plaintiffs therefore cannot determine where the

13   4,543 policyholders who have surrendered reside.  Conseco's use of old information leads

14   Plaintiffs to wonder how many states' laws are really even potentially at issue.

15         Putting aside Conseco's failure to identify the potentially applicable laws, Conseco makes

16   no attempt to show that the laws of the different states *materially* conflict with California law.  In

17   fact, Conseco acknowledges that Florida law is "similar in some respects to that of California."

18   Conseco's Mot. at 14.  In a footnote, Conseco cites one case from Texas and one case from

19   Georgia discussing construction of ambiguous contract language, but Conseco does not provide

20   any analysis demonstrating that these laws are different, and certainly does not show that the laws

21   are so different as to impact the outcome.  *See R & R Sails, Inc.*, 610 F. Supp. 2d at 1227.

22         In short, under the governmental interest test, Conseco has failed to meet its burden of

23   proving that the laws of the potentially applicable states are materially different from California

24   law.  Because Conseco has failed to meet this burden, the Court should apply California law.  *See,*

25   *e.g.*, *Hill*, 2012 WL 967577, at *1.

26

27   [3] Although as of October 1, 2008, there were 12,461 Lifetrend 3 and 4 policies in force, as of August 31, 2012, 4,543
policyholders surrendered their policies, one policy reached maturity, and Conseco terminated 283 policies upon

28   payment of death benefits.  *See* Conseco's Supp. Resp. to Pls.' Third Set of Interrogs. No. 19, attached as Ex. 7 to
Price Decl.  Thus, there are now closer to 7,634 class members (including the subclass).  *Id.*

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION      3:10-md-02124-SI
FOR DECERTIFICATION

b.      California Civil Code § 1646

Some courts will apply California Civil Code § 1646, rather than the governmental interest test.  California Civil Code § 1646 provides that a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Conseco contends that, under this test, the Court should interpret the Policies based on the laws of the states where the Policies were accepted by the policyholders.  Conseco's Mot. at 14.

Courts applying section 1646 first look to whether the states' laws differ, just as they would under the governmental interest test.  For example, in *Fireman's Fund Insurance Co.*, the court held that it would only utilize section 1646 if "there was a *material* conflict of law."  2012 WL 1985316, at *6 (emphasis added).  The court found that California and Florida law do not materially differ on insurance policy interpretation and concluded that it should apply California law.  *Id.* at *5.  Similarly, the *Gitano Group, Inc. v. Kemper Group* court found that the trial court "was required to first determine" whether the laws of the four states potentially at issue were in conflict.  26 Cal. App. 4th 49, 56-57 (1994).  The trial court found no conflict, the appellate court agreed, and thus the court did not employ the remainder of the section 1646 analysis.  *Id.*

Here, again, Conseco does not identify the states' laws that might be at issue and does not show why the laws are in conflict with California law.  Conseco cannot raise this new argument in reply.  Thus, Conseco has failed to meet its burden and the Court can use California law.

**3.      The Law Of The Case Doctrine Precludes Decertification**

Even had the Court not held that California law applies, it has held that state law does not materially differ on breach of contract or the use of extrinsic evidence, and the law of the case doctrine prevents re-litigation of this holding.  *See Secs. Investor Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996).  The law of the case doctrine precludes a court from reconsidering issues it has already decided in that case.  *Id.*  The court can reconsider a previously decided issue only if:  "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result."  *Id.*  Unless one of these exceptions

– 11 –

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION        3:10-md-02124-SI
FOR DECERTIFICATION

applies, failure to apply the law of the case doctrine constitutes an abuse of discretion.  *Flintkote Co. v. General Accident Assurance Co. of Canada*, No. C 04-1827 MHP, 2009 WL 3568644, at *4 (N.D. Cal. Oct. 27, 2009) (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).  As discussed below, none of these exceptions applies here.

This is the classic situation for the Court to apply the law of the case doctrine.  Two years ago, the Court granted Plaintiffs' motion for class certification and rejected Conseco's argument that state variations in the use of extrinsic evidence preclude class certification.  Certification Order at 10, ECF No. 111.  In opposing class certification, Conseco made the same argument it makes here:  that Plaintiffs "seem to demand adjudication of whether the policy is ambiguous," and that an analysis of ambiguity "would require plaintiff-specific adjudication."  Conseco's Opp'n to Pls.' Mot. for Class Certification at 22, ECF No. 25.  And as it did here, Conseco also argued that different states' laws vary on whether and to what extent a court will consider extrinsic evidence to help interpret an ambiguous policy provision.  *Id.* at 22-24.  Conseco even relied on the same case that it relies on now, *Gregurek v. United of Omaha Life Insurance Co.*, No. CV 05-6067-GHK (FMOx), 2009 WL 4723137 (C.D. Cal. Nov. 10, 2009).  *Id.* at 27-28.

