United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. C 10-02124 SI

IN RE CONSECO LIFE INSURANCE CO.
LIFE TREND INSURANCE MARKETING
AND SALES PRACTICE LITIGATION

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT, DENYING CONSECO'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING CONSECO'S MOTION
TO DECERTIFY THE ENTIRE CLASS
OR SUBCLASS**

_____/

Now before the Court are plaintiffs' motion for partial summary judgment, defendant Conseco's motion for summary judgment, and Conseco's motion for decertification of the entire class, or in the alternative, decertification of the subclass of releasors. The parties have submitted briefs and on December 14, 2012, the Court held a hearing on the motions. Having carefully considered the parties' arguments, the Court GRANTS IN PART and DENIES IN PART plaintiffs' motion for partial summary judgment and DENIES Conseco's motion for summary judgement and DENIES Conseco's motion to decertify the class or subclass.

## BACKGROUND

### I.       Factual Background

Plaintiffs in this multidistrict class action are holders of "LifeTrend 3" and "LifeTrend 4" life insurance policies now administered by defendant Conseco. Plaintiffs allege that Conseco breached the insurance policy when it restructured two account fees in 2010 – so-called "cost of insurance charges" and "expense charges" – and seek injunctive and declaratory relief requiring Conseco to reverse these fees, to refrain from charging them in the future, and to restore the value of plaintiffs' policies.

United States District Court
For the Northern District of California

**A.      The Policies Pre-2010**

The policies were issued in the 1980s and 1990s by Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company, and are now administered by Conseco.   The policies provided for a stated annual premium to be paid by the policyholder.   *See* Clancy Decl. in Supp. of Conseco's Mot. for Decert. ("Clancy Decl. I"), Ex. 1, (the "Brady Policy") at 3; Hopkins Decl. in Supp. of Pl. Mot. for Part. Summ. Judg., Ex. 1, Brady Policy at 3.   Conseco deposited the policyholder's premium into an "accumulation account," which would accrue a minimum guaranteed interest rate (either 3.5% or 4.5% depending on the kind of policy).   The policy permits Conseco to deduct a monthly "cost of insurance charge" ("COI charge") and a monthly "expense charge" from the accumulation accounts.   The COI charge was subject to a cap as set forth in the policy.   The expense charge could never exceed $5 per month.   Policyholders were permitted to take out loans against the balance of their accumulation accounts.   A policyholder could choose at any time to surrender his policy and receive the balance of the accumulation account, minus a set "surrender charge."   Brady Policy at 9.   The combined effect of the above provisions was that the balance of a policyholder's accumulation account would change over time as a result of any loans taken out, monthly deductions, and the accumulation of interest at the guaranteed rate.

To arrive at a monthly COI charge, Conseco multiplied the cost of insurance rate ("COI rate") by what it called the "net sum" – the difference between a policyholder's death benefit and the amount in his or her accumulation account.   The COI rate was determined according to a table entitled, "Guaranteed Maximum Monthly Mortality Charge," which set a rate per $1000 of net sum, "based upon the Commissioner's 1980 Standard Ordinary Mortality Table."   Brady Policy at 10.   For example, according to the Table, a 70-year old male with $50,000 in his accumulation account and $100,000 death benefit, has a net sum of $50,000 and pays $3.87 per $1000 of that net sum, for a maximum monthly COI charge of $193.50, less other unrelated charges or additions.   The $3.87/1000 rate represents the monetized percentage chance that someone of a particular age and gender will die in a given policy year.   This monthly COI charge calculation is a *maximum*.   The policy allows Conseco to adjust the charge upward or downward so long as it does not exceed the maximum as provided for in the Table *Id.* at 9-10.   The policy, however, does not disclose precisely how or why Conseco would

make upward or downward adjustments.  The "Monthly Cost of Insurance" section states, "[Conseco] reserves the right to adjust the monthly cost of insurance being charged on any policy anniversary by increasing or decreasing the rates for the monthly cost of insurance under this plan by giving written notice to all insureds not less than ninety days prior to the date of such change." *Id*. However, "[i]n no event can the rates for the monthly cost of insurance be increased to an amount greater than the rates for the attained age of the insured specified in this table." *Id.* at 10. Moreover, "[t]he monthly cost of insurance rates, and any change in the monthly cost of insurance as provided herein, are and will be determined on a uniform basis for insured of the same age, sex and classification for all policies issued with like benefits and provisions." *Id*.

For many years, Conseco only deducted COI charges for the first eight years a policy was in effect. *See, e.g.*, Hopkins Decl., Ex. 7, Conseco's Resp. to Minn. Dept. of Commerce, at 4 ("Based on the pricing elements of the time, Massachusetts General Life . . . instituted a current company practice where COI and expense charges would only be deducted for the first 8 policy years."). After the eighth year, the COI charge dropped to $0. *Id*. Because there were no cost of insurance deductions, the insured's accumulation account values would continue to exceed the death benefit, also called the guaranteed cash value ("GCV").  There was also an Optional Premium Payment Provision ("OPPP"), which provided that the policyholder could choose to reduce or stop paying annual premiums after five years, so long as the amount of money in his or her accumulation account met or exceeded the GCV. *See* Hopkins Decl., Ex. 3 at CLIC 0003517. Thus, for those who elected the OPPP provision, after eight years, no additional premium payments or cost of insurance charges were required.

