Joan B. Tucker Fife (SBN: 144572)
Krista M. Enns (SBN: 206430)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5802
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jfife@winston.com
Email:  kenns@winston.com

John M. Aerni (pro hac vice)
Adam J. Kaiser (pro hac vice)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  jaerni@winston.com
Email:  akaiser@winston.com

Raoul D. Kennedy (SBN: 40892)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
Telephone:  (650) 470-4500
Facsimile:  (650) 470-4570
Email:  Raoul.Kennedy@skadden.com

James R. Carroll (pro hac vice)
David S. Clancy (pro hac vice)
Christopher A. Lisy (pro hac vice)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Beacon Street, 31st Floor
Boston, Massachusetts 02108
Telephone:  (617) 573-4800
Facsimile:  (617) 573-4822
Email:  James.Carroll@skadden.com
Email:  David.Clancy@skadden.com
Email:  Christopher.Lisy@skadden.com

Attorneys for Defendant
CONSECO LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE CONSECO LIFE INSURANCE COMPANY LIFETREND INSURANCE SALES AND MARKETING LITIGATION | ) Case No. 3:10-MD-02124-SI<br>)<br>) MDL No. 2124<br>) ALL CASES<br>)<br>) CONSECO LIFE'S MEMORANDUM IN<br>) POINTS OF AUTHORITY IN SUPPORT OF<br>) JOINT MOTION TO PRELIMINARILY<br>) APPROVE PROPOSED CLASS ACTION<br>) SETTLEMENT<br>)<br>) CLASS ACTION<br>)<br>) Date:   July 12, 2013<br>) Time:  9:00 a.m.<br>) Place:  Courtroom 10, 19th Floor<br>) |

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA  94111-5802*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

I.    THE HISTORY OF THE LITIGATION....................................................................3

     A.    The Policies...................................................................................................3

     B.    The Action and the RSA ..............................................................................3

     C.    The Mediation and Settlement Negotiations................................................5

II.   THE UNIFORMITY CLAUSE .................................................................................5

III.  CONSECO LIFE'S PRECARIOUS FINANCIAL CONDITION .........................6

IV.  SUMMARY OF THE SETTLEMENT ....................................................................8

     A.    The Settlement Benefits ...............................................................................8

          1.    Policyholders Who Took the RPU Under the RSA .........................8

          2.    The Cash Payment Surrender Option .............................................9

          3.    The Accidental Death Benefit Option .............................................9

          4.    The Enhanced Reduced Paid-up Policy Benefit Option ................10

     B.    The Economic Value of the Settlement to the Classes ...............................11

     C.    Release ........................................................................................................11

     D.    Expeditious Implementation of the Settlement............................................11

     E.    The Settlement Classes ...............................................................................11

ARGUMENT ......................................................................................................................12

I.    THE COURT SHOULD CONDITIONALLY CERTIFY SETTLEMENT CLASSES AND PRELIMINARILY APPROVE THE SETTLEMENT ...................................12

II.   THE COURT SHOULD CERTIFY TWO SETTLEMENT CLASSES ...............15

     A.    The Class of In Force Policyholders...........................................................16

     B.    The Class of Lapsed Policyholders.............................................................18

III.  THE VACATUR OF CERTAIN ORDERS IS WARRANTED ...........................19

IV.  THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION .................21

CONCLUSION....................................................................................................................22

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

i

1

## TABLE OF AUTHORITIES

2

Page(s)

3 CASES

4 *Adoma v. Univ. of Phoenix*,
No. CIV. S-10-0059, 2012 WL 665114 (E.D. Cal. Dec. 20, 2012).........................................14

5

6 *Alberto v. GMRI, Inc.*,
252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................................13

7

*Am. Games, Inc. v. Trade Prods., Inc.*,
8 142 F.3d 1164 (9th Cir. 1998) ................................................................................................20

9 *Amchem Prods. v. Windsor*,
521 U.S. 591 (1997).................................................................................................................19

10

11 *Brady v. Conseco, Inc.*,
No. 3:08-CV-5746 (N.D. Cal.) ..................................................................................................3

12 *Campbell v. First Investors Corp.*,
No. 11-CV-0548, 2012 WL 5373423 (S.D. Cal. Oct. 29, 2012) ...................................... *passim*

13

14 *Cervantez v. Celestica Corp.*,
No. EDCV 07-729, 2010 WL 2712267 (C.D. Cal. July 6, 2010).............................................13

15

*City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*,
16 254 F.3d 882 (9th Cir. 2001) ..............................................................................................19, 20

17 *Colesberry v. Ruis Food Prods., Inc.*,
No. CV F 04-5516, 2006 WL 1875444 (E.D. Cal. June 30, 2006) .........................................16

18

19 *Dosier v. Miami Valley Broad. Corp.*,
656 F.2d 1295 (9th Cir. 1981) ................................................................................................16

20

21 *Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) ................................................................................................12

22 *Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................................19, 21

23

24 *In re Am. Family Enters.*,
256 B.R. 377 (D.N.J. 2000) ....................................................................................................16

25

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
26 270 F.R.D. 330 (N.D. Ill. 2010)..............................................................................................15

27 *In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985)....................................................................................................21

28

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

ii

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
176 F.R.D. 158 (E.D. Pa. 1997)................................................................16

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
No. 3:09cv1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ...............13

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .................................................................12

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
No. 08-MDL-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012)..............14, 21

*La Mar v. H&B Novelty & Loan Co.*,
489 F.2d 461 (9th Cir. 1973) ...................................................................17

*Linney v. Cellular Ala. P'ship*,
No. C-96-03008, 1997 WL 450080 (N.D. Cal. July 18, 1997) .................12

*McFarland v. Conseco Life Ins. Co*,
No. 3:09-CV-598 (M.D. Fla.) ..................................................................3

*Mitchell-Tracey v. United Gen. Tile Ins. Co.*,
237 F.R.D. 551 (D. Md. 2006)..................................................................17

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...................................................................13

*Persistence Software, Inc. v. The Object People, Inc.*,
200 F.R.D. 626 (N.D. Cal. Mar. 7, 2001) ...............................................20

*Robertson v. Nat'l Basketball Ass'n*,
556 F.2d 682 (2d Cir. 1977)......................................................................16

*Rodriquez v. D.M. Camp & Sons*,
No. 1:09-cv-00700, 2012 WL 6115651 (E.D. Cal. Dec. 7, 2012) ...........13

*Satchell v. Fed. Express Corp.*,
Nos. C03-2659, C03-2878, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)...........16

*Von Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ...................................................................12

*Wal-mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011)...............................................................................4

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) .................................................................17

*White v. Shen*,
No. C09-0989, 2011 WL 2790475 (N.D. Cal. July 13, 2011)..................20

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iii

*Yue v. Conseco Life Insurance Company*,
  Case No. 2:11-cv-09506-DSF-SH (C.D. Ca.) (the "*Yue* Action")..................................6, 7, 11

*Z.D. v. Group Health Cooperative*,
  No. C11-1119RSL, 2012 WL 1977962 (W.D. Wash. June 1, 2012) ......................................17

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .................................................................................17

STATUTES

All Writs Act, 28 U.S.C. § 1651(a)................................................................................21