In response, Plaintiffs provided the Court with two fifty state surveys.  One showed that the elements of breach of contract do not materially vary among the states, Ex. 30 to Pls.' Joint Mot. for Class Certification, ECF No. 15-5, and the other survey demonstrated that, if a court finds that a contract is ambiguous, all states permit courts to consider extrinsic evidence to resolve any ambiguity in a contract.  Ex. 5 to Pls.' Reply in Supp. of Class Certification, ECF No. 38-5.

The Court expressly rejected Conseco's argument, reasoning that:

> [P]laintiffs assert only two claims – breach of contract and declaratory judgment – on behalf of the national class.  Conseco has not identified any state-to-state variations in the law governing declaratory judgment, and **Conseco overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence**.  First, contrary to Conseco's representations, several courts have recognized that the law relating to the element of breach does not vary greatly from state to state. . . Second, plaintiffs have persuasively rebutted Conseco's assertions concerning variations in the causation and

– 12 –

damages elements of the contract claim. . . .  **At best, Conseco has pointed to isolated and relatively minor variations that may be handled at trial "by grouping similar state laws together and applying them as a unit."**

Certification Order at 10, ECF No. 111 (citations omitted; emphasis added).

The law of the case doctrine precludes the Court from reconsidering the same issues, and none of the exceptions applies here.  First, the Court's prior decision was not clearly erroneous, nor does Conseco argue that it was.  Second, there has been no intervening change in the law.[4] Third, Conseco cites no new evidence.  Fourth, as discussed above, the circumstances have not changed.  The Court already considered how the issue of policy ambiguity would affect class certification, and the Court's Preliminary Injunction findings do not change the Court's previous analysis.  Finally, a manifest injustice would not result if the Court applies the law of the case doctrine; rather, the Court would simply preserve the class the Court already certified.

In sum, Conseco already made the same arguments it makes here, and lost.  It would be inefficient for the Court to permit Conseco to take another bite out of the same apple, and case law forbids it.  Thus, Conseco's Motion should be denied.

### 4. The Court's Potential Use Of Extrinsic Evidence Under California Law Does Not Warrant Decertification Of The Class

Conseco argues that, under California law, any contractual ambiguity would obligate the Court to examine extrinsic evidence, which would defeat class certification.  Conseco is wrong for three reasons.  First, the Court's use of extrinsic evidence is permissive, not mandatory.  Second, the relevant standard depends on Conseco's belief about policyholders' perceptions.  Certainly, Conseco did not believe that when it sold the Policies, each policyholder had a different understanding of the same form contract.  Third, if both parties have extrinsic evidence that supports their view of the proper contract interpretation, then the Court will construe the policy against the drafter.  For this reason, this Court and multiple other courts have held "[w]hen

---

[4] Conseco may attempt to argue that the Supreme Court decided *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), after this Court certified the class.  But, Conseco already moved to decertify the class based on *Dukes* last year, Partial Decertification Order at 7, ECF No. 253, and should not be permitted to re-litigate class certification based on this decision.  Moreover, Conseco's Motion here mentions *Dukes* only in passing and only in reference to the standard for commonality.  Conseco makes no argument that *Dukes* provides any basis to rehash Conseco's argument concerning the use of extrinsic evidence.

– 13 –

viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract case are routinely certified as such." *See, e.g.*, *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *13 (N.D. Cal. Jan. 5, 2012) (citations omitted); *see also Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) ("Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure.").

First, the Court's use of extrinsic evidence in California is permissive, not mandatory. Even the California practice guide that Conseco cites does not state that a court *must* look at extrinsic evidence to resolve an ambiguity. *See* Conseco's Mot. at 11 (citing Hon. H. Walter Croskey et al., *California Practice Guide: Insurance Litigation*, Ch. 4-C (Rutter Guide 2011)). Thus, the Court need not examine extrinsic evidence; rather, it could look to the language of the contract as a whole to ascertain the meaning of the Policy language.

Second, this issue is common to the class because the relevant standard depends on *Conseco's belief* about policyholders' perceptions. *See* Inj. Order at 13, ECF No. 369 (quoting *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990)) (explaining that the court resolves policy ambiguity "by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation."). Any extrinsic evidence the Court examines is only relevant to show Conseco's belief of policyholders' understanding. And Conseco's understanding of what the policyholders believed will be common to all class members. Conseco entered into a standard form contract with each policyholder. It cannot now contend that it believed that each policyholder construed the contract in a different way. Conseco could not administer a policy with thousands of policyholders if Conseco believed each policyholder had a different understanding of the policy. The best way to determine what Conseco believed the policyholders understood is to look to the contract as a whole, as the Court did in its Injunction Order. *Id.* at 13-14.