The policies also contained a "non-participating" clause, which stated that the policies "will not share in any of the Company's profits or surplus earnings.  Any premium or factor changes are determined and redetermined prospectively.  The Company will not recoup prior losses, if any, by means of premium or factor changes."  Brady Policy at 13.

**B.    The October 2008 Letter.**

Plaintiffs allege that, from the time they purchased their policies in the 1980s and 1990s, until 2008, Conseco sent yearly notices stating that the policies were adequately funded and that no additional

monthly fees were owed. Brady FAC ¶¶ 71, 76-77 (Dkt. 51). In October 2008, however, Conseco sent a letter (the "October 2008 Letter") to policyholders announcing that their policies had become underfunded. *See* October 2008 Letter to Hovden, Hopkins Decl. Ex. 9. The Letter informed policyholders that Conseco planned to restructure its COI and expense charges, and stated that the additional charges were necessary because "experience factors have differed from those assumed when your policy was originally sold." *Id.* The Letter did not elaborate on the "experience factors." The Letter did inform the affected policyholders that they had three options for making up the shortfalls in their now underfunded accumulation accounts. First, a policyholder could make an up-front payment to make up the shortfall, then resume paying premiums to ensure that the policy remained in full force. *Id.* Alternatively, a policyholder could refrain from paying off the shortfall, in which case the policy would go into "Continuation of Insurance." *Id.* After entering Continuation of Insurance, the policyholder could either choose to do nothing and let his policy terminate when its balance became insufficient to cover monthly deductions, or could make flexible premium payments until the balance exceeded the cash value of the policy, in which case the policy would go back into full force and could be maintained with additional premiums in the future. *Id.*

## C.     The Regulatory Settlement

Upon receiving the October 2008 Letter, policyholders began contacting state insurance regulators to express concerns about the additional COI and expense charges. Hopkins Decl., Ex. 12., Regulatory Settlement Agreement ("RSA") ¶ 21. Several months after sending the October 2008 Letter, Conseco sent its policyholders a follow-up letter (the "December 2008 Letter") stating that they should disregard the October 2008 Letter because Conseco had begun working with state insurance regulators to review Conseco's actions. *See* December 2008 Letter to Brady, Hopkins Decl. Ex. 13. On May 28, 2010, Conseco reached a Regulatory Settlement Agreement with the various state regulators. Pursuant to the RSA, Conseco is required to follow a specific set of procedures in administering the policies. Furthermore, Conseco agreed not to demand that policyholders pay one-time shortfall payments. The RSA allowed Conseco to resume COI charges with specified restrictions and procedures. RSA ¶¶ 56-61.

United States District Court
For the Northern District of California

The RSA included a "Corrective Action Plan" ("CAP"), which provided for a number of changes to the policies.  RSA ¶¶ 31-66.  Some of these changes automatically applied to all policyholders, and others were contingent on waiving legal claims against Conseco in exchange for certain benefits.  For example, in exchange for eligibility to recover from a $10 million settlement pool, the policyholder released Conseco from all claims "arising out of or in any way related to any current and/or future litigation that Claimant could bring regarding <u>allegations in the Agreement</u> . . . " RSA, Ex. F.1. (emphasis added).

### D.     Resumption of Fees

In October 2010, Conseco resumed collecting monthly COI and expense charges.  The schedule for the COI rates Conseco is now using was incorporated into the Regulatory Settlement Agreement. RSA Ex. G.  Whereas the prior "Guaranteed Maximum Monthly Mortality Charge" table included only sex and age as variables, the new schedule includes sex, age, smoker status, and duration of policy participation.  Conseco derived the rates in the schedule based on analysis of data provided by its consultant, Milliman, Inc.  *See* Summarized Milliman Analysis Results with Sensitivity Testing ("Milliman Model"), Hopkins Decl., Ex. 17.  The Milliman Model projects Conseco's revenues and expenses over time in order to allow Conseco to calculate the adjustment to COI rates necessary to "break even."  Winterhof Dep. at 41, Hopkins Decl., Ex. 18.  The break even result is achieved where all expenses are covered by future revenue so that the present value of Conseco's future profits is at or near zero.  *Id.*  The Milliman Model uses a present value date of September 30, 2008, a date over two years prior to when Conseco began imposing the new Milliman-based COI charges in October 2010. The Milliman Model projected fifty different break even scenarios, each of which applied different "Adjustment Factors" to the COI rates in order to achieve COI charges that produced break even results. Hopkins Decl., Ex. 18.  The COI rate schedule attached to the RSA uses an average of 3 of those scenarios, for an adjustment factor of 125.5% of the base table rate.  Winterhop Dep. at 41; Hopkins Decl., Ex 19 ("Sources of Earning Statement") at CLIC0774617.

**United States District Court**
For the Northern District of California

## II. Procedural History

### A. Class Certification

On October 6, 2010, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court certified a nationwide class defined as:

> all persons in the United States who (1) own or owned a Conseco LifeTrend 3 or LifeTrend 4 Policy, and (2) have received since October 2008, or in the future may receive, pursuant to a settlement with state insurance regulators or otherwise, any of the following: (a) notice that an annual premium is due, notwithstanding such person's prior invocation of the Policy's Optional Premium Payment Provision ("OPP Provision"); (b) notice of increased expense charges under the Policy; or (c) notice of increased cost-of-insurance deductions under the Policy.