Fed. R. Civ. P. 23 ...................................................................................................12, 16

Fed. R. Civ. P. 23(b)(1)(B) .........................................................................................16

Fed. R. Civ. P. 23(b)(1) and (b)(2) .......................................................................... *passim*

Fed. R. Civ. P. 23(b)(3).......................................................................................12, 15, 18

Fed. R. Civ. P. 23(c)(2)(A) .........................................................................................16

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................16

Fed. R. Civ. P. 23(d) ....................................................................................................21

Ind. Code §§ 27-9-3-2, 27-9-3-3 and 27-9-3-9 .................................................................7

OTHER AUTHORITIES

17 C. Wright & A. Miller & E. Cooper, Federal Practice & Procedure § 4225 at 105 (Supp.
  1985) ........................................................................................................................21

Manual for Complex Litigation § 21.362 (Fourth) (2004) .............................................13

Manual for Complex Litigation § 21.61 (Fourth) (2004) ...............................................15

*Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002).................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

CONSECO LIFE'S MPA ISO JOINT MOTION TO PRELIMINARILY APPROVE PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 3:10-MD-02124-SI; MDL NO: 2124

**INTRODUCTION**

The Settlement between Plaintiffs and Defendant Conseco Life Insurance Company ("Conseco Life") (collectively, the "Parties"), as reflected in the Parties' Stipulation filed contemporaneously with this Motion (the "Stipulation" or "Settlement"), is sufficiently fair, reasonable and adequate that notice to the proposed Settlement Classes should be provided.[1]

The Settlement follows four-plus years of hard-fought litigation in multi-district litigation, and months of arm's-length negotiations between the Parties, including a mediation before the Hon. Edward A. Infante (ret.).  The Settlement not only provides significant benefits to Class Members, valued at approximately $27 million, but also provides a variety of benefits to meet each Class Member's varying needs.  Some Class Members had previously addressed their needs several years ago by electing reduced paid-up life insurance coverage (the "RPU coverage") from Conseco Life under a 2010 Regulatory Settlement Agreement (the "RSA"), in exchange for giving Conseco Life a release.  Those Class Members will receive increased RPU life insurance coverage in this Settlement.  The remaining Class Members – which is most of them – will have a panoply of Settlement benefits available to them to address their wide range of needs.

For example, Class Members who are looking to Conseco Life to maintain their existing Policies In Force will not only be able to achieve that goal under this Settlement, but will also receive an additional benefit of ten years of Accidental Death coverage *at no cost*.  Class Members who are not looking to Conseco Life to maintain their existing Policies, however, will have the following attractive option to surrender their Policies:  all deductions taken from their Policies after Conseco Life implemented cost of insurance ("COI") and expense charge increases in 2010 will be restored to their Policies, after which Conseco will increase the Policies' cash surrender values with interest credits and other monetary enhancements before paying out the cash surrender values.  These Class Members will be able to roll the clock back to a time when their Policy values were at their highest and then obtain an enhanced cash surrender payment under the Settlement.

---

[1]  Capitalized terms in this Memorandum have the same meaning as they have in the Stipulation that the Parties submit with their Joint Motion for Preliminary Approval of the Settlement.

**Winston & Strawn LLP**
101 California Street
San Francisco, CA  94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   And, Class Members seeking an option between those two ends of the spectrum (keeping

2   their Policies In Force versus surrendering them) will find that the Settlement offers them the same

3   "in-between" benefit that the RSA offered them – the RPU coverage – but at much more attractive

4   terms than were available under the RSA.   They, too, will be able to essentially roll the clock back

5   to a time when their Policy values were at their highest and then obtain an Enhanced Reduced Paid-

6   Up Policy Benefit under the Settlement that will permit them to maintain a death benefit coverage

7   now, but without having to pay any future premiums or incur any further costs.

8   The Settlement, if approved, will provide Class Members with this panoply of benefits while

9   eliminating three significant risks facing the Class.  *First*, it will eliminate the risk that plaintiffs will

10  lose on the merits, either in this Court or on appeal.  *Second*, it will reduce the risk that Conseco

11  Life's primary and domiciliary insurance regulator, the Indiana Department of Insurance (the

12  "IDOI"), would assume supervision of Conseco Life, to the severe material detriment of

13  Policyholders here.  And, *third*, it will eliminate the risk that other determinations of this Court,

14  including the decisions to certify a nationwide class of plaintiffs and grant injunctive relief to certain

15  plaintiffs, will be reversed in the Ninth Circuit.

16  Strong judicial policy favors the settlement of class actions, and preliminary approval should

17  be granted if the proposed settlement is "fair, reasonable and adequate," falls within "the range of

18  possible approval" and is not the product of "collusion." This test is easily satisfied here.  The

19  fairness of the Settlement is self-evident:  it makes a valuable menu of Settlement benefits, valued at

20  approximately $27 million, available to the Classes;  it will result in the termination of risky,

21  expensive and complex proceedings in both the District Court and Ninth Circuit; and it will

22  eliminate the risk that the IDOI will assume supervision of Conseco Life to the detriment of

23  Policyholders here.  Moreover, this Settlement is hardly collusive.  Indeed, the presence of a well-

24  regarded mediator establishes as much.  And, as this Court is aware from presiding over it, this

25  litigation has been extremely hard-fought and there is no possibility of a collusive settlement

26  between the Parties.  As demonstrated in this Memorandum and all of the papers submitted in

27  support of the Settlement, the Parties' Joint Motion for preliminarily approval of the Settlement

28  should be granted.

2

CONSECO LIFE'S MPA ISO JOINT MOTION TO PRELIMINARILY APPROVE PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 3:10-MD-02124-SI; MDL NO: 2124

**BACKGROUND**

I.     **THE HISTORY OF THE LITIGATION**

    A.     **The Policies**

        This Action involves persons who own Lifetrend III or Lifetrend IV life insurance policies (the "Policies").  Conseco Life has been administering the Policies since approximately 1996.

        In 2008, Conseco Life sent notices to Policyholders stating that it would increase COI and expense charges for the Policies (the "October 2008 Notice").  Various state insurance regulators began examining Conseco Life's actions relating to the October 2008 Notice, which led, in or around December 2008, to Conseco Life's sending notices to the same Policyholders suspending the COI and expense charge increases referenced in the October 2008 Notice.

    B.     **The Action and the RSA**

        In December 2008, Cedric Brady, Charles Hovden, Marion Hovden, John McNamara and Hisaji Sakai filed a suit against Conseco Life captioned *Brady v. Conseco, Inc.*, No. 3:08-CV-5746 (N.D. Cal.).  In 2009, Bill McFarland filed a similar suit against Conseco Life captioned *McFarland v. Conseco Life Ins. Co*, No. 3:09-CV-598 (M.D. Fla.).  Conseco Life asked the Judicial Panel on Multidistrict Litigation to transfer these another lawsuit arising out of the October 2008 Notice to one federal district court for consolidated pretrial proceedings, and the Panel transferred these cases to this Court.