Just five months ago, this Court explained in a similar case that:

> [W]hen there is a form contract of adhesion at issue, as there is here, "the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                    3:10-md-02124-SI
FOR DECERTIFICATION

> or understanding of the standard terms of the writing.'" . . .
> "'[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.'" . . . Accordingly, in construing the form contract between Defendants and class members, the Court need not delve into the actual knowledge of individual class members.

*Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2012 WL 1110004, at *9 (N.D. Cal. Apr. 2, 2012) (quoting *Ewert v. eBay, Inc*., No. C-07-02198 RMW, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) and Restatement (Second) of Contracts § 211(2)). Thus, the Court need not, as Conseco contends, look to what every individual policyholder thought the contract provisions meant.

Third, if both parties have extrinsic evidence to support their interpretations of the contract, then extrinsic evidence does not resolve the ambiguity, and the contract should be construed against the drafter, as this Court did in its Injunction Order. This Court addressed this exact issue in *Vedachalam* when it certified a nationwide class and held that the Plaintiffs had satisfied the commonality requirement despite the possibility that the standard form contract at issue contained ambiguities. *See id.* The court explained that, where there is a form contract, "[e]ven if Defendants could establish some ambiguity with extrinsic evidence, the ambiguous contract terms would [be] interpreted against them, as the drafters of the form contract." *Id.* at *9.

Here, Conseco offers extrinsic evidence to support its argument that cost-of-insurance rates are connected to interest rates and not solely tied to mortality rates.[5] Plaintiffs dispute that Conseco's evidence demonstrates that cost-of-insurance rates are not tied to mortality rates. But Plaintiffs can provide extrinsic evidence that cost-of-insurance charges are tied to mortality. For example, Larry Winsten, the agent for the two of the named Plaintiffs, testified:

> Q: In one of your earlier answers you mentioned that as -- you mentioned that as part of the illustration if the policyholder paid the premium for five years and a vanish was requested, unless there was a dramatic change the policy would stay in force. Do you remember that answer?
>
> A. Yes.
>
> Q. Okay. What kind of dramatic change would be required where the policy wouldn't stay in force?

---

[5] Conseco fails to refute Plaintiffs' argument that cost-of-insurance charges should be related to mortality with evidence that interest rates have some impact.

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION FOR DECERTIFICATION                                3:10-md-02124-SI

A. The one I remember that if there was a dramatic change in mortality costs.

Q. How do you remember that?

A. Because that's what we – that's what we were told. And we were told it was very unlikely that there -- mortality was improving all the time, it wasn't decreasing.

Q. Who told you that?

A. Mass General . . . .

*See* Winsten Dep. 82:21-83:14, June 7, 2010, attached as Ex. 8 to Price Decl.  In its Injunction Order, the Court identified additional extrinsic evidence that shows that cost-of-insurance is tied to mortality.  *See* ECF No. 369 at 13-14 (citing the Turner deposition stating that "[i]n some circles the idea of mortality rates and cost of insurance rates are one and the same," and the "Comparison of Sources of Profits with NGE Charges" spreadsheet, which refers to the cost-of-insurance charge as the "mortality charge.").  Similarly, the Lifetrend Consumer Guide refers to the "Mortality or Cost of Insurance Charges."  *See* CLIC0003522, attached as Ex. 9 to Price Decl. And the Milliman model, which Conseco used to set the current charges, refers to the cost-of-insurance charge as the "mortality charge."  CLIC0751632, attached as Ex. 17 to the Hopkins Decl. in Supp. of Pls.' Mot. for Partial Summ. J., ECF No. 387-18.

At best for Conseco, its extrinsic evidence conflicts with the Plaintiffs' extrinsic evidence. Thus, the extrinsic evidence does not resolve the ambiguity and, under California law, if the ambiguity remains unresolved, the Court should construe the policy against Conseco, as the Court previously did.  Inj. Order at 14.[6]

### 5.    Decertification Is An Inappropriate Remedy

Conseco asks for the drastic remedy of class decertification based on one holding in the Court's Injunction Order.  Decertification is inappropriate because Plaintiffs have asserted several claims that are not addressed in Conseco's motion to decertify.