Class Certification Order at 20. The Court found that plaintiffs satisfied the four prerequisites set forth in Rule 23(a) for certification: numerosity, commonality, typicality, and adequacy. Class Cert. Order at 9-15. The Court then engaged in an analysis under 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Conseco challenged certification under 23(b)(2) on grounds that the class was insufficiently cohesive. However, as the Court noted, to meet the cohesiveness requirement, "[i]t is sufficient if defendant has adopted a pattern of activity that is likely to be the same as to all members of the class." Class Cert. Order at 15 (*citing* William W. Schwarzer, *Federal Civil Procedure Before Trial,* § 10:399 (2010)). The Court found that:

> There is no dispute that every member of the potential class held a LifeTrend policy with identical language, or that the regulatory settlement sets forth certain directives which will uniformly affect all class members. Conseco's proposed actions either amount to a breach of contract or they do not. Plaintiffs' breach of contract claim is amenable to uniform, classwide adjudication, and involves future actions which can be enjoined on a classwide basis.

Class Cert. Order at 15. The Court also considered and rejected Conseco's argument that variation in state law defeated the cohesiveness requirement. Conseco had argued that the question of whether the policies are ambiguous would require plaintiff-specific adjudication and that state law variance on the admissibility of extrinsic evidence to resolve ambiguity would defeat the cohesiveness requirement. Upon consideration of two 50-state breach of contract surveys submitted by plaintiffs, the Court rejected

Conseco's argument stating, "Conseco overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence." *Id.* at 10.

The Court issued the Class Certification Order against the backdrop of the Supreme Court's looming decision in *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011). Prior to the Supreme Court's decision in *Dukes*, the Ninth Circuit used a predominance test in class certification analyses involving both declaratory or injunctive relief *and* monetary relief. Applying that test, this Court concluded that "[a]lthough plaintiffs also pray for contract damages, the Court finds that this request is minor in comparison to their demand for equitable relief . . ." *Id.* at 16. Despite the fact that the class was certified under 23(b)(2), because of the ambiguous nature of the effect of the regulatory settlement on the class litigation, the Court required (and the plaintiffs have provided) notice and opt-out rights.

Soon after the *Dukes* explicitly overruled the Ninth Circuit and rejected the predominance test upon which this Court relied in its Certification Order, Conseco filed a motion to decertify the entire class. The Court decertified the class as to former policyholders because the monetary relief they sought was not incidental to declaratory judgment of injunctive relief, and was therefore barred by *Dukes*. As to current policyholders, however, the Court did not decertify, finding that the return of wrongfully charged costs and fees as damages was incidental to the declaratory and injunctive relief sought.

Conseco had also sought to decertify a part of the class at one other juncture in this litigation. On November 4, 2010, Conseco moved to exclude policyholders who signed the Corrective Action Plan release as part of the Regulatory Settlement Agreement. Conseco argued that these releasors gave up their eligibility to participate in this class. The Court reviewed the issue but denied Conseco's motion as premature. Instead, the Court *sua sponte* certified a subclass of releasors and required plaintiffs to issue a unique notice to subclass members informing them of the uncertainty of their ability to participate in both the RSA action and this action.

### B.    Preliminary Injunction

On March 5, 2012, plaintiffs moved for a preliminary injunction to enjoin Conseco from continuing to deduct COI charges from the accumulation accounts of approximately 157 class members

prior to the resolution of this case.  Plaintiffs sought to enjoin Conseco from imposing COI charges on (1) approximately 100 policyholders who are sixty years old or older and have accumulation account values that have been exhausted or will be exhausted by COI and expense charges before the end of 2013; and on (2) approximately 77 policyholders who are sixty years old or older and are currently being charged monthly cost of insurance charges in excess of $400.00.  The Court granted the injunction with respect to the former group, but denied injunctive relief for the latter group.  There the Court stated that "the heart of this case is what the cost of insurance is actually based on."  Dkt. 369, at 2, n.1.  In particular, part of plaintiffs' breach of contract theory posed the question, "may Conseco increase COI rates in the face of declining mortality rates?"  *Id.* at 9.  In reviewing plaintiffs' likelihood of success on the merits, the Court held that California contract interpretation law applies.  As an initial step, the Court found that the term "cost of insurance was ambiguous."  *Id.* at 12.   The Court construed that ambiguity against Conseco and found that "changes to the COI rates are contractually bound to changes in mortality rates," thus, raising rates in the face of declining mortality rates would constitute breach. *Id.* at 14.

### C.      Cross-Motions for Summary Judgment and Second Motion for Decertification

On September 27, 2012, plaintiffs moved for partial summary judgement on their breach of contract claims, asserting six distinct theories of breach.  In opposing plaintiffs' motion, Conseco moved for summary judgment that there has been no breach of contract. Conseco argues that the COI charges comply with the plain, unambiguous terms of the policy. Conseco also moves for decertification of the entire class because it contends that ambiguity with respect to one of plaintiffs' six breach of contract theories defeats the commonality required to maintain class certification.

### LEGAL STANDARD

## I.      Summary Judgment

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## II.      Class De-certification

Pursuant to Federal Rule of Civil Procedure 23(c)(1), an order certifying a class "may be altered or amended before final judgment."  The party seeking decertification must show that the class no longer meets Rule 23's certification requirements. *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007).  The standards used to determine whether to decertify a class are the same as the requirements to certify a class -- namely, whether the requirements of Rule 23 are met. *See, e.g., Grayson v. 7-Eleven, Inc.*, 2011 WL 2414278, *2 (S.D.Ca. June 10, 2011).  Doubts should be resolved in favor of certification. *Gonzales*, 489 F. Supp. at 1154.