        In 2010, the named Plaintiffs moved to certify a nationwide class of Policyholders and a California subclass of Policyholders.   While the motions for class certification were pending, Conseco Life entered into the RSA with state insurance regulators in over 40 jurisdictions.  Under the RSA, Conseco Life offered certain Policyholders relief, one of which included converting their Policies to an RPU coverage, for which no premiums needed to be paid.  A Policyholder's election of this option required a Policyholder to sign a release in favor of Conseco Life, and some Policyholders chose this option.  The named Plaintiffs obtained authority to distribute a notice to Policyholders in connection with the RSA.

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    In October 2010, after entering into the RSA, Conseco Life began implementing increases in

2  COI and expense charges for the Policies (the "2010 COI Rate and Expense Charge Changes").[2]

3    On October 6, 2010, this Court certified a nationwide class of Policyholders, but denied the

4  motion to certify a California subclass of Policyholders.  [DE #111].  By that date, the Parties had

5  already engaged in extensive discovery in the Action, and discovery continued into late 2012.

6    In November 2010, Conseco Life moved to preclude from the certified class of Policyholders

7  those who had signed releases as provided for in the RSA.  On December 22, 2010, the Court denied

8  Conseco Life's motion without prejudice, but certified a subclass of Policyholders who had signed

9  releases in exchange for receiving relief under the RSA.  [DE #138].

10    In July 2011, Conseco Life moved to decertify the nationwide class of Policyholders that the

11  Court had certified, based on the United States Supreme Court's decision in *Wal-mart Stores, Inc. v.*

12  *Dukes*, 131 S.Ct. 2541 (2011).  In December 2011, the Court granted Conseco Life's motion in part,

13  decertifying from the nationwide class former Policyholders.  [DE #253].

14    In March 2012, a motion for a preliminary injunction was made on behalf of certain

15  Policyholders whose Policies were then In Force to preclude Conseco Life from continuing to deduct

16  COI charges from those Policyholders' accumulation accounts in accordance with the 2010 COI

17  Rate and Expense Charge Changes.  On July 17, 2012, the Court granted a preliminary injunction as

18  to approximately 100 Policyholders, specifically those who faced a depletion of their accumulation

19  accounts before the end of 2013, but denied the motion as to the remainder of the Policyholders for

20  whom injunctive relief had been sought.  [DE #369].

21    By the close of discovery in 2012, Conseco Life had produced nearly one million pages of

22  documents to Plaintiffs, the Parties had designated expert witnesses and the Parties had taken

23  depositions of more than 20 fact and expert witnesses.

24

25  [2] For regulatory reasons, these 2010 COI Rate and Expense Charge Changes have not been applied
26  to Policies issued in Minnesota, so the proposed Settlement Classes exclude Policyholders who own
   only Policies issued in that State.  Similarly, another block of life insurance policies known as
27  "Lifetrend IV, Series '97" have not been subject to these COI Rate and Expense Charge Changes, so
   Policyholders who own only those policies are also excluded from the proposed Settlement Classes,
28  for the avoidance of any doubt.

Late in 2012, both sides moved for summary judgment, in whole or in part, and Conseco Life moved to decertify both the nationwide class and the subclass that the Court had certified on December 22, 2010.  On January 29, 2013 (the "January 29 Order"), the Court denied each of Conseco Life's motions and denied Plaintiffs' motions for partial summary judgment, including each of their core and most significant theories of liabilities, except granted one small and peripheral partial summary judgment theory of the Plaintiffs, namely, that Conseco Life's use of "duration" in the determination of the 2010 COI Rate and Expense Charge Changes – that is, how long a Policyholder had owned a Policy – breached the Policy terms.  [DE #451].

### C.    The Mediation and Settlement Negotiations

In early 2013, the Parties commenced settlement discussions.  The Parties had jointly retained Judge Infante (ret.) to mediate their settlement discussions.  As part of the mediation with Judge Infante and subsequent due diligence work, Class Counsel and its experts reviewed materials Conseco Life produced to them concerning Conseco Life's capital adequacy, financial condition and solvency.  The Parties vigorously debated the merits of the Action, exchanged offers and counteroffers and negotiated extensively.  Thereafter, they continued to negotiate, both through discussions among themselves, and through periodic telephonic mediation sessions with Judge Infante.

After the development of the extensive record Class Counsel obtained in discovery, their additional investigation and evaluation of facts and law relating to matters alleged in the Action, their investigation and evaluation of Conseco Life's capital adequacy, financial condition and solvency, including through the use of experts, and through the guidance of Judge Infante, the Parties ultimately reached agreement on a Settlement that is memorialized in the their Stipulation.

## II.    THE UNIFORMITY CLAUSE

The Policies contained what we will refer to as the "Uniformity Clause," which provides that any change in COI rates and charges for the Policies, including any changes in COIs flowing from the Settlement here, must be accomplished with a specified uniformity (emphasis added):  "The monthly [COI] rates, and any change in the monthly [COI] as provided herein, *are and will be determined on a uniform basis* for insureds of the same age, sex and classification for all policies

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

1  issued with like benefits and provisions." During settlement discussions, the Parties expressly

2  acknowledged that any deal would necessarily involve adherence to this Uniformity Clause. Indeed,

3  Conseco Life could be whipsawed if In Force Policyholders are permitted to exclude themselves

4  from the Settlement and seek COI rate or charges for the Policies in collateral litigation that are

5  inconsistent with the COI rates and charges that will be applied to In Force Policies resulting from

6  this Settlement. Absent the uniformity that flows from a mandatory, non-opt-out Class of In Force

7  Policyholders, Conseco Life has no assurance that a Settlement will provide uniformity in

8  conformity with this Clause, or that it will create the financial stability Conseco Life requires to

9  avoid the IDOI's assumption of supervision over it.

10  **III.  CONSECO LIFE'S PRECARIOUS FINANCIAL CONDITION**

11         In both this action and another action against Conseco Life that reached a class-wide

12  settlement a couple of months ago, entitled *Yue v. Conseco Life Insurance Company*, Case No. 2:11-

13  cv-09506-DSF-SH (C.D. Ca.) (the "*Yue* Action"), Conseco Life has made clear that its financial

14  stability is precarious without COI rate relief for certain blocks of life insurance policies that include

15  the Policies here. Conseco Life inherited these unprofitable blocks of policies in an acquisition of

16  Massachusetts General Life Insurance Company and Philadelphia Life Insurance Company from

17  Life Partners Group in 1996. These policies include both the Policies here and those at issue in the

18  *Yue* Action. Conseco Life's operating results deteriorated as a result of this acquisition, leading to

19  the IDOI's ongoing regulatory examination of Conseco Life's financial condition.

20         In the *Yue* Action, Conseco Life acknowledged that, if that court were to issue an injunction

21  prohibiting Conseco Life from implementing COI rate changes for the policies at issue there, "the

22  regulatory consequences that would flow to Conseco from the occurrence of the [resulting

23  regulatory] Event would affect all of Conseco Life's contracts and contract owners, and not just the

24  owners of the [policies at issue there]." [*Yue* DE # 44, ¶10].