---

[6] Conseco discusses two cases that it contends address the Rule 23(a) commonality requirement.  Conseco's Mot. at 12-13 (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) and *Gregurek*, 2009 WL 4723137).  But, contrary to Conseco's assertion, neither even addresses Rule 23(a) commonality.  Instead, both courts discuss Rule 23(b)(3)'s requirement that common questions *predominate*.  And "[t]he predominance analysis under Rules 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2)."  *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H (DHB), 2012 WL 4788561, at *7 (S.D. Cal. Oct. 5, 2012); *see also Keegan v. Am. Honda Motor Co., Inc.*, No. CV 10-09508 MMM (AJWx), 2012 WL 2250040, at *12 (C.D. Cal. June 12, 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

– 16 –

1

a.  Decertification Is Inappropriate Because Plaintiffs Make Several
Claims Based On Unambiguous Policy Language

2

3       Conseco asks the Court to decertify the class because of the Court's recent finding that

4  some policy provisions are ambiguous.  But in their recent motion for partial summary judgment,

5  Plaintiffs argue that Conseco is violating the *plain language* of the Policies in several ways that

6  are independent from the argument that cost-of-insurance rates must be tied to mortality.  ECF

7  No. 387.[7]  Conseco's motion to decertify the entire class based on one finding applicable to only

8  one of many arguments is inappropriate.  Each of Plaintiffs' additional arguments relies solely on

9  the plain, unambiguous language of the policy, and, as this Court previously explained,

10 "interpretation of the standard written policy language will present a question common to the

11 class."  Certification Order at 11, ECF No. 111.  "If the contractual language is clear and explicit,

12 it governs."  Inj. Order at 11, ECF No. 369 (citing Cal. Civ. Code § 1638).  The Court's analysis

13 of Plaintiffs' claims, therefore, will end if the Court agrees with Plaintiffs' arguments that

14 Conseco breached the plain language of the contracts.  Conseco's entire decertification motion,

15 premised on a single finding of ambiguity, should be denied.

16

b.  Decertification Is Inappropriate As To Plaintiffs' Declaratory
Judgment Claims

17       Decertification is also inappropriate because Plaintiffs assert a declaratory judgment claim

18 in addition to their breach of contract claims.  Even if the Court reverses its position and agrees

19 with Conseco that ambiguity in the cost-of-insurance provision renders Plaintiffs' breach of

20 contract claim inappropriate for class adjudication, this Court also certified Plaintiffs' declaratory

21 judgment claim.  When opposing Plaintiffs' motion for class certification, Conseco did not make

22 any argument concerning Plaintiffs' declaratory judgment claim.  *See* ECF No. 25.  Indeed, in

23 granting class certification, this Court noted that "Conseco has not identified any state-to-state

24 variations in the law governing declaratory judgment."  *See* Certification Order at 10, ECF No.

25 111.  Here, for a second time, Conseco argues that the entire class should be decertified while

26

27  ───────────────
[7] Specifically, Plaintiffs argue that Conseco explicitly and improperly (1) considers duration when setting the cost-of-insurance rates; (2) uses cost-of-insurance charges to recoup its expenses; (3) recoups losses it sustained between September 2008 and October 2010; (4) recoups its losses on lower-than-expected interest earnings in the years prior to 2007 and (5) uses the cost-of-insurance charges to offset interest losses and dilutes the guaranteed interest rates.

28

– 17 –

only addressing one of Plaintiffs' claims.  At a minimum, the Court should not decertify the class because the declaratory judgment claim remains.

          c.      <u>Decertification Is Inappropriate As To The California Policyholders</u>

Decertification is especially inappropriate here as to the California policyholders.  If the Court reverses its position and agrees with Conseco that multiple states' laws will apply and that these laws are materially different requiring decertification of the nationwide class, the Court still should not decertify the California policyholders.  These policyholders are already class members, and California law applies uniformly to all of them.  At the very least, decertification is inappropriate as to the California class members.

**C.     Decertification Of The Subclass Of Releasors Is Unwarranted**

The Release does not waive the claims of those Plaintiffs who signed it because the Release only bars claims that meet two conditions.  The claims must: (1) concern "the allegations in the [Regulatory Settlement] Agreement" and (2) pertain to "the period covering the solicitation and eventual issue date of the Policy to the date hereof."  Regulatory Settlement at Ex. F.1, attached as Ex. 3 to Price Decl.  Because the subclass's claims (1) are unrelated to any allegations in the Regulatory Settlement and (2) arose out of breaches of class member Policies that occurred after policyholders signed the Release, the claims meet neither of these conditions.  Furthermore, the Regulatory Settlement explicitly preserves policyholders' contractual rights.  *See id.* ¶ 132.