United States District Court
For the Northern District of California

**DISCUSSION**

## I.      Summary Judgment on Breach of Contract Claims

Plaintiffs' motion for partial summary judgment attacks the manner of Conseco's 2010 imposition of COI charges and Conseco's motives for doing so.  Plaintiffs' attack on the manner in which Conseco imposed the restructured charges – here an attack on the inclusion of "duration" in the COI calculus – presents no triable dispute of fact, only questions of law for which summary judgment is appropriate.  Plaintiffs' attacks on Conseco's motives for restructuring the charges, however, as discussed below, present genuine issues of material fact suitable for trial.  The Court turns first to the duration issue.

### A.      Duration

Plaintiffs contend that Conseco's use of duration – i.e., how long a policyholder has owned a policy – in setting the 2010 COI rates violates the terms of the policy.  The Brady Policy**,** which the parties agree is representative of the class' policies, states, "[t]he monthly cost of insurance rates, and any change in the monthly cost of insurance as provided herein, are and will be determined on a uniform basis for insureds of the same age, sex and classification for all policies issued with like benefits and provisions."  Brady Policy at 9.  The 2010 rates, however, are not uniformly based on age, sex, and classification.  RSA, Ex. G; *see also* 30(b)(6) Dep. at 40:8-41:24, Aug. 23, 2012, Hopkins Decl. II. ("[t]here was a durational element" to the 2010 cost of insurance rates not explicitly present in the original rates).  Whereas under the pre-2010 rates, all 70-year old males would be subject to the same maximum COI rate, under the new schedule, the rates for 70-year old males would differ based on how long they had been Conseco customers.

Conseco does not deny that this non-uniformity exists.  Instead, it argues that (1) the policy does not require uniformity in the way plaintiffs contend and (2) that considering duration is actuarially sound and consistent with industry practice.  First, Conseco highlights the policy's language, that a rate increase "will be determined on a uniform basis . . . " for people of like gender, age and classification. Rather than dictating a certain uniform outcome, Conseco apparently argues that the only uniformity required by the contract is the "determination."  In support of this view, Conseco's actuarial expert

**United States District Court**
For the Northern District of California

concluded, "Conseco adhered to appropriate actuarial and industry standards in determining the new cost of insurance rates."  Behan Report ¶ 33.  However, as a threshold matter, Conseco's expert never says that Conseco was uniform in how it applied these industry standards in making determinations, but merely that Conseco "adhered" to them.  Moreover, while the plain language of the contract does not expressly prohibit a consideration of duration, it also does not expressly allow its use.  Instead, the plain language contemplates uniformity and approves of changes only where there is uniformity.  By considering additional factors, Conseco plainly breaches this term.  *See Alleman v. State Farm Life Ins. Co*, 334 Fed. Appx. 470, 472 (3d Cir. 2009) (excluding tobacco use factor where the policy states that "guaranteed values are based on the Insured's age last birthday and sex...[b]y the plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to the rate the insured received under the policies").

The Court also rejects Conseco's position that industry practice should be read into this contract.  First, if duration were such an obvious and important part of these insurance agreements, Conseco does not explain why it nowhere appears in the original policy.  As a matter of industry practice, duration is probably quite useful in allowing insurers to understand their risks, revenues, and expenses.  And Conseco could have included this language, but chose not to.  Moreover, "the mere fact that it was generally accepted policy in the insurance industry . . . is not conclusive. Rather, as with any contract, the plain language of the contract governs the rights and responsibilities of the parties under the contract."  *Jeanes v. Allied Life Ins. Co.*, 168 F. Supp. 2d 958, 974 (S.D. Iowa 2001).

Accordingly, the Court finds that Conseco's inclusion of duration breaches the policy.  Therefore, the Court GRANTS plaintiffs' motion for partial summary judgment and DENIES Conseco's motion for summary judgment with respect to the durational theory of breach.

## B.     Cost of Insurance Rates

Plaintiffs umbrella their five remaining breach of contract theories under the allegation that Conseco's post-2010 imposition of restructured COI rates was motivated by reasons other than those permitted by the contract.  The factual premise of that allegation, that Conseco's stated motive for the COI changes is false, presents a triable issue of fact.  Summary judgment, therefore, is inappropriate on

United States District Court
For the Northern District of California

1  plaintiffs' remaining five theories of breach.

2

3          **1.        Whether Conseco's COI charge is tied to mortality rate changes.**

4          The parties vigorously dispute whether the contract requires that mortality rates be tethered to

5  increases in COI charges.  However, this dispute poses essentially the same questions argued and

6  decided on plaintiffs' motion for a preliminary injunction.  Plaintiffs argue that the policies tie the COI

7  charges to mortality rates, that mortality rates have decreased, and that therefore, Conseco is forbidden

8  from raising the COI charges.  Conseco argues that the only limiting principle on its ability to change

9  COI rates is the table setting forth the maximum rates, the notice requirement, and approval of regulators

10 when necessary.  It cautions that this Court must not write unwritten obligations into an insurance

11 policy.  Plaintiffs recognize that the policies "do not explicitly define the basis for determining the

12 monthly cost of insurance rates." Pl. Mot. at 12.  Plaintiffs argue nonetheless that changes to Conseco's

13 COI charges are contractually tethered to changes in mortality rates for three reasons.  First, mortality

14 rates "are the only reference provided for calculation of cost of insurance under the policies." *Id*.  They

15 point out that the COI rate table included in the policy is entitled "Guaranteed Maximum *Monthly*

16 *Mortality Charges*: Table of (Monthly) Cost of Insurance Rates." *Id.* (citing Brady Policy at 10)

17 (emphasis plaintiffs').  Second, they argue that interpreting the COI rates as based upon mortality

18 comports with the expectations of the reasonable insured.  *Id.*  Third, they point to deposition testimony

19 from Conseco officials which suggests Conseco acknowledges that cost of insurance rates are connected

20 to mortality rates.  Pl. Mot. at 13; *citing, e.g.* Turner Dep. 36:18-24 (Conseco's Senior Managing

21 Actuary stating that "[I]n some circles, the idea of mortality rates and cost of insurance rates are one and

22 the same.").