25         In the mediation proceedings, Plaintiffs demanded and obtained voluminous data about

26  Conseco Life's financial condition, including not only the same materials that were provided in the

27  *Yue* Action, but also additional data. Plaintiffs retained the same financial expert that advised

28  plaintiffs in the *Yue* Action, and he advised Plaintiffs and Class Counsel on Conseco Life's financial

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

condition and helped them evaluate Conseco Life's financial and regulatory risks here, both under the potential Settlement and continuing litigation scenarios.  Based on this data, evaluation and advice, the Parties ultimately concluded their Settlement negotiations and finalized the Stipulation.  Ultimately, Conseco Life was not willing to offer any more concessions on the Settlement benefits other than what is reflected in the Settlement, and, even then, granted those concessions only on the understanding that Policyholders who chose the Settlement option under which their Policies would remain In Force would be prospectively subject to uniform COI rates and expense charges so that Conseco Life would not be subject to conflicting claims for COI rate relief.

With expert assistance, Class Counsel has been able to confirm Conseco Life's financial and capital adequacy constraints and see the need for uniform COI rates prospectively.  Given the risk that threatened regulatory action could produce higher COI rates and/or expense charges than the 2010 COI Rate and Expense Charge Changes at issue here, Class Counsel and Plaintiffs ultimately agreed to the Settlement based on the significant benefits available to Class Members, while reaching a level of assurance, via expert consultation, that the Settlement would not likely lead Conseco Life to financial ruin or draconian regulatory consequences.

These conclusions were supported by the declarations that Mark E. Billingsley, Conseco Life's Appointed Actuary, and Steven T. Foster, the former Virginia Insurance Commissioner and President of the National Association of Insurance Commissioners, recently submitted in connection with the *Yue* Action.[3]  *See* Exs. A and B to Aerni Decl.  These Declarations explain Conseco Life's current financial peril and the need to strike a balance between providing Class Members with substantial benefits, on the one hand (as the Settlement here does), while permitting Conseco Life to charge sustainable COI rates and expense charges, on the other, to minimize the risk of future cataclysmic financial impacts to Conseco Life and Class Members.[4]

---

[3] For the Court's convenience, the Billingsley and Foster Declarations [*Yue* Action DE ##153-1 and 152-2] are attached as Exhibits A and B, respectively, to the Declaration of John M. Aerni in Support of Joint Motion to Preliminarily Approve Proposed Class Action Settlement ("Aerni Decl.") that is being filed contemporaneously with this Joint Motion.

[4]  As reflected in the Billingsley and Foster Declarations, potential regulatory actions by the IDOI include rehabilitation proceedings in Indiana State Court.  [Ex. A to Aerni Decl., ¶ 7]; [Ex. B to Aerni Decl., ¶ 14].  If that were to occur, a Rehabilitator appointed by the IDOI could assume control of Conseco Life's assets and reform the Policies.  *Id.*; *see also* Ind. Code §§ 27-9-3-2, 27-9-3-3 and

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**IV.    SUMMARY OF THE SETTLEMENT**

    **A.    The Settlement Benefits**

        To avoid repetition, we summarize the Settlement benefits only briefly, because Plaintiffs' Memorandum of Law in Support of the Parties' Joint Motion ("Pltf. Memo")  discusses these benefits at greater length.  The Settlement provides most Class Members with the option to choose among several categories of Settlement benefits so that each Class Member can choose the benefit that best suits his or her needs.  Where Class Members are provided with optionality, the levels of their Settlement benefits depend on whether a Policyholder received benefits under the RSA as well. Stipulation § IV.  Class Members who received benefits under the RSA and signed a release in exchange receive lower levels of Settlement benefits than those who did not due to (a) their having received benefits under the RSA previously, in contrast to those Class Members who took nothing under the RSA, and (b) their increased risk of not prevailing on the merits due to their having signed the release.

        **1.    Policyholders Who Took the RPU Under the RSA**

        The only Class Members who are not provided with a choice of benefits under the Settlement are those limited number of Policyholders who, several years ago, had elected to convert their Policies to the RPU coverage that Conseco Life made available under the RSA.  Because these Class Members had already made their preferred choice of a benefit then, and because that conversion to the RPU coverage several years ago was irrevocable, those Class Members have but one Settlement benefit available to them, namely, a 5% increase in the RPU coverage that they elected under the RSA.  Stipulation § IV(C).  The remaining Class Members, which is most of them, are given a choice among the following three Settlement benefits that address their differing needs, but each of which provides them with significant value:

---

27-9-3-9.  The Rehabilitator could modify the Policies and impose COI rates and expense charges even higher than the 2010 COI Rate and Expense Charge Changes (or could even terminate the Policies), regardless of decisions by this Court.  [Ex. B to Aerni Decl., ¶ 21].  And, the Rehabilitator could take those adverse actions as to other policies Conseco Life issued, and not just the Policies here.  *Id.*

- <u>The Cash Surrender Payment Option</u> – for Policyholders who no longer need or seek life insurance coverage from Conseco Life;

- <u>The Accidental Death Benefit Option</u> – for Policyholders who wish to keep their existing Policies In Force *and* receive an additional valuable coverage, at no cost to the Policyholder; or

- <u>The Enhanced Reduced Paid-up Policy Benefit Option</u>: for Policyholders who wish to maintain some life insurance coverage, but do not wish to pay any future premiums.

We address each benefit in turn.

### 2.      The Cash Payment Surrender Option

Under this option, Class Members, including those with Lapsed Policies, are permitted to turn back the clock to the period before Conseco Life implemented the 2010 COI Rate and Expense Charge Changes and receive increased cash values in exchange for the surrender of their Policies. The extent of a Class Member's increase in cash value under this Option depends on (a) the face amount of the Class Member's Policy as of September 2008, before Conseco Life sent any notices of COI rate changes, and (b) whether the Class Member received any benefits under the RSA.  Those Class Members who previously received other benefits under the RSA will receive the least increase in their cash values upon surrender.  Upon surrender, their current Policy cash value is increased by the sum of all COI charges that have been deducted from their Policies since September 30, 2010, plus all interest credits that would have accrued to their Policy's cash value since that date had COI charges not been deducted.  Class Members who did not receive any benefits under the RSA receive an even greater cash payment upon surrender, specifically, the same cash payment as those who did receive benefits under the RSA, but with an additional 10-20% increase in cash value tacked on, depending on their Policy's face amount as of September 2008.  *See* Stipulation §§ II(30) (definition of "RAV"), IV(A)(Option 1) and IV(B)(Option 1).