       **1.     Breach Of Contract Claims Arising In October 2010 Cannot Be Claims Regarding The Allegations In The Regulatory Settlement Agreement**

The Release does not apply to the claims of the subclass because they are not claims "regarding the allegations in the [Regulatory Settlement] Agreement."  As explained above, the Regulatory Settlement does not list allegations.  But whatever the allegations in the Regulatory Settlement might be, they do not encompass Plaintiffs' claims because (a) the allegations in the Regulatory Settlement could only relate to Conseco's conduct before the finalization of the Regulatory Settlement, while Plaintiffs' claims involve conduct beginning four months later and (b) the allegations in the Regulatory Settlement do not include Plaintiffs' various legal causes of action for breach of contract.

– 18 –

1

2

        a.      <u>The Allegations In The Regulatory Settlement Only Relate To Conseco's Conduct Before The Regulatory Settlement</u>

3

       Both the language of the Regulatory Settlement and common sense dictate that any

4

allegations in the Regulatory Settlement are limited to Conseco's behavior *before* the Regulatory

5

Settlement was finalized in May 2010. *See* Regulatory Settlement Part V., attached as Ex. 3 to

Price Decl.  But, the current cost-of-insurance charges, which Plaintiffs allege breach the Policies,

6

were not implemented until October 2010.  Pls.' Mot. For Partial Summ. J., ECF No. 387.

7

Consequently, the allegations in the Regulatory Settlement cannot encompass breaches starting in

8

October 2010 or be based on cost-of-insurance charges Conseco set in conjunction with the

9

Regulatory Settlement.

10

       First, the Regulatory settlement does not contain allegations.  Paragraph 27 refers to

11

violations that occurred related to the issues identified in paragraph 25.  But paragraph 25 does

12

not list issues under review.  Conseco points to paragraph 26, which does list issues, but it also

13

does not specify allegations.  But even if the Court were to accept Conseco's contention that

14

Paragraphs 25 through 27 of the Regulatory Settlement contain allegations of breach of contract,

15

*see* Conseco's Mot. at 19, these Paragraphs only refer to Conseco's behavior at the end of 2008,

16

*see* Regulatory Settlement ¶¶ 25-27, attached as Ex. 3 to Price Decl.  Paragraph 25 provides that

17

state regulators convened in January 2009 "to review the NGE adjustments announced in the

18

October and November of 2008 letters as well as the sales, administration and management of the

19

Lifetrend policies."  This language concerns Conseco's behavior prior to January 2009, which

20

prompted investigation by regulators in the first place.  Paragraph 26 confirms this, stating that

21

the regulators' "review of the Lifetrend policies" included whether Conseco "had failed to

22

properly manage or administer the Lifetrend policies" or "properly determined NGE changes

23

made to the Lifetrend policies."  Regulators meeting in 2009 could only "review" Conseco's

24

conduct that took place before that point.  And paragraph 27 only explains that the "Lead

25

Regulators allege that violations have occurred related to the issues under review identified in

26

paragraph 25."

27

28

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION
FOR DECERTIFICATION

3:10-md-02124-SI

1    Second, regardless of the contents of Paragraphs 25 through 27, no allegation in the

2    Regulatory Settlement could involve Conseco's breaches of the Policies that did not occur until

3    after that settlement was finalized in May 2010.  Nor could allegations in the Regulatory

4    Settlement possibly concern cost-of-insurance charges the regulators themselves approved.

5            b.    <u>The Allegations In The Regulatory Settlement Do Not Include</u>
             <u>Plaintiffs' Legal Causes Of Action For Breach Of Contract</u>

6    Plaintiffs' claims are unrelated to any "allegations" in the Regulatory Settlement because

7    the Regulatory Settlement does not include any breach-of-contract claims.  Plaintiffs' allegations

8    are simply not the same as the regulators' allegations.  For example, the regulators were not

9    concerned that Conseco improperly considers "duration" in setting the cost-of-insurance rates or

10   that Conseco is improperly recouping losses it sustained between September 2008 and October

11   2010 while the regulatory investigation was ongoing.  *See* Pls.' Mot. for Partial Summ. J. at 12-

12   23, ECF No. 387.

13   Conseco nonetheless argues that "there is no question that the factual premise of

14   [Plaintiffs' and the regulators'] claims -- the increases in the COI charges and expense charges --

15   is the same."  Conseco's Mot. at 20 n.13.  Conseco is wrong for two reasons.  First, the factual

16   premise of the regulators' allegations is *not* the same as the factual premise of Plaintiffs' claims

17   because the 2010 rates that Plaintiffs allege breach the contract differ from the 2008 rates

18   investigated by the regulators.  *See* Pls.' Mot. for Partial Summ. J. at 6-7, ECF No. 387.  Thus, the

19   regulators' allegations could not possibly include Plaintiffs' breach of contract claims.