23         The Court reiterates, as it said in its preliminary injunction order (Dkt. No. 369),  a district court

24 sitting in diversity applies the forum state's contractual interpretation rules.  *See Dean v. United of*

25 *Omaha Life Ins. Co.*, 2007 WL 7079558, at *3 (N.D. Cal. Aug. 20, 2007) (*citing Schwarzer, et al.,*

26 *California Practice Guide, Federal Civil Procedure Before Trial* ¶ 1:48 (2006)).  The pre-consolidated

27

28

1    cases were all brought on the basis of diversity.[1]

2         Under California law, interpretation of an insurance policy is a question of law and follows the

3    general rules of contract interpretation.  *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647

4    (2003).  When interpreting an insurance policy, courts must "consider the contract as a whole and

5    interpret the language in context, rather than interpret a provision in isolation." *London Market Insurers*

6    *v. Superior Court*, 146 Cal. App. 4th 648, 656 (Cal. App. 2nd Dist. 2007); *see* Cal. Civ. Code § 1641.

7    The mutual intention of the contracting parties at the time of contract formation governs interpretation.

8    Cal. Civ. Code § 1636.  Such intent is to be inferred, if possible, solely from the written provisions of

9    the contract.  *Adler v. Western Home Ins. Co.*, 878 F. Supp. 1329, 1332 (C.D. Cal. 1995) (*citing AIU*

10   *Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)).  That language is to be given its "plain meaning

11   or the meaning a layperson would ordinarily attach to it."  *Waller v. Truck Ins. Exchange, Inc.* 11 Cal.

12   4th 1, 18 (1995).  If contractual language is clear and explicit, it governs.  Cal. Civ. Code. § 1638.

13   However, if the policy language is in any sense unclear or ambiguous, it must be interpreted in the sense

14   in which the promisor believed, at the time of making it, that the promisee understood it.  Cal Civ.Code

15   § 1649.  If application of this rule does not eliminate the ambiguity, the ambiguous language is

16   construed against the party who caused the uncertainty to exist – in the insurance context, generally the

17   insurer.  *Dean v. United of Omaha Life Ins. Co.*, 2007 WL  7079558, at *3 (C.D.Cal. Aug. 27, 2007)

18   (*citing AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)).

19        As the initial step of contract interpretation, the Court reiterates that the term "cost of insurance"

20   is ambiguous because the policy nowhere explicitly defines the term; it merely sets a few parameters

21   as to changes, maximums, and uniformity across age, sex and "classification."  Therefore, next, "the

---

23        [1]In its class decertification motion, discussed *infra*, Conseco argues that under California choice
     of law provisions, the Court should apply the contract law of the state where each policy was made, not
24   California.  Although Conseco introduces this complexity – which the Court previously rejected (Dkt.
     No. 111) – for the sake of defeating class certification, the Court addresses it here because it is not part
25   of the Court's analysis of Conseco's decertification motion.
          Plaintiffs correctly observe that (1) the law of the case doctrine prevents Conseco from re-
26   litigating this issue through this backdoor motion for reconsideration, where the Court has already held
     that California law applies; and (2) under either formulation of the relevant California choice of law
27   rules, materiality of the differences between state laws is paramount, and Conseco has not shown that
     there is such great variation in state breach of contract law.  In fact, the opposite is true; Conseco made
28   this argument regarding various in state breach of contract law in opposition to plaintiffs' motion for
     class certification and the Court rejected it.  *See* Dkt. No. 111.

whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641.  The table that sets forth the COI charges – the table that is subheaded "Cost of Insurance Rates" – is entitled "Guaranteed Maximum Monthly Mortality Charge."  Brady Policy at 10.  By its own terms, the contract uses interchangeably "cost of insurance rates" and "mortality charge." This indicates that Conseco considered the terms connected, if not wholly interchangeable.  Moreover, the only indication given in the contract as to the basis of the COI charges is that they "will be determined on a uniform basis for insureds of the same age, sex and classification for all policies issued with like benefits and provisions."  *Id.* at 9.  Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality.  *See Dean*, 2007 WL 7079558, at *6-7.  Therefore, the contract's terms support plaintiffs' interpretation.

Any remaining ambiguity in the term "is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation."  *AIU*, 51 Cal. 3d at 822 (citing Cal. Civ. Code § 1649).  Conseco points to four pieces of extrinsic evidence contemporaneous to formation that shed light on how Conseco believed plaintiffs to have understood the term: (1) the "IMPORTANT NOTICE" in the Lifetrend Policy stating that "the projected results of your insurance program may change drastically with variations in the interest rate, mortality rates (risk charges), expense factors, and the frequency, timing and amount of your premium payments."; (2) sales illustration which states, "PROJECTED VALUES for both continuous pay and limited pay values are based on current interest expense and cost of insurance rates."; (3) correspondence to consumers stating that "actual performance is influenced by factors such as fluctuating interest rates and premium options chosen"; and (4) deposition testimony from agents showing that they told consumers that the policies depended on interest rates.