### 3.      The Accidental Death Benefit Option

Under this option, Class Members, including those with Lapsed Policies, who desire to keep their Policies In Force and are willing to be subject, prospectively only, to the 2010 COI Rate and Expense Charge Changes, may do so, and will receive in addition, at no cost to themselves, ten years

9

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

1   of Accidental Death Benefit coverage.[5]   As is the case with the other Settlement benefit Options, the

2   amount of the additional benefit will depend on whether the Class Member received any benefits

3   under the RSA.  Those Class Members who previously received other benefits under the RSA will

4   receive the additional, free ten years of coverage at the face amount that is 80% of the face amount

5   of their Policy as of September 2008, which was before Conseco Life sent any notices of COI rate

6   changes.  Class Members who did not previously receive other benefits under the RSA will receive

7   the additional, free ten years of coverage at the face amount that is 150% of the face amount of their

8   Policy as of September 2008.   *See* Stipulation §§ IV(A)(Option 3) and IV(B)(Option 3).

### 4.       The Enhanced Reduced Paid-up Policy Benefit Option

10          Under this option, Class Members, including those with Lapsed Policies, who want to retain

11   some life insurance coverage with Conseco Life, but do not wish to pay future premiums, can take

12   advantage of the same type of  "in-between" RPU coverage that the RSA offered them, but on much

13   more attractive terms than was available under the RSA.  Their election to convert their Policies

14   under the Settlement's Enhanced Reduced Paid-Up Policy Benefit permits them to maintain a death

15   benefit coverage, albeit at a reduced face amount, but without having to pay any future premiums.

16          This Settlement Option is referred to as the "Enhanced" RPU because Conseco Life is

17   increasing the face amount of this Settlement benefit relative to the face amounts of coverage that

18   were available under the RSA.  As is the case with the other Settlement benefit Options, the amount

19   of the Enhanced RPU coverage benefit will depend on whether the Class Member received any

20   benefits under the RSA.  Those Class Members who previously received other benefits under the

21   RSA will, under this Settlement Option, receive a 4% Enhancement to the face amount of their RPU

22   coverage as compared to the face amount of coverage that was provided under the RSA.  Class

23   Members who did not previously receive other benefits under the RSA, however, will receive an

24   Enhancement to the RPU coverage of 10-15%, as compared to the face amount of coverage that was

25

26   [5] This additional, free Accidental Death Benefit coverage will cease before expiration of the 10-year
     coverage period where Class Members voluntarily surrender their Policies (including "Overloan"
27   situations where they take loans against the Policies that exceed the Policies' cash value), and, in
     only the case of Class Members who previously received benefits under the RSA, where the Class
28   Member lets the Policy lapse.  *See* Stipulation §§ IV(A)(Option 3) and IV(B)(Option 3)

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

1    provided under the RSA.  Whether the Enhancement will be 10%, 15% or something in between will

2    depend on the  Policy's face amount as of September 2008.  *See* Stipulation §§IV(A)(Option 2) and

3    IV(B)(Option 2).  The converted Enhanced RPU Policy Benefit will have a cash value associated

4    with it should Class Members elect to surrender the coverage after they elect it.  *Id.*

5         **B.    The Economic Value of the Settlement to the Classes**

6         The Settlement provides benefits to Class Members that have an aggregate value of

7    approximately $27 million (excluding administrative costs and attorneys' fees and expenses).  *See*

8    Declaration of Kent Barrett, submitted contemporaneously with this Joint Motion.

9         **C.    Release**

10        In return for providing this range of Settlement benefits to the Classes, Conseco Life receives

11   a release that is set forth in full in the Stipulation §§II(33) (definition of "Released Conduct") and X.

12   Because the Effective Date for all of the Settlement relief Options will be the date that the District

13   Court issues the Order Approving Settlement and Final Judgment, a Class Member's election of its

14   Settlement benefit will be irrevocable as of that Date and will not be reversed if the Court's approval

15   of the Settlement is reversed on appeal.  Stipulation §IV(D)(8).

16        **D.    Expeditious Implementation of the Settlement**

17        If the Settlement is approved by this Court after the Fairness Hearing, Conseco Life will

18   implement each of the Settlement Options and make them effective promptly, regardless of any

19   appeals that might be taken from the Court's approval of the Settlement.  Conseco Life is amenable

20   to bearing the risk that approval of the Settlement will be reversed on appeal.  Stipulation §§ IV(D).

21   Absent this provision, many Class Members might find that uncertainty surrounding any appeals

22   from this Court's approval of the Settlement would deter them from electing the Settlement benefit

23   Option that is best suited to their needs, due to a concern that their receipt of the benefit of their

24   choice could be reversed on appeal.

25        **E.    The Settlement Classes**

26        In accordance with Fed. R. Civ. P. 23(b)(1) and (b)(2), the Settlement proposes a mandatory,

27   non-opt out Class of In Force Policyholders.  *See* Stipulation § III.  The establishment of a

28   mandatory, non-opt-out Class of In Force Policyholders is critical to Conseco Life.  Absent the

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

11

**Winston & Strawn LLP**
101 California Street
San Francisco, CA  94111-5802

1    mandatory nature of this Settlement Class, Conseco Life will be at risk that the COI rates for the In

2    Force Policies will not take effect uniformly for all such Policies and that opt-out Policyholders

3    could sue to impose alternative COI rate scales.

4         This risk of lack of uniformity in the prospective COI rate scales for the Policies is

5    potentially ruinous for all stakeholders.  Conseco Life's financial stability – and thus the policy

6    benefits of not only all Policyholders here, but also all of its contract owners generally – are at risk if

7    Conseco Life is subject to inconsistent adjudications as to the COI rate scales that apply to the

8    Policies prospectively.  Moreover, the risk that the Policies might be subject to inconsistent

9    adjudications creating non-uniform COI rates prospectively could potentially subject Conseco Life

10   to (a) claims for breach of the Uniformity Clause in the Policies, and (b) the risk that the IDOI could

11   assume supervision of Conseco Life.  The IDOI's current position of not objecting to the Settlement

12   could evaporate if the mandatory non-opt-out Settlement Class for In Force Policies is not approved

13   and the IDOI is faced with the prospect of Conseco Life's being subject to inconsistent adjudications

14   as to the Policies' prospective COI rate scales.

15        This need for uniformity justifies the approval of a mandatory, non-opt-out Settlement Class.

16   *See Linney v. Cellular Ala. P'ship*, No. C-96-03008, 1997 WL 450080, at *2 (N.D. Cal. July 18,

17   1997).

18        The Settlement also proposes a Rule 23(b)(3) opt-out Class of Lapsed Policyholders, that is,

19   Class Members whose Policies Lapsed and who choose not to have their Policies reinstated.  *See*

20   Stipulation § III.

21                                   **ARGUMENT**

22   **I.    THE COURT SHOULD CONDITIONALLY CERTIFY SETTLEMENT CLASSES**

23   **       AND PRELIMINARILY APPROVE THE SETTLEMENT**

24        Federal policy strongly favors the settlement of class action suits.  *In re Syncor ERISA Litig.*,

25   516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements,

26   particularly where complex class action litigation is concerned").  Indeed, there is an "overriding

27   public interest" in settling class actions.  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir.

28   1989) (citing *Von Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    Preliminary approval of a settlement is the first step in a two-step process to determine

2    whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion.

3    *Cervantez v. Celestica Corp.*, No. EDCV 07-729, 2010 WL 2712267, at *2 (C.D. Cal. July 6, 2010).