20   Second, and more importantly, whether Plaintiffs' claims and the regulators' allegations

21   involve the same factual premise is irrelevant.  Although many releases use form language to

22   explicitly waive specific legal causes of action or any claims arising out of the same set of facts,

23   this Release simply does not do so.  Conseco cites cases that actually serve to illustrate this point.

24   *See* Conseco's Mot. at 20 n.12.  In *Aaron v. Yang*, for example, this Court granted the defendant's

25   motion to dismiss because the plaintiff's legal claims for breach of fiduciary duty and violation of

26   federal securities law were specifically barred by a release which waived "any and all claims . . .

27   which arise out of, relate to, or are based upon alleged breaches of fiduciary duty . . . [or] federal

28

– 20 –

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION          3:10-md-02124-SI
FOR DECERTIFICATION

securities laws . . . ."  No. C-08-05438 RMW, 2009 WL 1689707, at *3, 6-8 (N.D. Cal. June 15, 2009).  And in *Brooks v. Wachovia Bank, N.A.*, the release at issue waived claims "*arising from or in connection with or in any way related, directly or indirectly, to any of the acts, facts, matters, transactions, events, occurrences*, disclosures, statements, representations, omissions, or failures to act set forth, alleged, referred to or otherwise embraced in this case."  No. Civ.A. 06-00955, 2007 WL 2702949, at *6 (E.D. Pa. Sept. 14, 2007) (emphasis added).[8]

By contrast, the Release here uses much narrower language.  Unlike the releases in the cases cited by Conseco, the Release does not purport to waive either specific breach-of-contract claims or all claims arising out of one set of facts, but only claims "regarding the allegations in the [Regulatory Settlement] Agreement."  Regulatory Settlement at Ex. F.1, attached as Ex. 3 to Price Decl.  As shown above, these allegations cannot include Plaintiffs' claims in this class action.

### 2.   The Release Only Applies To Claims Arising Before The "Date Hereof"

Although Conseco discusses the subclass as a whole, the subclass actually includes policyholders who elected to participate in the settlement pool only and policyholders who elected a reduced paid-up policy.[9]  Those who chose the settlement pool received a cash payment, and their Policies remain in force.  They still face cost-of-insurance charges.  *See* Regulatory Settlement ¶¶ 38-39.  Policyholders who chose a reduced paid-up policy accepted a lower face amount without having to make any future premium payments.  *See id.* ¶ 37.

Like the rest of the class, policyholders who only elected to participate in the settlement pool challenge the cost-of-insurance charges Conseco began imposing in October 2010.  The Release does not waive these claims because the Release only purports to waive claims "for the period covering the solicitation and eventual issue date of the Policy to the date hereof."  *See* Regulatory Settlement at Ex. F.1, attached as Ex. 3 to Price Decl.  The "date hereof" refers to the date that each Release was signed.  *See Mojave Milling Props., Inc. v. Corval Dev., Inc.*, 993 F.2d

---

[8] Conseco also cites *Interinsurance Exchange of the Automobile Club v. Superior Court*, 209 Cal. App. 3d 177, 181-82 (1989).  *See* Conseco's Mot. at 20 n.13.  Because that case involves the doctrine of res judicata, and not a release, it is inapplicable here.

[9] Some policyholders elected both participation in the settlement pool and a reduced paid-up policy.

– 21 –

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                    3:10-md-02124-SI
FOR DECERTIFICATION

883, at *3 (9th Cir. 1993). The schedule in the Regulatory Settlement only permitted the policyholders to make an election by August or September 2010, before Conseco began imposing charges in October.[10] The "date hereof" provision of the Release is not ambiguous. *See id.* Thus, the Release does not bar the claims of the subclass members who elected the settlement pool because the charges these policyholders face began after the "date hereof."

### 3.     The Regulatory Settlement Preserves Plaintiffs' Contractual Rights

The Release language originated as part of the Regulatory Settlement, and specifically incorporates that agreement. *See* Regulatory Settlement at Ex. F.1, attached as Ex. 3 to Price Decl. The Regulatory Settlement explicitly preserves policyholders' contractual rights, providing that "[e]xcept as explicitly provided herein, nothing in this Agreement or any of its terms and conditions shall be interpreted to alter in any way the contractual terms of any insurance policy issued or acquired by Conseco Life or by the parties to such contract." *Id.* ¶ 132. Thus, read together, the plain language of the Release and Regulatory Settlement also makes clear that the Release does not bar Plaintiffs' breach-of-contract claims.