Conseco's evidence is unconvincing for two reasons.  First, both the contract and the extrinsic evidence suggest that interest rates are relevant to the value of the accumulation accounts *not* to the COI rates.  The fact that the policy's accumulation accounts received a guaranteed minimum interest rate from Conseco – no matter how good or bad the prevailing interest rates in the market were – was likely attractive for consumers.  These life insurance policies are investment vehicles with guaranteed rates

United States District Court

For the Northern District of California

of return, and it seems likely that fluctuations in interest rates were communicated and understood to impact the investment account – the accumulation account – not the seemingly unrelated COI rates. Second, and more important, Conseco overstates plaintiffs' position. Conseco characterizes plaintiffs' position to be "that an increase in COI charges can occur only in the event of deterioration in mortality rates." Mot. in Opp. at 2. Plaintiffs' position is *not* that mortality rates must be strictly married to COI rate increases, but rather, that COI rate increases cannot, as here, be wholly divorced from them. Whether interest rates or other factors play *some* role is a factual question. The legal question is whether COI rates can be increased wholly divorced from mortality rates, as happened here when the COI rates were increased despite an improved mortality outlook for Conseco.

On that question the evidence submitted by the parties does not resolve the ambiguity. Therefore, the Court therefore turns to the final step in interpretation: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal Civ. Code § 1654; *see also Dean*, 2007 WL 7079558, at *7 ("With nothing further to support a finding in favor of [the insurer] on this point, we need not consider the evidence that might support Dean here, because we resolve the ambiguity against the insurer."). Resolving the ambiguity against the insurer in this case means finding that changes to the COI rate increases cannot be divorced from mortality rates. The contract, taken as a whole, supports this interpretation. The Court agrees with plaintiffs that a reasonable insured would not read the terms and believe that Conseco could amend the COI charges at its discretion, regardless of changes to mortality rates. Resolving the ambiguity against the insurer seals the question.

Having found that the policy contains this requirement, however, does not resolve the question of whether Conseco's actions breached the policy. Although the evidence suggests that Conseco has vastly increased the COI rates -- from $0 to hundreds or even thousands per month -- in the face of declining mortality rates, Conseco disputes that this was entirely divorced from mortality rates. In fact, Conseco "does not dispute that the cost of insurance charge at issue is related to mortality." Rep. at 2. Instead it disputes the extent to which interest rates or other factors, along with mortality rates, played a role in Conseco's crafting of new rates. If plaintiffs had shown, indisputably, that Conseco's motives for re-crafting these rates in 2010 were wholly divorced from mortality rates, then summary judgment

1    would be appropriate.  Plaintiffs have not done so, and Conseco has provided an alternative, non-

2    breaching factual scenario.  Accordingly, both plaintiffs' motion for partial summary judgment and

3    Conseco's motion for summary judgment on this theory are DENIED.

4

5                **2.       Whether Conseco increased COI charges to offset lost revenues.**

6              According to the Milliman model on which Conseco based its 2010 issuance of rates, Conseco

7    consistently loses money on "expenses."  Similarly, the model shows that the actual amount of interest

8    that Conseco will earn on its investments is less than the guaranteed interest Conseco must pay out on

9    policyholder's accumulation accounts.  Because the Milliman model is designed to ensure that Conseco

10   breaks even by increasing COI charges appropriately, plaintiffs argue that Conseco is improperly using

11   COI charges to make up for the losses on expenses and the inability to generate sufficient interest

12   income to cover its guarantee.  Plaintiffs argue, and the Court agrees, that it would be a breach of the

13   policy for Conseco to collect a charge called "cost of insurance" that is not actually related to the cost

14   of insurance and is instead related to "expenses," a term separately defined in the policy, or to make up

15   a shortfall in Conseco's ability to pay out the guarantee.  *See Dean*, 2007 WL 7079558, at *4.

16   Moreover, to require policyholders to in effect fund their own guaranteed interest rate by subsidizing

17   Conseco's misplaced bet – that interest rates would remain high – would produce an ironic result.  Here,

18   however, there is a genuine factual dispute about why Conseco imposed the new COI charges.  Conseco

19   vigorously contests plaintiffs' allegations and argues that the COI charges are not subsidizing losses

20   elsewhere.  *See* Behab Rebuttal Report ¶ 28.  This question of fact cannot be resolved on summary

21   judgment.  Accordingly, both plaintiffs' motion for partial summary judgment and Conseco's motion

22   for summary judgment on this theory are DENIED.