4    "At the preliminary approval stage, the court need only review the parties' proposed settlement to

5    determine whether it is *within the permissible range of possible approval*." *Campbell v. First*

6    *Investors Corp.*, No. 11-CV-0548, 2012 WL 5373423, at *4 (S.D. Cal. Oct. 29, 2012) (citing *Alberto*

7    *v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008)) (emphasis added).  Hence, a "full fairness

8    analysis" is unnecessary at this stage.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008);

9    *see also* Manual for Complex Litigation ("Manual") § 21.362 (Fourth) (2004).[6]  The Court's review

10   is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

11   of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement

12   taken as a whole is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Serv.*

13   *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

14   Here, ample reasons exist to notify the Class Members of the proposed Settlement and

15   proceed with a fairness hearing.  To begin with, the presence of a highly skilled mediator

16   demonstrates the lack of collusion and supports a finding that the settlement is fair.  *See In re Sturm,*

17   *Ruger & Co., Inc. Sec. Litig.*, No. 3:09cv1293, 2012 WL 3589610, at *4 (D. Conn. Aug. 20, 2012)

18   ("Here, the settlement was reached by experienced, fully-informed counsel after arm's length

19   negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption

20   that the settlement was fair, reasonable and adequate").

21   Moreover, the views of Class Counsel that the settlement is fair is entitled to "great weight."

22   *See Rodriquez v. D.M. Camp & Sons*, No. 1:09-cv-00700, 2012 WL 6115651, at *8 (E.D. Cal. Dec.

23   7, 2012) (plaintiffs' counsel's recommendation that preliminary approval is warranted is accorded

---

24   [6]  The *Manual* (§ 21.632) summarizes the preliminary certification criteria:

25       If the proposed settlement appears to be the product of serious,
         informed, non-collusive negotiations, has not obvious deficiencies,
26       does not improperly grant preferential treatment to class
         representatives or segments of the class, and falls within the range of
27       possible approval, then the court should direct that the notice be given
         to the class members of a formal fairness hearing.

28

---

13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    "significant weight" because counsel is "experienced in class action litigation" and counsel is "most

2    closely acquainted with the facts of the underlying litigation") (citations and quotations omitted);

3    *Adoma v. Univ. of Phoenix*, No. CIV. S-10-0059, 2012 WL 665114, at *9 (E.D. Cal. Dec. 20, 2012)

4    (same); *Campbell*, 2012 WL 5373423, at *6 ( "[c]ounsel on both sides believe that this is a fair and

5    reasonable settlement.  Accordingly, this factor weighs in favor of preliminary approval.").  Indeed,

6    "[t]here is usually a presumption of fairness when a proposed class settlement, which was negotiated

7    at arm's length by counsel for the class, is presented for approval."  *In re Zurn Pex Plumbing Prods.*

8    *Liab. Litig.*, No. 08-MDL-1958, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012) (quoting

9    *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002)).

10          The Settlement is undeniably fair and certainly within the "range of possible approval."  The

11   Settlement provides substantial benefits to Policyholders, valued at approximately $27 million.  The

12   Settlement benefits available to Class Members depend on whether the Class Member previously

13   received the RPU coverage under the RSA.  Class Members who received the RPU coverage under

14   the RSA, in exchange for giving Conseco Life a release, will receive increased coverage, in the form

15   of an Enhanced Reduced Paid-Up Policy Benefit under this Settlement.  Class Members who did not

16   receive RPU coverage under the RSA, however, will have a panoply of Settlement benefits available

17   to them, including: (a) keeping their Policies In Force, but receiving ten years of additional

18   Accidental Death insurance *at no cost to the Class Member*; (b) surrendering their Policies for cash

19   in amounts significantly exceeding the Policies' current cash value; or (c) converting their Policies to

20   Enhanced Reduced Paid-Up Policies, for which no further premiums will be due or accepted, and

21   whose death benefits will significantly exceed the analogous RPU coverage that was provided under

22   the RSA.  *See* Stipulation § IV.

23          The Cash Surrender Payment and Enhanced Reduced Paid-Up Policy Benefit Options –

24   options (b) and (c) in the paragraph above and Options 1 and 2 in Section IV of the Stipulation – are

25   both significant because (i) they roll back the clock and base the Settlement benefits to Class

26   Members on Policy values when they were at their highest, that is, before October 2010, when

27   Conseco Life increased the COI and expense charge deductions for the Policies, and (ii) then

28   enhance those Settlement benefits by providing Class Members with additional interest credits

14

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

and/or other enhancements.  *See* Stipulation §§ II(30) (definition of "RAV"), IV(A)(Options 1 and 2) and IV(B)(Options 1 and 2).

The Settlement provides uniform COI rates for Policyholders, both those who are In Force and Lapsed Policyholders who opt to have their Policies reinstated.  There are no onerous conditions for eligibility for the various and valuable Settlement relief Options, and procedures for participating in the Settlement benefits are straightforward.  *See Manual* § 21.61.  The Settlement relief is so substantial that it is undoubtedly fair, adequate and reasonable.

Moreover, the Settlement avoids the substantial risk to the Classes that Conseco Life would prevail on the merits or that any later appeals would prove successful.  Conseco Life has also agreed to waive its opposition to class certification, which otherwise would have continued, and to pay the expenses related to notifying the class, which are additional significant benefits to the Classes.  *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 348 (N.D. Ill. 2010) (finding that defendant's consent to certification and agreement to pay notice costs are significant settlement benefits that should be considered).

Perhaps most importantly, the Settlement, while conferring great value on the Classes and imposing substantial burdens on Conseco Life, minimizes the risk of regulatory action that would have been harmful to not only Conseco Life, but also all Policyholders here.

## II.    THE COURT SHOULD CERTIFY TWO SETTLEMENT CLASSES

The Parties seek to certify two nationwide settlement Classes as set forth in the Stipulation § III: (1) a Class of In Force Policyholders that should be certified as a mandatory settlement class under Fed. R. Civ. P. 23(b)(1) and (b)(2); and (2) a Class of Lapsed Policyholders that should be certified as a settlement class under Fed. R. Civ. P. 23(b)(3).  Both Settlement Classes should be certified.[7]

---

[7]  In many policyholder class actions, courts have found that certification under either (b)(2) or (b)(3) is inappropriate because individualized legal and factual issues, including the divergence of state laws, the need to consider extrinsic evidence in the event of an ambiguity, statute of limitation defenses, accompanying discovery and accrual rules, affirmative defenses of waiver, etc., predominated over common legal and factual issues, and because the proposed class lacked cohesiveness for similar reasons.  These concerns are not relevant here because Conseco Life is agreeing, for settlement purposes only, not to invoke these bases for opposing class certification.

## A.    The Class of In Force Policyholders

The Parties agree that the Class of In Force Policyholders should be certified as a mandatory class under Fed. R. Civ. P. 23(b)(1) and (b)(2).  Unlike (b)(3) classes, opt-out rights do not ordinarily attach to (b)(1) and (b)(2) classes.  *Colesberry v. Ruis Food Prods., Inc.*, No. CV F 04-5516, 2006 WL 1875444, at *5 (E.D. Cal. June 30, 2006).  Although Rule 23(c)(2)(B) requires that (b)(3) class members be provided with the right to opt-out, no such requirement exists under Rule 23(c)(2)(A), which governs notice requirements for (b)(1) and (b)(2) classes.