### 4.     The Court Need Not Consider Conseco's Extrinsic Evidence

Because Plaintiffs' claims are not "regarding the allegations in the [Regulatory Settlement] Agreement . . . for the period covering the solicitation and eventual issue date of the Policy to the date hereof," and because the Regulatory Settlement specifically preserves Plaintiffs' contractual rights, the Release, on its face, does not apply to Plaintiffs' claims, and the Court need not consider extrinsic evidence. *See* Inj. Order at 11 ("If contractual language is clear and explicit, it governs.") (citing Cal. Civ. Code § 1638). Consequently, Conseco's attempt to rely upon documentation sent to policyholders purporting to provide "additional explanation about the scope of the Release" fails. *See* Conseco's Mot. at 20-21.

---

[10] Conseco sent the First Solicitation in June and July 2010. The First Solicitation required that Release forms be returned to Conseco in sixty days. *See, e.g.*, First Solicitation to Brady at CLIC 0513882-83, attached as Ex. 5 to Price Decl. (dated July 29, 2010, return deadline September 27, 2010); First Solicitation to Kemmerly at CLIC 0063465-66, attached as Ex. 6 to Price Decl. (dated July 16, 2010, return deadline September 14, 2010). As such, these Releases must have been signed by September 2010 at the latest.

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                    3:10-md-02124-SI
FOR DECERTIFICATION

**5.      Policyholders Who Signed A Release Should Not Be Excluded Even If The Court Finds That The Release Is Ambiguous**

Even if the Court finds that the Release is ambiguous, decertification of the subclass is not warranted.  Conseco contends that if the Release is ambiguous, the Court must look to the laws of every state where a Release was signed.  Conseco is wrong for several reasons.

First, Conseco's argument that foreign law should apply is untimely.  *See Flintkote*, 2009 WL 3568644, at *5.  In *Flintkote*, this Court held that "[u]nder California's choice of law rules, a California court 'will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.'"  *Id.* (citations omitted).  Invocation of foreign law is timely if it is raised "at the first opportunity when the issue became material."  *Id.* (citations omitted).  Where "the issue has already been argued by the parties relying upon California law and decided by the court using California law . . . [i]t is hard to imagine a clearer case in which the invocation of foreign law is untimely."  *Id.*

Here, when Conseco first asked the Court two years ago to exclude policyholders who signed a Release from participation in the class action, Conseco did not raise a choice-of-law argument.  *See* Motion to Preclude Releasors, ECF No. 113.  In fact, Conseco relied on only two cases in its motion:  one Ninth Circuit case and one California Court of Appeals case.  *Id.* at 9.  Thus, Conseco relied on California law in its first attempt to exclude policyholders who signed the Release from participating in the class.  Now, two years later, Conseco raises the untimely argument that foreign law might apply.  Under *Flintkote*, Conseco should not be permitted to make this argument, and the Court should apply California law.

Second, even if Conseco is not bound by its previous use of California law, Conseco also fails to engage in the proper choice-of-law analysis.  Conseco has not even argued, let alone established, that the laws of the different states regarding the construction of a release are materially different.  Therefore, the Court need not resort to the next step in the choice-of-law analysis and the Court is free to apply California law.

Finally, even if the Court determines that the Release is ambiguous, the extrinsic evidence does not resolve the ambiguity.  Conseco points to extrinsic evidence that it contends shows that

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION       3:10-md-02124-SI
FOR DECERTIFICATION

the Release bars participation in the class.  Other extrinsic evidence demonstrates that the Release was not clear.  For example, as Conseco notes in its motion, the Court granted Plaintiffs' request to send a notice to the policyholders before the class was certified to inform them of the proposed class action.  *See* Order Granting Pls.' Mot. for Approval of Pre-Class Certification Form of Notice and Turnover of Mailing Information for Putative Class Members, ECF No. 93.  The notice also provides information about the Regulatory Settlement and stated that signing the Release "could *potentially* prevent you from participating as a class member in the Proposed Conseco Class action." *Id.* at Ex. A (emphasis added).  This Court-approved notice makes clear that the Release only *potentially* bars class participation.  A log of policyholder calls to Conseco regarding the Release also demonstrates that Conseco told some policyholders that signing the Release might not bar class participation.  For example, an agent who works with several policyholders, Victoria Barrett, called Conseco to ask about the impact of signing the Release on class membership.  Conseco advised her:  "RSA HAS NOTHING TO DO W/CLASS ACTION AND RESPONSE DOES NOT AUTOMNATICALLY (*sic*) WAIVE RIGHTS TO PURSUE LEGAL ACTION."  *See* CLIC0361870, attached as Ex. 10 to Price Decl.  Further, at least three policyholders elected a Regulatory Settlement option and then asked for it to be reversed, apparently because when they signed the Release they did not understand that they might waive the right to participate in the class.  *Id.* (citing calls from an unnamed policyholder with policy number 10L1078220, James McDonald, and Elizabeth Friedrich).  One of these policyholders said he did not want to "jeopardize" his opportunity to be a class member.  *See id.*  Thus, at least some policyholders did not believe that the Release barred class membership, the extrinsic evidence does not resolve the ambiguity, and the Release should be construed against Conseco.