23

24               **3.       Conseco increased COI charges to recoup investment losses.**

25            The policy contains a "non-participating" clause, which provides that "[t]his policy will not

26   share in any of the Company's profits or surplus earnings.  Any premium or factor changes are

27   determined and redetermined prospectively.  The Company will not recoup prior losses, if any, by

28   means of premium or factor changes."  Brady Policy at 13.  Plaintiffs argue that the COI charges are an

United States District Court
For the Northern District of California

effort on Conseco's part to "recoup" losses it sustained between 2008 and 2010 and to "recoup" losses on lower-than-expected interest earning in the years prior to 2007.  To do either, plaintiffs argue, would violate of the policy's non-participation clause.  Plaintiffs buttress the latter theory with their argument that the COI charges assessed by Conseco in the first eight years of the policy, before ceasing the charges, were sufficient to pay the anticipated real costs for insurance for the life of the policy.  Pl. Mot. at 12.  Because the policies were effectively "paid off," the recently implemented COI charges evidence an attempt to recoup recent investment losses.  Conseco's statements to regulators support this interpretation.  *See* Hopkins Decl., Ex. 3, at CLIC 32106-107 (Response to AG 2-1) (the "decline in investment rates and credited rates has led to the inability of [Conseco] to earn the overall base pricing spread [and] accumulation accounts that have not grown to the levels and at the rate originally anticipated in pricing due to the lower interest rate environment.").  Also, the Milliman break even model appears to use March 27, 2007, as the valuation point, as opposed to March 31, 2010, which allows it to capture losses prior to 2010 in the rate resumption.  *See* Hopkins Decl., Ex. 25, Memo. to FL Regulators ("By using a valuation date of March 31, 2007, Conseco is essentially recovering losses that occurred between March 2007 and March 2010").  Conseco opposes, providing, among other things, a declaration from an actuary that Conseco ceased charging COIs as "a matter of discretion," and is simply resuming them to produce a *future* break even result.  Turner Decl. ¶¶ 7, 13.

In sum, this breach of contract claim turns on a factual dispute regarding Conseco's motives.  Were the COI charges a prospective attempt to mitigate future losses and ensure that the company would break even?  Or were they an attempt to pass Conseco's prior bad fortunes onto its customers?  If the latter, Conseco breached the terms of the policy, which clearly bars such efforts to recoup.  There is a genuine dispute of material fact.  Accordingly, both plaintiffs' motion for partial summary judgment and Conseco's motion for summary judgment are DENIED.


### 4.       The Filed Rate Doctrine.

Conseco contends that summary judgment is appropriate because the regulators' approval of the 2010 COI changes is determinative, pursuant to the filed rate doctrine.  The filed rate doctrine provides that "rates duly adopted by a regulatory agency are not subject to collateral attack in court."  *MacKay*

United States District Court
For the Northern District of California

*v. Superior Court*, 188 Cal. App. 4th 1427, 1448, (2010).  In support, Conseco points to the fact that the Regulatory Settlement Agreement was adopted by 45 state insurance regulators.

Plaintiffs argue that the filed rate doctrine is inapplicable for a number of reasons.  First, the Ninth Circuit has held that the doctrine has no application in a case involving rates approved by *state* regulators, citing  *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1033-34 (9th Cir. 2007).  ("The filed rate doctrine . . . bar[s] challenges under state law and federal antitrust laws to rates set by *federal agencies*"); *see also Miletak v. Allstate Ins. Co.*, 2010 WL 809579, at *4 (N.D. Cal. Mar. 5, 2010) ("The doctrine does not directly apply to a situation, as here, involving potential interference with rates set by a state agency rather than a federal agency.").  Second, plaintiffs argue that the filed rate doctrine is inapplicable here because it applies where the insurance commission regulates rates only "after an extensive hearing process in which consumers and interested parties are encouraged to participate," and here, consumers were never given the opportunity to participate and challenge the rates.  *Id.* (*citing Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th, 750, 754-46 (2000)).  Third, plaintiffs argue that the filed rate doctrine only applies when customers can be presumed to have notice of the rates they are subject to.  Here the rates that are being challenged were specifically non-public and unknown at the time plaintiffs purchased their policies.  Finally, plaintiffs argue that the express terms of the RSA make clear that the filed rate doctrine does not apply here.  The RSA states, "neither this Agreement nor any related negotiations, statements or court proceedings shall be offered by the Conseco Companies or the Signatory Regulators as evidence in any regulator or judicial proceeding."  RSA ¶ 122.

The Court is persuaded by plaintiffs' position.  The Ninth Circuit has not said that the filed rate doctrine applies in situations like this, where the regulators are state regulators.  Moreover, as plaintiffs note, these rates were imposed, by surprise and in secret, on consumers, not via the openness envisioned by the filed rate doctrine.  Accordingly, Conseco's motion for summary judgment on the basis of the filed rate doctrine is DENIED.

**II.     Decertification**

**A.     The Entire Class**

According to Conseco, should this Court find that the COI language in the contract is ambiguous, the entire class must be decertified.  Conseco contends that when the Court certified the class, it did so on the basis that the terms of the contract were unambiguous, and therefore would not require inquiry into individual policyholder's understanding of the policy.  In the Class Certification Order the Court noted that neither party asserted ambiguity, but rather that the parties offered competing views of nonambiguity.  Dkt. No. 111 at 10.  In the Court's Preliminary Injunction Order, and in this Order *supra*, however, the Court stated that the "cost of insurance term" – read against the evidence as it has developed in this case – is ambiguous, and proceeded to construe that ambiguity against Conseco.

The Court is not persuaded that decertification is appropriate.  First, Conseco cannot use the possible lack of commonality with respect to *one* of plaintiffs' six breach of contract theories in order to defeat class certification on all claims.  Even if the ambiguity Conseco describes actually does prove fatal to *one* claim, the drastic remedy of decertification is inappropriate here, where there are multiple, viable breach of contract claims that have common issues under Rule 23. Decertification is not appropriate where plaintiffs could prevail on other claims on common issues.  Moreover, apart from the various breach of contract theories, Conseco does not even address that there is a separate claim for declaratory relief, "that the Court declare that [plaintiffs'] account values are not under funded and that Conseco may not charge the increased cost of insurance rates on a prospective basis." Brady FAC ¶ 213. That claim is common to the entire class and would be defeated if the Court decertified the entire class as Conseco requests.  Accordingly, the Court rejected Conseco's motion to decertify the entire class and DENIES it on those grounds.