Settled law holds that no constitutional or other right to opt-out attaches to (b)(1) and (b)(2) classes.  *Dosier v. Miami Valley Broad. Corp.*, 656 F.2d 1295, 1299 (9th Cir. 1981) ("Nor does due process require the unnamed plaintiffs be given a chance to opt out of Rule 23(b)(2) class actions") (internal citations omitted); *Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977) ("When appropriate notice and opportunity [to be heard] have been provided, preclusion of the opt-out right in a [Rule 23](b)(1) settlement does not violate due process"); *see also*, *e.g.*, *In re Am. Family Enters.*, 256 B.R. 377, 416-17 (D.N.J. 2000) (rejecting requests for exclusion from properly certified Rule 23(b)(2) settlement class); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 180 (E.D. Pa. 1997) (rejecting objections to certification of (b)(1) settlement class because "certification of a mandatory class under Rule 23(b)(1)(B) does not violate due process").  The Class of In Force Policyholders should be certified under (b)(1) and (b)(2), for many reasons.

*First*, Plaintiffs have always sought injunctive and declaratory relief. [DE #51].  And, the Court here certified classes under (b)(2), precisely because Plaintiffs sought relief that was primarily injunctive or declaratory.  [DE #111, pp. 15-18; DE #138, p. 6; DE #253].  It is sensible, given the exclusive certification of classes under (b)(2) during the almost five-year history of this Action, that the Class of In Force Policyholders be certified under (b)(2).  Moreover, because this Court previously certified (b)(2) classes in this Action, this Court may rely upon its previous certification orders as a basis to certify a settlement class, without the need to engage in a new, independent class certification analysis.  *See Satchell v. Fed. Express Corp.*, Nos. C03-2659, C03-2878, 2007 WL 1114010, at *3 (N.D. Cal. Apr. 13, 2007) (certifying a (b)(2) settlement class based upon the court's certification, upon plaintiffs' motion, of a (b)(2) class two years earlier in the case).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*Second*, Rule 23(b)(2) requires that the defendant "acted or refused to act on grounds that apply generally to the class," and plaintiffs seek "final injunctive relief" which is appropriate for the class as a whole.  That is, a (b)(2) class is certifiable where the proposed class "does not contemplate or require the resolution of individual issues," *Z.D. v. Group Health Cooperative*, No. C11-1119RSL, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012), and the defendant has engaged in a "pattern or practice" that generally applies to the entire class, *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  That is exactly the case here.

Plaintiffs complain of Conseco Life conduct – the implementation of the uniform 2010 COI Rate and Expense Charge Changes – that does not entail the resolution of individual issues.  Thus, according to Plaintiffs, Conseco Life has acted in a manner generally applicable to each Member of the Class of In Force Policyholders.  And, the relief Plaintiffs seek is primarily injunctive and declaratory relief intended to prevent the full implementation of those uniform COI Rate and Expense Charge Changes.  The injunctive relief in the proposed Settlement similarly is designed to ensure the maintenance of uniform COI Rates and Expense Charges for In Force Policyholders (those already In Force and those Lapsed Policyholders who will obtain reinstatement under the Settlement).  The relief Plaintiffs have sought here at every turn fits squarely within the bounds of Rule 23(b)(2).

*Third*, Rule 23(b)(1) classes are appropriate to eliminate the risk that a defendant could be subject to multiple lawsuits that could, if adjudicated separately, lead to "incompatible standards of conduct."  *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973).  The (b)(1) class applies "in those situations in which the defendant by reason of the legal relations involved cannot as a practical matter pursue two different courses of conduct."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1194 (9th Cir. 2001).  A (b)(1) class is certainly warranted where, as here, an insurer's conduct must be uniform with respect to a class of policyholders.  *Mitchell-Tracey v. United Gen. Tile Ins. Co.*, 237 F.R.D. 551, 560 (D. Md. 2006) (certifying a (b)(1) class where the policyholders complained that the insurer improperly collected higher premiums than permitted).

Here, the Uniformity Clause requires Conseco Life to apply COI rate scales to Policyholders uniformly.  If Members of the proposed Class of In Force Policies are permitted to opt out, they

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

17

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

could sue Conseco Life and seek to impose on it COI rate scales that are inconsistent with the COI rate scales that will apply to Policyholders under the Settlement.  To ensure that the Uniformity Clause is applied as intended, that is, uniformly, the Class of In Force Policyholders should be certified under Rule (b)(1), as well as (b)(2), with no right to opt out.

Conseco Life (and Policyholders) could face a number of dire consequences if the Court allows Members of the Class of In Force Policyholders to opt out and thus commence their own suits:[8]  (a) Conseco Life could be subject to inconsistent adjudications as to the uniform COI rates that should apply to the Policies; (b) Conseco Life could face claims for breach of the Policies' Uniformity Clause for complying with one of the potentially inconsistent adjudications; and (c) Conseco Life and all Policyholders could be faced with the IDOI's assuming supervision over the Company and impairing Policyholders' rights under the Policies if Conseco Life is unable to achieve the uniform rate relief necessary to stabilize its financial condition.

Under the proposed Settlement, the remedies provided to the Class of In Force Policyholders eliminate the risk of incompatible standards of conduct through the uniform application and implementation of COI rate scales.  The Settlement's provision for mandatory participation in the Class of In Force Policyholders will ensure that all such Policyholders are treated uniformly and that Conseco Life will be held to only one standard of conduct.  These benefits will be weakened if the Court permits Members of this Class to opt out.

*Fourth*, given its current financial condition, Conseco Life should not be subjected to the distraction and expense of individual copycat lawsuits brought by opt-outs from a Class of In Force Policyholders aimed at creating chaos by preventing the implementation of the uniform COI rate scales, in violation of the Uniformity Clause.

### B.      The Class of Lapsed Policyholders

Fed. R. Civ. P. 23(b)(3) ordinarily requires that common questions of fact and law predominate over questions of fact and law affecting only individual members of the proposed class,

---

[8]  This risk of multiple lawsuits and inconsistent outcomes is hardly academic, as is apparent from the multiple suits that were filed challenging the October 2008 Notice and 2010 COI Rate and Expense Charge Changes, which were consolidated in this multidistrict litigation for pre-trial purposes.

that litigation of the class claim be manageable and that a resolution of the action by class treatment

be superior to other available methods for a fair and efficient adjudication of the action.  When an

action is settled, and not litigated, a court need not consider the manageability issues that might

otherwise be presented by litigation of a nationwide class action.  *Amchem Prods. v. Windsor*, 521

U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  For purposes of this

Settlement only, a resolution of the action in the manner proposed by the Stipulation is superior to

other available methods for a fair and efficient adjudication of this action.

Here, Members of the proposed Class of Lapsed Policyholders are permitted to opt out in the

event that some of them elected to have their Policies Lapse, or were at least not adverse to having

their Policies Lapse, and have no interest in obtaining either reinstatement of their Policies under the

Settlement or the other forms of relief available under it.  Members of the Class of Lapsed

Policyholders who choose Policy reinstatement will be bound thereafter by same uniform COI rate

scales that will bind Members of the Class of In Force Policyholders, but those who do not choose

the reinstatement option (or those who opt-out) will not be in any position to threaten the uniform

COI rate scales upon which the need for a non-opt-out Class of In Force Policyholders is based.