### 6.    The Members Of The Subclass Are Different From Surrenderees

Conseco contends that all subclass members are similarly situated to those who surrendered their Policies and concludes that the subclass should be decertified.  But members of the subclass who only took the settlement pool option but did not elect a reduced paid-up policy are not similar to surrenderees.  Surrenderees gave up their Policies in exchange for a cash payment and now have no contractual relationship with Conseco.  In contrast, those who took the

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                                    3:10-md-02124-SI
FOR DECERTIFICATION

settlement pool option still own their Policies and still face the same cost-of-insurance deductions

that all class members face.  The subclass members who elected a reduced paid-up policy also are

not like surrenderees.  Although Conseco contends that these policyholders essentially

surrendered their Lifetrend Policies and received a reduced paid-up policy instead of cash,

nothing of the sort occurred.  Conseco did not issue new Policies to these policyholders with

different terms.  Thus, these policyholders are still Lifetrend policyholders and are properly

members of the class.  Further, the Court need not engage in individual inquiry to evaluate the

claims of the subclass.  The policyholders who elected reduced paid-up Policies accepted a

substantially reduced death benefit amount with no further policy deductions.  The only possible

reason that a policyholder would accept a policy with a substantially reduced death benefit is to

avoid the impending cost-of-insurance charges.  These policyholders would still benefit from

declaratory relief.

## IV.    CONCLUSION

For the foregoing reasons, Conseco's motion to decertify the class should be DENIED.

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                    3:10-md-02124-SI
FOR DECERTIFICATION

1    Dated:  November 2, 2012                Respectfully submitted,

2

3                                                   _____/s/_____
                                                    Craig J. Litherland (*Pro Hac Vice*)
4                                                   litherlandc@gotofirm.com
                                                    Andrea K. Hopkins (*Pro Hac Vice*)
5                                                   hopkinsa@gotofirm.com
                                                    Michelle A. Price (*Pro Hac Vice*)
6                                                   pricem@gotofirm.com
                                                    Emily P. Grim (*Pro Hac Vice*)
7                                                   grime@gotofirm.com
                                                    Daniel I. Wolf (*Pro Hac Vice*)
8                                                   wolfd@gotofirm.com
                                                    GILBERT LLP
9                                                   1100 New York Avenue, NW, Suite 700
                                                    Washington, DC 20005
10                                                  Telephone:  (202) 772-2200
                                                    Facsimile:  (202) 772-3333
11

12                                                  David J. Millstein (CSB #87878)
                                                    dmillstein@millstein-law.com
13                                                  MILLSTEIN & ASSOCIATES
                                                    100 The Embarcadero, Suite 200
14                                                  San Francisco, CA 94105
                                                    Telephone:  (415) 348-0348
15                                                  Facsimile:  (415) 348-0336

16

17                                                  Joseph J. Tabacco, Jr. (CSB #75484)
                                                    Christopher T. Heffelfinger (CSB #118058)
18                                                  Bing W. Ryan (CSB #228641)
                                                    BERMAN DEVALERIO
19                                                  Once California Street, Suite 900
                                                    San Francisco, CA 94111
20                                                  Telephone:  (415) 433-3200
                                                    Facsimile:  (415) 433-6382
21

22                                                  *Attorneys for Plaintiffs*

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION                     3:10-md-02124-SI
FOR DECERTIFICATION

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2012, a true and correct copy of the foregoing was delivered on the following counsel via electronic filing:

Raoul D. Kennedy
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
Email:  Raoul.Kennedy@skadden.com

James R. Carroll
David S. Clancy
Christopher A. Lisy
Abra C. Bron
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Email:  James.Carroll@skadden.com
Email:  David.Clancy@skadden.com
Email:  Christopher.Lisy@skadden.com
Email:  Abra.Bron@skadden.com


_____/s/_____
Michelle A. Price

---

PLAINTIFFS' OPPOSITION TO CONSECO'S MOTION
FOR DECERTIFICATION

3:10-md-02124-SI