Moreover, Conseco drastically overstates the issue and the inconsistency between this Court's orders.  In the Preliminary Injunction Order, the Court found a very narrow ambiguity – whether the contract tied mortality and COI rates together such that it would permit the COI charges to increase in spite of mortality rate decreases.  Resolution of that limited ambiguity was a legal question of contract interpretation that did not undermine the commonality of the class by inviting extrinsic evidence of what each and every policyholder understood that term to mean.  As discussed *supra*, it required only an

19

United States District Court
For the Northern District of California

understanding of Conseco's belief about policyholders' perceptions. Conseco contends that because the policies are sold by individual agents to individual policyholders, the Court would need to "consider the content of sales presentations from agents to policyholders to divine what the policyholders understood the COI provision to mean." Mot. for Decert. at 13. Conseco's argument misses the mark. The insurance contracts at issue here are standard forms. They are drafted as such precisely in order to avoid the problem Conseco now invites – that thousands of policyholders have thousands of different understandings of a standard form. Allowing Conseco's assertion that its agents had multiple and inconsistent understandings of a *standard form,* to defeat class certification here would up-end Rule 23's commonality requirement.

### B.    Subclass

Conseco again raises the issue of whether the subclass of releasors – policyholders who signed the CAP release contained in the RSA settlement – are prohibited from participating in this action. The Court has previously deferred ruling on this issue as premature. *See* Dkt. 138 at 8. The issue, however, is now squarely before the Court in Conseco's motion.

In exchange for certain benefits, like inclusion in a $10 million settlement pool, certain policyholders released Conseco from all claims "arising out of or in any way related to any current and/or future litigation that Claimant could bring regarding <u>allegations in the Agreement</u> . . ." RSA, Ex. F.1. (emphasis added). The issue is whether plaintiffs' breach of contract claims in this action are within the scope of the "allegations in the agreement." The Court concludes that they are not. The plain language of the RSA shows that it covers an entirely different subject matter than this class action.

Paragraph 54 of the RSA confirms that "No Lifetrend Policyowner shall be excluded from the CAP on the basis of membership in a purported class action lawsuit pending against the Company." RSA ¶ 54. Presumably, if a policyholder cannot be prevented from participating in the CAP on the basis of membership in a class action, then the same policyholder should not be excluded from this particular class action on the basis of having signed a CAP release. Other portions of the RSA confirm this understanding.

Paragraph 27 of the RSA states, "the Lead Regulators allege that violations have occurred related

to the issues under review identified in Paragraph 25." *Id.* Paragraph 25 outlines a broad "multistate market conduct examination of [Conseco] to review the [COI and expense charges] announced in the October and November 2008 letters as well as the sales, administration and management of the Lifetrend policies . . . " conducted by state regulators. *Id.* Paragraph 26 provides more detail of the issued reviewed during the multistate examination:

   a.   Whether any marketing or advertising materials used by [Conseco] for the Lifetrend policies contained any false or misleading information;
   b.   Whether [Conseco] engaged in sales practices that misrepresented the benefits, advantages, or terms of the Lifetrend policies;
   c.   Whether any communication by [Conseco] was misleading to Lifetrend Policyholders;
   d.   Whether [Conseco] had failed to properly manage or administer the Lifetrend policies; and
   e.   Whether [Conseco] properly determined [COI and expense charges] made to the Lifetrend policies.

Paragraph 30 also lists the "concerns" that the CAP, which contains the release, was structured to address, including "concerns regarding the [COI and expense charges]; [Conseco]'s attempt to collect additional premiums for under-funded policies; the sale, administration and management of the Lifetrend policies . . . " *Id.*

From the plain language of the RSA, it is apparent that the multistate examination was premised on a very different theory of potential liability than this class action. Four of the five issues listed reflect general concerns about fraudulent behavior, including terms such as "false or misleading information," "misrepresentations," and management failures. These terms reflect a concern on the part of regulators that Conseco COI charges were misleading, but not necessarily inflated. To the extent the RSA contains general statements, such as "Whether [Conseco] properly determined [COI and expense charges] made to the Lifetrend policies," the RSA narrows these general terms with the inclusion of the enumerated preceding list of specific concerns that all sound in fraud. In any event, nowhere does the RSA evidence an awareness or concern for the specific breach of contract claims asserted in this action – allegedly inflated fees that caused the rapid deterioration of policyholders' accumulation accounts. The crux of the multistate examination appeared to be a response to consumer concerns that there was some falsehood behind Conseco's 2008 attempt to restructure charges. The Court observes that decertification of the subclass is inappropriate here, where the Court finds that the RSA release covers an entirely

**United States District Court**
For the Northern District of California

1  different subject matter and therefore does not bar releasors from participating in this action.

2        Accordingly, the Court DENIES Conseco's motion to decertify the subclass because the RSA

3  does not explicitly deprive releasors of claims related to the subject matter of this class action.

4

5  **CONCLUSION**

6        For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiffs'

7  motion for partial summary judgment, DENIES Conseco's motion for summary judgment, and DENIES

8  Conseco's motion to decertify the class or subclass.

9

10        **IT IS SO ORDERED.**

11

12  Dated: January 29 2013

13                                     SUSAN ILLSTON
                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28