## III.    THE VACATUR OF CERTAIN ORDERS IS WARRANTED

A district court has the inherent power to vacate its own interlocutory orders so long as it

retains jurisdiction over the case and "for cause seen by it to be sufficient."  *City of Los Angeles,*

*Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).  This inherent power

derives not from the Federal Rules of Civil Procedure, but from common law.  *Id.* at 886-87.

Under the Settlement, the Parties are jointly requesting the vacatur of two interlocutory

orders of the Court.  *First*, the Parties are seeking to vacate the July 17, 2012 Order under which the

Court granted preliminary injunctive relief to approximately 100 plaintiffs.  Stipulation § XIII(A).

Vacatur of this Order is essential if relief under the Settlement Options is to be provided to those 100

or so plaintiffs that are the beneficiaries of the preliminary injunction.  Absent vacatur of that Order,

those plaintiffs will not be permitted to obtain relief under Settlement benefit Options 1 or 2, as those

Options are inconsistent with the terms of July 17, 2012 Order.  And, as mentioned above, if the

Court approves the Settlement in accordance with the terms of the Stipulation, Conseco Life will be

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**

19

CONSECO LIFE'S MPA ISO JOINT MOTION TO PRELIMINARILY APPROVE PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 3:10-MD-02124-SI; MDL NO: 2124

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1 providing benefits under those Settlement Options to Class Members, including this group of 100 or

2 so plaintiffs, on an expedited basis.[9]  *Id.*; *see also* Stipulation § IV(D).

3      *Second*, the Parties are seeking to vacate the January 29 Order under which the Court granted

4 that part of Plaintiffs' motion for partial summary judgment that contended that Conseco Life's use

5 of "duration" in the determination of the 2010 COI Rate and Expense Charge Changes – that is, how

6 long a Policyholder had owned a Policy – breached the Policy terms.  In that Order, the Court also

7 ruled that Policyholders who signed a release in exchange for receiving relief under the RSA were

8 not barred from bringing certain other claims against Conseco Life.  [DE #451].  Absent vacatur of

9 this Order, the Parties' Settlement will deprive Conseco Life of any opportunity to seek appellate

10 relief in connection with this Order, leaving Conseco Life at risk that litigants in other actions may

11 claim that the doctrine of issue preclusion or similar doctrines may bind Conseco Life or preclude it

12 from challenging the rulings encompassed in the Order.  The Parties are in agreement that this Order

13 should be vacated to prevent this potential prejudice that Conseco Life might face by entering into

14 this Settlement and its accompanying inability to pursue appellate relief from the January 29 Order.

15 *See* Stipulation § XIII(A).

16      In other cases involving the vacatur of final judgments, where the standards for vacatur are

17 much more stringent, courts have nonetheless granted vacatur due to the court's sensitivity to the

18 settling parties' risk of prejudice in the form of facing issue preclusion claims.  In *Am. Games, Inc. v.*

19 *Trade Prods., Inc.*, 142 F.3d 1164 (9th Cir. 1998), for example, the Ninth Circuit sets forth the more

20 stringent test courts should consider in requests to vacate final judgments (as opposed to the

21 interlocutory Orders at issue here), and one of those factors is "the parties' desire to avoid any

22 potential preclusive effect."  *White v. Shen*, No. C09-0989, 2011 WL 2790475, at *1 (N.D. Cal. July

23 13, 2011), provides an example of where this Court granted vacatur of a final judgment based on this

24 factor, among others.  Likewise, in *Persistence Software, Inc. v. The Object People, Inc.*, 200 F.R.D.

25

26 _____

[9] As part of the Settlement, the Parties have already requested that the Ninth Circuit dismiss, without
27 prejudice to reinstatement, Conseco Life's Ninth Circuit appeal of the Court's July 17, 2012 Order
and obtained such a dismissal so that this Court can later vacate the preliminary injunction and
28 provide to such plaintiffs relief in the form of whatever  Settlement Option they ultimately choose.

1    626, 627 (N.D. Cal. Mar. 7, 2001), this Court noted that the prejudice settling parties might face

2    from the potential preclusive effect of a final judgment militated in favor of vacating that judgment.

3          Here, the Parties ask that, in the Order preliminarily approving the Settlement, the Court

4    indicate its intention as to whether it will grant the Parties' request to vacate these two Orders.

5    Stipulation § XII(B).

6    **IV.    THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION**

7          Preliminary injunctions to effectuate class action settlements are often necessary and

8    appropriate in aid of the Court's jurisdiction to ensure the uniform outcomes for, and the integrity of,

9    the class.  Injunctions are commonly granted under these circumstances under the authority of the

10   All Writs Act, 28 U.S.C. § 1651(a).  *See, e.g., Hanlon*, 150 F.3d at 1025 (9th Cir. 1998) ("The

11   federal court had the power to issue an injunction against continued state proceedings under the All

12   Writs Act… Fed. R. Civ. P. Rule 23(d) vests a district court with the authority and discretion to

13   protect the interests and rights of class members and to ensure its control over the integrity of the

14   settlement process."); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985); *In re Zurn Pex*

15   *Plumbing Prods Liab. Litig.*, 2012 WL 505810, at *12-13 (collecting cases).

16         The risk of parallel lawsuits that threaten to disturb a uniform class-wide settlement provides

17   ample grounds for the issuance of such a preliminary injunction because the injunction is "necessary

18   or appropriate in aid of" the Court's jurisdiction.  *See Baldwin-United*, 770 F.2d at 336 ("the

19   existence of multiple and harassing actions . . . could only serve to frustrate the district court's

20   efforts to craft a settlement").  The need to enjoin potentially conflicting lawsuits arises "where it is

21   intolerable to have conflicting orders from different courts." *Id*. at 337 (citing 17 C. Wright & A.

22   Miller & E. Cooper, Federal Practice & Procedure § 4225 at 105 n.8 (Supp. 1985)).

23         Here, the Court's issuance of a preliminary injunction in the Preliminary Approval Order is

24   important to preserve the status quo and eliminate the risk that competing lawsuits will create

25   inconsistent adjudications for Conseco Life, in violation of the Uniformity Clause.  For example, the

26   Settlement permits owners of Lapsed Policies to exclude themselves from the Settlement, and those

27   owners who avail themselves of that right could bring parallel litigation seeking to undermine the

28   rate uniformity that this Settlement seeks achieve.  The preliminary injunction that the Parties

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

21

1   request in the proposed Preliminary Approval Order seeks to avoid such interference with the

2   Settlement.  Proposed Order at ¶ 13.

3                                    **CONCLUSION**

4          We respectfully request that the Court grant the Joint Motion and enter the proposed

5   Preliminary Approval Order.

6   Dated:  June 7, 2013

7                                    WINSTON & STRAWN LLP

8                                    By: /s/ Adam J. Kaiser
9                                        John M. Aerni (admitted pro hac vice)
                                         jaerni@winston.com
10                                       Adam J. Kaiser (admitted pro hac vice)
                                         akaiser@winston.com

11
12                                       200 Park Avenue
                                         New York, New York 10166
13                                       Telephone (212) 294-6700
                                         Facsimile  (212) 294-4700

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802